No. 24-6697

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee*,

v.

SARA OMUNDSON,

*Defendant-Appellant*.

---

Appeal from the United States District Court for the District of Idaho,

Case No. 1:21-CV-00305-DCN, the Honorable David C. Nye, Presiding

---

### EXCERPTS OF RECORD, VOL. 5

---

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300,
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com; mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>        Plaintiff,<br><br>v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>        Defendant. | Case No: 1:21-CV-00305-DCN<br><br>**DECLARATION OF JONATHAN G. FETTERLY IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Exhibits 13-20]** |

# EXHIBIT 13
# FETTERLY DECLARATION

11.07.2022
30b6 Dvorak
**15**
Buell Realtime Reporting

DocuSign Envelope ID: 340C1777-9B9E-48C4-B171-E7A2BE008D8C



### ELECTRONIC FILING AMENDMENT

This amendment ("Electronic Filing Amendment") is made this _27__ day of ____May_____, 2021 ("Amendment Effective Date") by and between Tyler Technologies, Inc., with offices at One Tyler Drive, Yarmouth, Maine 04096 ("Tyler") and the Idaho Supreme Court, with offices at 451 W. State Street, Boise, Idaho 83702 ("Client").

WHEREAS, Tyler and the Client are parties to an agreement dated October 8, 2015 ("Electronic Filing Agreement"); and

WHEREAS, Tyler and Client desire to amend the terms of the Electronic Filing Agreement as provided herein.

NOW THEREFORE, in consideration of the mutual promises hereinafter contained, Tyler and the Client agree as follows:

1.  Term Renewal.  The term of the Electronic Filing Agreement is hereby extended for the period of May 1, 2021 through September 30, 2022 ("Initial Term").  The term shall thereafter renew for two (2) additional one (1) year periods, October 1, 2022 through September 30, 2023 ("First Renewal Term"), and October 1, 2023 through September 30, 2024 ("Second Renewal Term"). At the end of the Second Renewal Term, or any subsequent renewal, the term shall automatically renew for an additional one (1) year term at a rate set by Tyler that is no more than 5% greater than the price paid by Client for the current renewal term, unless terminated, or extended per paragraph 3(a) below, in writing by Client at least sixty (60) days prior to the end of the current renewal term.  Tyler shall notify Client of the proposed renewal rate at least one hundred twenty (120) days prior to the end of the current renewal term.

2.  Fixed Cost Pricing.  Tyler will offer fixed cost pricing on the E-Filing and E-Service "Use" Fees portion of the Agreement for the Initial Term and the First and Second Renewal Terms as set forth below:

| Term | Timeline | Fees | Payment Due |
|---|---|---|---|
| Current Term (month-to-month) | October 2020 – April 2021 | $602,300 | PAID |
| Initial Term (17 months) | May 2021 – September 2022 | $2,125,000 | May 31, 2021 |
| First Renewal Term (12 months) | October 2022 – September 2023 | $1,550,000 | Oct 31, 2022 |
| Second Renewal Term (12 months) | October 2023 – September 2024 | $1,600,000 | Oct 31, 2023 |

DocuSign Envelope ID: 340C1777-9B9E-48C4-B171-E7A2BE008D8C

3. Conditions Required for Fixed Cost Pricing.  As a condition of Tyler extending this fixed-cost pricing, the parties agree as follows:

   a. If Client does not auto-renew per this Electronic Filing Amendment at the fixed cost renewal rate, but Client wishes to continue using the E-Filing and E-Service services, the pricing will revert to a per transaction basis, at the current defined per envelope cost of $5.00/envelope.

   b. Section 2(a) of the "Payment Processing Fees" section of the Electronic Filing Agreement is hereby removed in its entirety and replaced with the following: "A convenience fee of 3.50% will be assessed to Registered Users for each electronic payment transaction initiated that flows through the TOGA system when using a credit or debit card."

   c. Tyler shall ultimately receive the convenience fee in its entirety, but will work with Client in a good faith effort to comply with Idaho Code Section 31-3221, "Payments to Court by Credit Card or Debit Card."

   d. Tyler will activate the optional redaction service for attorneys in OFS, the use of which shall be paid for by the attorney/OFS user, and shall have no cost impact to Client nor any change to the current e-filing review processes of the Client.

   e. If Client determines at any point to shift the cost of e-Filing or e-Service to the filing community, Tyler and Client agree to establish another amendment reflecting such an arrangement, with pricing no greater than the current defined per envelope cost of $5.00/envelope, and terminate this Electronic Filing Amendment at that time.

4. This Electronic Filing Amendment shall be governed by and construed in accordance with the terms and conditions of the Electronic Filing Agreement.

5. All other terms and conditions of the Electronic Filing Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Electronic Filing Amendment as of the dates set forth below.

Tyler Technologies, Inc.

By: _____

Name: _____
      Sherry Clark

Title: _____
       Sr. Corporate Attorney

Date: _____
      5/27/2021

Idaho Supreme Court

By: _____

Name: _____
      Sara Omundson

Title: _____
       Administrative Director of Courts

Date: _____
      5/27/2021



## Merchant Payment Card Processing Agreement

This Payment Card Processing Agreement (this "Processing Agreement") is made and entered into by and between Tyler Technologies, Inc., a Delaware corporation ("Tyler"), and the Supreme Court of Idaho (the "Purchaser").

**WHEREAS**, Purchaser desires to engage Tyler to license certain software and to provide certain professional services related thereto to participating counties within the State of Idaho who sign a Merchant Participation Agreement (each a "Merchant"), all on the terms and conditions set forth in this Processing Agreement; and

**WHEREAS**, Purchaser will identify and coordinate with each county entity which is authorized to accept a credit card for payments; and

**WHEREAS**, each Merchant will establish a Merchant Identification Number(s) for the purpose of processing and tracking credit card transactions and will be responsible for the Merchant obligations identified in this Processing Agreement and any Merchant Participation Agreement entered into hereunder.

**WHEREAS** Tyler has contracted with a national banking association ("Member"), a payment processer ("Processor"), and others, to provide services under this Processing Agreement; and

**WHEREAS** Member is a member of several Associations, including but not limited to Visa and MasterCard; and

**WHEREAS**, through Member, Tyler is authorized to process the Card Transactions listed on Schedule B1; and

**WHEREAS**, Tyler shall submit Transactions on behalf of Merchant in accordance with Association Rules.

**NOW, THEREFORE**, in consideration of the mutual promises made and the mutual benefits to be derived from this Processing Agreement, Tyler and Purchaser agree as follows:

A.  Tyler shall furnish the services; and Merchants shall pay the fees and comply with the additional obligations described in this Processing Agreement and each applicable Merchant Participation Agreement.

B.  This Processing Agreement consists of this cover and signature page and the following attachments and exhibits attached hereto and to be attached throughout the Term of this Processing Agreement, all of which are incorporated by reference herein:

- Payment Card Processing Agreement Terms and Conditions
- Schedule B1. –Payment Card Processing Fees

IN WITNESS WHEREOF, this Processing Agreement has been executed by a duly authorized officer of each party hereto to be effective as of the date last set forth below (the "Effective Date"):

| TYLER TECHNOLOGIES, INC. | Supreme Court of Idaho (Purchaser) |
|---|---|
| By: | By: |
| Name: _JEFF PUCKETT_ | Name: Linda Copple Trout |
| Title: _VP Sales CS, J_ | Title: Interim Administrative Director of the Courts |
| Date: _18 June 2015_ | Date: June 17, 2015 |

## Payment Card Processing Agreement Terms and Conditions

**1. ACKNOWLEDGEMENTS**

1.1.    By executing this Processing Agreement, Purchaser is contracting with Tyler to obtain Card processing services on Purchaser and Merchants' behalf.

1.2.    Purchaser acknowledges that Tyler contracts with a payment processor (a "Processor"), Members, and other third party providers to provide services under this Processing Agreement, and Purchaser hereby consents to the use of such Processor, Members, and others to provide such services.

1.3.    Tyler represents that the terms and provisions of this Processing Agreement are not inconsistent with the terms and provisions of the agreements between Tyler and such third party providers.

**2. MEMBER BANK AGREEMENT REQUIRED**

2.1.    When Merchant's customers pay Merchant through Tyler, Merchant may be the recipient of a Card funded payment. The organizations that operate these Card systems (such as Visa U.S.A., Inc. and MasterCard International Incorporated; collectively, the "Associations") require that Merchant (i) enter into a direct contractual relationship with an entity that is a member of the Association and (ii) agree to comply with Association Rules as they pertain to applicable Card Transactions that Merchant submits through Tyler.

2.2.    Merchant shall complete an application with the Member with which Tyler has contracted, and execute an agreement with such Member (the "Member Bank Agreement"). By executing a Member Bank Agreement, Merchant is fulfilling the Association Rule of entering into a direct contractual relationship with a Member, and Merchant agrees to comply with Association Rules as they pertain to Transactions Merchant submits for processing through the Tyler system.

2.3.    Merchant shall acknowledge that Tyler may have agreed to be responsible for Merchant's obligations to a Member for such Transactions as set forth in the Member Bank Agreement. Member should debit the Merchant Bank Account for chargebacks, however, in the event Member assesses any such chargebacks to Tyler, Tyler shall invoice the same to Merchant.

**3. SETTLEMENT AND CHARGEBACKS**

3.1.    Merchants Bank Account. In order to receive funds, Merchant must maintain a bank account (the "Merchant Bank Account") at a bank that is a member of the Automated Clearing House ("ACH") system and the Federal Reserve wire system. Purchaser will instruct Merchant to not to close the Merchant Bank Account without giving Tyler at least thirty (30) days' prior written notice and substituting another bank account. Merchant is solely liable for all fees and costs associated with Merchant Bank Account and for all overdrafts. Tyler shall not be liable for any delays in receipt of funds or errors in bank account entries caused by third parties, including but not limited to delays or errors by the Member Bank or payment processor to Merchant Bank Account.

3.2.    Settlement. Transactions shall be settled according to the terms of the Member Bank Agreement using the account(s) which are designated by Merchant.

3.3.    Chargebacks. Chargebacks shall be paid by Merchant in accordance with the Member Bank Agreement.

3.4.    Retrieval Requests. Merchant is required by the Associations to store original documentation, and to timely respond to Retrieval Requests, of each Transaction for at least six months from the date of the respective Transaction, and to retain copies of all such data for at least 18 months from the date of the respective Transaction. Merchant is responsible for any Chargebacks that result from Merchant's failure to timely respond to Retrieval Requests for documentation relating to a Transaction.

**4. FEES AND INVOICING**

4.1.    Schedule B1. Merchants agree to pay the Tyler fees set forth in Schedule B1 for services provided by Tyler in accordance with this Agreement.

4.2.    Adjustments to Pricing. Purchaser acknowledges that the pricing set forth on Schedule B1 is based on Purchaser's representation as to its volume of Transactions, method of processing, type of business, and interchange qualification criteria; the pricing rates are fixed for the initial five-year term of the contract. After the initial five-year term, to the extent Purchaser and its Merchants actual volumes, method, type and criteria differ from this information, Tyler may request a modification to the pricing on Schedule B1 with ninety (90) days' prior written notice. In addition, by

giving written notice to Purchaser and each Merchant, Tyler may change the fees set forth on Schedule A resulting from (i) changes in Association fees (such as interchange, assessments and other charges) or (ii) changes in pricing by any third party provider of a product or service used by Merchant and related to the settlement or processing of payments hereunder.

4.3.    Payment of Fees.

(a) Online Payments. For payments that are initiated online, a convenience fee will be assessed to the consumer for each payment transaction that is paid electronically using a credit or debit card, in accordance with Schedule B1. The convenience fee will be charged at the time of the transaction and will be deposited directly into a Tyler Technologies bank account from which all fees associated with processing and settling the transactions will be paid. A portion of the convenience fee, as identified in Schedule B1, shall be paid by Tyler to the Purchaser on a monthly basis.

(b) Over the Counter Payments. For payments that are initiated in Merchant offices, Tyler shall invoice Purchaser for services herein on a monthly basis provided to all Merchants in the prior month. Each invoice shall state the total invoiced amount and shall be accompanied by a reasonably detailed itemization of services. Following receipt of a properly submitted invoice, the Merchant shall pay amounts owing therein thirty (30) days in arrears. All payments shall be made in U.S. currency.

**5. LICENSE**

Tyler grants to Merchants signing a Merchant Participation Agreement a non-exclusive, revocable license to use the Tyler Intellectual Property (as defined in Section 10.2) for the limited purpose of performing under this Processing Agreement. Unless otherwise provided in a separate agreement between Tyler and Merchant, any Intellectual Property or machinery provided by Tyler, but not developed by Tyler, is being licensed or purchased by Merchants directly from the manufacturer or developer of such machinery or Intellectual Property. Merchant acknowledges that the license granted is limited to Merchant's use exclusively and that Merchant does not have the right to sub-license any of the Intellectual Property in either their original or modified form. Purchaser and its Merchants agree to not reverse-engineer, disassemble or decompile the Intellectual Property. Merchants shall not give any third party, except Merchants employees (to include employees of state, county or city entities working on behalf of or with the courts, to include, but not limited to, county court personnel, county probation officers, county or city prosecutors, county or city public defenders, and jail administrative staff), access to the Intellectual Property without Tyler's prior written consent.

**6. THIRD PARTY PROVIDERS**

Tyler may, in its sole discretion, contract with alternate Members, payment processors or other third party providers to provide services under this Processing Agreement. In such event, Merchants shall reasonably cooperate with Tyler, including the execution of a new Member Bank Agreement by Merchant; provided, however, that if the terms and conditions of the new Member Bank Agreement are substantially different than Merchant's existing Member Bank Agreement, then the Purchaser shall have the right to terminate this Processing Agreement and/or Merchants shall have the right to terminate their applicable Merchant Participation Agreement.

**7. TYLER CONFIDENTIAL AND PROPRIETARY INFORMATION**

7.1.    Protection of Tyler Confidential and Proprietary Information. Purchaser shall not knowingly disclose, disseminate, transmit, publish, distribute, make available, or otherwise convey Tyler Confidential and Proprietary Information, knowing or having reason to know that it constitutes Tyler Confidential and Proprietary Information, and Purchaser shall not use, make, sell, or otherwise exploit any such Tyler Confidential and Proprietary Information for any purpose other than the performance of this Processing Agreement, without Tyler's written consent, except: (a) as may be required by law, regulation, judicial, or administrative process; or (b) as required in litigation pertaining to this Processing Agreement, provided that Tyler is given advance notice of such intended disclosure in order to permit it the opportunity to seek a protective order. Notwithstanding the foregoing, Tyler Confidential and Proprietary Information does not include information that: (a) becomes public other than as a result of a disclosure by Purchaser in breach hereof; (b) becomes available to Purchaser on a non-confidential basis from a source other than Tyler, which is not

prohibited from disclosing such information by obligation to Tyler; (c) is known by Purchaser prior to its receipt from Tyler without any obligation of confidentiality with respect thereto; or (d) is developed by Purchaser independently of any disclosures made by Tyler. This provision shall apply *pari passu* to Purchaser's Confidential Information, to include all court records and data generated or captured by the Purchaser which is not Tyler Confidential and Proprietary Information. In the event of a conflict between this Section and any Non-Disclosure Agreement ("NDA") in place between the parties, the terms of the NDA shall govern. Purchaser shall ensure that all individuals assigned to perform services herein shall abide by the terms of this Section 7.1.

7.2.    Judicial Proceedings.  If Purchaser  is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand, or other similar process) to disclose any Tyler Confidential and Proprietary Information, Purchaser  shall provide Tyler with prompt written notice of such request or requirement so that Tyler may seek protective orders or other appropriate remedies and/or waive compliance with the provisions of this Processing Agreement.  If, in the absence of a protective order or other remedy or the receipt of a waiver by Tyler, Purchaser  nonetheless is legally compelled to disclose Tyler Confidential and Proprietary Information to any court or tribunal or else would stand liable for contempt or suffer other censure or penalty, Purchaser may, without liability herein, disclose to such court or tribunal only that portion of Tyler Confidential and Proprietary Information which the court requires to be disclosed, provided that Purchaser  uses reasonable efforts to preserve the confidentiality of Tyler Confidential and Proprietary Information, including, without limitation, by cooperating with Tyler to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded Tyler Confidential and Proprietary Information.

**8.    REPRESENTATIONS AND WARRANTIES**

8.1.    No Actions, Suits, or Proceedings.  There are no actions, suits, or proceedings, pending or, to the knowledge of Tyler, threatened, that shall have a material adverse effect on Tyler's ability to fulfill its obligations pursuant to or arising from this Processing Agreement.

8.2.    Compliance with Laws.  In performing this Processing Agreement, Tyler shall comply with all applicable material licenses, legal certifications, or inspections.  Tyler shall also comply in all material respects with applicable federal, state, and local statutes, laws, ordinances, rules, and regulations.

8.3.    Ownership.  Tyler is a Delaware corporation that is listed for trading on the New York Stock Exchange.  No director, officer, or 5% or more stockholder shall, during the course of this Processing Agreement, receive or confer improper personal benefits or gains associated with the performance of the services outlined in this Processing Agreement.

8.4.    Certain Business Practices.  Neither Tyler nor any of its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participating in this Processing Agreement by any federal department or agency.  Tyler further represents and warrants that it is not listed on any local, state or federal consolidated list of debarred, suspended, and ineligible contractors and grantees.  No person (other than permanent employees of Tyler) has been engaged or retained by Tyler to solicit, procure, receive, accept, arrange, or secure this Processing Agreement for any compensation, consideration, or value.

**9.    LIMITATION OF LIABILITY**

TYLER'S LIABILITY TO MERCHANT FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS PROCESSING AGREEMENT, WHETHER BASED ON A THEORY OF CONTRACT OR TORT, INCLUDING NEGLIGENCE AND STRICT LIABILITY, SHALL BE LIMITED TO THE TOTAL FEES PAID TO TYLER UNDER THIS PROCESSING AGREEMENT (NET OF ASSOCIATION INTERCHANGE, ASSESSMENTS AND FINES) FOR THE TWELVE MONTHS PRIOR TO THE TIME THE LIABILITY AROSE.  THE FOREGOING LIMITATION DOES NOT APPLY TO THE FOLLOWING CIRCUMSTANCES: (1) FRAUD; OR (2) CLAIMS UNDER SECTION 10.2 (GENERAL - BODILY INJURY OR PROPERTY DAMAGE) OR (3) CLAIMS ARISING UNDER SECTION 10.3 (INTELLECTUAL PROPERTY).

WHILE BOTH PARTIES ACKNOWLEDGE THAT THIS IS AN AGREEMENT FOR SERVICES TO WHICH THE UNIFORM COMMERCIAL CODE DOES NOT APPLY, IN NO EVENT SHALL TYLER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR LOSS OF

BUSINESS OR LOSS OF DATA ARISING OUT OF THIS PROCESSING AGREEMENT, IRRESPECTIVE OF WHETHER THE PARTIES HAVE ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGE.

**10.  INDEMNIFICATION**

10.1.    Chargebacks.  Purchaser acknowledges that Tyler has agreed to be responsible for Merchant's obligations to a Member for Transactions and Association Rules as set forth in the Member Bank Agreement. Member should debit the Merchant Bank Account for chargebacks, however, in the event Member assesses any such chargebacks to Tyler, Tyler shall invoice the same to Merchant.

10.2.    General – Bodily Injury and Property Damage.  Notwithstanding any other provision of this Agreement, Tyler shall defend, indemnify, hold, and save harmless  Purchaser and any Merchant from and against any and all Claims for bodily injury or property damage sustained by or asserted against Purchaser or any Merchant arising out of, resulting from, or attributable to the negligent or willful misconduct of Tyler, its employees, subcontractors, representatives, and agents; provided, however, that Tyler shall not be liable herein to indemnify Purchaser or any Merchant against liability for damages arising out of bodily injury to people or damage to property to the extent that such bodily injury or property damage is caused by or resulting from the actions, negligent or otherwise, of Purchaser or any Merchant, including the agents, contractors, subcontractors, or employees of either.

10.3.    Intellectual Property.

(a)    Tyler retains all ownership and copyright interest in and to any and all intellectual property, computer programs, related documentation, technology, know how and processes developed by Tyler and provided in connection with this Processing Agreement (collectively, the "Intellectual Property"),

(b)    Notwithstanding any other provision of this Processing Agreement, if any claim is asserted, or action or proceeding brought against Purchaser or its Merchants that alleges that all or any part of the Intellectual Property, in the form supplied, or modified by Tyler, or Purchaser or its Merchants use thereof, infringes or misappropriates any United States intellectual property, intangible asset, or other proprietary right, title, or interest (including, without limitation, any copyright or patent or any trade secret right, title, or interest), or violates any other contract, license, grant, or other proprietary right of any third party, Purchaser or its Merchants, upon its actual awareness, shall give Tyler prompt written notice thereof; provided, however, that any delay in Purchaser's providing notice hereunder shall only work a bar to Tyler's indemnification obligations if Tyler can demonstrate actual prejudice arising directly from the delay. Tyler shall defend, and hold Purchaser and its Merchants harmless against, any such claim or action with counsel of Tyler's choice and at Tyler's expense and shall indemnify Purchaser and its Merchants against any liability, damages, and costs resulting from such claim.  Without waiving any rights pursuant to sovereign immunity, Purchaser and its Merchants shall reasonably cooperate with and may monitor Tyler in the defense of any claim, action, or proceeding and shall, if appropriate, make employees available as Tyler may reasonably request with regard to such defense.  This indemnity does not apply to the extent that such a claim is attributable to modifications to the Intellectual Property made by Purchaser or its Merchants, or any third party pursuant to Purchaser or its Merchants directions to the extent the infringement would not occur but for the modification, or upon the unauthorized use of the Intellectual Property by Purchaser or its Merchants.

10.4.    If the Intellectual Property becomes the subject of a claim of infringement or misappropriation of a copyright, patent, or trade secret or the violation of any other contractual or proprietary right of any third party, Tyler shall, at its sole cost and expense, select and provide one of the following remedies, which selection shall be in Tyler's sole discretion: (a) promptly replace the Intellectual Property with a compatible, functionally equivalent, non-infringing system; or (b) promptly modify the Intellectual Property to make it non-infringing; or (c) promptly procure the right of Merchants to use the Intellectual Property as intended.

**11.  TAXES**

11.1.    Tax Exempt Status.  Purchaser and its Merchants are governmental tax-exempt entities and shall not be responsible for any taxes for any Licensed Property or services provided for herein, whether federal or state.  The fees paid to Tyler pursuant to this Processing Agreement are inclusive of any applicable sales, use, personal property, or other taxes attributable to periods on or after the Effective Date of this Processing Agreement.

11.2.  Employee Tax Obligations.  Each party accepts full and exclusive liability for the payment of any and all contributions or taxes for Social Security, Workers' Compensation Insurance, Unemployment Insurance, or Retirement Benefits, Pensions, or annuities now or hereafter imposed pursuant to or arising from any state or federal laws which are measured by the wages, salaries, or other remuneration pay to persons employed by such party for work performed under this Processing Agreement.

## 12.  TERM, SUSPENSION, AND TERMINATION

12.1.  Term.  The term of this Processing Agreement (the "Term") shall commence on the Effective Date and shall continue in effect for five years; provided, however, that at the end of such initial term, and on each subsequent anniversary of the Effective Date, the term shall automatically extend for an additional year unless either party provides, at least ninety (90) days prior to the end of the then current term, written notice that it does not wish to extend the term or otherwise terminates the agreement for Cause pursuant to Section 12.2.

12.2.  Termination for Cause.  Either party may terminate this Processing Agreement for Cause, provided that such party follows the procedures set forth in this Section12.2.

(a) For purposes of this Section, "Cause" means either:

(i)  a material breach of this Processing Agreement, which has not been cured within ninety (90) days of the date such party receives written notice of such breach;

(ii)  if Tyler services provided under this Processing Agreement fail to conform to generally accepted standards for such services in the Card processing industry and, after ninety (90) days written notice, Tyler  does not rectify its failure of performance;

(iii)  the failure by Purchaser to timely pay when due any fees owed to Tyler pursuant to this Processing Agreement and any delinquent amounts remain outstanding for a period of thirty (30) days after Tyler provides written notice of its intent to terminate for failure to pay;

(iv)  breach of Section 7; or

(v)  if Tyler becomes insolvent or bankrupt, or is the subject of any proceedings relating to its liquidation or insolvency or for the appointment of a receiver or similar officer for it, has a receiver of its assets or property appointed or makes an assignment for the benefit of all or substantially all of its creditors, or institutes or causes to be instituted any proceeding in bankruptcy or reorganization or rearrangement of its affairs.

(b)  No party may terminate this Processing Agreement under Section 12.2(a)(i) unless it cooperates in good faith with the alleged breaching party during the cure period and complies in good faith with the dispute resolution procedures set forth in Section 13 following such period.

(c)  In the event either party terminates this Processing Agreement pursuant to this Section 12.2, each party shall return all products, documentation, confidential information, and other information disclosed or otherwise delivered to the other party prior to such termination, all revocable licenses shall terminate.

12.3.  Survival.  The following provisions shall survive after the Term of this Processing Agreement: 3; 4; 4.3; 7; 10; 11; 12; 13; 14; and 15.

12.4.  Termination for Lack of Appropriations. The terms of this Agreement are contingent upon sufficient authorizations and appropriations being or having been made by the Legislature for the performance of this Agreement. If sufficient authorizations and appropriations are not or have not been made by the Legislature, or are discontinued by the Legislature, this Agreement shall terminate upon written notice being given by Purchaser to Tyler. In the event Purchaser terminates this Agreement pursuant to this Section, Purchaser shall pay Tyler for all undisputed services performed and goods delivered at the rates specified herein up through the date of such termination. Purchaser represents that it is a government entity or instrumentality.

12.5.  Effect of Termination.

(a) Upon termination or expiration of this Processing Agreement, (i) Tyler shall not enter into any additional Merchant Participation Agreements hereunder, and (ii) each party shall

return all products, documentation, Confidential Information, and other information disclosed or otherwise delivered to the other party prior to such expiration or termination.

(b) No termination of this Processing Agreement shall serve to terminate, void or otherwise effect the enforceability of any Merchant Participation Agreement entered into while this Processing Agreement was in force.

## 13.  DISPUTE RESOLUTION

Any dispute arising out of, or relating to, this Processing Agreement that cannot be resolved within five (5) Business Days shall be referred to the individual reasonably designated by Purchaser and Tyler's Vice President of Courts and Justice Systems Division assigned to Purchaser's account ("Intermediary Dispute Level"). Any dispute that cannot be resolved in ten (10) Business Days at the Intermediary Dispute Level shall then be referred to Purchaser's chief executive officer or other individual reasonably designated by Purchaser and Tyler's President of Courts and Justice Systems Division ("Executive Dispute Level"), at such time and location reasonably designated by the parties.  All negotiations pursuant to this Section are confidential and shall be treated as compromise and settlement negotiations for purposes of the applicable rules of evidence.  For any dispute that the parties are unable to resolve through informal discussions or negotiations or pursuant to the dispute resolution and escalation procedures set forth in this Processing Agreement, a party may pursue such other remedies as may be available to it in law or equity.  The foregoing shall not apply to claims for equitable relief under Section 7.

## 14.  MISCELLANEOUS

14.1.  Assignment.  Neither party may assign this Processing Agreement or any of its respective rights or obligations herein to any third party without the express written consent of the other party, which consent shall not be unreasonably withheld.

14.2.  Subcontractors.  Tyler shall not utilize any subcontractor(s) for the purpose of installation or implementation of Tyler's processing system without the prior written consent of Purchaser's Chief Information Officer, which consent shall not be unreasonably withheld.  The approval by Purchaser of Tyler's right to use subcontractor(s) shall not waive or relieve Tyler from Tyler's obligations pursuant to this Agreement.

14.3.  Cumulative Remedies.  Except as specifically provided herein, no remedy made available herein is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy provided herein or available at law or in equity.

14.4.  Notices.  Except as otherwise expressly specified herein, all notices, requests or other communications shall be in writing and shall be deemed to have been given if delivered personally or mailed, by certified or registered mail, postage prepaid, return receipt requested, to the parties at their respective addresses set forth on the signature page hereto, or at such other addresses as may be specified in writing by either of the parties.  All notices, requests, or communications shall be deemed effective upon personal delivery or three (3) days following deposit in the mail.

14.5.  Counterparts.  This Processing Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14.6.  Waiver.  The performance of any obligation required of a party herein may be waived only by a written waiver signed by the other party, which waiver shall be effective only with respect to the specific obligation described therein.

14.7.  Entire Agreement.  This Processing Agreement constitutes the entire understanding and contract between the parties and supersedes any and all prior or contemporaneous oral or written representations or communications with respect to the subject matter hereof.

14.8.  Amendment.  This Processing Agreement shall not be modified, amended, or in any way altered except by an instrument in writing signed by the properly delegated authority of each party.  All amendments or modifications of this Processing Agreement shall be binding upon the parties despite any lack of consideration.

14.9.  Severability of Provisions.  In the event any provision hereof is found invalid or unenforceable pursuant to judicial decree, the remainder of this Processing Agreement shall remain valid and enforceable according to its terms.

14.10. Relationship of Parties.  The parties intend that the relationship between the parties created pursuant to or arising from this Processing Agreement is that of an independent contractor only.  Neither party shall be considered an agent, representative, or employee of the other party for any purpose.

14.11. Governing Law.  Any dispute arising out of or relating to this Processing Agreement or the breach thereof shall be governed by the laws of the state of Idaho, without regard to or application of choice of law rules or principles.  Tyler consents to the jurisdiction of and to venue within the state or federal courts located within the state of Idaho for the resolution of any dispute arising out of or related hereto.

14.12. Audit.  Tyler shall maintain complete and accurate records of all work performed pursuant to and arising out of this Processing Agreement.  Purchaser may, upon the written request, audit any and all records of Tyler relating to services provided herein. Purchaser shall provide Tyler twenty-four hour notice of such audit or inspection.  Tyler shall have the right to exclude from such inspection any Tyler Confidential and Proprietary Information not otherwise required to be provided to Merchant as a part of this Processing Agreement.  Tyler shall make such books and records available to Purchaser during normal business hours.  Any such audit shall be conducted at Tyler's principal place of business during Tyler's normal business hours and at Purchaser 's sole expense.

14.13. No Third Party Beneficiaries.  Nothing in this Processing Agreement is intended to benefit, create any rights in, or otherwise vest any rights upon any third party.

14.14. Contra Proferentem.  The doctrine of contra proferentem shall not apply to this Processing Agreement.  If an ambiguity exists in this Processing Agreement, or in a specific provision, neither the Agreement nor the provision shall be construed against the party who drafted the Agreement or provision.

14.15. Force Majeure.  No party to this Processing Agreement shall be liable for delay or failure in the performance of its contractual obligations arising from any one or more events that are beyond its reasonable control, including, without limitation, acts of God, war, terrorism, and riot.  Upon such delay or failure affecting one party, that party shall notify the other party and use all reasonable efforts to cure or alleviate the cause of such delay or failure with a view to resuming performance of its contractual obligations as soon as practicable.  Notwithstanding the foregoing, in every case the delay or failure to perform must be beyond the control and without the fault or negligence of the party claiming excusable delay.  Any performance times pursuant to or arising from this Processing Agreement shall be considered extended for a period of time equivalent to the time lost because of any delay that is excusable herein.

14.16. Equitable Relief.  Each party covenants, represents, and warrants that any violation of this Processing Agreement by such party with respect to its respective obligations set forth in Section 7 shall cause irreparable injury to the other party and shall entitle the other party to extraordinary and equitable relief by a court of competent jurisdiction, including, without limitation, temporary restraining orders and preliminary and permanent injunctions, without the necessity of posting bond or security.

DRAFT.

**15. PARTICIPATION AGREEMENTS**

15.1.  Agreement Required. The parties intend and agree that the terms and conditions herein specifically pertaining to Merchants shall become part of, and incorporated by reference into Merchant Participation Agreements. Merchants shall be required to execute Merchant Participation Agreements containing additional terms and conditions specific to such Merchants, including, but not limited to, license grant consistent herewith, termination provisions related to the Merchant Participation Agreement and such other terms as Tyler and the Merchant may reasonably agree.

15.2.  Status of Purchaser. Tyler and Purchaser have entered into this Processing Agreement to provide a mechanism by which Merchants can acquire the products and services described herein, however, Purchaser does not and shall not be deemed to obtain the same for its own benefit.

15.3.  No Liability. In no event shall any Merchant be responsible for the obligations of any other Merchant by virtue of execution of a Merchant Participation Agreement hereunder. Additionally, nothing herein shall be construed to impose any liability or obligations upon Purchaser related to any Merchant Participation Agreement of any other Merchant. Tyler acknowledges that no "Merchant" is a party hereto and acknowledges that Purchaser has no ability to force, induce or otherwise cause any Merchant's

performance hereunder or otherwise remedy any Merchant breach, and Tyler releases Purchaser from any liability therefrom or related thereto.

**16. CERTAIN DEFINITIONS**

16.1.  Association means a group of Card issuer banks or debit networks that facilitates the use of payment cards accepted under this Processing Agreement for processing, including, without limitation, Visa,U.S.A., Inc., MasterCard International, Inc., Discover Financial Services, LLC and other credit and debit card providers, debit network providers, gift card and other stored value and loyalty program providers. Associations also includes the Payment Card Industry Security Standards Council.

16.2.  Association Rules means the bylaws, rules, and regulations, as they exist from time to time, of the Associations.

16.3.  Card or Payment Card mean an account, or evidence of an account, authorized and established between a Cardholder and an Association, or representatives or members of a Association that Merchant accepts from Cardholders as payment for a good or service. Payment Instruments include, but are not limited to, credit and debit cards, stored value cards, loyalty cards, electronic gift cards, authorized account or access numbers, paper certificates and credit accounts.

16.4.  Cardholder means the person to whom a Card is issued or who is otherwise entitled to use a Card.

16.5.  Chargeback means a reversal of a Card sale Merchant previously presented pursuant to Association Rules.

16.6.  Member or Member Bank means an entity that is a member of the Associations.

16.7.  Merchant means the county entity who signs a Merchant Participation Agreement with Tyler for the processing of credit card payments.

16.8.  Processing Agreement means this Payment Card Processing Agreement, including all exhibits attached hereto and to be attached throughout the Term of this Processing Agreement, all of which are incorporated by reference herein.

16.9.  Purchaser means the Idaho Supreme Court, which is the responsible party for contracting of electronic payment services for the Idaho Judicial Branch.

16.10. Retrieval Request means a request for information by a Cardholder or Card issuer relating to a claim or complaint concerning a Card sale Merchant has made.

16.11. Transaction means the evidence and electronic record of a sale or lease transaction representing payment by use of a Card or of a refund/credit to a Cardholder.

16.12. Tyler  Confidential and Proprietary Information means all information in any form relating to, used in, or arising out of Tyler's operations and held by, owned, licensed, or otherwise possessed by Tyler (whether held by, owned, licensed, possessed, or otherwise existing in, on or about Tyler's premises or Purchaser's offices, residence(s), or facilities and regardless of how such information came into being, as well as regardless of who created, generated or gathered the information), including, without limitation, all information contained in, embodied in (in any media whatsoever) or relating to Tyler's inventions, ideas, creations, works of authorship, business documents, licenses, correspondence, operations, manuals, performance manuals, operating data, projections, bulletins, customer lists and data, sales data, cost data, profit data, financial statements, strategic planning data, financial planning data, designs, logos, proposed trademarks or service marks, test results, product or service literature, product or service concepts, process data, specification data, know how, software, databases, database layout, design documents, release notes, algorithms, source code, screen shots, other research and development information and data, and Intellectual Property. Notwithstanding the foregoing, Tyler Confidential and Proprietary Information does not include information that: (a) becomes public other than as a result of a disclosure by Purchaser in breach hereof; (b) becomes available to Purchaser on a non-confidential basis from a source other than Tyler, which is not prohibited from disclosing such information by obligation to Tyler; (c) is known by Purchaser  prior to its receipt from Tyler without any obligation of confidentiality with respect thereto; or (d) is developed by Purchaser  independently of any disclosures made by Tyler.

**[Remainder of this page intentionally left blank]**

(Schedule B1)
**Payment Card Processing Fees**

**PURCHASER:  Supreme Court of Idaho**

## HARDWARE FEES (OPTIONAL)

| Description | Quantity | Unit Price | Cost |
|---|---|---|---|
| Verifone Payment Card Terminal Model # MX-915 with blue cable and stand | 1 Terminals | $837.00 | $837.00 |
| Card Terminal Application Load and Debit Key Injection *(required regardless of whether terminals are purchased from Tyler or a third party).* | 1 Terminals | $60.00 | $60.00 |

## PROCESSING FEES

Card Not Present Transactions (Online) & Card Present Transactions (Over the Counter)
For online payments, a convenience fee of 3.50% will be assessed to consumers for each electronic payment transaction initiated that flows through the Odyssey system when using a credit or debit card.  3.00% of payment transaction shall be retained by Tyler; 0.50% of the payment transaction shall be paid to the Purchaser.  The rate of 3.00% payable to Tyler is fixed for the initial five-year term of the contract.

For Over the Counter Payments, the Purchaser shall assess a convenience fee of 3.50% to consumers for each electronic payment transaction.  Tyler shall invoice Purchaser a fee of 3.00% of each electronic payment transactions on a monthly basis.  The rate of 3.00% is fixed for the initial five-year term of the contract.

For payments related to the payment of online bonds, a convenience fee of 5.00% will be assessed to consumers for each electronic payment transaction initiated that flows through the Odyssey system when using a credit or debit card.  Tyler will retain 4/5 of this convenience fee.  The remaining 1/5 will be paid to the Purchaser by Tyler; payments will be issued on a quarterly basis.  The 5.00% rate is fixed for the initial five-year term of the contract.

A minimum convenience fee of $1.00 per transaction will be charged if the convenience fee for an online, over the counter and on bond payments is less than $1.00.

## PROCESSING FEE REVIEW

The processing fees are based upon estimated average transaction amounts as of the Effective Date. After the initial five-year term, the fee will be subject to adjustment prospectively based on the actual average transaction value determined on quarterly review using the price schedule listed below.  Quarterly reviews will begin, and the rate may be adjusted, after the initial five-year term of this agreement.

| Average Transaction | Per Transaction Convenience Fee |
|---|---|
| $0.00 - $50.00 | 3.25% |
| $50.01 - $100.00 | 3.00% |
| $100.01 - $500.00 | 2.75% |
| $500.01 - $1,000.00 | 2.50% |
| $1,000.00 & Above | 2.25% |

## ACCEPTED CARD TYPES

Visa, MasterCard, American Express, and Discover will be accepted.

## OTHER FEES

A $20.00 fee shall be assessed for each chargeback transaction received.

A one-time fee of $60.00 will be charged for any additional terminals requiring an application load and debit key injection.

## CHARGEBACKS AND CREDITS

Chargebacks, chargeback fees, and returns shall be withdrawn from the daily deposit to the Merchant Bank Account.

# EXHIBIT 14
# FETTERLY DECLARATION



# Individual Filer User Guide

## Odyssey® File & Serve™ HTML5 2019.1

11.10.2022
30(b)(6) Derrick

**35**

Buell Realtime Reporting

OFS-FS-200-4551 v.1

December 2019

# Copyright and Confidentiality

Copyright © 2019 Tyler Technologies, Inc. All rights reserved.

Use of these materials is governed by the applicable Tyler Technologies, Inc. license agreement.

This notification constitutes part of the documentation and must not be removed.

# Publishing History

| Document Publication Number | Revision | Date | Changes Made |
|---|---|---|---|
| OFS-FS-200-4551 v.1 | Initial | December 2019 | Document Creation |

(15 of 233), Page 15 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 15 of 233
Case 1:21-cv-00305-DCN Document 66-2 Filed 12/15/22 Page 14 of 98

Contents

# Contents

Copyright and Confidentiality ..................................................................................... ii
Publishing History ....................................................................................................... ii
List of Figures .............................................................................................................. v
1 System Overview ................................................................................................... 1
    Release 2019.1 New Features ........................................................................... 1
    Before You Begin ................................................................................................ 6
        System Requirements .................................................................................. 6
        Page Navigation ........................................................................................... 7
        Error Messages ............................................................................................ 8
        Orientation .................................................................................................... 8
2 E-Filing Overview ................................................................................................ 17
    Filing Queue Status ......................................................................................... 18
3 Home Page .......................................................................................................... 20
    Registering as an Individual Filer .................................................................... 21
    Resetting Your Password ................................................................................. 23
4 Sign In and Sign Out .......................................................................................... 27
    Signing In ......................................................................................................... 27
    Signing Out ...................................................................................................... 28
5 Profile Preferences ............................................................................................. 29
    Changing the User Password ........................................................................... 29
    Changing the Security Question ...................................................................... 30
    Updating User Information ................................................................................ 32
    Managing Notifications ..................................................................................... 32
6 Filer Dashboard .................................................................................................. 34
    Dashboard Filing Category Descriptions .......................................................... 34
7 Payment Accounts .............................................................................................. 36
    Entering Payment Account Details ................................................................... 36
    Unavailable Payment Accounts ....................................................................... 37
    Draw Down Account User Interface .................................................................. 39
8 Templates ............................................................................................................ 41
    Creating a Template ......................................................................................... 41
    Editing a Template ........................................................................................... 56
    Using a New Case Template ............................................................................ 56
    Using an Existing Case Template ..................................................................... 57
    Viewing Template Details ................................................................................. 60
    Deleting a Template ......................................................................................... 60
9 Case Initiation ..................................................................................................... 62
    Filing a New Case ............................................................................................ 62
    Filing a New Case with a Will Filed Date ......................................................... 66
    Entering Party Details ...................................................................................... 67
    Entering Date of Death in Party Information Section ........................................ 71
    Display "Pro Se" for Party Name ..................................................................... 74
    Entering Filing Details ...................................................................................... 75
    Capability for Filing Return Date ...................................................................... 86
    Selecting a Return Date for a Case Filing ....................................................... 88
    Reverify Return Date ....................................................................................... 91
    Reverifying a Return Date ................................................................................ 92
    Capability for Filing Hearing Date .................................................................... 93
    Scheduling a Hearing Date for a New Case Filing ........................................... 95
    Scheduling a Hearing Date for an Existing Case Filing ................................... 98
    Entering a Filing with an Ad Damnum Amount ................................................ 99
    Entering a Filing with a Motion Type Code .................................................... 105
    Setting the Maximum Fee Amount for a Filing ............................................... 110
    Court Fees for Additional Case Parties .......................................................... 112

**ER-904**

Individual Filer User Guide

Submission Agreements..................................................................................................... 113
Viewing the Envelope Summary ........................................................................................ 113
10   Redaction Feature ................................................................................................................ 115
Entering a Filing with Redacted Documents ...................................................................... 115
Deleting a Redaction ......................................................................................................... 124
Working with an Existing Redaction ................................................................................... 125
Redaction Editor Toolbar .................................................................................................. 125
Redaction Errors................................................................................................................ 128
11   File into an Existing Case .................................................................................................... 129
Filing into an Existing Case from the Filing History Page.................................................... 129
Filing into an Existing Case from the Bookmarks Page ...................................................... 142
Filing into an Existing Case from the Filer Dashboard Page .............................................. 155
Filing into an Existing Case with an Ad Damnum Amount ................................................. 167
Creating a Service Only Filing ........................................................................................... 172
Filing an Appeal to an Existing Case ................................................................................. 174
12   Service Contacts ................................................................................................................ 176
Adding Service Contacts to Accounts ............................................................................... 176
Adding Service Contacts to a Case.................................................................................... 178
Replacing a Service Contact ............................................................................................. 180
Default State of Service Contacts ...................................................................................... 184
Public Service Contacts..................................................................................................... 184
Adding Service Contacts from a Public List ....................................................................... 185
Create New Service Contacts During a Filing .................................................................... 188
    Creating Service Contacts from the Filing History Page ............................................... 189
    Creating Service Contacts During a Case Search (File Into Existing Case)...................... 192
    Creating Service Contacts During Envelope Creation .................................................. 194
Selecting the Service Method for Service Contacts ............................................................ 195
Viewing Attached Case List of Service Contacts ................................................................ 198
Viewing Service Contact Details ........................................................................................ 199
Linking a Service Contact to Another Party........................................................................ 201
Search and Paging Capability for Service Contacts............................................................ 203
Removing a Service Contact from a Case .......................................................................... 204
Deleting a Service Contact................................................................................................ 205
13   Filings.................................................................................................................................. 208
Filtering the Filings Queue ................................................................................................ 209
Copying the Envelope ....................................................................................................... 212
Viewing the Envelope Details............................................................................................ 214
Viewing the Filer ID in Envelope Details ........................................................................... 215
Viewing Envelope Details for Returned Filings .................................................................. 218
Viewing Certified Mail Services Information in Envelope Details ......................................... 221
Viewing Motion Type Information in Envelope Details........................................................ 223
Resuming the Filing Process.............................................................................................. 225
Canceling a Filing ............................................................................................................. 226
14   Bookmarks........................................................................................................................... 228
15   Reports................................................................................................................................ 230
Creating a Financial Reconciliation Report ........................................................................ 230
Creating a Filings Report .................................................................................................. 232
16   Tyler Technologies Technical Support Contact Information .................................................... 236

**ER-905**

# List of Figures

Figure 1.1 – Party Information Section with the Date of Death Field ..........................................................2
Figure 1.2 – Case Information Section with the Will Filed Field ..................................................................3
Figure 1.3 – Ad Damnum Amount in the Case Information Section .............................................................3
Figure 1.4 – Redaction Fee in the Fees Section .........................................................................................4
Figure 1.5 – Message in the Filings Section................................................................................................5
Figure 1.6 – Keyboard Shortcuts Window ...................................................................................................7
Figure 1.7 – Actions Drop-Down List ..........................................................................................................8
Figure 1.8 – Filer Dashboard Page .............................................................................................................9
Figure 1.9 – Actions Drop-Down List ..........................................................................................................9
Figure 1.10 – File Into Existing Case Page with Tooltip Displayed ..........................................................10
Figure 1.11 – Filing History Page with Tooltip Displayed ..........................................................................11
Figure 1.12 – Templates Page ...................................................................................................................12
Figure 1.13 – Service Contacts Page .........................................................................................................12
Figure 1.14 – Bookmarks Page ..................................................................................................................13
Figure 1.15 – Reports Page........................................................................................................................14
Figure 1.16 – Contact Information Page .....................................................................................................15
Figure 1.17 – Payment Accounts Page with Existing Payment Accounts .................................................16
Figure 2.1 – The E-Filing Process..............................................................................................................17
Figure 3.1 – Odyssey File & Serve Home Page ........................................................................................20
Figure 3.2 – Register Page – Self-Represented Account ..........................................................................22
Figure 3.3 – Register Page with Usage Agreement ...................................................................................22
Figure 3.4 – Register Page with Confirmation ...........................................................................................23
Figure 3.5 – Sign In Page ..........................................................................................................................24
Figure 3.6 – Change Password Page .........................................................................................................24
Figure 3.7 – Password Reset Page – Check Box Cleared.........................................................................25
Figure 3.8 – Password Reset Page – Check Box Selected .......................................................................25
Figure 4.1 – Sign In Page ..........................................................................................................................27
Figure 4.2 – Sign Out Option on the Profile Drop-Down List ....................................................................28
Figure 4.3 – Sign Out Page ........................................................................................................................28
Figure 5.1 – Profile Drop-Down List ..........................................................................................................29
Figure 5.2 – Manage Security Page ...........................................................................................................30
Figure 5.3 – Profile Drop-Down List ..........................................................................................................31
Figure 5.4 – Manage Security Page ...........................................................................................................31
Figure 5.5 – My Information Page ...............................................................................................................32
Figure 5.6 – Manage Notifications Page ....................................................................................................33
Figure 6.1 – Filer Dashboard Page ............................................................................................................34
Figure 7.1 – Payment Accounts Page ........................................................................................................36
Figure 7.2 – Payment Accounts Page for Adding a New Payment Account ..............................................37
Figure 7.3 – Error Message in the Payment Account Field ........................................................................38
Figure 7.4 – Unavailable Payment Accounts Window................................................................................39
Figure 7.5 – Draw Down Account with Parent-Child Relationship of Courts .............................................40
Figure 8.1 – Templates Page .....................................................................................................................41
Figure 8.2 – New Template Page ...............................................................................................................42
Figure 8.3 – Template Information Section with New Case Option Selected ............................................42
Figure 8.4 – Template Information Section with Existing Case Option Selected .......................................43
Figure 8.5 – Example of a Case Information Section ..................................................................................44
Figure 8.6 – Case Cross Reference Number Section ................................................................................44
Figure 8.7 – Case Cross Reference Type Drop-Down List ........................................................................45
Figure 8.8 – Sample Case Cross Reference Number Section ...................................................................45
Figure 8.9 – Case Cross Reference Number Actions Drop-Down List ......................................................45
Figure 8.10 – Party Information Section .....................................................................................................46
Figure 8.11 – Filings Section ......................................................................................................................47
Figure 8.12 – Filing Code Drop-Down List.................................................................................................48

(18 of 233), Page 18 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 18 of 233
Case 1:21-cv-00305-DCN   Document 66-2   Filed 12/15/22   Page 17 of 98

Individual Filer User Guide

Figure 8.13 – Filing Code Field with the Fee Displayed ........................................................................ 48
Figure 8.14 – Due Date Calendar ........................................................................................................ 49
Figure 8.15 – Filing on Behalf of Field in the Filings Section ................................................................ 49
Figure 8.16 – Lead Document and Attachments Fields in the Filings Section ....................................... 50
Figure 8.17 – Security Drop-Down List in the Lead Document Section ................................................. 50
Figure 8.18 – Optional Services and Fees Section ................................................................................ 51
Figure 8.19 – Optional Services and Fees Field in the Optional Services and Fees Section .................... 51
Figure 8.20 – Optional Services and Fees Drop-Down List .................................................................... 51
Figure 8.21 – Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
        Field Displayed ......................................................................................................................... 52
Figure 8.22 – Optional Services and Fees Section with the Fee Amount Displayed ................................ 52
Figure 8.23 – Optional Service Actions Drop-Down List ...................................................................... 52
Figure 8.24 – Optional Services and Fees Section with Optional Services Saved ................................... 53
Figure 8.25 – Fees Section .................................................................................................................. 54
Figure 8.26 – Filer Type Drop-Down List ............................................................................................ 54
Figure 8.27 – Confirm Template Details Page ..................................................................................... 55
Figure 8.28 – Templates Page ............................................................................................................ 56
Figure 8.29 – Templates Page ............................................................................................................ 57
Figure 8.30 – Filing History Page ....................................................................................................... 58
Figure 8.31 – File Into Case With Template Page ................................................................................. 59
Figure 8.32 – Actions Drop-Down List for Existing Case Templates ..................................................... 59
Figure 8.33 – Templates Page ............................................................................................................ 60
Figure 8.34 – Templates Page ............................................................................................................ 61
Figure 9.1 – Filer Dashboard Page ...................................................................................................... 62
Figure 9.2 – Example of a Case Information Section ............................................................................. 64
Figure 9.3 – Case Cross Reference Number Section ............................................................................. 64
Figure 9.4 – Case Cross Reference Type Drop-Down List ..................................................................... 65
Figure 9.5 – Sample Case Cross Reference Number Section ................................................................. 65
Figure 9.6 – Case Cross Reference Number Actions Drop-Down List .................................................... 65
Figure 9.7 – Filer Dashboard Page ...................................................................................................... 66
Figure 9.8 – Sample Case Information Section ..................................................................................... 67
Figure 9.9 – Party Information Section ................................................................................................ 68
Figure 9.10 – Country Drop-Down List ................................................................................................ 69
Figure 9.11 – Drivers License Type Drop-Down List ............................................................................. 69
Figure 9.12 – Drivers License State Drop-Down List ............................................................................ 70
Figure 9.13 – Gender Drop-Down List ................................................................................................. 70
Figure 9.14 – Interpreter Drop-Down List ........................................................................................... 70
Figure 9.15 – Party Information Section with Lead Attorneys Displayed ................................................ 71
Figure 9.16 – Filer Dashboard Page .................................................................................................... 71
Figure 9.17 – Sample Party Information Section ................................................................................... 73
Figure 9.18 – Party Information Section on Case Filing Screen .............................................................. 74
Figure 9.19 – Envelope Page Displaying Filing Details .......................................................................... 75
Figure 9.20 – Filings Section .............................................................................................................. 76
Figure 9.21 – Filing Code Drop-Down List ........................................................................................... 77
Figure 9.22 – Filing Code Drop-Down List with the Fee Displayed ........................................................ 77
Figure 9.23 – Due Date Calendar ........................................................................................................ 78
Figure 9.24 – Filing on Behalf of Field in the Filings Section ................................................................ 78
Figure 9.25 – Lead Document and Attachments Fields in the Filings Section ......................................... 79
Figure 9.26 – Security Drop-Down List in the Lead Document Section .................................................. 79
Figure 9.27 – Optional Services and Fees Section ................................................................................ 80
Figure 9.28 – Optional Services and Fees Field in the Optional Services and Fees Section .................... 80
Figure 9.29 – Optional Services and Fees Drop-Down List .................................................................... 80
Figure 9.30 – Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
        Field Displayed ......................................................................................................................... 81
Figure 9.31 – Optional Services and Fees Section with the Fee Amount Displayed ................................ 81
Figure 9.32 – Optional Service Actions Drop-Down List ...................................................................... 81
Figure 9.33 – Optional Services and Fees Section with Optional Services Saved ................................... 82
Figure 9.34 – Service Contacts Section ............................................................................................... 82
Figure 9.35 – Fees Section ................................................................................................................. 83

Figure 9.36 – Filer Type Drop-Down List ..................................................................................... 83
Figure 9.37 – Submission Agreements Section ............................................................................ 84
Figure 9.38 – Draft of Filing Page ............................................................................................... 85
Figure 9.39 – Return Date Section .............................................................................................. 86
Figure 9.40 – Return Date Section – Return Date Verified .......................................................... 86
Figure 9.41 – Return Date Section – Return Date Changed ........................................................ 87
Figure 9.42 – Return Date Section – Return Date Not Entered, Verified, and Saved ................... 87
Figure 9.43 – Return Date Section – Date Not Applicable ........................................................... 88
Figure 9.44 – Filer Dashboard Page ........................................................................................... 88
Figure 9.45 – Return Date Section with the Out of State Service Check Box Selected ............... 89
Figure 9.46 – Return Date Calendar ........................................................................................... 89
Figure 9.47 – Return Date Section – Return Date Verified .......................................................... 90
Figure 9.48 – Return Date Section – Return Date Changed ........................................................ 90
Figure 9.49 – Return Date Section – Date Not Applicable ........................................................... 91
Figure 9.50 – Return Date Section with the Return Date Displayed ............................................ 91
Figure 9.51 – Return Date Section .............................................................................................. 92
Figure 9.52 – Request Hearing Date Dialog Box ........................................................................ 93
Figure 9.53 – Request Hearing Date Dialog Box Showing Unavailable Hearing Date ................ 94
Figure 9.54 – Request Hearing Date Dialog Box Showing That the System is Unavailable ......... 94
Figure 9.55 – Request Hearing Date Dialog Box Showing a Failed Reservation ......................... 95
Figure 9.56 – Hearing Date Section on the Envelope Page ........................................................ 95
Figure 9.57 – Filer Dashboard Page ........................................................................................... 96
Figure 9.58 – Request Hearing Date Dialog Box ........................................................................ 97
Figure 9.59 – Select a Hearing Date Drop-Down List ................................................................. 97
Figure 9.60 – Select a Hearing Time Drop-Down List ................................................................. 97
Figure 9.61 – Hearing Date Section on the Envelope Page – No Hearing Previously Scheduled .............. 98
Figure 9.62 – Request Hearing Date Dialog Box ........................................................................ 98
Figure 9.63 – Select a Hearing Date Drop-Down List ................................................................. 99
Figure 9.64 – Select a Hearing Time Drop-Down List ................................................................. 99
Figure 9.65 – Filer Dashboard Page ......................................................................................... 100
Figure 9.66 – Filings Section ..................................................................................................... 101
Figure 9.67 – The Filing Code Agreement (w/ Ad Damnum) Option in the Filing Code Drop-Down
               List ........................................................................................................................ 101
Figure 9.68 – Lead Document and Attachments Fields in the Filings Section ........................... 102
Figure 9.69 – Optional Services and Fees Section .................................................................... 103
Figure 9.70 – Fees Section Example ......................................................................................... 104
Figure 9.71 – Filer Dashboard Page ......................................................................................... 105
Figure 9.72 – Sample Motion Type Drop-Down List .................................................................. 106
Figure 9.73 – Lead Document and Attachments Fields in the Filings Section ........................... 107
Figure 9.74 – Optional Services and Fees Section .................................................................... 107
Figure 9.75 – Optional Services and Fees Field in the Optional Services and Fees Section ...... 108
Figure 9.76 – Optional Services and Fees Drop-Down List ....................................................... 108
Figure 9.77 – Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
               Field Displayed ..................................................................................................... 108
Figure 9.78 – Optional Services and Fees Section with the Fee Amount Displayed .................. 109
Figure 9.79 – Example of a Filings Section with a Motion Filing Code and Motion Type Selected ............. 110
Figure 9.80 – Filer Dashboard Page ......................................................................................... 111
Figure 9.81 – Sample Fees Section ........................................................................................... 112
Figure 9.82 – Fees Section with Party Fees Displayed .............................................................. 113
Figure 9.83 – Submission Agreements Dialog Box .................................................................... 113
Figure 9.84 – Envelope Summary Page ..................................................................................... 114
Figure 10.1 – Filings Section ..................................................................................................... 116
Figure 10.2 – Message in the Filings Section ............................................................................ 117
Figure 10.3 – Lead Document Field in the Filings Section ........................................................ 118
Figure 10.4 – Auto-Redaction in Progress Verification .............................................................. 118
Figure 10.5 – Auto-Redaction in Progress Dialog Box .............................................................. 119
Figure 10.6 – Redaction Editor (Tyler Content Manager Window) ............................................. 119
Figure 10.7 – Redaction Options Drop-Down List ..................................................................... 120
Figure 10.8 – Optional Services and Fees Section .................................................................... 120

(20 of 233), Page 20 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 20 of 233
Case 1:21-cv-00305-DCN   Document 66-2   Filed 12/15/22   Page 19 of 98

Individual Filer User Guide

Figure 10.9 –Optional Services and Fees Field in the Optional Services and Fees Section ................... 121
Figure 10.10 –Optional Services and Fees Drop-Down List................................................................... 121
Figure 10.11 –Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
Field Displayed ................................................................................................................. 122
Figure 10.12 –Optional Services and Fees Section with the Fee Amount Displayed ............................ 122
Figure 10.13 –Optional Service Actions Drop-Down List ...................................................................... 122
Figure 10.14 –Fees Section .................................................................................................................. 123
Figure 10.15 –Annotation Notes Dialog Box......................................................................................... 124
Figure 10.16 –Delete Annotation Dialog Box........................................................................................ 125
Figure 10.17 –Example of a Thumbnail Pane ....................................................................................... 127
Figure 10.18 –Error Icon Displayed in the Auto-Redaction Section....................................................... 128
Figure 10.19 –Tooltip Displayed in the Auto-Redaction Section........................................................... 128
Figure 11.1 –Filing History Page .......................................................................................................... 130
Figure 11.2 –Actions Drop-Down List ................................................................................................... 130
Figure 11.3 –Case Cross Reference Number Section .......................................................................... 131
Figure 11.4 –Case Cross Reference Type Drop-Down List .................................................................. 131
Figure 11.5 –Sample Case Cross Reference Number Section .............................................................. 132
Figure 11.6 –Case Cross Reference Number Actions Drop-Down List.................................................. 132
Figure 11.7 –Filings Section ................................................................................................................. 133
Figure 11.8 –Filing Type Drop-Down List ............................................................................................. 134
Figure 11.9 –Filing Code Drop-Down List ............................................................................................. 134
Figure 11.10 –Filing Code Field with the Fee Displayed ...................................................................... 134
Figure 11.11 –Due Date Calendar ....................................................................................................... 135
Figure 11.12 –Filing on Behalf of Field in the Filings Section .............................................................. 136
Figure 11.13 –Lead Document and Attachments Fields in the Filings Section ...................................... 137
Figure 11.14 –Security Drop-Down List in the Lead Document Section................................................. 137
Figure 11.15 –Optional Services and Fees Section .............................................................................. 138
Figure 11.16 –Optional Services and Fees Field in the Optional Services and Fees Section.................. 138
Figure 11.17 –Optional Services and Fees Drop-Down List .................................................................. 138
Figure 11.18 –Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
Field Displayed ................................................................................................................. 139
Figure 11.19 –Optional Services and Fees Section with the Fee Amount Displayed ............................. 139
Figure 11.20 –Optional Service Actions Drop-Down List...................................................................... 139
Figure 11.21 –Optional Services and Fees Section with Optional Services Saved ................................ 140
Figure 11.22 –Fees Section ................................................................................................................. 141
Figure 11.23 –Filer Type Drop-Down List ............................................................................................ 141
Figure 11.24 –Bookmarks Page ........................................................................................................... 143
Figure 11.25 –Actions Drop-Down List................................................................................................. 143
Figure 11.26 –Case Cross Reference Number Section ........................................................................ 144
Figure 11.27 –Case Cross Reference Type Drop-Down List ................................................................ 144
Figure 11.28 –Sample Case Cross Reference Number Section ............................................................ 145
Figure 11.29 –Case Cross Reference Number Actions Drop-Down List................................................ 145
Figure 11.30 –Filings Section ............................................................................................................... 146
Figure 11.31 –Filing Type Drop-Down List........................................................................................... 147
Figure 11.32 –Filing Code Drop-Down List........................................................................................... 147
Figure 11.33 –Filing Code Field with the Fee Displayed ...................................................................... 147
Figure 11.34 –Due Date Calendar ....................................................................................................... 148
Figure 11.35 –Filing on Behalf of Field in the Filings Section .............................................................. 149
Figure 11.36 –Lead Document and Attachments Fields in the Filings Section ...................................... 150
Figure 11.37 –Security Drop-Down List in the Lead Document Section................................................. 150
Figure 11.38 –Optional Services and Fees Section .............................................................................. 151
Figure 11.39 –Optional Services and Fees Field in the Optional Services and Fees Section.................. 151
Figure 11.40 –Optional Services and Fees Drop-Down List .................................................................. 151
Figure 11.41 –Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
Field Displayed ................................................................................................................. 152
Figure 11.42 –Optional Services and Fees Section with the Fee Amount Displayed ............................. 152
Figure 11.43 –Optional Service Actions Drop-Down List...................................................................... 152
Figure 11.44 –Optional Services and Fees Section with Optional Services Saved ................................ 153
Figure 11.45 –Fees Section ................................................................................................................. 154

(21 of 233), Page 21 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 21 of 233
Case 1:21-cv-00305-DCN   Document 66-2   Filed 12/15/22   Page 20 of 98

Publishing History

Figure 11.46 –Filer Type Drop-Down List .................................................................................. 154
Figure 11.47 –File Into Existing Case Page .............................................................................. 155
Figure 11.48 –Actions Drop-Down List ..................................................................................... 156
Figure 11.49 –Case Cross Reference Number Section ............................................................. 156
Figure 11.50 –Case Cross Reference Type Drop-Down List ..................................................... 157
Figure 11.51 –Sample Case Cross Reference Number Section ................................................. 157
Figure 11.52 –Case Cross Reference Number Actions Drop-Down List ..................................... 157
Figure 11.53 –Filings Section ................................................................................................... 158
Figure 11.54 –Filing Type Drop-Down List ............................................................................... 159
Figure 11.55 –Filing Code Drop-Down List ............................................................................... 159
Figure 11.56 –Filing Code Field with the Fee Displayed ........................................................... 159
Figure 11.57 –Due Date Calendar ............................................................................................ 160
Figure 11.58 –Filing on Behalf of Field in the Filings Section .................................................... 161
Figure 11.59 –Lead Document and Attachments Fields in the Filings Section ............................ 162
Figure 11.60 –Security Drop-Down List in the Lead Document Section ...................................... 162
Figure 11.61 –Optional Services and Fees Section ................................................................... 163
Figure 11.62 –Optional Services and Fees Field in the Optional Services and Fees Section....... 163
Figure 11.63 –Optional Services and Fees Drop-Down List ....................................................... 163
Figure 11.64 –Example of an Optional Services and Fees Section with the Enter Amount to Be Paid
              Field Displayed ................................................................................................... 164
Figure 11.65 –Optional Services and Fees Section with the Fee Amount Displayed ................... 164
Figure 11.66 –Optional Service Actions Drop-Down List ............................................................ 164
Figure 11.67 –Optional Services and Fees Section with Optional Services Saved ...................... 165
Figure 11.68 –Fees Section ...................................................................................................... 166
Figure 11.69 –Filer Type Drop-Down List ................................................................................. 166
Figure 11.70 –Filer Dashboard Page ........................................................................................ 167
Figure 11.71 –File Into Existing Case Page .............................................................................. 168
Figure 11.72 –Sample File Into Existing Case Window .............................................................. 168
Figure 11.73 –Case Information Section .................................................................................... 169
Figure 11.74 –Filings Section ................................................................................................... 169
Figure 11.75 –The Agreement (w/ Ad Damnum) Option in the Filing Code Drop-Down List....... 170
Figure 11.76 –Case Page ......................................................................................................... 173
Figure 11.77 –Appellate Selections in the Case Information Section........................................... 175
Figure 12.1 –Actions Drop-Down List ....................................................................................... 176
Figure 12.2 –Service Contacts Page ........................................................................................ 177
Figure 12.3 –Service Contacts Page for Adding a New Contact ................................................ 178
Figure 12.4 –Actions Drop-Down List ....................................................................................... 179
Figure 12.5 –Service Contacts Page ........................................................................................ 179
Figure 12.6 –Service Contacts Actions Drop-Down List ............................................................ 179
Figure 12.7 –Add From Service Contacts Dialog Box ............................................................... 180
Figure 12.8 –Service Contacts Page ........................................................................................ 181
Figure 12.9 –Service Contacts Actions Drop-Down List ............................................................ 181
Figure 12.10 –Replace Service Contact Dialog Box .................................................................. 182
Figure 12.11 –Replace Service Contact Dialog Box with Existing Service Contacts Drop-Down
               List ................................................................................................................... 182
Figure 12.12 –Replace Service Contact Dialog Box for Adding New Service Contact ................ 183
Figure 12.13 –Service Contacts Selected by Default (With One Contact Deselected) ................ 184
Figure 12.14 –Service Contacts Page ...................................................................................... 185
Figure 12.15 –Actions Drop-Down List ..................................................................................... 185
Figure 12.16 –Service Contacts Page ...................................................................................... 186
Figure 12.17 –Service Contacts Actions Drop-Down List .......................................................... 186
Figure 12.18 –Add Service Contact from Public List Dialog Box ................................................ 186
Figure 12.19 –Add Service Contact from Public List Page ......................................................... 187
Figure 12.20 –Other Service Contacts Section (with New Contact Added) ................................. 188
Figure 12.21 –Service Contacts Page ...................................................................................... 189
Figure 12.22 –Filing History Page ............................................................................................ 190
Figure 12.23 –Actions Drop-Down List ..................................................................................... 190
Figure 12.24 –Service Contacts Page ...................................................................................... 191
Figure 12.25 –Service Contacts Actions Drop-Down List .......................................................... 191

Figure 12.26 –Save Contact to Firm Service Contacts Check Box ...................................................... 192
Figure 12.27 –Filer Dashboard Page ................................................................................................... 192
Figure 12.28 –File Into Existing Case Page .......................................................................................... 193
Figure 12.29 –Actions Drop-Down List ................................................................................................. 193
Figure 12.30 –Service Contacts Actions Drop-Down List...................................................................... 194
Figure 12.31 –Save Contact to Firm Service Contacts Check Box ....................................................... 194
Figure 12.32 –Filer Dashboard Page ................................................................................................... 194
Figure 12.33 –Service Contacts Actions Drop-Down List...................................................................... 195
Figure 12.34 –Save Contact to Firm Service Contacts Check Box ....................................................... 195
Figure 12.35 –Service Contacts Actions Drop-Down List...................................................................... 196
Figure 12.36 –Add From Service Contacts Dialog Box ......................................................................... 196
Figure 12.37 –Service Contacts Section .............................................................................................. 196
Figure 12.38 –Service Method Field in Service Contacts Section ......................................................... 197
Figure 12.39 –Service Method Drop-Down List .................................................................................... 197
Figure 12.40 –Service Contacts Page .................................................................................................. 198
Figure 12.41 –Service Contacts Actions Drop-Down List...................................................................... 198
Figure 12.42 –Attached Cases Page .................................................................................................... 199
Figure 12.43 –Filer Dashboard Page ................................................................................................... 200
Figure 12.44 –Service Contacts Section with the Details Displayed ..................................................... 201
Figure 12.45 –Actions Drop-Down List ................................................................................................. 202
Figure 12.46 –Service Contacts Page .................................................................................................. 202
Figure 12.47 –Link Parties with Contact Drop-Down List on the Service Contacts Page ....................... 203
Figure 12.48 –Link Parties Dialog Box ................................................................................................. 203
Figure 12.49 –Service Contacts Page with Paging Feature ................................................................. 204
Figure 12.50 –Service Contacts Search Page ...................................................................................... 204
Figure 12.51 –Service Contacts Page .................................................................................................. 205
Figure 12.52 –Service Contacts Actions Drop-Down List...................................................................... 205
Figure 12.53 –Service Contacts Page .................................................................................................. 206
Figure 12.54 –Service Contacts Actions Drop-Down List...................................................................... 206
Figure 12.55 –Delete Service Contact Dialog Box ............................................................................... 207
Figure 13.1 –Filing History Page ......................................................................................................... 209
Figure 13.2 –Filing History Page ......................................................................................................... 210
Figure 13.3 –Filing History Page for Filtering a Search ........................................................................ 211
Figure 13.4 –Filter by Drop-Down List.................................................................................................. 211
Figure 13.5 –All Statuses Drop-Down List ........................................................................................... 212
Figure 13.6 –Filter Date Calendar ....................................................................................................... 212
Figure 13.7 –Filing History Page ......................................................................................................... 213
Figure 13.8 –Actions Drop-Down List .................................................................................................. 213
Figure 13.9 –Filing History Page ......................................................................................................... 214
Figure 13.10 –Envelope Page ............................................................................................................. 215
Figure 13.11 –Filing History Page ....................................................................................................... 216
Figure 13.12 –Envelope Page ............................................................................................................. 217
Figure 13.13 –Filer ID in the Party Details Section of the Party Information Section .............................. 218
Figure 13.14 –Filing History Page ....................................................................................................... 219
Figure 13.15 –Envelope Page ............................................................................................................. 220
Figure 13.16 –Envelope Receipt ......................................................................................................... 221
Figure 13.17 –Filing History Page ....................................................................................................... 222
Figure 13.18 –Example of a Filings Section in the Envelope Details ..................................................... 223
Figure 13.19 –Filing History Page ....................................................................................................... 224
Figure 13.20 –Example of Filing Details in a Filings Section ................................................................ 225
Figure 13.21 –Filing History Page ....................................................................................................... 226
Figure 13.22 –Filing History Page – Canceling a Filing........................................................................ 227
Figure 14.1 –Bookmarks Page............................................................................................................. 228
Figure 14.2 –Bookmarks Actions Drop-Down List ................................................................................ 229
Figure 15.1 –Reports Page.................................................................................................................. 230
Figure 15.2 –Report Parameters Panel of Reports Page for Financial Reconciliation Report ................ 231
Figure 15.3 –Filter Date Calendar ....................................................................................................... 232
Figure 15.4 –Status Field Drop-Down List............................................................................................ 232
Figure 15.5 –Reports Page.................................................................................................................. 233

Publishing History

Figure 15.6 – Report Parameters Panel of Reports Page for Filings Report ........................................... 234
Figure 15.7 – Filter Date Calendar ................................................................................................... 235
Figure 15.8 – Status Drop-Down List ............................................................................................... 235

**ER-912**



# 2   E-Filing Overview

**Topics covered in this chapter**

♦ Filing Queue Status

This section describes the e-filing process.



**Figure 2.1 – The E-Filing Process**

Once a user has registered to use Odyssey® File & Serve™, a filer can electronically file documents to the court. When the filing is submitted, the filing is electronically delivered to the clerk's inbox. The clerk then reviews the filing and either accepts, rejects, or returns the filing.

If the clerk accepts the filing, the case is docketed and set to appear in the clerk's case management system. An email is sent to the filer with the case status, along with any pertinent information regarding the case. If the option for service was selected during the filing, service is electronically sent to the contacts on the case.

If the filing is returned or rejected, the envelope is sent back to the filer with a reason for the rejection, and the filer is given a time line in which to make the correction and resubmit the filing.

If the filer has questions regarding the filing or case, it is recommended that the filer contact the local court.

**ER-914**

# Filing Queue Status

The filing queue status lets you know where you are in the e-filing process. The key represents the status listed for your filing.

The following filing status key table describes the status associated with each filing type.

**Note: EFO – EFile Only; EFS – EfileAndServe; SO – Service Only**

| Status | Filing Type | Definition |
|---|---|---|
| Draft | EFO, EFS, SO | The filer has entered full or partial filing data, but has not yet submitted the filing. |
| Submitting | EFO, EFS, SO | The filer has submitted the filing, but the document file format and payment information have not been verified on the back end. |
| Submitted | EFO, EFS, SO | The document file format and payment information have been verified and accepted, but the filing has not yet entered the Review Queue/Workflow Process. |
| Court Processing | EFO, EFS, SO | Some additional action needs to be taken by the court. |
| Under Review | EFO, EFS | A clerk reviewer has selected a filing from a queue.<br>**Note: Once a filing reaches the Under Review status, it cannot return to the Submitted status. Selecting the End Review retains the Under Review status and returns the filing to the queue.** |
| Receipted | EFO, EFS | The filing has been acknowledged by the court as received, but it is not being transmitted to the case management system to become part of the court record. The filing may or may not be part of the proposed order work flow. |
| Accepted | EFO, EFS | The reviewer has reviewed the filing and accepted it. |
| Rejected | EFO, EFS | The reviewer has reviewed the filing and rejected it. |

**ER-915**

| Status | Filing Type | Definition |
|--------|-------------|------------|
| Returned | EFO, EFS | The reviewer has reviewed and returned the filing because the filer must take additional action.<br><br>**Note: The filer can cancel or copy a filing in the Returned status.** |
| Served | SO | Service Only filings are completed. |
| Service Incomplete (Service Only filings) | SO | One or more servings failed; the service was incomplete. Example: The email or domain was rejected. |
| Canceled | EFO, EFS, SO | The filer has canceled the filing. The filer can only cancel draft and submitted filings. |
| Submission Failed | EFO, EFS | A file format or billing error has occurred when the filer submitted the filing. Failure specifics are available on the *Details* page, and the filer is notified of specifics through email. |

**ER-916**

# EXHIBIT 15
# FETTERLY DECLARATION

From:        Diaz, Abigail <Abigail.Diaz@tylertech.com>
Sent:        Thu 10/13/2022 10:07 AM (GMT-07:00)
To:          Keating, Katherine <katherine.keating@bclplaw.com>
Cc:
Bcc:
Subject:     RE: Your Letter to Courthouse News Service
Attachments: FW_ Your Impermissible Use of Tyler's Name and Materials.eml

Katherine,
Thank you for your letter. I'm writing to confirm receipt. For what it's worth, I sent a second email to Mr.
Girdner on Tuesday morning after my prior communication was not addressed. I'm attaching it here for
your reference.
I will discuss your response with my team and let you know if we have anything further to discuss.
Abby

**Abigail Diaz**
Chief Legal Officer
Tyler Technologies, Inc.

P: 800.772.2260 ext.4289

[www.tylertech.com](www.tylertech.com)


    

**From:** Keating, Katherine <katherine.keating@bclplaw.com>
**Sent:** Wednesday, October 12, 2022 7:47 PM
**To:** Diaz, Abigail <abigail.diaz@tylertech.com>
**Subject:** Your Letter to Courthouse News Service

**This Message Is From an External Sender**
This message came from outside your organization.

Dear Ms. Diaz:
Attached is a letter on behalf of Courthouse News Service responding to yours of September 30. Mr.
Girdner asked me to convey his apologies for having missed your e-mail. As reflected in my letter,
Courthouse News saw your letter for the first time yesterday when counsel for the Idaho clerk included it
as an exhibit to discovery requests. Mr. Girdner checked his folder of deleted e-mails today and
confirmed that your September 30 e-mail was there.
We appreciate Tyler sharing its concerns, and I look forward to speaking with you.
Sincerely,
Katherine Keating

CNS_013299


EXHIBIT
30

KATHERINE KEATING
Counsel
katherine.keating@bclplaw.com
T: +1 415 268 1972F: +1 415 430 4372

BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor, San Francisco, CA 94111-4070

bclplaw.com

This electronic message is from a law firm. It may contain confidential or privileged information.
If you received this transmission in error, please reply to the sender to advise of the error and
delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and
regulations. Where appropriate we may also share certain information you give us with our other
offices (including in other countries) and select third parties. For further information (including
details of your privacy rights and how to exercise them), see our updated Privacy Notice at
www.bclplaw.com.

CNS_013300

**ER-919**

From:          Diaz, Abigail <Abigail.Diaz@tylertech.com>
Sent:          Tue 10/11/2022 7:48 AM (GMT-07:00)
To:            bgirdner@courthousenews.com <"bgirdner@courthousenews.com>
Cc:
Bcc:
Subject:       FW: Your Impermissible Use of Tyler's Name and Materials
Attachments:   image00100001.png; Diaz to Girdner re CNS Contact of Tyler Clients00002.pdf

I did not receive the information I requested from you in the attached letter. Please provide it
immediately. If you refuse to dispel the confusion you have created, then at the very list please send me
the list of Tyler client sites you contacted so that Tyler can dispel the confusion directly.

Thank you,
Abby

**Abigail Diaz**
Chief Legal Officer
Tyler Technologies, Inc.

P: 800.772.2260 ext.4289

[www.tylertech.com](www.tylertech.com)



**From:** Diaz, Abigail
**Sent:** Friday, September 30, 2022 10:00 AM
**To:** bgirdner@courthousenews.com
**Subject:** Your Impermissible Use of Tyler's Name and Materials

Please see the attached correspondence.

**Abigail Diaz**
Chief Legal Officer
Tyler Technologies, Inc.

P: 800.772.2260 ext.4289

[www.tylertech.com](www.tylertech.com)

CNS_013301

**ER-920**

# EXHIBIT 16
# FETTERLY DECLARATION

11.07.2022
30b6 Dvorak
**8**
Buell Realtime Reporting

| | |
|---|---|
| **From:** | Fisher, Jessi <Jessi.Fisher@tylertech.com> |
| **Sent:** | Thursday, July 14, 2022 10:02 PM |
| **To:** | Doug Hansen; Jennifer Dvorak; Wade Howland |
| **Subject:** | FW: Auto Review and Press Review Deck |
| **Attachments:** | Auto Accept Review and Press Review Tool.pdf |

Good evening,

I've attached the deck Terry mentioned today regarding the Auto Accept Review and Press Review Tool.


Thank you,

**Jessi Fisher**
Client Executive
Tyler Technologies, Inc.

P: 972.713.3770 ext: 113164

www.tylertech.com



*Never used Tyler Search?*
Download the training guide »


Watch this video to learn more »

**ER-922**





# Auto-Accept Review & Press Review Tool

07/01/2022

© Tyler Technologies 2022

**ER-923**

# Auto-Accept Review vs. Press Review Tool

## *Auto-Accept Review*



## *Press Review Tool*



*Auto-Accept Review is a <u>free</u>, "out of the box" e-filing function that allows Clerks to <u>automatically</u> accept filings based on a set of conditions*

*Conditions can be configured using the same criteria that is used to define which review queues filings are routed to, allowing Clerks to configure the solution to meet their needs*

*Press Review Tool an application that works in conjunction with eFile & Serve to provide Clerks the option to <u>grant access</u> to filings as soon as they are filed (prior to Clerk review)*

*Press Review Tool surfaces filings that match a defined set of configuration, allowing authorized users to access non-sensitive filings that are in a "Submitted" or "Under Review" status*

© Tyler Technologies 2022

# Auto-Accept Review



eFiling function that allows clerks to automatically accept filings if the filing matches locally-configured criteria (conditions)

Conditions can be configured based upon:
* Filing Firms
* Filing Codes
* Filings with/without Financials
* Filing Source (EFSP)
* Additional Services
* Judicial Officers
* Party Types
* And more…

© Tyler Technologies 2022



Case 1:21-cv-00305-DCN   Document 66-2   Filed 12/15/22   Page 36 of 98

# Auto-Accept Review – How Does It Work?



1. Upon submission, filings are evaluated against the locally-configured Auto-Review condition(s)

2. If the envelope details _do not_ meet the Auto-Review condition(s), the envelope is routed to the appropriate review queue to be reviewed by clerk (as it is today)

3. If the envelope details _meets_ the Auto-Review condition(s), the filings are _automatically_ accepted, stamped, funds captured, and notifications sent to filers/service recipients

© Tyler Technologies 2022



# Benefits of Auto-Accept



### Improves Average Response Time

*Automatically accepting common, low priority filings allow Clerks to focus on more complex, high priority filings, and respond to filers faster*



### Reduces Return for Correction Rates

*Many Courts' effectiveness are measured by the percentage of accepted filings, auto acceptance improves these metrics*



### Reduces Operational Overhead

*Auto acceptance removes the need for Clerk intervention, instantly increasing an office's reviewing capacity*

© Tyler Technologies 2022





# The Effectiveness of Auto-Review

# Auto-Accept Review - How To Get Started?

**Determine Business Needs**

**Design Auto Accept Criteria**

**Submit eSolutions Support Ticket**

- ❖ Start with simple filing scenarios with high probability of acceptance

- ❖ Common scenarios:
  - ➢ Filings from Gov. Agencies or specialized Firms
  - ➢ Subsequent, no fee filings

- ❖ Auto Review conditions commonly include a combination of:
  - ➢ Case Category
  - ➢ Case Type
  - ➢ Filing Code
  - ➢ Filing Firm
  - ➢ Optional Services
  - ➢ Document Type
  - ➢ Payment Type

- ❖ Auto Review feature is configurable by node/court location

- ❖ Allow 2-3 business weeks for setup, testing, and promotion to production

- ❖ More complex conditions may take longer

- ❖ Consultation appointment can be scheduled via Support, or contact out to eSolutions CSAM

© Tyler Technologies 2022



ER-929

# Press Review Tool

Solution that allows clerks to make e-Filed materials immediately available to the press and other authorized stakeholders

Records can be made available based upon:
- Case Type Codes
- Number of Days
- Filing States (Statuses)
- Security Groups
- Document Types

Requires eFiling contract amendment, updated terms and conditions and an annual fixed-fee



© Tyler Technologies 2022



Case 1:21-cv-00305-DCN    Document 66-2    Filed 12/15/22    Page 41 of 98

# Press Review Tool – How Does It Work?



1. Upon submission, filings are evaluated against the Press Review condition(s)

2. If the envelope details *meet* the Press Review conditions, the envelope data and document are surfaced in the Press Review Tool while they await Clerk review

3. Once the Clerk takes action on the envelope, the envelope data and document are removed from Press Review Tool and are processed accordingly

Note: If the envelope details *do not meet* the Press Review conditions, the envelope data and documents are never surfaced within the Press Review Tool

© Tyler Technologies 2022



# Press Review Tool – Configuration Options

| Configuration Option | Description |
|---|---|
| Case Type Codes | This a list of case type codes that should be included in the Press Review tool |
| Days | This is the number of days documents should be included. Documents that are older than this date will be omitted from the Press Review tool |
| Filing States | This is a list of filing states that are to be included. Any filing not in one of these states will be omitted from the Press Review tool. (ex. Submitted, Under Review, Accepted, Rejected, etc.) |
| Security Groups to Omit | This is a list of case security group codes that are to be omitted. Any filing linked to a case with one of these security groups will be omitted from the Press Review tool. |
| Document Types to Omit | This is a list of document type codes that are to be omitted from the Press Review tool. |

© Tyler Technologies 2022



**ER-932**

# Press Review Tool – How to Get Started?

**Purchase Press Review Tool**

**Determine Configuration and Access**

**Submit eSolutions Support Ticket**

- ❖ Press Review Tool requires an amendment to the eFile & Serve contract

- ❖ Cost for the Press Review Tool is $108k/year for a statewide implementation

- ❖ Costs include implementation services, infrastructure and support

- ❖ Review and determine your configuration preferences for the Press Review Tool

- ❖ Create generic credentials (Username/Password) to provide authorized users access to the Press Review Tool

- ❖ Provide additional usernames (email address) that have authorization to access Press Review Tool

- ❖ Submit your configurations and usernames (email addresses) for the users you would like to provide access to

- ❖ Allow 2 - 6 weeks for setup, testing, and promotion to production

- ❖ Consultation appointment can be scheduled via Support, or contact your eSolutions CSAM

© Tyler Technologies 2022

tyler
technologies

**ER-933**



# EXHIBIT 17
# FETTERLY DECLARATION



State of
# IDAHO
JUDICIAL BRANCH

11.11.2022
30(b)(6) Omundson
**41**
Buell Realtime Reporting

# IDAHO COURT OPERATIONS MANUAL

## Statewide Standard Idaho Court Processes

1

# Idaho Court Operations Manual
# Statewide Standard Idaho Court Processes

This manual includes published statewide court processes related to court operations and their execution in the Odyssey electronic case management system.

Court processes have been compiled into this manual to make their access easier and faster; in addition to step-by-step instructions, information includes explanations supporting mandatory steps, notes highlighting best practices and options for greater efficiencies, and cautions and warnings to prevent inaccuracies or omissions related to certain requirements.

Please read the user guide below for instructions for easily navigating the manual; if you have any questions or suggestions, please contact CourtQuestions@idcourts.net.

The use of this manual is intended for Idaho court personnel and may not be shared with anyone who is not employed by the Idaho Supreme Court or by an Idaho county in a designated court role.

## Manual User Guide

**Hyperlinks**

Hyperlinks – which show up in blue text - are embedded throughout the manual to facilitate easy navigation between related sections.

In the Table of Contents, each topic area contains two hyperlinks: one on the topic title, and one on the page number:



**Call-outs**

Certain icons are used to note important information:

 Tips, ideas, and helpful information

 Important information, usually a caution

 Critical information, including requirements and warnings

**Ctrl+Home**

To jump to the start of the manual, enter Ctrl+Home

**Search**

Use standard PDF search methods to quickly find all references to the word or phrase entered in the search field:

Click on the icon in the upper menu to open the search window:

2

Alternatively, enter "Ctrl+F" to open the search window.

**Customize your downloaded manual**

You can add your own notes to the PDF by selecting the "Add Text" functionality in the upper menu. If you are adding notes to a PDF you have downloaded to your desktop, those notes will appear only on your copy. Please note that when you download the next month's updated manual, the updated manual will not contain any notes you made in earlier manuals. You can archive any customized versions of the manual on your system.



**Effective date**

Court processes can change due to new or revised court rules, statutes, and regulations, continuous process improvements, and updated system functionality. If you need to contact CourtQuestions@idcourts.net or Service@idcourts.net for assistance with one of these processes, please be sure to share the date on the bottom of the page: this will confirm whether you are referring to the current version of the process.



FOR INTERNAL USE ONLY

JANUARY, 2021          Questions? CourtQuestions@idcourts.net          182

The manual will be updated and published monthly (the monthly Education Update will list all significant changes made in the update). The updated manual will be available in Bridge (to access Bridge, click on this link or go to www.isc.bridgeapp.com).

3

You may download the manual PDF to your desktop for immediate access and to take advantage of the ability to add your own notes.

*** The *Navigator User Guide* – which includes instructions on using functionality introduced with the deployment of Navigator on January 19, 2021 – can be found here. This information includes Favorites, Jobs, Messages, Tasks, Annotations, Financials, and Keyboard Shortcuts. ***

Table of Contents

4

## 1.0 OVERVIEW OF THE IDAHO COURT SYSTEM ................................... 18
**Judicial Districts and Regional Structure of the Courts** ................................. 18
**Jurisdiction of the Courts** ................................................................. 19
**Judicial Administration** .................................................................... 20
**Selection, Discipline, and Removal of Judges** ........................................ 23
**Mission Statement of the Idaho Courts** ............................................... 24

## 2.0 ACCESS TO COURT RECORDS ................................................. 26
**Destruction of Court Records** ........................................................... 26
**Idaho Court Administrative Rule 32** .................................................... 28
**Livestream Virtual (Zoom) Hearings to YouTube** ..................................... 29
**Media Requests for Court Records and Access to Court Proceedings** .............. 38
**Public Request to Access Court Records** .............................................. 39

## 3.0 PROVIDING SERVICE TO THE PUBLIC AND PROFESSIONAL ETHICS
........................................................................................ 40
**Providing Service to the Public – Clerk and CAO Responsibilities** ................. 41
**Providing Service to the Public – Tips for Providing Better Service** ................ 42
**Providing Service to the Public – What Information Can and Cannot be Provided** ....... 43
**Professional Ethics for Clerks and Court Staff** ....................................... 45

## 4.0 ADMINISTRATIVE (ADMIN) CASES .......................................... 49
**Admin – Grand Jury** ...................................................................... 49
**Grand Jury New Case Initiation** ........................................................ 54
**Admin – Magistrate / Special Inquiry** .................................................. 57
**Admin – Search Warrant** ................................................................. 59
**Admin – Special Prosecutor** ............................................................. 64
**Rule 5B Out-of-County Arrests** .......................................................... 65

## 5.0 CIVIL ......................................................................... 70
**What Happens in a Civil Case?** ......................................................... 70
**All Initial Case Filings** ................................................................... 71

## CIVIL PROCESSES (ALPHABETICALLY) ......................................... 72
**Abstract of Judgment** .................................................................... 72
**Add an Intervenor** ....................................................................... 74
**Administrative Appeals from the Idaho Department of Water Resources** .......... 76
**Bankruptcy** ................................................................................ 79

5

Blood Alcohol Content (BAC) Case ............................................................. 82

Change of Venue (Civil and Family) ........................................................... 89

Change of Venue Clerk Contact List .......................................................... 91

Change of Venue to a Different District ...................................................... 94

Change of Venue within the Same District ................................................. 96

Civil Cases ................................................................................................. 98

Civil New Case Initiation ........................................................................... 113

Civil Judgments ......................................................................................... 114

Civil Forfeiture .......................................................................................... 119

Civil Forfeiture New Case Initiation .......................................................... 120

Contempt (Civil and Family) ..................................................................... 121

Contempt (Separate Proceedings) ........................................................... 131

Debtor's Exam .......................................................................................... 141

Depositions .............................................................................................. 144

Forcible Detainer -Unlawful Possession - No Agreement ........................ 146

Foreign Judgments ................................................................................... 148

Foreign Defamation Judgment ................................................................. 153

Foreign (Out-of-State) Subpoena or Summons ........................................ 154

Fugitive Warrant (Extradition) ................................................................... 155

Habeas Corpus ......................................................................................... 158

Judicial Review of Agency Action ............................................................. 160

Medical Malpractice New Case Initiation .................................................. 162

Minor's Compromise New Case Initiation ................................................. 163

Money Judge (Motions Requesting Additional Defense Services) ........... 165

Name Change ........................................................................................... 167

Name Change New Case Initiation ........................................................... 167

Petition for Interlock Relief ....................................................................... 171

Post-Conviction Relief .............................................................................. 173

Post-Conviction Relief New Case Initiation .............................................. 174

Quiet Title ................................................................................................. 178

Relief from Firearm Restriction (Disability) .............................................. 178

Removal to Federal Court ......................................................................... 181

Retain Sexual Assault Evidence Kit ......................................................... 183

Small Claims ............................................................................................. 183

Unlawful/Forcible Detainer (Eviction) and Online Dispute Resolution ........................................ 191

Writ of Execution ........................................................................................................................ 195

Writ of Mandate/Mandamus New Case Initiation ........................................................................ 198

Wrongful Conviction Act ............................................................................................................. 200

## 6.0 CRIMINAL CASE PROCESSES ..................................................... 202

What Happens in a Criminal Case? ............................................................................................. 202

What Happens in a Criminal Sentencing? ................................................................................... 206

Criminal Citation – New Case Initiation ...................................................................................... 209

Criminal Complaint New Case Initiation ...................................................................................... 213

Criminal Indictment New Case Initiation ..................................................................................... 215

Criminal New Case Initiation from PreFile Node .......................................................................... 216

Reassign a Pre File Case Using List Manager ............................................................................. 218

## CRIMINAL PROCESSES (ALPHABETICALLY) ...................................... 219

Amend or Modify Criminal Charges ............................................................................................. 219

Bind Over to District Court .......................................................................................................... 221

Competency Evaluation (I.C. §§ 18-211, 18-212) ....................................................................... 224

Compromise and Satisfaction ..................................................................................................... 226

Contempt (Criminal and Juvenile) .............................................................................................. 227

Correction or Reduction of Sentence (Rule 35) .......................................................................... 236

Criminal Disposition Public / Media Report ................................................................................. 238

Criminal Domestic Violence Court ............................................................................................... 240

Criminal No Contact Order .......................................................................................................... 242

 Expired No Contact Order Report ............................................................................................... 246

Deferred Prosecution .................................................................................................................. 248

Delete a Charge Entered in Error ................................................................................................ 250

Discharge of Defendant – I.C. § 19-2604 Amendment or Dismissal............................................. 251

DUI Diversion .............................................................................................................................. 255

Expungement .............................................................................................................................. 257

Felony Procedure ........................................................................................................................ 261

Fines, Fees, and Court Costs ....................................................................................................... 274

Fingerprint Number Entry ........................................................................................................... 278

License Suspension Report .......................................................................................................... 280

Misdemeanors ............................................................................................................................. 281

 Misdemeanor Citations................................................................................................................ 285

Misdemeanor Mutual Consent Citations (Fish and Game) ..................................... 288

Payable Misdemeanors ............................................................................................ 289

Multiple Defendant Cases ....................................................................................... 290

Out of County Probation Violation Arrest – Notice to Originating County ................. 295

Out of County Courtesy Probation and COS Payments Court Process..................... 296

Out-of-County Courtesy Supervision (Probation) .................................................... 303

Pardons and Firearms Rights Restoration Certificates............................................ 307

Plea, Disposition and Sentence .............................................................................. 309

Pretrial Services ..................................................................................................... 315

Order to Report to Pretrial Services ........................................................................ 316

Non-Compliance ..................................................................................................... 316

Pushing Cases to Pretrial Services ......................................................................... 318

Court Cost Removal on Court Compliance Cases .................................................... 320

Probation................................................................................................................. 322

Probation Violation ................................................................................................. 325

Restitution Defendant Name Listing ....................................................................... 330

Restitution and Civil Penalty with Victim and Interest Entry .................................... 332

Restitution and Fine for Civil Penalty Interest Calculator ........................................ 337

Joint and Several Restitution between Defendants.................................................. 340

Sex Offender Registration ....................................................................................... 345

Track Speedy Trial .................................................................................................. 347

Transfer Criminal Case to Juvenile Case ................................................................ 349

Treatment Court ..................................................................................................... 351

Vertical Judge Assignment ..................................................................................... 354

Warrants and Detention Orders .............................................................................. 358

Amend a Warrant Amount....................................................................................... 366

Issue a New Warrant or Detention Order ................................................................ 367

Material Witness Warrant (Hold) ............................................................................. 369

Quash or Recall a Warrant or Detention Order........................................................ 371

Return a Warrant or Detention Order ...................................................................... 372

Transfer for Plea and Sentencing I.C.R. 20 ............................................................ 373

Withheld Judgments ............................................................................................... 375

7.0 INFRACTIONS ...........................................................................377

What Happens in a Traffic Case?............................................................................ 377

Infractions ................................................................................................ 380

Infraction New Case Initiation ................................................................ 389

Delete a Duplicate Citation or Case ...................................................... 391

Default Infraction Report ....................................................................... 392

Set Aside Infraction Default ................................................................... 397

## 8.0 JUVENILE ............................................................................... 397

What Happens in a Juvenile Corrections (JCA) Case? ......................... 398

Juvenile .................................................................................................. 400

Juvenile Charged as an Adult ............................................................... 407

Juvenile Expungement .......................................................................... 408

Juvenile Informal Adjustment ............................................................... 411

Juvenile Interstate Compact (ICJ) for Returns ..................................... 415

Juvenile Out-of-County Probation and Temporary Transfer of Supervision ............ 417

Juvenile Petition New Case Initiation .................................................... 421

Juvenile Probation ................................................................................. 423

Juvenile Probation Violation .................................................................. 425

Juvenile Rule 10 Change of Venue ....................................................... 429

Juvenile Discretionary Waiver of Jurisdiction to District Court .............. 438

One Judge, One Family .......................................................................... 439

Transfer Juvenile Case to Criminal Case .............................................. 440

## 9.0 BONDS ..................................................................................... 442

Bond Forfeiture – Case Dismissed (Misdemeanors) ............................ 442

Bondsman, Bond Company, and Surety (Insurance) Company ............. 445

Cash Bonds ........................................................................................... 447

Cash Bonds Exceeding $10,000 ........................................................... 456

Property Bond ........................................................................................ 459

Surety Bonds ......................................................................................... 461

Transcript (Cash) Bond Entry ................................................................ 466

## 10.0 FAMILY CASES (ALPHABETICALLY) ................................... 468

Adoption ................................................................................................ 468

Adoption (Adult) New Case Initiation .................................................... 468

Adoption (Minor) New Case Initiation ................................................... 469

Adoption – Social Investigation (Home Study) ...................................... 470

9

Adoption – Final Judgment .................................................................................. 471

Adoption and Termination of Parental Rights ................................................... 473

Adoption and Termination of Parental Rights New Case Initiation ................ 481

Child Protection .................................................................................................... 488

Child Protection Adjudicatory Hearing ............................................................. 500

Child Protection Aggravated Circumstances .................................................... 502

Child Protection Case Change of Venue ............................................................ 503

Child Protection Case Party Age Report ............................................................ 505

Child Protection Case Planning Hearing ........................................................... 508

Child Protection Drug Court Monthly Fee Assessment .................................... 509

Child Protection Extended Foster Care .............................................................. 512

Child Protection Indian Child Welfare Act (ICWA) ........................................... 513

Child Protection Investigation Report ................................................................ 515

Child Protection Permanency and Sub Permanency Hearings ........................ 516

Child Protection Placement Process ................................................................... 518

Child Protection Shelter Care Hearings ............................................................. 521

Child Protection Six Month Review and Sub-Six Month Review Hearing ...... 523

Child Protection Status Review Hearing ............................................................ 524

Child Protection Termination of Parental Rights .............................................. 525

Child Support / Custody ....................................................................................... 527

Child Support filed by the Department of Health and Welfare ........................ 527

Civil Protection Order .......................................................................................... 534

Protection Order Dismissed – Petitioner Fails to Appear ................................ 537

Protection Order Hearing Continued - Both Parties Attend ............................ 539

Protection Order is Granted ................................................................................ 540

Protection Order Modification Request Denied ................................................ 542

Protection Order Modified or Renewed ............................................................. 543

Protection Order New Case Initiation via File & Serve (OFS) ......................... 545

Protection Order New Case Initiation via Self Represented Litigants ............ 547

Protection Order Terminated ............................................................................... 549

Temporary Protection Order is Denied and Dismissed .................................... 551

Temporary Protection Order is Denied but Set for Hearing ............................ 552

Temporary Protection Order is Granted ............................................................ 554

Freestanding Protection Order ........................................................................... 557

Mandatory Protection Order Forms ................................................................................ 558

Register a Foreign Protection Order ............................................................................. 559

Application for Protection Order Modification ............................................................. 560

Both Parties Attend Protection Order Hearing but Continued ................................... 563

Only Petitioner Attends Protection Order Hearing (Respondent Fails to ...................564

Appear) ........................................................................................................................... 564

Result Ex Parte Temporary Protection Order Hearing ................................................ 566

Result Protection Order Hearing .................................................................................. 567

Result Protection Order Modification Hearing ............................................................ 568

Return of Service for Protection Order ......................................................................... 569

Custody Decree from another State ............................................................................... 570

Defacto Custodian ......................................................................................................... 573

Divorce ........................................................................................................................... 578

Divorce with Minor Children New Case Initiation ...................................................... 582

Divorce without Minor Children New Case Initiation ................................................. 583

Family Law License Suspension .................................................................................... 584

Family Law License Suspension New Case Initiation .................................................. 587

Family New Case Initiation ........................................................................................... 588

Modify (Reopen) a Family Law Case ............................................................................ 590

Judicial Consent for Abortion ...................................................................................... 595

Legal Separation and Annulment (with and without Minor Children) ....................... 600

Paternity ......................................................................................................................... 605

Surrogacy / Gestational Carrier New Case Initiation .................................................. 609

Termination of Parental Rights ..................................................................................... 610

Uniform Interstate Family Support Act ........................................................................ 613

## 11.0 PROBATE AND MENTAL HEALTH CASES.....................................613

Conservatorship of an Incapacitated or Developmentally Disabled Adult ................. 613

Minor Conservatorship .................................................................................................. 623

Minor Guardianship ....................................................................................................... 627

Formal Probate New Case Initiation ............................................................................. 639

Guardianship and Conservatorship ............................................................................... 643

Guardianship of an Incapacitated or Developmentally Disabled Adult....................... 668

Guardianship and Conservatorship Reporting .............................................................. 674

Civil Commitment .......................................................................................................... 683

11

Civil Commitment New Case Initiation ................................................................. 689

Civil Commitment: Dangerous and Mentally Ill ................................................... 691

Civil Commitment-Entering a Commitment Order (Including Firearm Restriction) ........ 692

Probate ................................................................................................................ 693

Formal Probate .................................................................................................... 694

Petition for Informal Probate (A6): Informal Probate New Case Initiation ............ 699

Probate:  Common Terms for Estate Proceedings ............................................. 702

Petition to Compromise Minors Claims ............................................................... 704

Registration of Trust ............................................................................................ 706

Registration of Will .............................................................................................. 706

Summary Administration of Small Estate New Case Initiation ............................ 708

**12.0 PROCESSES USED ACROSS MULTIPLE CASE TYPES ................. 711**

Add a Case File Location ..................................................................................... 711

Attorneys ............................................................................................................. 713

Pro Hac Vice Attorney ......................................................................................... 715

Case Close and Reopen ...................................................................................... 716

Case File Location ............................................................................................... 718

Case Flags ........................................................................................................... 721

Case Notes .......................................................................................................... 723

Case Opened at the Incorrect Node (Case Index Report) .................................. 724

Court Sessions, Calendars, and Resources ....................................................... 726

Create or Modify Judge Wheels .......................................................................... 732

Deceased Party .................................................................................................... 734

Delete a Case Note .............................................................................................. 737

Attach Documents to a Queue for Court Reporters ............................................ 738

Attach or Relate a Document ............................................................................... 740

Batch Print Document from Session .................................................................... 741

Certify, Authenticate, and Exemplify Documents ............................................... 742

Copy or Move a Document to another Case ........................................................ 746

Delete a Document Note ...................................................................................... 748

Document Stricken from the Record .................................................................... 749

Email Documents and Track Service ................................................................... 750

Forms, Envelopes & Helpful Hints ...................................................................... 752

Generate Forms and Documents ......................................................................... 753

12

Lock and Unlock Word Documents ................................................................. 755

Manual OCR Converted Documents .............................................................. 756

Obsolete Documents ....................................................................................... 757

Parties and Participants .................................................................................. 758

Scanning Documents ...................................................................................... 764

Tagging a Document for Signature ................................................................ 767

Unable to Print ................................................................................................ 769

Events .............................................................................................................. 770

Event Listing Report ....................................................................................... 775

Event Review Report ....................................................................................... 778

Events for Judges and Staff Attorneys ......................................................... 780

Reminders and Event Due Dates .................................................................. 782

Exhibits ........................................................................................................... 784

Ex Parte Communications ............................................................................. 790

Hearings ......................................................................................................... 792

Reschedule (Reset or Continue) Hearings .................................................. 795

Result or Vacate (Cancel) a Hearing ............................................................ 798

Schedule a Hearing ....................................................................................... 800

Schedule a Remote Hearing ......................................................................... 804

Hearing Management ..................................................................................... 806

Inactive Case Status ...................................................................................... 808

Inactivity Dismissal Report ........................................................................... 811

In-Court Processes ......................................................................................... 813

Trial Procedure and Oaths ............................................................................ 821

For the Record (FTR) ..................................................................................... 827

Mistrial ............................................................................................................ 845

Judicial Disqualification and Reassignment ................................................ 847

Reassign a Judge to Multiple Cases ............................................................ 849

Jury Commission Purpose and Procedures ................................................ 852

List Manager ................................................................................................... 856

Certified Mail - Registered Mail Fee Process ............................................. 859

Returned / Undeliverable Mail ...................................................................... 862

Modify Case Type, Party Connection, or Case Style .................................. 864

Merge and Unmerge Party Records (Masters) ........................................... 866

13

Related and Consolidated Cases ........................................................................... 868

Re-use a Case Number ....................................................................................... 871

Stipulation for Entry of Judgment ........................................................................ 873

Subpoena ........................................................................................................ 874

Summons ......................................................................................................... 876

Queues and Workflow Setup and Configuration ..................................................... 881

Queues, Annotations and Workflows .................................................................... 882

Time Zones ....................................................................................................... 887

Under Advisement ............................................................................................. 889

## 13.0 FINANCIAL PROCESSES ......................................................... 890

Agency Restitution Costs .................................................................................... 890

Fee Waiver ....................................................................................................... 898

Miscellaneous Payment Refunds ......................................................................... 900

Processing Payments ......................................................................................... 907

Projected Fees .................................................................................................. 912

Tills for Cashiers and Counter Clerks .................................................................... 914

Verify Payment for Optional Services .................................................................... 920

Working with Tills/Cashiering Stations ................................................................... 921

For all other financial processes, please go to Service Now. .................................... 925

## 14.0 APPEALS ........................................................................... 926

Appeals Overview .............................................................................................. 926

Appeals to the Supreme Court ............................................................................. 935

Appeals - Creating a Record on Appeal and Task Manager ...................................... 943

Appeals – Small Claims to Magistrate Court .......................................................... 954

Appeals – Magistrate Division of the District Court ................................................. 956

Appeals – Termination of Parental Rights or Denial of Adoption to Supreme Court ...... 959

Appeal by Permission (Interlocutory) .................................................................... 961

Court Reporter Task Queue Setup ........................................................................ 963

Attach Documents to a Queue for Court Reporters ................................................. 964

## 15.0 REPORTS ........................................................................... 966

Reports Court Process ....................................................................................... 966

Set up Bankruptcy Pending Report ....................................................................... 971

Case File Location Report ................................................................................... 972

Age of Pending  Caseload ........................................................................... 973

Case Status Exception Report ................................................................... 978

Change of Venue Reports ........................................................................... 980

Changing a Case Type ................................................................................ 982

Child Protection Pending Cases Details Report ..................................... 982

Child Protection Timeliness of  Hearings ............................................... 987

City or Agency Distribution Detail Report ............................................. 990

Criminal Disposition Public and Media Report ..................................... 991

Criminal Cases with Named Victims ....................................................... 993

Daily Calendar (Idaho Flex Calendar Report) ....................................... 995

Hearings Scheduled ................................................................................... 997

Misdemeanor FTA without Bond Report ................................................ 999

Recalled and Inactive Warrant Report ................................................... 1002

Task Management Productivity Detail Report ....................................... 1003

16.0 Judge Edition ......................................................................... 1004

Court Sessions in Judge Edition .............................................................. 1004

Judge Edition Calendar View ................................................................... 1008

Judge Edition Case View & Notes ........................................................... 1010

Judge Edition Initial Sign-on and Customization ................................. 1017

Judge Edition Session View ...................................................................... 1019

17.0 LANGUAGE ACCESS ............................................................. 1023

Interpreters ................................................................................................. 1023

18.0 ODYSSEY FILE AND SERVE (OFS) ....................................... 1026

File and Serve (OFS) Document Accepted in Error ............................... 1027

Review e-Filing (Clerk Reviewer) ............................................................ 1028

19.0 GUIDE AND FILE ................................................................... 1039

Data Request Process ................................................................................ 1039

20.0 REFERENCE DOCUMENTS ................................................... 1041

County Codes .............................................................................................. 1041

Common Court Acronyms ......................................................................... 1043

Court Terminology ..................................................................................... 1047

Courtroom Supplies and Equipment ...................................................... 1053

General Data Entry Guidelines ................................................................ 1054

15

**Idaho State Police Party Master** ................................................................................. 1057

**Navigator User Guide** ............................................................................................. 1058

**Navigator Report Tips** ............................................................................................ 1059

**Change Navigator Password** ................................................................................ 1064

**Shortcuts, Hotkeys, and Helpful Information** ....................................................... 1065

**Case Manager Navigation Menu Customization** ................................................... 1069

16

**Interpreter Required Report**

1. In the top navigation menu, click on Reports > Scheduling > Resources > Interpreters Required Report > Case Manager.

2. Select your location and then click on "Continue."

3. Enter the date range(s).

4. Select the language(s) and interpreter(s) you would like to see in the report (you can select all to see all at once).

5. Select the Sort Order.

6. Name the report.

7. Submit or schedule as needed.

   See "Reports" for more information on how to set up recurring reports.

   🛑 If you add the event for hearing scheduled and do not actually schedule the hearing, the requirement for the interpreter will not show up on the report; the hearing must be scheduled.

# 18.0 ODYSSEY FILE AND SERVE (OFS)

## File and Serve (OFS) Document Accepted in Error

1. Go to the Documents tab of the case, right-click on the document that was accepted by error, and then select "Obsolete."

2. Contact the Filer who submitted the document and explain:

   a. The error in their filing;

   b. That they need to resubmit filing with the correction;

   c. That any fees will not be collected again; and

   d. That they will receive the original submission and filing date.

      • If they are filing something that has a fee attached, the filer will need to choose a filing code that does not have a fee associated with it (i.e. Motion)

3. When the resubmission is received by the Review Clerk, the Review Clerk may need to:

   a. Manually reassign the correct filing code if the filer had to avoid a fee-based filing code.

   b. Manually change the "Submit" and "Filing" dates to the date of the original submission.

## Review e-Filing (Clerk Reviewer)

Log onto iCourt e-File
Set Filters
Review Queue Tab
Add Annotations
Accept the Filing
Reject the Filing / Request a Correction from e-Filer
Processing Cover Letters and Letters to the Judge
Receipt of Corrected Filing
Fee Waiver
Optional Services
Electronic Service
Certified Mail/Registered Mail Fee Process
Guide and File

### Log onto iCourt e-File

URL:    https://idaho-review.fileandserve.tylertech.cloud/

1.  Enter your Email Address and Password.

2.  Click LOGIN.

🛑 With the addition of the Cash Payment Kiosks, a "Message of the Day" section will contain valuable information and instructions for the pro se e-filer accessing the Cash Pay Kiosk.

### Set Filters

Your individual review queue may have a narrowed view based on what filters have been selected for those cases you've been assigned to review.

1.  Adjust the filters along the left side by selecting cases by:

    a.   Envelope #

    b.   Case #

    c.   Date range

    d.   Queues

    e.   Filing Codes

    f.   Case Types

g. Locations



2. To Save filters, click the caret on the Apply button

## Review Queue Tab

To access the Review Queue, click on the ☰ in the upper left corner. You'll have the option to select Review Queue or Review History. The Review Queue contains a list of Envelopes containing new case filings and filings on subsequent cases that currently exist in Case Manager. (For subsequent cases you will see both a case number and party names).

1. Determine which Envelope to process, and then click the envelope number to bring up the Envelope Review screen.

🔴 If someone else is currently working in the envelope, you will see the 🔒 icon. Move to the next case filing or envelope.

2. To Verify Parties, you'll click 👤 on the left row of the screen, that will open a list of existing parties in that case. To view a specific party, click anywhere in the box containing the party name and it will bring you into the party detail screen where you can click on **VERIFY** to select from the previously created party master.

⚠️ To prevent creation of a new Party Master for every filing that has been accepted, you must verify the party (master) in Case Manager. The only exception to that is filings for Petition for Judicial Consent to Abortion – in those case types a new Party Master is always created and no party matching is to be done.



a. Select the first party to verify.

b. In Navigator, search for the party name in the Filer-Entered Party Information screen.

c. If the party exists in Navigator, enter the Person ID (located within the Addition tab of the party master) into the Party Lookup by Filer ID field.

d. Determine which entry has the most complete information, and select:

   1. Use Person ID or;

   2. Use Filer Party

e. Repeat steps for each party included in the filing and Save.

3. In the left row, click on File to review/modify the documents attached. Then click into the specific document to ensure the case information details for the new filing are correct.

---

⚠ Be sure the appropriate location (District/Magistrate) is selected in the case information screen

f. Review/modify the Parties screen for each party included in the filing to ensure the details for the Parties involved are correct (i.e. do the names match what is in the documents?) and click Next.

g. Review/modify the Filings screen. Update the Filing Code (event code) to the appropriate event code for that pleading if necessary.

🛇 E-filers have a limited number of filing codes based on most popular pleadings. During the review process, the clerk reviewer may need to update the filing code. Filing codes have been given a default document security. For example, if PSIR (Pre-Sentence Report) is selected, the document security will default to Confidential.

● If the clerk changes the filing code to something with a different default document security, then the clerk will need to manually change the security.

h. If needed, update the Filing Description to match the document's title exactly (this is the equivalent of entering text into the Comment field of an Event in Navigator).

> Note: To do this click anywhere in the box containing the filing, then scroll down to the Documents portion.

i. If needed, update the security on the document.

j. Quickly review the pages of each lead document for discrepancies (e.g. you can't read the document, something is upside down or there is something that obviously was scanned in by mistake). Update the Lead Document Description to match the document title exactly. (e.g. fix all caps, spelling errors and abbreviations as needed; remove any .pdf extensions)

● A lead document is a document, which would require a file stamp.

● It is important to update the Document Description because it transfers to the Documents tab and Judge Edition.

4. Click [SERVE] to get to the Service Contact Screen – you do not need to make any changes to that screen.

5. Click on [$FEES] to ensure that the proper fees have been assessed and paid.

6. If this is a Fee Waiver, or Agency Filing, a red Waiver will appear – See the Fee Waiver section below

---

## Add Annotations

The Annotation toolbar will be used when applying the case number and judicial officer, making notes, issuing summons and writs of execution and occasionally highlighting sections when rejecting the document to send back to the filer. This step allows the case number and other information auto-populate on the document upon filing. See "Queues, Annotations and Workflows."

1. Go to the Stamps Toolbar on the right side and apply the case number and judicial officer stamps from the Text stamps.

    a. Select the Stamp tool and click <<CaseNumber>>.

    b. Place the case number stamp on the document and move it to the appropriate area.

2. At initial case creation documents (Complaint, Petition, Summons, etc.), the judicial officer stamp must be added.

    a. Click on <<JudicialOfficer>> and place it on the document just below the case number.

3. Repeat this process for each separate lead document

● Assignment of the Judicial Officer token is for new case filings only so that all litigants (parties) know the case number and judicial officer assignment at case filing.

## Accept the Filing

When Annotations are completed, navigate to the Actions Toolbar to view the following options.

1. Select the Accept Filing tool and click Accept.

2. Go to Odyssey Navigator to view the filing. (This may take a few moments to appear).

● E-filers have the ability to add a cross-reference number to their filing that will transfer to Navigator once the case is accepted and initiated. If a cross reference number is already on the case in a subsequent filing and the new filing has a different number, then it will be added to the list of cross reference numbers on the case. If it is a duplicate number it will not be added twice.

## Reject the Filing/Request a Correction from e-Filer

1. When the review has been completed and it has been determined that the filing needs to be rejected and returned to the e-Filer for correction, select the "Reject Filing" tool from the Action Toolbar.

2. Select the reason for rejection:

   a. Filer's Request

   b. Insufficient Fees

   c. Insufficient Funds in account of credit card

   d. Illegible/Unreadable – Please resubmit in legible format

   e. Incomplete or Missing Signature Block

   f. Incorrect Formatting

   g. Incorrect/Incomplete Information: Please resubmit using correct Case Number

   h. Incorrect/Incomplete Information: Please resubmit using correct Case Type

   i. Incorrect/Incomplete Information: Please resubmit using correct Filing Code

   j. Incorrect/Incomplete Information: Please resubmit using correct Party Names on doc(s)

   k. This case already exists; please file though the existing case

   l. PDF Documents Combined – Please separate Lead Documents

   m. Rejected. This document must be filed in paper form per paragraph (f) of the electronic filing court rule. (See comment box to provide explanation)

   n. Please correct error. (See comment box to provide explanation.)

   o. In Camera Filing (A private document filed for court's eyes only must be filed in paper form per court rule.)

   p. Motion to Seal Document & Subject Document must be filed in paper form per court rule.

   q. Wrong Jurisdiction – Please refile in appropriate jurisdiction

   s. Duplicate filing received

   t. Hearing date or reservation is required prior to filing

There is an area for a "Reject Comment" to allow the clerk to be more specific in their reason for rejection. This area is optional, however clerks are encouraged to provide sufficient information to the e-filer so they can correct and resubmit their envelope. (The more information/guidance you give here the less chance they will call for assistance.

## Processing Cover Letters and Letters to the Judge

Typically a filing should be rejected if there is a cover letter by the attorney indicating "Please find enclosed documents herein…" for information and direction to the clerk. Those types of comments should come across as notes where appropriate. However, if the cover letter is directed to the judge, clerks should not reject, but accept the filing and attach the event for Letter to the filing.

- A Notice of Appeal document should only be rejected if it is filed in the wrong court. It should not be rejected for missing information or failure to pay fees or form of Notice.

## Receipt of Corrected Filing

*When envelope is copied by e-filer:*

The e-filing rule allows a filer to correct any problems with their submitted envelope within three (3) business days (excluding legal holidays). If the filer does so, they may request that the date of the filing reflect the date of the original submission. This could be important, as the filer may be up against a legal deadline.

- The e-filing rule instructs the filer to provide that date in the filing description. Do not, however, rely on this date, verify it.

*To manually edit the docket date and time when an envelope is not copied by the filer:*

The filer must copy the envelope upon resubmission on their end for the clerk to be able to use the original file stamp date on their end. If the filer fails to copy the envelope, they will have to submit a new envelope.

**Note:** Odyssey cannot backdate document dates automatically based on the filing date. They will only have the date that they are actually added to the case, therefore when the filing is accepted.
If the filer fails to copy the envelope but requests the original file date to resubmit, or resubmits after a court order (as outlined below), it may be necessary to manually edit the docket date.

When the document is accepted, the new date will appear on the document.

The e-filing rule also permits a filer whose fee waiver request has been denied or it has been established that a filing failed due to a technical error in the electronic filing system, to request that the clerk enter the docket date as the date of the filer's original submission. If the filer has resubmitted the document per these rules, and upon their request, edit the docket date.

This can be done in a couple of ways:

---

1. From the main screen, in the Envelope field, make the change using the Docket Date field.



OR

1. Click on the date line in the file stamp that auto-populated.

2. Drag the date line outside the file stamp and click Delete to remove that date from the document.

3. Click "Date Stamp" in the tool bar to the right and type the desired date and drag the new date to the appropriate spot on the file stamp.

● The rule regarding technical errors does not require a resubmittal within three (3) days of the order.

## Fee Waiver

1. When the filing comes in with a waiver notification in the Review Queue, route to the appropriate judge for review ***prior to the acceptance of the filing*** by clicking on the PDF hyperlink at the top.

2. Email the proposed documents to the assigned judge for review.

● The Judge will not be able to act on any document within the Review Queue but can respond via email to the clerk, or if needed, the documents can be printed from here and routed to the judge for consideration.

3. Click on the paper icon and enter "Application Sent to Judge for Consideration."

4. In the Actions toolbar, click "End Review" to return to the filing at a later date.

5. If the Judge:

    a. Accepts the proposed fee waiver, return to the envelope marked Under Review and Accept the filing to create a new case in Navigator.

        • In Case Manager, Scan and/or Attach the signed fee waiver documents to the proper event code.

    b. Denies the proposed fee waiver, return to the envelope within the Review Queue and reject the filing using the Insufficient Fees reason.

        • Add a Comment to advise the filer that their fee waiver has been denied and advise them to resubmit with proper filing fees

## Optional Services

See "Verify Payment for Optional Service"

The Clerk will first see the fees in the Review Queue. The clerk reviewer should take note of the number of pages that are to be mailed out to determine whether the correct fees have been remitted.

● Some counties opt to add a comment to the event description to indicate that copies were paid for (e.g. Paid x2 copies, one certified).

## Electronic Service

1. Select the "Proposed Order" filing code and click "Accept."

2. After it is loaded into Navigator, the clerk can go to the Documents tab in the appropriate case and route to the assigned judge queue to review and annotate/approve the order. See "Queues, Annotations and Workflows."

3. After the order is signed, complete the Certificate of Service.

4. Go to the Events tab, and update the Proposed Order event to reflect the proper order event code.

5. Serve the parties. See "Email Documents and Track Service."

**Certified Mail/Registered Mail Fee Process**

See "Certified Mail-Registered Mail Fee Process"


**Guide and File**

Clerks reviewing the OFS (File and Serve) Clerk's Review Queue will also see filings coming in from Guide and File. This a program enables individuals and small businesses, without legal representation, to file specific claims via this free online tool. Guide and File allows these claims to be filed electronically by walking users through an interview-style process to gather key information for the relevant filing. Currently Small Claims is available with Minor Guardianship, Civil Protection and Divorce with No Minor Children coming soon. The local court assistance offices have been trained in Guide & File and can answer questions about the tool. Please feel free to refer users of Guide and File to the local CAO for assistance

***What will be different in Odyssey for documents submitted through Guide & File:***

1. Why can't I review documents that show they have been "receipted" in the review queue?

   In the review queue you will notice that some documents show that they have been "RECEIPTED." You do not have to review or accept these documents. These are instructions to the filer that have been generated by Guide & File, and are not filed with the court. (e.g. small claims answer form and defendant instructions).

2. How do I know it's a Guide & File document?

   a. Review the Filing Description - The filing description will be different than the filing code. The filing description will show: "Guide & File." This will show as a note added to your event code.

      Please do not edit the filing description as this helps us identify which documents were generated in Guide & File.

   b. Review PDF Document Name - The document names will all start with the following two letter prefix in parentheses "(GF)."

3. Filing dates on rejected documents in Guide & File:

   To resubmit a rejected document in Guide & File, there is currently no option for the filer to provide filing comments and indicate they want the document to date back to the original filing date. We have included instructions that tell the filer to contact the court directly to make such a request directly from the court. If the document was submitted

via Guide & File, and you receive this request please process the document as you would a request in the filing comments to relate back to the original filing date.

As this is not a copied envelope like in Odyssey File & Serve, your review queue will not prompt you to automatically change the submission date. You will have to do so manually by clicking on the "Docket Date" which will allow you to type over the date.

While in the Review Queue, the clerks will see some different functionality:

1. EFSP showing at the top of the OFS Summary. This is not an error – despite it being in red letters – this is just stating that it came from an Electronic Filing Service Provider (AKA Guide & File).

2. The Payment Account states that it's a one-time account.

   This is a feature that Guide & File has, but regular File and Serve does not have. File and Serve requires individuals to set up a Payment Account to be used regularly, whereas Guide & File does not make the user create a Payment Account, and they can pay on the spot. You can see from the screenshot below that the Payment Account from Guide & File is called OGF One-Time Account:

3. A clerk will get an error message about Payment Accounts when attempting to edit the envelope. Please note that you can click through this message to edit the envelope.

# EXHIBIT 18
# FETTERLY DECLARATION

# Correcting E-Filing Mistakes

## Overview

There is no need to take any further action unless and until you have hit the "submit" button on the page that displays the warning below; if you have not done so, your "mistake" is nothing to worry about. Simply select any menu item (e.g. Civil) on the blue toolbar to cancel the e-filing and start over.

> **Attention!! Pressing the SUBMIT button on this screen commits this transaction. You will have no further opportunity to modify this transaction if you continue.**

If you pressed "submit" and then realized your e-filing contained a mistake, follow the instructions on this page for solutions to the most frequent e-filing mistakes:

1. I left something out of my filing (e.g. a declaration, proposed order, etc).

2. I e-filed a document that contains an error requiring correction. -OR-
   I used the wrong efiling event for my filing. -OR-
   I used the wrong attorney's login and password.

3. I e-filed my document in the wrong case.

4. I e-filed a duplicate document.

5. My filing disclosed confidential information (e.g. trade secrets, social security numbers).

6. I selected the wrong filer.

7. I filed a motion but I entered the wrong hearing date.

8. I filed a motion but I entered the wrong response and reply deadlines.

9. I made an error in the docket text, but the documents are correct and I used the right event.

## E-Filing An Omitted Item

If your only error is that you left something out of the filing, like the Proposed Order or an Exhibit, then DO NOT e-file all parts of the filing again. Simply e-file whatever

**ER-966**

you left out under its own category, and refer it back to the previously filed document(s).

## E-Filing a Corrected Version

Simply e-file a corrected version, which will provide the court with the corrected documents. Then send an email to the Docket Correction email address for your Judge.

## How to E-File a Corrected Version:

1. Note the docket number(s) of the incorrect filing(s) before you start this process.

2. Begin to e-file the corrected document.

3. When you get to the free text box, type or copy-paste these words at the end of the docket entry: **CORRECTION OF DOCKET # [x]**
   Replace **[x]** with the docket number(s) of the incorrect filing(s) in this format: [x], [y] and [z]. Using the brackets **[ ]** around each number will automatically hyperlink the new docket number to the old one for easy reference on the docket sheet.

4. Then, complete the filing as usual and send an email to the Docket Correction email address for your Judge with the following information:

   1. **Case Number: YY − #####** (2-digit year − case number (e.g. 00-12345) )

   2. **A > B** (**A** = <u>Old</u> docket number (will be listed on the receipt page, the email notice and the docket itself); **B** = <u>New</u> docket number (you won't know this until the new filing is complete).)

   3. A <u>very brief</u> description of what went wrong.

If you have multiple errors, please indicate each one clearly.

<div style="background-color: #f5e9a9; border: 1px solid #333; padding: 1em;">

**EXAMPLE:**

Here's an example for case #01-9999. #34 was filed in error, superseded by #35:


**01-9999**
**34 > 35**
**Filed the wrong PDF file.**

</div>

**ER-967**

> The Docket Clerk will then place a "filed in error" notation in the <u>first</u> docket entry.

You should receive a confirmation back via email within 2 business days; if you do not, email the request again.

If your corrected e-filing is after the date the original file was due, the timeliness of the corrected filing is a matter for the assigned judge.

## Correcting an E-filing Made in the Wrong Case

Repeat the entire e-filing in the correct case, then promptly email the the Docket Correction email address for your Judge with the case number of the <u>wrong case</u>, docket number(s) of the incorrect document(s), and a very brief description of the problem. Do not call the Helpdesk or the Docket Clerk; we must have an email from you to make the correction.

## Correcting a duplicate E-filing

Promptly email the the Docket Correction email address for your Judge with the case number, docket number(s) of the correct and duplicate document(s), and a very brief description of the problem. Do not call the Helpdesk or the Docket Clerk; we must have an email from you to make the correction.

## Remove a Sensitive E-Filed Document

If—and only if—your e-filing mistake involves the unintended disclosure of confidential information, you may file a motion to remove a sensitive e-filed document. The Court views removing an e-filed document as a drastic measure or last resort reserved for documents whose contents are **confidential**. If confidential information is not involved, simply e-file a corrected version.

A "confidential" document contains:

- Information that must not be viewed by the public as a whole, such as a document meant to be filed under seal;

- Confidential material in violation of Federal Rule of Civil Procedure 5.2 or other privacy rules;

- Private information, such as passwords, etc.

12/12/22, 2:54 PM                         Correcting E-Filing Mistakes | United States District Court, Northern District of California

**If you have inadvertently e-filed a sensitive document, follow these steps without delay:**

1. Immediately send an email to the Docket Correction email address for your Judge with the <u>case number</u>, <u>docket number</u> and a very brief description of what went wrong. If possible, mark the message "urgent."

2. Next, call us at **866-638-7829** to request expedited handling. The ECF HelpDesk staff can, during regular support hours, temporarily block access to the document by ECF users for a limited period of time. The Court does not, however, provide any after-hours support.

3. Next, file a **"Motion to Remove Incorrectly Filed Document" as soon as possible.** If the motion is granted, the ECF Helpdesk will permanently remove the document from ECF.

4. E-file a corrected version of the document. You can do this right away, without awaiting the outcome of steps 1-3, above. View information on redacting documents for e-filing on this website.
   **NOTE**: ECF does not keep records of which PACER user viewed which documents. For inquiries like these, please contact the PACER Service Center directly at (800) 676-6856 or visit their website at pacer.uscourts.gov.

## Wrong Filer

Promptly email the the Docket Correction email address for your Judge with the case number, the docket number(s) of the document(s), and a very brief description of the problem (i.e., the names of the parties you erroneously selected and the names of the parties you actually meant to select). Do not call the Helpdesk or the Docket Clerk; we must have an email from you to make the correction.

## Wrong Hearing Date

File a Re-Notice Motion using that event under Other Supporting Documents. You will NOT be prompted for the new dates; the staff for your judge will read your notice and adjust the dates accordingly.

## Wrong Response and Reply Deadlines

If you mistakenly entered the wrong response and reply deadlines, use the event Correction of Opposition/Response or Reply Deadlines under Other Supporting Documents to fix it. You will NOT be prompted to upload a document.

Case 1:21-cv-00305-DCN   Document 66-2   Filed 12/15/22   Page 80 of 98

12/12/22, 2:54 PM                    Correcting E-Filing Mistakes | United States District Court, Northern District of California

## Cosmetic errors in the docket text

If you made a mistake in the docket text, but the documents are correct and you used the correct event, promptly email the the Docket Correction email address for your Judge with the case number, the docket number(s) of the document(s), and a very brief description of the problem (i.e., the names of the parties you erroneously selected and the names of the parties you actually meant to select). Do not call the Helpdesk or the Docket Clerk; we must have an email from you to make the correction.

**ER-970**

# EXHIBIT 19
# FETTERLY DECLARATION



12/13/22, 7:30 PM — Florida Courts E-Filing Portal

## FLORIDA COURTS E-FILING PORTAL

View NEF | My Cases | My Submissions | Sign Out
Filings Access | Workbench | My Alerts | E-Filing Map
DIY Documents | CCIS

My Account ▾ | Filing Options ▾

Welcome - Katherine Keating

### News & Information

- **11/10/2022** Since the recent changes to E-service Notification of Electronic Filing (NEF) emails implemented on October 29, several filers have reported deliverability issues with their email providers. If you are having trouble receiving NEF emails since the change, please work with your email provider or I.T. support team to review your spam or junk mail filters.

### Filings Access

Help

The Statewide Non-Confidential Circuit Civil Filings webpage provides non-confidential, Circuit Civil case complaints and attached documents only. The documents will be available on this webpage for five (5) days from the date of submission. The documents found on this webpage have not been accepted by the Clerk and are not official court documents. Upon acceptance by the Clerk, the official documents will be available at the Clerk's office or, with a few exceptions, on the Clerk's website.

### Search Options

* Submission Date From
* Submission Date To
Court

12/13/2022

12/13/2022

[ Search ]   [ Clear ]

| | Submission/NEF | Case Style | Status | Court | Submission Date | Completion Date | UCN |
|---|---|---|---|---|---|---|---|
| ▸ | 162989234 | JANET MARR et al. VS UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY | Pending Filing | Flagler | 12/13/2022 09:57:07 PM | | |
| ▸ | 162988922 | Well Fargo Bank VS Normal Morris et al. | Pending Filing | Broward | 12/13/2022 09:39:49 PM | | |
| ▸ | 162988848 | ANTHONY ROSARIO et al. VS UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY | Pending Filing | Alachua | 12/13/2022 09:36:50 PM | | |
| ▸ | 162988827 | JOHN WELCH et al. VS PEOPLES TRUST INSURANCE COMPANY | Pending Review | Orange | 12/13/2022 09:35:53 PM | | |
| ▸ | 162988679 | Willean Lester et al. VS Barbara Mack | Pending Filing | Broward | 12/13/2022 09:27:41 PM | | |
| ▸ | 162988606 | ALBA SANTIAGO VS CITIZENS PROPERTY INSURANCE CORPORATION | Pending Review | St. Lucie | 12/13/2022 09:20:15 PM | | |
| ▸ | 162988563 | VS | Pending Review | Brevard | 12/13/2022 09:15:49 PM | | |
| ▸ | 162988542 | SPIN CAPITAL VS CHRISTOPHER IVAN PRESCOTT | Pending Filing | Duval | 12/13/2022 09:12:46 PM | | |

**ER-972**

12/13/22, 7:30 PM                                    Florida Courts E-Filing Portal

| | | Submission/NEF | Case Style | Status | Court | Submission Date | Completion Date | UCN |
|---|---|---|---|---|---|---|---|---|

Terms Of Use  |  Privacy Statement  |  Accessibility  |  Request E-Filing Support  |  E-Filing Authority

© 2013 CiviTek

**ER-973**

# EXHIBIT 20
# FETTERLY DECLARATION

Courthouse News Service v. Omundson              30(b)(6) Jennifer Dvorak

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

_____
                                )
COURTHOUSE NEWS SERVICE,        )
                                )
                                )
                 Plaintiff,     )
                                )
           v.                   ) No. 1:21-CV-00305-REP
                                )
SARA OMUNDSON, in her official  )
capacity as Administrative      )
Director of Idaho Courts,       )
                                )
                                )
                 Defendant.     )
_____


30(b)(6) DEPOSITION UPON ORAL EXAMINATION

OF IDAHO COURTS

REPRESENTED BY JENNIFER DVORAK


_____


Taken at Boise, Idaho

(Conducted via Videoconference.)




DATE TAKEN:  November 7, 2022

REPORTED BY:  Nicole A. Bulldis, RPR
              AZ No. 50955 | CA No. 14441 | WA No. 3384

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 2

1                  A P P E A R A N C E S

2

3    FOR PLAINTIFF:

4      (via Zoom)           Jonathan G. Fetterly
                            Katherine A. Keating
5                            BRYAN CAVE LEIGHTON PAISNER LLP
                            3 Embarcadero Center, 7th Floor
6                            San Francisco, CA 94111
                            (415) 675-3400
7                            jon.fetterly@bclplaw.com
                            katherine.keating@bclplaw.com
8

9    FOR DEFENDANT:

10     (via Zoom)           Keely E. Duke
                            Molly E. Mitchell
11                           DUKE EVETT, PLLC
                            1087 W. River Street, Suite 300
12                           PO Box 7387
                            Boise, ID 83707
13                           (208) 342-3310
                            ked@dukeevett.com
14                           mem@dukeevett.com

15

16   ALSO PRESENT:

17     (via Zoom)           BILL GIRDNER, CNS

18                           SARA OMUNDSON, Idaho Courts

19                               --o0o--

20

21

22

23

24

25

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 3

1          30(b)(6) DEPOSITION OF JENNIFER DVORAK

2

3                    EXAMINATION INDEX

4   EXAMINATION BY                              PAGE

5   Mr. Fetterly......................................... 5

6   Ms. Duke............................................ 141

7   Mr. Fetterly........................................ 149

8   Ms. Duke............................................ 151

9

10                     EXHIBIT INDEX

11  EXHIBITS FOR IDENTIFICATION                  PAGE

12   1  Notice of Deposition............................. 5

13   2  ISC Organizational Chart......................... 5

14   3  Employee List.................................... 5

15   4  IT Division as of 7/15/22........................ 5

16   5  Hansen/Marx Email String - 5/18/22............... 5

17   6  Dvorak Email String - 6/30/22.................... 5

18   7  Howland Email String - 7/6/22.................... 5

19   8  Fisher Email w/ Tyler Slide Deck - 7/14/22....... 5

20   9  Fisher Email String - 8/8/22..................... 5

21  10  Dvorak Email String - 8/19/22.................... 5

22  11  Dvorak Risk Memorandum - 8/18/22..*CONFIDENTIAL*.. 5

23  12  Fisher Email String - 8/24/22.................... 5

24  13  iCourt Project Overview & FAQs................... 5

25  14  Tyler Agreement - 8/28/13........................ 5

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson                30(b)(6) Jennifer Dvorak

Page 4

1          30(b)(6) DEPOSITION OF JENNIFER DVORAK

2

3                    EXHIBIT INDEX (Cont'd)

4  EXHIBITS FOR IDENTIFICATION                        PAGE

5  15 Tyler Electronic Filing Agreement - 5/27/21........ 5

6  16 iCourt File & Serve: Electronic Filing Overview.... 5

7  17 iCourt Odyssey File & Serve Log-in Portal.......... 5

8  18 iCourt Odyssey File & Serve Filer Dashboard........ 5

9  19 ISC Terms and Conditions for Cloud-Based Services.. 5

10

11                         --o0o--

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1c9c406c-9793-4f54-8636-aea33c6c57f5

ER-978

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 5

1    REPORTED REMOTELY FROM MARICOPA COUNTY, ARIZONA

2            Monday, November 7, 2022; 12:04 p.m.

3                    --o0o--

4            (Exhibit Nos. 1 through 19 marked.)

5

6    JENNIFER DVORAK,           witness herein, having been

7                               first duly sworn on oath,

8                               was examined and testified

9                               as follows:

10

11          E X A M I N A T I O N

12   BY MR. FETTERLY

13       Q.   Okay.  Can you please state and spell your

14   name for the record, please?

15       A.   Jennifer, J-e-n-n-i-f-e-r.  Dvorak, D, as in

16   "David" -v, as in "Victor" -o-r-a-k.

17       Q.   Thank you.

18           Ms. Dvorak, my name is John Fetterly.  I am an

19   attorney with the law firm Bryan Cave Leighton Paisner.

20   I represent Courthouse News Service in the case

21   Courthouse New Service versus Sara Omundson in her

22   official capacity as Administrator of Idaho Courts.

23           We've noticed the deposition here today

24   pursuant to our premarked Exhibit No. 1, which is the

25   notice of deposition, and this is a deposition calling

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson                30(b)(6) Jennifer Dvorak

Page 31

1    beyond the submitting of files before they're exact --

2    before their accepted into the case management system.

3        Q.   (By Mr. Fetterly) I understand that.  I guess I

4    was just -- you identified public-facing as a potential

5    concern, and I'm just trying to understand whether this

6    process of registration and sign-in addresses that

7    concern, or if there are other things that would, you

8    know -- that are required to sufficiently address that

9    concern.

10               MS. DUKE:  Same objections.  Asked and

11   answered.

12               Go ahead.

13               THE DEPONENT:  Yeah.  I would just say

14   that there are additional concerns because there's

15   additional layers of security even on a public-facing

16   website.  And I -- because I haven't received

17   information regarding the security controls and tools in

18   use by Tyler Technologies, I don't understand what

19   additional controls would be available.  Logging in is

20   just one of those concerns being addressed.

21       Q.   (By Mr. Fetterly) Okay.  But the courts

22   currently use eFile & Serve; correct?

23       A.   I believe so, yes.

24       Q.   Okay.  Have -- has the administrative office

25   notified Tyler of any additional information it needs

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

1c9c406c-9793-4f54-8636-aea33c6c57f5

**ER-980**

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 32

1   with respect to eFile & Serve?

2      A.   So we haven't done a -- like I mentioned

3   previously, we haven't done a full security review on

4   this program, this service because it is already under

5   contract is my understanding.  So we are only able to

6   provide security oversight or security review on new

7   products per the contract or amendment -- contract

8   amendment process.  So we don't have the ability to

9   compel our vendors to provide information about their

10  security controls unless it's embedded in the contract

11  process.  We can ask them and they can tell us or not

12  tell us, but they're not particularly compelled to

13  provide that information.

14     Q.   And I guess I was asking a slightly different

15  question.  I mean, has the administrative office

16  notified Tyler of any concerns it has with respect to

17  eFile & Serve?

18             MS. DUKE:  Asked and answered.

19             Go ahead.

20             THE DEPONENT:  Not that I'm aware of, but

21  we also -- we don't know what we don't know.  So it's

22  not something that we've been able to investigate

23  because it's not a product that we're currently

24  negotiating a contract for or we have a contract

25  amendment underway.

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 33

1      Q.   (By Mr. Fetterly) Has the administrative office

2   informed Tyler Technologies that it would like to

3   investigate the functionality or security of

4   eFile & Serve?

5      A.   No.  Because, again, it's not something that

6   we're negotiating a contract with or a contract

7   amendment.  So we have other Tyler products that we're

8   currently negotiating a contract or contract amendment

9   for and those are included in the security review.

10      Q.   When is -- if you -- when is the Tyler

11   e-filing agreement -- this would be the contract between

12   Tyler and the administrative office with Idaho Courts

13   concerning e-filing.  When is that contract up for

14   amendment?

15      A.   I don't know.

16      Q.   Okay.

17      A.   Actually, well, I'll -- I'll revise that.  I

18   do know the Press Review Tool, adding that would require

19   a contract amendment.  So at that time, we would have

20   the opportunity to do a full security review as part of

21   that contract amendment.

22      Q.   Okay.  I would like to direct your attention

23   to Exhibit No. 10.  Once again, I'll put it back up on

24   the screen.

25      A.   Mm-hmm.

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson  30(b)(6) Jennifer Dvorak

Page 58

1 see that?

2  A. Yes.

3  Q. Can you just kind of walk me through how this

4 works?  As you're the author of this document, I'm just

5 looking for a little -- if you can elaborate, explain to

6 me kind of how this table works.

7  A. So -- so you're looking at the -- so it's not

8 an independent graphic, so it's used in conjunction with

9 the table ahead of it.  So we look at loss of

10 confidentiality, so what is the likelihood of loss of

11 confidentiality?  What would the impact be and what is

12 the likelihood?

13   So in using that graphic below, we try to

14 understand what the impact would be if this information

15 was -- the confidentiality was not in -- was out of your

16 control.  So if nonpublic data was disclosed, what would

17 the impact be to the organization?  What fees and fines?

18 What regulatory requirements would you be breaking?

19 What loss of goodwill?  So understanding what that

20 impact would be, the greater the impact, the more you

21 move to the right.  And then also the likelihood, so

22 what is the likelihood of this occurring?  And so for

23 each of those, confidentiality, integrity, and

24 availability, you make this assessment for each of

25 those.

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 59

1    Q.    And when you say you make the assessment, the

2    person conducting the review makes the assessment?

3    A.    Correct.

4    Q.    And in the context of the Press Review Tool,

5    you were that person; correct?

6    A.    Yes.

7    Q.    Okay.  Looking at the chart where it says

8    likelihood, I see we have five options, very likely,

9    likely, possible, unlikely, and unlikely [sic]?

10   A.    Mm-hmm.

11   Q.    Is -- is there some standard or methodology

12   for determining when the likelihood is possible versus

13   one of the other four options?

14   A.    So I think in the case of this particular

15   product, because I wasn't provided all the information

16   that I requested, it just landed in the middle of

17   possible.  I don't -- I don't know the possibility or

18   the likelihood of it occurring.

19   Q.    Would you agree that very likely, likely,

20   unlikely and unlikely are all possible?

21   A.    I don't know, because, again, I wasn't

22   provided the information I requested.  I would have a

23   better understanding if it was a system that I

24   controlled.  But beyond that, I can only go based on the

25   information that I receive from the vendor.

1c9c406c-9793-4f54-8636-aea33c6c57f5

ER-984

Courthouse News Service v. Omundson       30(b)(6) Jennifer Dvorak

Page 60

1     Q.   So would you say that possible here was based

2  on the lack of information as opposed to based on

3  information received?

4     A.   Definitely.  I -- I requested the information.

5  I didn't receive it, so I wasn't able to move forward

6  with any -- any other likelihood.

7     Q.   Same -- same question with respect to impact.

8  Is there a standard or methodology when determining

9  whether an impact is negligible or minor or moderate and

10  so forth?

11     A.   So, again, it's based on understanding of

12  regulatory requirements, applicable laws, court rules,

13  recovery, and just goodwill, so there isn't an exact --

14  it's not an exact science, but it's based on my many

15  years in cybersecurity.

16     Q.   And so the -- the intersection between

17  likelihood and impact then, is it -- is it one that you

18  would apply then just depending on the product?  So it's

19  not necessarily a consistent or standard application,

20  but more of a -- kind of a subjective application

21  depending on the product you're reviewing?

22     A.   No.  It would actually be based on the data

23  types, so the data that's contained.  The impact is

24  significantly tied to the data.  It's not product based.

25     Q.   Understood.

1c9c406c-9793-4f54-8636-aea33c6c57f5

Courthouse News Service v. Omundson          30(b)(6) Jennifer Dvorak

Page 153

1              CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

2

3              The undersigned Certified Shorthand
Reporter and Deposition Notary Public of the State of
4    California does hereby certify:

5              That the foregoing 30(b)(6) deposition of
Idaho Court designee Jennifer Dvorak was taken before me
6    remotely at the time, at which time the witness was duly
sworn by me;

7
               That the testimony of the witness and all
8    objections made at the time of the deposition were
recorded stenographically by me and were thereafter
9    transcribed, said transcript being a true and correct copy
of the proceedings thereof.

10
               I further certify that I am neither counsel
11   for nor related to any party to said action, nor in any
way interested in the outcome thereof.

12
               Further, that if the foregoing pertains to
13   the original transcript of a deposition in a federal case,
before completion of the proceedings, review of the
14   transcript was requested.

15

16
               In witness whereof, I have subscribed my
17   name on this 9th day of November 2022

18

19

20

21   Nicole A. Bulldis, RPR
     CA CSR No. 14441

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

1c9c406c-9793-4f54-8636-aea33c6c57f5



# E R R A T A

**CASE NAME:**   Courthouse News Service v. Omundson

**DATE TAKEN:** 11/7/2022

**WITNESS:**   30(b)(6) Jennifer Dvorak

## CORRECTIONS

| Page | Line | Now Reads | Should Read |
|------|------|-----------|-------------|
| 59 | 7 | unlikely [sic] | very unlikely (The exhibit counsel was quoting reads "unlikely, and very unlikely" rather than "unlikely, and unlikely". It is unclear if this is transcription error or if counsel misspoke.) |
| 59 | 19 | unlikely unlikely | very unlikely (The exhibit counsel was quoting reads "unlikely, and very unlikely" rather than "unlikely, and unlikely". It is unclear if this is transcription error or if counsel misspoke.) |
| 99 | 11 | original cache | original HASH |

_Jennifer Dvorak_
_____
Signature of Deponent

1325 Fourth Avenue, Suite 1840  Seattle, Washington  98101
708 Market Street, Suite 408  Tacoma, Washington  98402
Seattle 206.287.9066  Tacoma 253.235.0111
e-mail production@buellrealtime.com   www.buellrealtime.com



# D E C L A R A T I O N

**CASE NAME:**  Courthouse News Service v. Omundson

**DATE TAKEN:** 11/7/2022

**WITNESS:**     30(b)(6) Jennifer Dvorak

I declare under penalty of perjury under the laws of the State of

Washington that I have read my within deposition, and the same is true and

accurate, save and except for changes and/or corrections, if any, as indicated by

me on the ERRATA flyleaf page hereof.

*Jennifer Dvorak*
_____

30(b)(6) Jennifer Dvorak

Signed on the ___30___ day of ____November____, 202_22_.

1325 Fourth Avenue, Suite 1840  Seattle, Washington  98101
708 Market Street, Suite 408  Tacoma, Washington  98402
Seattle 206.287.9066   Tacoma 253.235.0111
e-mail production@buellrealtime.com    www.buellrealtime.com

**ER-988**

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | Case No: 1:21-cv-00305-DCN |
| Plaintiff, | |
| v. | **DECLARATION OF WILLIAM GIRDNER IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendant. | **[Exhibits 16-30]** |

DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT

I, William Girdner, declare and state as follows:

1.      I am the editor and publisher of Courthouse News Service ("Courthouse News"). I founded Courthouse News in 1990, driven by a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Today, Courthouse News employs approximately 240 people, most of them editors and reporters, covering the state and federal trial and appellate courts in all 50 states in the United States. Through its website courthousenews.com, our news service reports on a full set of news topics, from scientific advances such as a breakthrough in fusion energy to a corruption scandal involving the government of Qatar, volcanic eruptions on Hawaii and the normal news-generating topics of fires, floods, politics, demonstrations, and elections. But, in particular, our news service focuses on the law as it is developed and decided in American courthouses.

2.      As editor of Courthouse News, I have final responsibility for the timeliness and content of our news publications. As publisher, I have final responsibility for the business operation of Courthouse News, including the distribution of our daily new litigation reports, the hiring of and supervision of our reporters and editors, and the business decisions involved in keeping Courthouse News afloat, including the litigation we decide to undertake.

3.      I have developed extensive personal knowledge of the procedures that courts use, both now and in the past, to intake, docket, and provide access to new complaints. I also have personal experience overseeing Courthouse News' coverage of courts across the nation, and I have personal knowledge of the different e-filing systems used by those courts as well as personal knowledge of how courts have configured their systems to provide public access to new court filings.

DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT                1

4.      This personal knowledge has been derived from my more than 40 years of covering the courts, including my own in-person visits to many state and federal courts, discussions with court officials, and my observation of the complaint intake and access procedures. It also derives from my supervision of our reporters and editors around the country, and from seeking, through negotiation and litigation, to take back the traditional access that was taken away by clerks in the thrall of a new technology. I have personal knowledge of the following facts, except where I say otherwise, and could testify to them if called as a witness.

5.      One category of report that Courthouse News publishes is its New Litigation Reports, which contain original, staff-written summaries of significant new civil complaints, and are e-mailed to subscribers nightly. New Litigation Reports focus on general jurisdiction complaints against business, government entities and individuals who are in the public eye, as well as any civil action that might be of interest to Courthouse News subscribers. Courthouse News currently publishes 127 New Litigation Reports. One of those New Litigation Reports is the *Big Sky Report*, which covers newsworthy new civil cases filed in state and federal courts covers civil complaints filed in Idaho, Montana and Wyoming. The *Big Sky Report* currently has 51 subscribing institutions.

6.      Courthouse News' Idaho reporter is Cathy Valenti. Ms. Valenti is based in Boise, and reports on the federal and state courts in Idaho as well as political and environmental news around the state. Courthouse News does not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions. Courthouse News also does not review or report on the small percentage of complaints that are statutorily confidential or accompanied by a motion to seal.  In Idaho state courts, Courthouse News seeks only complaints in the case types listed in the first fee category in Appendix A to the Idaho Rules of

Civil Procedure: "AA – All Initial District Court Filings (Not Listed in: E, F and H1)." These filings are of the type that fall within the area of general civil litigation, cases that can have minor or momentous consequences for a defendant. They consist of creditor/debtor collections, breach of contract, employment dispute, real property, medical malpractice, and personal injury cases, all with a value exceeding $10,000.

7.      Among our other publications is a monthly newsletter, the *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court, federal circuit decisions, and significant rulings from the federal district courts.

8.      Courthouse News has about 2,300 subscribers nationwide, including lawyers, law firms, other media, law schools, libraries, nonprofits, government entities, and businesses. Regional subscribers include the City of Boise – Office of City Attorney, *Salt Lake Tribune*, and Weber State University.  Subscribing news outlets around the U.S. include: The Associated Press, *Austin American-Statesman*, *The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat*, *Las Vegas Review Journal*, *Los Angeles Business Journal*, *Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *San Antonio Express News*, *Tampa Bay Business Journal*, Twitter, *The Wall Street Journal*, *Variety*, Walt Disney Company and Warner Bros. Among academic institutions, subscribers include Boston College Law School, Boston University, Case Western Reserve University, MIT Sloan School of Management, Southern Illinois University School of Law, UC Hastings College of Law, and UCLA School of Law. A

**DECL. OF WILLIAM GIRDNER ISO CNS'S**
**MOTION FOR SUMMARY JUDGMENT**          3

majority of the nation's large and mid-sized law firms also subscribe to one or more of Courthouse News' publications.

9.      In addition to Courthouse News's subscriber publications, Courthouse News also publishes a publicly-available website (courthousenews.com) featuring general news and commentary with a focus on court reporting, which is read by roughly 30,000 people every weekday. The website works much like a daily print newspaper, featuring staff-written articles from across the nation posted during the day and rotated off the page on a 24-hour news cycle.

10.      Courthouse News has been credited as the original source of reporting by a range of publications, including: *The Mercury News*, *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, *The Daily Beast*, *The Dallas Morning News*, *Forbes*, Fox News, *The Guardian*, *The Hill*, *Houston Chronicle*, *The Huffington Post*, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, *Politico*, *Rolling Stone*, *Salt Lake City Tribune*, *San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, Women's Health Policy Report, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

**Importance of Timely Access**

11.      The timeliness of our news reports is a fundamental part of their value to subscribers and to readers of our website. News runs on a daily cycle where events occur during the day and are reported that afternoon and evening. Newsmakers and reporters then sleep, and

the whole cycle starts all over again the next day. Especially in today's digital age, when news is delayed until the next day or longer it is devalued by the delay. A day late is generally too late because the news in a day-old complaint has already been overtaken by events in the current news cycle. Civil actions not reported when they are received by a court are thus effectively suppressed, less likely to prompt news coverage, and thus less likely to come to the public's attention.

12.     I compare news to bread, fresh on the day it is made, stale the next. So did U.S. District Court Judge Henry Coke Morgan, on the fourth day of a bench trial in *Courthouse News Service v. Schaefer.* "I think the point the plaintiff's making is that it has its news value when it's fresh… If you don't get it when it's fresh, it's like stale bread or stale anything else. So I think the plaintiff's point on that is well taken." A true and correct copy of the relevant trial transcript pages are attached as **Exhibit 1.**

13.     This truth – that news is fresh and the day it's made – is reflected in the traditional access provided to reporters in courthouses around the nation. It is also familiar to judges and litigators who practiced in those courts. In the appellate argument on another case on same issues raised in this case, brought against Missouri's court administrator, *Courthouse News v. Gilmer*, Ralph Erickson in the 8th Circuit Court of Appeals said during oral argument, "There was a time when -- and some in this room may remember it -- when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

14.     During that same hearing, Judge Erickson said to  Missouri's lawyer: "What we're saying is that, Oh for about 230 years you can walk into a Missouri Courthouse into the clerk's office, and say, 'Hey, can I see what's been filed today?' And now all of a sudden you

can't, right?" This exchange took place during oral argument before the Eighth Circuit on April 14, 2022. A true and correct copy of the relevant experts from the oral argument transcript is attached as **Exhibit 2.**

15. A similar statement was made by U.S. in the Western District of Texas who said during a hearing on the same issues in Texas, *Courthouse News v. Lavoie*: "I feel with absolute certainty, when I first started practicing law and probably for a large amount of that time ... the district clerk in Travis County didn't review a plaintiff's complaint -- I mean the plaintiff's petition for anything. It came in, it was pushed across the counter, it got file-marked originally with a hand stamp where they wrote in the time, and then we got really fancy and had a little machine you stuck it under that automatically had the time on it, and then they put a file-mark on it. And if a member of the press happened to be standing there and said 'I really want a copy of that,' they'd make a copy right away. Nobody looked at it to see if there was a problem or anything. That was the lawyer's problem." A true and correct copy of the relevant excerpts of this hearing transcript is attaches as **Exhibit 3**. 10:18:46

16. That common tradition allowed reporters to report paper-filed complaints while they were fresh. Today, in a filing environment that includes both electronic courts and paper courts, Courthouse News reporters prepare the New Litigation Reports and identify new cases that may warrant an article on Courthouse News' website, Courthouse News' reporters visit their assigned court, or visit the court's website if remote online access to documents is available, at the end of each court day. They review all the general civil complaints filed with the court that day and determine which are of interest to Courthouse News' readers. Given the fast-moving nature of news, any delay in the ability of a reporter to review those new

complaints necessarily holds up the reporting on those actions for the New Litigation reports, the Courthouse News website, and our other publications.

**Traditional Press Access in State and Federal Courts**

17.     New civil complaints are an age-old part of the news cycle. While many new civil cases are routine matters, complaints are regularly filed that reflect noteworthy conflicts and other matters of importance to the public, involving disputes related to the environment, elections, bad medicine, dangerous products, agricultural and land use policy, schools, discrimination, and disasters. They also include the slice-of-life stories that appeal to all readers.

18.     When Courthouse News was formed in the 1990s, and as the news service grew, I visited federal and state courts throughout the country – including courts in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Maryland, Massachusetts, Nevada, New York, Illinois, Iowa, Texas, Washington, Michigan, Minnesota, New Mexico, Oklahoma, Louisiana, Missouri, Pennsylvania, New Jersey, Ohio, Oregon, South Carolina, Tennessee, Utah, Vermont, Virginia, Wisconsin – and observed similar traditions of access to newly-filed civil complaints shortly after they had crossed the intake counter. Each court had its own method of providing such access – some courts placed newly-filed, unprocessed complaints on carts or in bins or boxes where the press could review them; some courts allowed the reporters to go behind the counter to review newly-filed complaints; and some courts allowed the press to review the judge's courtesy copy of new civil complaints.

19.     In the age of paper records, state and federal courts around the country made new non-confidential civil complaints available to reporters shortly after they were received by the court, allowing reporters to see new complaints by the end of the day they were filed.  Courts provided timely access by making complaints available after they crossed the intake counter,

regardless of whether clerks had completed docketing or other clerical tasks.  This allowed the press to report on new civil actions while they were still newsworthy and likely to capture the public's attention.  The Ada County District Court ("Ada County") and the U.S. District Court for the District of Idaho were no exception.

20.     When CNS encountered delays in paper-filing courts, it was because courts would not let reporters see newly filed complaints that were waiting for a clerk to "process" them.  This kind of post-process access (or "no-access-before-process" policy) is what Courthouse News successfully challenged in the *Planet* litigation.

21.     In 2011, the court clerk for Ventura County Superior Court in California insisted on a policy of docketing newly-filed paper complaints before reporters could see them, a policy that U.S. District Court Judge S. James Otero, in the Central District of California, first dubbed "no-access-before-process." The hard-fought litigation resulted in the entry of a permanent injunction enjoining the clerk's practice of restricting access to new civil complaints until after the completion of administrative processing. In 2021, after the Ninth Circuit published an opinion affirming Judge Otero's ruling as to that practice, the district court entered an amended judgment, attached as **Exhibit 4**, which permanently enjoined Planet "from refusing [] to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed."

22.     Despite the challenge inherent in working with paper complaints – only one person can handle the document at any one time – reporters and court staff found ways to work cooperatively so that everyone could do their jobs.

23.     Providing timely access in an e-filing court is even easier.  An e-filed complaint is simply a .pdf document to be viewed and downloaded.  Nothing prevents a clerk from processing a complaint at the very moment members of the press or public are reading it or, depending on the clerk's schedule, well after public access.  Moreover, courts can and regularly do require filers to enter into the e-filing interface whatever information the court needs to automatically sort and filter new filings into categories based on that information, including the automatic segregation of confidential filings.

24.     When the federal courts converted to e-filing , they kept the tradition of access in place by giving press and public access to new filings through the PACER system shortly after their receipt by the court, thus allowing the press to see new complaints on the day they were filed. (PACER stands for "Public Access to Court Electronic Records.") As state courts transitioned to e-filing, many also made new filings available shortly after they were received by the courts, and before clerks had completed clerical tasks with respect to the new complaints. At these courts – state and federal – new civil complaints are made available to the public moments after they are received by the court, even if the complaint is filed after hours or on the weekend. The clerks complete their clerical work afterwards.

**Delays in Access Resulting from Clerical Processing.**

25.     Other state courts, including the district courts for the state of Idaho ("Idaho Courts"), took a different approach when they transitioned to e-filing, often not mindful of how new administrative rules and procedures would impact the press' ability to cover the courts. These courts withhold access to new e-filed civil complaints until after court clerks process and "accept" them. Unfortunately, most courts struggle to complete these clerical tasks for all of the day's complaints on the day of filing, which means that delays that impede news coverage

inevitably result when clerks withhold access to new filings until after they complete administrative tasks, such as processing and "acceptance." While the new complaints sit in a processing queue, journalists are required to wait for the completion of clerical work that ebbs and flows in its efficiency depending on sickness, training, staff gatherings, staffing levels, holidays and difficulties with the processing software, among the almost myriad events that can delay the completion of clerical work.. Courthouse News has seen this in court after court. Just as it has seen that access in courts that do not delay for processing becomes virtually perfect. The delays in access that result from withholding new filings from the public until after clerical processing are the subject of this lawsuit.

26.     Delays in access to new e-filed civil complaints resulting from clerical processing are easily avoided. Not only do many state and federal courts use e-filing systems that do not withhold access for processing, but the e-filing systems used by so-called "process-first" courts can easily be configured to provide timely access to new complaints before clerical processing. The Idaho Courts adopted a "process-first" system when they migrated to e-filing. Unfortunately, Defendant refuses to adopt one of the readily-available solutions that would provide access at or very near the time of submission and allow clerks to complete processing afterwards.

**Idaho Courts Conversion to e-Filing and Resulting Delays in Access**

27.     Courthouse News has covered the Idaho Courts since approximately 2008, when it began covering the Ada County district court. Courthouse News currently covers all Idaho Courts statewide. This coverage included the period of time during which the Idaho Courts converted from paper-filing to e-filing, beginning in 2015 and concluding in 2018.

28.     The Idaho Courts use e-filing and case management software provided by a third party vendor by the name of Tyler Technologies ("Tyler") – the Tyler Odyssey software suite. The Idaho Courts have branded their use of the Tyler Odyssey software suite as "iCourt."

29.     The Idaho Courts have a website dedicated to iCourt (https://icourt.idaho.gov/). This website contains detailed information concerning the Idaho Courts' conversion to e-filing and how to use the Tyler Odyssey system to initiate new case filings. True and correct screenshots from the iCourt website are attached as **Exhibit 5** ("iCourt Project Overview and FAQs" (https://icourt.idaho.gov/projfaq)),**Exhibit 6** ("File & Serve: Electronic Filing Overview (https://icourt.idaho.gov/efileoverview)), and **Exhibit 7** (e-Filing FAQs (https://icourt.idaho.gov/efile-faqs )).

30.     Courthouse News' attempts at resolving the access delays resulting from the Idaho Court's conversion to e-filing date back to 2016, when the Idaho Courts began their migration to e-filing. On April 28, 2016, Courthouse News' counsel sent a letter to then Ada County District Clerk, Christopher Rich, to preserve contemporaneous access to new complaints via a press review queue (the details of which are discussed below). A true and correct copy of this letter, without the enclosures, is attached as **Exhibit 8**.

31.     In response, on May 6, 2016, Mr. Rich wrote to Courthouse News' counsel and Interim Administrative Director of Idaho Courts, Justice Linda Copple Trout, explaining that the Ada County court provided Courthouse News with "same day access to the paper record," and that Courthouse News "is [now] seeking same day access to the digital record[s] […] via a public terminal that would have access to a queue specifically designed for this purpose." Mr. Rich concluded his letter by referring Courthouse News' request to the office of the Administrative Director of Courts ("Idaho AOC"), stating: "As Clerk, I am not in a position to assist

**DECL. OF WILLIAM GIRDNER ISO CNS'S**
**MOTION FOR SUMMARY JUDGMENT**           11

[Courthouse News]. Hence this introduction to the parties that can resolve the matter." A true and correct copy of Mr. Rich's letter is attaches as **Exhibit 9**. Subsequent communications between Courthouse News' counsel and counsel for the Idaho AOC did not result in a clear "yes" or "no" to Courthouse News' request.

32.     Courthouse News renewed its request for contemporaneous access to new e-filed civil complaints through a press review queue through a letter to Defendant dated June 14, 2021. The letter informed Defendant that delays in access to new civil complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and persistent. A true and correct copy of this letter is attached as **Exhibit 10.**

33.     In response, Defendant did not dispute that there were delays between when new complaints were received by the court and when they were "accepted" by court clerks.  But she said her office's "goal" was for "the average time from submission to acceptance" to not exceed 24 hours." She claimed that her review of court records "did not find a statewide or Ada county delay that was currently ongoing and persistent." She concluded by stating: "I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing by the court clerks' offices." A true and correct copy of this letter is attached as **Exhibit 11.**

**Timely Access in E-Filing Courts:  The Auto-Accept Method**

34.     In over 40 years of journalism, including numerous in-person visits to courthouses and clerk's offices all over the country, as well as conversations with court officials at all levels, from intake clerks in the clerk's office to the court's presiding or chief judge, I have observed that it is entirely feasible to provide the press with contemporaneous access to newly filed civil complaints.  That is true whether the filing medium is paper or electronic.

35.     The so-called "auto-accept" e-filing model is familiar to lawyers and judges because it is the model used by virtually every federal district court in the country.  "Auto-accept" simply means that the court automatically "accepts" new filings into its case management system (versus having a clerk move the new filing into the case management system after completing various clerical tasks and "accepting" the filing).  Clerks then complete processing *after* the new complaint has been placed in the case management system, i.e., the public docket. Confidential filings are filtered out based on information the filer provides in the e-filing interface, and non-confidential filings are available right after the court receives them, using whatever public access functionality the court uses.  Federal courts provide remote online access to registered users through the PACER system.

36.     Many state courts also use an "auto-accept" system.  For example, Hawaii provides access to new e-filed civil complaints through the "eCourt Kokua" portal, a homegrown system developed by the Hawaii courts that automatically accept new filings upon receipt. Through this system, Hawaii provides public access to court documents locally on public terminals located at the courthouse for free, and remotely online based on registration and a yearly payment of $500. This electronic access is a continuation of the paper access in Hawaii's island courts where new civil actions were made public as soon as they crossed the counter.

37.      Similar to Hawaii, the state courts in Connecticut also developed and maintain a statewide, homegrown auto-accept e-filing and access systems that provides public access to new court filings as they are received by the court.

38.     The state courts in Nevada use the Odyssey e-filing and case management system from Tyler Technologies. In 2019, the Nevada courts adopted an auto-accept policy for new filings and configured its e-filing and access system accordingly. Prior to adopting the statewide

auto-accept policy, the Eighth Judicial District Court in Las Vegas provided access to new e-filed civil complaints through a press review queue. Now, that court and the other Nevada judicial districts automate processing and "acceptance" of new filings just like most federal courts, with new filings made available to the public shortly after receipt. A true and correct copy of a Notice from Nevada's Eighth Judicial District Court addressing the change to auto-acceptance is attached as **Exhibit 12**. A true and correct copy of an email exchange between Courthouse News bureau chief, Chris Marshall, and a clerk at the Eighth Judicial District Court discussing this topic is attached as **Exhibit 13.**

39.     The state courts in Vermont also use the Odyssey electronic filing and case management system developed by Tyler.  All Vermont trial courts began automating acceptance of new filings at the end of 2021, within three weeks of the District of Vermont's decision in *Courthouse News Service v. Gabel*, 2021 WL 5416650 (D. Vt. Nov. 19, 2021), in which Judge Christina Reiss enjoined the clerks "from delaying public access to electronically filed civil complaints until the Vermont Superior Courts' pre-access review process is complete."  Non-confidential e-filed complaints in the Vermont Superior Courts, like those in Nevada's Eighth Judicial District, are now made available to the public and press immediately upon receipt for filing without prior review, docketing, and acceptance by court staff.

40.     Indeed, the day before the auto-accept system kicked into gear in Vermont, the Judiciary website posted a memo to all members of the Vermont bar that stated: "Beginning on Friday, December 10, 2021, initial civil complaints that are submitted using the Odyssey File and Serve code 'initial filing' will be automatically entered in the Judiciary's electronic case management system without prior staff review and acceptance.  Previously, all electronic filings, including initial complaints and associated documents in such cases, were reviewed by staff

before being entered into the electronic case management system." A true and correct copy of the memo is attached as **Exhibit 14,** and is available online at

https://www.vermontjudiciary.org/sites/default/files/documents/Memo%20to%20Bar%20-%20December%2013%202021%20-%20Clerk%20Review%20of%20Electronic.

41.     Currently a shift in policy appears to be underway in the Vermont state courts that achieves the same timely access but through Tyler's press review tool rather than Tyler's auto-accept software. On December 2, 2022, the Vermont courts issued a press release indicating they are changing their access procedures by adopting a press review queue. The press release states:

> [T]he Vermont Judiciary's Public Access Terminals will feature a new site called the Press Review Tool (PRT). This site will display new electronically filed Civil Division Complaints in the period between when the filing is submitted and when it is accepted by court staff. This tool will be available to all members of the public with no registration or fees.

The implication from this press release is that the Vermont courts are no longer using Odyssey's auto-accept functionality, but this is not currently known to Courthouse News. A true and correct copy of the press release is attached as **Exhibit 15.**

42.     Other vendors supplying e-filing and public access systems with auto-accept functionality include OnLine Information Systems ("OLIS"), which provides a statewide auto-accept e-filing and public access system for Alabama, and Tybera, which provides a statewide auto-accept and public access system for Utah.

43.     Of course, complaints filed in "auto-accept" courts are still subject to clerical review and docketing by court staff.  The only difference is that in an "auto-accept" court, the processing happens after the complaint is already in the court's case management system. Such courts are capable of addressing or correcting clerical errors through basic administrative rules and processes. For instance, this Court's (D. Idaho) "Electronic Case Filing Procedures" address

"Docket Entries and Corrections of Docket Entries" at Section 17. A true and correct copy of this Court's Electronic Case Filing Procedures is attached as **Exhibit 16**.

**Timely Access in E-Filing Courts: Press Review Queues and other Pre-Acceptance**
**Methods**

44.     Courts that do not automatically accept new filings into their case management systems through an "auto-accept" system typically rely on court clerks to manually process and "accept" them into their case management systems.  This "clerk-acceptance" model is not incompatible with timely access as long as courts do not withhold access while the filings are sitting around waiting for a clerk to process and "accept" them. In other words, as long as the clerks provide access before processing, which inevitably takes times.

45.     The New York state courts provide pre-acceptance access to new e-filed civil complaints through the New York State Courts Electronic Filing ("NYSCEF") website: https://iapps.courts.state.ny.us/nyscef. From this website, anyone can search for cases and documents, either using a registered account or as a guest:



Searching as a guest, users can search for cases e-filed on a selected date:



and the results will include any documents filed on that date, including complaints that have not

yet been processed or "accepted" by the court.  These cases are listed with the notation "Not

Assigned" in place of a case number, as shown on the following page:



(119 of 233), Page 119 of 283
Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 119 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 20 of 134

46.	A "Not Assigned" link leads to a case information screen that shows the case status is "pending" and includes a link to the complaint, which can be viewed and downloaded without any charge:



47.	Complaints that have not yet been processed include a header that reads:

"CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK," and a footer that reads:

> This is a copy of a pleading filed electronically pursuant to New York State court rules … which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules… authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Below is an excerpt from a complaint filed in New York Supreme on December 9, 2022,

that was viewable on December 9 with the pre-review language on the header (top

graphic) and footer (bottom graphic) and with the index number listed as "unassigned":



48.     Once a new complaint is processed by the clerk's office, the disclaimers are

removed and replaced with a date and time stamp, and the assigned case number is displayed in

the header:

49.     All 27 New York counties have implemented electronic filing now, and they post

e-filed complaints to the New York State Courts Electronic Filing website

(https://iapps.courts.state.ny.us/nyscef/HomePage) immediately upon receipt, prior to a case

number assignment or any manual review by the clerk's office, in the manner described above.

**DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT**          20

50. The New York state courts' implementation of pre-acceptance access resulted from litigation commenced by Courthouse News. In 2016, Courthouse News filed an action against Manhattan's state court clerk Milton Tingling in the Southern District of New York challenging the court's practice of restricting access to new e-filed civil complaints until after court clerks manually review and process them. In opposition to Courthouse News' application for a preliminary injunction, defendant Tingling made many of the same arguments defendant Omundson makes here. Tingling argued, among other things, that clerk review of new complaints was "critical" to establish compliance with court rules and "assure attorney compliance" with ethical obligations. Attached as **Exhibit 17** are relevant excerpts of the Tingling's brief in opposition to Courthouse News' application for preliminary injunction which he made this argument.

51. On December 16, 2016, the Southern District of New York granted CNS's motion for a preliminary injunction enjoining the Clerk from denying access to newly filed civil complaints until after clerical processing and requiring him to provide timely access to those documents upon receipt. The New York Clerk complied with the injunction by making complaints available through the New York State Courts Electronic Filing ("NYSCEF") web site immediately after the complaints are e-filed and before any clerk review or administrative processing, as discussed above. This new functionality was up and running within six weeks of the injunction being issued and has worked very well.  Since then, all other New York State Court Clerks that have adopted e-filing have begun using the same system of access.

52. On January 27, 2017, a notice on the NYSCEF web site stated that effective as of that date, "e-filed documents in newly initiated cases in New York County shall be available immediately for online public viewing" through the NYSCEF site and that "[s]uch filings will be

available for immediate online public viewing PRIOR to any examination of the document or assignment of an index number to the matter by the Office of the New York County Clerk." Attached as **Exhibit 18** is a true and correct copy of a screen capture of a notice that appeared on the NYSCEF site on January 27, 2017.

53.     In the nearly six years that Courthouse News has been covering the New York courts using the NYSCEF system, Courthouse News has not experienced, nor is it aware of, any problems caused by the New York courts providing pre-acceptance access to new e-filed civil complaints.

54.     Many other courts provide pre-acceptance access to new filings through a press review queue (aka review queue, media inbox, media access portal, etc.). Press review queues are, in lay terms, electronic in-boxes where new e-filed complaints can be viewed upon their receipt by the court through the court's e-filing system, without the delays that naturally result when access is withheld until the completion of administrative processing or "acceptance." Courts that provide access to new filings in this manner do so through a URL, available to users either remotely online, locally at the courthouse, or both. Courts across the nation utilize numerous different configurations and methods for providing pre-acceptance access through a press review queue. Functionally, press review queues provide the same type of access as that provided by the New York state courts through NYSCEF, i.e. at the time of receipt or shortly after, but the press review queues require registration for access, whereas New York does not require registration.

55.     Before discussing the numerous different courts that provide pre-acceptance access to new e-filed complaints through press review queues and the ways in which they do so, it is important to note that the term "press review queue" is a bit of a misnomer because pre-

acceptance access is not limited to only members of the press. As a practical matter, in my 40 years of covering the courts, members of the press were the ones who sought to review the flow of new complaints every day, searching for news. This may account for the term "press review queue" or other synonymous labels used for this type of access, such as "media in-box" of "media portal."

56.     E-filing vendor Tyler Technologies offers its client courts a "Press Review Tool" that provides pre-acceptance access to new e-filed complaints once a filer submits the document to the court through the Odyssey File & Serve e-filing system. Courts using Tyler's Press Review Tool include every mandatory e-filing court in California that uses Tyler's File & Serve e-filing system (including the Superior Courts for the counties of Fresno, Kern, Mendocino, Monterey, Napa, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Sonoma and Stanislaus), multiple e-filing courts in Georgia, and the Travis County District Court in Austin, Texas.

57.     The California counties of Butte, Kings, Merced, Sutter, Yuba and Yolo also use Tyler's Odyssey File & Serve e-filing system, and have all committed to providing pre-acceptance access to new e-filed  civil complaints pursuant to settlement agreements with Courthouse News reached earlier this year in litigation pending in the U.S. District Court for the Eastern District of California. Per the terms of the settlement agreements, the courts have between 4 to 6 months (depending on the court) to configure and implement their press review queues. Tue and correct copies of the notices of settlement identifying the implementation dates are attached as **Exhibits 19 & 20**.

58.     In prior litigation in the U.S. District Court for the Northern District of California, which concluded in 2021, the California counties of San Mateo, Santa Cruz and Sonoma also

agreed to provide pre-acceptance to new e-filed civil complaints through their Tyler Odyssey
File & Serve e-filing systems. The terms of the settlement agreements afforded those courts six
months to configure and implement their press review queues. True and correct copies of the
stipulations regarding dismissal filed in those cases are attached as **Exhibits 21 & 22** (Taniguchi
and Calvo Notices).

59.     The Texas state courts also use Tyler's File & Serve for their statewide e-filing
system. The current contract between the Texas Office of Court Administration (OCA) and Tyler
is available on the Texas Judicial Branch website: https://www.txcourts.gov/jcit/electronic-
filing/. In 2022, the OCA and Tyler amended the e-filing agreement by expressly memorializing
the Texas clerks' ability to use the Tyler Auto-Accept and Press Review Tool features. This
amendment is also on the Texas Judicial Branch website, and a true and correct copy of this
amendment is attached as **Exhibit 23**.

60.     In June 2022, the Travis District Court in Texas (Austin) agreed to provide on-
receipt access to new e-filed petitions by implementing the Press Review Tool as a means of
resolving litigation commenced by Courthouse News against the Travis County District Court
Clerk in the United States District Court for the Southern District of Texas. On October 2022,
after approximately four months of configuration and testing, the Travis District Court began
providing pre-acceptance access to new petitions through the Press Review Tool.

61.     Courthouse News has not experienced, nor is it aware of, any problems caused by
any of the Tyler courts (in California, Georgia, Nevada or elsewhere) providing pre-acceptance
access to new e-filed civil complaints.

62.     I understand from discovery in this case and in other recent litigation that Tyler is
providing its court clients with a quote of $108,000 per year for statewide use of its Press Review

Tool. Although it appears Tyler is now attempting to profit from its Press Review Tool, I understand Tyler historically provided the press review queue at no cost to courts that requested it.

63.     I communicated directly with the court clerks or officials in Fresno, Kern, Monterey, Santa Barbara and Napa Superior Courts in California. I asked them if their courts had paid any fee for the installation of the press queue and they informed me they had not. In addition, the counsel for the clerk in Santa Clara Superior informed Courthouse News' counsel that the court had not paid an extra fee for installing the press queue software. None of these court officials suggested that the transition to the press queue functionality had been difficult or disruptive. Attached as **Exhibit 24** are true and correct copies of excerpts from emails with clerks or staff for the California Superior Courts for the Counties of (1) Monterey; (2) Santa Barbara; (3) Kern; (4) Napa; and (5) Santa Clara.

64.     The e-filing vendor Journal Technologies provides its version of pre-acceptance access, called a "Media Access Portal," or "MAP" to the California Superior Courts of Alameda, Los Angeles, Placer and Riverside.

65.     The Los Angeles Superior Court ("LASC") MAP is a paid subscription-based service available to registered users online at https://media.lacourt.org/#/home. From this page, the "LASC Media Access Portal (MAP) Instructions" link directs to a .pdf copy of the User Manual: (https://media.lacourt.org/pdf/User_Guide_MAP.pdf).  At page 7, the LASC MAP User Guide states:

> Some important MAP features niclude the following:
>
> 1.   UNFILED UNLIMITED CIVIL COMPLAINTS – This feature allows Tier 2 users to view submitted Civil e-Filings which have not yet been clerically processed. These documents may not be available for display until two hours after submission. Search results are displayed chronologically and lists two months of the most current e-Filings.

The subscription plans for the LASC MAP are reflected on a media relations bulletin published on the LASC website (https://www.lacourt.org/newsmedia/UI/pdf/WEBSITEINFORMATIONREGARDINGMAP070 82021.pdf), a true and correct copy of which is attached as **Exhibit 25.** Users of the MAP must comply with LASC's Restrictions on Access and Use, a true and correct copy of which is attached as **Exhibit 26.**

66.    At Alameda Superior Court, the public access link on the court's website is called "Media Access Portal" (MAP). Like the other Journal Technology courts, it provides online, pre-acceptance access to new civil complaints. Like LASC, Alameda Superior requires registration for its MAP. The access, however, is free. At Riverside and Imperial Superior Courts in southern California, access to their MAPs does not require registration, and access is free. Courthouse News has not experienced, nor is it aware of, any problems caused by any of the Journal Technologies courts (i.e., LASC, Riverside, Imperial or Alameda) providing pre-acceptance access to new e-filed civil complaints.

67.    The vendor Granicus supplies e-filing and public access systems used by the Florida and Arizona state courts to provide on-receipt access.

68.    The Florida state courts provide pre-acceptance access to new e-filed civil complaints through version of a press review queue called the Florida Courts e-Filing Portal ("Portal"), available online at: https://www.myflcourtaccess.com/authority/.  This statewide review queue is available at no charge to registered users who create a Portal account with their name, address, username, password and other requested information. The registration process is open to a broad portion of the public:



69.     The Florida courts implemented the Portal in response to litigation initiated by

Courthouse News in the U.S. District Court for the Northern District of Florida, Case No. 4:22-

cv-00106-MW. That case involved a First Amendment claim based on the delays in access

resulting from the Florida courts' practice of restricting access to new e-filed civil complaints

until after the completion of administrative processing. After the district court granted

Courthouse News' motion for a preliminary injunction earlier this year, the parties participated in

a mediation that resulted in a settlement. As part of that settlement, the Florida courts agreed to

provide access to new e-filed civil complaints prior to clerk review or "acceptance," and within

five minutes of receipt. The Florida courts launched the Portal within 75 days of execution of the

settlement agreement. Courthouse News has not experienced, nor is it aware of, any problems

caused by the Florida courts providing pre-acceptance access to new e-filed civil complaints.

70.     Like the Florida courts, the Arizona courts provide statewide pre-acceptance

access through a press review queue provided by e-filing vendor Granicus. This Arizona press

review queue is called the Public News Media File Share Portal ("News Media Portal"). It

requires registration, a user name and password to enter, and be accessed either remotely online or at local courthouses through the eFile AZ website (https://efile.azcourts.gov/). The News Media Portal gives subscribers on-receipt access to new civil complaints filed anywhere in Arizona. Subscribers are required to pay a flat fee of $8,000 per year.

71.     The News Media Portal was developed by vendor Granicus at the behest of the Arizona Administrative Office of the Courts in response to two letters I sent requesting on-receipt access. The administrator, Dave Byers, offered to provide all media with on-receipt access throughout Arizona for a monthly fee for copies and the annual flat fee of $8,000.  He also accepted my offer to pay any programming cost for development of the statewide press queue. The Arizona state courts ultimately billed Courthouse News the amount of $12,500 as the cost of developing the News Media Portal, from scratch, through Granicus. The Arizona courts went live with the News Media Portal in September 2021. Courthouse News has not experienced, nor is it aware of, any problems caused by the Arizona courts providing pre-acceptance access to new e-filed civil complaints.

72.     On July 14, 2021, the Arizona Supreme Court issued Administrative Order 2021-110, which is available on the Arizona state court website (https://www.azcourts.gov/orders/Administrative-Orders-Index/2021-Administrative-Orders), and attached hereto as **Exhibit 27.** The order demonstrates how a state supreme court can authorize and facilitate pre-acceptance access in response to a request from the media.

73.     Some courts develop and provide pre-acceptance access through in-house or homegrown e-filing and access systems. Examples of courts that have developed their own homegrown pre-acceptance access solutions include the California Superior Courts for the

counties of Orange and San Diego (using software they received from the state of California and now maintain in-house) and San Francisco (using software developed internally).

74. The Orange County Superior Court ("OCSC") provided pre-acceptance pursuant to a settlement with Courthouse News in the *CNS v. Yamasaki* (C.D. Cal.) case. In *Yamasaki*, Courthouse News challenged OCSC's practice of restricting access to new e-filed civil complaints until after the completion of administrative review and processing. The district court denied Courthouse News' motion for preliminary injunction, and ruled in favor of the defendant clerk on the merits following summary judgment and a summary bench trial. On February 24, 2020, the Ninth Circuit vacated the order denying Courthouse News' motion for preliminary injunction and all other orders on the merits, and remanded the case "for further proceedings consistent with this court's opinion in *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020)" ("*Planet III*"). *Courthouse News Service v. Yamasaki*, 950 F.3d 640 (9th Cir. 2020).

75. Defendant Yamasaki argued in support of his motion for summary judgment, and throughout the litigation, that, among other things, "OCSC's practice of reviewing complaints for confidentiality and compliance is narrowly tailored to serve the governmental interest in protecting the privacy of litigants." *See* Dkt. 75, p. 14, Case No. 8:17-cv-00126-AG-KES (C.D. Cal.). However, after the Ninth Circuit issued its opinion in *Courthouse News Serv. v. Yamasaki,* OCSC agreed to provide pre-acceptance access to new e-filed civil complaints. The parties agreed OSCS would have nine months to implement an "Electronic Media Inbox" into which new electronically submitted will be deposited upon receipt by OCSC for viewing by members of the media. Attached as **Exhibit 28** is a true and correct copy of the Notice of Settlement filed by Courthouse News in the Yamasaki matter. OCSC went live with its Civil Unlimited Media Access Portal, and the parties dismissed the litigation, in October 2021.

76. The OCSC Media Access Portal is accessible through the OCSC website (https://map.occourts.org/), and requires the registration of an account with a username and password. OCSC charges a $500 annual fee "to defray maintenance costs associated with the Portal." The Media Access Portal website states:



**CIVIL UNLIMITED MEDIA ACCESS PORTAL**

**Civil Unlimited Media Access Portal**

Welcome to Civil Unlimited Media Access Portal. The Portal is designed to allow News Media to access certain civil data and documents, including civil complaints of unlimited jurisdiction that have been received from a litigant for electronic filing by the Orange County Superior Court.

**Beginning January 1, 2022, all users of the Civil Unlimited Media Access Portal will be required to pay a non-refundable, annual fee of $500.00 to defray maintenance costs associated with the Portal.**

The information provided by and obtained from this website does not constitute an official record of the Superior Court of California, County of Orange (the "Court"). Any user of the information is hereby advised that the information is provided as is and that it may be subject to error or omission. The user acknowledges and agrees that the Court is not liable in any way whatsoever for the accuracy or validity of the information provided.

Courthouse News has not experienced, nor is it aware of, any problems caused by OCSC providing pre-acceptance access to new e-filed civil complaints. A true and correct copy of OCSC's "Frequently Asked Questions" page for the Media Access Portal is attached as **Exhibit 29.**

77. Although the vast majority of federal district courts provide access to new complaints through PACER, a small number of federal district courts provide access to them through a press review queue, including the U.S. District Courts for the Eastern District of California, Northern District of Georgia, Northern District of New York, Western District of Pennsylvania, and Middle District of Tennessee.

78. As noted above, courts provide access to their press review queues remotely online, at local courthouses, or both. Courts that limit access to their press review queues to terminals located at the courthouse or computers connected to the court's Wi-Fi network include the California Superior Courts for the counties of San Francisco (through a homegrown e-filing

system)  and San Luis Obispo (through Tyler's File & Serve e-filing system and Press Review Tool).

79.     While some state courts have agreed to provide pre-acceptance access only in response to litigation, many courts have agreed to provide pre-acceptance access in response to simple requests from Courthouse News, as demonstrated by the Arizona state courts.  Over the past several years, I have written to numerous court clerks and judges at courts urging them to implement press review queues, either through vendors or through their homegrown systems, and explaining the problem of delayed access caused by withholding new complaints until after they are docketed.  In response, many of these courts agreed to implement press queues by working with their vendor or configuring their homegrown systems. For instance, the California Superior Courts for the counties of Fresno, Kern, Napa, Mendocino, Monterey, San Luis Obispo, and Santa Barbara voluntarily put press review queues in place using Tyler's Press Review Tool software.  The California Superior Court for the county of San Diego voluntarily put a press queue in place through their in-house CCMS system. This is just a limited sample of the courts that agreed to provide access either in response to requests from Courthouse News or of their own accord without any request known to Courthouse News.

80.     In discovery conducted in this litigation Courthouse News has been asked to identify, among other things, how different courts provide access to new e-filed civil complaints and of courts.  Attached to the Declaration of Jonathan Fetterly are Courthouses News' Amended Responses to Defendant's Second Set of Interrogatories, and relevant excerpts from my deposition testimony as Courthouse News' 30(b)(6) deposition. I incorporate those responses and testimony into my declaration.

81.     In Chicago's Cook County Circuit Court, I had gone behind the counter in about 2003 and found traditional access where reporters could check the very last complaints filed that day, stay as long as a supervisor was present, and use the clerk's copy machine to make copies of important cases. In Cook County's move to e-filing in 2018 using Tyler's Odyssey File & Serve e-filing system, Clerk Dorothy Brown took away traditional access and pushed the press corps, who worked on the floor below the clerk's office, behind processing. In 2018, in the *Brown* case, U.S. District Court Judge Matthew Kennelly of the Northern District of Illinois enjoined her no-access-before-process policy, before the Seventh Circuit dismissed the case on abstention grounds.

82.     In the district court, defendant Brown argued in support of her policy that her office "needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identify information – that may not be electronically files…." As District Judge Kennelly observed in his memorandum and order, "[t]he Court found unpersuasive that it was *Brown's* duty to ensure that such documents are not included in e-filings; applicable Illinois Supreme Court rules place that burden on filing parties and expressly state that court clerks are not required to review pleadings for compliance with that rule." Judge Kennelly continued, "[a]nd even if this responsibility actually existed, Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until acceptance is narrowly tailored to that interests," and "has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed." A true and correct copy of Judge Kennelly's memorandum and order is attached as **Exhibit 30.**

83.     Even though Judge Kennelly's order was reversed by the Seventh Circuit on

abstention grounds, that abstention ruling stands alone as an outlier, and numerous federal

district and circuit courts have declined to follow it, including this Court and most recently the

Eighth Circuit and Tenth Circuit. The Seventh Circuit did not address the merits of Judge

Kennelly's order.

**The Efficacy of the Auto-Accept and Press Review Queue (or Other Pre-Acceptance)**
**Solutions**

84.     The great number and variety of e-filing systems programmed to provide timely

access to new civil complaints is evidence of the simple truth that it is highly practicable to give

reporters access to new e-filed civil action as they are received so that they can be viewed on the

day they are filed, just as it was with paper filings. Much of the data entry traditionally

associated with post-filing docketing is now entered by the filer before he or she submits the

filing. Based on the information supplied by the filer, state courts and their e-filing systems are

fully capable of filtering and sequestering non-public filings, while making only public filings –

or only specific types of filings, such as complaints in particular types of cases – available to the

press or public. Confidential or sealed complaints are electronically designated as such by the

filer and sorted aside by the EFM, so they cannot be seen either in the press queue or the public

docket.

85.     This system works. In California, for example, non-commercial unlawful detainer

complaints are confidential for the first 60 days by state statute, and a lot of these complaints are

filed in California's superior courts. Yet we do not see these actions in the press review queues

currently operating in the superior courts that provide them. Nor do they appear in the equivalent

systems by non-Tyler courts, such as the Los Angeles Superior Court. Courthouse News has not

experienced, nor is it aware of, any issues or problems arising or resulting from state courts providing pre-acceptance access to new e-filed civil complaints.

86.    These different systems yield a common result – access comparable to the traditional access that used to be available to reporters in the paper era, in both federal and state courts in Idaho and elsewhere across the nation.

87.    This litigation and the litigation that has preceded it stems from a conviction that the foundation stone of the American courts is their open and public nature. That foundation stone is damaged by the delay imposed by defendants here on public access and the resulting damage to the news about the courts. It is out of that conviction that I have undertaken a decade-long effort to reverse the delays imposed on access by individual clerks in their transition to a new technology, because news, like bread, is fresh when it's made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th day of December, 2022.

_____
William Girdner

# EXHIBIT 16
# GIRDNER DECLARATION

### UNITED STATES DISTRICT AND BANKRUPTCY COURT
### DISTRICT OF IDAHO

**ELECTRONIC CASE FILING PROCEDURES**
**Effective January 16, 2006**
**Amended October 6, 2021**

1.  **Establishment of Electronic Case Filing Procedures.**

    The Clerk of Court for the United States District and Bankruptcy Courts for the District of Idaho is authorized to establish and promulgate Electronic Case Filing Procedures (ECF Procedures), including the procedure for registration of attorneys and other authorized users, and to permit electronic filing and notice of pleadings and other papers. The Clerk may modify the ECF Procedures from time to time, subject to approval by the Chief Judges. The ECF Procedures shall be available to the public on the Court's web site: www.id.uscourts.gov.

2.  **Definitions and Standards.**

    A.  **CM/ECF** refers to Case Management/Electronic Case Files, which is the docketing and filing system used by the judiciary and by this Court.

    B.  **Electronic document** is an electronic version of information otherwise filed in paper form.

        1.  An electronic document has the same legal effect as a paper document.

        2.  An electronic document is considered timely if received by the Court before midnight, Mountain Time, on the date set as a deadline, unless the judge specifically requires another time frame. If time of day is of the essence, the assigned judge will order the document filed by a time certain.

    C.  **Electronic filing** is the electronic transmission of a pdf (portable document format) document to the Court for case processing by uploading the document directly from the user's computer and using the Court's CM/ECF system to file that document in the case file. It includes the transmission of pdf documents and scanned images.

    D.  **Pdf** is a document created with a word processing program that has been converted to pdf. The pdf conversion program, in effect, takes a picture of the original document so the converted document can be opened across a broad range of hardware and software, with layout, format, links, and images intact.

    E.  **Scanning.** When converting a document to pdf format, do it directly from the Word Processing Application. Do **not** scan the document because this will result in a significantly larger size document and also creates a graphic, which prevents or significantly inhibits the use of all editing features built into the Adobe software. When no alternative exists other than scanning documents, filing parties must configure their scanners for black and white at 200-300 dpi (without color). The filing party is responsible for the legibility of the scanned image.

1

F. **Electronic signature** refers to the fact that an electronic document is deemed signed when filed by an attorney, trustee, judicial officer, deputy clerk or other person authorized by the Court, using a valid login and password.

G. **Notice of Electronic Filing** is an e-mail verification of the Court's receipt of the electronic pleading, as well as official notice of the filing to all other parties. The Notice includes the text of the docket entry, as well as a link to the filed document(s).

H. **Registered Participant** is an attorney, trustee, judicial officer, deputy clerk or other authorized person who has registered for a PACER account and has been issued a PACER login and password.

Registered Participants who are attorneys in good standing with this Court and are appearing *pro se* may use their PACER account to access CM/ECF and file electronically without seeking prior Court approval.

3. **Registration, Logins and Passwords.**

A. **Registration.** Each person or entity wishing to participate in the electronic filing system must register for a PACER account and submit an e-file registration request. Please visit the PACER Service Center found on the Court's web site at www.id.uscourts.gov.

1. Ensure you have an individual PACER account (not a shared firm account). Once you have registered through PACER, the Court will be notified. At the Court's discretion, your registration will be either approved or denied.

Attorneys and others who can demonstrate they have successfully filed electronically with another U.S. Court may apply to become Registered Participants in this district.

2. In the event the Court rejects or suspends login and password privileges, the applicant will be notified.

3. Provided a Registered Participant has an Internet e-mail address, registration constitutes: (1) waiver of the right to receive notice by first class mail and consent to receive notice electronically; and (2) waiver of the right to service by personal service or first class mail and consent to electronic service, except with regard to service of a summons and complaint. Waiver of service and notice by first class mail also applies to notice of the entry of an order or judgment.

4. If the Court permits, a party to a pending action who is not represented by an attorney may register as a Registered Participant in the Electronic Filing System solely for purposes of the action. Registration is in a form prescribed by the Clerk. If, during the course of the action, the party retains an attorney who appears on the party's behalf, the attorney must advise the Clerk to terminate the party as a Registered Participant upon the attorney's appearance.

2

It is each attorney's responsibility to maintain their respective CM/ECF user account information through PACER and ensure its accuracy with respect to items such as firm name, e-mail addresses, and secondary account users.

B.     **Limited Registered Participants.**

1.     *Pro hac vice.* An application for *pro hac vice* admission shall be submitted by Local Counsel through CM/ECF and accompanied by the appropriate fee. If appropriate, the Court will enter a docket text order granting the *pro hac vice* application. Immediately upon granting of the application, out-of-state counsel must submit an e-file registration request through PACER.

Upon completion of your registration the Court will be notified by PACER. The Court will process the request accordingly. All subsequent documents filed by *pro hac vice* counsel shall be submitted through CM/ECF.

2.     In the Bankruptcy Court, a limited Registered Participant also includes a person who is eligible to file only certain documents, such as a proof of claim form, a stipulation for relief from stay and a notice of appearance, or any other person who may be authorized by the Court to register for other limited purposes.

C.     **Logins and Passwords.** Only attorneys in good standing with the Court, trustees, and others authorized by the Court will be permitted to file electronically.

1.     All members of the Federal Court Bar are required to register for **a single** sign-on account through the PACER Service Center. This account will allow e-filing attorneys to use one PACER login and password to access any NextGen court (district, appellate and bankruptcy) in which they practice. E-filing will facilitate service of notices and orders from the Court, as well as meeting the service requirements of the other parties in the case.

Registration for the accounts may be accomplished on-line at the links provided below.

PACER: http://pacer.uscourts.gov

2.     Any password issued for electronic filing shall be used exclusively by the Registered Participant to whom the password is assigned.

3.     No Registered Participant shall knowingly permit a password to be used by anyone who is not authorized to use the password and no person shall knowingly use the password of a Registered Participant unless such person is so authorized.

4.     If an employee of a Registered Participant is no longer permitted such access or if the Registered Participant has reason to believe the security

3

**ER-1027**

of their password has been compromised, the Registered Participant shall forthwith change their password through the PACER Service Center.

**4.** **Filing of Documents in CM/ECF and by Other Electronic Medium.**

A.  Unless otherwise permitted by the Court or these procedures, all complaints, petitions, motions, pleadings, memoranda of law, or other documents, except for creditor matrices and orders, are to be converted into portable document format (.pdf) and filed directly on the CM/ECF System or other medium as directed by the Court. Creditor matrices are to be filed in a similar manner, but in text (.txt) format. Proposed orders shall be submitted in the form required in section 12.

B.  If permitted by the Court, documents submitted on CD ROM, DVD or other medium as directed by the Court, must only contain documents relating to a single case and must be labeled with the case number, the attorney's name, case name, a brief description of the documents on the medium, and the phone number of the attorney submitting the medium. Any video files submitted must be in media player (.wav) format.

**5.** **Exceptions from Mandatory Electronic Filing.**
The following types of cases and documents shall not be filed electronically, unless otherwise authorized by the Court:

A.  Any document filed by a non-attorney *pro se* party.

B.  Administrative Records as specified in section 10.

C.  Grand Jury material and warrants. While these must be filed in a traditional manner, if possible, they should be accompanied by a disk or CD-ROM containing the documents in .pdf format.

D.  State Court records submitted with a respondent's answer to a habeas corpus petition.

E.  Discovery: In accordance with Dist. Idaho Loc. Civ. R 5.4 and LBR 7005.1 discovery requests and responses shall not be filed with the Court. Discovery materials may, however, be submitted in support of or in opposition to any motion filed with the Court.

F.  Any document that cannot be scanned or otherwise converted to electronic format.

G.  Charging documents in a criminal case including Complaints, Informations and Indictments.

H.  Consents to Proceed before a Magistrate Judge. These shall be e-mailed to consents@id.uscourts.gov as specified in Dist. Idaho Loc. Civ R. 73.1(b).

4

6. **Filing Specific Documents Electronically.**

    A.    **Civil Complaints and Removals.** Civil Complaints, Notices of Removal, and Civil Case Cover Sheets shall be filed through CM/ECF and accompanied by the applicable fee, payable by credit card. The Civil Case Cover Sheet shall be submitted in .pdf format as an attachment to the Complaint or Notice of Removal. When filing a Notice of Removal, the copies of the State Court documents are to be filed electronically as attachments to the Notice of Removal. Each pleading is to be added as a separate attachment.

        A party may not electronically serve a civil complaint, but instead must effect service according to Rule 4 of the Federal Rules of Civil Procedure.

    B.    **Bankruptcy Creditor List.**
When preparing the mailing list, avoid using any special "meta" characters. Using these characters causes a failure during the upload process. Specifically avoid using the ~!@#$%^&*+|\' characters. For example, do not use "%" for "in care of" language. Rather, use the "c/o" designation. Also, avoid using any punctuation, including the apostrophe.

7. **Summonses.**

    A.    **Summonses in Civil Cases.** When initiating a new civil proceeding, a Registered Participant shall electronically prepare the standard Summons for a civil proceeding and electronically file it as an attachment to the electronically filed Complaint. Thereafter, the Clerk will electronically issue the summons and return it to the party who submitted it.

        Affidavits of service, which may include executed summonses, may be filed electronically through CM/ECF.

    B.    **Summonses in Bankruptcy Adversary Proceedings.** To file an adversary proceeding, a Registered Participant shall electronically prepare Form B2500A (Summons in an Adversary Proceeding) and electronically file it as an attachment to the electronically filed Complaint.

        A party may not electronically serve a summons, but instead must effect service according to Rule 7004 of the Federal Rules of Bankruptcy Procedure.

8. **Service.**

    A.    In District Court, pursuant to Fed. Civ. R. 5(d)(1)(B), no certificate of service is required when a paper is served by filing it with the Court's electronic filing system.

    B.    In Bankruptcy Court, a certificate of service on all parties entitled to service or notice is still required when a party files a document electronically. The certificate must state the manner in which service was accomplished on each party and shall appear as the last page of the document being electronically filed. A certificate of service is not required when submitting a proposed order. The certificate of service form shall be in the form shown below:

5

I HEREBY CERTIFY that on the _____ day of _____, 20__, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| Robert Jones, Attorney for Debtor<br>(email address) | Samuel Adams, Attorney for ABCD Bank<br>(email address) | J.D. Smith, Trustee<br>(email address) |
| Office of the U.S. Trustee<br>(email address) | Stephen Stevens, Attorney for Trustee<br>(email address) | |

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

| | | |
|---|---|---|
| John and Jane Debtor<br>1234 South 1st Street<br>Smalltown, ID 83777 | Idaho Construction Corp., Inc.<br>c/o BR Corporation, its registered agent<br>P.O. Box 1115<br>Boise, ID 83701 | Robert Doe, President<br>Boise Receivables, Inc.<br>623 Main St.<br>Meridian, ID 83715 |

Via certified mail, return receipt requested, addressed as follows:

USA First Bank, N.A.
Attn: I. M. Rich,
President
616 Parkway Drive
Minneapolis, MN 45454

_____
        /s/
R. Johnson, Attorney for Movant

C.    In District and Bankruptcy Court, **whenever a pleading or other document is filed electronically** in accordance with these procedures, CM/ECF will generate an e-mail "Notice of Electronic Filing" to the filing party and to any other party who is a registered user. This Notice is equivalent to the conformed copy traditionally stamped *Filed*.

   1.    If the recipient is not a Registered Participant in CM/ECF, service must be made pursuant to the Federal Rules.

D.    In District and Bankruptcy Court, **whenever a pleading or other document is filed in paper form** for the Clerk's Office to scan and upload to CM/ECF, the filer must serve conventional copies on all parties to the case.

E.    In District and Bankruptcy Court, if the filer doesn't know whether another party is a registered CM/ECF user**:**

   1.    Select CM/ECF's "Utilities" category.
   2.    Select "Mailings"
   3.    Select "Mailing Information for a Case" on the pull-down menu.
   4.    Enter the case number and Submit

5.  The mailing information will appear reflecting the means of service for each party in the case.  This information may be "cut and pasted" into your word processing program to facilitate creation of the Certificate of Mailing.

9.  **Motions and Related Paperwork.**

A.  **Formatting.**  Documents must comply with Dist. Idaho Loc. Civ. R. 5.2, LBR 5005.2 or LBR 7003.1.

B.  **Submission of Motions as Separate Documents.**  Motions and responses should always be filed as **separate documents**.  For example, a Cross-Motion for Summary Judgment should never be combined with a Response to a Motion for Summary Judgment.  It is critical the Cross-Motion be filed separately so it will appear on the Pending Motions Report and can be properly linked to any subsequent Responses, Replies, Notices and Orders.  Any exhibits or attachments to Motions/Reponses should be included with said Motion/Response and not filed as a separate docket entry.

C.  **Supporting Memorandum and Affidavits Filed with the Motion.**  Documents filed in support of a motion, which are filed *concurrently* with the motion, should be submitted to the Court as attachments to the main motion.  On the screen where the filer browses and selects the motion.pdf, they should answer "yes" to attachments. On the attachments screen, the filer should include all additional documents being filed in support of the main motion, listed in a logical sequence.

D.  **Filing Subsequent Supporting Documents.**  If a brief or affidavit in support of a motion is filed at a later time, do not refile the motion.  File the document using the proper event and link it to the previously filed motion.

In Bankruptcy Court: Use "Other" under the Bankruptcy section to select the affidavit or brief.  This may be used in an Adversary or Bankruptcy matter.

In District Court: Select the correct event from the "Responses and Replies" events list.  There are separate event lists under the Civil and Criminal sections.

10. **Administrative Records in the District Court.**  Administrative records shall be filed electronically and are subject to Dist. Idaho Loc. Civ. R 79.1.

11. **Large Documents, Non-Trial Attachments and Exhibits.**  Registered Participants must submit in electronic form all documents referenced as exhibits or attachments unless otherwise ordered by the Court.  Registered Participants shall submit as exhibits or attachments only those excerpts of the referenced documents that are directly germane to the matter under consideration by the Court. Excerpted material must be clearly and prominently identified as such.  Parties who file excerpts of documents as exhibits or attachments under this section do so without prejudice to their right to timely file additional excerpts of the exhibit.  Responding parties may also timely file additional excerpts of the exhibit they believe are directly germane.

7

A.  Transmission time for filing documents created by scanning that are more than fifteen (15) megabytes in size will fail, and CM/ECF will issue an error message.

Documents in excess of 15MB will need to be divided into logical segments for filing as attachments.  If a Registered Participant electronically files documents, exhibits or attachments created by scanning (imaging) that are more than fifteen (15) megabytes in size, they must be segmented, indexed, and filed as multiple attachments (the system will allow multiple attachments to any pleading/document to be filed electronically).  If a document is segmented, it shall be done in such a manner that each exhibit or attachment is divided in a logical sequence, easily understood as a stand-alone document.  Alternatively, these documents may be submitted on CD-ROM or DVD to the Court for filing within two (2) business days. All pleadings/documents and attachments/exhibits which are created by scanning (imaging) shall be black and white (without color), in .pdf format and the resolution *should not exceed 300 DPI*. Please check your PDF compression settings in the printer "properties" button to ensure you are using high compression.

B.  In the Bankruptcy Court, exhibits, attachments or supporting documentation for Proofs of Claim are to be attached to the Proof of Claim when submitted for filing.  The creditor must provide a copy of the original documentation to any party objecting to its claim.  In the event of a hearing on an objection to the claim, the Proof of Claim and all original exhibits, attachments and supporting documentation may be introduced at the hearing for possible admission to the official record.

C.  Exhibits that are not in paper format should be photographed so they can be scanned or converted by the filer into .pdf format for electronic submission into the System.

**12.  Court Issued Documents and Proposed Orders.**

A.  **Court Orders.**  All orders, decrees, judgments, and proceedings of the Court will be filed in accordance with these procedures, which will constitute entry on the docket kept by the Clerk.  All signed orders will be filed electronically by the Court. Any order or other Court-issued document filed electronically without the original signature of a judge or clerk has the same force and effect as if the judge or clerk had signed a paper copy of the order and it had been entered on the docket in a conventional manner.

1.  The assigned judge or the Clerk's staff, if appropriate, may grant routine orders by docket entry order.   In such cases, no .pdf document will be created, and the text-only entry shall constitute the Court's only order on the matter.  CM/ECF will generate a "Notice of Electronic Filing" as described previously in these procedures.

2.  When mailing paper copies of an electronically filed order to a party who is not a Registered Participant, the Clerk's Office will include the Notice of Electronic Filing to provide the non-participant with the proof of filing.

8

**ER-1032**

B. **Proposed Orders.** Proposed orders are to be submitted by e-mail in Word format, unless expressly directed by the Court to be submitted in a different format.  A certificate of service is not required when submitting a proposed order.

The following procedures will assist the Court in processing proposed orders:

1.  Simplify the font style  or face.  Use Times Roman o r a similar well-accepted and recognized, standard font.  Elaborate and stylish fonts do not transfer or translate well.  Use 12- or 13-point font throughout the document.

2.  Eliminate as much "formatting" as possible.  For example, don't use hidden or internal codes and omit irregular line spacing, odd line or block justifications.

3.  There shall be no attorney information (name, firm, address, etc.) above the caption.  After the text of the order, the end of the text shall be indicated with the phrase "//end of text//".  Below the end of text designation,  the submitting attorney shall indicate the name of the attorney(s) submitting the order, the name of the party(s) represented, and in the Bankruptcy Court, any endorsements of the order by other parties (see paragraph B.7 below).

4.  When e-mailing the proposed order in the correct format to the Court, all proposed orders must list in the e-mail subject line, the following items, separated by an underscore: (1) the case number, (2) judge's initials, (3) the docket number of the motion filed electronically, which is the subject of the proposed         order; and (4) a description.  (Example: 05-1234_NGH_10_Order_Dismissing.docx)

5.  Proposed orders shall be sent to the appropriate address from the following list:

| District Court | Bankruptcy Court |
|---|---|
| BLW_Orders@id.uscourts.gov | JMM_Proposed@id.uscourts.gov |
| DCN_Orders@id.uscourts.gov | NGH_Proposed@id.uscourts.gov |
| EJL_Orders@id.uscourts.gov | JDP_Proposed@id.uscourts.gov |
| CWD_Orders@id.uscourts.gov | |
| REP_Orders@id.uscourts.gov | |
| VisitingJudgeOrders@id.uscourts.gov | |

6.  The submitting party shall not include a date, or signature line or block, for the judge in any proposed order submitted to the Court.  So, please DO **NOT** USE the following type of format for your proposed orders.

Dated this ___ day of _____, 20__.

9

**ER-1033**

(The date and signature will be added by the Court at the time the order is entered.)

7. **Bankruptcy Court Signature Approval.**  If a party submitting a proposed stipulation to obtain a court order or is submitting an order in which the party is directed by the Court, or required by applicable rule, to obtain the approval from other parties prior to its submission to the Court, the submitting party shall indicate such approval, after the text of the order and before the space provided for the Court's entry per paragraph B.3 above, the name(s) of such approving parties and noting their signature approval by inserting "/s/" above their name, as illustrated below. Telephonic, facsimile, or e-mail approval, shall be indicated as illustrated. Submission of such stipulation or order constitutes a certification by the submitting party that the indicated approvals were obtained.  The submitting party shall be required to retain any original, facsimile or scanned signatures.  For example:

The above order has been approved by the following party or parties on the date(s) indicated:

/s/
John D. Doe, Chapter 13 Trustee
April 15, 2014

/s/
Jane A. Roe Counsel for Creditor, Mortgage Co. of America
April 15, 2014

/s/ (telephonic approval)
James A. Smith, Counsel for Debtor
April 15, 2014

/s/ (facsimile approval)
James A. Smith, Counsel for Debtor
April 15, 2014

/s/ (e-mail approval)
James A. Smith Counsel for Debtor
April 15, 2014

13. **<u>Signatures and Verified Pleadings</u>**.  The electronic filing of any  document by  a Registered Participant shall constitute the signature of that person for all purposes provided in the Federal Rules.  Any document that must contain an original signature or requires verification under the federal rules or an unsworn declaration as provided in 28 U.S.C. § 1746, and any affidavits or other pleadings in which a person verifies, certifies, affirms or swears under oath or penalty of perjury concerning the truth of matters set forth in that pleading or document ("Verified Pleading") may be filed electronically by Registered Participants in the System.

The correct procedure is to type /s/ and then your full name.  Another option is to place the

10

/s/ on the signature line and type your complete name under the signature line. For example:

/s/ Jane Attorney

or

/s/ _____
Jane Attorney

Electronic signature requirements for Registered Participants are the same in District and Bankruptcy Court, except as noted below in paragraph B.

A.  A Registered Participant filing a Verified Pleading electronically shall insure the electronic version conforms to the original, signed pleading/document. Each signature on the original, signed pleading/document shall be indicated on the electronically filed Verified Pleading with the typed name on the signature line of the person purported to have signed the pleading/document. The electronic filing of a Verified Pleading constitutes a representation by the Registered Participant that he or she has the original, signed document in his or her possession at the time of filing. The Registered Participant shall retain the Verified Pleading for a period of not less than the maximum allowed time to complete any appellate process, or the time the case or Adversary Proceeding of which the document is a part, is closed, whichever is later. The document shall be produced upon an order of the Court.

1.  Motions, documents and other filings presented by *pro hac vice* counsel must contain the original signatures of associated local counsel to ensure all filings comply with all local rules of this court.

B.  In bankruptcy cases, the Registered Participant must electronically submit a scanned pdf copy of the original signature page of the original and any amended petition, schedules and statement of financial affairs to the Clerk at the time of electronically filing these documents with the Court in CM/ECF.

C.  Several documents in criminal cases may require the signature of a non-attorney, such as a defendant, a third-party custodian, a United States Marshal, an officer from Pretrial Services or Probation, or some other federal officer or agent. In general, the Clerk's Office will scan these documents and upload them to CM/ECF. Such copies of documents will be retained by the Court only so long as required to ensure the information has been transferred to the Court's data base, for other Court purposes or as required by other applicable laws or rules. The electronically filed document, as it is maintained on the Court's servers, shall constitute the official version of that record.

14.  **Sealed Documents.** Sealed documents and sealed cases in the District and Bankruptcy Court will be filed in electronic format, with access restricted to the Court and authorized staff, unless otherwise ordered by the Court.

11

**ER-1035**

**Motion to File under Seal**.  Motions to file under seal must comply with Dist. Idaho. Loc. Civ. R 5.3(a)(1) or LBR 5003.2(1).

**Motion to Seal Existing Documents.**  Motions to seal existing documents must comply with Dist. Idaho. Loc. Civ. R 5.3(b) or LBR 5003.2(a)(2).

**Public information**.  Unless otherwise ordered, the motion to seal will be noted in the public record of the court.  The filing party or the clerk of court shall be responsible for restricting public access to the sealed documents, as ordered by the court.

**Procedure for the Electronic Filing of Sealed Documents:**

A.   If a party wishes to file a document under seal in CM/ECF, they should first contact the Clerk's Office for instructions regarding how to file the document and how to maintain the confidentiality of the information.

B.   If a party wishes to file a sealed motion, they must first choose "motion" then browse to "sealed motion," describe the motion, and if there are attachments, indicate and describe those.  Pay particular attention when providing a description of the sealed motion to not include information intended to be sealed.  The docket entry is public even though the sealed document is not.  The motions and attachments should be in "pdf" format.  The attachments will be sealed as well.

   If a party wishes to file a motion asking they be allowed to file a document under seal, then the document they are asking to file under seal should **not** be an attachment to the motion.  Proposed Orders are sent to chambers by e-mail, not electronically filed, and not in the "pdf" format.

C.   Also, any sealed motion should include at the end of the motion a request for the corresponding order to be sealed as well.  It shall also indicate who the order shall be served upon (e.g. "Counsel for _____ requests the Order corresponding to this motion be sealed and copies be sent only to counsel for _____."
   If appropriate in criminal cases the US Marshal Service, US Probation and Interpreter should be added for service)

D.   If a proposed order is submitted with the sealed motion and it too shall be sealed, the order shall be titled clearly "SEALED ORDER" and it shall indicate who the order shall be served upon. (e.g. "IT IS FURTHER ORDERED that this Order shall be and remain sealed.  The Clerk is directed to serve this order only upon counsel for _____." If appropriate in criminal cases the US Marshal Service, US Probation and Interpreter should be added for service).

E.   Any order which is not sealed will be served on all parties in the case.

F.   Parties are reminded they must serve sealed documents by mail on counsel if required by rule. The CM/ECF system will not electronically serve sealed material.

G.   Documents submitted to the Court for *in camera* review shall be submitted in the same fashion as sealed documents.

I.   It is the attorney's responsibility to ensure documents submitted for *in camera* review are not accessible to other parties.  On a case-by-case basis, the presiding

12

judge may request paper copies of documents submitted for *in camera* inspection be sent directly to the judge's chambers.

**15.**   **Public Access, Services and Privacy**.

    A.   **District and Bankruptcy Court Access and Services**

        1.   **Access**: Access to the electronic docket and documents filed in the System is available to the public at no charge at each Office of the Clerk during regular business hours.  Printing of any document accessed for free in the Clerk's Office, is subject to the fee required by the Judicial Conference of the United States (e.g. currently 10 cents per page).

           Those accessing the CM/ECF system from outside the Clerk's office are required to obtain a PACER account from www.pacer.uscourts.gov. In addition to the PACER login, a Court-issued CM/ECF login is required to file documents with the Court.

        2.   **One Free Look and e-mail notice**:  Registered Participants will receive one-free look of all documents filed in cases in which they are a party.  Registered Participants may also receive notices of electronic filing in cases in which they are not a party.  In those instances, PACER fees will be charged.

           When an e-mail notification is received of an electronic filing, **single click** on the document number hyperlink.  Do not click on the case number hyperlink since that will incur PACER fees.  Save or print the document upon the first viewing.  Any subsequent viewing of the document through email will incur PACER fees.

           Registered participants may specify additional e-mail addresses to receive the electronic notification of filings.  Each of these addresses will be entitled to the "one free look" if the attorney is listed as a party in the case.  This may be accomplished in the "**Maintain** User Account" information found under the "Utilities" section.  Select "e-mail information" at the bottom of the User Account screen and add additional e-mail addresses to the user account.

           The one-free-look period expires 15 days from the date of the e-mail.

        3.   **Services**:  Conventional copies and certified copies of electronically filed documents may be obtained at the Office of the Clerk.  The fee for copying and certification will be in accordance with 28 U.S.C. §§ 1914 and 1930.

    B.   **Privacy**

        1.   Privacy: Documents filed with the Court must comply with Dist. Idaho Loc. Civ. R 5.5 or LBR 9037.1.

        2.   In addition to the procedures outlined in the Court's local rules, the Judicial Conference of the United States has adopted a policy which requires Counsel to redact personal identifiers in any transcripts filed with the

**ER-1037**

Court. Counsel are required to follow the transcript redaction procedures outlined on the Court's web site.

3.     In addition to the privacy items listed in section #1 above, the Judicial Conference policy requires that the Court not provide public access to the following documents: unexecuted warrants of any kind; pretrial bail or presentence investigation reports; statement of reasons in the judgment of conviction; juvenile records; documents containing identifying information about jurors or potential jurors; financial affidavits filed in seeking representation pursuant to the Criminal Justice Act; ex parte requests for expert or investigative services at Court expense; and sealed documents.

4.     You are advised to exercise caution when filing documents that contain the following:

    a.     Personal identification number, such as driver's license number;

    b.     Medical records, treatment and diagnosis;

    c.     Employment history;

    d.     Individual financial information;

    e.     Proprietary or trade secret information;

    f.     Information regarding an individual's cooperation with the government;

    g.     Information regarding the victim of any criminal activity;

    h.     National security information;

    i.     Sensitive security information as described in 49 U.S.C. § 114(s).

5.     Counsel is strongly urged to share this information with all clients so that an informed decision about the inclusion of certain materials may be made. If a redacted document is filed, it is the sole responsibility of counsel and the parties to be sure that the redaction of personal identifiers is done. The Clerk will not review each pleading for redaction.

## C.     Additional Bankruptcy Court Provisions

1.     In accordance with the E-Government Act of 2002 and its own policy regarding privacy and public access, the Judicial Conference of the United States (Judicial Conference), promulgated Official Bankruptcy Form **B121**, Statement of Social Security Number(s) ("Official Form **B121**"). This form has been created to satisfy the requirement set forth in Federal Rule of Bankruptcy Procedure 1007(f) that a debtor must submit a verified statement of his or her Social Security number along with the debtor's petition.

2.     With respect to petitions filed by electronic means via the Internet, the debtor's declaration signed under penalty of perjury that information

in the petition is true and correct shall apply to the debtor's Social Security number as filed electronically with the petition.

3. With respect to Official Form **B121**, this form shall be filed separately in CM/ECF. The use of the "Social Security Statement" event will seal this information. This event can be found under "other" in CM/ECF.

4. Attorneys shall not file or submit any additional statements or verifications of the debtor's Social Security number.

16. **CM/ECF Fees.**

A. **On-Line Payment of Fees**. All CM/ECF transactions that require a payment shall be paid on-line on the same day that the transaction is docketed.

B. **Acceptable Credit Cards.** Only VISA, MASTERCARD, AMERICAN EXPRESS, DISCOVER and DINERS CLUB credit cards will be accepted. Debit cards from the above-mentioned providers that do not require a "PIN" code will also be accepted.

C. **Rejected Credit Card.** Any transaction declined by the credit card issuer for any reason must be paid to the Court by counsel in cash or by check or money order by the close of business on the next business day after notification by Court staff of the deficiency. Failure to timely submit the filing fees will result in suspension of the CM/ECF account.

D. **Pay.Gov Set-Up.** Each time a document is electronically filed which requires the payment of fees, Pay.gov will prompt the user to provide credit card information. This includes providing the security code on the credit card. If this prompt screen does not appear, the internet browser pop-up blocker has been set-up or the memory cache in the browser is not allowing the screen to refresh. The user should ensure that their internet browser preferences are set up to accommodate the payment of fees through Pay.gov.

17. **Docket Entries and Corrections of Docket Entries.**

A. Registered Participant who electronically files a pleading or other document shall be responsible for designating a docket entry title for the document by using one of the docket event categories prescribed by the Court.

B. Once a pleading/document is electronically filed and becomes part of the electronic record, corrections to the docket may be made only by the Clerk's Office staff. Some examples of potential mistakes include: posting the incorrect .pdf file to a docket entry; selecting the incorrect document type from the menu selection; or entering the incorrect case number.

C. The CM/ECF system will not permit a Registered Participant to withdraw an incorrectly filed document or to change the form of an incorrect docket entry once the transaction has been accepted. Registered Participants shall not attempt to re-file a document incorrectly filed or docketed, unless directed by the Clerk's Office.

15

D.     If a Registered Participant notifies the Clerk's Office that a document was filed in error, or if the Court determines that a document is filed in the wrong case, the signature line does not match the attorney in the case, or the docket text does not match the pleading, the Clerk may enter a text entry, notifying all parties of record, that the document was filed in error and shall be corrected.  A notice of correction will be entered on the docket.

**18.     Technical Failures.**

Any Registered Participant or other person whose filing is made untimely or who is otherwise prejudiced as a result of a technical failure at or by the Court, may seek appropriate relief from the Court. The Court shall determine whether a technical failure has occurred or whether relief should be afforded on a case-by-case basis.

**19.     Retention of Conventionally Signed Documents by Parties.**

The original of all conventionally signed documents shall be retained pursuant to Dist. Idaho Loc. Civ. R 5.1(e) or LBR 5003.1(e).

Anyone who disputes the authenticity of any signature on electronically filed documents shall file an objection to the document within ten days of receipt of the document or notice of its filing, whichever first occurs.

Dated this 6th Day of October 2021.

On behalf of the Court
Stephen W. Kenyon, Clerk of Court

16

# EXHIBIT 17
# GIRDNER DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COURTHOUSE NEWS SERVICE,

                        Plaintiff,

        - against -

MILTON TINGLING, in his official capacity as County
Clerk of New York County, New York,

                     Defendant.

Civil Action No.:
16-CV-08742-ER

DECLARATION OF THE HON.
MILTON A. TINGLING IN
OPPOSITION TO PLAINTIFF'S
APPLICATION FOR A
PRELIMINARY INJUNCTION

---

The Hon. Milton A. Tingling, under penalty of perjury, does declare as follows:

1.     I am currently the County Clerk of New York County in the State of New York, and am the defendant in this action.  Prior to the commencement of my service as County Clerk on January 1, 2015, I served as a Justice of the New York State Supreme Court from 2001 through 2014, and as a New York City Civil Court Judge from 1996 through 2000.

2.     In my capacity as County Clerk, I am fully familiar with the facts and circumstances addressed in this action, and I submit this affidavit in opposition to plaintiff's application for a preliminary injunction.

3.     Aside from its request for costs and legal fees, plaintiff's complaint seeks (1) an injunction prohibiting my office from continuing its decades-long practice of reviewing civil complaints for jurisdictional defects and confidentiality concerns prior to making them available for public inspection; and (2) a declaration that the short additional time required by this practice renders it unconstitutional under the First and Fourteenth Amendments.  Complaint, p. 15.

4.     In support of this request for relief, plaintiff has presented a highly misleading set of statistics, a mistaken view of past practice in the County Clerk's office, a substantial

overstatement of the harm caused to it by the short delay of the review process, and an array of

legal arguments that fail to address the facts at bar. I will leave response to the legal arguments

to filings of counsel, but shall address plaintiff's other errors in the remainder of this declaration.

<u>The County Clerk's Role in the Paper and Electronic Filing Process</u>

5.      By both constitutional directive and statute, county clerks in New York serve as

clerks of New Supreme Court (N.Y. Const. Art. VI, §6[e]; County Law §525[1]). Under New

York State law, civil actions in Supreme Court are commenced through the filing of pleadings in

one of the sixty-two Offices of the County Clerk around the State. <u>See</u>, Civil Practice Law and

Rules Rule 2101(a).

6.      Since 2008, New York County has participated in the New York State Unified

Court System's Electronic Filing System ("NYSCEF"), which permits, and in some instances

requires, the commencement of certain actions by electronic means. <u>See</u>, 22 New York Code of

Rules and Regulations §§202.5-b <u>et seq.</u> (consensual e-filing program); 202.5-bb <u>et seq.</u>

(mandatory e-filing program). Between 1999 and 2008, New York County also participate in

NYSCEF's predecessor program, FBEM ("Filing by Electronic Means"). New York County

currently operates a hybrid filing system, involving both paper and electronic filing.

7.      For the protection and repose of filers, State law and court rule provide that paper

filings are deemed filed for purposes of the statute of limitations upon their acceptance by the

Office of the County Clerk (Civil Practice Law and Rules Rule 2102[a]), or – when filed by

electronic means -- at the time of their electronic receipt within NYSCEF (22 NYCRR §202.5-

b[d][3]).

8.      Prior to acceptance of initiatory paper filings, members of my Office review the

proposed filing for compliance with venue, caption, case type, as well as the attorney signature

2

(155 of 233), Page 155 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 155 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 56 of 134

Case 1:16-cv-08742-ER   Document 19-1   Filed 11/30/16   Page 3 of 11

certification required by court rule.  See, CPLR §2102(c); 22 NYCRR §202.5(d)(1) (detailing the

grounds for rejection of a filing by a clerk); 22 NYCRR §130-1.1-a(b) (attorney signature and

certification that contentions of pleading are not frivolous and that matter was not obtained

through illegal or unethical conduct).

9.      In addition, my office reviews papers to ascertain whether they contain materials

that, by operation of law, may not be made available to the general public.  See, Domestic

Relations Law §235(1) (limitation on access to information on matrimonial matters absent court

order).

10.     This review process is critical to (1) establish the compliance of the filing with

the requirements imposed by State law and court rules; (2) assure attorney compliance with

certain of their ethical obligations in commencing legal actions in state courts; and (3) avoid

mistakes in filing venue or case type – which can have serious consequences to the statutory

protections of the confidentiality of parties in certain proceedings.

11.     The performance of this duty is a crucial component of the role of the County

Clerk in fulfillment of his or her constitutional responsibilities as a public officer.

12.     Following such review of paper filings, new civil matters are logged with a case

or docket number and sent to the Clerk's filing room for storage.  The review and logging

operation generally takes a few minutes, but varies in length from case to case.

13.     Following this review and logging process, new case filings are made available

for viewing by the public and press upon request.

14.     This process – receipt, review, logging, and presentment to the public – takes

place during the regular hours of operation of the Office of the County Clerk – 8:30 to 5:00

daily.

3

15.     A similar review process occurs with electronic filings. Every morning, clerks from my office review filings that have been received electronically after the close of the office at 5:00 p.m. the previous day -- as well as, on occasion, electronic filings made late in the business day and not yet reviewed. On Monday mornings, and on mornings after holidays, the review includes cases received electronically over the weekend or holiday. Because of the adverse consequences of the posting of inappropriate material on the electronic filing system – which is immediately available for inspection by the public not only in the courthouse, but around the world – I have instructed my staff to take particular care in their review of such filings. Nevertheless, such review and docket number assignment typically requires a few minutes per case. Consequently, it is quite typical that matters electronically filed in the evening or over the weekend are posted within the morning of the business day that follows.

16.     Following review, those cases are assigned docket numbers and immediately posted for public view on the NYSCEF system.

17.     This office practice is in full accord with the court rules which govern electronic filing. As set forth in 22 NYCRR §205-b(d)(3) (emphasis added):

> (3) Filing and receipt of documents; notification.
>
> (i) When documents are filed. Documents may be transmitted at any time of the day or night to the NYSCEF site. A document is filed when its electronic transmission or, in the case of a petition that is e-filed by submission of a text file as provided in subdivision (b)(1) of this section, the electronic transmission of the text file is recorded at that site, provided, however, that where payment of a fee is required upon the filing of a document, the document is not filed until transmission of the document and the information or form or information as required in (i), (ii) or (iii) of paragraph (2) of this subdivision has been recorded at the NYSCEF site; or, if no transmission of that information or form or information is recorded, where permitted by the County Clerk, until payment is presented to the County Clerk.

4

ER-1045

(157 of 233), Page 157 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 157 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 58 of 134

Case 1:16-cv-08742-ER   Document 19-1   Filed 11/30/16   Page 5 of 11

(ii) Notification. <u>No later than the close of business on the business day following the electronic filing of a document</u>, a notification, in a form prescribed by the Chief Administrator, shall be transmitted electronically by the NYSCEF site to the person filing such document and all other parties participating in e-filing. <u>When documents initiating an action are filed electronically, the County Clerk shall assign an index number or filing number to the action and that number shall be transmitted to the person filing such documents as part of the notification</u>. If, where permitted, payment is submitted after the initiating documents have been transmitted electronically, the County Clerk shall assign the number upon presentation of that payment.

18.     That is, the rule provides that review of an e-filed document, assignment of an index number, and notification to the filer of the acceptance of the filing by the county clerk shall occur no later than close of business on the business day following the filing.

19.     Under the NYSCEF system, the filing is made available for public view (unless such view is precluded by state law) at the precise moment of notification of the assignment of an index number.  Thus – in full accord with court rule – the substantial majority of electronic filings made during court hours are processed and made available for public inspection on the day of filing; the remaining filings, and those received on evenings, weekends, and holidays, are processed and made available for public inspection early on the next business day.


B.     <u>Plaintiff's Mistaken Facts and Statistics</u>

20.     In light of the process described above, plaintiff's complaint – as well as its application for preliminary relief – is demonstrably misguided or highly misleading.

21.     First, many of the statistics set forth in its complaint (¶30) and in the Affirmation of Adam Angione (¶ 24) addressing electronic filing reflect filings received on a weekend or holiday (11/14/15, 11/15/15, 1/17/16, 1/23/16, 1/24/16, 1/30/16, 1/31/16, 2/6/16, 2/7/16, 2/12/16, 2/13/16, 2/14/16, 2/15/16, 4/16/16, 4/23/16, 4/24/16, 4/30/16, 5/1/16, 9/4/16, 9/5/16, 9/10/16;

5

(158 of 233), Page 158 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 158 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 59 of 134

Case 1:16-cv-08742-ER   Document 19-1   Filed 11/30/16   Page 6 of 11

9/11/16).  On these days, of course, the County Clerk's Office is closed, and the review and posting of filings was delayed until the resumption of business.  Any instance on plaintiff's chart where "100%" of cases is said to entail a single or two-day delay is explained by this weekend/holiday circumstance.

22.     Secondly, many of the statistics describing filings on normal weekdays likely address cases filed after 5 p.m., and reviewed in the normal course on the next business day.

23.     Thirdly, plaintiff's statistics make no effort to disclose when such late-day or evening filings are reviewed and made publicly available on the next business day.  As noted, this process usually occurs well before noon.

24.     This is not to say that the review of electronic filings received during normal business hours is always completed on the day of filing.  Particularly when such filings occur late in the day, or when the office is pressed by emergency or temporary understaffing, review sometimes occurs on the next business day as required by court rule.  But plaintiff's effort to portray this practice as systemic underperformance, or to characterize it as a constitutional violation, is highly misleading and erroneous.

25.     At bottom, plaintiff's chief complaint is not with the length of the review process by the County Clerk's Office: it is with the novel circumstance that cases may technically be filed over the weekend (for statute of limitations or other deadline purposes only), and be unavailable for public view until after the County Clerk's Office has reopened and reviewed those filings.

26.     Yet at no time prior to or since the commencement of the Unified Court System's e-filing program were documents made available for public view prior to completion of the inspection by the office of the County Clerk necessitated by statute and court rule.

6

(159 of 233), Page 159 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 159 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 60 of 134

Case 1:16-cv-08742-ER   Document 19-1   Filed 11/30/16   Page 7 of 11

C.    Plaintiff's Erroneous Description of Past County Clerk's Office Practice

27.    Plaintiff also errs in its claim that, prior to e-filing, "100% of newly filed civil

complaints were available to the press on the same day they were filed" in New York County

(Complaint ¶25).

28.    Initially, I note that this claim is a simplistic tautology, conveniently overlooking

the fact that paper documents were and are accepted as "filed" – and thereafter made available

for public view – only following inspection and indexing by a clerk.  Both before and after the

advent of e-filing, it was not uncommon for the County Clerk's Office to reject hard-copy

documents proffered for filing, whereupon those documents remained unavailable for public

inspection.

29.    Moreover, as we have noted above, certain filed documents are barred from

public disclosure after filing by operation of law – for example, the contents of matrimonial

filings.  See, Domestic Relations Law §235(1).  Such filings would not have been made available

for immediate inspection after processing – and the screening of such matters was, and remains,

an important aspect of the County Clerk's role.

30.    Plaintiff's claim that it was permitted access to documents prior to "docketing" in

1997 and after (Girdner Dec. ¶17) conflates the "indexing" of a case – that is, reviewing it for

sufficiency as described above and assigning it an index number, with "docketing" – a term of

no relevance to this matter.   The simple fact is, at no time was the public permitted to review

filed documents (paper or otherwise) prior to review and assignment of an index number by the

County Clerk's Office.

31.    Plaintiff's reference to expansive County Clerk hours, permitting inspection of

filings after the official close of business at five p.m. daily (Girdner Dec. ¶18) hearkens to a

7

different era of court system budgets and office staffing – factors that have nothing to do with the filing of documents by paper or electronic means. These extended hours have been curtailed since at least 2011, when the Unified Court System was compelled by budget cuts to reduce court and clerk's office hours, eliminate overtime, and lay off hundreds of employees. In fact, the New York County County Clerk's Office has seen staffing reduced from approximately 171 personnel in 2010 to approximately 121 today. Those fiscal restraints, and not a change in office policy, have led to the curtailment of post-business hour activity by office personnel.

32.    Moreover, while I have no wish to rebut in detail the plaintiff's description of the extensive interactions between plaintiffs, my office, and the Office of Court Administration (Girdner Dec. ¶¶41-54; Angione Dec. ¶¶35-40), those discussions may be briefly summarized: the parties met on several occasions, exchanged views frankly, attempted to reach common ground, and were unable to do so at that time – largely because of differing conceptions of the role of the county clerk in the filing process. It is the policy of my office – and I believe the policy of the Office of Court Administration – to remain available for discussions of matters of importance to the operations of the court system.

D.    Plaintiff's Overstated Description of Harm

33.    Finally, plaintiff's claim of harm caused to it by the inspection practice (Complaint ¶¶31-41) is greatly overstated. The claim that the practice "gives a plaintiff the power to control news about the new litigation" (Complaint ¶35) is puzzling: as the prospective filer of a litigation, the plaintiff may always control such news – by circulating a draft complaint in advance to preferred outlets, notifying outlets in advance of its intention to file a complaint. This situation would not be altered by any relief proposed by plaintiff in this litigation. That

8

litigation parties attempt to shape public perception to their advantage through news media is hardly remarkable. While such a practice may be harmful to plaintiff's business interests, it provides no cause to alter longstanding document inspection practices, required by statute and court rule, which promote responsible operation of the courts.

34.     Likewise, the citation of several instances where e-filed cases were not immediately reviewed and made available for public inspection (Complaint ¶¶37-41) – in one instance (Tanatros), an after-hours filing made available at 10:13 the following morning; in a second (Spitzer), a late-Friday filing published early the following Monday; in the third (Univision matter), a late- afternoon filing published within 22 hours) – fails to demonstrate anything remotely approximating a constitutional deprivation of access to court records.


E.     Summary

35.     In sum, New York State's electronic filing system has brought tremendous benefits to the public, including the broad availability of access to public filings to anyone with a computer and internet access, at any time of night or day. The New York County Clerk's Office has been a leading proponent for e-filing, and will continue to do so in years ahead.

36.     But this technology has not relieved the County Clerk of the longstanding statutory and regulatory duty to assure the proper inspection and publication of documents. In fact, the rules of electronic filing were drafted to provide a reasonable time – one business day – to permit such inspection before acknowledging the filing.

37.     Nor has the development of an e-filing system conferred upon the public or the press a right of access to documents prior to such inspection by the County Clerk. The ongoing development of the electronic filing system will bring many further improvements in the speed

(162 of 233), Page 162 of 233 Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 162 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 63 of 134

Case 1:16-cv-08742-ER   Document 19-1   Filed 11/30/16   Page 10 of 11

and accuracy of public filings.  But plaintiff's current claim – that the First Amendment guarantees immediate access to electronically-filed documents – is unfounded in law, and poses a serious infringement on the responsible self-governance of the New York State court system.

38.    For these reasons, and the reasons more fully set forth in the memorandum of law filed herewith, defendant respectfully submits that the motion for a preliminary injunction should be denied.

10

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.


_____
Milton A. Tingling

# EXHIBIT 18
# GIRDNER DECLARATION

Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 66 of 134

# New York State Unified Court System

**NYSCEF** - Supreme & Court of Claims (Live System)

**Home**
NYSCEF

*Home*
*Unrepresented Litigants*

**Account**
Create an Account
Login
Search as Guest

**Help**
FAQs
Contact Us
User Manual
eFiling Requirements

**Resources**
Forms
Training
News & Events
Rules & Legislation
Courts, Counties
and Case Types
Terms of Use

## Login                                             ⓘ Help

This site allows NYS attorneys and other authorized persons to file legal papers by electronic
means. E-filing is authorized for certain case types in certain courts.
See our Authorized Courts and Case Types page.

⚠️ **IMMEDIATE VIEWING OF NEW E-FILED CASES IN NEW YORK COUNTY**
Effective January 27, 2017, e-filed documents in newly initiated cases in New York County will be
available immediately for online public viewing through the New York State Courts Electronic Filing
system ("NYSCEF"). Click here for Complete Notice to Bar

**PAY AT COURT OPTION ELIMINATED ERIE COUNTY CLERK**
Effective February 1, 2017, payments to the County Clerk of Erie County for any Efiled fee
document must be made by Credit Card (Visa/MC/Amex) Pay at Court will no longer be an option.

**Log in to My Account**

User Name (or Registration Number *)
cns123

Password
••••••

[Log In]

*Forgot your User Name or Password?*

**Create an Account**
Create an account and start filing
documents electronically

[Create Account]

–OR–

You can search for cases and
documents as a guest.

[Search as Guest]

* If you have an Attorney Online Services account (created in Attorney Registration Online), you
can now log into NYSCEF with your Attorney Registration Number and password.  New attorney
users can get immediate access to NYSCEF by clicking on the Create Account button and
following the instructions after choosing Create Attorney Online Services Account.
More details.

**Support**
• Contact Us
• Follow NYSCEF
• Follow UCS
• Request for Public
  Comment
• Unrepresented Litigant
  Fact Sheet

NYSCEF   E-mail: EFile@nycourts.gov   Phone: (646) 386-3033   Fax: (212) 401-9146

| Websites | Account | Help | Resources | Support |
|---|---|---|---|---|
| NYSCEF | Create an Account | FAQs | Forms | Contact Us |
| Unrepresented Litigants | Login | Contact Us | Training | Follow NYSCEF - Twitter |

*Immediate viewing of new e-filed cases in New York County.*



### NOTICE TO THE BAR

Effective January 27, 2017, e-filed documents in newly initiated cases in New York County shall be available immediately for online public viewing through the New York State Courts Electronic Filing system ("NYSCEF"). Such filings will be available for immediate online public viewing PRIOR to any examination of the document or assignment of an index number to the matter by the Office of the New York County Clerk.

**Documents available for online viewing at this early stage will contain the following annotation in the margin:**

*Header:*

*CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)*

*Footer:*

*This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk in the county of filing. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings and attempted filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.*

These marginal annotations will be removed when the documents have been reviewed and approved for filing by the County Clerk and an index number has been assigned to the matter pursuant to 22 NYCRR §202.5-b(d)(3).

**Because these documents are available for public view prior to examination by the County Clerk, filers are advised to take special care to assure that the filings comply with State law and court rules addressing confidentiality of personal information (see, e.g., Gen. Bus. L. § 399-ddd [confidentiality of social security account number]; 22 NYCRR §202.5[e] [omission or redaction of confidential personal information]) .**

# EXHIBIT 19
# GIRDNER DECLARATION

1
2
3
4
5
6
7

Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
Adam Vukovic (SBN 301392)
adam.vukovic@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:   (415) 675-3400
Facsimile:    (415) 675-3434

8
9

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

10
11

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  **Courthouse News Service**, | Case No. 1:21-CV-01790-DAD-SAB |
| 14  Plaintiff, | |
| 15  vs. | **NOTICE OF SETTLEMENT** |
| 16 | |
| 17  **Amanda Toste**, in her official capacity as Court Executive Officer/Clerk of the **Merced County Superior Court**; **Hugh Swift**, in his official capacity as Court Executive Officer/Clerk of the **Stanislaus County Superior Court**; **Shawn Landry**, in his official capacity as Court Executive Officer/Clerk of the **Yolo County Superior Court**; **Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court**; **Stephanie Hansel**, in her official capacity as Court Executive Officer/Clerk of the **Sutter County Superior Court**; **Heather Pugh**, in her official capacity as Court Executive Officer/Clerk of the **Yuba County Superior Court**; and **Nocona Soboleski**, in her official capacity as Court Executive Officer/Clerk of the **Kings County Superior Court**, | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27  Defendants. | |
| 28 | |

**NOTICE OF SETTLEMENT**

Plaintiff Courthouse News Service hereby notifies the Court that it has reached a settlement with certain defendants under which dismissal of this case is conditioned upon their implementation of an Electronic Media Inbox into which new electronically submitted non-confidential civil unlimited complaints will be automatically deposited upon receipt by the defendant courts for review by members of the media.

Plaintiff has reached a settlement as described above with the following defendants: **Amanda Toste**, in her official capacity as Court Executive Officer/Clerk of the **Merced County Superior Court**; **Shawn Landry**, in his official capacity as Court Executive Officer/Clerk of the **Yolo County Superior Court**; **Stephanie Hansel**, in her official capacity as Court Executive Officer/Clerk of the **Sutter County Superior Court**; **Heather Pugh**, in her official capacity as Court Executive Officer/Clerk of the **Yuba County Superior Court**; and **Nocona Soboleski**, in her official capacity as Court Executive Officer/Clerk of the **Kings County Superior Court** (collectively the "Settled Defendants").[1]

Plaintiff has not reached a settlement with defendant **Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court**.

Pursuant to the terms of the parties' agreement, the Settled Defendants will instruct Tyler Technologies to put the Electronic Media Inbox into operation within five months from the effective date of their respective settlements. Those dates are as follows:

---

[1] Plaintiff earlier dismissed defendant **Hugh Swift**, in his official capacity as Court Executive Officer/Clerk of the **Stanislaus County Superior Court**, without prejudice. *See* ECF No. 17.

1

NOTICE OF SETTLEMENT
Case No. 1:21-CV-01790-DAD-SAB

USA.605922933.1/LZ1

| **DEFENDANT** | **SETTLEMENT EFFECTIVE DATE** | **IMPLEMENTATION DEADLINE** |
|---|---|---|
| Merced County | September 27, 2022 | February 27, 2023 |
| Yuba County | September 28, 2022 | February 28, 2023 |
| Kings County | September 28, 2022 | February 28, 2023 |
| Yolo County | October 7, 2022 | March 7, 2023 |
| Sutter County | October 7, 2022 | March 7, 2023 |

Within 10 days of the Settled Defendants' written notification and demonstration to Courthouse News Service that the Electronic Media Inbox is operational, Plaintiff will file a stipulation pursuant to Federal Rule of Civil Procedure 41(a) providing for the full and complete dismissal of the Action with prejudice as against the Settled Defendants. The parties will have filed the stipulation of dismissal as to each of the Settled Defendants or will otherwise report to the Court as to the status of the case no later than **March 17, 2023**.

All Court deadlines and scheduled conferences shall remain intact with respect to Plaintiff's claims against defendant **Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court**.

Dated:   October 18, 2022                          BRYAN CAVE LEIGHTON PAISNER LLP


By:      */s/ Jonathan G. Fetterly*
         Jonathan G. Fetterly
         Attorneys for Plaintiff
         COURTHOUSE NEWS SERVICE

2

NOTICE OF SETTLEMENT
Case No. 1:21-CV-01790-DAD-SAB

# EXHIBIT 20
# GIRDNER DECLARATION

Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
Adam Vukovic (SBN 301392)
adam.vukovic@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:   (415) 675-3400
Facsimile:    (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Courthouse News Service**, | Case No. 1:21-CV-01790-ADA-SAB |
| Plaintiff, | |
| vs. | **NOTICE OF SETTLEMENT** |
| **Amanda Toste**, in her official capacity as Court Executive Officer/Clerk of the **Merced County Superior Court; Hugh Swift**, in his official capacity as Court Executive Officer/Clerk of the **Stanislaus County Superior Court; Shawn Landry**, in his official capacity as Court Executive Officer/Clerk of the **Yolo County Superior Court; Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court; Stephanie Hansel**, in her official capacity as Court Executive Officer/Clerk of the **Sutter County Superior Court; Heather Pugh**, in her official capacity as Court Executive Officer/Clerk of the **Yuba County Superior Court**; and **Nocona Soboleski**, in her official capacity as Court Executive Officer/Clerk of the **Kings County Superior Court**, | |
| Defendants. | |

## NOTICE OF SETTLEMENT

Plaintiff Courthouse News Service hereby notifies the Court that it has reached a settlement with defendant **Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court** ("Butte County") under which dismissal of this case is conditioned upon its implementation of an Electronic Media Inbox into which new electronically submitted non-confidential civil unlimited complaints will be automatically deposited upon receipt by Butte County for review by members of the media.

Pursuant to the terms of the parties' agreement, Butte County will instruct Tyler Technologies to put the Electronic Media Inbox into operation within five months from the effective date of the settlement agreement as follows:

| DEFENDANT | SETTLEMENT EFFECTIVE DATE | IMPLEMENTATION DEADLINE |
| --- | --- | --- |
| Butte County | October 19, 2022 | March 19, 2023 |

Within 10 days of Butte County's written notification and demonstration to Courthouse News Service that the Electronic Media Inbox is operational, Plaintiff will file a stipulation pursuant to Federal Rule of Civil Procedure 41(a) providing for the full and complete dismissal of the Action with prejudice as against Butte County. The parties will have filed the stipulation of dismissal as to Butte County or will otherwise report to the Court as to the status of the case no later than **March 24, 2023**.

Having reached a settlement with all defendants to this action (*see* ECF No. 27), Plaintiff hereby requests that the Court vacate all deadlines and scheduled conferences pending receipt of the stipulations of dismissal.

Dated:   October 31, 2022          BRYAN CAVE LEIGHTON PAISNER LLP


By:     */s/ Jonathan G. Fetterly*
          Jonathan G. Fetterly
          Attorneys for Plaintiff
          COURTHOUSE NEWS SERVICE

1

NOTICE OF SETTLEMENT
Case No. 1:21-CV-01790-DAD-SAB

USA.605974062.1/LZ1

# EXHIBIT 21
# GIRDNER DECLARATION

Rachel E. Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bclplaw.com
Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:   (415) 675-3400
Facsimile:     (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| Courthouse News Service, | Case No. 4:21-CV-00414-HSG |
|---|---|
| Plaintiff, | |
| vs. | **ORDER OF CONDITIONAL DISMISSAL WITHOUT PREJUDICE** |
| Neal I. Taniguchi, in his official capacity as Court Executive Officer/Clerk of the San Mateo County Superior Court, | |
| Defendant. | |

ORDER                                                                 Case No. 4:21-CV-00414-HSG

1    The Court, having received the Parties' Stipulation For Conditional Dismissal Without

2    Prejudice, hereby orders as follows:

3        1.    This action is conditionally dismissed without prejudice;

4        2.    On or before November 29, 2021, the Parties shall either: (a) file a stipulation and

5    proposed order converting the dismissal without prejudice to a dismissal with prejudice; or (b) if the

6    conditions required for settlement have not occurred, report to the Court as to the status of the case.

7        **IT IS SO ORDERD**

8    Dated:    6/9/2021

9                              UNITED STATES DISTRICT COURT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<hr>

2

ORDER                                                                    Case No. 4:21-CV-00414-HSG

# EXHIBIT 22
# GIRDNER DECLARATION

1  Rachel E. Matteo-Boehm (SBN 195492)
   rachel.matteo-boehm@bclplaw.com
2  Katherine Keating (SBN 217908)
   katherine.keating@bclplaw.com
3  Jonathan G. Fetterly (SBN 228612)
   jon.fetterly@bclplaw.com
4
5  **BRYAN CAVE LEIGHTON PAISNER LLP**
   3 Embarcadero Center, 7th Floor
6  San Francisco, CA 94111
   Telephone:  (415) 675-3400
7  Facsimile:  (415) 675-3434
8
9  Attorneys for Plaintiff
   COURTHOUSE NEWS SERVICE
10

11

12                    **UNITED STATES DISTRICT COURT**
13                  **NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO/OAKLAND DIVISION**
15

16  **COURTHOUSE NEWS SERVICE,**          Case No. 3:21-CV-0O822-WHO
17
18                    Plaintiff,          **NOTICE OF SETTLEMENT**
19             vs.
20  **ALEX CALVO**, in his official capacity
21  as Court Executive Officer/Clerk of the
    Santa Cruz County Superior Court;
22  **ARLENE JUNIOR**, in her official
    capacity as Court Executive
23  Officer/Clerk of the Sonoma County
    Superior Court,
24
25                    Defendants.
26
27
28

NOTICE OF SETTLEMENT                           Case No. 3:21-cv-00822-WHO
USA.603697167.1/KDS

Plaintiff Courthouse News Service hereby notifies the Court that it has reached settelements with both Defendant Alex Calvo, in his official capacity as Court Executive Officer of Santa Cruz Superior Court ("SCSC"), and Defendant Arlene Junior, in her official capacity as Court Executive Officer of Sonoma Superior Court ("SSC"), under which dismissal of this case against each Defendant is conditioned upon their implementation of an Electronic Media Inbox into which new electronically submitted non-confidential civil unlimited complaints will be automatically deposited upon receipt by their respective courts, *i.e.*, SCSC and SSC, for review by members of the media.

Pursuant to the terms of the parties' agreement, Defendants will instruct Tyler Technologies to put the Electronic Media Inboxes into operation within six months from the effective date of the settlement, or by November 28, 2021.

Within 10 days of Defendant's written notification and demonstration to Courthouse News Service that the Electronic Media Inbox is operational, Plaintiff will file a stipulation pursuant to Federal Rule of Civil Procedure 41(a) providing for the full and complete dismissal of the Action with prejudice as against all parties. The parties will file the stipulation of dismissal or report to the Court as to the status of the case no later than **December 8, 2021**.

Accordingly, Courthouse News Service respectfully requests that the Court vacate all case dates and deadlines, including Defendants' June 1 deadline to file a responsive pleading, and the June 8 Initial Case Management Conference and related deadlines.


Dated:  May 28, 2021                    BRYAN CAVE LEIGHTON PAISNER LLP

                                        By:     */s Jonathan G. Fetterly*
                                                Jonathan G. Fetterly
                                                Attorneys for Plaintiff
                                                COURTHOUSE NEWS SERVICE

1

NOTICE OF APPEARANCE                              Case No. 3:21-cv-00822-WHO
USA.603697167.1/KDS

# EXHIBIT 23
# GIRDNER DECLARATION

DocuSign Envelope ID: B9AFD1D8-4694-41C1-A5E5-B776D671A111



AMENDMENT

This amendment ("Amendment") is effective as of the date of signature of the last party to sign as indicated below ("Amendment Effective Date"), by and between Tyler Technologies, Inc. with offices at 5101 Tennyson Parkway, Plano, Texas 75024 ("Tyler") and the Texas Office of Court Administration, on behalf of the State of Texas, with offices at 205 W. 14th St., Suite 600, Austin, Texas 78701 ("OCA").

WHEREAS, Tyler and OCA are parties to a Master Services Agreement dated December 24, 2020 ("MSA"); and

WHEREAS, Tyler and OCA desire to amend the terms of the MSA as provided herein.

NOW THEREFORE, in consideration of the mutual promises hereinafter contained, Tyler and OCA agree as follows:

1. Tyler's Press Review Tool software ("PRT") is hereby added to the MSA as of July 1, 2022 and continuing through August 31, 2022 (the "Initial Term"). The PRT term shall renew on September 1, 2022 and run coterminously with the hosting term for SaaS Services under the MSA.

2. The PRT shall be offered to all Courts statewide, and Tyler shall implement and provide access to the PRT for any Court seeking to access it for their location or node. Courts may grant Authorized Users access to the Press Review Tool for their location or node, as such Authorized Users are selected solely by the Court; provided however, that such Authorized Users shall be required to accept a "click-thru" license prior to the ability to access and use the Press Review Tool. Notwithstanding the foregoing, no "click-thru" license will modify or amend the terms of the MSA as they relate to OCA or the Court. The Courts' right to access the PRT shall be automatically revoked upon the expiration or termination of the MSA or the expiration of the PRT Term, whichever is earlier.

3. The following definition shall be added to Exhibit 1 of the MSA: "'Press Review Tool' means a web-based online tool that allows Authorized Users, as selected by the Courts, access to the Court's documents and records at or near the time of filing, before such filings have been accepted by the court clerk."

4. The statewide configuration standards applicable to the PRT shall be provided by OCA to Tyler following the Amendment Effective Date.

5. Annual fees for the PRT shall be $108,000, with a quarterly payment amount of $27,000. Tyler will invoice OCA for the Initial Term on July 1, 2022, prorated for the period commencing on such date and continuing through August 31, 2022. Subsequent fees shall be invoiced quarterly in advance commencing on September 1, 2022. The PRT fees shall increase annually by 3% over the prior year, commencing September 1, 2023, and each September 1 thereafter.



**ER-1070**

DocuSign Envelope ID: B9AFD1D8-4694-41C1-A5E5-B776D671A111

6.  In no event shall Tyler be liable to OCA (nor to any person claiming any right, title or interest derived from or as a successor to OCA's right, title and interest), any Authorized User or any third party, with respect to (i) use of the PRT by Authorized Users in violation of any applicable federal, state or local laws, regulations or policies, or (ii) access to, or use or disclosure of, Confidential Information stored, maintained or processed in the PRT by OCA, an Authorized User or a third party.

7.  To the extent permitted by Texas or other applicable law, OCA will indemnify, defend and hold harmless Tyler and our agents, officials, and employees from and against any and all third-party claims, losses, liabilities, damages, costs, and expenses (including reasonable attorney's fees and costs) for the use or disclosure of Confidential Information accessed or obtained by an Authorized User or any third party through the PRT in violation of applicable laws, or regulations or policies. Tyler will notify OCA promptly in writing of the claim and will give OCA sole control over its defense or settlement. Tyler agrees to provide OCA with reasonable assistance, cooperation, and information in defending the claim at OCA' expense

8.  This Amendment shall be governed by and construed in accordance with the terms and conditions of the MSA.  Except as expressly indicated in this Amendment, all other terms and conditions of the MSA shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the dates set forth below.

Tyler Technologies, Inc.                                    Texas Office of Court Administration

By: *Sherry Clark*                                          By: _Megan LaVoie_____
Sherry Clark (Jun 23, 2022 13:07 CDT)

Name: Sherry Clark                                         Name: Megan LaVoie

Title: Group General Counsel                               Title: Administrative Director

Date: 6/23/22                                              Date: 6/24/2022



2

**ER-1071**

# EXHIBIT 24
# GIRDNER DECLARATION

The emails below are between Courthouse News and the following court officials in California concerning the press review queue:  1) Chris Ruhl, Chief Executive Officer of Monterey Superior Court;  2) Mark Hanson, Judicial Service Manager for Santa Barbara Superior Court; 3) Carla Ortega, Managing Attorney, Kern Superior Court; 4) Bob Fleshman, Chief Executive Officer, Napa Superior Court; 5) Lee Herrick, General Counsel, Superior Court of California, Santa Clara.

**1)**

**From:** Chris Ruhl <Chris.Ruhl@monterey.courts.ca.gov>
**Sent:** Friday, November 20, 2020 2:41 PM
**To:** Bill Girdner <bgirdner@courthousenews.com>
**Subject:** RE: press review queue

Hello Bill,

No – Tyler did not charge the court separately for the work on the press review queue.

You have a Happy (and safe) Thanksgiving too.

Chris Ruhl

(831) 775-5678

---

**2)**

**From:** Hanson, Mark <mhanson@sbcourts.org>
**Sent:** Monday, November 23, 2020 1:35 PM
**To:** Bill Girdner <bgirdner@courthousenews.com>
**Subject:** RE: press queue info

Our court was not charged a fee.  I don't know if one of the courts that preceded our court paid for this configuration.

Happy holidays.

Mark

---

**3)**

**From:** Ortega, Carla <Carla.Ortega@kern.courts.ca.gov>
**Sent:** Monday, November 23, 2020 2:52 PM
**To:** CNS Bakersfield <bakersfield@Courthousenews.com>
**Subject:** RE: Tyler Technology

Ms. Kearn,

Tyler did not charge the court because they had already set it up for another court.

Thanks,

Carla



Carla Ortega
Managing Attorney
Superior Court of California, County of Kern
1415 Truxtun Avenue
Bakersfield, CA 93301
(661) 868-5391 voice
Carla.Ortega@kern.courts.ca.gov

NOTICE:  This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information, as well as attorney-client work product. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** CNS Bakersfield <bakersfield@Courthousenews.com>
**Sent:** Monday, November 23, 2020 1:28 PM
**To:** Ortega, Carla <Carla.Ortega@kern.courts.ca.gov>
**Subject:** RE: Tyler Technology

Good afternoon Ms. Ortega,

Following up on our conversation here, did Tyler charge Kern extra to set up the press queue?

Best,

Rebekah Kearn
CNS Kern County Reporter
bakersfield@courthousenews.com
661-302-5642

**4)**

**From:** Fleshman, Bob <Bob.Fleshman@napa.courts.ca.gov>
**Sent:** Wednesday, November 18, 2020 1:11 PM
**To:** Bill Girdner <bgirdner@courthousenews.com>
**Subject:** RE: phone call today

I wasn't really involved on the IT side of things, so can't really speak to that—but the discussions have been going well over a year.

We didn't pay for the effort, it was submitted as a service request.

Cheers!

_____
**BOB FLESHMAN, CEO**
Superior Court of Napa County
Direct Line: 707-299-1111
bob.fleshman@napa.courts.ca.gov

**From:** Bill Girdner <bgirdner@courthousenews.com>
**Sent:** Wednesday, November 18, 2020 12:46 PM
**To:** Fleshman, Bob <Bob.Fleshman@napa.courts.ca.gov>
**Subject:** RE: phone call today

Wow. That's fantastic!

What I would really love to know is what the process was for implementation. And whether Tyler is charging a separate fee for its implementation, a question that came up outside California.

The holidays, such as they are this year, come upon us. Have a happy Thanksgiving!

Bill

_____

**5)**

**From:** Lisa Herrick <LHerrick@scscourt.org>
**Sent:** Tuesday, December 8, 2020 8:29 AM
**To:** Fetterly, Jon <jon.fetterly@bryancave.com>
**Subject:** RE: Tyler Technologies - Press Review Queue

Hi Jon –

I hope you are well too.  Our IT Team tells me that there was not a direct charge to set up the queue but fell under the maintenance contract that we signed with Tyler.

I hope this helps.

Stay healthy and well!

L.

**LISA HERRICK**
Assistant Executive Officer and General Counsel
Superior Court of California, County of Santa Clara
191 N. First Street
San Jose CA 95113
408-655-7047
lherrick@scscourt.org
www.scscourt.org

**From:** Fetterly, Jon [mailto:jon.fetterly@bclplaw.com]
**Sent:** Monday, December 7, 2020 4:24 PM
**To:** Lisa Herrick <LHerrick@scscourt.org>
**Subject:** Tyler Technologies - Press Review Queue

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender.

Hi Lisa,

I hope this finds you well.   I am passing along a question from Courthouse News Service that we are hoping you can answer.

Did Tyler Technologies charge SCSC an additional amount to set up the press queue? Or was this a service request / ticket for which an additional charge was not required?

Courthouse News already contacted the other Tyler review queue courts in California and confirmed with them directly that there were no additional charges for those queues.  I am passing along this request on behalf of Courthouse News given the history with SCSC.

Thanks in advance,

Jon



JONATHAN G. FETTERLY
Partner
jon.fetterly@bclplaw.com
T: +1 415 675 3451

BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor, San Francisco, CA 94111-4070

bclplaw.com

# EXHIBIT 25
# GIRDNER DECLARATION



**Superior Court of California, County of Los Angeles**
Media Relations
111 N. Hill Street, Room 107, Los Angeles, CA 90012
publicinfo@lacourt.org  www.lacourt.org  @LASuperiorCourt

# MEDIA ACCESS PORTAL

The Superior Court of Los Angeles County has established enhanced access to electronic case information and court documents through the Media Access Portal (MAP).

Individuals and media organizations may enter into a Media Access Portal Agreement – **Paid Subscription** - which offers name searches, access to Civil documents and other features (included in the annual subscription fee), *from any location, 24 hours per day, seven days a week.*

Paid Subscriptions include the features listed in Attachment One below.

    **a.  Paid Single User Subscription**
    An individual reporter may enter into a Single User Agreement - **Paid Subscription** (Form LASC ADM 126) for an annual cost of *$750*. Once executed, including payment of the annual subscription fee, the User will be provided access to MAP.

    **b.  Paid Organization Subscription**
    Media organizations may enter into an Organization Agreement – **Paid Subscription** (Form LASC ADM 123) to allow reporters who work for the organization to have MAP access.

    The Organization can opt for a subscription for *up to 10 Users* for an annual cost of *$3,500* or for an *unlimited number of Users* for an annual cost of *$5,000*.

    Once the Agreement has been executed, including payment of the annual subscription fee, detailed instructions will be emailed to the Organization MAP Administrator. Users will be required to electronically sign an online Agreement that links the User to the Organization. The Organization MAP Administrator will be asked to electronically confirm any new User when a new User attempts to associate with the Organization's subscription.

    With an Organization Subscription up to 10, Users may be substituted by the Organization MAP Administrator at any time. If 10 Users are already associated with the subscription, the Organization MAP Administrator will be required to remove an existing User to allow access to the new User – *or* – request a modification to an unlimited user subscription with the applicable increase in fee.

***To register for a Media Access Portal Paid Subscription, complete the applicable subscription agreement (forms LASC ADM 123 or 126) and submit to: PublicInfo@LACourt.org.***

***Please submit questions regarding MAP to PublicInfo@LACourt.org.***

**- MORE -**

## ATTACHMENT ONE

**MEDIA ACCESS PORTAL**
**TIER FEATURES INFORMATION**

| <u>Online Services</u> | <u>Website Access</u><br><br>Available Anywhere | <u>Paid Subscription Access</u><br><br>Available Anywhere |
|---|---|---|
| Name search – **all case types\*** | Pay | Free |
| View registers of action and calendars – **all case types\*** | Free | Free |
|  |  |  |
| View **pre-filed** *civil complaints* upon electronic submission | n/a | Free |
| View **filed** *civil* documents | Pay | Free |
| PDF download of **filed** *civil* documents | Pay | Free |
| *Civil* case document update notifications | n/a | Free |
| Search for new *civil* filings by date/time | n/a | Free |
|  |  |  |
| View *criminal, family law, mental health* and *probate* documents\*\* | n/a | n/a |
| Electronic purchase of PDF *family* and *probate* documents (and *criminal*, when available) \*\*\* | n/a | Available |
|  |  |  |
| Services are unavailable for *juvenile* records\* | Footnote 3 | Footnote 3 |
|  |  |  |

\* Per California Rules of Court, rule 5.552, Juvenile records are confidential.

**- MORE -**

**ER-1079**

\*\*Per California Rules of Court, rule 2.503, the courts are prohibited from making Criminal, Family Law, Juvenile, Mental Health and some Probate documents viewable online from remote locations.

\*\*\*Paid subscription access will allow an authorized User to purchase a PDF version of Family Law, Probate and Criminal documents (when available) which will be emailed to the User.

### ###

# EXHIBIT 26
# GIRDNER DECLARATION

LASC MAP User Guide

# LASC MEDIA ACCESS PORTAL

The Media Access Portal (MAP) provides authorized agencies and individuals access to case information and documents. This guide provides instructions on how to use the different features of MAP.

## REGISTRATION

Media agencies and reporters must register before using MAP. LASC will email login information to an organization's MAP administrator after approval of the organization's memorandum of understanding. Non-agency users may register at any time.

To register, go to https://media.lacourt.org

1. Click on the Sign In link located at the top right corner of the MAP login page



LASC MAP User Guide

2. Click the "Sign up now" hyperlink



3. Enter your email address and click "Send verification code"



**ER-1083**

LASC MAP User Guide

4. Copy the six-digit code from the received email



5. Paste the code into the Verification code field, and click the "Verify code" button



LASC MAP User Guide

6.  Once your email is verified, make sure to enter all additional fields.
    Tier 2 users are able to receive email and text message case update notifications using the information supplied here



7.  Make sure to click the "Create" button after providing all information

LASC MAP User Guide

8. When logged into MAP for the first time, you will be able to select your Account Type and Agency



9. Agency Reporters will be able to select their organization from the dropdown menu only after the organization's administrator has completed the agency registration process. If you cannot find your agency from the dropdown menu, contact your account administrator for further information



10. Make sure you read and understand the displayed user agreement, and if so, click the "I Agree" button at the bottom of the page.

LASC MAP User Guide

## ACCESS

Registered users may access the MAP at [https://media.lacourt.org](https://media.lacourt.org)

1. From the MAP login page, click on the Sign In link located at the top right corner, as described above

2. Enter your Email Address and Password, and select Sign in



LASC MAP User Guide

## FEATURES

The MAP offers temporary, free subscription, or paid subscription levels of access. Temporary and free subscription users have access to Tier 1 features from within the Media Room in the Stanley Mosk Courthouse, while paid subscription users can access Tier 1 and 2 features from any location.

After login, you will see the MAP home page and your account's available features.



Some important MAP features niclude the following:

1. UNFILED UNLIMITED CIVIL COMPLAINTS – This feature allows Tier 2 users to view submitted Civil e-Filings which have not yet been clerically processed. These documents may not be available for display until two hours after submission. Search results are provided chronologically and lists two months of the most current e-Filings.

2. FOLLOW A CASE – This feature will notify the user through email of new documents for designated Unlimited Civil, Family Law, and Probate cases. This feature is for Tier 2 users.

(200 of 233), Page 200 of 233
Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 200 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 101 of 134

LASC MAP User Guide

3.  FIND CASE BY DATE FILED (CIVIL) – This feature allows Tier 2 users to view submitted Civil case information which has been clerically processed and issued a case number. The case listing is provided chronologically, and is available for viewing within one-week time frames.

4.  FIND CASE BY CASE NUMBER – This feature allows all users to search for and access case information.

5.  FIND CASE BY CALENDAR – This feature allows all users to search a courthouse department's case schedule, or a case's scheduled court proceedings.

6.  FIND CASE BY NAME –  This feature allows all users to search for case information by litigation type, and by party, company, or defendant name.

7.  EXPORT - This feature allows all users to save search results to a PDF or Excel file.

8.  VIEWING, PURCHASING, AND OBTAINING DOCUMENTS - Dependent on the user's Tier and Access Type certain documents are available for view, purchase, download, and email in accordance with California Rules of Court.

LASC MAP User Guide

1. UNFILED UNLIMITED CIVIL COMPLAINTS – Click Unfiled Unlimited Civil Complaints to view recently submitted case information. Available documents may be viewed by clicking a case's adjacent View button.



2. FOLLOW A CASE – Paid users can elect to receive e-mail notifications for new documents on Civil Unlimited, Family Law and Probate cases. To follow a case, click the Follow button next to the case number from the Case Information page.



LASC MAP User Guide

To un-subscribe from case notifications, click the Unfollow button on the Case Information or Followed Cases Page.





LASC MAP User Guide

3.  FIND CASE BY DATE FILED (CIVIL) – Click Date Filed (Civil) to search for filed Unlimited Civil cases by date range. The maximum search range is one week.



ER-1092

LASC MAP User Guide

Use the filters to refine the search results. To view a case, click the case number.



LASC MAP User Guide

After clicking a Case Number from any search results, the search results will be available from the Previous Search Results button, and can be used to navigate to another case.



ER-1094

LASC MAP User Guide

The Previous Search Results feature is also available for the Calendar and Name searches.



LASC MAP User Guide

4.  FIND CASE BY CASE NUMBER – Search by Case Number can be used to search for Civil, Criminal, Family Law, or Probate cases.



If the case is available, the portal will display the Case Information Page. The user may view case Parties, Proceedings, Events, Documents, Tentative Rulings, and Related Cases by clicking on the corresponding tabs.



Page **15** of **24**

LASC MAP User Guide

5. **FIND CASE BY CALENDAR** – Finding case information by Calendar requires Case Type, Courthouse Location, Department, and Date Range; or Case Type and Number.



LASC MAP User Guide

6.  FIND CASE BY NAME – A search for case information by Name requires the Case Type, and the individual, company, or defendant name.

LASC MAP User Guide

7.  EXPORT - Search results may be exported by clicking the Export button above any search results listing.

LASC MAP User Guide

8.   VIEWING, PURCHASING, AND OBTAINING DOCUMENTS - Case documents are accessible from the Documents Tab of any Case Information Page. The litigation type, case type, and user's Tier will determine document availability and accessibility. Users can access their purchased documents for up to 30 days.



Clicking the View button will launch the MAP Document Viewer or will open the document within your default system browser dependent on your account's tier and California Rules of Court.

LASC MAP User Guide



| | |
|---|---|
| 🛒 Add | If you see the Add button, then your account does not include the fees associated with obtaining the document. Clicking the Add button will place the document within your shopping cart. |
| 🗑 Remove | If you see the Remove button, then the document is currently in your shopping cart. Clicking the Remove button will remove the document from your shopping cart. |
| 🛒 1 item(s) Click to Checkout | The Shopping Cart button will keep a tally of all documents added to your cart. Click the button to initiate the payment process in a new popup window. |



LASC MAP User Guide

Use the Shopping Cart to review the listed documents. Click the X button next to a document to remove it from your Shopping Cart. Click the Cancel button and close the Shopping Cart window to cancel the transaction. Click the Checkout button to add your Payment Information



Enter your payment information and click the Submit button to be routed to the payment Confirmation Page. Click the Cancel button to return to the Shooing Cart.



**ER-1102**

LASC MAP User Guide

Verify your transaction information, and click the Submit button to initiate the transaction. Click the Cancel button to return to the Payment Information Page.



Make sure to email or print a copy of your receipt by using the respective buttons below. You can now close the window.



**ER-1103**

LASC MAP User Guide

 **Verify Payment** | After receiving payment confirmation, return to the Case Information Page to obtain the purchased documents. Clicking the verify payment button will refresh the document listing, and will display a View or Email button next to all successfully purchased documents.

**Email** | Certain documents cannot be viewed using the MAP. Click the Email button to send the document to the logged in user's email address.



ER-1104

LASC MAP User Guide

## Questions about LASC MAP

If you have questions about the LASC Media Access Portal, email us at: **laportal@lacourt.org**

# EXHIBIT 27
# GIRDNER DECLARATION

IN THE SUPREME COURT OF THE STATE OF ARIZONA

_____

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| AUTHORIZING A NEWS MEDIA | ) | Administrative Order |
| FILE SHARE PORTAL | ) | No. 2021 - <u>110</u> |
| | ) | |
| | ) | |
| _____ | ) | |

     Courthouse News Service has requested that this Court provide access to electronically filed non-confidential superior court general civil complaints when they are submitted to the court by attorneys.  Currently the judicial branch does not offer a mechanism for accessing these documents at this stage in the filing process for the entire superior court.  Rule 123(h)(3) of the Rules of the Supreme Court provides if a request to obtain copies of information held electronically requires programming, the requestor shall bear the actual cost incurred by the court to provide the records.  Courthouse News Service has agreed to pay the development and maintenance costs for a statewide news media file share portal.

     The Administrative Office of the Courts oversees the operation of the e-filing system, eFileAZ in the judicial branch.  The eFileAZ software can be expanded to include the necessary functionality for the portal that Courthouse News Service is requesting.

     Therefore, pursuant to Article VI, section 3 of the Arizona Constitution and Rule 123(h)(3) of the Rules of the Supreme Court,

     IT IS ORDERED that the Administrative Office of the Courts is authorized to develop and manage a news media file share portal for providing remote immediate access to non-confidential general civil complaints submitted to the superior court electronically by attorneys.

     IT IS FURTHER ORDERED that the Administrative Director is authorized to provide Courthouse News Service and other individuals and entities with access to the portal under terms and conditions to be determined by the Administrative Director.

     DATED this <u>14th</u> day of <u>July</u>, 2021.

_____
ROBERT BRUTINEL
Chief Justice

# EXHIBIT 28
# GIRDNER DECLARATION

(220 of 233), Page 220 of 233   Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 220 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 121 of 134
Case 8:17-cv-00126-JVS-KES   Document 210   Filed 01/20/21   Page 1 of 2   Page ID #:8973

John W. Amberg (SBN 108166)
jwamberg@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:  (310) 576-2100
Facsimile:  (310) 576-2200

Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>vs.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No. 8:17-CV-126-JVS-KES<br><br>**NOTICE OF SETTLEMENT AND REQUEST TO VACATE CASE DEADLINES AND TRIAL DATE [L.R. 40-2]**<br><br>Final Pretrial Conference:  Aug. 30, 2021<br>Trial Date:  Sept. 14, 2021 |

NOTICE OF SETTLEMENT                                    Case No. 8:17-CV-126-JVS-KES

**ER-1109**

1      Plaintiff Courthouse News Service hereby notifies the Court that the parties

2  have reached a settlement under which dismissal of this case is conditioned upon

3  Defendant David Yamasaki's implementation of an Electronic Media Inbox into

4  which new electronically submitted non-confidential civil unlimited complaints will

5  be automatically deposited upon receipt by the Orange County Superior Court for

6  review by members of the media.

7      Pursuant to the terms of the parties' agreement, Defendant will create and put

8  the Electronic Media Inbox into operation within nine months from the effective date

9  of the settlement, or by October 11, 2021.

10      Within 10 days of Defendant's written notification and demonstration to

11  Courthouse News Service that the Electronic Media Inbox is operational, Plaintiff will

12  file a stipulation pursuant to Federal Rule of Civil Procedure 41(a) providing for the

13  full and complete dismissal of the Action with prejudice as against all parties.  The

14  parties will file the stipulation of dismissal or report to the Court as to the status of the

15  case no later than **October 21, 2021**.

16      Accordingly, Courthouse News Service respectfully requests that the Court

17  vacate all case deadlines, including the dates for the final pretrial conference and trial.

18  Dated:  January 20, 2021        BRYAN CAVE LEIGHTON PAISNER LLP

19

20

21

22                  By:   /s/ *Jonathan G. Fetterly*

23                        Jonathan G. Fetterly

24                        Attorneys for Plaintiff

25                        COURTHOUSE NEWS SERVICE

26

27

28

NOTICE OF SETTLEMENT                        Case No. 8:17-CV-126-JVS-KES

# EXHIBIT 29
# GIRDNER DECLARATION

12/13/22, 9:43 PM                                    The Superior Court of California - County of Orange

## DIVISIONS

Appeals

**Civil**

Collaborative Courts

Collections

Court Reporter Interpreter
Services

Criminal

Family Court Services

Family

Grand Jury

Jury Services

Juvenile

Probate/Mental Health

Small Claims

Traffic & Infractions

# CIVIL UNLIMITED MEDIA ACCESS PORTAL - FREQUENTLY ASKED QUESTIONS (FAQ)

expand all          collapse all

### 1. HOW DO I REGISTER FOR CIVIL UNLIMITED MEDIA ACCESS PORTAL ACCOUNT?

If you are new to the Civil Unlimited Media Access Portal and need to create an account, select https://map.occourts.org/ and click on the Create an Account button. You will need to provide a valid email address. Once you click on the Send Verification Code button, you will receive a verification code from Microsoft on behalf of Orange County Superior Court. The verification code will be required for authentication. The passcode will expire after 5 minutes. If you did not see the email in your inbox, you may need to check your spam folder.

After successful entry of the passcode, you must fill out the required information to create your profile. Once the registration is completed and approved, you may access the Civil Unlimited Media Access Portal.

### 2. I FORGOT MY PASSWORD. WHAT CAN I DO TO ACCESS MY ACCOUNT?

Click on the "Sign-In" button. You will find a "Forgot Your Password?" above the 'Sign-In' button. Click on the link to bring you to a screen to enter your email address. Once you have entered the email address and click the 'Send Verification Code' button. A message will prompt you, "Verification code has been sent to your inbox. Please copy it to the input box below". An email from Microsoft on behalf of Orange County Superior Court that containing the passcode. The passcode will expire after 5 minutes.

You must use the passcode in the email to continue resetting your password, you may then enter a new password. Once the new password has been entered, you may access the Civil Unlimited Media Access Portal.

### 3. CAN I ACCESS CIVIL UNLIMITED MEDIA ACCESS PORTAL WITHOUT REGISTERING WITH THE COURT?

**ER-1112**

12/13/22, 9:43 PM                                    The Superior Court of California - County of Orange

No, this is not possible. The Civil Unlimited Media Access Portal requires a user login and profile and approval by the Court.

**4. WHERE CAN I VIEW MY ACCOUNT INFORMATION?**

Sign-in to Civil Unlimited Media Access Portal and click the icon next to your name in the header (upper right-hand corner).

**5. ARE THERE ANY RESTRICTIONS?**

You must be part of an active news media outlet to be approved for access.

**6. HOW DO I SEARCH FOR THE COMPLAINTS?**

Enter the date range and click the Search button. Once the system returns your search results, click on View .PDF to view the complaint.

**7. WHY ARE SOME COMPLAINTS NOT AVAILABLE THROUGH THE CIVIL UNLIMITED MEDIA ACCESS PORTAL?**

Complaints that are confidential by law will not display in the Civil Unlimited Media Access Portal. Some complaints submitted as a large document will not display a PDF version in the Civil Unlimited Media Access Portal. Please

**ER-1113**

(225 of 233), Page 225 of 233

Case: 24-6697, 03/06/2025, DktEntry: 10.6, Page 225 of 233
Case 1:21-cv-00305-DCN   Document 65   Filed 12/15/22   Page 126 of 134

12/13/22, 9:43 PM                                              The Superior Court of California - County of Orange

contact the Public Information Officer for information.

8. HOW MUCH DOES CIVIL UNLIMITED MEDIA ACCESS PORTAL COST?

Beginning January 1, 2022, all users of the Civil Unlimited Media Access Portal will be required to pay a non-refundable, annual fee to defray maintenance costs associated with the Portal.

9. WHERE DO I REPORT CIVIL UNLIMITED MEDIA ACCESS PORTAL ISSUES?

For assistance with any questions regarding the Civil Unlimited Media Access Portal application, please click on Webmaster link at the bottom page and describe your issue. The Court team will contact you promptly.

Locations     Telephone Numbers     Employment     Sitemap     RSS     Privacy Policy     Terms & Conditions     Webmaster                    © 2022 Superior Court of Orange County

ER-1114

# EXHIBIT 30
# GIRDNER DECLARATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 7933** |
| | ) | |
| **DOROTHY BROWN, Clerk of the** | ) | |
| **Circuit Court of Cook County,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Courthouse News Service (CNS), a news service that covers civil litigation news from over 2,500 state and federal courts across the country, has sued Dorothy Brown, the Clerk of the Circuit Court of Cook County, for injunctive relief under 42 U.S.C. § 1983. CNS alleges violations of the First Amendment stemming from Brown's policy of withholding electronically-filed (e-filed) civil complaints from the press and the public until after they have been processed and officially "accepted" for filing by the Clerk's Office. CNS alleges that the resulting delay in access to new complaints constitutes a denial of timely and contemporaneous access to court records in violation of the First Amendment of the U.S. Constitution.

CNS moved for a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed complaints until administrative processing is complete and requiring her to provide timely, contemporaneous access to the complaints upon filing. Brown responded to the motion and agreed with CNS that there were no disputed facts

relevant to the preliminary injunction motion that required a hearing. Based on the parties' agreement, the Court cancelled the scheduled hearing on the motion (which had been set for December 21, 2017) and ruled based on the parties' briefs.

On January 8, 2018, the Court granted CNS's motion for a preliminary injunction. *See Courthouse News Serv. v. Brown*, No. 17 C 7933, 2018 WL 318485 (N.D. Ill. Jan. 8, 2018). Brown did not dispute CNS's contention that the First Amendment presumption of access to documents filed in court applies to civil complaints. Her argument, rather, was that the presumption does not require *immediate* access and that the delays at issue were insignificant and did not implicate the First Amendment. The Court overruled this contention, following established authority in this Circuit emphasizing that the First Amendment right of access "contemplates 'immediate and contemporaneous' access." *Id.* at *5 (citing *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998)). The Court concluded that "a policy of delaying access to e-filed complaints until after they are officially accepted or rejected or otherwise processed by the Clerk violates the First Amendment right of timely access to those complaints, unless the Clerk can demonstrate that the policy is narrowly tailored and necessary to preserve higher values." *Id.* The only conceivable "higher value" identified by Brown in her response to the motion was her contention that her office "needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identity information—that may not be electronically filed . . . ." *Id.* The Court found unpersuasive that it was *Brown's* duty to ensure that such documents are not included in e-filings; applicable Illinois Supreme

2

Rules place that burden on filing parties and expressly state that court clerks are not required to review pleadings for compliance with that rule. *Id.* (citing Ill. Sup. Ct. R. 15(c) & 138(e)). And even if this responsibility actually existed, the Court found that "Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until acceptance is narrowly tailored to that interest," as required when the First Amendment is implicated, and "has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed." *Id.* at *6. The Court therefore concluded that CNS had shown the requisite likelihood of success and also that CNS had met the other requirements for entry of a preliminary injunction. *Id.* The Court gave Brown thirty days to implement a system that would provide access to newly e-filed civil complaints contemporaneously with their receipt by her office.

Brown filed a notice of appeal on January 31, 2018 and then, two days later, filed a motion to stay the preliminary injunction pending appeal. The purpose of a stay pending appeal is to minimize the costs of error and mitigate the damage that may be done before a legal issue is finally resolved. *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). But a stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). In determining whether to grant a stay, a court considers the moving party's likelihood of success on appeal, any irreparable harm that will result to either side if a stay is granted or denied in error, and whether the public interest favors one side or the other. *In re A&F Enters.*, 742 F.3d at 766. The court applies a sliding scale under which "the greater the moving party's

3

likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.* As the party requesting a stay, Brown has the burden to show that the circumstances justify the Court's exercise of its discretion to grant a stay.

In her motion for a stay, Brown barely addresses the merits of CNS's First Amendment claim. Her motion relies in significant part on factual and legal contentions that she failed to advance in her response to the preliminary injunction, as well as a contention that the preliminary injunction conflicts with requirements imposed on her by the Illinois Supreme Court. The first set of points is forfeited; the last point is unsupported.

First, Brown seems to say that she cannot, without some expense, comply with the requirement to permit the press to view electronically filed complaints contemporaneously with their filing, because "the computer system in the Circuit Clerk's office does not currently have a read function that allows users . . . to see filed images on the internet." Motion to Stay ¶ 9. It is too late for Brown to raise this point. It was clear from CNS's briefs on the preliminary injunction motion that viewing complaints via a terminal in the clerk's office would be a viable means to satisfy the First Amendment. But Brown breathed nary a word about the purported lack of what would seem to be a rather basic computer function—reading documents filed in the system that the computer is hooked up to. The Court concludes that Brown forfeited this point by failing to raise it in a timely fashion and thus that it is not properly a basis for a stay. In any event, the Court's order most certainly does not mandate Internet-based access; access through computer terminals located within the Clerk's office will suffice. The Court also notes that the Circuit Court's directive issued *over three years ago*, Order No. 2014-12,

section 13(b), specifically contemplates access to the images of filed documents through public access computer terminals in Clerk's office locations.

Brown next relies on an order issued by the Illinois Supreme Court on December 22, 2017 that requires her to "commit all necessary resources" to meet an extended timeline for implementation of mandatory e-filing.  Motion to Stay, Ex. C (Ill. S. Ct. Order of Dec. 22, 2017).  Brown claims that "[t]he express language of this order prohibits [her] from devoting resources to providing Plaintiff with 'timely, contemporaneous access' to newly submitted electronic documents."  Motion to Stay ¶ 14.  This argument suffers from several flaws.  First, if Brown is reading the Supreme Court's order correctly, she had it in hand two and one-half weeks *before* this Court issued its preliminary injunction order, yet she did not bring it to the Court's attention.  Worse, the request that led to the order was made even earlier than that, yet Brown never mentioned the request in her papers filed in opposition to the motion for preliminary injunction.  In short, if Brown is accurately citing this order as a basis for putting off compliance with this Court's preliminary injunction order, she forfeited the point by failing to bring it to the Court's attention promptly following the order's issuance.

More importantly, however, Brown's reading of the Supreme Court's order unsupportable.  The order most certainly does not prohibit devoting resources to enabling contemporaneous access to filed documents, either "expressly"—as Brown falsely contends—or even implicitly.  Specifically, the order does not say that Brown must devote *all* her resources to getting an e-filing system up and running; rather, it says she must commit all *necessary* resources to this.  That does not preclude her from committing other resources to allowing public access to filed complaints.  Furthermore,

one might think that a mechanism for compliance with the public's right of access to judicial proceedings is a necessary component of an appropriate e-filing system—and thus squarely within the scope of the Supreme Court's order even under Brown's misreading of it—and not some sort of a frill, as Brown's argument seems to suggest.

Brown's other main point in support of her request for a stay is her contention that this Court has required her to allow public access to civil complaints that are filed under seal. If Brown is honestly reading the order that way, one would wonder why she did not seek clarification or modification of the injunction (she sought clarification on other, meritless, points, but not on this one). In fact, the Court would have been ready, willing, and able to clarify or modify the order to make it clear that when a litigant files a complaint under seal, the public is *not* entitled to immediate access.[1] But in fact that is not what the preliminary injunction requires; Brown may maintain under seal documents that are filed under seal. And that is not what is at issue in CNS's lawsuit. What is actually afoot is a system, effectively created by Brown herself, in which *all* e-filed complaints are treated as having been filed under seal until Brown herself clears them for public access. Brown cannot end-run the First Amendment by creating a system in which hypothetical doubt regarding whether litigants comply with rules about redaction allow her to exclude the public from access to judicial proceedings until she is good and ready to provide it.

The Court need not dwell further on the merits of Brown's motion. Brown has shown at best only a small likelihood of success on the merits, and she has shown

---

[1] The Court would be happy to clarify or, if necessary, modify the preliminary injunction even now to make this clear, but doubts that it has jurisdiction to do so given Brown's filing of a notice of appeal.

6

**ER-1121**

neither irreparable harm nor any risk of damage to the public interest. To the contrary, the public's interest in maintaining its right of access to judicial proceedings counsels against entry of a stay.

### Conclusion

For the reasons stated above, the Court denies Brown's motion for a stay of the preliminary injunction pending appeal.

Date:  February 13, 2018

_____

MATTHEW F. KENNELLY
United States District Judge