No. 24-6697

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee*,

v.

SARA OMUNDSON,

*Defendant-Appellant*.

---

Appeal from the United States District Court for the District of Idaho,

Case No. 1:21-CV-00305-DCN, the Honorable David C. Nye, Presiding

---

**EXCERPTS OF RECORD, VOL. 6**

---

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300,
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com; mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>Defendant. | Case No: 1:21-cv-00305-DCN<br><br>**DECLARATION OF WILLIAM GIRDNER IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[with Exhibits 1-15]** |

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>             Plaintiff,<br><br>       v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>            Defendant. | Case No: 1:21-cv-00305-DCN<br><br><br>**DECLARATION OF WILLIAM GIRDNER IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |

I, William Girdner, declare and state as follows:

1.      I am the editor and publisher of Courthouse News Service ("Courthouse News"). I founded Courthouse News in 1990, driven by a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Today, Courthouse News employs approximately 240 people, most of them editors and reporters, covering the state and federal trial and appellate courts in all 50 states in the United States. Through its website courthousenews.com, our news service  reports on a full set of news topics, from scientific advances such as a breakthrough in fusion energy to a corruption scandal involving the government of Qatar, volcanic eruptions on Hawaii and the normal news-generating topics of  fires, floods, politics, demonstrations, and elections. But, in particular, our news service focuses on the law as it is developed and decided in American courthouses.

2.      As editor of Courthouse News, I have final responsibility for the timeliness and content of our news publications. As publisher, I have final responsibility for the business operation of Courthouse News, including the distribution of our daily new litigation reports, the hiring of and supervision of our reporters and editors, and the business decisions involved in keeping Courthouse News afloat, including the litigation we decide to undertake.

3.      I have developed extensive personal knowledge of the procedures that courts use, both now and in the past, to intake, docket, and provide access to new complaints. I also have personal experience overseeing Courthouse News' coverage of courts across the nation, and I have personal knowledge of the different e-filing systems used by those courts as well as personal knowledge of how courts have configured their systems to provide public access to new court filings.

4.      This personal knowledge has been derived from my more than 40 years of covering the courts, including my own in-person visits to many state and federal courts, discussions with court officials, and my observation of the complaint intake and access procedures. It also derives from my supervision of our reporters and editors around the country, and from seeking, through negotiation and litigation, to take back the traditional access that was taken away by clerks in the thrall of a new technology. I have personal knowledge of the following facts, except where I say otherwise, and could testify to them if called as a witness.

5.      One category of report that Courthouse News publishes is its New Litigation Reports, which contain original, staff-written summaries of significant new civil complaints, and are e-mailed to subscribers nightly. New Litigation Reports focus on general jurisdiction complaints against business, government entities and individuals who are in the public eye, as well as any civil action that might be of interest to Courthouse News subscribers. Courthouse News currently publishes 127 New Litigation Reports. One of those New Litigation Reports is the *Big Sky Report*, which covers newsworthy new civil cases filed in state and federal courts covers civil complaints filed in Idaho, Montana and Wyoming. The *Big Sky Report* currently has 51 subscribing institutions.

6.      Courthouse News' Idaho reporter is Cathy Valenti. Ms. Valenti is based in Boise, and reports on the federal and state courts in Idaho as well as political and environmental news around the state. Courthouse News does not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions. Courthouse News also does not review or report on the small percentage of complaints that are statutorily confidential or accompanied by a motion to seal.  In Idaho state courts, Courthouse News seeks only complaints in the case types listed in the first fee category in Appendix A to the Idaho Rules of

DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT                    2

Civil Procedure: "AA – All Initial District Court Filings (Not Listed in: E, F and H1)."  These

filings are of the type that fall within the area of general civil litigation, cases that can have

minor or momentous consequences for a defendant. They consist of creditor/debtor collections,

breach of contract, employment dispute, real property, medical malpractice, and personal injury

cases, all with a value exceeding $10,000.

7.    Among our other publications is a monthly newsletter, the *Entertainment Law

Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings,

including all U.S. Supreme Court, federal circuit decisions, and significant rulings from the

federal district courts.

8.    Courthouse News has about 2,300 subscribers nationwide, including lawyers,

law firms, other media, law schools, libraries, nonprofits, government entities, and businesses.

Regional subscribers include the City of Boise – Office of City Attorney, *Salt Lake Tribune*,

and Weber State University.  Subscribing news outlets around the U.S. include: The Associated

Press, *Austin American-Statesman*, *The Atlanta Journal Constitution*, *The Boston Globe*,

Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of

Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat*, *Las Vegas Review

Journal*, *Los Angeles Business Journal*, *Los Angeles Times*, North Jersey Media Group, *Pacific

Coast Business Times, Portland Business Journal, St. Paul Business Journal*, *The Salt Lake

Tribune*, *The San Jose Mercury News*, *San Antonio Express News*, *Tampa Bay Business

Journal*, Twitter, *The Wall Street Journal*, *Variety*, Walt Disney Company and Warner Bros.

Among academic institutions, subscribers include Boston College Law School, Boston

University, Case Western Reserve University, MIT Sloan School of Management, Southern

Illinois University School of Law, UC Hastings College of Law, and UCLA School of Law. A

majority of the nation's large and mid-sized law firms also subscribe to one or more of Courthouse News' publications.

9.      In addition to Courthouse News's subscriber publications, Courthouse News also publishes a publicly-available website (courthousenews.com) featuring general news and commentary with a focus on court reporting, which is read by roughly 30,000 people every weekday. The website works much like a daily print newspaper, featuring staff-written articles from across the nation posted during the day and rotated off the page on a 24-hour news cycle.

10.     Courthouse News has been credited as the original source of reporting by a range of publications, including: *The Mercury News*, *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, *The Daily Beast*, *The Dallas Morning News*, *Forbes*, Fox News, *The Guardian*, *The Hill*, *Houston Chronicle*, *The Huffington Post*, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, *Politico*, *Rolling Stone*, *Salt Lake City Tribune*, *San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, Women's Health Policy Report, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

**<u>Importance of Timely Access</u>**

11.     The timeliness of our news reports is a fundamental part of their value to subscribers and to readers of our website. News runs on a daily cycle where events occur during the day and are reported that afternoon and evening. Newsmakers and reporters then sleep, and

the whole cycle starts all over again the next day. Especially in today's digital age, when news is delayed until the next day or longer it is devalued by the delay. A day late is generally too late because the news in a day-old complaint has already been overtaken by events in the current news cycle. Civil actions not reported when they are received by a court are thus effectively suppressed, less likely to prompt news coverage, and thus less likely to come to the public's attention.

12.     I compare news to bread, fresh on the day it is made, stale the next. So did U.S. District Court Judge Henry Coke Morgan, on the fourth day of a bench trial in *Courthouse News Service v. Schaefer*. "I think the point the plaintiff's making is that it has its news value when it's fresh… If you don't get it when it's fresh, it's like stale bread or stale anything else. So I think the plaintiff's point on that is well taken." A true and correct copy of the relevant trial transcript pages are attached as **Exhibit 1.**

13.     This truth – that news is fresh and the day it's made – is reflected in the traditional access provided to reporters in courthouses around the nation. It is also familiar to judges and litigators who practiced in those courts. In the appellate argument on another case on same issues raised in this case, brought against Missouri's court administrator, *Courthouse News v. Gilmer*, Ralph Erickson in the 8th Circuit Court of Appeals said during oral argument, "There was a time when -- and some in this room may remember it -- when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

14.     During that same hearing, Judge Erickson said to Missouri's lawyer: "What we're saying is that, Oh for about 230 years you can walk into a Missouri Courthouse into the clerk's office, and say, 'Hey, can I see what's been filed today?' And now all of a sudden you

can't, right?" This exchange took place during oral argument before the Eighth Circuit on April 14, 2022. A true and correct copy of the relevant experts from the oral argument transcript is attached as **Exhibit 2.**

15.     A similar statement was made by U.S. in the Western District of Texas who said during a hearing on the same issues in Texas, *Courthouse News v. Lavoie*: "I feel with absolute certainty, when I first started practicing law and probably for a large amount of that time ... the district clerk in Travis County didn't review a plaintiff's complaint -- I mean the plaintiff's petition for anything. It came in, it was pushed across the counter, it got file-marked originally with a hand stamp where they wrote in the time, and then we got really fancy and had a little machine you stuck it under that automatically had the time on it, and then they put a file-mark on it. And if a member of the press happened to be standing there and said 'I really want a copy of that,' they'd make a copy right away. Nobody looked at it to see if there was a problem or anything. That was the lawyer's problem." A true and correct copy of the relevant excerpts of this hearing transcript is attaches as **Exhibit 3**. 10:18:46

16.     That common tradition allowed reporters to report paper-filed complaints while they were fresh. Today, in a filing environment that includes both electronic courts and paper courts, Courthouse News reporters prepare the New Litigation Reports and identify new cases that may warrant an article on Courthouse News' website, Courthouse News' reporters visit their assigned court, or visit the court's website if remote online access to documents is available, at the end of each court day. They review all the general civil complaints filed with the court that day and determine which are of interest to Courthouse News' readers. Given the fast-moving nature of news, any delay in the ability of a reporter to review those new

complaints necessarily holds up the reporting on those actions for the New Litigation reports, the Courthouse News website, and our other publications.

**Traditional Press Access in State and Federal Courts**

17.   New civil complaints are an age-old part of the news cycle. While many new civil cases are routine matters, complaints are regularly filed that reflect noteworthy conflicts and other matters of importance to the public, involving disputes related to the environment, elections, bad medicine, dangerous products, agricultural and land use policy, schools, discrimination, and disasters. They also include the slice-of-life stories that appeal to all readers.

18.   When Courthouse News was formed in the 1990s, and as the news service grew, I visited federal and state courts throughout the country – including courts in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Maryland, Massachusetts, Nevada, New York, Illinois, Iowa, Texas, Washington, Michigan, Minnesota, New Mexico, Oklahoma, Louisiana, Missouri, Pennsylvania, New Jersey, Ohio, Oregon, South Carolina, Tennessee, Utah, Vermont, Virginia, Wisconsin – and observed similar traditions of access to newly-filed civil complaints shortly after they had crossed the intake counter. Each court had its own method of providing such access – some courts placed newly-filed, unprocessed complaints on carts or in bins or boxes where the press could review them; some courts allowed the reporters to go behind the counter to review newly-filed complaints; and some courts allowed the press to review the judge's courtesy copy of new civil complaints.

19.   In the age of paper records, state and federal courts around the country made new non-confidential civil complaints available to reporters shortly after they were received by the court, allowing reporters to see new complaints by the end of the day they were filed.  Courts provided timely access by making complaints available after they crossed the intake counter,

regardless of whether clerks had completed docketing or other clerical tasks. This allowed the press to report on new civil actions while they were still newsworthy and likely to capture the public's attention. The Ada County District Court ("Ada County") and the U.S. District Court for the District of Idaho were no exception.

20. When CNS encountered delays in paper-filing courts, it was because courts would not let reporters see newly filed complaints that were waiting for a clerk to "process" them. This kind of post-process access (or "no-access-before-process" policy) is what Courthouse News successfully challenged in the *Planet* litigation.

21. In 2011, the court clerk for Ventura County Superior Court in California insisted on a policy of docketing newly-filed paper complaints before reporters could see them, a policy that U.S. District Court Judge S. James Otero, in the Central District of California, first dubbed "no-access-before-process." The hard-fought litigation resulted in the entry of a permanent injunction enjoining the clerk's practice of restricting access to new civil complaints until after the completion of administrative processing. In 2021, after the Ninth Circuit published an opinion affirming Judge Otero's ruling as to that practice, the district court entered an amended judgment, attached as **Exhibit 4**, which permanently enjoined Planet "from refusing [] to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed."

22. Despite the challenge inherent in working with paper complaints – only one person can handle the document at any one time – reporters and court staff found ways to work cooperatively so that everyone could do their jobs.

23.     Providing timely access in an e-filing court is even easier.  An e-filed complaint is simply a .pdf document to be viewed and downloaded.  Nothing prevents a clerk from processing a complaint at the very moment members of the press or public are reading it or, depending on the clerk's schedule, well after public access.  Moreover, courts can and regularly do require filers to enter into the e-filing interface whatever information the court needs to automatically sort and filter new filings into categories based on that information, including the automatic segregation of confidential filings.

24.     When the federal courts converted to e-filing , they kept the tradition of access in place by giving press and public access to new filings through the PACER system shortly after their receipt by the court, thus allowing the press to see new complaints on the day they were filed. (PACER stands for "Public Access to Court Electronic Records.") As state courts transitioned to e-filing, many also made new filings available shortly after they were received by the courts, and before clerks had completed clerical tasks with respect to the new complaints. At these courts – state and federal – new civil complaints are made available to the public moments after they are received by the court, even if the complaint is filed after hours or on the weekend. The clerks complete their clerical work afterwards.

**Delays in Access Resulting from Clerical Processing.**

25.     Other state courts, including the district courts for the state of Idaho ("Idaho Courts"), took a different approach when they transitioned to e-filing, often not mindful of how new administrative rules and procedures would impact the press' ability to cover the courts. These courts withhold access to new e-filed civil complaints until after court clerks process and "accept" them. Unfortunately, most courts struggle to complete these clerical tasks for all of the day's complaints on the day of filing, which means that delays that impede news coverage

inevitably result when clerks withhold access to new filings until after they complete administrative tasks, such as processing and "acceptance." While the new complaints sit in a processing queue, journalists are required to wait for the completion of clerical work that ebbs and flows in its efficiency depending on sickness, training, staff gatherings, staffing levels, holidays and difficulties with the processing software, among the almost myriad events that can delay the completion of clerical work.. Courthouse News has seen this in court after court. Just as it has seen that access in courts that do not delay for processing becomes virtually perfect. The delays in access that result from withholding new filings from the public until after clerical processing are the subject of this lawsuit.

26.     Delays in access to new e-filed civil complaints resulting from clerical processing are easily avoided. Not only do many state and federal courts use e-filing systems that do not withhold access for processing, but the e-filing systems used by so-called "process-first" courts can easily be configured to provide timely access to new complaints before clerical processing. The Idaho Courts adopted a "process-first" system when they migrated to e-filing. Unfortunately, Defendant refuses to adopt one of the readily-available solutions that would provide access at or very near the time of submission and allow clerks to complete processing afterwards.

**Idaho Courts Conversion to e-Filing and Resulting Delays in Access**

27.     Courthouse News has covered the Idaho Courts since approximately 2008, when it began covering the Ada County district court. Courthouse News currently covers all Idaho Courts statewide. This coverage included the period of time during which the Idaho Courts converted from paper-filing to e-filing, beginning in 2015 and concluding in 2018.

28.     The Idaho Courts use e-filing and case management software provided by a third party vendor by the name of Tyler Technologies ("Tyler") – the Tyler Odyssey software suite. The Idaho Courts have branded their use of the Tyler Odyssey software suite as "iCourt."

29.     The Idaho Courts have a website dedicated to iCourt (https://icourt.idaho.gov/). This website contains detailed information concerning the Idaho Courts' conversion to e-filing and how to use the Tyler Odyssey system to initiate new case filings. True and correct screenshots from the iCourt website are attached as **Exhibit 5** ("iCourt Project Overview and FAQs" (https://icourt.idaho.gov/projfaq)), **Exhibit 6** ("File & Serve: Electronic Filing Overview (https://icourt.idaho.gov/efileoverview)), and **Exhibit 7** (e-Filing FAQs (https://icourt.idaho.gov/efile-faqs )).

30.     Courthouse News' attempts at resolving the access delays resulting from the Idaho Court's conversion to e-filing date back to 2016, when the Idaho Courts began their migration to e-filing. On April 28, 2016, Courthouse News' counsel sent a letter to then Ada County District Clerk, Christopher Rich, to preserve contemporaneous access to new complaints via a press review queue (the details of which are discussed below). A true and correct copy of this letter, without the enclosures, is attached as **Exhibit 8**.

31.     In response, on May 6, 2016, Mr. Rich wrote to Courthouse News' counsel and Interim Administrative Director of Idaho Courts, Justice Linda Copple Trout, explaining that the Ada County court provided Courthouse News with "same day access to the paper record," and that Courthouse News "is [now] seeking same day access to the digital record[s] […] via a public terminal that would have access to a queue specifically designed for this purpose." Mr. Rich concluded his letter by referring Courthouse News' request to the office of the Administrative Director of Courts ("Idaho AOC"), stating: "As Clerk, I am not in a position to assist

**DECL. OF WILLIAM GIRDNER ISO CNS'S**
**MOTION FOR SUMMARY JUDGMENT**          11

[Courthouse News]. Hence this introduction to the parties that can resolve the matter." A true and correct copy of Mr. Rich's letter is attaches as **Exhibit 9**. Subsequent communications between Courthouse News' counsel and counsel for the Idaho AOC did not result in a clear "yes" or "no" to Courthouse News' request.

32.     Courthouse News renewed its request for contemporaneous access to new e-filed civil complaints through a press review queue through a letter to Defendant dated June 14, 2021. The letter informed Defendant that delays in access to new civil complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and persistent. A true and correct copy of this letter is attached as **Exhibit 10.**

33.     In response, Defendant did not dispute that there were delays between when new complaints were received by the court and when they were "accepted" by court clerks.  But she said her office's "goal" was for "the average time from submission to acceptance" to not exceed 24 hours." She claimed that her review of court records "did not find a statewide or Ada county delay that was currently ongoing and persistent." She concluded by stating: "I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing by the court clerks' offices." A true and correct copy of this letter is attached as **Exhibit 11.**

**Timely Access in E-Filing Courts:  The Auto-Accept Method**

34.     In over 40 years of journalism, including numerous in-person visits to courthouses and clerk's offices all over the country, as well as conversations with court officials at all levels, from intake clerks in the clerk's office to the court's presiding or chief judge, I have observed that it is entirely feasible to provide the press with contemporaneous access to newly filed civil complaints.  That is true whether the filing medium is paper or electronic.

35.     The so-called "auto-accept" e-filing model is familiar to lawyers and judges because it is the model used by virtually every federal district court in the country.  "Auto-accept" simply means that the court automatically "accepts" new filings into its case management system (versus having a clerk move the new filing into the case management system after completing various clerical tasks and "accepting" the filing).  Clerks then complete processing *after* the new complaint has been placed in the case management system, i.e., the public docket. Confidential filings are filtered out based on information the filer provides in the e-filing interface, and non-confidential filings are available right after the court receives them, using whatever public access functionality the court uses.  Federal courts provide remote online access to registered users through the PACER system.

36.     Many state courts also use an "auto-accept" system.  For example, Hawaii provides access to new e-filed civil complaints through the "eCourt Kokua" portal, a homegrown system developed by the Hawaii courts that automatically accept new filings upon receipt. Through this system, Hawaii provides public access to court documents locally on public terminals located at the courthouse for free, and remotely online based on registration and a yearly payment of $500. This electronic access is a continuation of the paper access in Hawaii's island courts where new civil actions were made public as soon as they crossed the counter.

37.      Similar to Hawaii, the state courts in Connecticut also developed and maintain a statewide, homegrown auto-accept e-filing and access systems that provides public access to new court filings as they are received by the court.

38.     The state courts in Nevada use the Odyssey e-filing and case management system from Tyler Technologies. In 2019, the Nevada courts adopted an auto-accept policy for new filings and configured its e-filing and access system accordingly. Prior to adopting the statewide

auto-accept policy, the Eighth Judicial District Court in Las Vegas provided access to new e-filed civil complaints through a press review queue. Now, that court and the other Nevada judicial districts automate processing and "acceptance" of new filings just like most federal courts, with new filings made available to the public shortly after receipt. A true and correct copy of a Notice from Nevada's Eighth Judicial District Court addressing the change to auto-acceptance is attached as **Exhibit 12**. A true and correct copy of an email exchange between Courthouse News bureau chief, Chris Marshall, and a clerk at the Eighth Judicial District Court discussing this topic is attached as **Exhibit 13.**

39.    The state courts in Vermont also use the Odyssey electronic filing and case management system developed by Tyler.  All Vermont trial courts began automating acceptance of new filings at the end of 2021, within three weeks of the District of Vermont's decision in *Courthouse News Service v. Gabel*, 2021 WL 5416650 (D. Vt. Nov. 19, 2021), in which Judge Christina Reiss enjoined the clerks "from delaying public access to electronically filed civil complaints until the Vermont Superior Courts' pre-access review process is complete."  Non-confidential e-filed complaints in the Vermont Superior Courts, like those in Nevada's Eighth Judicial District, are now made available to the public and press immediately upon receipt for filing without prior review, docketing, and acceptance by court staff.

40.    Indeed, the day before the auto-accept system kicked into gear in Vermont, the Judiciary website posted a memo to all members of the Vermont bar that stated: "Beginning on Friday, December 10, 2021, initial civil complaints that are submitted using the Odyssey File and Serve code 'initial filing' will be automatically entered in the Judiciary's electronic case management system without prior staff review and acceptance.  Previously, all electronic filings, including initial complaints and associated documents in such cases, were reviewed by staff

before being entered into the electronic case management system." A true and correct copy of

the memo is attached as **Exhibit 14,** and is available online at

https://www.vermontjudiciary.org/sites/default/files/documents/Memo%20to%20Bar%20-
%20December%2013%202021%20-%20Clerk%20Review%20of%20Electronic.

41.     Currently a shift in policy appears to be underway in the Vermont state courts that

achieves the same timely access but through Tyler's press review tool rather than Tyler's auto-

accept software. On December 2, 2022, the Vermont courts issued a press release indicating they

are changing their access procedures by adopting a press review queue. The press release states:

> [T]he Vermont Judiciary's Public Access Terminals will feature a new site called
> the Press Review Tool (PRT). This site will display new electronically filed Civil
> Division Complaints in the period between when the filing is submitted and when
> it is accepted by court staff. This tool will be available to all members of the
> public with no registration or fees.

The implication from this press release is that the Vermont courts are no longer using Odyssey's

auto-accept functionality, but this is not currently known to Courthouse News. A true and correct

copy of the press release is attached as **Exhibit 15.**

42.     Other vendors supplying e-filing and public access systems with auto-accept

functionality include OnLine Information Systems ("OLIS"), which provides a statewide auto-

accept e-filing and public access system for Alabama, and Tybera, which provides a statewide

auto-accept and public access system for Utah.

43.     Of course, complaints filed in "auto-accept" courts are still subject to clerical

review and docketing by court staff.  The only difference is that in an "auto-accept" court, the

processing happens after the complaint is already in the court's case management system. Such

courts are capable of addressing or correcting clerical errors through basic administrative rules

and processes. For instance, this Court's (D. Idaho) "Electronic Case Filing Procedures" address

"Docket Entries and Corrections of Docket Entries" at Section 17. A true and correct copy of this Court's Electronic Case Filing Procedures is attached as **Exhibit 16**.

**Timely Access in E-Filing Courts: Press Review Queues and other Pre-Acceptance Methods**

44.     Courts that do not automatically accept new filings into their case management systems through an "auto-accept" system typically rely on court clerks to manually process and "accept" them into their case management systems.  This "clerk-acceptance" model is not incompatible with timely access as long as courts do not withhold access while the filings are sitting around waiting for a clerk to process and "accept" them. In other words, as long as the clerks provide access before processing, which inevitably takes times.

45.     The New York state courts provide pre-acceptance access to new e-filed civil complaints through the New York State Courts Electronic Filing ("NYSCEF") website: https://iapps.courts.state.ny.us/nyscef. From this website, anyone can search for cases and documents, either using a registered account or as a guest:



Searching as a guest, users can search for cases e-filed on a selected date:



and the results will include any documents filed on that date, including complaints that have not

yet been processed or "accepted" by the court.  These cases are listed with the notation "Not

Assigned" in place of a case number, as shown on the following page:



46.          A "Not Assigned" link leads to a case information screen that shows the case status is "pending" and includes a link to the complaint, which can be viewed and downloaded without any charge:



47.     Complaints that have not yet been processed include a header that reads:

"CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY

CLERK," and a footer that reads:

> This is a copy of a pleading filed electronically pursuant to New York State court rules … which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk.  Because court rules… authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Below is an excerpt from a complaint filed in New York Supreme on December 9, 2022,

that was viewable on December 9 with the pre-review language on the header (top

graphic) and footer (bottom graphic) and with the index number listed as "unassigned":



48.    Once a new complaint is processed by the clerk's office, the disclaimers are

removed and replaced with a date and time stamp, and the assigned case number is displayed in

the header:

```
FILED: NEW YORK COUNTY CLERK 12/09/2022 06:52 PM        INDEX NO. 160556/2022
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 12/09/2022


                   SUPREME COURT OF THE STATE OF NEW YORK
                   COUNTY OF NEW YORK
                   -----------------------------------------------X   SUMMONS
                       ELMER VICTORIO MEJIA,                           Index No.:
```

49.    All 27 New York counties have implemented electronic filing now, and they post

e-filed complaints to the New York State Courts Electronic Filing website

(https://iapps.courts.state.ny.us/nyscef/HomePage) immediately upon receipt, prior to a case

number assignment or any manual review by the clerk's office, in the manner described above.

**DECL. OF WILLIAM GIRDNER ISO CNS'S**
**MOTION FOR SUMMARY JUDGMENT**          **20**

50.     The New York state courts' implementation of pre-acceptance access resulted from litigation commenced by Courthouse News. In 2016, Courthouse News filed an action against Manhattan's state court clerk Milton Tingling in the Southern District of New York challenging the court's practice of restricting access to new e-filed civil complaints until after court clerks manually review and process them. In opposition to Courthouse News' application for a preliminary injunction, defendant Tingling made many of the same arguments defendant Omundson makes here. Tingling argued, among other things, that clerk review of new complaints was "critical" to establish compliance with court rules and "assure attorney compliance" with ethical obligations. Attached as **Exhibit 17** are relevant excerpts of the Tingling's brief in opposition to Courthouse News' application for preliminary injunction which he made this argument.

51.     On December 16, 2016, the Southern District of New York granted CNS's motion for a preliminary injunction enjoining the Clerk from denying access to newly filed civil complaints until after clerical processing and requiring him to provide timely access to those documents upon receipt. The New York Clerk complied with the injunction by making complaints available through the New York State Courts Electronic Filing ("NYSCEF") web site immediately after the complaints are e-filed and before any clerk review or administrative processing, as discussed above. This new functionality was up and running within six weeks of the injunction being issued and has worked very well.  Since then, all other New York State Court Clerks that have adopted e-filing have begun using the same system of access.

52.     On January 27, 2017, a notice on the NYSCEF web site stated that effective as of that date, "e-filed documents in newly initiated cases in New York County shall be available immediately for online public viewing" through the NYSCEF site and that "[s]uch filings will be

available for immediate online public viewing PRIOR to any examination of the document or assignment of an index number to the matter by the Office of the New York County Clerk." Attached as **Exhibit 18** is a true and correct copy of a screen capture of a notice that appeared on the NYSCEF site on January 27, 2017.

53.     In the nearly six years that Courthouse News has been covering the New York courts using the NYSCEF system, Courthouse News has not experienced, nor is it aware of, any problems caused by the New York courts providing pre-acceptance access to new e-filed civil complaints.

54.     Many other courts provide pre-acceptance access to new filings through a press review queue (aka review queue, media inbox, media access portal, etc.). Press review queues are, in lay terms, electronic in-boxes where new e-filed complaints can be viewed upon their receipt by the court through the court's e-filing system, without the delays that naturally result when access is withheld until the completion of administrative processing or "acceptance." Courts that provide access to new filings in this manner do so through a URL, available to users either remotely online, locally at the courthouse, or both. Courts across the nation utilize numerous different configurations and methods for providing pre-acceptance access through a press review queue. Functionally, press review queues provide the same type of access as that provided by the New York state courts through NYSCEF, i.e. at the time of receipt or shortly after, but the press review queues require registration for access, whereas New York does not require registration.

55.     Before discussing the numerous different courts that provide pre-acceptance access to new e-filed complaints through press review queues and the ways in which they do so, it is important to note that the term "press review queue" is a bit of a misnomer because pre-

acceptance access is not limited to only members of the press. As a practical matter, in my 40 years of covering the courts, members of the press were the ones who sought to review the flow of new complaints every day, searching for news. This may account for the term "press review queue" or other synonymous labels used for this type of access, such as "media in-box" of "media portal."

56.     E-filing vendor Tyler Technologies offers its client courts a "Press Review Tool" that provides pre-acceptance access to new e-filed complaints once a filer submits the document to the court through the Odyssey File & Serve e-filing system. Courts using Tyler's Press Review Tool include every mandatory e-filing court in California that uses Tyler's File & Serve e-filing system (including the Superior Courts for the counties of Fresno, Kern, Mendocino, Monterey, Napa, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Sonoma and Stanislaus), multiple e-filing courts in Georgia, and the Travis County District Court in Austin, Texas.

57.     The California counties of Butte, Kings, Merced, Sutter, Yuba and Yolo also use Tyler's Odyssey File & Serve e-filing system, and have all committed to providing pre-acceptance access to new e-filed  civil complaints pursuant to settlement agreements with Courthouse News reached earlier this year in litigation pending in the U.S. District Court for the Eastern District of California. Per the terms of the settlement agreements, the courts have between 4 to 6 months (depending on the court) to configure and implement their press review queues. Tue and correct copies of the notices of settlement identifying the implementation dates are attached as **Exhibits 19 & 20**.

58.     In prior litigation in the U.S. District Court for the Northern District of California, which concluded in 2021, the California counties of San Mateo, Santa Cruz and Sonoma also

agreed to provide pre-acceptance to new e-filed civil complaints through their Tyler Odyssey File & Serve e-filing systems. The terms of the settlement agreements afforded those courts six months to configure and implement their press review queues. True and correct copies of the stipulations regarding dismissal filed in those cases are attached as **Exhibits 21 & 22** (Taniguchi and Calvo Notices).

59.     The Texas state courts also use Tyler's File & Serve for their statewide e-filing system. The current contract between the Texas Office of Court Administration (OCA) and Tyler is available on the Texas Judicial Branch website: https://www.txcourts.gov/jcit/electronic-filing/. In 2022, the OCA and Tyler amended the e-filing agreement by expressly memorializing the Texas clerks' ability to use the Tyler Auto-Accept and Press Review Tool features. This amendment is also on the Texas Judicial Branch website, and a true and correct copy of this amendment is attached as **Exhibit 23**.

60.     In June 2022, the Travis District Court in Texas (Austin) agreed to provide on-receipt access to new e-filed petitions by implementing the Press Review Tool as a means of resolving litigation commenced by Courthouse News against the Travis County District Court Clerk in the United States District Court for the Southern District of Texas. On October 2022, after approximately four months of configuration and testing, the Travis District Court began providing pre-acceptance access to new petitions through the Press Review Tool.

61.     Courthouse News has not experienced, nor is it aware of, any problems caused by any of the Tyler courts (in California, Georgia, Nevada or elsewhere) providing pre-acceptance access to new e-filed civil complaints.

62.     I understand from discovery in this case and in other recent litigation that Tyler is providing its court clients with a quote of $108,000 per year for statewide use of its Press Review

**DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT**          24

Tool. Although it appears Tyler is now attempting to profit from its Press Review Tool, I understand Tyler historically provided the press review queue at no cost to courts that requested it.

63.     I communicated directly with the court clerks or officials in Fresno, Kern, Monterey, Santa Barbara and Napa Superior Courts in California. I asked them if their courts had paid any fee for the installation of the press queue and they informed me they had not. In addition, the counsel for the clerk in Santa Clara Superior informed Courthouse News' counsel that the court had not paid an extra fee for installing the press queue software. None of these court officials suggested that the transition to the press queue functionality had been difficult or disruptive. Attached as **Exhibit 24** are true and correct copies of excerpts from emails with clerks or staff for the California Superior Courts for the Counties of (1) Monterey; (2) Santa Barbara; (3) Kern; (4) Napa; and (5) Santa Clara.

64.     The e-filing vendor Journal Technologies provides its version of pre-acceptance access, called a "Media Access Portal," or "MAP" to the California Superior Courts of Alameda, Los Angeles, Placer and Riverside.

65.     The Los Angeles Superior Court ("LASC") MAP is a paid subscription-based service available to registered users online at https://media.lacourt.org/#/home. From this page, the "LASC Media Access Portal (MAP) Instructions" link directs to a .pdf copy of the User Manual: (https://media.lacourt.org/pdf/User_Guide_MAP.pdf).  At page 7, the LASC MAP User Guide states:

> Some important MAP features niclude the following:
>
> 1.  UNFILED UNLIMITED CIVIL COMPLAINTS – This feature allows Tier 2 users to view submitted Civil e-Filings which have not yet been clerically processed. These documents may not be available for display until two hours after submission. Search results are provided chronologically and lists two months of the most current e-Filings.

DECL. OF WILLIAM GIRDNER ISO CNS'S
MOTION FOR SUMMARY JUDGMENT                    25

The subscription plans for the LASC MAP are reflected on a media relations bulletin published

on the LASC website

([https://www.lacourt.org/newsmedia/UI/pdf/WEBSITEINFORMATIONREGARDINGMAP070](https://www.lacourt.org/newsmedia/UI/pdf/WEBSITEINFORMATIONREGARDINGMAP070)

82021.pdf), a true and correct copy of which is attached as **Exhibit 25.** Users of the MAP must

comply with LASC's Restrictions on Access and Use, a true and correct copy of which is

attached as **Exhibit 26.**

66.    At Alameda Superior Court, the public access link on the court's website is called

"Media Access Portal" (MAP). Like the other Journal Technology courts, it provides online, pre-

acceptance access to new civil complaints. Like LASC, Alameda Superior requires registration

for its MAP. The access, however, is free. At Riverside and Imperial Superior Courts in southern

California, access to their MAPs does not require registration, and access is free. Courthouse

News has not experienced, nor is it aware of, any problems caused by any of the Journal

Technologies courts (i.e., LASC, Riverside, Imperial or Alameda) providing pre-acceptance

access to new e-filed civil complaints.

67.    The vendor Granicus supplies e-filing and public access systems used by the

Florida and Arizona state courts to provide on-receipt access.

68.    The Florida state courts provide pre-acceptance access to new e-filed civil

complaints through version of a press review queue called the Florida Courts e-Filing Portal

("Portal"), available online at: [https://www.myflcourtaccess.com/authority/](https://www.myflcourtaccess.com/authority/).  This statewide

review queue is available at no charge to registered users who create a Portal account with their

name, address, username, password and other requested information. The registration process is

open to a broad portion of the public:



69.     The Florida courts implemented the Portal in response to litigation initiated by Courthouse News in the U.S. District Court for the Northern District of Florida, Case No. 4:22-cv-00106-MW. That case involved a First Amendment claim based on the delays in access resulting from the Florida courts' practice of restricting access to new e-filed civil complaints until after the completion of administrative processing. After the district court granted Courthouse News' motion for a preliminary injunction earlier this year, the parties participated in a mediation that resulted in a settlement. As part of that settlement, the Florida courts agreed to provide access to new e-filed civil complaints prior to clerk review or "acceptance," and within five minutes of receipt. The Florida courts launched the Portal within 75 days of execution of the settlement agreement. Courthouse News has not experienced, nor is it aware of, any problems caused by the Florida courts providing pre-acceptance access to new e-filed civil complaints.

70.     Like the Florida courts, the Arizona courts provide statewide pre-acceptance access through a press review queue provided by e-filing vendor Granicus. This Arizona press review queue is called the Public News Media File Share Portal ("News Media Portal"). It

requires registration, a user name and password to enter, and be accessed either remotely online or at local courthouses through the eFile AZ website (https://efile.azcourts.gov/). The News Media Portal gives subscribers on-receipt access to new civil complaints filed anywhere in Arizona. Subscribers are required to pay a flat fee of $8,000 per year.

71.     The News Media Portal was developed by vendor Granicus at the behest of the Arizona Administrative Office of the Courts in response to two letters I sent requesting on-receipt access. The administrator, Dave Byers, offered to provide all media with on-receipt access throughout Arizona for a monthly fee for copies and the annual flat fee of $8,000.  He also accepted my offer to pay any programming cost for development of the statewide press queue. The Arizona state courts ultimately billed Courthouse News the amount of $12,500 as the cost of developing the News Media Portal, from scratch, through Granicus. The Arizona courts went live with the News Media Portal in September 2021. Courthouse News has not experienced, nor is it aware of, any problems caused by the Arizona courts providing pre-acceptance access to new e-filed civil complaints.

72.     On July 14, 2021, the Arizona Supreme Court issued Administrative Order 2021-110, which is available on the Arizona state court website (https://www.azcourts.gov/orders/Administrative-Orders-Index/2021-Administrative-Orders), and attached hereto as **Exhibit 27.** The order demonstrates how a state supreme court can authorize and facilitate pre-acceptance access in response to a request from the media.

73.     Some courts develop and provide pre-acceptance access through in-house or homegrown e-filing and access systems. Examples of courts that have developed their own homegrown pre-acceptance access solutions include the California Superior Courts for the

counties of Orange and San Diego (using software they received from the state of California and now maintain in-house) and San Francisco (using software developed internally).

74.     The Orange County Superior Court ("OCSC") provided pre-acceptance pursuant to a settlement with Courthouse News in the *CNS v. Yamasaki* (C.D. Cal.) case.  In *Yamasaki*, Courthouse News challenged OCSC's practice of restricting access to new e-filed civil complaints until after the completion of administrative review and processing. The district court denied Courthouse News' motion for preliminary injunction, and ruled in favor of the defendant clerk on the merits following summary judgment and a summary bench trial. On February 24, 2020, the Ninth Circuit vacated the order denying Courthouse News' motion for preliminary injunction and all other orders on the merits, and remanded the case "for further proceedings consistent with this court's opinion in *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020)" ("*Planet III*").  *Courthouse News Service v. Yamasaki*, 950 F.3d 640 (9th Cir. 2020).

75.     Defendant Yamasaki argued in support of his motion for summary judgment, and throughout the litigation, that, among other things, "OCSC's practice of reviewing complaints for confidentiality and compliance is narrowly tailored to serve the governmental interest in protecting the privacy of litigants." *See* Dkt. 75, p. 14, Case No. 8:17-cv-00126-AG-KES (C.D. Cal.). However, after the Ninth Circuit issued its opinion in *Courthouse News Serv. v. Yamasaki,* OCSC agreed to provide pre-acceptance access to new e-filed civil complaints. The parties agreed OSCS would have nine months to implement an "Electronic Media Inbox" into which new electronically submitted will be deposited upon receipt by OCSC for viewing by members of the media. Attached as **Exhibit 28** is a true and correct copy of the Notice of Settlement filed by Courthouse News in the Yamasaki matter. OCSC went live with its Civil Unlimited Media Access Portal, and the parties dismissed the litigation, in October 2021.

76.     The OCSC Media Access Portal is accessible through the OCSC website ([https://map.occourts.org/](https://map.occourts.org/)), and requires the registration of an account with a username and password. OCSC charges a $500 annual fee "to defray maintenance costs associated with the Portal." The Media Access Portal website states:



Courthouse News has not experienced, nor is it aware of, any problems caused by OCSC providing pre-acceptance access to new e-filed civil complaints. A true and correct copy of OCSC's "Frequently Asked Questions" page for the Media Access Portal is attached as **Exhibit 29.**

77.     Although the vast majority of federal district courts provide access to new complaints through PACER, a small number of federal district courts provide access to them through a press review queue, including the U.S. District Courts for the Eastern District of California, Northern District of Georgia, Northern District of New York, Western District of Pennsylvania, and Middle District of Tennessee.

78.     As noted above, courts provide access to their press review queues remotely online, at local courthouses, or both. Courts that limit access to their press review queues to terminals located at the courthouse or computers connected to the court's Wi-Fi network include the California Superior Courts for the counties of San Francisco (through a homegrown e-filing

system)  and San Luis Obispo (through Tyler's File & Serve e-filing system and Press Review Tool).

79.     While some state courts have agreed to provide pre-acceptance access only in response to litigation, many courts have agreed to provide pre-acceptance access in response to simple requests from Courthouse News, as demonstrated by the Arizona state courts.  Over the past several years, I have written to numerous court clerks and judges at courts urging them to implement press review queues, either through vendors or through their homegrown systems, and explaining the problem of delayed access caused by withholding new complaints until after they are docketed.  In response, many of these courts agreed to implement press queues by working with their vendor or configuring their homegrown systems. For instance, the California Superior Courts for the counties of Fresno, Kern, Napa, Mendocino, Monterey, San Luis Obispo, and Santa Barbara voluntarily put press review queues in place using Tyler's Press Review Tool software.  The California Superior Court for the county of San Diego voluntarily put a press queue in place through their in-house CCMS system. This is just a limited sample of the courts that agreed to provide access either in response to requests from Courthouse News or of their own accord without any request known to Courthouse News.

80.     In discovery conducted in this litigation Courthouse News has been asked to identify, among other things, how different courts provide access to new e-filed civil complaints and of courts.  Attached to the Declaration of Jonathan Fetterly are Courthouses News' Amended Responses to Defendant's Second Set of Interrogatories, and relevant excerpts from my deposition testimony as Courthouse News' 30(b)(6) deposition. I incorporate those responses and testimony into my declaration.

81.     In Chicago's Cook County Circuit Court, I had gone behind the counter in about 2003 and found traditional access where reporters could check the very last complaints filed that day, stay as long as a supervisor was present, and use the clerk's copy machine to make copies of important cases. In Cook County's move to e-filing in 2018 using Tyler's Odyssey File & Serve e-filing system, Clerk Dorothy Brown took away traditional access and pushed the press corps, who worked on the floor below the clerk's office, behind processing. In 2018, in the *Brown* case, U.S. District Court Judge Matthew Kennelly of the Northern District of Illinois enjoined her no-access-before-process policy, before the Seventh Circuit dismissed the case on abstention grounds.

82.     In the district court, defendant Brown argued in support of her policy that her office "needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identify information – that may not be electronically files…." As District Judge Kennelly observed in his memorandum and order, "[t]he Court found unpersuasive that it was *Brown's* duty to ensure that such documents are not included in e-filings; applicable Illinois Supreme Court rules place that burden on filing parties and expressly state that court clerks are not required to review pleadings for compliance with that rule." Judge Kennelly continued, "[a]nd even if this responsibility actually existed, Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until acceptance is narrowly tailored to that interests," and "has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed." A true and correct copy of Judge Kennelly's memorandum and order is attached as **Exhibit 30.**

83.    Even though Judge Kennelly's order was reversed by the Seventh Circuit on abstention grounds, that abstention ruling stands alone as an outlier, and numerous federal district and circuit courts have declined to follow it, including this Court and most recently the Eighth Circuit and Tenth Circuit. The Seventh Circuit did not address the merits of Judge Kennelly's order.

**The Efficacy of the Auto-Accept and Press Review Queue (or Other Pre-Acceptance)**
**Solutions**

84.    The great number and variety of e-filing systems programmed to provide timely access to new civil complaints is evidence of the simple truth that it is highly practicable to give reporters access to new e-filed civil action as they are received so that they can be viewed on the day they are filed, just as it was with paper filings. Much of the data entry traditionally associated with post-filing docketing is now entered by the filer before he or she submits the filing. Based on the information supplied by the filer, state courts and their e-filing systems are fully capable of filtering and sequestering non-public filings, while making only public filings – or only specific types of filings, such as complaints in particular types of cases – available to the press or public. Confidential or sealed complaints are electronically designated as such by the filer and sorted aside by the EFM, so they cannot be seen either in the press queue or the public docket.

85.    This system works. In California, for example, non-commercial unlawful detainer complaints are confidential for the first 60 days by state statute, and a lot of these complaints are filed in California's superior courts. Yet we do not see these actions in the press review queues currently operating in the superior courts that provide them. Nor do they appear in the equivalent systems by non-Tyler courts, such as the Los Angeles Superior Court. Courthouse News has not

experienced, nor is it aware of, any issues or problems arising or resulting from state courts providing pre-acceptance access to new e-filed civil complaints.

86.     These different systems yield a common result – access comparable to the traditional access that used to be available to reporters in the paper era, in both federal and state courts in Idaho and elsewhere across the nation.

87.     This litigation and the litigation that has preceded it stems from a conviction that the foundation stone of the American courts is their open and public nature. That foundation stone is damaged by the delay imposed by defendants here on public access and the resulting damage to the news about the courts. It is out of that conviction that I have undertaken a decade-long effort to reverse the delays imposed on access by individual clerks in their transition to a new technology, because news, like bread, is fresh when it's made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th day of December, 2022.

_____

William Girdner

# EXHIBIT 1
# GIRDNER DECLARATION

540

```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                      NORFOLK DIVISION


 3


 4   COURTHOUSE NEWS SERVICE,        )
                                     )
 5              Plaintiff,           )
                                     )
 6   v.                              )    Civil Action No.:
                                     )      2:18cv391
 7   GEORGE E. SCHAEFER, in his      )
     Official Capacity as Clerk of )
 8   the Circuit Court for Norfolk,)
     Virginia,                       )
 9                                   )
     JACQUELINE C. SMITH in her      )
10   Official Capacity as Clerk of )
     the Circuit Court for Prince    )
11   William County, Virginia,       )
                                     )
12              Defendants.          )


13


14              TRANSCRIPT OF PROCEEDINGS


15                  (Bench Trial)
                     Volume 4
16                  Pages 540-599


17                 Norfolk, Virginia
                  February 5, 2020

18


19


20   BEFORE:   THE HONORABLE HENRY C. MORGAN
                United States District Judge

21


22


23


24


25
```

Paul L. McManus, RMR, FCRR Official Court Reporter

541

```
 1   Appearances:

 2         BRIAN CAVE LEIGHTON PAISNER LLP
              By: WILLIAM HIBSHER
 3                HEATHER GOLDMAN
                  BRYAN HARRISON
 4         -- and --
           WILLCOX & SAVAGE
 5            By: CONRAD M. SHUMADINE, ESQUIRE
                  Counsel for Plaintiff
 6
           THOMPSON McMULLAN PC
 7            By: WILLIAM DANIEL PRINCE, IV
                  MICHAEL GORDON MATHESON
 8                Counsel for Defendants

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

542

```
1                        P R O C E E D I N G S

2

3           (Proceedings commenced at 10:04 a.m. as follows:)

4

5           COURTROOM DEPUTY CLERK:  Civil Action No. 2:18cv391,

6   Plaintiff Courthouse News Service v. George E. Schaefer, et al.

7           For the plaintiffs, Mr. Hibsher, Ms. Goldman, Mr.

8   Harrison and Mr. Shumadine, are you ready to proceed?

9           MR. SHUMADINE:  We're ready.

10          COURTROOM DEPUTY CLERK:  For defendants, Mr. Matheson

11  and Mr. Prince, are you ready to proceed?

12          MR. PRINCE:  Good morning.  We're ready.

13          THE COURT:  All right.  I'll hear first from counsel

14  for the plaintiff.  I believe the plaintiff indicated you wanted

15  to be notified when you reached 10 minutes remaining?

16          MS. GOLDMAN:  Correct, Your Honor.

17          THE COURT:  Josh, have you got that?

18          LAW CLERK:  Yes Judge.

19          MS. GOLDMAN:  Good morning, Your Honor.

20          THE COURT:  Good morning.

21          MS. GOLDMAN:  This case is about a fundamental

22  Constitutional right, the First Amendment, and the right of the

23  press and the public to contemporaneously access new civil

24  complaints, a right that was violated in this case by

25  defendants' policies and practices of insisting on complete
```

560

```
1   there and made the necessary adjustments to be ready for trial
2   as soon as the court was ready is, I wish we had more people who
3   did it that way instead of wanting to postpone things, as we
4   take great pride in trying to move cases along.  But the more
5   help we get from the attorneys, the better we can do it.
6             MR. PRINCE:  That's life in the Eastern District of
7   Virginia.
8             THE COURT:  Both parties should be commented for that.
9             MR. PRINCE:  Thank Your Honor.
10            We've listened to Your Honor's comments throughout the
11  course of this trial and at the summary judgment hearing we had
12  a couple weeks ago.  You've made a couple things clear.  You
13  think that this is a First Amendment case.  You believe the
14  First Amendment right of access applies to newly filed civil
15  complaints.  As Your Honor knows, we disagree with that.  Our
16  position is the right of access under the First Amendment does
17  not apply to newly filed civil complaint.  There's a common law
18  right of access.  But I'm not going to belabor that point
19  because you've been clear that you believe that there is a First
20  Amendment right here.
21            THE COURT:  I haven't been persuaded otherwise, unless
22  you can do so.  I think that the point the plaintiff's making is
23  that it has its news value as soon as it happens.  We're all
24  going through that.  Anybody who's looked at the current
25  situation in Iowa illustrates what that means.  If you don't get
```

561

1  it when it's fresh, it's like stale bread or stale anything

2  else.  So I think the plaintiff's point on that is well-taken.

3           MR. PRINCE:  And I think that my clients would more or

4  less agree with that.  They are public servants.  They believe

5  in transparency.  They believe in open government.  They operate

6  their clerk's offices that way.  And it goes without saying,

7  they are, they recognize the importance of the First Amendment,

8  which is what's made this case very difficult for them.  Because

9  as public servants and the custodians of a large volume of

10 public records, they're the custodians of all civil and criminal

11 court records filed in the circuit courts in their

12 jurisdictions.

13          THE COURT:  Well, it's a very important job.  And I

14 think that the dispute here is really very narrow.  I think

15 we're talking about the difference between same-day and one

16 court day.  And that's the difference.

17          MR. PRINCE:  So Your Honor, you know, I don't want to

18 spend my time on the First Amendment issue.  We've made our

19 arguments in our papers --

20          THE COURT:  I'm not suggesting that you do.

21          MR. PRINCE:  -- but I do want to say this:  That

22 assuming without conceding that there is a First Amendment right

23 here --

24          THE COURT:  I understand.

25          MR. PRINCE:  -- the Fourth Circuit has been clear that

# EXHIBIT 2
# GIRDNER DECLARATION

Page 1

```
 1                UNITED STATES COURT OF APPEALS

 2                   FOR THE EIGHTH CIRCUIT

 3      -------------------------------

 4      COURTHOUSE NEWS SERVICE,

 5              Appellant,

 6         v.                              Docket No.

 7      JOAN M. GILMER, IN HER OFFICIAL        21-2632

 8      CAPACITY AS THE CLERK OF THE

 9      CIRCUIT COURT OF ST. LOUIS

10      COUNTY, MISSOURI AND KATHY

11      LLOYD, IN HER OFFICIAL CAPACITY

12      AS STATE COURTS ADMINISTRATOR

13      FOR THE MISSOURI OFFICE

14      OF STATE COURTS ADMINISTRATOR,

15              Appellees.

16      -------------------------------

17                        ORAL ARGUMENT

18      DATE:         Thursday, April 14, 2022

19      BEFORE:       Honorable Bobby Shepherd

20                    Honorable Ralph Erickson

21                    Honorable David Stras

22
```

```
                                                          Page 2
 1                    A P P E A R A N C E S

 2   ON BEHALF OF APPELLANT COURTHOUSE NEWS SERVICE:

 3        BARBARA SMITH, ESQUIRE

 4        Bryan Cave Leighton Paisner LLP

 5        211 North Broadway,

 6        Suite 3600

 7        St. Louis, MO

 8        63102-2726

 9        barbara.smith@bclplaw.com

10

11   ON BEHALF OF APPELLEES JOAN M. GILMER, IN HER OFFICIAL

12   CAPACITY AS THE CLERK OF THE CIRCUIT COURT OF ST. LOUIS

13   COUNTY, MISSOURI AND KATHY LLOYD, IN HER OFFICIAL CAPACITY

14   AS STATE COURTS ADMINISTRATOR

15   FOR THE MISSOURI OFFICE OF STATE COURTS ADMINISTRATOR:

16        JEFF P. JOHNSON, ESQUIRE

17        Deputy Solicitor General

18        Office of the Missouri Attorney General

19        Supreme Court Building

20        P.O. Box 899

21        Jefferson City, Missouri 65102

22        (314)340-7366
```

Page 21

 1             JUDGE ERICKSON:  Okay.  But that's not the

 2    question.  The question is, do subscribers to Missouri

 3    Case.net have access to the pleadings immediately?

 4             MS. SMITH:  I believe that's right, Your Honor.

 5    Although I --

 6             JUDGE ERICKSON:  Okay.  So, if your client was a

 7    subscriber to Missouri Case.net, would you be here if the

 8    lawsuit had been filed?

 9             MS. SMITH:  Well, respectfully, I think that the

10    question goes to the point of how easy it would be to

11    resolve this constitutional claim if the state chose to do

12    so.  It can make filings contemporaneously available, and

13    it has chosen not to make them contemporaneously available

14    to the public and the press, even though attorneys who are

15    members of the bar do have access to those complaints.  So,

16    if we could solve that problem, I don't think we would be

17    here.

18             JUDGE ERICKSON:  Okay.  The second question is,

19    you know, there was a time when -- and some in this room

20    may remember it, when you took a pleading to the courthouse

21    and the clerk stamped it physically and it went into

22    different bins and it was available immediately.

Page 22

1          MS. SMITH:  Yes.

2          JUDGE ERICKSON:  Now, in this day and time,

3    apparently there's a processing period, at least that's the

4    allegation, that there's a processing period.  And so, this

5    gets to why do you -- why does your client need access or

6    why does anybody need access to these pleadings before the

7    end of the processing period, which as I understand it,

8    nothing is happening in the case, the pleading is being

9    examined by the clerk.  So, what -- what's the importance

10   of having it the instant it reaches the clerk's office as

11   opposed to the end of the processing period?

12         MS. SMITH:  When a lawyer came in, in times past,

13   to physically deliver a complaint and now electronically

14   submit one -- submits one online, it is invoking the power

15   of the state courts to file a lawsuit to further a right it

16   alleges has been wronged.  And the public and the press

17   have a right to know about that.  And to the extent that

18   that complaint is withheld from the public and the press,

19   that's a violation of the First Amendment.  I think it's as

20   simple as that, Your Honor.

21         And the government has to justify any delay in

22   keeping that complaint from the public and the press.  That

Page 23

1    is the *Press-Enterprise II* inquiry the Supreme Court laid

2    out.  You ask first whether this is the kind of document

3    that historically has been available to the public, civil

4    complaints are those kinds of documents.  And then the

5    government has to justify withholding that document under a

6    strict or rigorous scrutiny standard.  So, I think *Press-*

7    *Enterprise II* answers that question.  Thank you.

8            JUDGE STRAS:  Mr. Johnson, you may proceed.

9            MR. JOHNSON:  Thank you.  And may it please the

10   court.  Jeff Johnson for Ms. Gilmer and Ms. Lloyd, who are

11   state judicial officers for the state of Missouri.  This is

12   an extraordinary moment for public access to courts as I

13   think everyone here in the room will recognize.  Whether

14   it's streaming court proceedings, holding Zoom trials, or

15   providing access to public records, there are numerous

16   challenges.  And the Missouri judiciary has risen to the

17   challenge to do so.  And for years has allowed for public

18   access to the official court record for all citizens and

19   for the press, and that continues to be the case today and

20   it has been the case for years.

21            The issues here are really whether or not the

22   District Court -- well, I think the core issue that we've

Page 30

1  the Supreme Court tells us otherwise, right?

2         Like the Supreme Court has said these are our

3  three -- these are our three categories, you know, and all

4  of our cases, you know, fit within these categories, and

5  therefore, you know, this is what we have.  To your

6  question, I think the best fit for this case is in the

7  third one where it talks about the -- or talks about the

8  substantial interference with state court proceedings.

9         JUDGE ERICKSON:  Yeah, but what proceedings are

10 we actually messing with here?  I mean, you're not actually

11 doing anything to any of the proceedings at all.  What

12 we're saying is that, oh, for about 230 years, you can walk

13 into a Missouri Courthouse into the clerk's office and say,

14 "Hey, can I see what's been filed today?"  And now all of a

15 sudden you can't, right?

16         MR. JOHNSON:  So, I would quibble with your

17 premise that you can't walk into the Missouri Courthouse

18 and ask for those things, right.  The question is whether

19 or not they're sort of electronically available in that…

20         JUDGE ERICKSON:  So, you can still walk into a

21 Missouri -- like Courthouse News Service could hire a

22 runner, walk into the courthouse today and say, show me the

Page 31

1   papers, please, and they'd be produced.

2          MR. JOHNSON:  So, there are no papers unless they

3   are pro se filers.

4          JUDGE ERICKSON:  Right…

5          MR. JOHNSON:  In which case they're scanned

6   there.

7          JUDGE ERICKSON:  And they push a button and print

8   it.

9          MR. JOHNSON:  I'm uncertain as to whether they

10  could push a button and print it.

11         JUDGE ERICKSON:  Oh, yeah, come on now.  Do you

12  really think there's an e-filing system where you can't

13  pull up a document and print a PDF of it?  Do you think

14  that exists anywhere in America?

15         MR. JOHNSON:  I agree with you that you can print

16  the documents…

17         JUDGE ERICKSON:  Anyhow that's what -- my real

18  question is --

19         MR. JOHNSON:  Yes.

20         JUDGE ERICKSON:  -- can you walk into the

21  courthouse and say, can I see this document?

22         MR. JOHNSON:  If you know what the document is,

Page 32

1    you can definitely come in and say, "You know, may, I see

2    this document."  I think the issue here is that potentially

3    when they have not been accepted for filing yet, the

4    clerk's office, you know, has them in the order that they

5    come in, and it's just processing them through.

6          Getting to your point as to whether or not we're

7    interfering with judicial proceedings, the court in *Sprint*,

8    when it cited this, it was citing to *Pennzoil* and it also

9    cited to the *Juidice* case, which is about civil contempt.

10   The *Pennzoil* case was about the -- it was about the court

11   process, about in Texas -- whether or not Texaco would have

12   had -- pay the entire bond, the 13-plus billion dollar bond

13   to go forward.  And they said -- they went into a federal

14   court and said, "No, you know, you should really say that,

15   you know, having to put up the entire amount of the of the

16   bond violates due process."  And the court said that the

17   courts of appeals should not have -- and the district court

18   should not have gone into that territory.

19         JUDGE ERICKSON:  Counsel, I want to ask you.  So,

20   I gave opposing counsel a hard time, I'm going to give you

21   an equally hard time, which is you have a lot of -- I can

22   think of a lot of hypotheticals that will cause problems

Page 49

```
 1              CERTIFICATE OF TRANSCRIBER

 2      I, Jimmy Jacob, do hereby certify that, to the

 3  best of my knowledge and belief, the attached

 4  transcript regarding the oral testimony in case

 5  Courthouse News Service v. Joan M. Gilmer, in her

 6  official capacity as the Clerk of the Circuit Court of

 7  St. Louis County, Missouri and Kathy Lloyd, in her

 8  official capacity as State Courts Administrator for

 9  the Missouri Office of State Courts Administrator is a

10  true and accurate transcription of the indicated video

11  recordings.

12      I further certify that I am neither attorney nor

13  counsel for nor related nor employed by any of the

14  parties to the action; further, that I am not a

15  relative or employee of any attorney or counsel

16  employed by the parties hereto or financially

17  interested in this action.

18

19  April 18, 2022

20  _____

21      DATE                    Jimmy Jacob

22                              TRANSCRIBER
```

# EXHIBIT 3
# GIRDNER DECLARATION

1

1    **IN THE UNITED STATES DISTRICT COURT**
     **FOR THE WESTERN DISTRICT OF TEXAS**
2                 **AUSTIN DIVISION**

3    COURTHOUSE NEWS SERVICE,              ) AU:20-CV-01260-LY
                                           )
4       Plaintiff,                         )
                                           )
5    v.                                    ) AUSTIN, TEXAS
                                           )
6    MEGAN LAVOIE,                         )
                                           )
7       Defendant.                         ) JULY 25, 2022

8         ***********************************************
               TRANSCRIPT OF MOTIONS HEARING/BENCH TRIAL
9                            VOLUME 1
                  BEFORE THE HONORABLE LEE YEAKEL
10        ***********************************************
     FOR THE PLAINTIFF:   MATT DOW
11                        JACKSON WALKER, LLP
                          100 CONGRESS AVENUE, SUITE 1100
12                        AUSTIN, TEXAS 78701

13                        JOHN K. EDWARDS
                          JACKSON WALKER LLP
14                        1401 MCKINNEY SUITE 1900
                          HOUSTON, TEXAS 77010

15
                          JONATHAN G. FETTERLY
16                        BRYAN CAVE LEIGHTON PAISNER LLP
                          THREE EMBARCADERO CENTER, 7TH FLOOR
17                        SAN FRANCISCO, CALIFORNIA 94111

18   FOR THE DEFENDANT:   CAROLINE ALYSSA MERIDETH
                          BENJAMIN S. LYLES
19                        CHRISTOPHER D. HILTON
                          OFFICE OF THE ATTORNEY GENERAL
20                        PO BOX 12548, CAPITOL STATION, MC-019
                          AUSTIN, TEXAS 78711-2548
21
     COURT REPORTER:      ARLINDA RODRIGUEZ, CSR
22                        501 WEST 5TH STREET, SUITE 4152
                          AUSTIN, TEXAS 78701
23                        (512) 391-8791

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.

2

| | |
|---|---|
| 09:33:19 | 1 |
| 09:33:19 | 2 |
| 09:33:26 | 3 |
| 09:33:32 | 4 |
| 09:33:42 | 5 |
| 09:33:48 | 6 |
| 09:33:51 | 7 |
| 09:33:56 | 8 |
| 09:33:59 | 9 |
| 09:34:02 | 10 |
| 09:34:05 | 11 |
| 09:34:07 | 12 |
| 09:34:10 | 13 |
| 09:34:13 | 14 |
| 09:34:16 | 15 |
| 09:34:21 | 16 |
| 09:34:24 | 17 |
| 09:34:36 | 18 |
| 09:34:39 | 19 |
| 09:34:44 | 20 |
| 09:34:46 | 21 |
| 09:34:55 | 22 |
| 09:35:00 | 23 |
| 09:35:10 | 24 |
| 09:35:18 | 25 |

         (Open court)

         THE COURT:  We're here today for what I had

originally set for everything that was going to happen in this

case in Cause Number 20-CV-1260, *Courthouse News Service v.*

*originally Price and LaVoie*, although I believe we're down to

just Ms. LaVoie as the party in this case.

         So let me get announcements by the parties, first

from the plaintiffs as to who is here and whether you're ready.

         MR. DOW:  Matt Dow, Your Honor, John Edwards, and

John Fetterly for the plaintiff, and Plaintiff is ready.

         THE COURT:  And for the defendant?

         MS. MERIDETH:  Caroline Merideth, Ben Lyles, and

Chris Hilton for Director LaVoie.

         THE COURT:  All right.  Well, let me -- I want to

make some observations first, and I try to say this with

affection for you-all because I was on your side of the bench

for 28 1/2 years.  Lawyers have eyes, but they don't always see

things, and lawyers have ears, and they don't always hear

things.  And it's even more rare that they understand things,

particularly when it comes from a judge.

         This case has a history.  And we had a scheduling

conference back in April, and we have discussed this case on

several occasions.  And I set the case for today by order of

May the 10th, 2022 and indicated that I would take up motions

by the State, bring them forward, and take up their motion to

25

| | | |
|---|---|---|
| 10:16:49 | 1 | June 24, 2022 amendment between OCA and Tyler, which allows -- |
| 10:16:59 | 2 | THE COURT:  What year was that June 24th amendment? |
| 10:17:01 | 3 | MR. DOW:  2022. |
| 10:17:03 | 4 | THE COURT:  Okay.  A recent amendment, right now. |
| 10:17:05 | 5 | MR. DOW:  Correct, Your Honor. |
| 10:17:06 | 6 | THE COURT:  All right. |
| 10:17:06 | 7 | MR. DOW:  And the press review tool allows members of |
| 10:17:10 | 8 | the media to be able to access newly filed petitions while they |
| 10:17:17 | 9 | sit in the EMF -- EFM awaiting the administrative processing |
| 10:17:26 | 10 | that occurs. |
| 10:17:27 | 11 | THE COURT:  All right.  Tell me -- no.  Actually, I'm |
| 10:17:32 | 12 | going to ask Ms. Merideth this.  Tell me what reviews district |
| 10:17:39 | 13 | clerks normally make. |
| 10:17:43 | 14 | MS. MERIDETH:  And the answer is that OCA doesn't |
| 10:17:47 | 15 | know what the clerks are reviewing. |
| 10:17:51 | 16 | THE COURT:  Well, I'll tell you I'm not surprised to |
| 10:17:53 | 17 | hear that because, again, we're creatures of our own |
| 10:17:57 | 18 | background.  I feel with absolute certainty, when I first |
| 10:18:06 | 19 | started practicing law and probably for a large amount of that |
| 10:18:10 | 20 | time, but I can't say it was for 100 percent and I can't say |
| 10:18:14 | 21 | it's true today, the district clerk in Travis County didn't |
| 10:18:18 | 22 | review a plaintiff's complaint -- I mean the plaintiff's |
| 10:18:21 | 23 | petition for anything.  It came in, it was pushed across the |
| 10:18:25 | 24 | counter, it got file-marked originally with a hand stamp where |
| 10:18:31 | 25 | they wrote in the time, and then we got really fancy and had a |

(58 of 262), Page 58 of 262 Case: 24-6697, 03/06/2025, DktEntry: 10.7, Page 58 of 262
Case 1:21-cv-00305-DCN   Document 64   Filed 12/15/22   Page 57 of 149

26

| | | |
|---|---|---|
| 10:18:32 | 1 | little machine you stuck it under that automatically had the |
| 10:18:35 | 2 | time on it, and then they put a file-mark on it. |
| 10:18:38 | 3 | And if a member of the press happened to be standing |
| 10:18:41 | 4 | there and said "I really want a copy of that," they'd make that |
| 10:18:43 | 5 | copy right away.  Nobody looked at it to see if there was a |
| 10:18:46 | 6 | problem or anything.  That was the lawyer's problem.  If you |
| 10:18:48 | 7 | messed up your petition, then you just weren't in very good |
| 10:18:54 | 8 | shape, or the defendant would raise it and a judge would take |
| 10:18:58 | 9 | care of it at that point. |
| 10:19:00 | 10 | So, you know, we're going to get to a little bit of |
| 10:19:07 | 11 | advocacy in a minute, but I will tell you this court has |
| 10:19:10 | 12 | concern as to whether there needs to be, and whether there's a |
| 10:19:16 | 13 | legitimate reason for any -- the clerk to take any action other |
| 10:19:23 | 14 | than to file the petition that got handed to the clerk.  And I |
| 10:19:28 | 15 | guess, then, that impacts -- if it's auto-accept, we don't have |
| 10:19:35 | 16 | that problem because it's automatically up and you-all get to |
| 10:19:39 | 17 | look at it as quickly as it hits -- or your client gets to. |
| 10:19:43 | 18 | And I presume, then, if somebody -- -- if the clerk |
| 10:19:48 | 19 | didn't want to do that, then the press review thing would solve |
| 10:19:51 | 20 | that because the media still got immediate access to what was |
| 10:19:58 | 21 | filed.  And if the clerk later reviewed and decided to reject |
| 10:20:03 | 22 | the filing, that would also show up somewhere in there as a |
| 10:20:08 | 23 | rejection.  I'm just trying to figure out in my own mind a |
| 10:20:12 | 24 | legitimate basis for any review or delay after filing. |
| 10:20:16 | 25 | MS. MERIDETH:  And, Your Honor, I think that question |

99

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS         )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10      WITNESS MY OFFICIAL HAND this the 1st day of August 2022.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2023
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

# EXHIBIT 4
# GIRDNER DECLARATION

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Courthouse News Service, | Case No.: CV 11-8083-DMG (FFMx) |
|      Plaintiff, | |
| vs. | **AMENDED JUDGMENT FOR DECLARATORY RELIEF AND PERMANENT INJUNCTION [263]** |
| Michael Planet, in his official capacity as Court Executive Officer/Clerk of the Ventura County Superior Court, | |
|      Defendant. | |

1

This action came before the Court on the Amended Complaint of Plaintiff Courthouse News Service ("CNS") for Injunctive and Declaratory Relief under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution against Defendant Michael Planet, in his official capacity as Court Executive Officer and Clerk of the Superior Court in and for the County of Ventura, California.

Following the Ninth Circuit Court of Appeals' ruling in *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*"), which affirmed in part and reversed in part the Judgment for Declaratory Relief and Permanent Injunction In Favor of Plaintiff Courthouse News Service Against Defendant Michael Planet [Doc. # 199], and pursuant to the mandate received by this Court,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that, pursuant to Federal Rule of Civil Procedure 58, Judgment be entered in this action in favor of Plaintiff CNS and against Defendant Planet as follows:

1.      On CNS's Prayer for Declaratory Relief, it is ORDERED, ADJUDGED and DECREED that:

a.      There is a qualified First Amendment right of timely access to newly filed civil complaints, including their associated exhibits.

b.      This qualified right of timely access attaches when new complaints are received by a court, rather than after they are "processed" -- i.e., rather than after the performance of administrative tasks that follow the court's receipt of a new complaint.

c.      This qualified right of timely access attaches on receipt regardless of whether courts use paper filing or e-filing systems.

d.      Planet's policy prior to June 18, 2014 of requiring that newly filed complaints and their associated exhibits be "processed" prior to providing the press and public with access to those complaints violates CNS's qualified First Amendment right of timely access to newly filed complaints and their associated exhibits for the reasons stated in *Planet III*.

1

(63 of 262), Page 63 of 262 Case: 24-6697, 03/06/2025, DktEntry: 10.7, Page 63 of 262
Case 1:21-cv-00305-DCN   Document 64   Filed 12/15/22   Page 62 of 149

Case 2:11-cv-08083-DMG-FFM   Document 270   Filed 01/26/21   Page 3 of 3   Page ID #:13441

e.      Planet's policy, implemented on June 18, 2014, of scanning new civil complaints and making the scans available on public computer terminals does not violate CNS's qualified First Amendment right of timely access to newly filed complaints and their associated exhibits for the reasons stated in *Planet III*.

2.      On CNS's Prayer for Injunctive Relief, Planet is hereby permanently enjoined from refusing (a) to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are "processed," regardless of whether such complaints are filed in paper form or e-filed, and (b) to make such complaints and exhibits accessible to the public and press in a timely manner from the moment they are received by the court, except in those instances in which the filing party has designated the complaint as confidential by law or properly moved to place the complaint under seal.

3.      On CNS's Prayer for Costs and Attorneys' Fees, and pursuant to the Ninth Circuit's Order of June 30, 2020 [Doc. # 255], CNS is the prevailing party in this action.  Pursuant to Federal Rule of Civil Procedure 54(d), the cost award to CNS entered on August 2, 2016, in the amount of $20,730.81 [Doc. # 204], is reinstated.  Pursuant to 42 U.S.C. § 1988, CNS is further awarded its non-taxable costs and attorneys' fees in an amount to be determined by the Court pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rules 54-10 and 54-11, which shall be filed within 14 days of the date of entry of this Judgment.

DATED:  January 26, 2021

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT 5
# GIRDNER DECLARATION

11/27/22, 8:17 PM                                         iCourt Project Overview & FAQs | iCourt

HOME (/ICOURT-LANDING-PAGE)    SUPREME COURT HOME (HTTP://WWW.ISC.IDAHO.GOV)



(/)

# iCourt Project Overview & FAQs

**I am a justice partner or work for a government agency that does business with the courts. Where can I find more information about extended access to court records in the new system?**

Click here (../apply) to learn more.

**What is the "iCourt" Odyssey project?**

The Idaho iCourt project is changing the way our Courts do business and serve the public. We are shifting from a legacy paper-based system to a modern electronic online judicial system by implementing integrated court management solutions and access tools. This project is in partnership with Tyler Technologies Inc. (http://www.tylertech.com/solutions-products/odyssey-product-suite), using the Odyssey software suite Tyler is a proven software company with 10 statewide court implementations and over 500 county court implementations across the country.

 The project is expected to take 3 years to realize statewide benefits. Once the complete system has been deployed to all counties, it will provide improved access to electronic court records, hearing schedules, court documents, e-filing and more. This new system will also provide tools to improve business practices amongst justice partners by providing around-the-clock access to court information, reduce costs from handling and storing paper files, streamline court processes, and deliver better information for judicial decision-making.

 Below you will find more information about each component of the complete iCourt solution.  These capabilities will be available once the statewide implementation is complete.

ER-1187

### Odyssey Case Manager

- Online court case managment system to manage all aspects of court cases and to protect critical court data and case information.

### Portal

- Online public and extended user access to court records, hearing calendars, electronic payments, and documents.

### Supervision

- Tools allowing justice partners to track and manage supervision cases for problem-solving courts and adult misdemeanor probation.

### Financial Manager

- Centralized and streamlined financial management tool for all court financial transactions.

### File and Serve (E-filing and E-Service)

- Capability to file, serve, distribute and deliver files electronically.

### Guide & File

- Online self-help guided system for self-represented litigants (SRLs) to generate forms and submit filings either electronically or at the courthouse.

### Jury

- Tools for simplifying jury selection and court management processes, as well as keeping prospective jurors informed.

### Attorney Manager

- Tools for prosecuting attorney and public defender offices to effectively track cases and case information, as well as manage caseloads.

**What is the schedule for moving from the old system to the new system?**

ER-1188

iCourt Project Overview & FAQs | iCourt

The replacement of the Court's existing computer system requires a methodical and deliberate plan to transition over time, but we also recognize the Courts must remain open and functional during this transition between the old system and the new. With this in mind, the Court's Technology Committee has worked diligently to develop a deployment or "go live" schedule, starting first with a pilot county (Twin Falls), then an early adopter county (Ada), followed by three regional deployments covering the remaining counties of the state. The entire "go live" deployment is projected to take several years. Below is a schedule of the statewide deployment:

**1.** Twin Falls County - June 22, 2015 LIVE!

**2.** Ada County - August 8, 2016 LIVE!

**3.** Wave 1 - October 10, 2017 LIVE!

- Blaine
- Boise
- Camas
- Canyon
- Cassia
- Elmore
- Gooding
- Jerome
- Lincoln
- Minidoka
- Owyhee
- Valley

**4.** Wave 2 - April 9, 2018 LIVE!

- Adams
- Benewah
- Bonner
- Boundary
- Clearwater
- Gem
- Idaho
- Kootenai
- Latah
- Lewis
- Nez Perce
- Payette
- Shoshone

**ER-1189**

○ Washington

**5.** Wave 3 - October 9, 2018

- ○ Bannock
- ○ Bear Lake
- ○ Bingham
- ○ Bonneville
- ○ Butte
- ○ Caribou
- ○ Clark
- ○ Custer
- ○ Franklin
- ○ Fremont
- ○ Jefferson
- ○ Lemhi
- ○ Madison
- ○ Oneida
- ○ Power
- ○ Teton

---

**What specific benefits will the iCourt solution offer, once it's fully implemented?**

- ○ Transition to an electronic court record
  - ○ Optimize the time and use of existing court personnel
  - ○ Maximize efficiencies of court processes by leveraging automation as much as feasible
  - ○ Provide capability for court staff to fully transition, consume and manage electronic court documents
  - ○ Reduce the need for physical storage space of court case files
  - ○ Transition existing staff from manual tasks, such as physically pulling files and tracking paper records across the court, and shift to providing enhanced services to the public
  - ○ Enable counties to avoid the need to hire more staff as court caseloads increase
- ○ Enable shared statewide data via a unified, statewide case management system
  - ○ Transition to a fully consolidated statewide judicial system versus managing court data in  44 independent, siloed systems
  - ○ Provide the ability to  share and manage court and judge calendars within or across districts
  - ○ Enable access to  shared party information across the state

ER-1190

- Enable traveling judges to have increased access to court records from other counties
- Allow multiple persons to access and work on the same court record at the same time from different locations
- Provide electronic filing and service
  - Enable parties to submit electronic documents to Idaho's Courts, 24/7/365 from anywhere
  - Automatically file documents into the electronic court case record, improving overall efficiency and timeliness
  - Enable self-represented litigants the ability to easily file court documents for the most needed court cases
  - Allow filing parties to digitally serve others and eliminate paper service costs, including time and mailing costs
- Enhance access to court documents
  - Provide 24/7 access to Court records for the public, attorneys, commercial entities and judicial partners
  - Leverage document access and document purchase as a potential revenue source for the Idaho Judicial Branch to sustain the Court's technology assets
  - Provide a capability for attorneys to have access to online documents similar to the Federal System (PACER)
- Enhance statewide, district and local court data reporting capabilities
  - Support consistent, unified case flow management across all of Idaho's courts
  - Provide the ability to perform data analytics, case metrics, and statistical reporting on a statewide, district and county level
- Enable working from remote locations
  - Provide greater flexibility for judges, clerks and others to work from remote locations
- Facilitate standardized supervision and problem-solving practices
  - Standardize reporting practices and data gathering to provide better access to for problem solving courts
  - Provide a statewide supervision application to manage adult misdemeanor probation
  - Deliver a consistent application for the management of pre-trial services
  - Enable better evaluation of supervision programs and problem-solving courts
  - Empower users to make better recommendations about people being supervised
- Transition the Idaho Judiciary Branch's existing appellate case management system, used for the Court of Appeals and the Idaho Supreme Court, to the statewide case management system
  - Provide core case management features such as calendaring, time standards, workflow and document/content management
  - Track appellate cases and support unique appellate case management functionality, namely panel and opinion management
- Improve data exchange with the Idaho Judicial Branch's justice partners
  - Maintain existing data exchanges to other ancillary systems using a similar exchange method or implement a direct integration/interface with the judicial partner's system
  - Provide the technical foundation to create or extend data interfaces from the new case management solution with other ancillary systems for specific functionality in order to attain operational efficiencies
- Deliver a statewide jury management system
  - Transition Idaho to a statewide jury management application management to assist with jury selection and management processes to include a public interface option
- Preserve Idaho's existing case data and convert to the new case management system
  - Convert and integrate all existing legacy court case data into the new, statewide case management environment

ER-1191

**Where can I find more information about public access to court records in the new system?**

Click here (../extended) to learn more.

**Why are we changing systems?**

There are two main reasons the Idaho Courts must replace its computerized case management system. The first is the Court's aging statewide computerized case management system, Idaho Statewide Trial Court Automated System (ISTARS), has been declared by its vendor to be at "end of life." The second reason is to meet the Court's Constitutional mandate to "resolve court cases without delay," a modern computer system to meet today's business environment is a must. There have been significant advances in technology which provide tremendous efficiencies the current system cannot deliver.

Recognizing the inevitable end of the existing system, and the need for significant "due diligence" relating to an effort of this magnitude, the Supreme Court established a Court Technology Committee, which is chaired by the Chief Justice and includes judges, clerks, attorneys, and administrators. With the assistance of three nationally recognized court technology experts and a Design and Implementation Committee, the Court undertook a careful analysis of the available options and concluded that a move to a modern, web-based case management system would best serve Idahoans for the next generation. Through an extensive RFP process, the proven case management software known as Odyssey by Tyler Technologies was selected as the most capable and cost effective system.

TERMS AND CONDITIONS (/TERMSCONDITIONS)     PRIVACY POLICY (/PRIVACY-POLICY)     CYBERSECURITY (HTTPS://CYBERSECURITY.IDAHO.GOV/)

 

**ER-1192**

# EXHIBIT 6
# GIRDNER DECLARATION

File & Serve: Electronic Filing Overview | iCourt

HOME (/ICOURT-LANDING-PAGE)    SUPREME COURT HOME (HTTP://WWW.ISC.IDAHO.GOV)



(/)

# File & Serve: Electronic Filing Overview

(https://idaho.tylerhost.net/ofsweb)

The Idaho Courts are transitioning to a new electronic filing system as part of Idaho's larger effort to modernize the State's court system over the course of the next several years.

e-Filing allows documents to be filed, served, distributed and delivered electronically. This transition further supports the efficiencies gained by moving to an electronic court record by creating time savings for attorneys, clerks and judges. Electronic filing will be phased in across Idaho, following each new deployment of the court's modern online judicial system. Twin Falls County went live on January 11, 2016 followed by Ada County a few months later. Blaine, Boise, Camas, Canyon, Cassia, Elmore, Gooding, Jerome, Lincoln, Minidoka, Owyhee and Valley counties transitioned in October, 2017. Fourteen counties transitioned as of April 9, 2018. Included in the latest wave are Adams, Benewah, Bonner, Boundary, Clearwater, Gem, Idaho, Kootenai, Latah, Lewis, Nez Perce, Payette, Shoshone, and Washington. The remaining 16 counties in the state will transition in October, 2018.



Click here to e-File!

**e-Filing FAQs (http://icourt.idaho.gov/efile-faqs)    |    Training & Resources (http://icourt.idaho.gov/efile-resources)**

*e-Filing can be done any time of day from any location and will significantly decrease the amount of time it takes you and your colleagues to file with the court and serve other parties. The transition will allow for improved information delivery and help increase Idahoan's access to fair and efficient justice.*

**ER-1194**

11/27/22, 10:58 AM                                    File & Serve: Electronic Filing Overview | iCourt

**e-Filing Clarifications & Updates:**

- Clarification on fee category L.3.a. filings (Snake River Basin Adjudication) (srba_twinfalls)

TERMS AND CONDITIONS (/TERMSCONDITIONS)     PRIVACY POLICY (/PRIVACY-POLICY)     CYBERSECURITY (HTTPS://CYBERSECURITY.IDAHO.GOV/)

 

ER-1195

# EXHIBIT 7
# GIRDNER DECLARATION

e-Filing FAQs | iCourt



(/)

# e-Filing FAQs

## Basic e-Filing Questions

**How does e-filing work?**

Electronic filing or e-filing enables filers and courts to efficiently process documents and fees online.

E-filing manages the flow of information among filers, clerks, court personnel, and judges:

- **Filer Submits Documents**
  - Filers log onto the e-filing website to file case-related documents and pay appropriate filing fees online to any participating court in Idaho.
- **Clerks Accept or Reject Submissions**
  - Court clerks receive the electronically filed documents and associated fees for processing and acceptance, review the documents, accept the filings or return them for correction, and provide an electronic timestamp notification to the filer for the accepted documents.

**Is e-filing secure?**

Yes. The Tyler e-filing system adheres to state and federal security regulations and meets Payment Card Industry Security Standards to protect filer and transaction information.

**Who will be subject to mandatory e-filing?**

Filers identified below, must electronically file documents in courts where electronic filing has been mandated, except for those documents that must be filed conventionally pursuant to subsection (f) of this rule.

i.    Attorneys
ii.   Government agencies or departments (including but not limited to those on contract)
iii.  Court approved mediators, coordinators, or evaluators (including, but not limited to, those identified in a judicial roster on the Idaho Supreme Court website)
iv.   Filers who are compensated for the preparation and submission of reports / evaluations
v.    Business entities filing in small claims actions

**ER-1197**

(76 of 262), Page 76 of 262

Case 24-6697, 03/06/2025, DktEntry: 10.7, Page 76 of 262
Case 1:21-cv-00305-DCN   Document 84   Filed 12/15/22   Page 75 of 149

Self-represented parties who are individuals and not attorneys may elect to electronically file documents but are not required to do so. Those who elect not to utilize electronic filing, and who require paper / mail service from the court must identify the physical address for service in the certificate of service and pay designated mail service fees to the court clerk at the time of filing. A self-represented party who elects to electronically file and serve documents through the electronic filing system must continue to do so for the life of the case unless a court has granted a motion to withdraw from electronic filing and service. Once a self-represented party withdraws from electronic filing and service he or she may not return to this practice for the life of the case.

---

**Document security designation no longer required.**

**Odyssey File and Serve Feature Changes to Document Security Designation**

Beginning Monday, 8/22, filers using Odyssey and File and Serve will no longer be required to select document security when filing electronically. Previously, filers were required to select either "Public" or "Confidential" on documents filed, and this selection is no longer required. If a filer has a concern of file sensitivity, please add those notes into the filing comments for the clerk to view when submitting the filing.

---

**Are all documents required to be e-filed?**

Most, but not all, documents will be subject to mandatory e-filing. Documents that must be filed conventionally (paper form at court filing counter) include:

- **Probate / Wills.** Probate matters shall be filed electronically. However, an original will, along with the pleading it is offered with, if any, must be filed both electronically and conventionally. The conventional filing must be made no more than seven business days, excluding legal holidays, from the date of electronic filing.
- **Warrant.** A document delivered to the court to secure a warrant pursuant to Idaho Criminal Rule 4.
- **Limits on Exhibits.** A demonstrative or oversized exhibit.
- **Grand Jury material.** Grand jury materials, which should also be accompanied by disk or CD-ROM containing the documents in .pdf format, if possible.
- **Charging documents.** Charging documents in a criminal action including complaints and indictments unless filed through an electronic system approved by the Supreme Court.
- **Federally restricted storage.** A document or image that is barred from electronic storage, including but not limited to sexually explicit images of a minor.
- **Document submitted for *in camera* inspection.** A document filed subject to *in camera* inspection.
- **Motion to Seal Document.** A motion to seal by court order and document that is the subject of the motion (which is treated as sealed until the court rules on the motion).
- **Other documents that cannot be filed electronically.** Any document that cannot be scanned or otherwise converted to electronic format. Upon a showing of good cause, the court may accept for conventional filing a document that would otherwise be required to be file through the electronic filing system.

Please review the Idaho Supreme Court rule regarding e-filing and e-service:

  ○ Order Adopting Rule on Electronic Filing and Service (https://isc.idaho.gov/main/idaho-court-rules)

---

**What are the system requirements for e-filing? (Electronic Filing Guide)**

Electronic Filing Guide

- Browser Requirements – The system supports Internet Explorer® 10 or 11; Chrome™; Mozilla® Firefox®; or Safari® application program. If your browser does not meet these minimum requirements, please contact your network administrator.

- Operating Systems – The system supports Microsoft® Windows®, Linux, Chrome OS™, Android™, and OS X® operating system software. Note: iOS is not supported.
- Minimum Hardware Requirements – The system supports the following hardware:
  ○ Intel® Core™ Duo processors or AMD processor manufactured in 2012 or later

**ER-1198**

11/18/22, 4:12 PM                                                                    e-Filing FAQs | iCourt

- 2 GB of RAM
  - 1366 x 768 resolution screen for desktop or 1280 x 720 resolution screen for mobile devices
- Recommended Hardware Requirements – Tyler recommends the following hardware:
  - Intel® Core™ i3 or AMD A6 processor with at least 2.0 GHz clock speed
  - 4 GB of RAM
  - 1920 x 1080 resolution for both desktop and mobile devices
- Connection Requirements – A high-speed Internet connection is recommended.

- Document Format
  - Portable Document Format (PDF) is the only format allowed for attaching documents when using the electronic filing system.
  - Unless excluded by court rule, the PDF document, must be in the form of a text-searchable PDF or a text-searchable PDF/A file.
  - A single PDF document must not exceed 50 megabytes. A filing envelope must not exceed 100 megabytes. Consult the electronic filing rule for guidance when your document does exceed 50 megabytes or your envelope exceeds 100 megabytes.
  - Your word processing document should have the ability to either save or print your document as a PDF file.  Doing so will create a text searchable document as required by the Supreme Court's e-filing / e-service rule.  You may need to utilize special software if you need to combine a file text searchable PDF pleading and a PDF scan (not text searchable) as an exhibit.
  - Use 8.5" X 11" paper with portrait orientation.
  - Set the DPI resolution higher than 200 DPI.
  - No unintelligible images (use black and white images, no color unless necessary to be legible)
  - Access - Documents may not be secured, password-protected, or have other features limiting access.
  - Documents shall be self-contained – Remove all hyperlinks or shortcuts to external documents or websites.
  - Documents should contain standard fonts.  Font resources are included in newly created documents.  This is a standard with PDF/A files.  Document generating tools use fonts not supported when creating documents, which results in the inability to convert the document into the standard efiling format. (CID and JBig fonts may lead to technical problems and rejection).

- How do I avoid emails from Odyssey File and Serve from going to my junk or spam folder?
  - Sometimes when e-mails are sent, they get stopped at the receiving e-mail server because the e-mail may not be recognized or thought to be possible spam or junk. In order to prevent e-mails from being stopped from delivery, white listing an e-mail address may be necessary. Whitelisting basically tells the e-mail server that an e-mail address is safe for delivery. You will want to add our email address of efilingmail@tylerhost.net (mailto:efilingmail@tylerhost.net) and our IP address of 208.64.239.174 in order for our email not to be considered spam.  For more information on Whitelisting please visit http://www.whatcounts.com/how-to-whitelist-emails/ (http://www.whatcounts.com/how-to-whitelist-emails/)

**Can I use e-filing if I am a representing myself (pro per / pro se) in a case?**

Yes, self-represented parties who are individuals and not attorneys may elect to electronically file documents but are not required to do so.  Those who elect not to utilize electronic filing, and who require paper / mail service from the court must identify the physical address for service in the certificate of service and pay designated mail service fees to the court clerk at the time of filing.  A self-represented party who elects to electronically file and serve documents through the electronic filing system must continue to do so for the life of the case unless a court has granted a motion to withdraw from electronic filing and service.  Once a self-represented party withdraws from electronic filing and service he or she may not return to this practice for the life of the case.

**What if I don't have a computer?**

**ER-1199**

There will be computers installed in courthouse lobbies to access e-filing for self-represented litigants. Please note, however, that if you are a self-represented litigant and you choose to utilize e-filing and e-service you will be responsible for reviewing your emails on a regular basis for service of documents from other parties and notices from the court. Not checking your email will not be a reasonable excuse for failing to comply with a court order or timely responses to legal pleadings.

## Understanding Fees

**Is there a fee to use e-filing?**

Yes and no, while the filer will still be responsible for paying standard court filing fees, there are no additional fees for utilizing File and Serve. There is, however, a convenience fee that is assessed to cover the credit card processing fees.

**What if I need to pay the filing fee in cash?**

There will be an option to file on-line using credit cards, debit cards, and electronic check. Cash payments for making your filings can still be made at the court.

**What are Optional Services? (Mailing Orders of the Court / Initial Appearance Fee)**

The Optional Services drop down serves two purposes: 1) it allows filers to select fees not associated with specific pleadings; and/or 2) provides a means for filers to pay for court services. Examples of optional services include: paying initial appearance fee; pay for court mandated classes; or court service by registered mail, certified copies, service / mail fees to have signed proposed orders or other court signed documents mailed and served.

After you have loaded your first document and clicked "Save Changes" the Optional Services button will appear.



**ER-1200**

The drop down contains the various services available and the associated fees to attach to that particular document. If you have multiple documents to load in this single efiling session (also referred to as envelope) be careful to link the particular service to the particular document. For example, if you have 4 documents to load but only one requires a certified copy, be careful to select the service of certified copy for that particular loaded document. This may not apply to the fee to have the court mail serve court signed pleadings. See below for more details.

**Initial Appearance**

If you are making your initial appearance by Answer or Notice of Appearance you must select the Optional Service "Initial Appearance" so to pay the required filing fee. Failure to do so will result in the rejection of your pleading by the court with a request that you resubmit with payment.

**Mailing / Service Fee**

In the paper world when a litigator forwarded a proposed order or notice to the court they complied with Idaho Rules of Civil Procedure, Rule 77(d) which stated:

> The prevailing party, or other party designated by the court to draft an order or judgment, shall provide and deliver to the clerk sufficient copies for service upon all parties together with envelopes addressed to each party, as provided above, with sufficient postage attached, unless otherwise ordered by the court.

Now in the electronic world the court will serve any signed orders or notice submitted by the parties via email to those attorneys or parties utilizing electronic filing. But what about the case where there are parties who are not participating in electronic filing such as a self-represented litigant or a party who simply never appeared in the lawsuit but per the rules / law requires service? The service of orders in this case will need to be accomplished via paper copies and stuffed stamped addressed envelopes. After careful analysis of this scenario and experience with early electronic filings the Court concluded that receipt of extra copies and stamped envelopes from litigants was not feasible in our electronic court. As such, we ask that litigants select the appropriate copies / mailing fee when they submit documents that require mail service by the court.

As described above, select Optional Services after you have loaded your document(s). Then select the appropriate mailing fee based upon the number of pages your pleading is.



Then select how many mailings you need sent by the court. This will most likely be determined by how many different parties need to served by mail.



Thinking of this in terms of paper simplifies the process. Below is an example.

You are filing in a case with 3 other parties in an action, two are accepting service through electronic filing and one is a self-represented party who has elected to opt out of electronic filing and service.

**ER-1201**

You are filing four documents: a motion; proposed notice of hearing (2 pages); affidavit of fact witness; and proposed order (3 pages). As such there are two documents that need to be forward via mail to the self-represented party after they are signed by the Court.

Typically where the filer has one case with one envelope to be served on one party you only need to select one mailing fee for the mailing (Mailing Fee 5-9 pages in this case). In this case, however, the notice of hearing would be served before the hearing and the proposed order (if the motion is granted) would be signed after the hearing.



Therefore the filer should select either A) "Mailing Fee (1-4) pages" and select the Quantity as 2 as the court is making two separate mailings; or B) select one "Mailing Fee (1-4) pages" when you load the Proposed Notice and another "Mailing Fee (1-4) pages" when you load the Proposed Order. Either way, the filer should **utilize the "Filing Comments" field in** Filings to provide instruction to the clerk regarding what services you have purchased and how specifically you need the clerk to serve the Court executed document.

**What do I put for the Party Responsible for Fees?**

# Filer Information

**When I filed paper, Idaho Court Administrative Rule 32(g)(20) instructed me to file unredacted copies of any order, decree or judgment in a child custody, child support, and paternity case. Do I do that when electronic filing as well?**

Per I.C.A.R. 32(g)(20) the records in cases involving child custody, child support, and paternity are exempt from public disclosure. However, the rule also states that no redacted copy of any order, decree or judgment must be prepared until there is a specific request for the document, in which case the document should be redacted in the manner specified in Idaho Rule of Civil Procedure 3(c)(1) (a)-(d).

To comply with the language above the attorney or self-represented litigant should electronically file and serve the proposed orders, decrees, or judgment in unredacted form BUT must identify in the e-filing software that the document is "CONFIDENTIAL." This will alert the clerk to seal said document. In the event that a copy is requested by the public the court will then make a redacted copy of the record available for inspection. The copy will also exclude those portions of the record that allege abuse, abandonment or neglect of a child, or which the court determines would inflict undue embarrassment to or put at risk a person referenced in the record who was a child at the time of the filing of the record, or which are exempt from disclosure under the other provisions of Supreme Court rules.

**Do I still need a certificate of service / mailing?**

Yes. Please continue to include a certificate of service. Of course the certificate will now indicate that you served your document via the File and Serve system to the email that was identified as the party's service contact. NOTE: Filers who submit proposed pleadings for the court's review, signature, and service (such as an order, notice of hearing, judgement, decree, etc.) must include a certificate of service that identifies the email address necessary for the court to complete electronic service of those parties who have electronically appeared in the action.

**What is the process for an out of state attorney appearing pro hoc vice?**

ER-1202

e-Filing FAQs | iCourt

First, review Idaho Bar Commission Rule 227 (https://isb.idaho.gov/wp-content/uploads/ibcr.pdf) to make sure that you have complied with the rule regarding appearing in the State of Idaho. The rule is clear that an Idaho attorney must remain on the case and be someone "with whom the court and opposing counsel may readily communicate regarding the conduct of the case." Further, the Idaho attorney must be present on all matters before the court (unless excused by the judge). As such, in the context of electronic filing and serving, there are two options for the out of state attorney to electronically file in the Idaho court:

1. The Idaho attorney's law firm will make filings; or
2. The Idaho attorney may invite the out of state attorney to be a "firm user" with the Idaho attorney's law firm.

It would not be appropriate or necessary to register an out-of-state firm as an Idaho law firm. If you anticipate that you are an out of state attorney that will want to file from out of state yourself, option No. 2 would allow you to do that. You simply contact the registered Idaho law firm administrator and ask them to send you an invitation to be a "Firm User."

**What do I do when the person I want to serve does not have a Service Contact? / Public Service Contact?**

**What do you do when you want to serve a document but discover that the party you intend to serve has not designated a service contact?**

Generally you may only designate a service contact for the party you represent, not for other parties. If the party you intend to serve is lacking a service contact, contact that party's attorney to request that they load a service contact as required by Supreme Court's Electronic Filing Rule. The Rule also permits a user to serve the document conventionally if the person being served has failed to designate a service contact.

An exception, however, exists for when the other party is a county prosecutor or public defender. A new feature has been added that will allow you to designate a "Public Service Contact" for county prosecutors and public defenders when they have failed to do so on their own.

> CLICK HERE (../efile/Public_Service_Contact-Instr_for_PAs_and_PDs.pdf) for complete step by step instructions.

**Notice to Private Attorneys:**

We anticipate that the Public Service Contact feature will be expanded to all attorneys in the future. Please be on the lookout for further communications about designating an email for this purpose.

**How do I file a Motion to Seal or file a document that is confidential?**

The first question is, what is "Confidential"? "Confidential" in reference to a document or information means the document or information will not be accessible to the public because it is **exempt from disclosure** or **sealed by court order** pursuant to Idaho Court Administrative Rule 32 (https://isc.idaho.gov/icar32) or information barred from disclosure to the public under federal or state law. Review Idaho Court Administrative Rule 32 (https://isc.idaho.gov/icar32) for a better understanding of the difference between a document that is "exempt from disclosure" without order and the process for seeking an order from the court to seal or redact a document.

Pursuant to the Idaho Supreme Court's Electronic File and Serve rule, if you need to file a motion to seal a document by court order you must file that motion (and the document that is the subject of the motion) conventionally. In other words you need to file the document in paper form to the court clerk.

**ER-1203**

If you are filing a document that is exempt from disclosure or sealed per a preexisting court order, then you MUST identifies the document as "confidential," in the Filing Comments.  The court will verify that designation and after review may modify the designation of any document incorrectly identified as "confidential."  Once the designation as "confidential" is confirmed, the document  will not be accessible to the public, but will be accessible to court staff and, where applicable, to certain governmental entities as authorized by law, court rule, or court order.



### How do I serve other individuals with my e-filed documents?

Filers are responsible for accomplishing service of all filings **as required by applicable court rules**. For this purpose, filers may use serve by hand delivery, certified mail, or use the e-filing system as it offers electronic service of each filing to the designated service contact. So, if the rules require personal service – you still must do so. (E.g. Service of Complaint) If the rules do not require personal service and the person or entity you are serving is registered with the e-filing system, you must serve through the e-filing service.

- **FIRST – Designate a "Service Contact" in each case.**

In order to serve and be served through the e-filing system the parties must all designate a service contact on a case by case basis. If you are the initiating party, upon acceptance of your filing, you must return to the case from your Dashboard to find the existing case (through your "Filing History"), select the black "Actions" to the right of your case name, and select "View Service Contacts." A new box will open which lists each of the parties. None of them will have a service contact identified. Identify the party or parties you represent and click on the black "Actions" button on the right. This will cause the option: "Add From Firm Service Contacts" to appear. Selecting that option will cause a box to appear which lists each of the firm service contacts you have created for your office. Select the appropriate service contact for the party you represent. This service contact selection and all emails within it (a service contact can be created so that it includes multiple emails such as the attorney, his assistant, and/or a firm service email) will be where all service in this matter from outside your office will go. (See response below to "*FAQ: What are Firm Service Contacts and Firm Users? How are they different?*" for more information on how to add to and manage your firm service contacts and firm users.) You will be responsible for checking the emails in your designated service contact so that you do not miss service from others. Once you have made your selection, click "Close." You will now be back to the parties list, click "Close" again and you are done. Again, if you are initiating the action you cannot designate a service contact until after your initial filling is accepted by the court.

**ER-1204**



If you are a responding party you must follow the same process to designate your service contact. You do not, however, need to wait until your filing has been accepted.



- **SECOND – When serving a document on other parties you MUST select Efile and Serve and you must select those parties to be served.**

**ER-1205**

11/18/22, 4:12 PM                                                                              e-Filing FAQs | iCourt



When you wish to "Serve" (serve only and not file with the court such as when you serve written discovery on a party) or "EfileAndServe" (both file with the court AND serve your filing on all other parties and other service contacts [if any] such as most subsequent filings such as a motion to compel for example) you must select the appropriate "Filing Type" before loading EACH of your documents. See image to the right. If you fail to do so and only have "EFile" selected for your "Filing Type" your document will be filed with the court but will NOT be served on the other parties. It is your responsibility to comply with all court rules. As such, it is your responsibility to ensure that you properly select the "Filing Type" for each document you load so to comply with those rules.

If you have selected the file type of "Serve" or "EfileAndServe" a new box will appear after you complete loading documents for the purpose of designating "Service Contacts." This box will list the parties and (if the parties have followed the process outlined above) will also identify the service contact for each.



You may amend the service contact information for the party you represent. You may not do so for other parties. If the party you intend to serve is lacking a service contact. see FAQ question "What do I do when the person I want to serve does not have a Service Contact? / Public Service Contact?" below for guidance.

**ER-1206**

(85 of 262), Page 85 of 262
Case 1:21-cv-00305-DCN Document 84 Filed 12/15/22 Page 84 of 149
Case 24-6697, 03/06/2025, DktEntry 10.7, Page 85 of 262

Note that the "Service Contacts" includes "Other Service Contacts" for individuals or entities that are not a party to the action but require service of the document you are serving via the electronic file and serve system.

**How can I tell if my documents were served and received?**

**If you want to serve a document, you must:**

1. Make sure that the "Filing Type" you have selected for EACH document is either "EFileAndServe" (will file the document with the court and serve it to the designated service contacts) or "Serve" (will only serve the document to the designated service contacts). Note, you must do this for EACH document. You cannot designate the "Filing Type" for your entire envelope with one designation.

NOTE: The default Filing Type on a subsequent pleading will always be "EFileAndServe."



2. You must designate at least one service contact. NOTE: The program's default setting will be to check each existing service contact. A couple of other things to remember:

   a) If there are not a service contact for your client, you MUST add one for your client. The rules REQUIRE this. Otherwise, other parties will not be able to serve you. (If you need help understanding how to develop service contacts for yourself or your law firm, see the FAQ above this one.)
   b) If you are the only service contact listed you will only be serving yourself. You will not be serving the other parties unless they are listed and checked.
   c) Documents are served immediately upon your submission of the envelope. The system does NOT wait until your envelope is "accepted" by the clerk.

**ER-1207**

11/18/22, 4:12 PM                                                                e-Filing FAQs | iCourt



**If you want to check the status of your service of documents, here is how:**

1. Find your envelope by clicking in the appropriate filing history folder (Pending, Accepted, etc.)
2. From the black Actions button, select "View Filing Details" or in the updated system coming shortly "View Envelope Details." (See screen shot below.)



3. The Envelope Details will provide you with information including for each separate document:

   a) The Filing Type (EFileAndServe, Serve, or EFile)
   b) Who you served (In the example below we know that the service contacts for "Michael Mehall" and Tywin Lannister were served. If you hover your cursor over the name, you will see the email associated with that service contact.)
   c) The download status of your service, in other words what is opened or "Not Opened." If the email was received and the document was downloaded for viewing then you can see the exact date and time that occurred. If the download status of the document is "Not Opened" this tells you that while the served party may have received the service email, they have not yet clicked on the link to download the document.

**ER-1208**

11/18/22, 4:12 PM                                                                                          e-Filing FAQs | iCourt



**How does an office administrator or attorney check the work of their filers if filer is unavailable?**

What if a filer called in sick or had to leave town on an emergency, can their supervisor check to see if their envelopes were rejected / accepted and if necessary correct the filings and get them back to court quickly?  The good news is, there is a way for an administrator to check on the filing activities of their filers and responses from the court.

From the orange Actions button select "Filing History."  A filing history list will appear.  Click on the large magnifying glass icon in the uper right hand corner.

You can then filter your search to include not just your filings ("My Filings") but all the filings in your office by clicking "My Firm."  You can also limit the date of the filings AND the type of filings (accepted,  rejected, drafts, case number, etc.).  Unfortunately you cannot narrow it down by the user but it will identify the users.

So if you want to make sure that all of your missing clerk's filings were accepted, you can do that.  If you want to have access to a file stamped document that only went to your missing filer's email, you will have it.  If there is a rejection, you can take action, copy the envelope, fix the error and get it back out to the court.

**ER-1209**

(88 of 262), Page 88 of 262
Case: 24-6697, 03/06/2025, DktEntry: 10.7, Page 88 of 262
Case 1:21-cv-00305-DCN Document 84 Filed 12/15/22 Page 87 of 149

e-Filing FAQs | iCourt



### How do I file exhibits that cannot be electronically filed?

How do I file exhibits that cannot be electronically filed?  What if it is an exhibit to a motion?  Do I file the motion electronically or conventionally with the exhibit?

Paragraph (f) of the e-filing rule regarding "Documents that Must be Filed Conventionally" it states:

"Other Documents that Cannot be Filed Electronically. **Any document that cannot be scanned or otherwise converted to electronic format must be filed conventionally.**  Upon a showing of good cause, the court may accept for conventional filing a document that would otherwise be required to be filed through the electronic filing system."

If you are filing a motion and one of the exhibits is a video for example, you should still electronically file the motion and when referencing Exhibit B for example, simply identify it as something filed conventionally with the court.  You will then have to walk or mail the video/exhibit in to the clerk for filing.  The clerk will maintain an old fashioned file to maintain these conventionally filed articles / exhibits.

### When can I use e-file?

E-filing is available 24 hours a day, seven days a week.

**ER-1210**

11/18/22, 4:12 PM                                                                e-Filing FAQs | iCourt

**When I need to file with a specific court, how will I know whether the county has transitioned to the new system?**

Counties shown in green on the map located on the home page have transitioned to the new system.  You can click here (http://icourt.idaho.gov/) to be taken to the home page.

**What qualifies as a signature when e-filing?**

The Supreme Court's e-filing rule defines what a valid signature is when e-filing. You have two options to place where the signature would otherwise appear:

1) You can type your name preceded by a "/s/" – Example

> /s/ John Q. Smith
> JOHN Q. Smith
> Attorney for Plaintiff Smith Corporation, Inc.

> Please note: If the person signing is not either an attorney representing a party in the case or a party in the case and the document is signed using the person's name preceded by "/s/," a duplicate of the document must be conventionally signed by the person signing and maintained by the attorney or party submitting the document until the expiration of the time to appeal or the determination of the appeal, whichever is longer.

2) You can use a scan of your handwritten signature - Example



> Please review the court rule regarding electronic filing and service for specific obligations regarding maintaining conventionally signed (hand signed documents) and documents that must undergo OCR (Optical Character Recognition).

**What should the filer provide in the "Filing Description" field?**

In the Filing Description field, please provide a complete title of the filing. The court clerk and judge will rely on your description to properly identify your filing in the court's case management system and to properly prepare for the consideration of your motion. It is also important to accurately describe your filing for statewide reporting purposes. For example, describing a filing as "Motion" is not sufficient or satisfactory if you were filing a "Motion to Compel Responses to Interrogatories." Please provide complete descriptive titles to your filings in the "Filing Description" field.

**What is a "Lead Document"? If I have exhibits or ancillary pleadings, should I load my filing as one .pdf / Lead Document or should I load them separately?**

"Lead Document" is the reference given by the software vendor for each separate PDF loaded. For clarification, any document requiring a file stamp is loaded, in a single PDF file, as a "Lead Document." Some examples may help:

> **Example 1:**

> Paper Filing -

An attorney is filing a pleading that has exhibits behind it. When he or she filed in paper form, this was one document that was stapled together and would receive a filing stamp from the clerk on the first page only.

Electronic Filing -

With e-filing, the above described document would be **ONE** PDF file loaded as a single Lead Document.

**Example 2:**

Paper Filing -

An attorney is filing a four pleading including: 1) Notice of Motion and Motion for Summary Judgment; 2) Memorandum in Support for Motion for Summary Judgment; 3) Affidavit of Attorney Atticus Finch with Exhibits in Support of Motion for Summary Judgment; and 4) Affidavit of John Smith with Exhibits in Support of Motion for Summary Judgment. When he or she filed in paper form, this was FOUR separate documents stapled separately and each of the FOUR documents would receive a filing stamp from the clerk on the first page of each.

Electronic Filing –

With e-filing, the above described documents would be **FOUR** PDF files loaded as four Lead Documents.

Tyler Technologies Firm User Guide makes references to loading "Attachments." Please disregard any references to such attachments as the Idaho e-filing is not configured to utilize this feature. Also disregard any language in the guide that suggests that only one document can be uploaded as a lead document per envelope (or session). To avoid confusion with filers and to streamline process in the courts the system has been configured to accommodate multiple "Lead Documents" (or files) and to load files / documents much the same way they were stapled when filing in the paper world. See above.

---

**Can I load more than one document per filing session?**

Yes, in fact we encourage you to do so long as the documents all pertain to the same case. For example, if the filer was filing a Motion to Compel, Motion for Summary Judgment (as well as other supportive pleadings such as Affidavits), Notice of Service of Response to Discovery, and Motion to Appear at Status Conference Telephonically – ALL IN THE SAME CASE – the filer SHOULD file all these pleadings in the same session or "envelope" as the courts my refer to each electronic session / submission to the Court for review and filing.

You can add multiple lead documents by clicking the "**Add another Filing**" icon.

Please note: You will find the "**Add Another Filing**" Icon, after you have upload your first lead document and clicked **Save Changes**. Please follow the steps below.

In the Filings Section - you will **Enter the details of your filing**:

- Select your Filing Type
- Select your Filing Code
- Filing description (This field allows you to describe the lead document that you are filing)
- Reference Number (This is for your internal records only)
- Filing Comments (This field is to communicate with the Court review in regards to this particular filing)
- Courtesy Copies (This is an email that is sent out as a courtesy to another party showing that your filing was done and accepted)
- Upload your first lead document and the Click Save Changes

Please Note: Any field that is not outlined in red is not a required field, this will vary by State.

11/18/22, 4:12 PM                                                        e-Filing FAQs | iCourt



To add additional lead documents, please scroll back up towards the Filings header (at the top of the Filing Section).  To the right you will see a grey icon "Add Another Filing."



Click the grey icon box, this will populate another filings field were you can now file your second lead document.

**ER-1213**

(92 of 262), Page 92 of 262
Case 1:21-cv-00305-DCN   Document 54   Filed 12/15/22   Page 91 of 149
Case 24-6697, 03/06/2025, DktEntry: 10.7, Page 92 of 262



Repeat the steps above until you have all your lead documents upload.

**How large can my filing be and how will I know how large it is?**

**How large is too large?**

Per the Supreme Court's e-filing / e-service rule, each PDF loaded shall not exceed 50 megabytes. Further, each envelope (filing session) should not exceed 100 megabytes in size.

**How will I know the size of my file?**

There are multiple ways to know the size of your file. For starters, adjust the view of the folders on your computer to see the size of files. (Note that 1 megabyte is about 1,000 kilobytes.) You will also know the size of your file after you have loaded it into e-filing. It will appear in gray italicized text next to the loaded title. (In the example image below the document was 100 pages, with color, and was a size of 4.34 MB.)

**What if my document is larger than 50MB?**

**ER-1214**

(93 of 262), Page 93 of 262
Case 24-6697, 03/06/2025, DktEntry: 10.7, Page 93 of 262
Case 1:21-cv-00305-DCN  Document 84  Filed 12/15/22  Page 92 of 149

If your file is larger than 50 megabytes, please break the document file into smaller documents / files. The Supreme Court's e-filing rule addresses this scenario with specific instructions:

> A document that exceeds the size limit must be broken down and submitted as separate files that do not exceed 50 megabytes each. Separate files under this section must include in the Filing Comments field for each submission a description that clearly identifies the part of the document that the file represents, for example, "Motion for Summary Judgment, part 1 of 2."

### Can I load and file a color document?

Yes. Having said that we ask that you only do so when necessary. Unnecessary loading of color files places a burden on the court's computer system and may cause your document to exceed the maximum size of 25 megabytes per file and/or 35 megabytes per envelope (filing session).

The clerks have experienced a number of electronic filings which contained an image which was nothing more than a dark blur. Please check your scans before submitting them with the court. It may be necessary to scan an image in color or to improve the resolution of the scan.

### Is the "Courtesy Copies" field where I list who I need the pleadings to be served to? - Should I send a courtesy electronic copy to judge?

The "Courtesy Copies" feature has nothing to do with formal service or filing of your documents.  The courtesy copies filed is an optional field to identify the email addresses of third parties you would like a copy of your filing to be automatically forwarded to after the filing is accepted by the clerk of the court.  An example of the use of this field would be to insert a client's email.

Some attorneys and judges have traditionally served / filed additional courtesy copies of their pleadings to the presiding judge's chambers.  Now that judges will receive a copy of your pleadings electronically, it is unnecessary to forward separate electronic copies to the judge via email.  As such, we ask that you refrain from doing so.  There is one exception.  If your judge is a traveling judge who presides in multiple counties, he or she may ask that parties forward courtesy copies so that they can review the documents when away from the county where they have access to the court's Odyssey Court Management System.  Contact the court clerk to see if this is the judge's preference.

### How will I know if my filing went through to the court?

Upon submission of your e-filing you will receive a confirmation email from the computer system.

### How will I know if my filing was accepted or rejected by the court? / How do I get a conformed copy of my filing?

Upon acceptance or rejection you will receive a second email.

If accepted you will be informed of the acceptance, the case number assigned (if an initial pleading opening a new case), and will receive a link to download your document which will include a file stamp from the court. (You should down load this document promptly as the link will only be active for a limited amount of time.) This file stamped version of your filing will serve as your conformed copy.

If rejected you will be told why. Some filings will be rejected as they are not appropriate for e-filing but should instead be filed conventionally at the courthouse in paper form. (See our response to **Are all documents required to be e-filed?**" above.) Some filings simply need a correction and may be resubmitted.

**ER-1215**

**What typically results in a "request for correction" from the court?**

A request from the clerk requesting that you correct a problem with your filing and then resubmit it could include (but are not limited to) the reasons below:

- Insufficient Fees or Funds
- Document Addressed to Wrong Clerk / Court
- Incorrect/Incomplete Information, problems could include:
  - Case Number
  - Case Type
  - Case Category
  - Filing Code
  - Party names on document(s)
  - Include Certificate of Service
- You attempted to initiate a new case when the case already exists
- Illegible / Unreadable
- No Signature
- Incorrect Formatting, problems could include:
  - Corrupt files
  - File types other than PDF (or not text searchable PDF if pleading)
  - Illegible
  - Not a page size of 8.5" x 11"
  - Files containing non-standard fonts
  - Secured or password-protected PDFs.
  - Documents combined as a single PDF when they should be separate
  - Documents submitted as multiple PDFs when they should be in a single PDF

**What is the process when I receive a "Request for Correction" or a "Denial of Fee Waiver" from the court?**

As stated above, you will be notified via email that your filing has been rejected. This email will include an explanation for why the submission was rejected. You will also see notice that you have a "Returned" filing in your e-filing "Dashboard" after signing into e-filing. Follow the process below to resubmit your filing envelope.

*Note: that you will follow this same process whether you are filing a correction, resubmitting with payment after the denial of a fee waiver request, or to resubmit a filing after a technical error.*

1. Select "Returned" in the Dashboard to view the rejected filing.

**ER-1216**

(95 of 262), Page 95 of 262
Case: 24-6697, 03/06/2025, DktEntry: 10.7, Page 95 of 262
Case 1:21-cv-00305-DCN Document 84 Filed 12/15/22 Page 94 of 149



2. You will then see the filings or envelopes that were rejected by the court.

3. Under "Actions" on the right of the filing's title - select "**Copy Envelope**." It is important that you use this Copy Envelope rather than start from scratch and create a new filing / envelope. This is for three reasons: 1) You will save time not having to enter information all over again; 2) You will save the court's unnecessary costs associated with the creation of another envelope; and 3) Copying an envelope will make it easier for the court to relate your filing date back to the date that you originally filed the document. In other words, if you originally submitted the document on Monday, it was rejected on Tuesday, and you resubmitted a correction on Wednesday, the court will mark the date of filing as Monday. This could be important if you are faced with a legal deadline. NOTE: To receive this relation back date, you must submit your correction WITHIN 3 BUSINESS DAYS and you must request the same in the "Filing Comments" field. (See Paragraph 4(c) below.) Please consult the Supreme Court's rule regarding e-filing to learn more about this rule.



4. Now that the envelope is open you can make any changes requested by the court be it changing party information, case information, adjusting fees, or downloading a corrected pdf for filing.

    a. If your pdf was identified as containing error you will need to scroll down to your defective "Filing" and select in "Actions" to the right "Remove Filing."

    b. With the defective filing removed you can now load a new pdf with the defect corrected.

    c. If you want the date of your filing to reflect the date you originally attempted filing, the Supreme Court's e-filing rule indicates that you must include the following language in the "Filing Comment" field:

        1. "RESUBMISSION OF CORRECTED FILING, REQUEST FILING RELATE BACK TO _____, THE DATE OF ORIGINAL SUBMISSION"

**ER-1217**

(96 of 262), Page 96 of 262
Case 1:21-cv-00305-DCN   Document 64   Filed 12/15/22   Page 95 of 149
Case 24-6697, 03/06/2025, DktEntry: 10.7, Page 96 of 262

5. Be sure to click "Save Changes" after you have completed your corrections.
6. Click "Continue" at the bottom of the page when you have completed and saved your corrections.
7. Review the Summary Page. If you don't need to back up and make other corrections you are ready to click "Submit." The envelope will then be forwarded to the clerk for a review of your corrected filing. You will receive email confirmation of your submittal.

TIP:  Once you have clicked on "Copy Envelope" that option will be gone as it is now copied.  If you don't send your copied envelope and click away from it, it can now be found in "Drafts."

---

**Do documents with non-filer signatures need to be "text searchable"?**

Yes.  There are now two ways to comply with this requirement.

- First, you could file the document with the scanned image but after you have "OCR'ed" the document (utilized an optical character recognition program) so that the PDF complies with the "text searchable" requirement.
- Second, you could create a word document that substitutes the hand signature with a "/s/" symbol followed by the name typed out and then convert that document into a PDF so that it is text searchable.  Note however that if you do this for the signature of opposing counsel or a third party then the attorney or party who submitted the document must maintain the conventionally signed document or a scanned copy of the conventionally signed document until the expiration of the time for appeal or determination of the appeal.  Consult the court rule regarding electronic filing and service for more detail.

## Registration and Support

**What are Firm Service Contacts and Firm Users? How are they different?**

**Do I have to register to use e-filing?**

**Where can I get more information about e-filing?**

**Where can I review the Supreme Court's rule regarding e-filing and e-service?**

TERMS AND CONDITIONS (/TERMSCONDITIONS)       PRIVACY POLICY (/PRIVACY-POLICY)       CYBERSECURITY (HTTPS://CYBERSECURITY.IDAHO.GOV/)

 

# EXHIBIT 8
# GIRDNER DECLARATION

# GIVENS PURSLEY LLP

Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
(208) 388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Don E. Knickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller

Patrick J. Miller
Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Michael O. Roe
Jamie C. Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

April 28, 2016

***VIA ELECTRONIC MAIL***
Christopher Rich
Clerk, Ada County
200 W. Front Street
Boise, ID 83702-7300

Re:   *Access to Newly Filed Complaints Under Odyssey Case Management System*

Dear Chris:

I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. As you may recall, back in 2013 we met to discuss concerns about delays that CNS was experiencing in accessing new civil complaints at the Ada County Courthouse. You and your staff were very helpful in addressing those concerns and instituting procedures that helped ensure timely access to most new civil actions. Same day access to new complaints is essential to CNS's ability to inform its subscribers – and, through its web site, the general public – of newsworthy new lawsuits while they are most newsworthy. Conversely, delays of even one day mean news reporting about new actions is likely to be less accurate, subject to manipulation by plaintiffs who leak complaints to favored parties, and less likely to capture the attention of the public. Ada County has largely achieved the goal of same day access to new civil case filings, although there continue to be exceptions to this rule.[1]

Given CNS's nationwide reach, it has worked with numerous other jurisdictions as they have transitioned to electronic filing ("e-filing"), and has found that absent steps to prevent it, e-filing can bring about delays in accessing new civil filings even where none existed before. Conversely, e-filing also presents courts with an opportunity to eliminate any delays that previously existed by adopting an electronic in-box, as explained more fully below. Given the fast-approaching conversion to the Odyssey Case Management system and e-filing, CNS has

---

[1] *See* attached Ada County District Court Media Access Log.

CNS_000074

Chris Rich, Clerk
Ada County
April 28, 2016
Page 2

some relevant insights and suggestions on how Ada County might work to ensure same day access under this new system.

*New Rules for Accessing Electronically Filed Records*

On January 7, 2016, the Idaho Supreme Court entered an order to effectuate the state's upgrade and change to e-filing in its district courts. This order, entitled "In re: Order Amending Rule on Electronic Filing and Service" ("Order"), specifically defines "electronic filing" and the procedures to be followed by litigants and court personnel. Section (e)(3) of the Order acknowledges the anticipated delay between "filing" and "accepting" an electronic document by addressing potential issues of documents being placed in an "error queue," weekend filings and statute of limitations problems. From the various training sessions that I have attended recently, I am told that litigants who file incorrectly will be given up to three (3) days to correct the problem and still be able to retain their original (earlier) filing date. As such, it is foreseeable that new civil case filings could be unavailable to the public for many days while they sit in an error queue awaiting further action by the clerk and/or litigant. Obviously, this would represent a significant degradation in timely public access to new civil case filings.

*Lessons Learned from Other Jurisdictions*

Thankfully, Idaho is not the first jurisdiction to transition to e-filing using Tyler Technology's Odyssey software. The most common and cost-efficient solution for providing access under the Odyssey system – and under other e-filing systems as well – has been to provide the public with access to a computer terminal at the clerk's office from which the media and any interested member of the public can view the electronic queue that new civil complaints flow into as soon as they are received by the clerk's office, even if they have not yet been officially "accepted." This allows the public to see what has been filed with the court without delay, providing near 100% same day access, and does not impede the clerk's ability to review and correct the filing if necessary.

The most recent example of a state court's implementation of the "electronic in-box" solution can be found at the Superior Court of DeKalb County in Decatur, Georgia, which offers permissive e-filing using Tyler Technology's Odyssey software. Prior to February of 2016, CNS's reporter had access to paper-filed complaints prior to those complaints being filed and scanned, with the media having access to the clerk's intake box. E-filed complaints were made available on public computer terminals in the clerk's office, but not before they had been fully processed, as evidenced by their date stamps and permanent case numbers, the result of which was that access to most e-filed complaints was delayed by a day or more. In February 2016, however, the clerk's office adopted an electronic in-box, through which complaints can be viewed on a computer terminal as soon as they cross the electronic version of the intake counter at the clerk's office, even if they have not yet been processed or assigned a case number. Through this system members of the public are now able to see virtually all new electronically

CNS_000075

Chris Rich, Clerk
Ada County
April 28, 2016
Page 3

filed complaints the same day they are received by the court.  A similar system is used in other
state courts in Georgia (the Fulton County State Court in Atlanta) and in Las Vegas, Nevada,
both of which also use Odyssey software.  For a tutorial on how these courts manage their
electronic in-box access, *see* attached **Exhibit 1**.

  The electronic in-box solution has also worked well outside of the Odyssey system,
including in state courts in Alabama, Connecticut and Utah, as well as in numerous federal
courts.  For example, complaints filed in most federal district courts automatically receive a
permanent case number and flow automatically online for remote viewing over PACER.  In
other federal district courts CNS, sees new complaints with either an individual temporary
number or a common shell number immediately on receipt by the court, before any processing
by court clerks and before receipt of a permanent case number.

  *Proposal – Request to Meet*

  Michael Mehall from the Idaho Supreme Court recently informed me that Ada County's
"go-live" date of June 2016 to transition to the Odyssey software has recently been pushed back
(again), although he was unsure of the new "go-live" date.  While the transition date is fast-
approaching, CNS believes that there is still time for your office to put in place the necessary
measures to ensure that the public continues to receive same-day access to new case filings.  To
that end, CNS proposes that your office adopt the same procedures used by numerous other
courts to ensure timely public access to such filings through the use of an electronic in-box (as
described above).

  As previously mentioned, CNS has experience in dealing with these issues around the
country.  Accordingly, we would like to meet with you and/or your staff to discuss how best to
ensure that Ada County's transition to e-filing does not result in a significant decline in timely
access to new case filings.  Please let me know when you are available for such a meeting.

  Thank you for your continued cooperation in this matter.

Sincerely,

Debora K. Kristensen

cc: Clients
8823966_1 [10429-2]

CNS_000076

**Ada County District Court Media Access Log**
4/4/2016 - 4/22/2016

**Cutoff**
5:00 PM

| | # of Cases | Percent of Total |
|---|---|---|
| Green = same day access | 44 | 74.6% same day |
| Yellow = 1 day delay | 11 | 18.6% next day |
| Red = 2 or more days delay | 4 | 6.8% two days or more |
| Total Cases | 59 | |

| Date Filed | Case Number | Time Stamp | Nature of Case | Date Available | Mail/Shelf | Clerk |
|---|---|---|---|---|---|---|
| 4/4/2016 | CV-OC-2016-06637 | 3:00 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06639 | 3:01 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06640 | 3:31 p.m. | Contract | 4/4/2016 | Shelf | Stephanie Vidak |
| 4/4/2016 | CV-OC-2016-06646 | 3:56 p.m. | Foreclosure | 4/4/2016 | Shelf | Austin Lowe |
| 4/4/2016 | CV-OC-2016-06526 | n/a | Contract | 4/5/2016 | Shelf | n/a |
| 4/5/2016 | CV-OC-2016-06687 | 11:36 a.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/5/2016 | CV-SC-2016-06698 | 1:40 p.m. | Fraud | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-OC-2016-06700 | 2:22 p.m. | Contract | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-SC-2016-06668 | 10:20 a.m. | Construction defects | 4/5/2016 | Shelf | Santiago Barrios |
| 4/5/2016 | CV-OC-2016-06708 | 3:16 p.m. | Contract | 4/5/2016 | Shelf | Austin Lowe |
| 4/5/2016 | CV-OC-2016-06710 | 3:25 p.m. | Contract | 4/5/2016 | Shelf | Stephanie Vidak |
| 4/5/2016 | CV-OC-2016-06715 | 4:07 p.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/6/2016 | CV-SC-2016-06734 | 11:25 a.m. | Negligence | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06768 | n/a | Contract | 4/6/2016 | Shelf | Santiago Barrios |
| 4/6/2016 | CV-OC-2016-06770 | 4:29 p.m. | Quiet title | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06767 | 3:54 p.m. | Contract | 4/6/2016 | Shelf | Alesia Butts |
| 4/7/2016 | OC-SC-2016-06821 | n/a | Contract | 4/7/2016 | Shelf | n/a |
| 4/7/2016 | OC-OC-2016-06836 | 4:23 p.m. | Eviction | 4/7/2016 | Shelf | Stacey Lafferty |
| 4/7/2016 | CV-OC-2016-06841 | 4:57 p.m. | Mechanics lien | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06852 | n/a | Contract | 4/8/2016 | shelf | n/a |

CNS_000077

**ER-1223**

| Date | Case Number | Time | Type | Date | Location | Attorney |
|---|---|---|---|---|---|---|
| 4/8/2016 | CV-OC-2016-06884 | 3:00 p.m. | Negligence | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06885 | 2:37 p.m. | Contract | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-PI-2016-06896 | 4:28 p.m. | Slip and fall | 4/11/2016 | Shelf | Stephanie Vidak |
| 4/8/2016 | CV-OC-2016-06880 | 2:25 p.m. | Foreclosure | 4/11/2016 | Shelf | Santiago Barrios |
| 4/11/2016 | CV-SC-2016-06918 | 11 a.m. | Contract | 4/11/2016 | Shelf | Alesia Butts |
| 4/11/2016 | CV-OC-2016-06951 | 2:53 p.m. | Contract | 4/11/2016 | Shelf | Stacey Lafferty |
| 4/11/2016 | CV-OC-2016-06969 | 4:00 p.m. | Employment | 4/11/2016 | Shelf | Santiago Burrios |
| 4/11/2016 | CV-OC-2016-06975 | 5:00 p.m. | Fraud | 4/12/2016 | Shelf | Austin Lowe |
| 4/11/2016 | CV-SC-2016-06973 | 5:00 p.m. | Contract | 4/12/2016 | Shelf | Alesia Butts |
| 4/12/2016 | CV-OC-2016-07031 | 3:37 p.m. | Foreign judgment | 4/12/2016 | Shelf | Austin Lowe |
| 4/12/2016 | CV-PI-2016-07046 | 4:28 p.m. | Slip and fall | 4/12/2016 | Shelf | Stephanie Vidak |
| 4/12/2016 | CV-PI-2016-07050 | 4:40 p.m. | Negligence | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/13/2016 | CV-SC-2016-07063 | 9:57 a.m. | Contract | 4/13/2016 | Shelf | Austin Lowe |
| 4/13/2016 | CV-SC-2016-07134 | 4:15 p.m. | Contract and Fraud | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07150 | 9:53 a.m. | Contract | 4/14/2016 | Shelf | Alesia Butts |
| 4/14/2016 | CV-SC-2016-07160 | 10:56 a.m. | Contract | 4/14/2016 | Shelf | Austin Lowe |
| 4/14/2016 | CV-OC-2016-07189 | n/a | Contract | 4/14/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07196 | 4 p.m. | Car collision | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/14/2016 | CV-OC-2016-07186 | 3:26 p.m. | Lien foreclosure | 4/15/2016 | Shelf | Austin Lowe |
| 4/15/2016 | CV-SC-2016-07209 | 10 a.m. | Contract | 4/15/2016 | Shelf | Tyler Atkinson |
| 4/15/2016 | CV-SC-2016-07257 | 4:33 p.m. | Contract | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/18/2016 | CV-OC-2016-07396 | n/a | Fraud | 4/18/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07387 | 1:59 p.m. | Petition | 4/18/2016 | Shelf | Austin Lowe |
| 4/18/2016 | CV-OC-2016-07407 | 4:16 p.m. | Foreclosure | 4/18/2016 | Shelf | Tyler Atkinson |
| 4/18/2016 | CV-OC-2016-07418 | 4:41 p.m. | Contract | 4/19/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07359 | 8:53 a.m. | Contract | 4/19/2016 | Shelf | Austin Lowe |
| 4/19/2016 | CV-OC-2016-07452 | 1:20 p.m. | Negligence | 4/19/2016 | Shelf | Alesia Butts |

CNS_000078

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/19/2016 | CV-OC-2016-07471 | 4:01 p.m. | Foreclosure | 4/19/2016 | Mail | Tyler Atkinson |
| 4/19/2016 | CV-OC-2016-07423 | 9:26 a.m. | Foreclosure | 4/19/2016 | Shelf | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07505 | 12:55 p.m. | Foreclosure | 4/20/2016 | Mail | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07564 | 4:17 p.m. | Contract | 4/20/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07653 | 2:03 p.m. | Petition | 4/21/2016 | Shelf | Austin Lowe |
| 4/21/2016 | CV-SC-2016-07654 | 2:15 p.m. | Contract | 4/21/2016 | Shelf | Santiago Barrios |
| 4/21/2016 | CV-PI-2016-07634 | 12:23 p.m. | Negligence | 4/22/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07707 | 4:50 p.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-OC-2016-07804 | n/a | Contract | 4/22/2016 | Shelf | Tyler Atkinson |
| 4/22/2016 | CV-OC-2016-07727 | 11 a.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-PI-2016-07820 | 4:44 p.m. | Negligence | 4/25/2016 | Shelf | Austin Lowe |
| 4/22/2016 | CV-OC-2016-07818 | 4:30 p.m. | Petition | 4/25/2016 | Shelf | Alesia Butts |

CNS_000079

# EXHIBIT 1

CNS_000080

**State of Georgia Civil E-filing**
**Electronic Inbox Requirement**

**State Court of Fulton County Implementation**

Georgia courts and their electronic filing service providers are required "to ensure[] that electronic documents are publicly accessible upon filing for viewing at no charge on a public access terminal available at the courthouse during regular business hours." Judicial Council of Georgia, Statewide Minimum Standards for E-Filing at ¶¶ 3(d), 4(c), available at http://www.georgiacourts.org/sites/default/files/Statewide%2520Minimum%2520Standards%2520for%2520E-filing%25209.25.2014.pdf.[1]

This so-called electronic inbox requirement was implemented in November 2015 by the State Court of Fulton County and its electronic filing service provider, Tyler.

Users of the State Court of Fulton County electronic inbox must acknowledge by signature the following notice:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING:** Electronic inbox access to electronic documents is being provided pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum Standards for Electronic Filing promulgated by the Judicial Council of Georgia effective September 25, 2014.  Pursuant to Uniform Rule 36.16(D), complaints and other documents accessible through this electronic inbox are presumed filed upon their receipt by the Court's electronic filing service provider.  However, the documents have not yet been processed and accepted by the Clerk of Court and, prior to processing, there is no guarantee that the documents will be accepted, assigned a case number, or placed on the docket with the Court.

What follows is a brief tour of the State Court of Fulton County's electronic inbox, as documented November 18, 2015.

---

[1] Court rules approved by the Georgia Supreme Court define "upon filing" for these purposes as "upon ... receipt by the electronic filing service provider."  Uniform Superior Court Rule 36.16 (D), (G), available at http://www.gasupreme.us/wp-content/uploads/2015/06/ORDER_MAY2015_FINAL.pdf.

1

CNS_000081

1) There are seven public computer terminals in the Fulton County State Court self-help center.  The
screen shot below shows the desktop of one of those computers, and the icon near the center of the screen
reads "InBox Press Review."



2

2) Double clicking on the desktop icon brings users to the log-in screen below.  Log-in credentials are obtained by requesting them at the front desk of the self-help center.  When requesting these credentials, users are asked to put their name on a sign-in sheet and to sign the disclaimer reproduced above.



3

CNS_000083

3) This is what the default screen looks like upon login. Filed documents are available going back for a period of 8 days. To the extent documents are already associated with a filed case, a case number appears in the case number column.





4

CNS_000084

4) Documents in the inbox can be searched using the search bar in the upper right hand corner of the inbox. As shown below, documents not yet processed and associated with a filed case are designated by the language "new case" and an ID number in place of a case number. Documents can also be searched by date of filing or document type and sorted such that the most recently filed documents appear first.



5

CNS_000085

5) To open a document, users simply click on the document title, which opens a PDF. The image below is of a "New Case" complaint that has not yet been processed.



CNS_000086

# EXHIBIT 9
# GIRDNER DECLARATION



Christopher D. Rich
Clerk of the District Court

Phil McGrane
Chief Deputy

200 W Front Street, Boise, Idaho 83702    Phone (208) 287-6879    Fax (208) 287-6909

May 6, 2016

RECEIVED

MAY 1 0 2016

Givens Pursley, LLP

Justice Linda Copple Trout
Interim Administrative Director of Courts
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Kevin Iwersen
Chief Information Officer
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Debora K. Kristensen
Partner
Givens Pursley
PO Box 2720
Boise, ID 83701

Greetings All:

Recently I was contacted by Ms. Kristensen regarding her client Courthouse News Service's ("CSN") ability to access new civil complaints after the Odyssey go-live.

Currently, the Ada County Clerk's office operates in a paper environment. Years ago, CSN requested to view new civil actions the same day they are filed. We adjusted our manual practices to provide CSN same day access to the paper record.

As I understand Ms. Kristensen's request; CSN is seeking same day access to the digital record even if it has not yet been officially "accepted". This would be accomplished via a public terminal that would have access to a queue specifically designed for this purpose.

The ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court. As Clerk, I am not in a position to assist CSN. Hence this introduction to the parties that can resolve the matter.

If I can be of assistance, please do not hesitate to contact me, and good luck.

Sincerely,

Christopher D. Rich

Doc No. 218 8568

| Court | Auditor | Recorder | Elections | Indigent Services |
|-------|---------|----------|-----------|-------------------|
| Ph (208) 287-6900 | Ph (208) 287-6879 | Ph (208) 287-6840 | Ph (208) 287-6860 | Ph (208) 287-7960 |
| Fax (208) 287-6919 | Fax (208) 287-6909 | Fax (208) 287-6849 | Fax (208) 287-6939 | Fax (208) 287-7969 |

# EXHIBIT 10
# GIRDNER DECLARATION

# GIVENS PURSLEY LLP

### Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora Kristensen Grasham
208 388 1287
dkk@givenspursley.com

| | | |
|---|---|---|
| Gary G. Allen | Kersti H. Kennedy | Samuel F. Parry |
| Charlie S. Baser | Neal A. Koskella | Randall A. Peterman |
| Christopher J. Beeson | Michael P. Lawrence | Blake W. Ringer |
| Jason J. Blakley | Franklin G. Lee | Michael O. Roe |
| Clint R. Bolinder | David R. Lombardi | Cameron D. Warr |
| Jeff W. Bower | Lars E. Lundberg | Robert B. White |
| Preston N. Carter | Kimberly D. Maloney | Michael V. Woodhouse |
| Jeremy C. Chou | Kenneth R. McClure | |
| Michael C. Creamer | Kelly Greene McConnell | |
| Amber N. Dina | Alex P. McLaughlin | William C. Cole (Of Counsel) |
| Bradley J. Dixon | Melodie A. McQuade | |
| Thomas E. Dvorak | Christopher H. Meyer | |
| Debora Kristensen Grasham | L. Edward Miller | Kenneth L. Pursley (1940-2015) |
| Donald Z. Gray | Judson B. Montgomery | James A. McClure (1924-2011) |
| Alex J. Gross | Deborah E. Nelson | Raymond D. Givens (1917-2008) |
| Brian J. Holleran | W. Hugh O'Riordan, LL.M. | |

June 14, 2021

**VIA EMAIL:** sthomas@idcourts.net

Sara Thomas
Administrative Director of the Courts
Idaho Administrative Office of the Courts
451 West State Street
P.O. Box 83720
Boise, ID 83720-0101

Re:   *Access to Newly Filed Civil Complaints in Idaho State Courts*

Dear Ms. Thomas:

I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. I am writing on behalf of CNS to express its continuing concerns with delays in access to newly filed civil complaints and to respectfully request that Idaho's state courts employ an electronic media inbox in order to provide CNS (and the public) with timely access to new civil complaints.

As you may recall, I made a similar request on behalf of CNS in 2016, when the Idaho state courts' adoption of mandatory e-filing resulted in delayed access to new civil complaints in  the Fourth Judicial District Court in and for Ada County  ("Ada County"). Prior to the adoption of e-filing, Ada County provided CNS with same day access to new paper-filed civil complaints. This changed, however, with the move to e-filing. New e-filed civil complaints have been, and continue to be, withheld from the press and public until after they are processed by court staff, resulting in delayed access. Enclosed is my correspondence with Ada County Court Clerk Christopher Rich from 2016, which provides additional background.

CNS_000025

Sara Thomas
June 14, 2021
Page 2

This exchange of letters in 2016 led to constructive conversations with the Administrator's Office concerning CNS's request for an electronic media inbox. Unfortunately, these conversations stalled in early 2017. Among other reasons, we understand the Administrator's Office was monitoring the *CNS v. Planet* case – an action filed in federal court by CNS against a California state court clerk based on First Amendment violations resulting from the clerk's policy and practice of withholding access to new civil complaints until after they were processed. That case is now resolved.

In January 2020, the Ninth Circuit affirmed summary judgment for CNS in the *Planet* case, holding that a First Amendment right of action attaches to new complaints when they are filed, and that the clerk's policy and practice of withholding new complaints until after administrative processing violated CNS's First Amendment right of access. *CNS v. Planet*, 947 F.3d 581, 596-98 (9th Cir. 2020).

In January 2021, the district court in the *Planet* case entered an amended judgment for declaratory relief and permanent injunction, declaring that the First Amendment right of access attaches on receipt regardless of whether courts use paper filing or e-filing systems and permanently enjoining the clerk from refusing to make newly filed complaints available until after they are processed. *CNS v. Planet*, 2021 WL 1605216 (C.D. Cal. 2021).

With the law in this Circuit settled, we renew CNS's request for a media inbox to provide timely access to new civil complaints throughout Idaho without the delays associated with administrative processing.

A media inbox is a virtual "bin" where all new civil public court records are available for review by the press when they are received by the court, before internal/administrative processing. State courts provide such access through a variety of e-filing systems. Relevant to Idaho, Tyler Technologies provides a media inbox (referred to as a press review queue) to numerous state courts through its Odyssey e-filing system.

For reference, Tyler has installed media inboxes in numerous courts throughout California (e.g., Fresno, Kern, Monterey, Santa Barbara and Santa Clara Counties), as well as the Las Vegas court system and six state courts in the Atlanta metro area. The service requests used by courts to request a media inbox from Tyler simply require the clerk to fill out a form identifying the public case designations that will be available in the inbox. Tyler can put the queue in place within a month, according to Tyler representatives.[1]

---

[1] Other state courts across the nation similarly provide pre-processing access to new e-filed complaints through their e-filing systems, including through their own versions of media inboxes and through systems providing on-receipt public access similar to the access provided by federal courts through the PACER system. While there are variations in how state courts go about providing pre-processing access to new complaints, the timing of it does not vary – it is on receipt, when the new filings are fresh and newsworthy.

CNS_000026

Sara Thomas
June 14, 2021
Page 3

Installation of a media inbox in Idaho would remedy the problem of delayed access to new complaints resulting from the Idaho courts' current policy of withholding access to those complaints until they are processed. It would also allow the press to report on new civil filings when they are fresh, which is when they are news. CNS is asking for access only to those civil filings that are in public case designations. It is not asking to see confidential or sealed cases, and it does not see those non-public cases in other courts that provide access to new complaints through media inboxes provided by Tyler.

Delays in access to new civil complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and persistent. The Administrator's Office can remedy this problem by making a simple request to Tyler that it implement a media inbox ("press review queue"). Accordingly, we respectfully ask that the Administrator's Office instruct Tyler to provide a media inbox in Idaho.

Given the ease with which the delays in access in Idaho can be resolved coupled with CNS's multi-year experience in dealing with such delays, CNS respectfully requests that the Administrator's Office let us know by **July 1, 2021**, whether it will agree to provide this instruction to Tyler and agree to provide pre-processing access to new e-filed civil complaints in all of Idaho's state courts.

We appreciate your timely attention to this matter.  Please feel free to contact me if you have any questions.

Sincerely,

Debora K. Grasham

DKG/SW
Enclosure
cc:    Jason Spillman, Legal Counsel, Idaho Supreme Court (*via email:* jspillman@idcourts.net)
15708437 [10429.2]

CNS_000027

# GIVENS PURSLEY LLP

### Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
208-388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Don E. Knickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller
Patrick J. Miller

Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Randall A. Peterman
Michael O. Roe
Jamie Caplan Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

December 28, 2016

Michael Henderson
Legal Counsel, Idaho Supreme Court
P.O. Box 83720
Boise, ID 83720-0101

Re:   <u>Media Access To E-Filed Civil Complaints</u>

Dear Michael:

On behalf of Courthouse News Service ("CNS"), I write to follow up on CNS's concerns about delays in access to newly e-filed civil complaints in the e-filing environment. Although we have communicated several times about this issue since I brought it to your attention in May 2016, the solution CNS has suggested for resolving this anticipated problem – *i.e.,* the adoption of an electronic in-box, through which the media can see new e-filed complaints even if clerks have not yet completed their administrative tasks associated with a complaint's intake – has not been adopted. Meanwhile, the delays in access to e-filed complaints that CNS anticipated are in fact occurring in Ada County, where e-filing is now mandatory and the majority of new civil complaints cannot be seen for at least one court day, and often longer, while they are being administratively processed.

As a reminder, CNS is a nationwide news service that focuses on civil litigation in state and federal courts, from the filing of a new civil action on through to appellate arguments and rulings. CNS offers a variety of publications, including but not limited to its original, staff-written new litigation reports for subscribers. CNS also publishes a freely available website, www.courthousenews.com, which features staff-written articles and reaches roughly one million readers per month. CNS's subscribers include most of the nation's major law firms. Other media organizations also subscribe, from the *Los Angeles Times* in the West to *The Wall Street Journal* in the East, putting CNS in the position of a nationwide pool reporter.

On April 28, 2016, I wrote to Ada County Clerk Chris Rich to share with him CNS's concerns about the delays in access to newly filed civil complaints that tend to accompany the

CNS_000028

Michael Henderson
December 28, 2016
Page 2

transition to e-filing unless steps are taken to ensure the press can see the day's complaints irrespective of whether administrative processing has been completed. Mr. Rich responded by letter dated May 6, referring my request to the Administrative Director of Courts and the Idaho Supreme Court's Chief Information Officer, indicating: "[t]he ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court." Copies of both letters are enclosed for your reference. Following an initial discussion with you in mid-May and several follow up emails, I provided you with a memorandum that gave further detail on the electronic in-box solution currently in use at other courts, including state courts that use Tyler's Odyssey case management and e-filing systems. A copy of that memorandum is also enclosed.

To date, we have not been advised as to whether the solution we have proposed to ensure the press has timely access to civil complaints in the e-filing environment is being considered. Meanwhile, the delays in access to e-filed complaints that CNS anticipated are in fact occurring in Ada County, where e-filing is now mandatory and the majority of new civil complaints cannot be seen for at least one court day, and often longer, while they are being administratively processed.[1]

These delays are not surprising. As we indicated in the enclosed memorandum, any number of factors, such as staff illnesses or vacations, holidays, or even something as simple as a staff birthday celebration may prevent clerks from completing the administrative tasks associated with the intake of a new complaint on the day those complaints are filed for one or more court days, resulting in delays in access. But as several courts have found, there is a First Amendment right of press and public access to complaints that is not contingent on those complaints having first been administratively processed, and even short delays in access to court records are effectively denials of access that implicate the constitutional right of access.

Courts have expressly ruled that the First Amendment provides a presumptive right of access to complaints, which "arises when a complaint is received by a court, rather than after it is 'processed.'" *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *13 (C.D. Cal. May 26, 2016) (order on cross-motions for summary judgment); *Courthouse News Serv. v. Planet*, 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016) (permanently enjoining California court clerk "from refusing to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed."); *accord Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *2-4, 11 (S.D. Tex. July 20, 2009) ("*Jackson*") (entering preliminary injunction where Houston court clerk's practice of delaying access to new civil petitions until after the completion of clerical duties "is effectively an access denial and is, therefore, unconstitutional" because "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.") (quoting *Grove Fresh Distribs., Inc. v.*

_____

[1] Under § (e)1.A. of the Idaho Supreme Court's rule on electronic filing and service, a complaint is deemed "filed" when it is submitted electronically to the court and the electronic filing system receives the document.

CNS_000029

Michael Henderson
December 28, 2016
Page 3

*Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *see also Courthouse News Serv. v. Tingling*, U.S. Dist. Court Case No. 16-cv-08742 (ER) (S.D.N.Y. Dec. 16, 2016) (granting CNS's motion to preliminarily enjoin New York Supreme clerk "from denying access to newly filed civil complaints until after clerical processing" and to require the clerk to provide access to new complaints "in a timely manner upon receipt").

The principle that administrative processing is not a precondition to access applies equally in the paper and e-filing environment. In *Jackson*, the Houston clerk had adopted permissive e-filing and the court's ruling applied to both paper and e-filed complaints. *Jackson*, 2009 WL 2163609, at *2, 5. In *Planet*, the clerk's office had not yet moved to e-filing but had plans to do so, and as such the California federal district court that issued an injunction prohibiting the clerk from conditioning access on processing made clear that access upon receipt arises "regardless of whether such complaints are filed in paper form or e-filed." *Courthouse News Serv. v. Planet*, 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016) (permanently enjoining California court clerk "from refusing to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed"). And the *Tingling* action was prompted by delays in access to new complaints that had not been a problem in the paper-filing environment but rather arose after a switch to e-filing and a practice by the clerk of not permitting access to e-filed complaints until after administrative processing.

These cases are consistent with decisions by many other courts finding that delays in access to court documents, even short ones, are effectively access denials that implicate the First Amendment. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (delaying access to court filings, even for "as little as a day," "delays access to news, and delay burdens the First Amendment"); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (district court judge's withholding court records from public access for the first 48 hours after submission to determine if sealing was appropriate was "a total restraint on the public's first amendment right of access even though the restraint is limited in time" and was ... "unconstitutional unless the strict test for denying access has been satisfied."); *accord, e.g., Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents, we ... emphasize that the public and press generally have a contemporaneous right of access to court documents ... when the right applies"); *Grove Fresh*, 24 F.3d at 897 ("[i]n light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous").

As CNS has previously noted, it is relatively simple and very feasible for court clerks to provide timely access to newly e-filed civil complaints on receipt and prior to processing, as is currently being done by individual courts in Nevada, Georgia, Utah and Connecticut, statewide in Alabama, and in the vast majority of federal district courts. The ease with which this electronic in-box can be established is illustrated by the fact that Tyler, the e-filing vendor for the

CNS_000030

Michael Henderson
December 28, 2016
Page 4

Georgia courts that adopted the electronic in-box, did not charge the courts any additional fees in order to set up electronic in-boxes that allow journalists to review new complaints on receipt for filing and before administrative processing.

In light of the foregoing, CNS respectfully requests that the Idaho courts adopt the electronic in-box solution previously suggested, starting with Ada County as a pilot county, thereby ensuring the press can review newly e-filed complaints in a timely manner irrespective of whether those complaints have been administratively processed.  As I indicated previously, CNS has personnel available to assist the Court in implementing such a system and would be happy to arrange a meeting and/or call with the Court's personnel to begin this process.

Please let me know how you would like to proceed.

Sincerely,

Debora K. Kristensen

cc:     Chief Justice Roger Burdick, Idaho Supreme Court
        Sara Thomas, Administrative Director of Courts
        Kevin Iwersen, Chief Information Officer, Idaho Supreme Court
        Chris Rich, Clerk, Ada County

CNS_000031

# GIVENS PURSLEY LLP

Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
(208) 388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Dan E. Krickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller

Patrick J. Miller
Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Michael O. Roe
Jamie C. Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

April 28, 2016

**VIA ELECTRONIC MAIL**
Christopher Rich
Clerk, Ada County
200 W. Front Street
Boise, ID 83702-7300

Re:   *Access to Newly Filed Complaints Under Odyssey Case Management System*

Dear Chris:

I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. As you may recall, back in 2013 we met to discuss concerns about delays that CNS was experiencing in accessing new civil complaints at the Ada County Courthouse. You and your staff were very helpful in addressing those concerns and instituting procedures that helped ensure timely access to most new civil actions. Same day access to new complaints is essential to CNS's ability to inform its subscribers – and, through its web site, the general public – of newsworthy new lawsuits while they are most newsworthy. Conversely, delays of even one day mean news reporting about new actions is likely to be less accurate, subject to manipulation by plaintiffs who leak complaints to favored parties, and less likely to capture the attention of the public. Ada County has largely achieved the goal of same day access to new civil case filings, although there continue to be exceptions to this rule.[1]

Given CNS's nationwide reach, it has worked with numerous other jurisdictions as they have transitioned to electronic filing ("e-filing"), and has found that absent steps to prevent it, e-filing can bring about delays in accessing new civil filings even where none existed before. Conversely, e-filing also presents courts with an opportunity to eliminate any delays that previously existed by adopting an electronic in-box, as explained more fully below. Given the fast-approaching conversion to the Odyssey Case Management system and e-filing, CNS has

---

[1] *See* attached Ada County District Court Media Access Log.

CNS_000032

Chris Rich, Clerk
Ada County
April 28, 2016
Page 2

some relevant insights and suggestions on how Ada County might work to ensure same day access under this new system.

*New Rules for Accessing Electronically Filed Records*

On January 7, 2016, the Idaho Supreme Court entered an order to effectuate the state's upgrade and change to e-filing in its district courts. This order, entitled "In re: Order Amending Rule on Electronic Filing and Service" ("Order"), specifically defines "electronic filing" and the procedures to be followed by litigants and court personnel. Section (e)(3) of the Order acknowledges the anticipated delay between "filing" and "accepting" an electronic document by addressing potential issues of documents being placed in an "error queue," weekend filings and statute of limitations problems. From the various training sessions that I have attended recently, I am told that litigants who file incorrectly will be given up to three (3) days to correct the problem and still be able to retain their original (earlier) filing date. As such, it is foreseeable that new civil case filings could be unavailable to the public for many days while they sit in an error queue awaiting further action by the clerk and/or litigant. Obviously, this would represent a significant degradation in timely public access to new civil case filings.

*Lessons Learned from Other Jurisdictions*

Thankfully, Idaho is not the first jurisdiction to transition to e-filing using Tyler Technology's Odyssey software. The most common and cost-efficient solution for providing access under the Odyssey system – and under other e-filing systems as well – has been to provide the public with access to a computer terminal at the clerk's office from which the media and any interested member of the public can view the electronic queue that new civil complaints flow into as soon as they are received by the clerk's office, even if they have not yet been officially "accepted." This allows the public to see what has been filed with the court without delay, providing near 100% same day access, and does not impede the clerk's ability to review and correct the filing if necessary.

The most recent example of a state court's implementation of the "electronic in-box" solution can be found at the Superior Court of DeKalb County in Decatur, Georgia, which offers permissive e-filing using Tyler Technology's Odyssey software. Prior to February of 2016, CNS's reporter had access to paper-filed complaints prior to those complaints being filed and scanned, with the media having access to the clerk's intake box. E-filed complaints were made available on public computer terminals in the clerk's office, but not before they had been fully processed, as evidenced by their date stamps and permanent case numbers, the result of which was that access to most e-filed complaints was delayed by a day or more. In February 2016, however, the clerk's office adopted an electronic in-box, through which complaints can be viewed on a computer terminal as soon as they cross the electronic version of the intake counter at the clerk's office, even if they have not yet been processed or assigned a case number. Through this system members of the public are now able to see virtually all new electronically

CNS_000033

Chris Rich, Clerk
Ada County
April 28, 2016
Page 3

filed complaints the same day they are received by the court. A similar system is used in other
state courts in Georgia (the Fulton County State Court in Atlanta) and in Las Vegas, Nevada,
both of which also use Odyssey software. For a tutorial on how these courts manage their
electronic in-box access, *see* attached **Exhibit 1**.

The electronic in-box solution has also worked well outside of the Odyssey system,
including in state courts in Alabama, Connecticut and Utah, as well as in numerous federal
courts. For example, complaints filed in most federal district courts automatically receive a
permanent case number and flow automatically online for remote viewing over PACER. In
other federal district courts CNS, sees new complaints with either an individual temporary
number or a common shell number immediately on receipt by the court, before any processing
by court clerks and before receipt of a permanent case number.

*Proposal – Request to Meet*

Michael Mehall from the Idaho Supreme Court recently informed me that Ada County's
"go-live" date of June 2016 to transition to the Odyssey software has recently been pushed back
(again), although he was unsure of the new "go-live" date. While the transition date is fast-
approaching, CNS believes that there is still time for your office to put in place the necessary
measures to ensure that the public continues to receive same-day access to new case filings. To
that end, CNS proposes that your office adopt the same procedures used by numerous other
courts to ensure timely public access to such filings through the use of an electronic in-box (as
described above).

As previously mentioned, CNS has experience in dealing with these issues around the
country. Accordingly, we would like to meet with you and/or your staff to discuss how best to
ensure that Ada County's transition to e-filing does not result in a significant decline in timely
access to new case filings. Please let me know when you are available for such a meeting.

Thank you for your continued cooperation in this matter.

Sincerely,

Debora K. Kristensen

cc:    Clients
8829966_1 [10429-2]

CNS_000034

**Ada County District Court Media Access Log**
**4/4/2016 - 4/22/2016**

| | # of Cases | Percent of Total |
|---|---|---|
| Green = same day access | 44 | 74.6% same day |
| Yellow = 1 day delay | 11 | 18.6% next day |
| Red = 2 or more days delay | 4 | 6.8% two days or more |
| Total Cases | 59 | |

Cutoff 5:00 PM

| Date Filed | Case Number | Time Stamp | Nature of Case | Date Available | Mail/Shelf | Clerk |
|---|---|---|---|---|---|---|
| 4/4/2016 | CV-OC-2016-06637 | 3:00 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06639 | 3:01 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2015-06640 | 3:31 p.m. | Contract | 4/4/2016 | Shelf | Stephanie Vidak |
| 4/4/2016 | CV-OC-2016-06646 | 3:56 p.m. | Foreclosure | 4/4/2016 | Shelf | Austin Lowe |
| 4/4/2016 | CV-OC-2016-06526 | n/a | Contract | 4/5/2016 | Shelf | n/a |
| 4/5/2016 | CV-OC-2016-06687 | 11:36 a.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/5/2016 | CV-SC-2016-06698 | 1:40 p.m. | Fraud | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-OC-2016-06700 | 2:22 p.m. | Contract | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-SC-2016-06668 | 10:20 a.m. | Construction defects | 4/5/2016 | Shelf | Santiago Barrios |
| 4/5/2016 | CV-OC-2016-06708 | 3:16 p.m. | Contract | 4/5/2016 | Shelf | Austin Lowe |
| 4/5/2016 | CV-OC-2016-06710 | 3:25 p.m. | Contract | 4/5/2016 | Shelf | Stephanie Vidak |
| 4/5/2016 | CV-OC-2016-06715 | 4:07 p.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/6/2016 | CV-SC-2016-06734 | 11:25 a.m. | Negligence | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06768 | n/a | Contract | 4/6/2016 | Shelf | Santiago Barrios |
| 4/6/2016 | CV-OC-2016-06770 | 4:29 p.m. | Quiet title | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06767 | 3:54 p.m. | Contract | 4/6/2016 | Shelf | Alesia Butts |
| 4/7/2016 | OC-SC-2016-06821 | n/a | Contract | 4/7/2016 | Shelf | n/a |
| 4/7/2016 | OC-OC-2016-06836 | 4:23 p.m. | Eviction | 4/7/2016 | Shelf | Stacey Lafferty |
| 4/7/2016 | CV-OC-2016-06841 | 4:57 p.m. | Mechanics lien | 4/8/2016 | Shelf | Santiago Barrios |
| 4/8/2016 | CV-OC-2016-06852 | n/a | Contract | 4/8/2016 | shelf | n/a |

CNS_000035

| Date | Case Number | Type | Time | Date | | Name |
|---|---|---|---|---|---|---|
| 4/8/2016 | CV-OC-2016-06884 | Negligence | 3:00 p.m. | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06885 | Contract | 2:37 p.m. | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-PI-2016-06896 | Slip and fall | 4:28 p.m. | 4/11/2016 | Shelf | Stephanie Vidak |
| 4/8/2016 | CV-OC-2016-06880 | Foreclosure | 2:25 p.m. | 4/11/2016 | Shelf | Santiago Barrios |
| 4/11/2016 | CV-SC-2016-06918 | Contract | 11 a.m. | 4/11/2016 | Shelf | Alesia Butts |
| 4/11/2016 | CV-OC-2016-06951 | Contract | 2:53 p.m. | 4/11/2016 | Shelf | Stacey Lafferty |
| 4/11/2016 | CV-OC-2016-06969 | Employment | 4:00 p.m. | 4/11/2016 | Shelf | Santiago Burrios |
| 4/11/2016 | CV-OC-2016-06975 | Fraud | 5:00 p.m. | 4/12/2016 | Shelf | Austin Lowe |
| 4/11/2016 | CV-SC-2016-06973 | Contract | 5:00 p.m. | 4/12/2016 | Shelf | Alesia Butts |
| 4/12/2016 | CV-OC-2016-07031 | Foreign judgment | 3:37 p.m. | 4/12/2016 | Shelf | Austin Lowe |
| 4/12/2016 | CV-PI-2016-07046 | Slip and fall | 4:28 p.m. | 4/12/2016 | Shelf | Stephanie Vidak |
| 4/12/2016 | CV-PI-2016-07050 | Negligence | 4:40 p.m. | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/13/2016 | CV-SC-2016-07063 | Contract | 9:57 a.m. | 4/13/2016 | Shelf | Austin Lowe |
| 4/13/2016 | CV-SC-2016-07134 | Contract and Fraud | 4:15 p.m. | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07150 | Contract | 9:53 a.m. | 4/14/2016 | Shelf | Alesia Butts |
| 4/14/2016 | CV-SC-2016-07160 | Contract | 10:56 a.m. | 4/14/2016 | Shelf | Austin Lowe |
| 4/14/2016 | CV-OC-2016-07189 | Contract | n/a | 4/14/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07196 | Car collision | 4 p.m. | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/14/2016 | CV-OC-2016-07186 | Lien foreclosure | 3:26 p.m. | 4/15/2016 | Shelf | Austin Lowe |
| 4/15/2016 | CV-SC-2016-07209 | Contract | 10 a.m. | 4/15/2016 | Shelf | Tyler Atkinson |
| 4/15/2016 | CV-SC-2016-07257 | Contract | 4:33 p.m. | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/18/2016 | CV-OC-2016-07396 | Fraud | n/a | 4/18/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07387 | Petition | 1:59 p.m. | 4/18/2016 | Shelf | Austin Lowe |
| 4/18/2016 | CV-OC-2016-07407 | Foreclosure | 4:16 p.m. | 4/18/2016 | Shelf | Tyler Atkinson |
| 4/18/2016 | CV-OC-2016-07418 | Contract | 4:41 p.m. | 4/19/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07359 | Contract | 8:53 a.m. | 4/19/2016 | Shelf | Austin Lowe |
| 4/19/2016 | CV-OC-2016-07452 | Negligence | 1:20 p.m. | 4/19/2016 | Shelf | Alesia Butts |

CNS_000036

| 4/19/2016 | CV-OC-2016-07471 | 4:01 p.m. | Foreclosure | 4/19/2016 | Mail | Tyler Atkinson |
| 4/19/2016 | CV-OC-2016-07423 | 9:26 a.m. | Foreclosure | 4/19/2016 | Shelf | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07505 | 12:55 p.m. | Foreclosure | 4/20/2016 | Mail | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07564 | 4:17 p.m. | Contract | 4/20/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07653 | 2:03 p.m. | Petition | 4/21/2016 | Shelf | Austin Lowe |
| 4/21/2016 | CV-SC-2016-07654 | 2:15 p.m. | Contract | 4/21/2016 | Shelf | Santiago Barrios |
| 4/21/2016 | CV-PF-2016-07634 | 12:23 p.m. | Negligence | 4/22/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07707 | 4:50 p.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-OC-2016-07804 | n/a | Contract | 4/22/2016 | Shelf | Tyler Atkinson |
| 4/22/2016 | CV-OC-2016-07727 | 11 a.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-PF-2016-07820 | 4:44 p.m. | Negligence | 4/25/2016 | Shelf | Austin Lowe |
| 4/22/2016 | CV-OC-2016-07818 | 4:30 p.m. | Petition | 4/25/2016 | Shelf | Alesia Butts |

# EXHIBIT 1

CNS_000038

State of Georgia Civil E-filing
Electronic Inbox Requirement

### State Court of Fulton County Implementation

Georgia courts and their electronic filing service providers are required "to ensure[] that electronic documents are publicly accessible upon filing for viewing at no charge on a public access terminal available at the courthouse during regular business hours." Judicial Council of Georgia, Statewide Minimum Standards for E-Filing at ¶¶ 3(d), 4(c), available at http://www.georgiacourts.org/sites/default/files/Statewide%2520Minimum%2520Standards%2520for%2520E-filing%25209.25.2014.pdf.[1]

This so-called electronic inbox requirement was implemented in November 2015 by the State Court of Fulton County and its electronic filing service provider, Tyler.

Users of the State Court of Fulton County electronic inbox must acknowledge by signature the following notice:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING**: Electronic inbox access to electronic documents is being provided pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum Standards for Electronic Filing promulgated by the Judicial Council of Georgia effective September 25, 2014. Pursuant to Uniform Rule 36.16(D), complaints and other documents accessible through this electronic inbox are presumed filed upon their receipt by the Court's electronic filing service provider. However, the documents have not yet been processed and accepted by the Clerk of Court and, prior to processing, there is no guarantee that the documents will be accepted, assigned a case number, or placed on the docket with the Court.

What follows is a brief tour of the State Court of Fulton County's electronic inbox, as documented November 18, 2015.

---

[1] Court rules approved by the Georgia Supreme Court define "upon filing" for these purposes as "upon ... receipt by the electronic filing service provider." Uniform Superior Court Rule 36.16 (D), (G), available at http://www.gasupreme.us/wp-content/uploads/2015/06/ORDER_MAY2015_FINAL.pdf.

1

CNS_000039

1) There are seven public computer terminals in the Fulton County State Court self-help center. The screen shot below shows the desktop of one of those computers, and the icon near the center of the screen reads "InBox Press Review."



2

CNS_000040

2)  Double clicking on the desktop icon brings users to the log-in screen below.  Log-in credentials are obtained by requesting them at the front desk of the self-help center.  When requesting these credentials, users are asked to put their name on a sign-in sheet and to sign the disclaimer reproduced above.



3

CNS_000041

3) This is what the default screen looks like upon login. Filed documents are available going back for a period of 8 days. To the extent documents are already associated with a filed case, a case number appears in the case number column.



4

CNS_000042

4) Documents in the inbox can be searched using the search bar in the upper right hand corner of the inbox. As shown below, documents not yet processed and associated with a filed case are designated by the language "new case" and an ID number in place of a case number. Documents can also be searched by date of filing or document type and sorted such that the most recently filed documents appear first.



CNS_000043

**ER-1254**

5) To open a document, users simply click on the document title, which opens a PDF. The image below is of a "New Case" complaint that has not yet been processed.



6

CNS_000044



Christopher D. Rich
Clerk of the District Court

Phil McGrane
Chief Deputy

200 W Front Street, Boise, Idaho 83702    Phone (208) 287-6879    Fax (208) 287-6909

May 6, 2016

RECEIVED

MAY 1 0 2016

Givens Pursley, LLP

Justice Linda Copple Trout
Interim Administrative Director of Courts
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Kevin Iwersen
Chief Information Officer
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Debora K. Kristensen
Partner
Givens Pursley
PO Box 2720
Boise, ID 83701

Greetings All:

Recently I was contacted by Ms. Kristensen regarding her client Courthouse News Service's ("CSN") ability to access new civil complaints after the Odyssey go-live.

Currently, the Ada County Clerk's office operates in a paper environment. Years ago, CSN requested to view new civil actions the same day they are filed. We adjusted our manual practices to provide CSN same day access to the paper record.

As I understand Ms. Kristensen's request; CSN is seeking same day access to the digital record even if it has not yet been officially "accepted". This would be accomplished via a public terminal that would have access to a queue specifically designed for this purpose.

The ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court. As Clerk, I am not in a position to assist CSN. Hence this introduction to the parties that can resolve the matter.

If I can be of assistance, please do not hesitate to contact me, and good luck.

Sincerely,

Christopher D. Rich

| Court | Auditor | Recorder | Elections | Indigent Services |
|-------|---------|----------|-----------|-------------------|
| Ph (208) 287-6900 | Ph (208) 287-6879 | Ph (208) 287-6840 | Ph (208) 287-6860 | Ph (208) 287-7960 |
| Fax (208) 287-6919 | Fax (208) 287-6909 | Fax (208) 287-6849 | Fax (208) 287-6939 | Fax (208) 287-7969 |

CNS_000045

## Media Access to New Civil Complaints in the E-Filing Environment
### Prepared by Courthouse News Service - August 2016

The transition to e-filing presents the Idaho courts with the opportunity to ensure consistent timely press access to new civil complaints on a statewide basis comparable to that traditionally available in the paper filing environment.

Courthouse News Service ("CNS") respectfully proposes that access to new civil e-filed complaints filed in Idaho courts take place at the point of receipt, _prior_ to clerk processing, a set of administrative tasks that in the e-filing environment often includes but is not limited to official "acceptance" of the complaint by a court clerk. Press access at the point of receipt – ideally at the Electronic Filing Manager ("EFM") level – mirrors traditional press access to paper filings, which traditionally occurs at the time of or soon after new complaints cross the file desk, on the day of receipt, irrespective of whether the complaints have been processed. By contrast, placing press access after clerk processing delays press coverage, resulting in the press and, by extension, the public receiving less timely and thus less newsworthy information about the courts. Access at the statewide EFM level (or alternatively, individual court clerk review queue stage) is sought for all members of the news media, not just CNS.

## Media Access in an E-Filing Environment

At the Ada County Courthouse and other major state and federal courts across the nation, news reporters traditionally had access to new paper civil complaints as soon as they crossed the counter or shortly thereafter on the same day as filing. This access is consistent with the First Amendment right of timely access, a right that a California federal district court recently found "arises when a complaint is received by a court, rather than after it is 'processed.'" _Courthouse News Service v. Planet_, 2016 WL 4157210, *13 (C.D. Cal. May 26, 2016) (Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment).

At the United States District Court for the District of Idaho, when a new civil complaint is filed, a case number is automatically assigned and the complaint flows automatically onto PACER for viewing online for a fee or at the clerk's office free of charge. Other federal district courts throughout the nation provide public access immediately upon receipt of an e-filing, before processing by clerks. Such access is now the norm in federal courts around the nation.

Many state courts that mandate e-filing provide similar same-day access on receipt. At the Clark County trial court in Las Vegas, and at the trial courts in Fulton and DeKalb Counties in Georgia – all of which, like Idaho, use a Tyler e-filing system – journalists have access to an electronic queue where new complaints can be seen immediately on receipt, even if they have not yet been processed by court clerks, and before assignment of case numbers.



285459.1

1

CNS_000046

The screenshots above are from the Fulton County State Court in Atlanta. The **left screenshot** displays the default screen once logged into the system. The documents can be searched and sorted by type of document or date of filing. Documents not yet processed are designated by the language "New Case" and an ID number (because a case number has not yet been assigned) are shown in the **right screenshot** above.

Alternatively, in Alabama, which operates on an OLIS e-filing platform, complaints appear to be auto-accepted and assigned a permanent case number upon receipt. They are made immediately available for electronic viewing at the courthouses and online. Cases filed on evenings and weekends can be viewed online with a permanent case number, much the same as federal courts when no clerks are working. Individual state courts in Connecticut and Utah also provide similar electronic access immediately on receipt, before processing.

The electronic in box is the functional equivalent of the physical "media box" which was, prior to e-filing, a mainstay of many intake counters at state and federal court clerks' offices across the country. It is also consistent with Central District of California's recent ruling in *Courthouse News Service v. Planet*, in which the court made clear that the First Amendment right of timely access that attaches on receipt by a court applies "regardless of whether such courts use paper or e-filing systems." 2016 WL 4157210, at *12; *see also id.* at *21.[1]  By contrast, withholding access until after processing commonly results in delays of 1-2 days due to clerk's office staffing shortages, vacations, illness, and other number of other very legitimate staffing issues that result in delays in processing, and is contrary to the recent ruling in the *Planet* case.

If the state courts of Idaho were to provide access on receipt through an electronic in box at the EFM level, prior to processing, press access to e-filed complaints throughout Idaho would be consistently excellent and on par with the excellent level of access traditionally provided for paper-filed cases and now provided by the federal courts, as well as individual state courts that similarly provide access to e-filed complaints on receipt irrespective of whether the complaint has been processed.

Alternatively, electronic in box access could be provided at the individual court level, although a statewide solution would be optimal.

The diagram shown on the following page illustrates how this timely access on receipt can be provided in an e-filing environment and in a manner that does not make access contingent on a complaint having first been processed.

---

[1] The Central District of California's 2016 decision was preceded by two Ninth Circuit decisions in the same case, which are also instructive: *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), and *Courthouse News Service v. Planet*, 614 Fed. App'x. 912 (9th Cir. 2015). Copies of all three of these rulings are attached for further reference.

285459.1

2

CNS_000047



The **green** box illustrates the electronic inbox—at either the statewide EFM level or individual court level —that CNS is respectfully proposing. The **yellow box** illustrates the delayed access that typically occurs when press access is pushed from the intake level, as is traditional in the paper-filing environment, until after clerks have processed and/or "accepted" the electronic filing.

**Further notes about this method of access:**

**Rejected e-filings:** If courts wish, they can use a disclaimer to let the press and public know that the records they are viewing may ultimately not be accepted for filing, or are not "official" court records. For example, in Atlanta, users must acknowledge by signature this disclaimer:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING:**
> Electronic in box access to electronic documents is being provided
> pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum
> Standards for Electronic Filing promulgated by the Judicial Council of
> Georgia effective September 25, 2014. Pursuant to Uniform Rule
> 36.16(D), complaints and other documents accessible through this
> electronic in box are presumed filed upon their receipt by the Court's
> electronic filing service provider. However, the documents have not yet
> been processed and accepted by the Clerk of Court and, prior to
> processing, there is no guarantee that the documents will be accepted,
> assigned a case number, or placed on the docket with the Court.

Alternatively, such a notice could be shown on a computer screen prior to accessing the electronic inbox.

**Electronic in box can be provided locally or remotely:** Access to the electronic in box can either be provided remotely over the internet or locally through computer terminals in a pressroom,

the clerk's office or in some other public place in the courthouse. Either or both local and remote access can be used to provide press access upon receipt of new civil complaints.

**Electronic in box can be provided to the press alone or also the public:** Unlike news reporters, members of the public tend to be interested in individual cases and do not normally have a daily need to review new complaints. However, access to the electronic in box need not be limited to the press.

**Electronic in box ensures consistency:** Budget constraints often mean clerks' offices are understaffed, while illnesses, vacations and other scheduling issues may prevent clerks from processing new complaints the same day they are received. Once set up, the electronic in box provides consistent, timely access that is not dependent on work schedules or hours; clerks do not feel as though they need to "speed up" or "work harder" to provide timely access.

## Conclusion

CNS greatly appreciates the interest of the Idaho courts in maintaining timely access as it fully transitions to e-filing. We hope the information here is helpful and we remain available to collaborate on resolving questions or concerns. As noted, this proposal is made with the intent of ensuring continued timely access not just to CNS but to the press corps as a whole. If we can provide further information, or be of further assistance, please let us know.

285459.1

4

CNS_000049

# EXHIBIT 11
# GIRDNER DECLARATION



July 6, 2021

Debora K. Grasham
601 W. Bannock St
Boise, ID 83701

Via email: dkk@givenspursley.com

Dear Ms. Grasham:

I am in receipt of your letter dated June 14, 2021, in which you requested, on behalf of
Courthouse News Service, the installation of an additional component to the courts electronic
system.  Your request was based upon the assertion that "Delays in access to new civil
complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and
persistent."

As you may be aware, Idaho's efiling rule provides that documents submitted to Tyler's File and
Serve system are reviewed and either accepted for filing or rejected for filing by the clerk's
office after submission. If accepted for filing, any public document is immediately available for
review at the public kiosks in the courthouse. I assume that the delay concerns you express are
related to the time period between the time a document is submitted to Tyler's File and Serve
system and is accepted by the clerk's office for filing. If I have assumed incorrectly, please let
me know.

In light of the concern you raised, I did review our records for the time period of May 18th
through June 14th, essentially the month immediately prior to your letter and the most recent data
we had at that time. As you may be aware, our goal is to keep the average time from submission
to acceptance to no more than 24 hours. For ease, I reviewed the time from submission to
acceptance for filing in actual hours, not business hours, such that the hours included times
documents are submitted after business hours and cannot be processed until the court is again
open. For all court documents, the average statewide time from submission to acceptance for
filing was 14 hours. The average time in Ada county was 9 hours, with 70% of the documents
accepted on the same day they were submitted.  For civil cases, Ada county accepts documents
for filing on average just under 8 hours after submission. Given these average time frames, I did
not find a statewide or Ada county delay that was currently ongoing and persistent.

I do appreciate the need to provide public access to documents in a timely fashion while still
ensuring the fair and orderly administration of justice. In light of your allegation of persistent
delays throughout the state, I have requested that my team work with Tyler to gather ongoing
information which will allow me and other court staff to more actively monitor the relevant
timeframe and identify and respond to any systemic issues that may arise.

CNS_000050



At this time, I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing by the court clerks' offices. Should you identify additional information indicating an ongoing and persistent issues in the future, please do let me know.

Sincerely,

*Sara Omundson*

Sara Omundson,
Administrative Director of Courts

(208) 334-2210 · 451 W. State Street · Boise, ID 83702 · isc.idaho.gov

CNS_000051

**ER-1263**

# EXHIBIT 12
# GIRDNER DECLARATION



**Effective March 4, 2019** for the Eighth Judicial District Court:

Pursuant to Rule 8(a) of the Nevada Supreme Court Electronic Filing Rules all Electronic Filings shall be automatically accepted (filed into the Case Management System) and simultaneously served at the time of submission, except for the filings defined here. Once an envelope has been submitted, it cannot be cancelled by the filer.

For new Family Court filings, please allow the Court 24 hours to provide notice of any change in case assignment in compliance with EDCR 5.103.

If you wish to remove yourself from service on a case and are unable to, please contact Tyler Technologies at Efiling.Support@TylerTech.com with this form.

Please refer back to the Court News with policy changes and answers to frequently asked questions.

**Please Note:**

Documents filed that require a hearing will no longer be returned with the hearing date stamped on the document.  The filing will be auto-accepted and a "Clerk's Notice of Hearing" will be E-Filed and Served on all parties registered for service for the case once a hearing date has been set.

# EXHIBIT 13
# GIRDNER DECLARATION

**From:** Creelman, Cassie <creec@clarkcountycourts.us>
**Sent:** Monday, April 13, 2020 2:26 PM
**To:** CNS Chris Marshall <cmarshall@Courthousenews.com>
**Subject:** RE: Question About Auto-Accept System

Hi Chris,

Yes it's working although it takes a long time to load so we've still got an active work order with the vendor.  I'm not sure I understand your question below.  Portal is the system that provides online access to cases, and the auto-accept policy was mandated by the NV Supreme Court where we modified the e-File system to accept filings automatically rather than have a clerk review prior to accept.

Both e-Filing (File and Serve) and Portal are Tyler Technologies systems.

Cassie Creelman
702.671.4455

**From:** CNS Chris Marshall [mailto:cmarshall@Courthousenews.com]
**Sent:** Monday, April 13, 2020 2:21 PM
**To:** Creelman, Cassie
**Cc:** CNS Chris Marshall
**Subject:** Question About Auto-Accept System

```
[NOTICE:  This message originated outside of Eighth Judicial District Court -- DO NOT
CLICK on links or open attachments unless you are sure the content is safe.]
```
Cassie,
I hope you are doing well during these trying times. I noticed the press queue is working again. That's great.
My editor asked me to ask you if the auto-accept system used to provide public access to new cases was implemented by Tyler Technologies or if a different vendor was involved somewhere in the process. If a different vendor, can you tell me the name and what sort of role they played?
Thanks in advance.
Best,
Chris Marshall
CNS Western Bureau Chief
(925) 471-0168

2

CNS_000394

# EXHIBIT 14
# GIRDNER DECLARATION

**SUPREME COURT OF VERMONT**
**OFFICE OF THE COURT ADMINISTRATOR**

**PATRICIA GABEL, ESQ.**
State Court Administrator
*patricia.gabel@vermont.gov*



**Mailing Address**
Office of the Court Administrator
109 State Street
Montpelier, VT 05609-0701

**Telephone** (802) 828-3278
**FAX:** 802 828-3457

www.vermontjudiciary.org

TO:        Members of the Vermont Bar

FROM:   Patricia Gabel, Esq., State Court Administrator

RE:        Clerk Review of Electronic Initial Civil Complaints

DATE:    December 9, 2021

To ensure you continue to receive these emails, please add JUD.AttyLicensing@vermont.gov and JUD.CAOMemotoBar@vermont.gov to your Safe Senders list.

Beginning on Friday, December 10, 2021, initial civil complaints that are submitted using the Odyssey File and Serve code "initial filing" will be automatically entered in the Judiciary's electronic case management system without prior staff review and acceptance. Previously, all electronic filings, including initial complaints and associated documents in such cases, were reviewed by staff before being entered into the electronic case management system. Some initial civil complaints are excepted from automatic entry, including those in small claims actions, stalking/sexual assault actions, and those within the original jurisdiction of the Supreme Court, or within the jurisdiction of criminal division, family division, environmental division, probate division, or the judicial bureau.

This change means that documents and information designated by the electronic filer as public that are part of the initial filing will be immediately viewable to the public on courthouse public access terminals and on the Public Portal website for users with elevated access roles.

Documents submitted under other filing codes in the same envelope or in other envelopes will continue to be reviewed and manually accepted by staff prior to being entered into the electronic case management system.

Pursuant to Rules 7(a)(3) and (4) of the Vermont Rules for Public Access to Court Records, court staff will review all initial complaints after they are entered into the system for the presence of nonpublic information that should not be publicly viewable. As with all cases under the present rules in which this screening reveals that nonpublic documents or information are part of the initial filing, court staff will take action to protect such information from public view and will send notice to the efiler to let them know what corrective actions are needed to fix defects on the filing.

CNS_000404

# EXHIBIT 15
# GIRDNER DECLARATION

**From:** Vermont Judiciary <jud.trialcourtoperations@vermont.gov>
**Sent:** Friday, December 2, 2022 12:59 PM
**To:** WCAX - News <news@wcax.com>
**Subject:** Vermont Judiciary Announces New Press Review Tool

Vermont Judiciary Announces New Press Review Tool

View this email in your browser

## Vermont Judiciary Announces New Press Review Tool

Beginning on December 2, 2022, the Vermont Judiciary's Public Access Terminals will feature a new site called the Press Review Tool (PRT). This site will display new electronically filed Civil Division Complaints in the period between when the filing is submitted and when it is accepted by court staff. This tool will be available to all members of the public with no registration or fees.

**How do I access the Press Review Tool?**
The PRT has been installed on the Public Access Terminals located in each courthouse in Vermont. A list of court locations is here: Court Locations | Vermont Judiciary.

**What can I see on the Press Review Tool?**
The site will display newly filed Civil Division Complaints (the document that starts a lawsuit) and any supplemental documents filed as direct attachments to those Complaints. The following Civil cases are excluded from access via the PRT: Stalking, Sexual Assault, Small Claims. The site also will not display any documents designated as "confidential" by the filer. Although civil cases are generally public, documents with certain types of information are exempt from public access by statute and/or under the Vermont Rules for Public Access to Court Records.

**When and for how long are documents displayed on this site?**
Documents are viewable on the PRT immediately after they are filed and while they are waiting for

acceptance by court staff. Once court staff have accepted a document into Odyssey, it will no longer appear in the results on the PRT, but can instead be viewed with its associated case record on the Public Portal (also available at the public access terminal).

For general questions about the Press Review Tool and efiling processes, please contact jud.efilesupport@vermont.gov.



**Our mailing address is:**

Vermont Judiciary

Office of the Court Administrator

109 State Street

Montpelier, VT 05609-0701

USA

Want to change how you receive these emails?

You can update your preferences or unsubscribe from this list

**CAUTION - EXTERNAL EMAIL** This message originated from outside Gray Television and may contain malicious content. Do not click links or open attachments unless you recognize the source of this email and know the content is safe.

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>Defendant. | Case No: 1:21-CV-00305-REP<br><br>**DECLARATION OF AMBER DINA IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |

I, Amber Dina, declare and state as follows:

1.      I am local counsel of record for Plaintiff Courthouse News Service ("Courthouse News"). Unless otherwise stated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2.      In its first set of document requests, Courthouse News requested from Defendant documents sufficient to show the form and content of notices provided to litigants informing them that a new e-filed civil complaint has been (i) submitted to the court; (ii) accepted by the court; and (iii) rejected by the court. These document requests are attached as an exhibit to the concurrently filed Declaration of Jonathan G. Fetterly ("Fetterly Declaration.").

3.      In response, Defendant produced examples of the "Filing Accepted" notice the Idaho Courts (iCourt) provide to litigants notifying them a new e-filed document has been accepted by the court (SO_000250-251), and an example of the "Filing Returned" notice Idaho Courts (iCourt) provide to litigants notifying them a new e-filed document has been returned or rejected by the court (SO_000252). These documents are also attached as exhibits to the Fetterly Declaration.

4.      Attached as **Exhibit 1** to this declaration is true and correct copy of a "Filing Submitted" notice I received from the Idaho Courts (iCourt) notifying me that a complaint I filed had been submitted to the court. The filing referenced on this notice was accepted by the court and the case was assigned case number CV07-22-00074.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this December 14, 2022.


_/s/ Amber Dina_____
Amber Dina

2

# EXHIBIT 1
# DINA DECLARATION

**From:** no-reply@efilingmail.tylertech.cloud <no-reply@efilingmail.tylertech.cloud>
**Sent:** Monday, February 7, 2022 3:39:18 PM (UTC-07:00) Mountain Time (US & Canada)
**To:** Amber N. Dina <amberdina@givenspursley.com>
**Subject:** Filing Submitted for Case: 4705082; ; Envelope Number: 4705082

<span style="background-color:red">**EXTERNAL**</span>

 **iCourt** E-FILE

# Filing Submitted

Envelope Number: 4705082
Case Number: 4705082
Case Style:

The filing below has been submitted to the clerk's office for review. Please allow 24 - 48 hours for clerk office processing.

| Filing Details | |
|---|---|
| **Court** | Blaine County |
| **Date/Time Submitted** | 2/7/2022 3:38 PM MST |
| **Filing Type** | Complaint |
| **Filing Description** | Verified Complaint |
| **Type of Filing** | EFile |
| **Filed By** | Amber Dina |
| **Filing Attorney** | Amber Dina |

| Fee Details |
|---|
| Your account is never charged until your filing is accepted. If you see any pending charges on your account prior to acceptance, this is an authorization hold to ensure the funds are available so your filing can be accepted without delay. |
| If the filing is canceled or rejected these funds will be released and will return to your account according to your financial institution's policies (typically 3-10 business days). |

This envelope is pending review and fees may change.

| Case Fee Information | $228.74 |
|---|---|
| Case Fees | $221.00 |

1

| Payment Service Fees | $7.74 |
| Civil Case Information Sheet | $0.00 |
| Complaint | $0.00 |
| Summons Issued | $0.00 |
| Summons Issued | $0.00 |
| Summons Issued | $0.00 |

**Total:**$228.74 (The envelope still has pending filings and the fees are subject to change)

| Document Details | |
| --- | --- |
| **Lead Document** | Verified Complaint.pdf |
| **Lead Document Page Count** | 15 |
| **File Copy** | Download Document |
| This link is active for 30 days. | |

For technical assistance, contact your service provider



Service Provider: Tyler Technologies Odyssey File and Serve
Need Help?
Visit: https://idaho.tylerhost.net/contacts.htm
Email: efiling.support@tylertech.com

Please do not reply to this email. It was automatically generated.

2

Amber N. Dina (ISB # 7708)
amber.dina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (admitted *pro hac vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *pro hac vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>SARA OMUNDSON, in her official capacity<br>as Administrative Director of Idaho Courts,<br>　　　　　　　　Defendant. | Case No: 1:21-cv-00305-DCN<br><br>**DECLARATION OF CATHERINE VALENTI IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |

I, Catherine Valenti, declare and state as follows:

1. I am the Idaho reporter for Courthouse News Service ("Courthouse News"), a nationwide news service and the plaintiff in the above-captioned matter. I make this declaration in support of Courthouse News' motion for summary judgment, which seeks to bar the Administrative Director of Idaho Courts ("Administrative Director," an appointed position currently occupied by

DECLARATION OF CATHERINE VALENTI
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1

Sara Omundson) from imposing a no-access-before-process policy on journalists seeking to review and report on the day's new civil complaints. I have worked continuously for Courthouse News since December of 2016. I have personal knowledge of the following facts, except where otherwise stated, and could testify to them if called as a witness.

2.     I was hired by Courthouse News in June 2016 to help with coverage of Ada County District Court. By December of 2016, I was working as the principal reporter for Courthouse News in Idaho. Since that time, when not on vacation or otherwise unable to work, I have covered both Ada County District Court and the U.S. District Court for Idaho every court day. Since my hiring as a Courthouse News reporter in 2016, I have also written articles for the Courthouse News website. When I began my work for Courthouse News, the Idaho courts I covered were exclusively paper-filing courts. Over the course of my tenure as a Courthouse News reporter, all Idaho district courts completed their transition to mandatory e-filing for attorneys (though pro se litigants can still file in paper). As a result of my coverage of Idaho, I am thoroughly familiar with the press and public access provided by the Idaho courts to the new general civil litigation complaints, and familiar with the barriers to that access.

3.     On every day on which courts are open (every "court day"), unless I am on vacation or otherwise unable to work, I prepare a report on new general civil complaints filed throughout Idaho by going to the courthouse in Ada County. I review new civil complaints using a kiosk in the Ada County District Court Clerk's Office. Through this courthouse kiosk, I can see new civil complaints filed in any of the Idaho district courts. However, I am only able to see complaints after court staff have processed them, which is often at least a day after the complaints were filed.

4.     I am required to leave the courthouse at 5:00 p.m. each day. After I leave the courthouse, I continue looking for new civil cases from home using the website at

DECLARATION OF CATHERINE VALENTI
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

https://mycourts.idaho.gov. Through this remote online access, I can see that new cases have been filed, but I cannot see the complaints themselves. Only docket information (e.g., case name, case number, filing date) is available through Idaho's remote online access.

5. I have tracked delays in the Idaho district courts on a statewide basis since May 2021. I begin each morning by checking docket information from the remote access web site (https://mycourts.idaho.gov) from my home. I then travel to the Ada County District Court Clerk's office and continue my reporting using the courthouse kiosk.

6. I look for new complaints filed at each of Idaho's 44 counties by going through each court's case numbers sequentially, starting with where I left off the day before. I typically complete my review of filings in the smaller courts by about 2:30 p.m. If time permits, I check for new filings in those courts again around 4:00 p.m. For the six biggest counties – Ada, Canyon, Kootenai, Bonneville, Twin Falls and Bannock – I make my last check around 4:45 or a little later, as time permits, and then wrap up my reporting with a final review of Ada County District Court just before I am required to leave the courthouse at 5:00. After I have returned home around 5:30 p.m., I check docket information again using the remote access web site. However, this remote review of docket information does not include access to the actual complaints.

7. Examples of newsworthy new complaints delayed by Defendant's no-access-before-process policy include:

- Case No. CV01-21-13641 (Ada County District Court) is an action by a high school graduate working as page in the Idaho State Legislature who sued a 39-year-old legislator alleging sexual assault, adding that when she complained to the Ethics Committee, she was ignored and shamed. Filed on September 2, 2021, the complaint was withheld until September 3, 2021, representing a delay of one day. A copy of this complaint is attached hereto as **Exhibit 1.**

DECLARATION OF CATHERINE VALENTI
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

- Case No. CV01-21-13391 (Ada County District Court) is an action by a bitcoin operator challenging the Idaho Department of Finance's attempt to obtain records from him regarding his cryptocurrency activities. Filed on Friday, August 27, 2021, the petition was withheld until Tuesday, August 31, 2021, representing a delay of four calendar days. A copy of this petition is attached hereto as **Exhibit 2**.

- Case No. CV28-21-4157 (Kootenai County District Court) is an action over the collision of two planes, one of them with five sightseeing passengers, above Lake Coeur d'Alene where all persons on both planes died. Filed on Thursday, June 24, 2021, the complaint was withheld until Wednesday, June 30, 2021, representing a delay of six calendar days. A copy of this complaint is attached hereto as **Exhibit 3**.

- Case No. CV28-21-4053 (Kootenai County District Court) is an action by boaters challenging a county no-wake zone on Spokane River. Filed on Tuesday, June 8, 2021, the complaint was withheld until Friday, June 25, 2021, a delay of more than two weeks. A copy of this complaint is attached hereto as **Exhibit 4**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2022, in Boise, Idaho.

CATHERINE VALENTI

DECLARATION OF CATHERINE VALENTI
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

# EXHIBIT 1
# VALENTI DECLARATION

Electronically Filed
9/2/2021 5:54 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

ERIKA BIRCH (Bar No.7831)
T. GUY HALLAM, JR. (Bar No. 6101)
**STRINDBERG SCHOLNICK BIRCH**
**HALLAM HARSTAD THORNE**
1516 W. HAYS STREET
BOISE, ID 83702
(t) 208.336.1788
(f) 208.344.7980
erika@idahojobjustice.com
guy@idahojobjustice.com

Attorneys for Plaintiff

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| ████████ **a.k.a. JANE DOE,** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiff, | |
| vs. | Case No. CV01-21-13641 |
| **THE LEGISLATURE OF THE STATE OF IDAHO; a constitutional department of the STATE OF IDAHO,** | Judge: Scott, Jason D. |
| Defendant. | |

Plaintiff ████████ [1]("Jane Doe"), by and through her attorneys, hereby complains

against Defendant, the Legislature of the State of Idaho ("Legislature"), a constitutional corporate

body, ("Defendant") as follows:

### I.    NATURE OF THE CLAIMS

Jane Doe has claims against Defendant for violation of the Idaho Protection of Public

Employees Act. Jane Doe seeks all available remedies including damages, attorneys' fees, costs,

and interest, and compensatory damages.

---

[1] We are redacting Plaintiff's real name and using the pseudonym Jane Doe in order to protect her privacy, her health and safety, and because she is the victim of a crime. Plaintiff will file a Motion to file an unredacted copy of her Complaint under seal forthwith.

## II.        PARTIES

1.      Jane Doe resides in the State of Idaho, Ada County, and was employed by the Legislature at all times relevant to the allegations in this Complaint.

2.      Defendant, the Legislature of the State of Idaho, is a constitutional branch of government of the State of Idaho pursuant to Article II and III of the Idaho State Constitution.  At all times relevant to this Complaint, this Defendant was an employer pursuant to the pertinent law.

## III.        JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction and personal jurisdiction over Defendant.

4.      Venue is proper with this Court as the Defendant's business is within the jurisdiction of the Court and the alleged illegal conduct that occurred was within the jurisdiction of the Court, pursuant to Idaho Code §5-404.

5.      The amount in controversy exceeds the jurisdictional requirement of $10,000.00.

## IV.        GENERAL ALLEGATIONS

6.      Jane Doe worked as a Legislative Page during the 2020 legislative session.

7.      The following year, she submitted an internship application for the 2021 session. Her application listed her availability to work from January 11, 2021 until April 2, 2021 for 15-25 hours per week. The application stated that she anticipated being able to work from 6 am to 6 pm on Monday, Wednesday, and Friday.

8.      Along with her application, Ms. Doe submitted a letter of institutional support from the Vice President of College Relations at the institution of higher education she was enrolled in.

9.      Ms. Doe was later told that she needed to identify a sponsoring legislator for her internship. Representative Chad Christensen agreed to sponsor her.

2

10.     When she returned to work as an intern for Representative Christensen during the 2021 legislative session, Ms. Doe had recently graduated from high school and was still a teenager.

11.     At some point during the 2021 session, and prior to February 7, 2021, while Ms. Doe was working in the Capitol building, she met then Representative Aaron Von Ehlinger.

12.     Von Ehlinger was almost 39 years old at the time and had served in the legislature since his appointment by Governor Little in June 2020.

13.     Von Ehlinger gave Ms. Doe a copy of his legislative business card and hand-wrote his personal cell phone number on the back of the card.

14.     Von Ehlinger told Ms. Doe to call him any time if she needed anything at all.

15.     Von Ehlinger invited Ms. Doe to come into his office on at least one occasion.

16.     Von Ehlinger visited Ms. Doe at her office located in the Legislative Services Office, on more than one occasion.

17.     In early March 2021, Von Ehlinger asked Ms. Doe if she would go out to eat dinner with him.

18.     On March 9, 2021, Von Ehlinger picked up Ms. Doe near the Capitol building in a borrowed BMW car and took her to an expensive restaurant for dinner.

19.     After dinner, he drove Ms. Doe to his apartment instead of back to her car.

20.     Von Ehlinger told Ms. Doe he needed to get a parking permit from his apartment.

21.     When they parked at his apartment, Von Ehlinger turned off the car, got out, went around to Ms. Doe's side of the car, opened her door, and reached his arm out to her motioning for her to get out of the car and follow him into his apartment.

3

22.     While in Von Ehlinger's apartment on March 9, 2021, he sexually assaulted Ms. Doe making unwanted and non-consented sexual contact with her and performing unwanted and non-consented sexual acts on her.

23.     Ms. Doe had received a copy of the Legislature's Respectful Workplace policy and training regarding the same. The policy encourages pages and interns to report any concerning behavior to one of the listed individuals which includes the Assistant Sergeant at Arms.

24.     On her next working day at the legislature, March 11, 2021, Ms. Doe told Assistant Sergeant at Arms, Kim S. Blackburn, about the assault.

25.     Ms. Blackburn in turn reported the assault to Speaker of the House, Scott Bedke.

26.     The Attorney General's office was notified, and it was determined that a report to law enforcement would be made.

27.     Ms. Doe met with a Boise Police detective on March 11, 2021.

28.     Ms. Doe was later informed that the House Ethics Committee was investigating a complaint that was filed against Von Ehlinger related to his sexual assault of her.

29.     Ms. Doe was told that the next time she came to work, she needed to speak to the Committee.

30.     Ms. Doe cooperated in the committee's ethics complaint investigation which resulted in a finding of probable cause of an ethics violation (conduct unbecoming) had occurred.

31.     Ms. Doe cooperated in the public Ethics Committee hearing regarding the same including giving public, sworn testimony.

32.     As a result of her reports of the assault and participation in the Committee processes, Ms. Doe suffered retaliation at the hands of Von Ehlinger, Representative Giddings and perhaps others acting in concert.

4

## FIRST CLAIM FOR RELIEF
### (Violation of the Idaho Protection of Public Employee Act)

33.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

34.    Defendant is an "Employer" under the Idaho Protection of Public Employees Act pursuant to I.C. § 6-2103(4)(a).

35.    Ms. Doe engaged in protected activity when she reported in good faith that Von Ehlinger had sexually assaulted her.

36.    Ms. Doe engaged in protected activity when she participated in good faith in the Ethics Committee's investigation and public hearing.

37.    Von Ehlinger, Rep. Giddings, and others took adverse actions against Ms. Doe, including but not limited to engaging in a campaign to publicly shame, blame and intimidate her for reporting sexual assault. For example:

a.    On April 16, Von Ehlinger sent out a media and press statement about the complaint pending before the Ethics Committee saying that he had been "falsely accused of having sexual contact with an adult volunteer member of the legislative staff." Upon information and belief, Rep. Giddings was involved in the drafting of that statement.

b.    Later that same day, and despite multiple warnings to not release Ms. Doe's identifying information to the public, Von Ehlinger's attorney sent out a copy of Von Ehlinger's written response to the complaint without redacting any of Ms. Doe's identifying information and including her name and other personal details about her and containing defamatory statements about her.

c.    Also on that same day, Rep. Giddings made efforts to have the media report on Von Ehlinger's unredacted written response.

5

d.  Redoubt News, a self-proclaimed "alternative media" website, published an article that contained a headline photo of Ms. Doe when she was a minor, disclosed her full name, included other personal details about her, and made multiple defamatory statements about her. Redoubt also provided a link to Von Ehlinger's written unredacted response and his press statement.

e.  Rep. Giddings posted a link to this article on her legislative Facebook page saying "follow the money! Idaho's very own Kavanaugh." The thumbnail under this statement displayed Redoubt's picture of Ms. Doe when she was a minor and the headline to the article.

f.  Also on that same day, Representative Heather Scott did a public records request for Ms. Doe's criminal complaint made to the Boise Police Department.

g.  The following day, on April 17, 2021, Rep. Giddings made other defamatory statements about Ms. Doe in her Legislative Newsletter and included links to the Redoubt article.

h.  Rep. Giddings made more defamatory statements about Ms. Doe including that she was "accosted" by Ms. Doe and insinuated that Ms. Doe threatened her, in her Legislative Newsletter on April 25, 2021. She once again provided a link to a Redoubt article which contained a link to Von Ehlinger's written unredacted response.

i.  Upon information and belief, Rep. Giddings attempted to press charges against Ms. Doe alleging that Ms. Doe accosted and threatened her.

j.  On April 26, 2021, Representative Christy Zito inquired with other members of the legislature about which law was triggered by someone making a "false" police

6

report, insinuating that Ms. Doe was criminally liable for falsely reporting Von Ehlinger's assault of her.

k.  In her own pending Ethics Committee complaint process, Rep. Giddings made a witness disclosure identifying Ms. Doe's former landlord as a witness and representing that the landlord would testify about defaming facts about Ms. Doe. Rep. Giddings then released this disclosure to the public.

38.  The above adverse actions were taken because of Ms. Doe's protected activity and in an attempt to blame, shame and intimidate her.

39.  Ms. Doe has been damaged as a result of Defendant's retaliation. She is entitled to recover all resulting damages including emotional distress damages pursuant to Idaho Code §6-2105.

40.  Ms. Doe is also entitled to all reasonable attorney's fees and costs incurred in bringing this action pursuant to Idaho Code §6-2105.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

a.  Compensatory (emotional distress) and consequential damages;

b.  Injunctive and/or declaratory relief;

c.  Pre-judgment and post-judgment interest at the highest lawful rate;

d.  Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

e.  Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

7

Dated this 2nd day of September, 2021.

**STRINDBERG SCHOLNICK BIRCH
HALLAM HARSTAD THORNE**

/s/ Erika Birch
Erika Birch
Guy Hallam
*Attorneys for Plaintiff*

8

# EXHIBIT 2
# VALENTI DECLARATION

Electronically Filed
8/27/2021 3:55 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Petitioner Ty Jacobsen

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| TY JACOBSEN,<br><br>                Petitioner,<br><br>v.<br><br>IDAHO DEPARTMENT OF FINANCE,<br><br>                Respondent. | Case No. CV01-21-13391<br><br>**VERIFIED PETITION FOR ORDER QUASHING SUBPOENA**<br><br>Filing Category: A.A<br>Filing Fee: $221.00 |

Ty Jacobsen, by and through his undersigned counsel of record and pursuant to Idaho

Code § 30-14-602, petitions this Court for an Order quashing portions of the Subpoena Duces

Tecum served by the Idaho Department of Finance ("IDOF") in the administrative matter, docket

no. 2019-7-07.  This Petition is supported by the Memorandum in Support and the Declarations

of Wendy Olson, Ty Jacobsen, Bonnie Jacobsen, Jesse Christophel and Anthony Miller filed

herewith.

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 1
112102931.1 0073578-00001

**THE PARTIES**

1.      Ty Jacobsen is a resident of Canyon County and one of the contributing developers of a cryptocurrency known as Sumcoin.

2.      Respondent IDOF is an agency of the State of Idaho with offices in Ada County, Idaho.  Respondent IDOF issued the subpoena that is the subject matter of this Petition from its offices in Ada County.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this action pursuant to Idaho Code § 30-14-602(d).

4.      Venue is proper in Ada County, Idaho, pursuant to Idaho Code § 5-402 as the public agency's acts occurred within Ada County.

**GENERAL ALLEGATIONS**

5.      Petitioner seeks an order quashing or substantially modifying portions of an administrative subpoena served upon him by IDOF on July 29, 2021, and requiring compliance at the IDOF offices in Boise, Idaho, on September 1, 2021, at 9:30 a.m.  A copy of the subpoena is attached as Exhibit A.  Idaho Code § 30-14-602(d) allows the recipient of a subpoena to apply to a court of competent jurisdiction for relief from a request to appear, testify, file a statement, produce records, or obey a subpoena.

6.      Comment 4 of the Uniform Law Comments to Idaho Code § 30-14-602(d) provides that a court may quash a subpoena for good cause under section 602(d).

7.      Good cause exists to quash the July 29, 2021, subpoena served on Mr. Jacobsen.  It is unreasonable, overbroad, and harassing.  It seeks records of communications between Mr. Jacobsen and others not related to securities offerings.  It has no date limits.  It seeks records

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 2

previously produced and available from public sources.  After more than a two-year investigation by IDOF, it also is harassing.

### Ty Jacobsen and Sumcoin

8.      For the time period including 2017 to approximately mid-2020, Mr. Jacobsen lived in a fifth wheel trailer while he contributed with others to develop a blockchain cryptocurrency similar to Bitcoin, but one that more closely followed the Bitcoin white-paper, and, without Bitcoin's price volatility.

9.      The first part of the Bitcoin white paper states that  "*A purely peer-to-peer version of electronic cash would allow online payments to be sent directly from one party to another without going through a financial institution*." Mr. Jacobsen believes that Bitcoin, by operating through third parties such as Coinbase, Gemini, and Binance is not a pure peer-to-peer network.

10.      In an effort to develop a purely peer-to-peer decentralized version of electronic cash, Mr. Jacobsen spent considerable time researching and experimenting with elliptic-curve cryptography. Mr. Jacobsen's investigation and experimentation included close examination of the underlying technology of Bitcoin, which includes how Coins are manifested, tracked, stored, and transferred on Blockchains.

11.      After briefly experimenting with tokens, a derivative chain on the Ethereum (another form of cryptocurrency) blockchain, he and others developed a cryptocurrency now known as Sumcoin.  It has its own blockchain protocol, which is based on the Bitcoin blockchain protocol and which is decentralized and is mineable through proof of work.  As with other cryptocurrencies, mining is the process by which new Sumcoin are entered into circulation. Mining also is a critical component of the maintenance, security, and development of the Sumcoin blockchain ledger.  As with Bitcoin, Sumcoin mining uses very sophisticated

(173 of 262), Page 173 of 262
Case: 24-6697, 03/06/2025, DktEntry: 10.7, Page 173 of 262
Case 1:21-cv-00305-DCN    Document 62    Filed 12/15/22    Page 18 of 54

computers that solve extremely complex computational math problems to verify Sumcoin transactions.  The reward for solving the complex computational problems is Sumcoin.

12.    To address Bitcoin's price volatility problem, Mr. Jacobsen developed an algorithm that ties or "Indexes" the value of Sumcoin to a "sum" value of the top 100 cryptocurrencies by their market capitalization at any given moment.  Because of its Index price mechanism, Sumcoin is a more stable, less volatile, form of cryptocurrency than Bitcoin or Ethereum, and provides a barometer of the health of the blockchain market at a glance.

13.    While Mr. Jacobsen may be more knowledgeable than most regarding Sumcoin, he is not the owner, promoter, manager, or leader of the Sumcoin Project.  Like Bitcoin, Sumcoin was developed to be a decentralized exchange medium with no single person or entity in control of its ledger or price.  Also like Bitcoin, anyone familiar with elliptic curve cryptography can contribute to Sumcoin's development.

14.    Sumcoins are used and exchanged daily all over the world as a form of currency in a peer-to-peer manner for goods and services.  To date, there have been more than 28,470,000 instances in which individuals around the world have transacted Sumcoin with one another.  The value of any single Sumcoin is not determined by Mr. Jacobsen.  Rather, as set forth above, its value is determined by the total investment in the cryptocurrency economy at large, specifically the total market capitalization of the top 100 coins.

15.    Since Sumcoin was introduced in 2018 and began being mined throughout the world, Mr. Jacobsen has contributed time to make Sumcoin more accessible in the cryptocurrency market and to identify methods for increasing Sumcoin's fungibility.  Like others throughout the world who possess Sumcoin, Mr. Jacobsen has mined Sumcoin, obtaining the cryptocurrency through the proof of work process.

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 4
112102931.1 0073578-00001

16.     Sumcoin is a fully developed crypto asset and it is Mr. Jacobsen's desire to collaborate, as he has time, with others who wish to contribute to its success globally.  He may also pursue legal avenues for selling Sumcoin to persons who may use it for their own legal purposes.  He intends to do so through lawful means and in compliance with state and federal regulations.  Like Bitcoin, Sumcoin is not a security and Mr. Jacobsen does not sell securities or solicit investments.

**The IDOF Investigation**

17.     Since mid-2019, Petitioner has responded to three letters of inquiry from IDOF and on August 28, 2019, he participated in a more than three-hour interview with its lead investigator, Jennifer Biretz.

18.     On July 21, 2020, Petitioner's mother, Bonnie Jacobsen, appeared pursuant to a subpoena served on her by IDOF, provided documents, and gave testimony.  That subpoena requested some of the very same documents that IDOF now requests from Petitioner, namely "all business formation documentation and any amendment or modification thereto for Crypto Cloud Inc. and Sigma Systems, Inc."  A copy of the subpoena to which Ms. Jacobsen responded is attached as Exhibit B.  The documents also are publicly available.

19.     IDOF sent its most recent inquiry letter on March 15, 2021.  Ms. Biretz, emailed the letter to counsel for Petitioner.  The name of the file for the letter was "Jacobsen comehither".  The letter of inquiry asserted that Mr. Jacobsen had solicited or sold investments in an entity known as BMCS Sumcoin Index Fund, f/k/a Bio Tech Medics, Inc. ("BMCS").

20.     Ms. Biretz did not assert in her March 15, 2021, letter that IDOF was investigating an *allegation* that Mr. Jacobsen had solicited or sold investments in BMCS.  Rather she affirmatively asserted that Mr. Jacobsen had in fact engaged in such conduct.

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 5
112102931.1 0073578-00001

21.     Mr. Jacobsen responded ten days later, in advance of the IDOF's April 5 deadline for responding.  He explained that he is not soliciting or selling and has not solicited or sold any investments in BMCS, that he accordingly has no documents related to selling or attempting to sell any such investment and that he has no role with BMCS.  Mr. Jacobsen responded that he knows the CEO of BMCS, Anthony Miller, that they have engaged in other business-related transactions and that he has discussed future business opportunities with BMCS. But Mr. Jacobsen has no business relationship with BMCS and has not engaged in any actions on its behalf.  The IDOF investigation has interfered with Mr. Jacobsen's discussions with BMCS.

22.     IDOF also sent a letter of inquiry to Mr. Miller.  That letter similarly requested information regarding the solicitation or sale of investments in BMCS or its predecessor companies to persons in Idaho.  Mr. Miller immediately informed IDOF by email that no such sales had occurred and requested to learn the identity of the person or persons in Idaho who allegedly were selling investments in his entities.  He informed IDOF that if a person was doing so, that person was engaging in fraud.  Ms. Biretz declined to identify a person or persons who allegedly were selling or soliciting investments in his entities.  She did inform him that IDOF had received an allegation that an Idaho person was solicited to invest in BMCS Sumcoin Index Fund at an amount of $25,000.

23.     On May 5, 2021, Mr. Miller responded in writing to IDOF's letter of inquiry.  He explained that neither BMCS nor its predecessors had any Idaho investors, that it has no investor solicitation materials and that Sumcoin does not play any current role in Biotech Medics, which remained the name of the entity for public trading purposes.

24.     By May 5, 2021, IDOF had received information that no solicitation or sale of investment in BMCS had occurred in Idaho.  Mr. Jacobsen had informed IDOF that he had not

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 6

112102931.1 0073578-00001

engaged in any such activity, that he had no authorization to engage in any such activity, and that

he had no written or other materials related to such an investment.  Mr. Miller's response verified

Mr. Jacobsen's response.

25.     Mr. Jacobsen's truthful response to Ms. Biretz's inquiry, and Mr. Miller's truthful

response to Ms. Biretz's inquiry did not end IDOF's inquiry, however.

26.     On May 25, 2021, IDOF served a subpoena on Mr. Jacobsen directing him to

appear at IDOF's offices on *June 24, 2020*, and produce the documents set out in an attached

Exhibit A.  The dates on the subpoena and attachment made the subpoena improper on its face.

Neither Mr. Jacobsen nor any person could comply in 2021 with a subpoena requiring

compliance a year earlier, in 2020.

27.     Mr. Jacobsen, through counsel, informed IDOF that the subpoena was overbroad

in addition to having a compliance date that already had occurred. Nonetheless, on July 29, 2021,

IDOF issued a new subpoena, identical to the subpoena served on May 25 with two exceptions.

First, the new subpoena has a proper compliance date, September 1, 2021, not one that already

occurred.  Second, the new subpoena directs Mr. Jacobsen to appear for testimony in addition to

producing documents.

28.     The July 29 subpoena commands Mr. Jacobsen to appear at IDOF's offices on

September 1, 2021, and answer "all questions concerning the above-entitled matter".  The

subpoena is captioned "Investigation into Crypto Cloud Inc., Sigma Systems Inc., Ty Jacobsen,

and Bonnie Jacobsen."  It also requires the production of "all records in whatever form they are

found, including but not limited to the following: all business formation documentation and any

amendment or modification thereto for Crypto Cloud Inc. and Sigma Systems, Inc.; all financial

statements prepared for Crypto Cloud Inc. and Sigma Systems Inc.; all documentation and

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 7
112102931.1 0073578-00001

records regarding the Crypto Cloud Coin initial offering (a/k/a CCC ICO); all documentation and records to include agreements, contracts or communication regarding U.S. Energy Initiatives Corporation; and all documentation and records to include agreements, contracts or communication regarding BMCS Sumcoin Index Fund, Inc., formerly known as Biotech Medics, Inc."

29.    Mr. Jacobsen's mother already produced business formation documentation and any amendment or modification thereto for Crypto Cloud Inc. and Sigma Systems, Inc.  Ms. Jacobsen was the president of Sigma Systems, Inc. when it was incorporated in Idaho. These records also are publicly available.

30.    Mr. Jacobsen does not possess financial statements for Crypto Cloud Inc. and Sigma Systems Inc.  To his knowledge none exist.

31.    Mr. Jacobsen does not possess any documents and records regarding any Crypto Cloud Coin initial offering.  He previously discussed the topic with Ms. Biretz during his August 28, 2019, interview.

32.    IDOF's request for all documentation and records to include agreements, contracts or communication regarding U.S. Energy Initiatives Corporation is overbroad and without any time limit.  Mr. Jacobsen previously discussed U.S. Energy Initiatives Corporation during his August 28, 2019, interview with Ms. Biretz.

33.    IDOF's request for all documentation and records to include agreements, contracts, or communication regarding BMCS Sumcoin Index Fund, Inc., formerly known as Biotech Medics, Inc. is overbroad and without any time limit.  Mr. Jacobsen previously provided information regarding his absence of a business relationship with BMCS Sumcoin Index Fund, Inc. to IDOF in response to IDOF's March 15, 2021, letter of inquiry.

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 8
112102931.1 0073578-00001

34.     IDOF's ongoing investigation of Mr. Jacobsen and his relationship to Sumcoin is harassing.  This Court should relieve Mr. Jacobsen of any obligation to comply with the last two requests of the subpoena and of any obligation to provide testimony.  In the alternative, this Court should require IDOF to modify its subpoena to documents and communications related to the offering or sale of securities by Mr. Jacobsen to investors in Idaho related to either U.S. Energy Initiatives or BMCS and require IDOF to limit any testimony of Mr. Jacobsen to those topics.

## PRAYER FOR RELIEF

Petitioner respectfully asks the Court for the following relief:

1.  An order under Idaho Code § 30-14-602(d) quashing the July 29, 2021, IDOF subpoena served on Mr. Jacobsen and relieving him from having to provide documents or testimony pursuant to such subpoena, as set forth above; or

2.  An order under Idaho Code § 30-14-602(d) modifying the July 29, 2021, IDOF subpoena served on Mr. Jacobsen and limiting his obligation to provide documents or testimony to the offering or sale of securities by Mr. Jacobsen to investors in Idaho related to either U.S. Energy Initiatives or BMCS; and

3.  All other relief that the Court determines appropriate or that the interests of justice may require.

DATED:  August 27, 2021

STOEL RIVES LLP

  /s/ Wendy J. Olson                                
Wendy J. Olson

Attorneys for Respondent

VERIFIED PETITION FOR ORDER QUASHING SUBPOENA - 9
112102931.1 0073578-00001

# EXHIBIT 3
# VALENTI DECLARATION

Electronically Filed
6/24/2021 9:10 AM
First Judicial District, Kootenai County
Jim Brannon, Clerk of the Court
By: Patty Ratliff, Deputy Clerk

Stephen T. LaBriola (seeking *pro hac vice* admission)
Derek Schwahn (seeking *pro hac vice* admission)
FELLOWS LaBRIOLA, LLP
South Tower, Suite 2300
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
Telephone: (404) 586-9200
Facsimile: (404) 586-9201
slabriola@fellab.com
dschwahn@fellab.com

Benjamin H. Rascoff, ISB No. 9998
WINSTON & CASHATT, LAWYERS, a
Professional Service Corporation
250 Northwest Boulevard, Suite 206
Coeur d'Alene, Idaho 83814
Telephone: (208) 667-2103
Facsimile: (208) 765-2121
bhr@winstoncashatt.com

Attorneys for Plaintiffs

IN THE DISTRICT COURT OF KOOTENAI COUNTY
STATE OF IDAHO

| | |
|---|---|
| ANNE LUNT; NOAH LUNT; EVAN LUNT CHRISTIAN LUNT; MOLLY LUNT; and CONNOR LUNT, as heirs to NEIL LUNT, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> DEATLEY CRUSHING COMPANY; ATLAS SAND & ROCK, INC.; EUCON CORPORATION; ECHO RENTAL COMPANY; and THE ESTATE OF JAY MICHAEL CAWLEY, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. ___CV28-21-4157___ <br><br><br> **JURY TRIAL DEMANDED** <br><br> FEE CATEGORY: A.A. <br> Fee: $221.00 |

Haynes, Lansing L.

## COMPLAINT

Plaintiffs, the Heirs of Neil Lunt, deceased, through their undersigned counsel, file this Complaint against Defendants DeAtley Crushing Company, Atlas Sand & Rock, Inc., Eucon Corporation, Echo Rental Company, and The Estate of Jay Michael Cawley showing the Court as follows:

## INTRODUCTION

On July 5, 2020, Neil Lunt was piloting a de Havilland Canada DHC-2 MK.I (L20A) (the "Beaver") over Lake Couer d'Alene, Idaho. Mr. Lunt was carrying five passengers as part of a sightseeing tour of the lake operated by Brooks Seaplane Service, Inc. During the Beaver's flight, it was struck in mid-air by a Cessna TU206G (the "Cessna") piloted by Jay Cawley and owned by Echo Rental Company.

The Cessna was flying on a south or south-westerly heading over the water as the Beaver was flying on a north or north-easterly heading, aligning the planes nearly head on. In the moments leading up to the collision, Mr. Cawley was operating the Cessna below 500 feet in violation of Federal Aviation regulations, thereby impairing the ability of Mr. Lunt and other aircraft to see the Cessna. As the Cessna and the Beaver approached each other, Mr. Cawley pulled the Cessna to a higher altitude and crashed into the underside of the Beaver, resulting in a fiery explosion and crash that killed all the occupants of both airplanes. Now, the heirs of Neil Lunt bring this wrongful death action against Mr. Cawley's Estate and his employers and/or principals.

## PARTIES, JURISDICTION, AND VENUE

1.      Anne Lunt is the surviving spouse and heir of Neil Lunt under Idaho Code § 5-311(2)(b). Anne Lunt is a citizen of the State of Washington.

2

2.      Noah Lunt is the son and heir of Neil Lunt under Idaho Code § 5-311(2)(b). Noah Lunt is a citizen of the State of California.

3.      Christian Lunt is the son and heir of Neil Lunt under Idaho Code § 5-311(2)(b). Christian Lunt is a citizen of the State of California.

4.      Evan Lunt is the son and heir of Neil Lunt under Idaho Code § 5-311(2)(b).  Evan Lunt is a citizen of the State of California.

5.      Molly Lunt, a minor, is the daughter and heir of Neil Lunt under Idaho Code § 5-311(b)(2). Molly Lunt is a citizen of the State of Washington.

6.      Connor Lunt, a minor, is the son and heir of Neil Lunt under Idaho Code § 5-311(2)(b). Connor Lunt is a citizen of the State of Washington.

7.      DeAtley Crushing Company ("DeAtley Crushing") is a legal entity organized and existing under the laws of the State of Idaho.  DeAtley Crushing's registered agent can be served at 4307 Snake River Avenue, Lewiston, Idaho 83501.

8.      Atlas Sand & Rock, Inc. ("Atlas") is a legal entity organized and existing under the laws of the State of Washington.  Atlas is registered to do business in the State of Idaho and has its principal address in the State of Idaho. Atlas's registered agent can be served at 4341 Snake River Avenue, Lewiston, Idaho 83501

9.      Eucon Corporation ("Eucon") is a corporation organization and existing under the laws of the State of Idaho.  Eucon's registered agent can be served at 4201 Snake River Avenue, Lewiston, Idaho 83501.

10.     Echo Rental Company ("Echo Rental") is a legal entity organized and existing under the laws of the State of Idaho.  Echo Rental's registered agent can be served at 4307 Snake River Avenue, Lewiston, Idaho 83501.

3

11.     The Estate of Jay Michael Cawley ("Cawley Estate") is domiciled in Idaho and can be served through its personal representative, Rebecca Cawley, at 607 Grelle Avenue, Lewiston, Idaho 83501.

12.     This Court has subject matter jurisdiction over this action because this is a civil action with more than $10,000 in damages at issue.

13.     This Court has personal jurisdiction over Defendants DeAtley Crushing, Eucon, Echo Rental, and the Cawley Estate because each is a citizen of the State of Idaho.  This Court has personal jurisdiction over Defendant Atlas because it is registered to do business, has its principal office address, and committed a tortious act in the State of Idaho.

14.     Venue is proper before this Court pursuant to Idaho Code § 5-404 because the events giving rise to the claims asserted herein arose within Kootenai County, Idaho.

## FACTUAL BACKGROUND

15.     On July 5, 2020, Neil Lunt was piloting the Beaver over Lake Coeur d'Alene as part of a sightseeing tour operated by Brooks Seaplane Service, Inc.  The Beaver was carrying five passengers, David Sorenson, Sean Frederickson, and Mr. Frederickson's three minor children and stepchildren.

16.     That same day, Jay Cawley was piloting the Cessna over Lake Coeur d'Alene traveling from Coeur d'Alene to Lewiston, Idaho.  The Cessna had one other passenger, Kelly Kreeger.

17.     Weather conditions were clear and sunny around Lake Coeur d'Alene on the day of the plane crash.

18.     The Beaver's customary route around the lake took the plane south from the Brooks Seaplane base on the north shore of the lake to the southern part of Lake Coeur d'Alene and then

4

back north towards the base.  The Beaver favored the western shore while traveling south and the eastern shore when traveling north resulting in a counterclockwise route around the lake.

19.     Around 2:20 PM on July 5, the Beaver was flying on a north or northeast heading over the water returning to the Brooks Seaplane base. The Beaver was flying closer to the eastern shore of the lake on its customary route.

20.     The Cessna was flying on a south or southwest heading over the lake coming from the area near Carlin Bay.

21.     In the moments before impact, the Cessna was flying below 500 feet and at a faster speed than the Beaver.

22.     Multiple eyewitnesses saw the Cessna flying lower than 500 feet and below the Beaver in the moments before impact.

23.     The Cessna was flying as low as 300 feet over the water.

24.     As the two planes approached one another, the Cessna gained altitude and crashed into the underside of the Beaver.

25.     Upon information and belief, the wing of the Cessna struck the middle of the Beaver's pontoon.

26.     The impact occurred at an altitude above 500 feet.

27.     The Cessna crashed into the Beaver above the water closer to the eastern shore of the lake around the area of Black Rock Bay, Powderhorn Bay, and Half Round Bay.

28.     The crash caused a fireball explosion over the lake and debris from the two planes sunk to the bottom of the lake.

29.     Because of the Cessna's low altitude and angle of approach, Mr. Lunt did not see the Cessna before impact.

5

30.    Eyewitness Declarations from Anna-Rebecca Kagawan, Tracie Chappell, Cher Chappell, Lawrence Eggleston, and Ashley Eggleston describe the moments leading up to the crash and are attached hereto as Exhibit A.

31.    As a result of the Cessna flying into the Beaver, Mr. Lunt and the five passengers in the Beaver were killed.

32.    Mr. Cawley and the other passenger in the Cessna also died from the crash.

**A.  Neil Lunt**

33.    Neil Lunt was an experienced pilot with more than 20,000 flight hours in a career spanning three decades.

34.    Mr. Lunt worked for five years as a flight instructor at Orange County Flight Center.

35.    Mr. Lunt worked as a commercial passenger pilot for West Air and SkyWest Air for over twenty years, which included flying a Brasilia turboprop plane as well as jet engine planes such as the CRJ 200, 700, and 900, and the EMB175.

36.    Mr. Lunt trained and tested hundreds of other pilots in the Brasilia as a line check airman.

37.    As a line check airman, Mr. Lunt was approved by the Federal Aviation Administration ("FAA") as having the appropriate knowledge, training, experience, and demonstrated ability to evaluate and certify the knowledge and skills of other pilots.

38.    In 2018, Mr. Lunt retired from SkyWest Air and purchased Brooks Seaplane Service, Inc.. Thereafter, Mr. Lunt began operating Brooks Seaplane including piloting scenic flights over Lake Coeur d'Alene.

39.    In May 2019, Mr. Lunt passed his biennial flight review with an FAA examiner.

6

40.    Prior to July 5, 2020, Mr. Lunt logged hundreds of hours of time flying the float planes operated by Brooks Seaplane.

41.    Mr. Lunt had a reputation among other pilots and his passengers as a safety conscious pilot.

**B.  Jay Cawley**

42.    Mr. Cawley worked for Cascade Airways and Grangeville Air Service before taking a job as a corporate pilot for DeAtley Crushing in Lewiston, Idaho, where he worked for over twenty years.

43.    Mr. Cawley's family described him as someone who "frequently landed on tiny, short airstrips or just the nearest available flat spot of dirt. . . . [where] [m]ost pilots wouldn't be so brave." (7/10/20 Statement of Jessica Cawley in the Spokesman-Review).

44.    Upon information and belief, Mr. Cawley's aviation experience did not include piloting commercial passenger airplanes.

45.    Mr. Cawley was willing to take risks that other pilots would not take.

46.    Upon information and belief, Mr. Cawley was an agent or employee or DeAtley Crushing.

47.    Upon information and belief, Mr. Cawley was acting within the scope of his employment or agency with DeAtley Crushing at the time of the July 5 crash.

48.    DeAtley Crushing was a subsidiary of Eucon and/or an affiliated company on July 5, 2020.

49.    Upon information and belief, Mr. Cawley was also an agent or employee of Echo Rental.

50.    Echo Rental owned the Cessna.

7

51.     Upon information and belief, Mr. Cawley was acting within the scope of his employment or agency with Echo Rental at the time of the July 5 crash.

52.     Upon information and belief, Mr. Cawley helped operate Echo Rental, including maintaining and flying its airplanes.

53.     Upon information and belief, Echo Rental was a subsidiary and/or affiliated company of Eucon, DeAtley Crushing, Atlas, or all three entities on July 5, 2020.

54.     Upon information and belief, Mr. Cawley was an agent or employee of Atlas.

55.     Upon information and belief, at the time of the July 5 crash, Mr. Cawley was acting within the scope of his employment or agency with Atlas.

56.     Upon information and belief, Atlas was a subsidiary and/or affiliated company of Eucon on July 5, 2020.

57.     Upon information and belief, Mr. Cawley was an agent or employee of Eucon.

58.     Upon information and belief, at the time of the July 5 crash, Mr. Cawley was acting within the scope of his employment or agency with Eucon.

## COUNT 1
## NEGLIGENCE OR RECKLESSNESS

59.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

60.     As pilot of the Cessna, Mr. Cawley owed a duty of care to Mr. Lunt and others in the air on July 5, 2020.

61.     Mr. Cawley breached his duty of care by operating the Cessna negligently and/or recklessly in disregard for the rights and safety of others, including Mr. Lunt and the other passengers on the Beaver.

62.     Mr. Cawley was negligent or reckless in the following ways:

8

    a.  Operating the Cessna at an altitude below 500 feet;

    b.  Flying as low as 300 feet over the lake on a busy holiday weekend;

    c.  Operating the Cessna at an unsafe speed over the lake given the altitude and activity on the lake during the holiday weekend;

    d.  Gaining altitude in the Cessna and flying directly into the underside of the Beaver;

    e.  Failing to yield the right of way to the Beaver; and

    f.  Flying along the eastern shore of the lake while traveling south such that the Cessna was flying on the wrong side of the lake;

63.    Mr. Cawley's negligent or reckless operation of the Cessna was the direct and proximate cause of the plane crash and Mr. Lunt's death.

64.    As a result of Mr. Cawley's negligent or reckless operation of the Cessna, Mr. Lunt sustained fatal injuries and other damages, for which his heirs are entitled to recover.

65.    Echo Rental is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with Echo Rental at the time of the crash.

66.    Echo Rental is also vicariously liable for Mr. Cawley's negligent or reckless acts and omissions as the owner of the Cessna.

67.    DeAtley Crushing is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with DeAtley Crushing at the time of the crash.

9

68.    Atlas is vicariously liable for Mr. Cawley's negligent or reckless acts or omissions because Mr. Cawley was acting within the scope of his employment or agency with Atlas at the time of the crash.

69.    Eucon is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with Eucon at the time of the crash.

## COUNT 2
## NEGLIGENCE PER SE

70.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

71.    Plaintiffs are the heirs of Neil Lunt and are entitled to bring this action against the Defendants for the wrongful death of Mr. Lunt.

72.    Pursuant to Part 91 of the Federal Aviation regulations, Mr. Cawley owed a duty of care to Mr. Lunt and other planes to operate the Cessna in a safe and lawful manner by adhering to all applicable Federal Aviation regulations.

73.    Mr. Cawley breached his duties and was negligent *per se* by violating Federal Aviation regulations as follows:

   a.   Mr. Cawley violated 14 C.F.R. § 91.13 by operating the Cessna in a careless or reckless manner so as to endanger life or property;

   b.   Mr. Cawley violated 14 C.F.R. § 91.111 by operating the Cessna so close to the Beaver as to create a collision hazard;

   c.   Mr. Cawley violated 14 C.F.R. § 91.113 by failing to alter the Cessna's course when approaching the Beaver under aircraft right-of-way regulations;

10

d.  Mr. Cawley violated 14 C.F.R. § 91.119 by flying the Cessna at an altitude of less than 500 feet over the busy lake.

74.  Mr. Cawley's violation of Federal Aviation regulations in piloting the Cessna was the direct and proximate cause of the plane crash and Mr. Lunt's death.

75.  Pursuant to Idaho Code § 5-311 and other law, the Cawley Estate may be sued by Plaintiffs and is liable for Mr. Cawley's violations of Federal Aviation regulations on July 5.

76.  As a result of Mr. Cawley's negligent or reckless operation of the Cessna, Mr. Lunt sustained fatal injuries and other damages, for which his heirs are entitled to recover.

77.  Echo Rental is vicariously liable for Mr. Cawley's violations of Federal Aviation regulations because Mr. Cawley was acting within the scope of his employment or agency with Echo Rental at the time of the crash.

78.  Echo Rental also is vicariously liable for Mr. Cawley's violations of Federal Aviation regulations as the owner of the Cessna.

79.  DeAtley Crushing is vicariously liable for Mr. Cawley's violations of Federal Aviation regulations because Mr. Cawley was acting within the scope of his employment or agency with DeAtley Crushing at the time of the crash.

80.  Atlas is vicariously liable for Mr. Cawley's negligent or reckless acts or omissions because Mr. Cawley was acting within the scope of his employment or agency with Atlas at the time of the crash.

81.  Eucon is vicariously liable for Mr. Cawley's violations of Federal Aviation regulations because Mr. Cawley was acting within the scope of his employment or agency with Eucon at the time of the crash.

## COUNT 3
## WRONGFUL DEATH

82.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

83.     Plaintiffs are the heirs of Neil Lunt, deceased, and are entitled to bring this action against the Defendants for the wrongful death of Mr. Lunt pursuant to Idaho Code § 5-311.

84.     Pursuant to Idaho Code § 5-311 and other law, the Cawley Estate may be sued by Plaintiffs and is liable for the negligent or reckless acts and omissions of Mr. Cawley on July 5, 2020.

85.     As a direct and proximate result of Cawley's negligent or reckless acts and omissions, Neil Lunt died.

86.     As a direct and proximate result of Cawley's negligent or reckless acts and omissions, Plaintiffs have sustained damages for which they are entitled to recover under Idaho Code § 5-311.

87.     Echo Rental is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with Echo Rental at the time of the crash.

88.     Echo Rental also is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions as the owner of the Cessna.

89.     Atlas is vicariously liable for Mr. Cawley's negligent or reckless acts or omissions because Mr. Cawley was acting within the scope of his employment or agency with Atlas at the time of the crash.

12

90.    DeAtley Crushing is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with DeAtley Crushing at the time of the crash.

91.    Eucon is vicariously liable for Mr. Cawley's negligent or reckless acts and omissions because Mr. Cawley was acting within the scope of his employment or agency with Eucon at the time of the crash.

## COUNT 4
## RESPONDEAT SUPERIOR LIABILITY

92.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

93.    Mr. Cawley was an employee or agent of Echo Rental, DeAtley Crushing, Atlas, and/or Eucon.

94.    At all relevant times, Mr. Cawley was acting within the scope of his employment or agency with Echo Rental, DeAtley Crushing, Atlas, and/or Eucon.

95.    Under the doctrine of *Respondeat Superior*, Echo Rental, DeAtley Crushing, Atlas, and Eucon are liable for Mr. Cawley's negligent, reckless, or unlawful acts and omissions, which were the direct and proximate cause of the crash and Mr. Lunt's death.

## COUNT 5
## NEGLIGENCE OF DEATLEY CRUSHING, ATLAS, EUCON, AND ECHO RENTAL

96.    Plaintiffs re-allege and incorporation by reference the allegations contained in Paragraphs 1 through 58 above.

97.    Echo Rental, DeAtley Crushing, Atlas, and/or Eucon negligently hired, trained, supervised, retained, qualified, and/or entrusted Mr. Cawley to operate the Cessna.

13

98.     Echo Rental, DeAtley Crushing, Atlas, and/or Eucon knew, or should have known, that Mr. Cawley had operated the Cessna negligently, recklessly, and in violation of Federal Aviation regulations prior to July 5, 2020.

99.     Nevertheless, Echo Rental, DeAtley Crushing, Atlas, and/or Eucon permitted Mr. Cawley to fly the Cessna and other aircraft owned by Echo Rental, DeAtley Crushing, Atlas, and/or Eucon.

100.    As a direct and proximate cause of Echo Rental, DeAtley Crushing, Atlas, and Eucon's negligent acts and omissions, Mr. Lunt sustained fatal injuries, for which Plaintiffs are entitled to recover.

## COUNT 6
## JOINT AND SEVERAL LIABILITY

101.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

102.    Mr. Cawley, Echo Rental, DeAtley Crushing, Atlas, and Eucon were acting in concert in operating the Cessna on July 5, 2020.

103.    By acting in concert, negligently and/or recklessly, the Cawley Estate, Echo Rental, DeAtley Crushing, Atlas, and Eucon are jointly and severally liable to Plaintiffs.

104.    Under Idaho Code § 6-803, DeAtley Crushing, Atlas, Eucon, Echo Rental, and the Cawley Estate are jointly and severally liable for all damages caused or contributed to by their negligent, reckless, or unlawful conduct.

## COUNT 7
## ALTER EGO LIABILITY

105.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

14

106.    DeAtley Crushing, Atlas, Eucon, and Echo Rental are all commonly owned and operated by the same person or person(s).

107.    There is a unity of interest and ownership among Defendants DeAtley Crushing, Atlas, Eucon, and Echo Rental to a degree that there is no distinction between the personalities of the entities.

108.    Upon information and belief, Eucon, DeAtley Crushing, Atlas, or all three entities, directly or indirectly, pay for the operating expenses of Echo Rental.

109.    Upon information and belief, Echo Rental does not operate separately from DeAtley Crushing, Eucon, and Atlas and does not observe corporate formalities.

110.    Upon information and belief, the four Defendant entities share employees without recognizing the distinction between entities.

111.    Because of the unity of interest and ownership and the failure to follow the corporate form, it would be inequitable to treat DeAtley Crushing, Atlas, Eucon, and Echo Rental's acts and omissions as separate acts of each entity.

112.    The corporate veil should be pierced to provide that DeAtley Crushing, Atlas, Eucon, and Echo Rental, are jointly and severally liable to Plaintiffs for damages.

## COUNT 8
## DAMAGES

113.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 58 above.

114.    As a result of Defendants' negligence, recklessness, and/or unlawful conduct, Plaintiffs are entitled to recover all damages allowed by law and as may be just under the circumstances, including without limitation:

15

    a.  The past and future loss of financial support and assistance that Neil Lunt

         provided to his heirs; and

    b.  The loss of society, companionship, comfort, protection, guidance, advice, and

         intellectual training that Neil Lunt provided to his heirs.

115.    The limitation on damages contained in Idaho Code § 6-1603 does not apply to Plaintiffs' damages because their claims arise from willful or reckless misconduct by one or more Defendants.

116.    Plaintiffs intend to make a motion with the Court to add a request for punitive damages against Defendants pursuant to Idaho Code § 6-1604.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

(a) A trial by jury consisting of twelve (12) jurors as authorized by I.R.C.P. 38 and Idaho

    law;

(b) That Summons and Complaint be issued requiring Defendants to be served as

    required by law;

(c) For judgment against each Defendant in favor of Plaintiffs for all damages and losses

    compensable under applicable law;

(d) That Plaintiffs' attorneys' fees, expenses, and costs be cast against Defendants; and

(e) For such other and further relief that the Court deems just and proper.

16

Respectfully submitted this 24 day of June, 2021

FELLOWS LABRIOLA LLP

/s/ Stephen T. LaBriola
Stephen T. LaBriola (seeking *pro hac vice* admission)
Derek Schwahn (seeking *pro hac vice* admission)
South Tower, Suite 2300
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200
(404) 586-9201 facsimile
slabriola@fellab.com
dschwahn@fellab.com

Benjamin H. Rascoff
Idaho Bar No. 9998
WINSTON & CASHATT LAWYERS
250 Northwest Boulevard, Suite 206
Coeur d'Alene, Idaho 83814
(208) 667-2103
(208) 765-2121 facsimile
bhr@winstoncashatt.com

17

# EXHIBIT 4
# VALENTI DECLARATION

Electronically Filed
6/8/2021 11:22 AM
First Judicial District, Kootenai County
Jim Brannon, Clerk of the Court
By: Janlyn Cleveland, Deputy Clerk

Paul W. Daugharty
DAUGHARTY LAW GROUP
505 E. Front Avenue, Suite 301
Coeur d'Alene, ID 83814
Telephone (208) 664-3799
Facsimile (208) 758-0851
Email: paul@pdaughartylaw.com
I-Court Email: paul@pdaughartylaw.com
ISB#4520

## IN THE DISTRICT COURT FOR THE FIRST JUDICIAL DISTRICT
## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF KOOTENAI

| | |
|---|---|
| TED A. HUGHES; SHANNON LEE; ROBIN LYNN KIRSCH and JONATHAN A. KIRSCH; TIMOTHY J. ARCHER and DIANNE C. ARCHER; THOMAS N. MURTO, JR.; DANIEL J. BLIZZARD and SONYA T. BLIZZARD; JOHN STANLEY and MARY STANLEY; MATTHEW M. HARMON; and JASON VEDADI,<br><br>Plaintiffs,<br><br>v.<br><br>KOOTENAI COUNTY, a political subdivision of the State of Idaho; and KOOTENAI COUNTY BOARD OF COMMISSIONERS, BILL BROOKS, CHRIS FILLIOS AND LESLIE DUNCAN, in their official capacities,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMES NOW, the above-named Plaintiffs, by and through their attorney Paul W. Daugharty of the firm DAUGHARTY LAW GROUP, and hereby state and allege the following Complaint for Declaratory and Injunctive Relief against Defendant Kootenai County and the Kootenai County Board of Commissioners (collectively "Defendant").

### The Kootenai County Board of Commissioners' Illegal Wakesurfing Ban

1.      On May 24, 2021, the Kootenai County Board of Commissioners ("BOC") acted

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 1

Haynes, Lansing L.

to revise Resolution 2020-38 and the Kootenai County Parks & Waterways Ordinance Sections 6-2-6 & 6-2-4, called the AMENDED Kootenai County Waterways Restricted Zone Designation (herein the "Waterways Restricted Zone Designation").

2.    The BOC's Special meeting was preceded three days earlier by a Special Meeting Agenda was posted Friday, May 21, 2021, at 4:01 p.m., PST.

3.    A small, vocal activist group pushed the BOC to act at the Special Meeting to enact an unprecedented no-wake zone for "*the entirety of the Spokane River, Fernan Lake, and Lower Twin Lake.*" (Emphasis added).[1] *See* Exhibit 1 hereto, sixth "Whereas" clause.

4.    On the eve of Memorial Day weekend -- the unofficial start of the local boating season -- the BOC voted 2-1 to enact the sweeping new law, with Commissioners Chris Fillios and Bill Brooks voting in favor, and Commissioner Leslie Duncan voting against.

5.    The BOC enacted the new law in violation of Idaho state law by failing to provide sufficient public notice to (a) members of the local business community, (b) vested landowners, (c) Kootenai County public waterway users, despite the imminent, foreseeable and consequential threat posed by the new law to their economic and legal interests.

6.    Moreover, the BOC did so contrary to recommendations from (a) the Kootenai County Waterways Advisory Board ("KCWAB"), and (b) the Kootenai County Sheriff's Office ("KCSO"):

        a.    The KCWAB's role includes to "recommend long range general direction and goals related to the County's parks, trails, waterways and waterways facilities."[2]

_____

[1]    In Idaho, the Spokane River begins in the West at the Idaho/Washington border, and empties into Lake Coeur d'Alene to the East/Southeast. Fernan Lake is just East of Coeur d'Alene and connects to Lake Coeur d'Alene. Lower Twin Lake is northwest of Coeur d'Alene.

[2] https://www.kcgov.us/341/Parks-Waterways-Advisory-Board

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                      Page - 2

Although the KCWAB unanimously approved a motion recommending the BOC to give the then-existing wording of Resolution 2020-38 an additional year without revision to allow for sufficient data to be collected before the BOC considered any revisions, the BOC moved to enact the new Ordinance anyway.

b. The KCSO's "Marine Patrol" is "responsible for ensuring the safety and enforcement for the 18 lakes and 56 miles of navigable river within" Kootenai County, staffed by one fill time Sergeant, two full-time deputies and ten seasonal deputies. [3] Although the KCSO also recommended the BOC wait another year so that sufficient factual data could be collected to determine the effect of then-existing working of Resolution 2020-38 before any change would be made, the BOC enacted the new law anyway.[4]

7.     The BOC Resolution proposed to effectuate the new Ordinance posits that the BOC supposedly "determined" that the alleged "safety of persons and property" supports imposition of a no-wake zone for the entire river and two lakes, but for the entirety of the 2020 season KCSO issued only two citations, and after the Special Meeting was over, Commissioner Brooks openly admitted the new Ordinance seeks to outlaw wakesurfing: "...*this can be a paradise for wakeboarding, but not on the Spokane River, please*..."[5] (Emphasis added.)

8.     The BOC's wakesurfing ban is slated to go into effect once the BOC adopts the

---

[3]     https://www.kcsheriff.com/160/Recreation-Safety

[4]     Upon information and belief, this request was set forth in a letter to the BOC from the KCSO on or about November 19, 2020.

[5]     A gift, not a privilege | Coeur d'Alene Press (cdapress.com)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 3

proposed resolution, a true and correct copy of which is attached hereto as Exhibit 1.

9.      Wakesurfing is a watersport, popular with families, which involves a surfer riding a small board wave behind a moving boat without being directly pulled by the boat. After getting up on the wave, typically using a towrope, the surfer drops the rope and glides behind the boat for a continuous period of time, usually at about 10-12 miles *per* hour.

10.     Responding to the popularity of wakesurfing, manufacturers offer boats for wakesurfing afficionados, many of which are sold locally, and are widely seen in the local marina's, on lifts, in slips and at docks.

11.     In order to ban wakesurfing on the Spokane River, Fernan Lake and Lower Twin Lake, the BOC's proposed Resolution uses the following language to define "excessive wake":

> **WHEREAS**, the term "excessive wake" shall be defined as the wave resulting from operating a vessel at the speed at which boats create the most wake, moving quickly and displacing the most water, i.e. plowing; the wave resulting from operating a vessel in an artificially bow-high manner to increase or enhance a wake, including wake enhancement by use of ballast, mechanical hydrofoils, uneven loading; the operating at transition speed, i.e. operating a vessel at greater than no-wake speed, but not fast enough to cause the vessel to plane; or the wave resulting from operating a vessel to cause water to lap onto or over a dock, pier, or other lawfully permitted encroachment.

*See* Exhibit 1, seventh "Whereas" clause.

12.     The BOC proposed Resolution's "excessive wake" definition includes language and terms such as:

     a.   "…a vessel…"

     b.   "…the speed at which boats create *the most* wake…";

     c.   "…moving *quickly*…";

     d.   "…displacing *the most* water…";

     e.   "…*artificially* bow-high manner…";

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 4

    f.   "…operating at *transition speed*…"; and,

    g.   "…wave resulting from operating a vessel to cause *water to lap onto or over a dock*…".

13.    Because the proposed Resolution prohibits any "vessel" from operating at "transition speed", and defines "transition speed" as that speed greater than a "no-wake speed", but less than that required to "cause the vessel to plane", under the new resolution:

    a.   No vessel can travel above the no-wake speed on the "the entirety of the Spokane River, Fernan Lake, and Lower Twin Lake"; and,

    b.   No vessel can "plane" on "the entirety of the Spokane River, Fernan Lake, and Lower Twin Lake", because to plane, a vessel must move through what the proposed ordinance describes as a "transition speed."

14.    Despite the use of elastic and subjective terms, with no comparative reference point or definitional guidance, like "quickly", and "the most", or "artificially", the BOC proposes to proceed with the Resolution to adopt the new Ordinance.

15.    Despite the fact that during 2020 there were no injury accidents reported on the Spokane River or any wakesurfing related accidents, BOC member Chris Fillios has justified the proposed ban based on what he contends might happen at some indeterminate future point: "the Spokane River is a fixed body of water with an increasing amount of boater traffic, making an accident inevitable."[6]

16.    BOC member Bill Brooks justified the ban with open animus towards non-Idahoans who patronize local businesses and some who buy second homes for their families here: "You go to a parking lot where they launch these boats, and you see license plates from Washington,

---

[6]    Coeur D'Alene Press – May 25, 2021

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF        Page - 5

Washington, Idaho, Washington, Washington. That's got to stop. Go find yourself another playground… ."[7]

17.   It is clear that Commissioner Brooks' reference to "these boats" is a reference to wakesurfer's boats, given his statement, above, that *"…this can be a paradise for wakeboarding, but not on the Spokane River, please…"*

18.   By contrast, BOC member Leslie Duncan opposed the proposed Resolution based on the factual record rather than animus towards persons who enjoy wakesurfing, stating: "we had no accidents on the Spokane River last year, none. Out of the 26 accidents on Kootenai County waterways, zero problems (were there).   So to say this is a safety issue when citations and accidents do not back that up, I cannot support."[8]

19.   As written the proposed Resolution has the effect of unreasonably restricting boat access and use as it will be impossible for any boat operator to legally go through the necessary transition to get a vessel on plane, making the entire Spokane River from Lake Coeur D' Alene to the Post Falls Dam effectively a no-wake zone.

20.   Because the actions of the BOC have created disputes concerning the legality, true purpose, interpretation, enforcement and application of the proposed Resolution and Ordinance. A declaratory judgment by this Court resolving the disputes is necessary.

### Jurisdiction and Venue

21.   Jurisdiction over this action if proper in this Court under Idaho Const. Art. V, § 20, and Idaho Code § 1-705. Venue is proper in this Court under Idaho Code § 5-403.

22.   This Court has jurisdiction to issue a declaratory judgment pursuant to Idaho Code

---

[7]      Coeur D'Alene Press – May 27, 2021.
[8]      Coeur D'Alene Press – May 16, 2021.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                              Page - 6

§ 10-1201and Idaho R. Civ. P. 57.

23.     This Court has jurisdiction to issue injunctive relief pursuant to Idaho R. Civ. P. 65.

**Parties**

24.     Plaintiff Ted A. Hughes ("Hughes") is a resident of Kootenai County, Idaho. Hughes owns real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Hughes will be unable to use, recreate and enjoy the benefits of ownership on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

25.     Plaintiff Shannon Lee ("Lee") is a resident of Kootenai County, Idaho. Lee uses the Spokane River for the purpose of recreation. Lee will be unable to use and recreate on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

26.     Plaintiffs Robin Lynn Kirsch and Jonathan A. Kirsch (collectively "Kirsch") are husband and wife and residents of Kootenai County, Idaho. Kirsch's own real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Kirsch's will be unable to use, recreate and enjoy the benefits of ownership on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

27.     Plaintiffs Timothy J. Archer and Diane C. Archer (collectively "Archer") are husband and wife and residents of Kootenai County, Idaho. Archer's own real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Archer's will be unable to use, recreate and enjoy the benefits of ownership on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

28.     Plaintiff Thomas N. Murto, Jr. ("Murto") is a resident of Kootenai County, Idaho. Murto owns real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Murto will be unable to use, recreate and enjoy the benefits of ownership on the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 7

Spokane River if the challenged proposed Resolution and Ordinance is enacted.

29.     Plaintiffs Daniel J. Blizzard and Sonya T. Blizzard (collectively "Blizzard") are husband and wife and residents of Kootenai County, Idaho.   Blizzard's use the Spokane River for the purpose of recreation. Blizzard's will be unable to use and recreate on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

30.     Plaintiffs John Stanley and Mary Stanley (collectively "Stanley") are husband and wife and residents of Kootenai County, Idaho. Stanley's use the Spokane River for the purpose of recreation. Stanley's will be unable to use and recreate on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

31.     Plaintiff Mathew M. Harmon ("Harmon") is a resident of Kootenai County, Idaho. Harmon owns real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Harmon will be unable to use, recreate and enjoy the benefits of ownership on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

32.     Plaintiff Jason Vedadi ("Vedadi") is a resident of Kootenai County, Idaho. Vedadi owns real estate on the Spokane River and uses the Spokane River for the purpose of recreation. Vedadi will be unable to use, recreate and enjoy the benefits of ownership on the Spokane River if the challenged proposed Resolution and Ordinance is enacted.

33.     Defendant Kootenai County ("Kootenai County") is and remains a body politic, municipal corporation and/or political subdivision of the State of Idaho created and existing under the laws of the State of Idaho and doing business in Kootenai County, Idaho.   Among its powers is the power to sue and be sued.

34.     Defendant Kootenai County Board of Commissioners ("BOC") exercise the powers of Kootenai County. The BOC for Kootenai County are Chris Fillios, Bill Brooks, and Leslie

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 8

Duncan.

## General Allegations

35.    On May 24, 2021, the Kootenai County Board of Commissioners ("BOC") acted to revise Resolution 2020-38 and the Kootenai County Parks & Waterways Ordinance Sections 6-2-6 & 6-2-4.

36.    The proposed Resolution and Ordinance was approved without sufficient public notice as required by Idaho Code § 67-7031. The Special Meeting Agenda was posted Friday, May 21, 2021, at 4:01 p.m., PST.

37.    The proposed Resolution and Ordinance is vague, ambiguous, uncertain, and indefinite. As written, the Resolution and Ordinance are void and unconstitutional. The enforcement of the Resolution and Ordinance will result in a violation of Plaintiffs' fundamental rights to due process and creates a likelihood of selective enforcement. The proposed Resolution and Ordinance is void for vagueness under Idaho law because the Resolution and Ordinance does not clearly define the prohibited conduct and creates the likelihood for arbitrary and discriminatory enforcement.

## Count One

**Insufficient Public Notice in Violation of Idaho Code § 67-7031 and Denial of Substantive Due Process Under the Constitutions of the United States and State of Idaho**

38.    Plaintiffs re-allege and incorporate the paragraphs as if fully set forth herein.

39.    Kootenai County and the BOC failed to provide sufficient public notice as required by Idaho Code § 67-7031 before acting on the proposed Resolution and Ordinance.

40.    Kootenai County's and the BOC's actions constitute state conduct for the purposes of causes of action arising under the Constitutions of the United States and of the State of Idaho.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 9

41.    Kootenai County and the BOC have denied Plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States and Art. I. §13 of the Constitution of the State of Idaho.

42.    Kootenai County and the BOC have by acting on and approving the proposed Resolution and Ordinance have interfered with Plaintiffs' constitutionally protected activity and has arbitrarily, unreasonably, and impermissibly infringed upon Plaintiffs' rights under the due process clauses of the Constitutions of the United States and State of Idaho while acting under color of state law.

43.    The alleged conduct of Kootenai County and the BOC has and will continue to harm Plaintiffs.

**Count Two**

**Due Process - Vagueness**

44.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

45.    Pursuant to Idaho law an ordinance is void for vagueness if it "fails to give a person of ordinary intelligence fair notice this his contemplated conduct is forbidden and permits arbitrary and discriminatory enforcement."[9] The proposed Resolution and Ordinance do not clearly define the prohibited conduct and the definition of the term "excessive wake" is vague, ambiguous, and overbroad. The scope of the definition and prohibition is subject to multiple interpretations and arbitrary enforcement. It is also unclear who bears the burden of proving or disproving a violation.

46.    Because the proposed Resolution and Ordinance is vague and overbroad it violates Plaintiffs' and all other law-abiding citizens' due process rights.

---

[9]    See State v. Britt, 118 Idaho 584, 798 P.2d 43 (1990)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 10

### Count Three

### Preliminary and Permanent Injunctive Relief

47.     Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

48.     Plaintiffs' will suffer immediate and irreparable harm if Kootenai County and the BOC is allowed to proceed with proposed Resolution and Ordinance. A violation of Plaintiffs' constitutional rights presumptively causes irreparable harm.  Only this Court's exercise of its equitable powers can protect Plaintiffs' and all law-abiding citizens' from sustaining irreparable harm.

49.     Plaintiffs have a reasonable probability of success on the merits.

50.     There is no plain, speedy, and adequate remedy at law to prevent the risk of immediate and irreparable harm to Plaintiffs.

51.     The public interest would also be served by this Court granting injunctive relief.

52.     A preliminary injunction enjoining Kootenai County and the BOC from enacting and enforcing the proposed Resolution and Ordinance will preserve the status quo pending trial on the merits.

53.     As such, the Plaintiffs request preliminary and permanent injunctive relief enjoining Kootenai County and the BOC from taking action to enact and/or enforce the proposed Resolution and Ordinance and/or ordering or directing the Kootenai County Sheriff to enforce the proposed Resolution and Ordinance.

### Prayer for Relief

WHEREFORE, Plaintiffs request the following relief:

1.     That the Court enter a Declaratory Judgment that the proposed Resolution and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 11

Ordinance violates Idaho Code § 67-7031 and is preempted as a matter of law, violates the Fourteenth Amendment to the Constitution of the United States and Art. I. §13 of the Constitution of the State of Idaho, violates due process, and is void for vagueness.

2.  For a preliminary and permanent injunction enjoining Kootenai County and the BOC and all officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the proposed Resolution and Ordinance in any way.

3.  That Plaintiffs be awarded reasonable attorney's fees and costs; and

4.  For such other and further relief as the Court deems just and proper.

DATED this 8th day of June 2021.

DAUGHARTY LAW GROUP

By: _____
Paul W. Daugharty
Attorney for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page - 12

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>             Plaintiff,<br><br>     v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>             Defendant. | Case No: 1:21-cv-00305-DCN<br><br><br>**PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Courthouse News Service ("Courthouse News"), moves this Court pursuant to Federal Rule of Civil Procedure 56 for an order granting summary judgment against Defendant Sara Omundson, in her official capacity as Administrative Director of Idaho Courts ("Omundson").

Courthouse News' motion seeks both declaratory relief and a permanent injunction against Omundson, including her agents, employees and all persons acting at her direction in her official capacity as administrative Director of Idaho Courts, permanently enjoining her from , and all persons acting in concert or cooperation with her, or at her direction or under her control, prohibiting her from continuing her policies and practices that result in delayed access to new nonconfidential civil complaints, including, inter alia, her policy and practice of denying access to complaints until after the completion of administrative processing.

This motion is based on the accompanying Memorandum of Points and Authorities, Separate Statement of Undisputed Material Facts, Declarations of William Girdner, Cathy Valenti, Adam Angione, Jimmy Shimabukuro, Jonathan G. Fetterly, Amber Dina, any opposition papers and evidence filed by Omundson, Courthouse News' reply papers and evidence submitted therewith, the orders, pleadings, records and evidence previously issued of filed in this action, and any argument or evidence presented at hearing, or otherwise permitted by the Court.

Courthouse News files this Motion and supporting papers pursuant to this Court's Order Granting Joint Motion to File Overlength Brief (ECF 57).

DATED this 15th day of December, 2022.

BRYAN CAVE LEIGHTON PAISNER LLP

_/s/ Jonathan G. Fetterly_
Jonathan G. Fetterly
*Attorneys for Courthouse News Service*

MOTION FOR SUMMARY JUDGMENT - 2

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

*Attorneys for Courthouse News Service*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | Case No: 1:21-cv-00305-DCN |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF COURTHOUSE NEWS SERVICE'S MOTION FOR SUMMARY JUDGMENT** |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF LAW ........................................................................... 1

I. INTRODUCTION ................................................................................ 1

II. FACTUAL BACKGROUND ................................................................ 2

    A. About Courthouse News Service ................................................... 2

    B. Press Access to New Civil Complaints ........................................ 3

    C. E-Filing in Idaho District Courts ................................................. 6

    D. Access Delays in Idaho District Courts ...................................... 8

III. SUMMMARY JUDGMENT STANDARD .......................................... 10

IV. ARGUMENT ...................................................................................... 10

    A. The First Amendment Right to Access a Civil Complaint Attaches When the Filer Submits it, Not After a Clerk Has Completed Clerical Processing and "Accepted" It .............................................................................. 12

    B. Neither Confidentiality Concerns Nor Defendant's View that a Complaint is Not "Filed" Until Clerks Have Completed Administrative Processing Justify the Delays Caused by Defendant's Policy of Withholding for Processing ........................................................................................ 13

        1. The Possibility that Clerks Might Reject an e-Filed Complaint Is Not a Reason to Keep It Secret ........................................................ 14

        2. Whatever Interest Defendant Has in Keeping Certain Complaints Confidential Does Not Justify Withholding All New Complaints for Processing ................................................................................... 18

    C. Defendant Does Not Lack Reasonable Alternatives to Post-Processing Access ........................................................................................... 20

    D. Courthouse News is Entitled to Declaratory Relief and a Permanent Injunction to Prevent Defendant from Denying Access Until Complaints Are Processed ..................................................................................... 27

CONCLUSION ........................................................................................... 29

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................. 10

*Courthouse News Serv. v. Cozine,*
    2022 WL 1000775 (D. Or. Apr. 4, 2022) ............................................................. 4

*Courthouse News Serv. v. Gabel,*
    2021 WL 5416650 (D. Vt. Nov. 19, 2021) ............................................. 14, 20, 28

*Courthouse News Serv. v. Jackson,*
    2009 WL 2163609 (S.D. Tex. July 20, 2009) ................................................... 28

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts.,*
    53 F.4th 1245 (10th Cir. 2022) ..................................................................... 12, 16

*Courthouse News Serv. v. Omundson,*
    2022 WL 1125357 (D. Idaho Apr. 14, 2022) ................................... 10, 11, 12, 14

*Courthouse News Serv. v. Planet, ("Planet III")*
    947 F.3d 581 (9th Cir. 2020) .................................................................. *passim*

*Doe v. Public Citizen,*
    749 F.3d 246 (4th Cir. 2014) ............................................................................ 28

*eBay, Inc., v. MercExchange, LLC,*
    547 U.S. 338 (2006) ......................................................................................... 28

*F.V. v. Barron,*
    286 F. Supp. 3d 1131 (D. Idaho 2018) ............................................................. 28

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.,*
    457 U.S. 596 (1982) ......................................................................................... 11

*Kelly v. Wengler,*
    979 F. Supp. 2d 1243 (D. Idaho 2013) ............................................................. 18

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ..................................................................... 28, 29

*Leigh v. Salazar,*
    677 F.3d 892 (9th Cir. 2012) ....................................................................... 13, 20

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 ....................................................................................................28

*Matsushita Elec., Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 ....................................................................................................10

*McCullen v. Coakley*,
    573 U.S. 464 (2014)................................................................................18, 27

*New York Civil Liberties Union v. New York City Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012)...................................................................13, 20

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .....................................................................10

*Press-Enter. Co. v. Superior Ct.("Press-Enterprise I")*,
    464 U.S. 501 (1984)....................................................................................13

*Press-Enterprise Co. v. Superior Court ("Press-Enterprise II")*,
    478 U.S. 1 (1986)..............................................................10, 11, 12, 13, 15

*State v. Clapp*,
    479 P.3d 460 (Idaho Ct. App. 2020)......................................................1, 18

*United States v. Makowitz*,
    2022 WL 1423074 (D. Idaho May 5, 2022) ..............................................18

*Washington-S. Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*,
    263 U.S. 629 (1924)....................................................................................15

**Rules and Statutes**

Fed. R. Civ. P. 56(a) ............................................................................................10

ICAR 32(d) ....................................................................................................14, 15

ICAR 32(g) ....................................................................................................14, 18

ICAR 32(i) ............................................................................................................18

ICAR 33 ................................................................................................................21

IRCP 2.6(a) ..........................................................................................................19

IRCP 2.6(f)(g) ......................................................................................................19

IREFS 5(h) ............................................................................................................18

IREFS 11 ..............................................................................................................14

IREFS 15(a) ................................................................................................. 19

Mont. R. Civ. P. 5.2(a) ............................................................................... 19

Nev. R. Civ. Elec. Fil'g. & Conv. 14(d)(5) ............................................... 19

Or. Trial Ct. R. 2.130(2) ............................................................................ 19

Ut. Ct. R. 4-202.09(10)(A) ......................................................................... 19

Wash. G.R. 31(e)(1)-(2) .............................................................................. 19

Wy. R. Gov. Ct. Record Redaction 1 ....................................................... 19

## MEMORANDUM OF LAW

### I.        INTRODUCTION

In Idaho, as elsewhere, there is a strong and longstanding presumption that court records are open and public. *See, e.g.*, *State v. Clapp*, 479 P.3d 460, 467 (Idaho Ct. App. 2020). Public access remains as important as ever, but the ranks of lawyers, journalists, and court personnel who remember the openness of the paper-era clerk's counter grow thinner and thinner. *See* Declaration of Bill Girdner ("Girdner Decl."), ¶¶ 13-15. Stoked by sensational stories of catastrophic data leaks and generalized anxiety about bad actors in society, a popular image has emerged of civil complaints as potentially dangerous materials that must be carefully probed before risking public exposure, as if court clerks clad in HAZMAT suits are picking through a toxic waste site.

The reality is far, far more mundane. When fearful rhetoric is stripped away, the evidence in this case shows us that the policy causing pervasive delays in access to new civil complaints in Idaho's district courts does not serve any public interest in any meaningful way. Rather, the primary justification for the policy is nothing more than the desire to maintain the policy. Beyond that, Defendant's resistance to solving delays by no longer conditioning access on clerks' availability to complete a "ministerial review," Affidavit of Margaret Molchan (Dec. 22, 2021) (ECF 20-14) ("Molchan PI Aff."), ¶ 6, is based on a preference to avoid any inconvenience or expense that adjusting processes might entail. Such a preference is understandable but not sufficient to satisfy Defendant's constitutional burden. The record reflects that numerous courts in Idaho's shoes managed to adjust their processes expeditiously and uneventfully. Defendant can do so, as well, in whatever way she deems most appropriate. But, lacking a constitutionally adequate justification for her delay-causing policy, she may not choose to simply maintain the status quo.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 1

## II.    FACTUAL BACKGROUND

## A.    <u>About Courthouse News Service</u>

Courthouse News is a nationwide news service founded more than 30 years ago to cover civil litigation.  Girdner Decl., ¶ 1; Plaintiff's Statement of Undisputed Material Facts ("PSUF") ¶1.  It now employs about 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states, and reporting on general news through its website.  Girdner Decl., ¶ 1; PSUF ¶ 2.

The Courthouse News website, www.courthousenews.com, is free to the public and read daily by roughly 30,000 people.  Girdner Decl., ¶ 9.; PSUF ¶ 3.  Among its subscriber publications are New Litigation Reports, which contain original, staff-written reports on new civil litigation in a particular geographic region.  The New Litigation Reports are e-mailed to subscribers in the early evening each court day.  Girdner Decl., ¶ 5.; PSUF ¶ 6.  Courthouse News' approximately 2,300 subscribers include law firms, news media, libraries, non-profits, government entities, and businesses.  Girdner Decl., ¶ 8.; PSUF ¶ 4.  Regional subscribers include the City of Boise's Office of City Attorney, the *Salt Lake Tribune*, and Weber State University.  Girdner Decl., ¶ 8.

Courthouse News functions as a pool reporter for news about civil litigation.  It has many subscribing media outlets, including Twitter, *The Los Angeles Times*, *San Jose Mercury News*, *The Wall Street Journal*, *The Boston Globe*, *The Denver Post*, *Las Vegas Review Journal*, *The Salt Lake Tribune*, *The Dallas Morning News*, *St. Paul Business Journal*, and CNN.  *Id.*  Courthouse News reporting is frequently credited as the source for news stories, including by newspapers (*e.g.*, *The New York Times*, *The Wall Street Journal*), magazines (*e.g.*, *New York Magazine*, *U.S. News and World Report*), television news (*e.g.*, ABC News, Fox News), online-only publications (*e.g.*, *The Daily Beast*, *Politico*), and radio (*e.g.*, NPR).  Girdner Decl., ¶ 10;

PSUF ¶ 5.

The *New Litigation Report* covering the Idaho courts is *The Big Sky Report,* written by Boise-based reporter Cathy Valenti.  Girdner Decl.*,* ¶¶ 5-6; PSUF ¶ 7.  The *Big Sky Report* includes civil complaints filed in Idaho, Montana and Wyoming, focusing on actions involving businesses and public entities.  *Id.*  Courthouse News does not cover family and probate filings (among others) and does not review or report on civil complaints that are statutorily confidential or accompanied by a motion to seal.  Girdner Decl.*,* ¶¶ 5-6; PSUF ¶ 8.   In Idaho, its review is limited to complaints in a defined category that does not include any that are confidential as a matter of rule or law ("Complaints").  *See* Fetterly Decl., Exh. 2 at 9; PSUF ¶8.[1]

**B.**     **Press Access to New Civil Complaints**

In the age of paper records, state and federal courts around the country made new non-confidential civil complaints available to reporters shortly after they were received by the court, allowing reporters to see new complaints by the end of the day they were filed.  Girdner Decl., ¶¶ 13-15, 18-19; PSUF ¶¶ 9-12.  Courts provided timely access by making complaints available after they crossed the intake counter, regardless of whether clerks had completed docketing or other clerical tasks.  *Id*.  This allowed the press to report on new civil actions while they were still newsworthy and likely to capture the public's attention.  Girdner Decl, ¶¶ 11-16, 19.  The Ada County District Court ("Ada County") and the U.S. District Court for the District of Idaho were no exception.  *Id*., ¶ 19.

---

[1] The parties have identified the relevant universe of filings by reference to the fee categories listed in Appendix A to the Idaho Rules of Civil Procedure.  Namely, Courthouse News seeks only complaints in the types of cases "listed in the first fee category in Appendix A to the Idaho Rules of Civil Procedure ('AA – All Initial District Court Filings (Not Listed in: E, F and H1).'" *See* Fetterly Decl., Exh. 2 at 9.  These filings consist of creditor/debtor collections, breach of contract, employment dispute, real property, medical malpractice, and personal injury cases, all with a value exceeding $10,000.  *Id*. at Exh. 4 (Appendix A to Idaho Rules of Civil Procedure).

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 3

When CNS encountered delays in paper-filing courts, it was because courts would not let reporters see newly filed complaints that were waiting for a clerk to "process" them. Girdner Decl., ¶ 20; PSUF ¶11; *see also, e.g., Courthouse News Serv. v. Planet*, 947 F.3d 581, 586 (9th Cir. 2020) ("*Planet III*") (describing the "seven-step procedure to process a new civil complaint" before access was permitted). Despite the challenge inherent in working with paper complaints – only one person can handle the document at any one time – reporters and court staff found ways to work cooperatively so that everyone could do their jobs. *See* Girdner Decl., ¶¶ 18, 22.

Providing timely access in an e-filing court is even easier. An e-filed complaint is simply a .pdf document to be viewed and downloaded. *Id.*, ¶ 23; Fetterly Decl., Exh. 6 (Derrick Depo. 90:10-92:17). Nothing prevents a reporter from reviewing a new complaint before it is processed by a clerk, nothing prevents a clerk from processing a complaint at the very moment members of the press or public are reading it, and nothing prevents a clerk from processing afterwards when the clerk's work schedule permits. Girdner Decl., ¶ 23; PSUF ¶ 59. Moreover, courts can and do require filers to enter into the e-filing interface whatever information the court needs to automatically sort and filter new filings, including automatically segregating confidential filings. Girdner Decl., ¶ 23; PSUF ¶ 60.

As was in the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil complaints until after court staff complete administrative processing. Unfortunately, as state courts have transitioned to e-filing, they have not always been mindful of how new administrative rules and procedures would impact the press' ability to cover the courts. *Id.*, ¶ 25; PSUF ¶ 61. Some courts built delay into their systems, not allowing access until court staff completed processing new e-filed complaints. *Id.*; *see also Courthouse News Serv. v. Cozine*, 2022 WL 1000775 at *2 (D. Or. Apr. 4, 2022) ("after-submission review" for Oregon e-

filings "mirror" the seven-step processing at issue in *Planet III*). Most courts struggle to complete these clerical tasks for all of the day's complaints on the day of filing, which means that post-processing access policies nearly always prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the public has already moved on to the next day's news. Girdner Decl., ¶ 25; PSUF ¶ 62.

Of necessity, all e-filing courts conduct some kind of clerical review and processing of new filings, and all have a mechanism for handling filer mistakes (e.g., missing signatures, illegible pages). *See* Girdner Decl., ¶ 43; PSUF ¶ 63. Some courts automatically accept e-filed documents, processing and addressing any clerical issues after the documents are sitting in the court's case management system. Girdner Decl., ¶ 43 & Exh. 16; Fetterly Decl., Exh. 18; PSUF ¶ 64. Other courts have a clerk do the processing on the front end, culminating with the clerk's manual "acceptance" of the document into the case management system or return to the filer for correction. Girdner Decl., ¶¶ 44; Molchan PI Aff., ¶ 8(c); PSUF ¶ 65. Auto-accept and clerk-accept courts are equally capable of providing timely access to new e-filed civil complaints. Girdner Decl., ¶¶ 35-77; PSUF ¶ 66. The key in clerk-accept courts is to simply not keep new complaints secret while they are waiting for processing.

The federal district courts are the most familiar example of auto-accept courts. A new complaint is available to anyone with a PACER account moments after the court receives it. Girdner Decl., ¶ 35; PSUF ¶ 69. State courts have also implemented auto-accept systems, including Connecticut and Hawaii (through homegrown systems developed in-house) and Alabama, Nevada, and Utah (through software from vendors OLIS, Tyler, and Tybera, respectively). Girdner Decl., ¶¶ 36-42; PSUF ¶ 70. Tyler Technologies, Idaho's e-filing vendor, will configure Idaho's system to auto-accept Complaints at no charge to Idaho. Fetterly Decl.,

Exhs. 6 (Derrick Depo. 29:24-30:23), Exh. 16 ; PSUF ¶ 77.

Many courts choose to condition "acceptance" of a complaint on action by a human clerk **but don't withhold access prior to acceptance**. Girdner Decl., ¶¶ 44-49, 54-60, 64-77, 79-80; PSUF ¶ 71. Some courts display complaints that have not yet been "accepted" alongside complaints that have been "accepted" in the same public portal. *See* Girdner Decl., ¶¶ 45-53; PSUF ¶ 72. Others make complaints that have not yet been accepted available through a separate portal or review queue, sometimes available to the public at large, Girdner Decl., ¶¶ 41, 66, sometimes limited to those credentialed by the court, *id.*, ¶¶ 56-60, 65-66, 68-70, 76; sometimes available for free, *id.*, ¶¶ 41, 66, 68 sometimes subject to payment, *id.*, ¶¶ 65, 70, 76; sometimes through court-developed software, *id.*, ¶¶ 74, 78, sometimes through vendor-provided solutions, *id.*, ¶¶ 56-60, 64; PSUF ¶¶ 74-77

However implemented, systems that do not withhold access for processing allow new, nonconfidential complaints to be read and reported on the day the complaint is submitted to the court, when the new action is still newsworthy and capable of commanding public attention. *Id.*, ¶¶ 25-26, 86.

**C.** **E-Filing in Idaho District Courts**

The Idaho Courts began moving to e-filing in 2015, using software from vendor Tyler Technologies. Girdner Decl., ¶¶ 27-28. While Tyler's software can be configured as either an auto-accept or manual-accept system, Idaho's system is currently configured for manual clerk acceptance, with public access withheld until after acceptance. Valenti Decl., ¶ 3; Girdner Decl., ¶ 25, 33; Fetterly Decl., Exh. 2 at 1-5; PSUF ¶ 40.

*Submission*. After registering for an e-filing account, an e-filer logs into the Idaho's File & Serve system. *See* Angione Decl., Exh. 9 (e-filing interface). The filer selects a "Location"

(*e.g.*, Ada County District Court), a "Category" (*e.g.*, "Civil"), and a "Case Type" (*e.g.*, "AA – All Initial District Court Filings (Not Listed in E, F, and H1)") from drop-down menus. *Id.*, Exh. 9 at 4-7, Exh. 10. The filer then uploads the documents to be filed, selecting the type of document (e.g., "Complaint") from a drop-down menu. *Id.*, Exh. 9 at 9, Exh. 11. The filer then enters payment information and clicks the "submit" button. *Id.*, Exh. 12; Fetterly Decl., Exh. 6 (Derrick Depo. 33:25-35:1); PSUF ¶ 24  Some defects in an e-filing (*e.g.*, insufficient funds to cover filing fee, document file format issues) will cause it to be immediately and automatically rejected, without ever reaching court clerks. Fetterly Decl., Exh. 6 (Derrick Depo. 69:6-70:6; 166:21-167:12); PSUF ¶ 25. Otherwise, the e-filer receives an automated e-mail acknowledgement instructing the filer to "allow 24-48 hours for clerk office processing." Declaration of Amber Dina, Exh. 1; PSUF ¶ 26  The filing then sits in the court's electronic document repository (known as the "e-filing manager" or "EFM") waiting for a clerk to process it. *See* Fetterly Decl., Exh. 6 (Derrick Depo. 33:25-34:19; 36:6-11); PSUF ¶ 27.

***Clerk Processing***. Idaho district court clerks access e-filed documents from the EFM and "perform a ministerial review of" them. Molchan PI Aff., ¶ 6; PSUF ¶ 28. For a new Complaint, this review involves "checking for" the following: (1) the required case information sheet has been submitted; (2) a certification of service was completed and included; (3) the caption contains party names; (4) filing fees are paid and paid in the correct amount; (5) the document includes required signatures; and (6) the proper Magistrate division of the District Court has been selected. Molchan PI Aff., ¶¶ 6, 8(d)(iii); PSUF ¶ 29. "If there is an issue with one or more of these items," the clerk returns the Complaint to the filer for correction (also known as "rejecting" the complaint). Molchan PI Aff., ¶¶ 6, 8(d)(iii); Fetterly Decl., Exh. 6

(Derrick Depo. 34:12-19); PSUF ¶ 30.[2]  "If the clerk concludes the basic procedural items" noted above "are met, the clerk 'accepts' the submission."  Molchan PI Aff., ¶ 8(c); PSUF ¶ 36.  This review takes less than five minutes.  Molchan PI Aff., ¶ 10(a); PSUF ¶ 37.

Once "accepted," a copy of the Complaint is moved into the court's case management system, "a record repository that helps the courts and clerks manage their case records electronically."  Fetterly Decl., Exh. 6 (Derrick Depo. 12:15-18; 34:20-35:1); PSUF ¶ 38.  The "date and time of filing" entered into the court's register of actions is "the date and time the electronic filing system received the document."  IREFS 12(a)(2); PSUF ¶ 39.

**D.**  **Access Delays in Idaho District Courts**

Idaho does not permit members of the press and public to view new Complaints until *after* they have been processed and "accepted."  Fetterly Decl., Exh. 2 at 1-2; PSUF ¶ 40.  Though processing takes less than five minutes, Molchan PI Aff, ¶ 10(a), a Complaint might sit for hours or days before a clerk finds time to turn to it.  This passage of time while Complaints sit waiting for clerk attention is responsible for the delays challenged in this lawsuit.

Upon "acceptance," basic docket information about a Complaint (*e.g.*, case name, case number, filing date) is available online through Idaho's "iPortal" website, but the Complaint itself can only be viewed through terminals at the courthouse.  Declaration of Cathy Valenti ("Valenti Decl.") ¶¶ 3-4; PSUF ¶ 41.  Courthouse News' Idaho reporter can therefore only review new e-filed civil complaints *after* court staff have processed them.  She does so using computer terminals at the Ada County courthouse each day until she is required to leave at 5:00 p.m. *Id*.

This post-processing access has resulted in pervasive delays.  From January 2021 through

---

[2] As long as the Complaint is resubmitted within three business days with the error corrected, the filer can request that it be given the filing date of the original submission.  IREFS 13(c).

July 2022, Defendant's data reflects that Idaho's district courts withheld ***nearly half*** (***42%***) of all Complaints until at least the following day.  Angione Decl., Exh. 2; PSUF ¶ 43.  Approximately ***15%*** were unavailable for ***two calendar days or longer***.  *Id*.  Individual delays during that period were regularly worse, varying in degree from court to court, and from month to month, and week to week.  Declaration of Jimmy Shimabukuro ("Shimabukuro Decl."), Exhs. 1-9; PSUF ¶ 44.  For example, the district court for Kootenai County, Idaho's third-most populous county, withheld ***every single Complaint*** filed in April 2021 until at least the following day, with ***98%*** of them withheld for ***two calendar days or longer***.  Shimabukuro Decl., Exh. 4: PSUF ¶ 45.

Complaints unavailable on the day of filing included an action by an Idaho State Legislature page alleging sexual assault by a legislator (Ada District Court, CV01-21-13641, delayed by one calendar day), an action by a bitcoin operator against the Idaho Department of Finance challenging financial regulations (Ada District Court, CV01-21-13391, delayed by four calendar days), an action arising from a fatal collision of two planes above Lake Coeur d'Alene (Kootenai District Court, CV28-21-4157, delayed by one week), and an action by boaters challenging a county no-wake zone on Spokane River (Kootenai County, CV28-21-4053, delayed more than two weeks).  Valenti Decl., ¶ 7, Exhs. 1-4.

Courthouse News had attempted to work with Idaho court officials to remedy the access delays for years and renewed its request in June 2021.  Girdner Decl., ¶¶ 30-32 & Exh. 10; PSUF ¶ 55.  Defendant responded that her office's "goal" was for "the average time from submission to acceptance" to not exceed 24 hours.  Girdner Decl., ¶ 33 & Exh. 11.  She wrote that she "did not find a statewide or Ada county delay that was currently ongoing and persistent" and concluded by stating: "I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing

by the court clerks' offices." *Id*.; PSUF ¶ 56.

## III.   SUMMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine

dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the non-

moving party bears the burden of proof at trial, the moving party need only prove that there is an

absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Sec. Litig*., 627

F.3d 376, 387 (9th Cir. 2010).  Thereafter, the non-moving party bears the burden of designating

"specific facts demonstrating the existence of genuine issues for trial."  *Id.*  "This burden is not a

light one."  *Id.*  The Supreme Court has directed that in such a situation, the non-moving party

must do more than raise a "metaphysical doubt" as to the material facts at issue.  *Id*. (*citing*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).

## IV.   ARGUMENT

Based on the leading Supreme Court authority on court record access, *Press-Enterprise*

*Co. v. Superior Court,* 478 U.S. 1 (1986) ("*Press-Enterprise II*"),  the Ninth Circuit has

established a two-step framework for evaluating claims based on delayed access to civil

complaints.  *Planet III*, 947 F.3d at 590.  The first question is whether there is a First

Amendment right to the documents at issue "and, relatedly, at what point in time that right

attaches."  *Id*.  In line with the Ninth Circuit and every other court to consider it, this Court has

already decided that the First Amendment access right attaches when the court receives the

complaint, not at some later point defined by the court's administrative rules.  *Courthouse News*

*Serv. v. Omundson*, 2022 WL 1125357, at *12 (D. Idaho Apr. 14, , 2022).

What remains is to determine whether the interests offered by Defendant justify the practice of withholding access until clerks have completed their "ministerial review," Molchan PI Aff., ¶ 6, in light of the delays resulting from that practice. *Planet III*, 947 F.3d at 594-95.[3] Defendant relies primarily on a supposed interest in preventing the public from learning about a Complaint that is later rejected, Fetterly Decl., Exh. 2 at 1-2, 3, 4, 5; PSUF ¶ 57, but has no satisfactory explanation for why such Complaints should remain secret. She also suggests that clerk processing is necessary to prevent public access to confidential material, Fetterly Decl., Exh. 2 at 1-3; PSUF ¶ 58, but neither court policies nor Defendant's evidence bears that out. Ultimately unable to "demonstrate … a 'substantial probability'" that an important interest "would be impaired by immediate access," *Planet III*, 947 F.3d at 596, Defendant is left to assert that Idaho's courts are unable to figure out how to make pre-processing access work in Idaho, Fetterly Decl., Exh. 2 at 2-4, despite the expeditious and uneventful implementation of many

---

[3] The question of "the level of scrutiny to apply as part of its second-prong inquiry and whether Idaho's procedures constitute time, place, and manner restrictions," *Omundson*, 2022 WL 1125357, at *7, is a bit of a red herring. Borrowing language from *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 607 n. 17 (1982), the Ninth Circuit in *Planet III* said that "Ventura County's access policies resemble time, place, and manner restrictions" because "they are content-neutral and affect only the timing of access to the newly filed complaints." 947 F.3d at 595. The Ninth Circuit then characterized the test applicable to "limitation[s] on access to newly filed complaints" as "'rigorous'" rather than "strict" scrutiny. *Id.* at 595-96. Regardless of the label applied to the test, *Planet III* leaves no question as to what the test is:

> To survive *Press-Enterprise II*'s two-prong balancing test, Ventura County must demonstrate first that there is a "substantial probability" that its interest in the fair and orderly administration of justice would be impaired by immediate access, and second, that no reasonable alternatives exist to "adequately protect" that government interest.

*Id.* at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

In adopting the *Press-Enterprise II* test, the Ninth Circuit explicitly rejected as inapplicable the time, place, or manner "standard applicable to speech in public forums," as urged in the concurring opinion. *Planet III*, 947 F.3d at 596 n.9; *id.* at 600-06 (concurrence).

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 11

varieties of pre-processing access in other courts throughout the country.  Girdner Decl., ¶¶ 34-80, 84-85.

**A.     The First Amendment Right to Access a Civil Complaint Attaches When the Filer Submits it, Not After a Clerk Has Completed Clerical Processing and "Accepted" It**

In *Planet III*, the Ninth Circuit characterized the district court's holding as "the right to timely access attaches at the moment of filing, i.e., when the complaint is received by the court," 947 F.3d at 588, and agreed with it: "[W]e conclude, as did the district court, that the qualified right of access to nonconfidential civil complaints arises when they are filed with the court ...." *Id*. at 594.  At the outset of this case, Defendant nevertheless took the position that an administrative rule calling for "acceptance" of civil complaints following their receipt by the court means that in Idaho the First Amendment access right does not attach until after "acceptance," no matter how long that takes.

This Court disagreed, concluding that for purposes of deciding "[w]hen the [First Amendment] clock starts ticking," the word "'filed' is best understood to mean when the complaint is submitted to the respective e-filing system, *not* to mean once the documents are reviewed/accepted/processed by a clerk."  *Omundson*, 2022 WL 1125357 at *12; *accord Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1262 (10th Cir. 2022) ("[T]he First Amendment right of access attaches to complaints when the court *receives* them, regardless of the technical terms and clerical processes used by the court.") (emphasis original). With the first part of *Press-Enterprise II* satisfied, the Court's focus is now whether Defendant's practice of withholding Complaints for clerical processing "'is essential to preserve higher values and is narrowly tailored to serve those interests.'"  *Omundson*, 2022 WL 1125357 at *10 (quoting *Planet III*, 947 F.3d at 595).

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 12**

**B.** **Neither Confidentiality Concerns Nor Defendant's View that a Complaint is Not "Filed" Until Clerks Have Completed Administrative Processing Justify the Delays Caused by Defendant's Policy of Withholding for Processing**

Defendant's policy of restricting access to new e-filed Complaints until after they are processed and "accepted" by court staff results in ongoing and persistent delays.  Based on Defendant's own data, from January 2021 through July 2022, Idaho district courts withheld *nearly half* (*42%*) of new Complaints until at least the following day, with approximately *15%* delayed by two calendar days or longer.  Angione Decl., Exh. 2; PSUF ¶ 43.  Moreover, this nineteen-month average across all district courts masks periods of worse delays.  Shimabukuro Decl., Exhs. 1-9; PSUF ¶ 44.  For example, Kootenai County district court withheld *every single Complaint* filed in April 2021 until at least the following day, with *98%* of them unavailable for *two calendar days or longer*.  Shimabukuro Decl., Exh. 4; PSUF ¶ 45.

To survive the second step of *Press-Enterprise II*, Defendant "must demonstrate first that there is a 'substantial probability' that [her asserted] interest … would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest."  *Planet III*, 947 F.3d at 596 (*quoting Press-Enterprise II*, 478 U.S. at 14).  Defendant bears the burden of satisfying this "fact-intensive" test, *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012), which requires more than generalized assertions or speculation.  *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 303 (2d Cir. 2012) ("[W]e do not believe speculation should form the basis for ... a ... restriction of the public's First Amendment rights.") (citation omitted); *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*") ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.").

1.     **The Possibility that Clerks Might Reject an e-Filed Complaint Is Not a Reason to Keep It Secret**

As this Court can see for itself from the Idaho Courts' rejection data, the reasons for returning new complaints to filers for correction are overwhelmingly minor clerical issues, such as missing signatures and discrepancies between the parties names as entered in the e-filing interface and listed on the complaint itself.  *See* Angione Decl., Exhs. 4-7; Fetterly Decl., Exh. 1 (see information in column M, "RejectComment").  Not surprisingly, "Defendant[] offer[s] no evidence that staff review of signatures, filing fees, and filing codes is necessary to protect the orderly administration of justice."  *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *15 (D. Vt. Nov. 19, 2021).

Rather, despite this Court's finding that for First Amendment purposes, "'filed' is equivalent to submission," *Omundson*, 2022 WL 1125357, at *12, Defendant continues to insist that her policy of not allowing the public to see "documents that have not been Processed or Accepted" is justified "because such documents are not filed and not entered in the court's case management system until they have been Accepted."  Fetterly Decl., Exh. 2 at 2; PSUF ¶ 57.

To be clear, nothing in Idaho's rules prohibits pre-processing access.  Idaho's administrative rule on inspecting court records provides that "[p]leadings … and other documents filed or lodged in a case file" are "subject to examination, inspection and copying" unless sealed or exempt from disclosure under subsection (g) of the rule.  ICAR 32(d).  Defendant does not contend that ICAR 32(g) exempts from disclosure e-filed Complaints that have not yet been processed and "accepted."  Rather, her position is that since another court rule, IREFS 11, states that a document "will be considered filed when" it has been "electronically submitted to the court's electronic filing system" and "accepted for filing," Complaints are not

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 14**

"documents filed or lodged in a case file" prior to "acceptance" and thus not required to be made available under ICAR 32(d).  Fetterly Decl., Exh. 5 (Omundson Depo. 51:8-15).

The Court need not decide whether or not Defendant's narrow reading of ICAR 32 is correct.  Even if a Complaint were not subject to ICAR 32 until a clerk has "accepted" it, the Complaint *would still be subject to the First Amendment*.  *See, e.g.*, *Planet III*, 947 F.3d at 590-94.  "The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. . . .  But no rule of court can ... abrogate or modify the substantive law." *Washington-S. Nav. Co. v. Baltimore & Philadelphia Steamboat Co*., 263 U.S. 629, 635–36 (1924).

Defendant nevertheless maintains that these administrative rules justify her refusal to consider pre-processing access:

> [I]t is the Supreme Court's policy that what is to be made available to the public are those things that reside in the case file, and so they don't reside in a case file until they are accepted and filed.  And my responsibility is to implement that policy, and so that is -- that is what I've done.

Fetterly Decl., Exh. 5  (Omundson Depo. 46:24-47:24).  *Press-Enterprise II*, however, requires more than dogmatic assertions.  Simply stating what a policy is does not explain the policy's necessity or describe its merit.  Instead, Defendant must identify an important government interest and establish "a 'substantial probability' that [the] interest … would be impaired by immediate access." *Planet III*, 947 F.3d at 596.  She cannot do so.

The relevant interest is supposedly "ensuring that the press and public are presented with accurate information regarding civil filings."  Fetterly Decl., Exh. 2 at 5.  According to Defendant, allowing someone to see a Complaint before it is "accepted" could mean disseminating "inaccurate information regarding civil filings (i.e. if a submission that is Rejected, and thus never filed or an official court document, is reported on as if it were a filed

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 15

document and an official court record).”  Defendant asserts that “[p]roviding documents to the public before they are in the court’s case management system may mislead the public to believe documents are court filings when they are not yet filed and may never be filed.”  *Id.*, Exh. 2 at 2.

When pressed to explain what harm could result from the public believing that a document was a “court filing” when it was not yet in the court’s case management system, Defendant explained that “acceptance” triggers requirements that clerks and judges “perform functions within a certain period of time,” and that if the public is allowed to see a complaint that is ultimately rejected, they could fault the clerks and judges for not taking whatever actions would have been required if the complaint had been “accepted,” mistakenly believing that “the court system is not functioning as it should ….”  Fetterly Decl., Exh. 5 (Omundson Depo. 56:6-57:23).

This attenuated theory of harm is implausible, at best.  Moreover, if someone were to see a complaint that is not ultimately “accepted,” discover that no corresponding case was opened, and wonder why the case did not move forward, ***that would be an example of the system working as it should***.  *See Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th at 1268-69, (argument that “providing access to complaints that may be rejected or withdrawn only invites confusion as to what is happening in a state's courts… overlooks the fact that the withdrawal or rejection of a complaint might itself be a matter of public interest that the press deems newsworthy”).  For example, as Judge Hippler acknowledged earlier in this lawsuit, litigants sometimes file Complaints to pressure settlement and withdraw them before they have, in Defendant’s view, become “official court records.”  Affidavit of Hon. Stephen Hippler (Dec. 22, 2021) (ECF 20-16) (“Hippler PI Aff.”), ¶ 8.  As the Ninth Circuit has explained, “[t]he public still has a right to know that the filing of the complaint in our courts influenced the settlement of

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 16**

the dispute: 'When a complaint is filed, and the authority of the people of the United States is thereby invoked, even if only as a threat to induce settlement, the American people have a right to know that the plaintiff has invoked their power to achieve his personal ends.'" *Planet III*, 947 F.3d at 592-93 (citation omitted).

Fundamentally, Defendant misapprehends the significance of a new Complaint. What matters is not whether or not the Complaint has become "an official court record." What matters is (1) the fact that a litigant submitted it; and (2) the substance of the allegations and claims. For example, an Idaho plaintiff e-filing an important Complaint on a Thursday might make a mistake typing the party names into the e-filing interface, resulting in a clerk's returning the Complaint for correction. The plaintiff corrects the error the next day (Friday), requesting that the Complaint be given the original filing date. Clerks are unable to turn to processing the Complaint until Monday, at which point they "accept" it. Only then is the public permitted to learn about the Complaint, under Defendant's policy.

To anyone impacted by the Complaint and its allegations, the significant event happened on Thursday, when the plaintiff electronically handed the Complaint to the court to initiate the lawsuit. Thursday is when the plaintiff's pushed the matter across the transom separating private disputes from public ones. Thursday is when the filing of the Complaint is newsworthy. In Defendant's view, none of this matters because, as a technical matter, the Complaint was not an "official court record" until Monday. In Defendant's view, the Complaint cannot begin to matter until Monday because "no case has been initiated" until Monday. Fetterly Decl., Exh. 2 at 3-4. Defendant's job is administration, and it is understandable that she views these questions through an administrative lens. The First Amendment, however, is not grounded in administrative

technicalities or clerical processes.  As the Supreme Court has explained, "the prime objective of

the First Amendment is not efficiency." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

**2.     Whatever Interest Defendant Has in Keeping Certain Complaints Confidential Does Not Justify Withholding All New Complaints for Processing**

Idaho's narrow exceptions to the a strong presumption that court records are open and

public, *see, e.g.*, *Kelly v. Wengler*, 979 F. Supp. 2d 1243, 1244 (D. Idaho 2013); *United States v.*

*Makowitz*, 2022 WL 1423074, at *2 (D. Idaho May 5, 2022); *State v. Clapp*, 479 P.3d 460, 462-

63, 467 (Idaho Ct. App. 2020), are not relevant to this lawsuit.

*First*, certain categories of filings are presumptively exempt from disclosure by rule or

statute.  *See* ICAR 32(g).  No such documents are at issue in this case.  Courthouse News seeks

access only to a narrow category of district court civil complaints, involving disputes with more

than $10,000 in controversy.  *See* n. 1, *supra*.  Defendant has conceded that "[t]here are no

documents [within this category] that must be kept confidential by the Idaho District Courts by

operation of rule or law without the need for a motion or request for sealing."  Fetterly Decl.,

Exh. 2 at 9, 10; PSUF ¶ 46.  As Defendant can filter out all other filings, providing pre-

processing access only to the Complaints at issue in this case, Girdner Decl., ¶ 23; Fetterly Decl.,

Exh. 16, Exh. 6 (Derrick Depo. 60:25-69:15, 81:14-86:18, 89:21-90:7; 94:10-103:17); Angione

Decl., Exhs. 9-10; PSUF ¶¶ 60, 78-79, 84-85, concerns about inadvertent access to documents

exempt from disclosure by rule or law cannot justify Defendant's policy of withholding

Complaints until after processing.

*Second*, documents may be sealed, but only by order of the court upon a motion pursuant

to ICAR 32(i).  Such motions, and the documents to be filed under seal, must be filed

conventionally (*i.e.*, in paper).  They may not be e-filed.  IREFS 5(h); PSUF ¶ 47.  While, in

theory, a filer could try to e-file a motion for sealing in violation of IREFS 5(h), Defendant

concedes that throughout the entire state of Idaho in more than two and one-half years, this

happened only once in connection with a Complaint.  Fetterly Decl., Exh. 2 at 10-11; PSUF ¶ 48.

*Third*, Idaho expressly places the burden of excluding certain "protected personal data

identifiers," such as social security and financial account numbers from filings on the filer.  "It is

the ***responsibility of the filer*** to ensure that protected personal data identifiers are omitted or

redacted from documents before the documents are filed. …. The clerk of the court will ***not***

review filings to determine whether appropriate omissions or redactions have been made."  IRCP

2.6(a) (emphasis added); IREFS 15(a) (emphasis added); PSUF ¶ 49.  The rules warn parties to

therefore "exercise caution when filing papers that contain private or confidential information,"

and provides for sanctions against filers who knowingly violate the rule.  IRCP 2.6(f), (g);

IREFS (f), (g); PSUF ¶ 50.  Counsel are "strongly urged to share … with all clients" the fact that

filers are solely responsible for excluding protected personal data identifiers, "so that an

informed decision about the inclusion of certain materials may be made."  IREFS 15(a); PSUF ¶

51.[4]

Having explicitly warned filers that clerks will ***not*** review filings for personal protected

data, the supposed need to review new civil complaints for such information cannot justify

withholding access.  *See Planet III*, 947 F.3d at 597 (9th Cir. 2020) ("no-access-before-process

policy bears no real relationship to … concerns about privacy and confidentiality" where a court

rule "requires the filer – not the court – to exclude or redact private information from publicly

filed judicial documents.").

---

[4] Nearly every state in the country places the burden of omitting or redacting this kind of
protected personal identifier from court filings on the filer, ***not*** on court clerks.  *See, e.g.*, Mont.
R. Civ. P. 5.2(a); Nev. R. Elec. Fil'g. & Conv. 14(d)(5); Or. Unif. Trial Ct. R. 2.130(2); Ut. Ct.
R. 4-202.09(10)(A); Wash. G.R. 31(e)(1)-(2); Wy. R. Gov. Ct. Record Redactions 1.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 19

Moreover, even if, despite the plain language of these rules, some clerks have nevertheless taken it upon themselves to reject filings when they notice unredacted protected personal data identifiers, as Defendant seems to believe, Fetterly Decl., Exh. 5 (Omundson Depo. 104:12-20; 106:25-108:20), the evidence does not reflect this occurring with any frequency. Four months of statewide rejection data shows ***not a single complaint*** rejected for failure to redact such information.  Angione Decl., Exhs. 4-7.  Thus, "Defendant['s] own evidence reveals that placing the onus on filers has been overwhelmingly effective." *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *16 (D. Vt. Nov. 19, 2021).

Defendant bears the burden of establishing a substantial probability that Idaho cannot provide pre-processing access without sacrificing confidentiality interests.  *See Planet III*, 947 F.3d at 596; *Leigh*, 677 F.3d at 900; *New York C.L. Union*, 684 F.3d at 303.  Invoking the bogeyman of threats to privacy is not enough.

## C.    Defendant Does Not Lack Reasonable Alternatives to Post-Processing Access

Without any meaningful justification for the policy of withholding access to Complaints until clerks have completed their "ministerial review," Molchan PI Aff., ¶ 6, and "accepted" them, Defendant suggests that, as a practical matter, Idaho is simply incapable of providing pre-processing access.  *See* Fetterly Decl., Exh. 2 at 2-3, 5-7.

Defendant contends that configuring its e-filing and case management system to automatically accept new Complaints, one of the available alternatives for timely public access, "would add to the already incredibly busy schedules of judges and their court staff" because "judicial action" would be required to address clerical issues currently handled prior to "acceptance."  *Id*., Exh. 2 at 2.

A close look at Defendant's evidence, however, undermines the assertion that

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT - 20**

automatically accepting new Complaints would impose a material burden on Idaho's district

court judges and staff.  To begin with, the total volume of rejected Complaints is relatively small.

Based on the four months of rejection data Courthouse News analyzed, the highest number of

complaints rejected by a district court in a single month was sixteen.  Angione Decl., ¶¶ 21-22 &

Exh. 8.  On average, Idaho district courts rejected *fewer than two complaints per month*.  *Id*.  So

even if Defendant is correct that it would take several more minutes for a clerk to address a filer

mistake after acceptance than it would have taken to return the filing for correction, Fetterly

Decl., Exh. 5 (Omundson Depo 86:11-87:8); Molchan PI Aff., ¶ 10(a), the total additional clerk

time would be inconsequential.  And even if it were true that judicial action would be required to

address issues like missing signatures and misspellings in party names, as Defendant asserts,

Fetterly Decl., Exh. 5 (Omundson Depo 89:4-94:10), there is no reason to believe that the overall

impact would be unmanageable.

Moreover, the assertion that a judge and not a clerk must handle issues like missing

signatures and illegible pages once a Complaint is in the case management system seems

questionable.  This proposition is based on an administrative rule providing that "[n]o paper,

record or file in any action or proceeding shall be removed from the custody of the clerk except

that such papers, records and files may be withdrawn for use by the court."  ICAR 33; Fetterly

Decl., Exh. 5 (Omundson Depo. 90:11-94:10).  But most of the issues resulting in rejection of

Complaints do not require the removal of records.  *See* Angione Decl., Exhs. 4-7 (*e.g.*, missing

case information sheets, missing signatures, discrepancies in parties listed in complaint and

entered into e-filing interface).  And even if current rules did preclude clerks from handling such

clerical issues, Defendant acknowledged that Idaho could adjust its rules and procedures to give

clerks more flexibility to address them.  Fetterly Decl., Exh. 5 (Omundson Depo. 94:11-25).

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 21

It is possible to imagine scenarios in which a judge might become involved, but there is no evidence that these scenarios occur with any frequency. Earlier in this case, Judge Hippler said that judicial action would be necessary to address a failure to pay filing fees or "to remove from the docket any sensitive or confidential material inadvertently or purposefully filed in auto accepted filings." Hippler PI Aff., ¶¶ 7, 12. As to the first, it is not clear why a judge and not a clerk would be the one to chase down those who failed to pay filing fees. In addition, Tyler can configure the system to not automatically accept filings without filing fees, Fetterly Decl., Exh. 6 (Derrick Depo. 60:17-61:11, 61:19-62:1), and, in any event, rejections for incorrect filing fees appear to be relatively rare. *See* Angione Decl., Exhs. 4-7; Fetterly Decl., Exh. 1 (information in column M, "RejectComment").

As to the second, Idaho could presumably develop a process for addressing requests by filers or third parties to remove inadvertently filed confidential material. *See, e.g.*, Fetterly Decl., Exh. 18 at 3-4. The specter of filers maliciously including sensitive information in Complaints for the purpose of disseminating it to a wide audience has no basis in evidence. *See id*., Exh. 5 (Omundson Depo. 105:19-107:12). No examples appear in the rejection data CNS analyzed. Angione Dec., Exhs. 4-7. This is not surprising. Those wishing to harm others by circulating confidential information have a host of social media and other public dissemination platforms available for that purpose. Including information in a public court filing would be a spectacularly ineffective way to distribute it.

Defendant's testimony reveals that the primary dissatisfaction with the auto-accept model is simply that it is not the system Idaho has chosen. When asked how Idaho differed from the more than twenty state court systems currently using Tyler's auto-accept system, Defendant responded:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 22**

> I could not give you specifics to how Idaho is different from a jurisdiction that does Auto-Accept, other than the Idaho Supreme Court has made the policy decision that in Idaho we are going to allow the clerks to reject and has placed that in court rule so our system is designed to follow that rule.

Fetterly Decl., Exh. 5 (Omundson Depo. 88:12-17); *see id*, Exh. 6 (Derrick Depo. 77:17-78:17) (Tyler courts using auto-accept); *see also* Girdner Decl., ¶¶ 35-39 (courts using auto-accept). Defendant has offered not a shred of evidence that automatically accepting complaints has caused the problems in other courts that she insists would happen in Idaho's district courts.  Nor can she explain what would make Idaho uniquely susceptible to auto-accept challenges.

Defendant also acknowledged that she has not explored whether any of her concerns about auto-accept could be addressed by configuring the auto-accept function in particular ways (*e.g.*, routing complaints filed by pro se litigants to a clerk for review rather than automatically accepting, Fetterly Decl., Exh. 6 (Derrick Depo. 60:17-61:11, 61:19-62:1)):

> If the Idaho Supreme Court authorized Auto-Accept, I would investigate that.  But the court rules tell me that the clerk reviews them and has the opportunity to reject them, so my work is focused on … following the court rules.  I'm not investigating how to get around the court rules.

*Id*., Exh. 5 (Omundson Depo. 103:2-21).

Of course, auto-accept is not Defendant's only alternative.  She could maintain the clerk-acceptance model but allow access to Complaints while they await processing, as many other state courts do.  *See, e.g.*, Fetterly Decl., Exh. 6 (Derrick Depo. 104:17-105:7) (courts using Tyler's press review tool); Girdner Decl., ¶¶ 44-80 (courts providing pre-acceptance access through press review queues or other means); PSUF ¶¶ 67-68, 70-76.  Defendant implies that doing so would be a Herculean task, but the evidence says otherwise.

For example, after the District Court for the Southern District of New York granted a preliminary injunction against New York's policy of withholding access for processing, the New

York courts adjusted their public access portal to display newly filed complaints alongside those that had been "accepted." It completed the programming to make this happen within six weeks of the preliminary injunction issuing. Girdner Decl., ¶¶ 51-52.

Similarly, after insisting that it lacked the ability to both protect confidential filings and provide pre-processing access, California's Orange County Superior Court agreed to implement an "Electronic Media Inbox into which new [e-filed complaints would] be automatically deposited upon receipt [by the court] for review by members of the media." *Id*., ¶¶ 74-75 & Exh. 28. Within nine months, it had launched a "Civil Unlimited Media Access Portal" providing online, pre-processing access to members of "active news media outlets," subject to payment of an "annual fee to defray maintenance costs associated with the Portal." *Id*., ¶ 76 & Exh. 29.

Other California courts – including the Superior Courts for Butte, Kings, Merced, San Mateo, Santa Cruz, Sonoma, Sutter, Yuba, and Yolo Counties – resolved challenges by implementing the press review tool offered by Tyler Technologies, the vendor Idaho currently uses for its e-filing and case management software. Girdner Decl., ¶¶ 57-58. They agreed to implement the press review tool access within periods ranging from four to six months of entering into agreements with Courthouse News. *Id*.

More recently, Florida resolved a challenge to delays caused by withholding for processing by creating an online portal for public access to non-confidential civil complaints. Language on the portal notifies users that "[t]he documents found on this webpage have not been accepted by the Clerk and are not official court documents. Upon acceptance by the Clerk, the official documents will be available at the Clerk's office or, with a few exceptions, on the Clerk's website." Girdner Decl.,¶¶ 68-69; Fetterly Decl., Exh. 19. New civil complaints are available to the press and other registrants within five minutes of submission. Girdner Decl., ¶ 69. The

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT - 24**

portal is free and not restricted to any particular group of users but requires registration. *Id*., ¶ 68. Florida, which uses the e-filing vendor Granicus, launched the portal within 75 days of entering into a settlement agreement. *Id*., ¶¶ 67-69.

And Vermont, which implemented an auto-accept system through Tyler within three weeks of the issuance of an injunction, recently announced that it would transition to providing pre-processing access through a press review queue available at courthouses and open to all members of the public at no charge. *Id*., ¶¶ 39-41.

Defendant acknowledges that Tyler, the vendor that currently provides Idaho's e-filing and case management software, offers a press review tool to its customers, but she has rejected this option because of cost and supposed cyber-security concerns. Fetterly Decl., Exh. 2 at 3, 7, 14-15. Though initially provided to courts for free, Tyler has begun taking advantage of interest in press review queues by charging an annual fee for its press review tool software. According to Tyler, the annual fee to use the software statewide is $108,000. *Id*., Exh. 6 (Derrick Depo. 171:15-172:14, 205:18-206:10). Not surprisingly, Tyler has said that it would not engage in negotiations with Idaho over this price, *id*. (Derrick Depo. 172:15-22), despite Idaho's annual payment of more than $1 million for Tyler's e-filing software. Affidavit of Jason Spillman (Dec. 22, 2021)*,* Exh. B; PSUF ¶16. Because Idaho has not tried to negotiate, Fetterly Decl., Exh. 7 at 20, that statement cannot be tested.

Similarly, Defendant's cyber-security concerns are not based on evidence of security issues but rather on Tyler's apparent refusal to provide information Defendant has requested as part of its newly instituted procedures for vetting vendor software offerings. *Id*., Exh. 20 (Dvorak Depo. 58:3-60:6). Defendant could evidently obtain the information if it were to begin the process of amending its e-filing contract to include the press review tool but has cited the

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT - 25**

lack of the information as a reason not to give further consideration to the tool. *Id*. (Dvorak Depo. 31:24-33:21).

This Court need not decide whether this kind of chicken-and-egg scenario can satisfy Defendant's burden of establishing that no reasonable alternatives exist because still more options are available. If Defendant doesn't wish to transition to an auto-accept system and doesn't wish to pay Tyler to implement its press review tool, she can use the free, Tyler-provided application programming interface (APIs) to develop a review queue, portal, or other means of accessing Complaints prior to processing. *See* Fetterly Decl., Exh. 6 (Derrick Depo. 191:13-193:22). And if the Judicial Branch's in-house IT staff is not capable of such software development, it could engage a consultant or vendor to do it for them. There is no evidence that doing so would be prohibitively expensive. Indeed, Arizona was able to develop its own press access portal software from scratch for only $12,500. Girdner Decl., ¶¶ 70-71; PSUF ¶ 91.

In fact, the Idaho Judicial Branch is already working towards "build[ing its] own" portal for providing access to court documents through a non-Tyler vendor. Fetterly Decl., Exh. 5 (Omundson Depo. 34:5-36:5); PSUF ¶ 19. To date, Defendant has not considered exploring providing pre-processing access as part of this portal work "because the Idaho Supreme Court's rules tell me that a document is available to the public when it is placed in a case file …." Fetterly Decl., Exh. 5 (Omundson Depo. 37:16-39:1) ("I haven't expanded the scope to something that is not within the policies of the Idaho Supreme Court."); PSUF ¶ 20.

To borrow from the Supreme Court's discourse on narrow tailoring in the context of the related but more lenient time, place, and manner test, "[t]he point is not that [Defendant] must enact all or even any of the proposed measures discussed above. The point is instead that [Defendant] has available to it a variety of approaches that appear capable of serving its interests,

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT - 26**

without" restricting access to newly filed Complaints.  *McCullen*, 573 U.S. at 493–94.

Defendant can choose for itself the best way to provide pre-processing access.  What it cannot do

is choose "the path of least resistance" for "mere convenience."  *Id*. at 486.

In *McCullen*, the Court rejected restrictions that defendants testified would "'make our

job so much easier.'"  The Court explained:  "Of course they would. But that is not enough to

satisfy the First Amendment.  To meet the requirement of narrow tailoring, the government must

demonstrate that" alternatives "would fail to achieve the government's interests, not simply that

the chosen route is easier."  *Id*. at 495.  Defendant has not – and cannot – establish that the

alternatives other courts use to both provide timely access and protect other government interests

would not work in Idaho.

### D.  Courthouse News is Entitled to Declaratory Relief and a Permanent Injunction to Prevent Defendant from Denying Access Until Complaints Are Processed

Despite controlling Ninth Circuit authority and an explicit decision from this Court

earlier in this case, Defendant continues to take the position that the public should not be

"provided with access to documents that have not been Processed or Accepted because such

documents are not filed and not entered in the court's case management system until they have

been Accepted."  Fetterly Decl., Exh. 2 at 1-2.  The pervasive access delays that led Courthouse

News to bring this lawsuit have persisted, Angione Decl., Exh. 2-3, and Defendant has refused to

explore alternatives based on the dogmatic insistence that the public has no business knowing

about a Complaint until court staff have completed a ministerial review and accepted it.  *See,*

*e.g.*, Fetterly Decl., Exhs. 5 (Omundson Depo. 103:2-21, 88:12-17) and 2 at 1-5.

It necessarily follows that not only has Courthouse News shown it is entitled to

declaratory judgment as a matter of law on its section 1983 First Amendment claim, but that it

will continue to be deprived of its "contemporaneous right of access to court documents" absent

injunctive relief.  *Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014).  Courthouse News is

therefore entitled to a permanent injunction because it has shown (1) irreparable harm; (2)

inadequacy of remedies available at law, such as money damages; (3) the balance of equities tip

in its favor; and (4) the public interest is not disserved by a permanent injunction.  *F.V. v.*

*Barron*, 286 F. Supp. 3d 1131, 1140 (D. Idaho 2018) (citing *eBay Inc. v. MercExchange, L.L.C.*,

547 U.S. 388, 391 (2006)).

Delays in access constitute irreparable harm.  "'The loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Lugosch v.*

*Pyramid Co. of Onondaga*, 435 F.3d 110, 127 (quoting *Elrod v. Burns*, 427 U.S. 347, 373

(1976)); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009); *Gabel*, 2021 WL

5416650, at *17 (granting permanent injunction where "pre-access review process" violated First

Amendment right of access, an "'injunction [would] prevent the feared deprivation,'" and the

harm was ongoing) (citation omitted).

The balance of equities also supports an injunction.  Courthouse News "will be denied its

First Amendment right of access to new case-initiating documents unless the Court issues this …

injunction, while Defendant[] ha[s] alternative, constitutional ways to achieve [her] goals and

address [her] administrative concerns."  *Courthouse News Serv. v. Jackson*, 2009 WL 2163609,

at *5 (S.D. Tex. July 20, 2009); *see also Gabel*, 2021 WL 5416650, at *17 ("[T]he balance of

hardships tips in Plaintiffs' favor because the public interest is served by timely reporting on the

operations of the courts and because 'securing First Amendment rights is in the public interest'"

while "'[n]o public interest is served by maintaining an unconstitutional policy when

constitutional alternatives are available to achieve the same goal.'") (citations omitted).  And the

Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT - 28**

speech principles," to protect not only "the free expression interests of [plaintiffs], but also the interests of other[s]," such as the "would-be recipients" of Courthouse News' reports. *Klein*, 584 F.3d at 1208. In sum, "[t]he balance of equities and the public interest thus tip sharply in favor of enjoining [Defendant's policy]." *Id.*

## IV.    CONCLUSION

As Courthouse News' editor and publisher William Girdner explained, "[t]his litigation and the litigation that has preceded it stems from a conviction that the foundation stone of the American courts is their open and public nature." Girdner Decl., ¶ 87. Technology can and should make it easier for the press to watch the flow of each day's new complaints so that it can report the news it finds there. Administrative irritation at the inconvenience of adjusting procedures is understandable. But it is not a constitutionally sufficient basis for refusing to remedy the pervasive access delays in Idaho's district courts.

Courthouse News respectfully asks the Court to grant Courthouse News' motion for summary judgment and enter an order permanently enjoining Defendant, in her official capacity as Administrative Director of Idaho Courts, from continuing her policies and practices that result in delayed access to new Complaints, including, *inter alia*, her policy and practice of denying access to Complaints until after the completion of administrative processing, and declaring such policies and practices to be unconstitutional under the First Amendment.

DATED this 15th day of December, 2022.

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Jonathan G. Fetterly*
Jonathan G. Fetterly
*Attorneys for Courthouse News Service*

Amber N. Dina (ISB # 7708)
amberdina@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>              Plaintiff,<br><br>v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>              Defendant. | Case No: 1:21-CV-00305-REP<br><br>**PLAINTIFF COURTHOUSE NEWS SERVICE'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**Courthouse News Service**

1.      Courthouse News Service ("Courthouse News") is a nationwide news service
founded more than 30 years ago to cover civil litigation.  Declaration of William Girdner
("Girdner Decl."), ¶ 1.

2.      Courthouse News employs about 240 people, most of them editors and reporters,
covering state and federal trial and appellate courts in all 50 states, and reporting on general
news through its website.  Girdner Decl., ¶ 1.

3.      Courthouse News publishes a news website (www.courthousenews.com), which
is free to the public and read daily by roughly 30,000 people.  Girdner Decl., ¶ 9.

4.      Courthouse News has approximately 2,300 subscribers for its subscription-based
publications.  These subscribers include law firms, news media, libraries, non-profits,
government entities, and businesses.  Girdner Decl.,¶ 8.

5.      Courthouse News functions as a pool reporter for news about civil litigation.  It
has many subscribing media outlets, including Twitter, *The Los Angeles Times*, *San Jose
Mercury News*, *The Wall Street Journal*, *The Boston Globe*, *The Denver Post*, *Las Vegas Review
Journal*, *The Salt Lake Tribune*, *The Dallas Morning News*, *St. Paul Business Journal*, and CNN.
*Id*.  Courthouse News reporting is frequently credited as the source for news stories, including by
newspapers (*e.g.*, *The New York Times*, *The Wall Street Journal*), magazines (*e.g.*, *New York
Magazine*, *U.S. News and World Report*), television news (*e.g.*, ABC News, Fox News), online-
only publications (*e.g.*, *The Daily Beast*, *Politico*), and radio (*e.g.*, NPR).  Girdner Decl., ¶ 10.

6.      Courthouse News' subscription-based publications include its New Litigation
Reports, which contain original, staff-written reports on new civil litigation in a particular

geographic region, e-mailed to subscribers in the early evening each court day.  Girdner Decl., ¶ 5.

7.      The *New Litigation Report* covering the Idaho courts is *The Big Sky Report,* written by Boise-based reporter Cathy Valenti and covering civil complaints filed in Idaho, Montana and Wyoming, focusing on actions involving businesses and public entities.  Girdner Decl., ¶¶ 5-6.

8.      Courthouse News does not cover family and probate filings (among others) and does not review or report on civil complaints that are statutorily confidential or accompanied by a motion to seal.  In Idaho state courts, Courthouse News seeks only complaints in the types of cases "listed in the first fee category in Appendix A to the Idaho Rules of Civil Procedure ('AA – All Initial District Court Filings (Not Listed in: E, F and H1),'" which consist of creditor/debtor collections, breach of contract, employment dispute, real property, medical malpractice, and personal injury cases, all with a value exceeding $10,000 ("Complaints").  Girdner Decl, ¶ 6; Declaration of Jonathan Fetterly ("Fetterly Decl."), Exh. 2 at 9 and Exh. 4 (Appendix A to Idaho Rules of Civil Procedure).

### Historical Access to New Civil Complaints

9.      When Courthouse News was formed in the 1990s, it visited federal and state courts throughout the country – including courts in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Maryland, Massachusetts, Nevada, New York, Illinois, Iowa, Texas, Washington, Michigan, Minnesota, New Mexico, Oklahoma, Louisiana, Missouri, Pennsylvania, New Jersey, Ohio, Oregon, South Carolina, Tennessee, Utah, Vermont, Virginia, Wisconsin – and observed a tradition of access to newly-filed civil complaints as they had crossed the intake counter, and on the day they were filed.  Girdner Decl., ¶¶ 1, 4, 18-19, 22, 34.

10.     Each court had its own method of providing such access – some courts placed newly-filed, unprocessed complaints on carts or in bins or boxes where the press could review them; some courts allowed the reporters to go behind the counter to review newly-filed complaints.  Girdner Decl., ¶¶ 13-15, 18-19, 22.

11.     When CNS encountered delays in paper-filing courts, it was because courts would not let reporters see newly filed complaints that were waiting for a clerk to "process" them. Girdner Decl., ¶ 20.

12.     This nationwide tradition of un-delayed press access to new complaints was followed in Boise when Christopher Rich was the Clerk in Ada County District Court and before the Idaho courts moved to e-filing.  Girdner Decl. ¶¶ 19, 27, 30 & Exh. 8.

**The Idaho Courts Move to Electronic Case Records, e-Filing, and Electronic Access**

13.     In or about 2013, the Idaho Courts began the process of "shifting from a legacy paper-based system to a modern electronic online judicial system by implementing integrated court management solutions and access tools."  Girdner Decl., Exh. 5.

14.     In 2013 the Idaho Supreme Court, acting through the Administrative Director of the Courts, entered into a $2.4 million contract with third-party software provider Tyler Technologies, Inc. ("Tyler") to license court technology software from Tyler, including case management software and public access software.  Declaration of Jonathan G. Fetterly ("Fetterly Decl."), Exh. 12 at 13.

15.     In 2015 the Idaho Supreme Court, acting through the Interim Administrative Director of the Courts, entered into an agreement with Tyler to license Tyler's "electronic filing system to receive, transfer, maintain, and provide access to electronic documents" (the "E-Filing Agreement").  Affidavit of Jason Spillman (12/21/2022) (ECF 20-21) ("Spillman PI Aff."), ¶ 5,

Exh. A .

16.     In 2021, the Idaho Supreme Court, acting through the Administrative Director of

the Courts, and Tyler amended the E-Filing Agreement.  Under the amended agreement, the

Idaho Supreme Court agreed to pay Tyler $2.12 million for the period May 2021 to September

2022; $1.55 million for the period October 2022 to September 2023; and $1.6 million for the

period October 2023 to September 2024.  Spillman PI Aff., ¶ 7, Exh. B.

17.     A number of different software applications comprise the system Idaho courts use

for e-filing, case management, and public access.  Fetterly Decl., Exh. 6 (Derrick Depo. 38:16-

39:25).

18.     The Idaho courts currently license all of these software applications from Tyler.

Fetterly Decl., Exh. 12; Spillman PI Aff., ¶¶ 5-7, Exhs. 1-2; Girdner Decl., Exh. 5.

19.     Defendant has been negotiating with a different vendor on a project to build a new

public access portal.  Fetterly Decl., Exh. 5 (Omundson Depo. 34:3-36:5).

20.     To date, Defendant has not considered exploring providing pre-processing access

as part of building a new public access portal "because the Idaho Supreme Court's rules tell me

that a document is available to the public when it is placed in a case file …."  Fetterly Decl., Exh.

5 (Omundson Depo. 37:16-39:1).

**Mechanics of Electronic Filing and Public Access in Idaho State Courts**

21.     The Idaho Rules of Electronic Filing and Service ("IREFS") define "electronic

filing" as "the process whereby a filer electronically transmits documents to a court in an

electronic form to initiate an action or to be included in the court file of an action."  IREFS 2(c).

22.     Attorneys must file documents in Idaho state courts electronically, unless the

document is exempt from the e-filing requirements.  IREFS 4(a).

23.     Self-represented litigants may file documents electronically or file documents conventionally (*i.e.*, in paper).  IREFS 4(b).

24.     E-filers use a web-based e-filing portal (i.e., a website) to electronically file documents, as follows:

a.     The filer accesses the File & Serve website by entering the address https://idaho.tylertech.clouse in a web browser.

b.     If the filer does not have an e-filing account, they create one by selecting the "Register" link and obtaining filing credentials from the Idaho courts.  If the filer already has an e-filing account, they select the "Sign In" link and proceed with their submission.

c.     Once signed in, the filer can select one of two options: (1) "Start a New Case; or (2) "File into Existing Case."

d.     If the filer selects "Start a New Case" they are taken to the "Start a New Case" page.

e.     Within the "Start a New Case" page, the filer is prompted to select or enter the following information:

i.    Court Location (e.g., Ada County District Court);

ii.   Case Category (e.g., Civil);

iii.  Case Type (e.g., AA – All Initial District Court Filings (Not Listed in: E, F, and H1) - $221.00);

iv.   Party Information (e.g., Party Type (Plaintiff) and Party Name);

v.    add the document by selecting a Filing Code (e.g., Complaint), providing a Filing Description and uploading the .pdf file; and

vi.   Paying filing fees by selecting the payment account associated with the

**PLAINTIFF'S SEPARATE STATEMENT OF**
**UNDISPUTED FACTS IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT - 6**

user's account.

vii.   Clicking the "Submit" bottom of the page.

Declaration of Adam Angione ("Angione Decl."), ¶¶ 23-25, Exs. 9-12; Fetterly Decl., Exh. 6
(Derrick Depo. 33:25-35:1; 37:12-19).

25.     Some defects in an e-filing (e.g., insufficient funds to cover the filing fee,
document file format issues) will cause it to be immediately and automatically rejected, without
ever reaching court clerks.  Fetterly Decl., Exh. 6 (Derrick Depo. 67:7-79:10; 166:21-167:12).

26.     Otherwise, the filer receives an automated e-mail notification informing them that
the court has received their filing.  The email notice states: "The filing below has been submitted
to the clerk's office for review.  Please allow 24 – 48 hours for clerk office processing."
Declaration of Amber Dina, Exh. 1.

27.     The filing then sits in the court's Tyler-hosted electronic document repository
(known as the "e-filing manager" or "EFM") waiting for a clerk to process it.  *See* Fetterly Decl.,
Exh. 6 (Derrick Depo. 21:11-20, 33:25-34:19, 36:6-11, 40:23-41:17, 47:12-23).

**Clerk Processing of New Complaints in Idaho**

28.     Idaho district court clerks access e-filed documents from the EFM and "perform a
ministerial review of" them.  Affidavit of Margaret Molchan (Dec. 22, 2021) (ECF 20-14)
("Molchan PI Aff."), ¶ 6; Fetterly Decl., Exh. 6 (Derrick Depo. 37:12-41:17), Exh. 14, at 17-19.

29.     For a new Complaint, this "ministerial review" involves "checking for" the
following: (1) the required case information sheet has been submitted; (2) a certification of
service was completed and included; (3) the caption contains party names; (4) filing fees are paid
and paid in the correct amount; (5) the document includes required signatures; and (6) the proper
Magistrate division of the District Court has been selected.  Molchan PI Aff., ¶¶ 6, 8(d)(iii);

Affidavit of Hon. Stephen Hippler (Dec. 22, 2021) (ECF 20-16) ("Hippler PI Aff."), ¶ 4.

30.     "If there is an issue with one or more of these items," the clerk returns the

Complaint to the filer for correction (also known as "rejecting" the complaint).  Molchan PI Aff.,

¶¶ 6; Fetterly Decl., Exh. 6 (Derrick Depo. 34:12-19).

31.     As part of the process of returning a filing for correction, the clerk selects a reason

for rejection from the "Action Toolbar" in the clerk review queue.  Fetterly Decl., Exh. 17 at 24

(SO_1587), Exh. 5 (Omundson Depo. 73:6-78:21, 79:9-23, 109:7-110:22), Exh. 6 (Derrick

Depo. 48:8-49:16, 51:9-18).

32.     The Idaho Court Operations Manual identifies the "reasons for rejection" a court

clerk may select as:

- a.  Filer's Request
- b.  Insufficient Fees
- c.  Insufficient Funds in account of credit card
- d.  Illegible/Unreadable – Please resubmit in legible format
- e.  Incomplete or Missing Signature Block
- f.  Incorrect Formatting
- g.   Incorrect/Incomplete Information: Please resubmit using correct Case Number h.
- h.  Incorrect/Incomplete Information: Please resubmit using correct Case Type
- i.  Incorrect/Incomplete Information: Please resubmit using correct Filing Code
- j.  Incorrect/Incomplete Information: Please resubmit using correct Party Names on doc(s)
- k.  This case already exists; please file though the existing case
- l.  PDF Documents Combined – Please separate Lead Documents
- m.  Rejected. This document must be filed in paper form per paragraph (f) of the electronic filing court rule. (See comment box to provide explanation)
- n.  Please correct error. (See comment box to provide explanation.)
- o.  In Camera Filing (A private document filed for court's eyes only must be filed in paper form per court rule.)
- p.  Motion to Seal Document & Subject Document must be filed in paper form per court rule.
- q.  Wrong Jurisdiction – Please refile in appropriate jurisdiction
- r.  Duplicate filing received
- s.  Hearing date or reservation is required prior to filing

Each reason has been assigned a code, which the clerk selects to indicate the reason for rejection. Fetterly Decl., Exh. 17 at 24 (SO_1587), Exh. 5 (Omundson Depo. 73:6-78:21, 79:9-23, 109:7-110:22).

33.    The clerk also enters comments in free-form text explaining the reason for the rejection.  Fetterly Decl., Exh. 5 (Omundson Depo.72:19-73:5).

34.    In the spreadsheet reflecting information for e-filed Complaints produced by Defendant as SO 5078, the rejection code appears in column L ("RejectCode") and the free-form text rejection comment entered by the clerk appears in column M ("RejectComment").  Fetterly Decl., Exh. 1, Exh. 5 (Omundson Depo. 76:4-78:7).

35.    As long as the filer re-submits a Complaint returned for correction (or "rejected") within three business days with the error corrected, the filer can request that it be given the filing date of the original submission.  IREFS 13(c).

36.    If the clerk does not identify any issues in its "ministerial review," it "accepts" the filing. Fetterly, Exh. 6 (Derrick Depo. 40:1-44:4), Exh. __ Exh. 17 at 23 (SO_1586); Molchan PI Aff., ¶ 8(d)(iv).

37.    The "ministerial review" conducted by Idaho clerks prior to "accepting" a Complaint takes less than five minutes.  Molchan PI Aff., ¶¶ 10(a).

38.    Once "accepted," a copy of the Complaint is moved into the court's case management system, "a record repository that helps the courts and clerks manage their case records electronically." Fetterly Decl., Exh. 6 (Derrick Depo. 12:15-18; 34:20-35:1; 43:4-45:13), Exh. 11, Exh. 17 at  23-24 (SO_1586-1587), Exh. 14 at 17-19.

39.    The "date and time of filing" entered into the court's register of actions is "the date and time the electronic filing system received the document."  IREFS 12(a)(2).

**PLAINTIFF'S SEPARATE STATEMENT OF**
**UNDISPUTED FACTS IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT - 9**

**Delays in Access Resulting from Idaho's Practice of Restricting Access Until after the
Completion of Clerk Processing and "Acceptance"**

40.     Under the Idaho courts' current policy and practice, access to new e-filed civil complaints is restricted until after court clerks complete processing and "accept" them. Declaration of Cathy Valenti ("Valenti Decl.") at ¶ 3; Girdner Decl., ¶¶ 25, 33; Fetterly Decl., Exh. 2 at 1-5.

41.     In addition, members of the press or public can view new e-filed civil complaints only through computer kiosks located at Idaho courthouses.  Valenti Decl. at ¶¶ 3-4.

42.     There is currently no way for Courthouse News' reporter to see new complaints as they are received by the Idaho Courts, and without the delays resulting from clerk review and processing, either at the courthouse or remotely online.  Valenti Decl., ¶¶ 3-4.

43.     From January 2021 through July 2022, Defendant's data reflects that Idaho's district courts withheld nearly half (42%) of all Complaints until at least the following day. Approximately 15% were unavailable for two calendar days or longer.  Angione Decl., Exh. 2.

44.     Individual delays during that period were regularly worse, varying in degree from court to court, and from month to month, and week to week.  Declaration of Jimmy Shimabukuro ("Shimabukuro Decl."), Exhs. 1-9.

45.     For example, the district court for Kootenai County, Idaho's third-most populous county, withheld every single Complaint filed in April 2021 until at least the following day, with 98% of them withheld for two calendar days or longer.  Shimabukuro Decl., Exh. 4.

**Confidentiality**

46.     There are no documents within the types of cases Courthouse News seeks that must be kept confidential by operation of rule or law without the need for a motion for sealing. Fetterly Decl., Exh. 2 at 9.

47.     Documents for which sealing is sought must be filed in paper and may not be e-filed.  IREFS 5(h).

48.     From January 1, 2020 through July 31, 2022, in all of Idaho's district courts, only one Complaint was e-filed with a motion for sealing (in violation of IREFS 5(h)).  Fetterly Decl., Exh. 2 at 10-11.

49.     Idaho's e-filing rules and the Idaho Rules of Civil Procedure provide that: "It is the responsibility of the filer to ensure that protected personal data identifiers are omitted or redacted from documents before the documents are filed." "The clerk of the court will not review filings to determine whether appropriate omissions or redactions have been made." IREFS 15(a); IRCP 2.6(a).

50.     Idaho's e-filing rules and the Idaho Rules of Civil Procedure warn parties to "exercise caution when filing papers that contain private or confidential information," and provides for sanctions against filers who knowingly violate the rule.  IRCP 2.6(f), (g); IREFS (f), (g).

51.     Idaho's e-filing rules state that counsel are "strongly urged to share … with all clients" the fact that filers are solely responsible for excluding protected personal data identifiers, "so that an informed decision about the inclusion of certain materials may be made."  IREFS 15(a).

52.     Prior to August 2016, Idaho courts required filers to indicate in the e-filing interface whether or not they believed documents in the filing should be handled confidentially. They did so by selecting either "Public" or "Confidential" from a security drop-down menu that appeared in the interface when they uploaded a document for filing.  Fetterly Decl., Exh. 7 at 19; Girdner Decl., Exh. 7; *see* Angione Decl., ¶¶ 26-28.

**PLAINTIFF'S SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 11**

53.     The security designation feature gives courts an additional means of automatically identifying and segregating documents that might qualify for confidential handling.  Fetterly Decl., Exh. 6 (Derrick Depo. 215:9-216:14); *see* Angione Decl. ¶¶ 26-28.

54.     In 2016, Tyler removed this functionality from the Idaho courts' e-filing interface, at the request of the Idaho courts.  Fetterly Decl., Exh. 7  at 19-20, Exh. 5 (Omundson Depo. 95:1-96:20); Girdner Decl., Exh. 7.

### Defendant's Justification for Restricting Access until after Clerk Review

55.     On June 14, 2021, Courthouse News sent a letter to Defendant advising that "[delays] in access to new civil complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and persistent."  The letter also asked Defendant to advise whether it would "instruct Tyler to provide a media inbox in Idaho" and "agree to provide pre-processing access to new e-filed civil complaints in Idaho state courts."  Girdner Declaration, ¶ 32, Exh. 10.

56.     On July 6, 2021, Defendant responded to Courthouse News' letter, stating: (1) "I did not find a statewide or Ada county delay that was currently ongoing and persistent," and (2) "At this time, I do not intend to request the addition of public access systems for documents that have been submitted to Tyler's File and Serve system, but  have not yet been accepted for filing by the clerks' offices."  Girdner Declaration, ¶ 33, Exh. 11.

57.     Defendant has taken the position that the policy of not allowing the public to see "documents that have not been Processed or Accepted" is justified "because such documents are not filed and not entered in the court's case management system until they have been Accepted." Fetterly Decl., Exh. 2 at 1-3.

58.     Defendant has also taken the position that clerks' clerk processing prior to access is necessary to avoid a "privacy risk to litigants and third parties" and "ensure confidential

information remains protected."  Fetterly Decl., Exh. 2 at 1-3.

**Alternative Methods for Providing Access to New E-Filed Complaints**

59.     In an e-filing court, nothing prevents a reporter from reviewing a new complaint before it is processed by a clerk, nothing prevents a clerk from processing a complaint at the very moment members of the press or public are reading it, and nothing prevents a clerk from processing afterwards when the clerk's work schedule permits.  Girdner Decl., ¶ 23.

60.     Courts can and do require filers to enter into the e-filing interface whatever information the court needs to automatically sort and filter new filings, including automatically segregating confidential filings.  Girdner Decl., ¶ 23.

61.     As state courts have transitioned to e-filing, they have not always been mindful of how new administrative rules and procedures would impact the press' ability to cover the courts.  Some courts built delay into their systems, not allowing access until court staff completed processing new e-filed complaints.  *Id.*, ¶ 25.

62.     Most courts struggle to complete these clerical tasks for all of the day's complaints on the day of filing, which means that post-processing access policies nearly always prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the public has already moved on to the next day's news.  Girdner Decl., ¶ 25.

63.     All e-filing courts have to conduct some kind of clerical review and processing of new filings, and all have a mechanism for handling filer mistakes (e.g., missing signatures, illegible pages).  *See* Girdner Decl., ¶ 43.

64.     Some courts automatically accept e-filed documents, processing and addressing any clerical issues after the documents are sitting in the court's case management system.  *Id.* &

PLAINTIFF'S SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 13

Exh. 16; Fetterly Decl., Exh. 19.

65.    Other courts have a clerk do the processing on the front end, culminating with the clerk's manual "acceptance" of the document into the case management system or return to the filer for correction.  *Id*., ¶¶ 44; Molchan PI Aff., ¶ 8(c).

66.    Auto-accept and clerk-accept courts are equally capable of providing timely access to new e-filed civil complaints.  Girdner Decl., ¶¶ 35-77.

67.    Numerous state and federal courts across the nation provide access to new e-filed complaints civil prior to review by a court clerk or completion of administrative processing and "acceptance."  Girdner Decl., ¶¶ 34-80.

68.    State and federal courts provide pre-processing access to new e-filed civil complaints through a variety of methods, including: (i) automating the acceptance of new filings through "auto-accept" functionality (Girdner Decl., ¶¶ 35-43); (ii) providing pre-acceptance access to new filings on the court's public access system (Girdner Decl., ¶¶ 45-53); and (iii) providing pre-acceptance access through press review queues (Girdner Decl., ¶¶ 54-79).

69.    The vast majority of federal courts automatically accept e-filed complaints and make access available on receipt through the PACER public access system.  Girdner Decl., ¶ 35.

70.    State courts have also implemented auto-accept systems, including Connecticut and Hawaii (through homegrown systems developed in-house) and Alabama, Nevada, and Utah (through software from vendors OLIS, Tyler, and Tybera, respectively).  Girdner Decl., ¶¶ 36-42.

71.    Many courts choose to condition "acceptance" of a complaint on action by a human clerk but don't withhold access prior to acceptance.  Girdner Decl., ¶¶ 44-49, 54-60, 64-77, 79-80.

PLAINTIFF'S SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 14

72.     Some courts display complaints that have not yet been "accepted" alongside complaints that have been "accepted" in the same public portal.  Girdner Decl., ¶¶ 45-53.

73.     Other courts make complaints that have not yet been accepted available through a separate portal or review queue.  Girdner Decl., ¶¶ 54-79.

74.     Some courts providing pre-acceptance access through a review queue or portal make the complaints available to the public at large, Girdner Decl., ¶¶ 41, 66, while others limit access to those credentialed by the court, Girdner Decl., ¶¶ 56-60, 65-66, 68-70, 76.

75.     Some courts providing pre-acceptance access through a review queue or portal make the complaints available for free, Girdner Decl., ¶¶ 41, 66, 68, while others charge for access.  Girdner Decl., ¶¶ 65, 70, 76

76.     Some courts providing pre-acceptance access through a review queue or portal do so through court-developed software, Girdner Decl., ¶¶ 74, 78, while others use vendor-provided solutions, Girdner Decl., ¶¶ 56-60, 64.

77.     Tyler offers the option to configure its e-filing and case management systems to automatically accept as a free, "out of the box" e-filing function.  It is available for the version of File & Serve used by the Idaho Courts. Fetterly Decl., Exh. 6 (Derrick Depo. at 29:19-30:23), Exh. 15, Exh. 16.

78.     Tyler's auto-accept configuration allows clerks to automatically accept filings if the filing matches locally configured criteria (conditions), including the identity of the filer, the type of case, the type of document , whether the filing includes a filing fee, and whether the filer is an attorney or a self-represented litigant.  Fetterly Decl., Exh. 6 (Derrick Depo. at 60:25-69:15), Exh. 16; *see also* Angione Decl., ¶¶ 23-26, Exhs. 9-12.

79.     The Case Category and Case Type conditions correspond to the Case Category

(i.e., Civil) and Case Type (i.e., AA – All Initial District Court Filings (Not Listed in: E, F and H1) fields filers select when filing new civil complaints with the Idaho district courts. Fetterly Decl., Exh. 6 (Derrick Depo. 61:9-62:19), Exh. 16; *see also* Angione Decl., ¶¶ 23-24, Exhs. 9-12.

80.    More than twenty state courts or jurisdictions currently use Tyler's auto-accept configuration for their e-filing and case management systems. Fetterly Decl., Exh. 6 (Derrick Depo. 77:17-78:17).

81.    Defendant cannot explain what differences exist between Idaho's courts and the courts that use Tyler's auto-accept configuration such that the configuration is viable for the other courts but would supposedly create insurmountable problems in Idaho courts. Fetterly Decl., Exh. 5 (Omundson Depo. 88:12-17).

82.    Defendant has not considered whether the problems she has asserted would occur if auto-accept were configured for e-filed Complaints in the Idaho district courts could be avoided or addressed through various auto-accept conditions and configurations available from Tyler. Fetterly Decl., Exh. 5 (Omundson Depo. 103:2-21).

83.    Tyler Technologies offers a press review tool solution as a method for courts using its File and Serve system to provide pre-acceptance access to new e-filed civil complaints. Fetterly Decl., Exh. 6 (Derrick Depo. 29:19-30:3, 30:24-31:19, 60:17-23, 81:14-85:10, 86:23-89:8; 94:12-95:9, 103:4-16), Exh. 16.

84.    Courts can configure Tyler's press review tool to provide access only to select filings based on the court's chosen configurations, including by case type codes, security groups, and document types. Fetterly Decl., Exh. 6 (Derrick Depo. 81:14-86:18, 89:21-90:7; 94:10-103:17).

85.     Documents are displayed in the Press Review Tool based on the configuration of
conditions established by the court, and the selections the filer makes upon submission.  Fetterly
Decl., Exh. 6 (Derrick Depo. 94:12-95:9; 103:4-16).

86.     The Press Review Tool can be configured to provide access remotely online or at
kiosks located at the courthouse.  Fetterly Decl., Exh. 6 (Derrick Depo. 103:18-104:14).

87.     Approximately twenty-five state courts or jurisdictions currently use Tyler's press
review tool.  Fetterly Decl., Exh. 6 (Derrick Depo. 104:17-105:7).

88.     Historically, Tyler provided its Press Review Tool to its e-filing court customers
at no additional cost.  Fetterly Decl., Exh. 6 (Derrick Depo. 205:18-206:10).

89.     Tyler has said that it now charges $108,000 annually for statewide use of its press
review tool.  Fetterly Decl., Exh. 6 (Derrick Depo. 171:15-172:14).

90.     Tyler will also provide application programming interfaces (APIs) to its customer
courts for no charge, which enables the courts to develop their own portal or queue for
displaying new complaints prior to processing and "acceptance."  Fetterly Decl., Exh. 6 (Derrick
Depo. 191:13-193:22).

91.     The Arizona state courts developed a press review queue through vendor
Granicus for a one-time development cost of $12,500.  Girdner Decl., ¶ 71.


        DATED this 15th day of December, 2022.

                                        BRYAN CAVE LEIGHTON PAISNER LLP


                                          _/s/ Jonathan G. Fetterly_____
                                        Jonathan G. Fetterly
                                        *Attorneys for Courthouse News Service*