No. 24-6697

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee*,

v.

SARA OMUNDSON,

*Defendant-Appellant*.

---

Appeal from the United States District Court for the District of Idaho,

Case No. 1:21-CV-00305-DCN, the Honorable David C. Nye, Presiding

---

## EXCERPTS OF RECORD, VOL. 12

---

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300,
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com; mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

**No. 21-1624**

COURTHOUSE NEWS SERVICE; MTM ACQUISITION, INC., d/b/a Portland
Press Herald, d/b/a Maine Sunday Telegram, d/b/a Kennebec Journal, d/b/a
Morning Sentinel; SJ ACQUISITION, INC., d/b/a Sun Journal,
*Plaintiffs - Appellants,*

BANGOR PUBLISHING CO., INC., d/b/a Bangor Daily News,
*Plaintiff,*

v.

JAMES T. GLESSNER, in his Official Capacity as State Court Administrator for the
State of Maine Judicial Branch; PETER SCHLECK, in his Official Capacity as Clerk
of the Penobscot County Superior Court,
*Defendants - Appellees.*

_____

**No. 21-1642**

BANGOR PUBLISHING CO., INC., d/b/a Bangor Daily News,
*Plaintiff - Appellant,*

COURTHOUSE NEWS SERVICE; MTM ACQUISITION, INC., d/b/a Portland
Press Herald, d/b/a Maine Sunday Telegram, d/b/a Kennebec Journal, d/b/a
Morning Sentinel; SJ ACQUISITION, INC., d/b/a Sun Journal,
*Plaintiffs,*

v.

JAMES T. GLESSNER, in his Official Capacity as State Court Administrator for the
State of Maine Judicial Branch; PETER SCHLECK, in his Official Capacity as Clerk
of the Penobscot County Superior Court,
*Defendants - Appellees.*

_____

On Appeal from a Decision of the United States District Court for the District of
Maine, Case No. 1:21-cv-00040-NT

_____

# BRIEF OF AMICUS CURIAE CONFERENCE OF CHIEF JUSTICES
# IN SUPPORT OF APPELLEES

*Counsel Listed on Inside Cover*

Peter J. Guffin, Bar No. 1201696
Joshua D. Dunlap, Bar No. 1146098
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100

*Attorneys for Amicus Curiae Conference
of Chief Justices*

Laura M. O'Hanlon, Bar No. 1051213
c/o Peter J. Guffin
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-318-5748

*Special Counsel for Amicus Curiae Conference
of Chief Justices*

## CORPORATE DISCLOSURE STATEMENT

The Conference of Chief Justices ("CCJ") is a Virginia non-profit corporation. CCJ has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

i

# TABLE OF CONTENTS

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT.................................................................i

TABLE OF AUTHORITIES...........................................................................iv

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ...............................................1

SUMMARY OF THE ARGUMENT ...............................................................2

ARGUMENT ......................................................................................3

   I.  Courthouse News Service's Challenge Invites Federal Courts to Oversee Administration of the State of Maine's Judicial Branch, Which Is a Power Vested in Maine's Supreme Judicial Court. .............................................3

  II.  Because Courthouse News Service's Challenge Invites Federal Courts to Oversee Administration of the State of Maine's Judicial Branch, Federal Courts Should Abstain from Resolving the Challenge. ........................................7

     A.  This Court should reach the abstention issues presented here. ....................7

     B.  Exercise of federal jurisdiction in judicial records access cases runs counter to the considerations of equity, comity, and federalism underlying abstention doctrines. .......................................................9

       1.  Respect for co-equal state courts require abstention. .............................9

       2.  Well-reasoned persuasive precedent supports abstention in judicial records access cases. .....................................................12

       3.  Other courts considering abstention in court record access cases have failed to consider the countervailing systemic interests and have addressed distinguishable facts. ......................................15

     C.  The principle of comity has special force in this case, where the federal court has been asked to replace the court rules established by the Maine SJC through a comprehensive rule making process with rules created through federal court litigation. .................................17

CONCLUSION ...................................................................................22

ii

<u>Page</u>

CERTIFICATE OF COMPLIANCE WITH RULE 32 ................................................24

CERTIFICATE OF SERVICE ............................................................................25

iii

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bacardi Int'l Ltd. v. V. Suarez & Co.,*
   719 F.3d 1 (1st Cir. 2013) ............................................................10

*Barber v. Conradi,*
   51 F. Supp. 2d 1257 (N.D. Ala. 1999) .......................................21

*Bettencourt v. Bd. of Registration in Med. of Com. of Mass.,*
   904 F.2d 772 (1st Cir. 1990) ......................................................10

*Bronx Defs. v. Off. of Ct. Admin.,*
   475 F. Supp. 3d 278 (S.D.N.Y. 2020) ........................................15

*Burford v. Sun Oil Co.,*
   319 U.S. 315 (1943)....................................................................11

*Casiano-Montanez v. State Ins. Fund Corp.,*
   707 F.3d 124 (1st Cir. 2013) ................................................10, 11

*Colo. River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976)..........................................................9, 10, 11

*Conservatorship of Emma,*
   2017 ME 1, 153 A.3d 102 .......................................................6, 20

*Courthouse News Serv. v. Brown,*
   908 F.3d 1063 (7th Cir. 2018) .............................................*passim*

*Courthouse News Serv. v. Calvo,*
   No. 3:21-cv-00822 (N.D. Cal.)......................................................9

*Courthouse News Serv. v. Cozine,*
   No. 3:21-cv-00680 (D. Ore.) .........................................................9

*Courthouse News Serv. v. Gabel,*
   No. 2:21-cv-000132, 2021 WL 5416650 (D. Vt. Nov. 19, 2021) ............................8

*Courthouse News Serv. v. Gilmer,*
   No. 4:21CV286 HEA, 2021 WL 2438914 (E.D. Mo. June 15, 2021) ............*passim*

iv

Page(s)

*Courthouse News Serv. v. Hade,*
    No. 3:21-cv-00460-HEH (E.D. Va.) ...................................................................9

*Courthouse News Serv. v. Hamilton Cty. Clerk of Cts.,*
    No. 1:21-cv-00197 (S.D. Ohio) .........................................................................9

*Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.,*
    No. 1:21-cv-00710, 2021 WL 4710644 (D. N.M. Oct. 8, 2021) ...........................8

*Courthouse News Serv. v. Omundson,*
    No. 1:21-cv-00305-DCN (D. Idaho) ............................................................. 8, 9

*Courthouse News Serv. v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ..................................................................... 15, 16

*Courthouse News Serv. v. Planet,*
    947 F.3d 581 (9th Cir. 2020) ..................................................................... 16, 22

*Courthouse News Serv. v. Planet,*
    No. CV-11-8083-DMG (FFMx), 2021 WL 1605218 (C.D. Cal. Jan. 26, 2021),
    *judgment entered,* No. CV-11-8083-DMG (FFMx), 2021 WL 1605216
    (C.D. Cal. Jan. 26, 2021) ..................................................................................16

*Courthouse News Serv. v. Price,*
    No. 1:20-cv-1260-LY, 2021 WL 5567748 (W.D. Tex.),
    report and recommendation adopted, 2021 WL 6276311 .........................................9

*Courthouse News Serv. v. Schaefer,*
    2 F.4th 318 (4th Cir. 2021) ....................................................................... 15, 16

*Courthouse News Serv. v. Taniguchi,*
    No. 4:21-cv-00414-HSG (N.D. Cal.) ...................................................................9

*Courthouse News Serv. v. Toste,*
    No. 1:21-cv-01114 (E.D. Cal.) ...........................................................................8

*Cruz v. Melecio,*
    204 F.3d 14 (1st Cir. 2000) ................................................................. 8, 10, 14

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ........................................................................................21

v

Page(s)

*Disability Rights N.Y. v. New York,*
    916 F.3d 129 (2d Cir. 2019) .................................................15

*Dixon v. City of St. Louis,*
    950 F.3d 1052 (8th Cir. 2020) ..............................................11

*El Dia, Inc. v. Hernandez Colon,*
    963 F.2d 488 (1st Cir. 1992) ..................................................4

*Gallas v. Supreme Court of Pennsylvania,*
    211 F.3d 760 (3d Cir. 2000) .................................................19

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ...............................................................4

*Guillemard-Ginorio v. Contreras-Gómez,*
    585 F.3d 508 (1st Cir. 2009) ..................................................8

*In re Dunleavy,*
    2003 ME 124, 838 A.2d 338 ...................................................4

*In re Justices of Supreme Court of Puerto Rico,*
    695 F.2d 17 (1st Cir. 1982) ..............................................6, 19

*Juidice v. Vail,*
    430 U.S. 327 (1977) .............................................................22

*Kaufman v. Kaye,*
    466 F.3d 83 (2d Cir. 2006) ...................................................15

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ...............................................................9

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982) .............................................................22

*Nixon v. Warner Commc'ns,*
    435 U.S. 589 (1978) .........................................................4, 22

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ........................................................13, 14

vi

Page(s)

*Pennzoil Co. v. Texaco Inc.,*
   481 U.S. 1 (1987) ...................................................................................10

*Pustell v. Lynn Pub. Sch.,*
   18 F.3d 50 (1st Cir. 1994) .........................................................................9

*Quackenbush v. Allstate Ins. Co.,*
   517 U.S. 706 (1996).................................................................................9

*R.R. Comm'n of Tex. v. Pullman Co.,*
   312 U.S. 496 (1941).................................................................................11

*Rizzo v. Goode,*
   423 U.S. 362 (1976)............................................................................13, 14

*SKS & Assocs. v. Dart,*
   619 F.3d 674 (7th Cir. 2010) ............................................................11, 14

*Sprint Commc'ns, Inc. v. Jacobs,*
   571 U.S. 69 (2013)............................................................................11, 14

*State v. Ireland,*
   109 Me. 158, 83 A. 453 (1912) ................................................................4

*Supreme Court of Virginia v. Consumers Union of the U.S., Inc.,*
   446 U.S. 719 (1980)................................................................................19

*Younger v. Harris,*
   401 U.S. 37 (1971)..........................................................................*passim*

*Zell v. Ricci,*
   957 F.3d 1 (1st Cir. 2020) ........................................................................8

**STATUTES**

Me. Stat. tit. 4, § 1.....................................................................................5

Me. Stat. tit. 4, § 7-9-A..............................................................................5

Me. Stat. tit. 4, § 8-C(1), *as amended by* P.L. 2021, ch. 343, § 1
   (effective October 18, 2021)......................................................................5

vii

Page(s)

Me. Stat. tit. 4, § 17 ................................................................................6

Me. Stat. tit. 4, § 156 ..............................................................................5

Me. Stat. tit. 4, § 198 ..............................................................................5

Me. Stat. tit. 4, § 551 ..............................................................................6

Me. Stat. tit. 4, § 555 ..............................................................................5

Me. Stat. tit. 4, § 568 ..............................................................................6

Me. Stat. tit. 4, § 651-A ..........................................................................5

## RULES

First Circuit L.R. 25 .............................................................................19

Fed. R. App. P. 29(a) ...............................................................................1

*Guidelines for the Submission of Documents to the Supreme Court's*
*Electronic Filing System* (effective Nov. 13, 2017), available at
https://www.supremecourt.gov/filingandrules/
ElectronicFilingGuidelines.pdf ...................................................19

Me. R. Civ. P. 5(f) and advisory notes to May 2000 & 2004 amends., available at
https://www.courts.maine.gov/rules/rules-civil.html ...........................12

Me. R. Elec. Ct. Sys. (2)(A)(1) advisory note to March 2021 amend. ...........................12

Me. R. Elec. Ct. Sys. (adopted and effective August 21, 2020,
including amendments effective March 15, 2021), available at
https://www.courts.maine.gov/rules/text/mrecs_2021-03-15.pdf...............*passim*

## CONSTITUTIONAL PROVISIONS

Me. Const. art. VI, § 1 ...........................................................................4

## Other Authorities

Andrew C. Budzinski, *Reforming Service of Process: An Access-to-Justice Framework*,
90 U. Colo. L. Rev. 167 (2019) .................................................................20

Page(s)

House Journal and Legislative Record H-172 (129th Legis. 2019), available at
http://lldc.mainelegislature.org/Open/LegRec/129/House/
LegRec_2019-02-26_HD_pH0165-0178.pdf............................................................17

*Maine Judicial Branch 2020 Annual Report,* available at
https://www.courts.maine.gov/about/reports/ar2020.pdf...................................15

Martha Wade Steketee & Alan Carson, *Developing CCJ/COSCA Guidelines
for Public Access to Court Records: A National Project to Assist State Courts* xi (2002),
available at https://www.jmijustice.org/wp-content/uploads/2014/04/CCJ-
COSCA-Access-18Oct2002FinalReport.pdf............................................................1

*Public Access to Court Records: Guidelines for Policy Development by State Courts*.......................1

Public Information and Confidentiality, Me. Admin. Order JB-05-20
(as amended by A. 4-21) (effective Apr. 22, 2021), III.A.1 & Historical
Derivation, available at https://www.courts.maine.gov/adminorders/
jb-05-20.pdf..........................................................................................................17

*Report of the Maine Judicial Branch Task Force on Transparency and Privacy in
Court Records* (2017)*,* available at http://lldc.mainelegislature.org/Open/
Rpts/kf8733_j23_2017.pdf .............................................................................12, 18

Rules Oversight and Rulemaking Processes, Me. Admin. Order JB-05-27
(as amended by A. 2-16) (effective Feb. 8, 2016), available at
https://www.courts.maine.gov/adminorders/jb-05-27.pdf...................................6

State of Maine Judicial Branch, *Committee on Media and the Courts* (last updated
March 27, 2017), https://www.courts.maine.gov/about/committees/
media-courts.html ................................................................................................6

State of Maine Judicial Branch, *Maine Caseload Statistics,* available at
https://www.courts.maine.gov/about/stats/statewide.pdf .....................15, 19, 20

State of Maine Judicial Branch, *Maine Rules of Electronic Courts Systems (RECS)
Working Group* (Nov. 22, 2021), https://www.courts.maine.gov/about/
committees/me-recs-comm.html.......................................................................18

State of Maine Judicial Branch, *Record Search Request Instructions and Information*
(rev. Oct. 2015)*,* available at https://www.courts.maine.gov/forms/pdf/
misc/request-records-search.pdf......................................................................18

ix

Page(s)

*Task Force on Electronic Court Record Access Final Report to the Justices of the
Maine Supreme Judicial Court* (Sept. 26, 2005), available at
https://lldc.mainelegislature.org/Open/Rpts/kf8733_m34_2005.pdf ............... 18

U.S. District Courts, *Statistical Tables for the Federal Judiciary*, available at
https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-
judiciary/2021/06/30 ................................................................................................ 19

x

**ER-2692**

## IDENTITY AND INTERESTS OF *AMICUS CURIAE* [1]

CCJ was founded in 1949 to provide an opportunity for the highest judicial officers of each State and U.S. Territory to address matters of importance in improving the administration of justice, rules and methods of procedure, and operation of state courts and judicial systems. As part of its mission, CCJ supports the efforts of state courts in administering efficient and impartial systems of justice that serve the public interest, protect individual rights, and instill respect for the law.

CCJ has a strong interest in the subject matter of this proceeding. CCJ has consistently defended principles of federalism to protect state judicial independence and promote comity between state and federal courts—principles that are vital to our judicial system. CCJ has also long encouraged state courts to craft policies regarding public access to court records that balance individual privacy concerns, the need for transparency of governmental operations, and the integrity of the judicial system.[2] CCJ respectfully proposes that its perspective on the issues of federalism and public access

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), CCJ states that all parties have consented to the filing of this brief. Further, pursuant to Fed. R. App. P. 29(a)(4)(E), CCJ states that no party's counsel authored the brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person, other than *amicus* or its counsel, contributed money that was intended to fund preparing or submitting the brief.

[2] In 2002, CCJ endorsed *Public Access to Court Records: Guidelines for Policy Development by State Courts. See* Martha Wade Steketee & Alan Carson, *Developing CCJ/COSCA Guidelines for Public Access to Court Records: A National Project to Assist State Courts* xi (2002), available at https://www.jmijustice.org/wp-content/uploads/2014/04/CCJ-COSCA-Access-18Oct2002FinalReport.pdf.

1

**ER-2693**

to court records may be beneficial to this Court, as CCJ is intimately familiar with the role of state courts and the practical realities confronted by those courts in introducing electronic filing rules.

This *amicus* brief is being filed pursuant to a policy unanimously approved by CCJ's Board of Directors. That policy authorizes the filing of a brief only where critical interests of state courts are at stake, as they are in this case. Pursuant to CCJ's policy, this brief has been reviewed by members of a special committee of CCJ chaired by the Chief Justice of Kentucky and composed of the current or former Chief Justices of Delaware, Indiana, Kentucky, Missouri, North Dakota, and Texas. The committee has unanimously approved the brief for filing.

CCJ supports the position of Defendant-Appellee James Glessner, and urges affirmance of Judge Torresen's decision based on the doctrine of abstention.

## SUMMARY OF THE ARGUMENT[3]

Proper application of the principles of comity, federalism, and equity calls for federal court abstention in a challenge to court record rules promulgated by a state's highest court, which has the exclusive authority to establish court rules and oversee a co-equal, centralized judicial system. In Maine, the Supreme Judicial Court ("SJC") has exercised its inherent, constitutional, and statutory powers to manage the state judicial

---

[3] Record references to filings in this matter are abbreviated as follows: Record Appendix ("R.A.____"); Plaintiff-Appellants Courthouse News Service, MTM Acquisition, Inc., & SJ Acquisition, Inc.'s Brief ("Aplt. Br.____"); Addendum ("Add.____").

2

system by adopting rules and regulations governing electronic filing—the Maine Rules of Electronic Court Systems ("RECS").[4] Plaintiffs-Appellants Courthouse News Service *et al.* (collectively "CNS") now seek to have federal courts oversee the SJC's policy determinations embodied in RECS by entering an injunction requiring instant access to civil complaints filed in state courts. The exercise of federal jurisdiction in this case runs counter to principles of comity, because it would involve federal courts in supervising Maine's judicial system. Maine courts should have, in the first instance, the opportunity to address CNS's constitutional claims. To hold otherwise would fail to recognize that state courts are capable of guaranteeing federal rights and improperly inject the federal courts into state policy determinations regarding judicial administration, rulemaking, and processing of judicial records. This Court should invoke abstention and affirm the dismissal of CNS's complaint.

## ARGUMENT

### I. Courthouse News Service's Challenge Invites Federal Courts to Oversee Administration of the State of Maine's Judicial Branch, Which Is a Power Vested in Maine's Supreme Judicial Court.

Seeking to establish new rights for the media under the First Amendment,[5] CNS is asking this Court to mandate how Maine's highest court, the SJC, manages its clerks'

---

[4] *See generally* Me. R. Elec. Ct. Sys. (adopted and effective August 21, 2020, including amendments effective March 15, 2021), available at https://www.courts.maine.gov/rules/text/mrecs_2021-03-15.pdf; Add. 43-95; R.A. 171-74, 177.

[5] Neither the United States Supreme Court nor this Court has found that a First Amendment right of access extends to civil complaints, and this Court has expressed

offices, case management system, and court records during the rollout of its new electronic filing system. CNS is seeking to invalidate "on its face" and "as applied" a temporal access rule applicable to all civil complaints filed during a pilot of the electronic filing system. Further, CNS is asking a federal court to take this step before Maine courts have had an opportunity to address the merits of CNS's claims. The relief CNS seeks—dictating to the SJC how it must run the state court system—is extraordinary.

As the Supreme Court has recognized, "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). Thus, how state courts review, process, and accept or reject pleadings is "an area traditionally regulated by the States," *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991), specifically, state courts. Under the Maine Constitution, oversight of the judicial branch is vested in the SJC. Me. Const. art. VI, § 1 ("The judicial power of this State shall be vested in a Supreme Judicial Court . . . ."); *see In re Dunleavy*, 2003 ME 124, ¶ 7, 838 A.2d 338. This constitutional power includes the inherent power to manage judicial records. *See State v. Ireland*, 109 Me. 158, 159-60, 83 A. 453, 454 (1912). Recognizing this constitutional and inherent judicial administrative power, the Maine State Legislature has codified the SJC's exclusive authority to control court documents and records, and to promulgate

---

reluctance to expand the right of access beyond the criminal justice system. *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 495 (1st Cir. 1992).

all court rules. *See, e.g.*, Me. Stat. tit. 4, §§ 1, 7-9-A, 156, 198, 555, 651-A. CNS's lawsuit directly implicates this traditional state judicial power.

In this case, the rule challenged "on its face" and "as applied" was established by the SJC—not by central administrative office policy nor by local clerk procedure. The SJC promulgated RECS, a comprehensive set of rules governing the rollout of Maine's new electronic filing and case management systems, under its constitutional, inherent, and statutory authority to run the Maine Judicial Branch, establish court rules, and control court records.[6] Add. 2-5. In adopting the RECS, the SJC was acting as the sole entity vested with "general administrative and supervisory authority over the judicial branch and … [to] make and promulgate rules, regulations and orders governing the administration of the judicial branch." Me. Stat. tit. 4, § 1. Because the SJC promulgates court rules, neither the State Court Administrator ("SCA") for the centralized statewide court system nor the judicially appointed clerk of the Penobscot County Superior Court has the professional discretion to ignore the RECS or to implement methods that depart from those rules. Despite their status as the sole defendants in the case below, neither the SCA nor the clerk has any authority to enact or modify Maine court rules. *See e.g.,*

---

[6] Maine's legislature recently reinforced the SJC's authority regarding the same type of rules at issue in this case by clarifying "the Rule-Making Authority of the Supreme Judicial Court Concerning Electronic Records and Filing," and adopting a statute providing that "[a]fter the effective date of the rules as adopted or amended, all laws in conflict with the rules are of no further effect." Me. Stat. tit. 4, § 8-C(1), *as amended by* P.L. 2021, ch. 343, § 1 (effective October 18, 2021).

*id.* § 17 (SCA duties); *id.* §§ 551, 568 (clerk duties).  CNS is therefore challenging the

SJC's exercise of its authority and discretion to administer the state court system.[7]

The SJC's exercise of its authority and discretion involves substantial policy

determinations.  As observed by that court, while record access

> is important, and addresses significant matters of interest to the public, it
> is truly a question of policy, with long-ranging and far-reaching
> implications. The issues raised [regarding records access] . . . do not lend
> themselves to an adjudicatory response. Rather, they should be answered
> through rulemaking where the myriad questions regarding the treatment
> of digital records can be addressed together in an open forum.

*Conservatorship of Emma*, 2017 ME 1, ¶ 10, 153 A.3d 102 (access to records in county

probate courts).  Federal courts should not lightly engage in review of the policy

determinations of state courts such as those made by the SJC.  Federal court resolution

of challenges to RECS without giving the Maine courts the opportunity to weigh in on

the merits in the first instance would inject the federal judiciary into state policy-making

and short-circuit the SJC's formal rules oversight and rulemaking processes.[8]

---

[7] Because the SJC was not a named party to this litigation, any successful facial challenge
would only be effective if the SJC voluntarily complied with a federal court's order out
of respect for that forum.  *See In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17, 23
(1st Cir. 1982).

[8] These processes are documented in an SJC Administrative Order.  *See* Rules Oversight
and Rulemaking Processes, Me. Admin. Order JB-05-27 (as amended by A. 2-16)
(effective Feb. 8, 2016), available at https://www.courts.maine.gov/adminorders/jb-
05-27.pdf. It also would bypass the Standing Committee on Media and the Courts
designated by the SJC to improve communication between the judiciary and the media
and enhance the accuracy and flow of information made available to the public
concerning Maine courts.  *See* State of Maine Judicial Branch, *Committee on Media and the
Courts* (last updated March 27, 2017), https://www.courts.maine.gov/about/
committees/media-courts.html.

6

In sum, exercise of federal jurisdiction in this case, without giving Maine judges an opportunity to address CNS's claims, would intrude on the operations of the Maine court system in disregard of the SJC's vested powers. It would be an affront to the important state interests underlying the SJC's authority to supervise the state courts and control court records, and it would distort federal-state court relations. As set forth in Part II *infra*, therefore, exercise of federal jurisdiction would offend principles of equity, comity, and federalism.

## II. Because Courthouse News Service's Challenge Invites Federal Courts to Oversee Administration of the State of Maine's Judicial Branch, Federal Courts Should Abstain from Resolving the Challenge.

### A. This Court should reach the abstention issues presented here.

As an initial matter, there is no bar to consideration of abstention. Rather, the importance of comity compels consideration of abstention in this case.

In her decision below, Judge Torresen recognized abstention as an issue. Observing that courts had declined to resolve similar challenges in *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), and *Courthouse News Service v. Gilmer*, No. 4:21CV286 HEA, 2021 WL 2438914 (E.D. Mo. June 15, 2021),[9] based on abstention, Judge Torresen noted that she found "the reasoning of these courts somewhat persuasive," Add. 16, n.14. Nevertheless, rather than fully considering abstention, she resolved the case on the merits because "Defendants did not raise abstention and

---

[9] These cases are discussed further in Part II.B, *infra*.

affirmatively indicated at oral argument that they . . . decided not to seek abstention."
*Id.*

Even though abstention was not asserted as a defense below, this Court has the
power to consider abstention on its own initiative. *See Guillemard-Ginorio v. Contreras-
Gómez,* 585 F.3d 508, 517-18 (1st Cir. 2009) ("whether or not defendants failed to
preserve their abstention arguments for appeal, or even had they declined to request
abstention entirely, it would not deprive us of authority to consider the issue" given
"the important interests underlying the abstention doctrines").[10] Because the important
interests in this case directly affect not only policy-based administration of the Maine
state court system but also those of Massachusetts, New Hampshire, Puerto Rico, and
Rhode Island, CCJ respectfully urges this Court to exercise its discretion to consider
abstention as an alternative ground for dismissal.[11]

---

[10] *See also Zell v. Ricci,* 957 F.3d 1, 16-17 (1st Cir. 2020) (considering abstention principles
and stating: "[U]nlike other issues we normally would not review (except, perhaps, for
plain error) when the parties fail to argue them, the parties generally do not have an
incentive to argue for or against enforcement of those independent, system-focused
comity interests. Truth be told, it wouldn't make sense to rely on them to do so since it
isn't an element that directly or necessarily involves a personal interest."); *Cruz v. Melecio*,
204 F.3d 14, 22 n.7 (1st Cir. 2000) (ordering abstention *sua sponte* "[n]otwithstanding
that the parties did not raise the [abstention] issues" below or on appeal).

[11] Similar claims in other states are likely as CNS continues to file state electronic court
record access cases in federal courts exclusively. In this past year alone, CNS filed
twelve such cases, including this matter; three cases currently on appeal, *see Gilmer*, 2021
WL 2438914; *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, No. 1:21-cv-
00710, 2021 WL 4710644 (D. N.M. Oct. 8, 2021); *Courthouse News Serv. v. Gabel*, No.
2:21-cv-000132, 2021 WL 5416650 (D. Vt. Nov. 19, 2021); six cases under
consideration by federal district courts, *see Courthouse News Serv. v. Toste*, No. 1:21-cv-
01114 (E.D. Cal.); *Courthouse News Serv. v. Omundson*, No. 1:21-cv-00305-DCN

**ER-2700**

**B.** **Exercise of federal jurisdiction in judicial records access cases runs counter to the considerations of equity, comity, and federalism underlying abstention doctrines.**

**1.** **Respect for co-equal state courts require abstention.**

Although abstention is the exception rather than the rule, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quotation marks omitted); *see Pustell v. Lynn Pub. Sch.*, 18 F.3d 50, 53 (1st Cir. 1994) ("exceptional circumstances" can justify abstention). Among these interests are "considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush*, 517 U.S. at 716 (quotation marks omitted). Of particular importance here are federalism considerations. "Cooperation and comity, not competition and conflict, are essential to the federal design." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004) (quotation marks omitted). As the Court has recognized, Maine courts are co-equal to

---

(D. Idaho); *Courthouse News Serv. v. Hade*, No. 3:21-cv-00460-HEH (E.D. Va.); *Courthouse News Serv. v. Cozine*, No. 3:21-cv-00680 (D. Ore.); *Courthouse News Serv. v. Hamilton Cty. Clerk of Cts.*, No. 1:21-cv-00197 (S.D. Ohio); *Courthouse News Serv. v. Price*, No. 1:20-cv-1260-LY, 2021 WL 5567748 (W.D. Tex.), report and recommendation adopted, 2021 WL 6276311; and two cases that have been resolved, *Courthouse News Serv. v. Calvo*, No. 3:21-cv-00822 (N.D. Cal.); *Courthouse News Serv. v. Taniguchi*, No. 4:21-cv-00414-HSG (N.D. Cal.).

and "as capable as their federal counterparts of guaranteeing federal rights." *Bettencourt v. Bd. of Registration in Med. of Com. of Mass.,* 904 F.2d 772, 776 (1st Cir. 1990).

Because abstention is based on the existence of "exceptional circumstances" and "countervailing interests" to the exercise of federal jurisdiction, traditional abstention doctrines "are not rigid pigeonholes into which federal courts must try to fit cases." *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 11 n.9 (1987). Overlapping rationales underlie the various abstention doctrines, and, as a result, considerations that support abstaining under one will often support abstaining under another. *See id.* This Court has recognized that "the various strains of abstention-related doctrines are not Procrustean taxonomies, but, rather, concepts that reflect 'a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.'" *Cruz,* 204 F.3d at 23 (quoting *Pennzoil Co.,* 481 U.S. at 11 n.9). "Thus, considerations of 'wise judicial administration' alone may sometimes warrant dismissal of a federal court proceeding." *Id.* (citing *Colorado River,* 424 U.S. at 818). In short, abstention requires flexible consideration of "compelling interests of fairness, comity, and sound judicial administration," *id.* at 25, whether or not the case fits within the formal categories of abstention, *Bacardi Int'l Ltd. v. V. Suarez & Co.,* 719 F.3d 1, 14 (1st Cir. 2013) (finding stay appropriate "whether or not [the] case fits within the formal strictures" of abstention doctrines); *Casiano-Montanez v. State Ins. Fund Corp.,* 707 F.3d

10

124, 128-29 (1st Cir. 2013) (staying proceeding under the *Pullman* abstention doctrine as well as general principles of federalism, comity, and sound judicial administration).[12]

Both "countervailing interests" and "exceptional circumstances" justifying abstention exist in this case. Countervailing interests to federal jurisdiction are directly implicated here, where federal court intervention would intrude upon the independence of state courts. *See SKS & Assocs. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) ("a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts"). Courts have rightly recognized that the "principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020) (quotation marks omitted). Moreover, as explained in Part II.C *infra*, exceptional circumstances requiring abstention exist in this case because state courts have a significant interest in managing their clerks' offices, case management systems, and court records. In this case, the challenged court record access rule promulgated by the SJC reflects a long-standing requirement of clerk review

---

[12] Accordingly, in the First Circuit, considerations of comity alone are sufficient bases for abstention. Although the Supreme Court has limited certain abstention doctrines to specific circumstances, *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (limiting *Younger* abstention to "three types of proceedings"), this Court need not determine whether the circumstances of this case precisely fit abstention doctrines in *Colorado River*, 424 U.S. 800, *Younger v. Harris*, 401 U.S. 37 (1971), *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), or *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

11

of incoming complaints.[13] This rule, woven into the fabric of the RECS and designed to protect the integrity of judicial case files, is, and always has been, a critical component of Maine's complaint intake process. Especially in the nascent stages of modernizing and improving public service through new technology, the state courts should be given the first opportunity to determine precisely what level of public access is required, appropriate, and feasible in Maine.[14]

> ### 2. Well-reasoned persuasive precedent supports abstention in judicial records access cases.

The conclusion that abstention is appropriate finds strong support from *Courthouse News Service v. Brown*. In that case, the Seventh Circuit determined that it was required—based on principles of federalism and comity—to abstain from resolving a challenge regarding access to complaints filed in state courts because the dispute over the state court clerk policy, governed by Illinois Supreme Court standards and a county court order, should be heard first in state court. 908 F.3d at 1065-66, 1075.

---

[13] R.A. 171-172, 327 ¶¶ 6-7; Me. R. Elec. Ct. Sys. (2)(A)(1) advisory note to March 2021 amend.; Me. R. Civ. P. 5(f) and advisory notes to May 2000 & 2004 amends., available at https://www.courts.maine.gov/rules/rules-civil.html.

[14] The transition from paper to electronic records raises a host of new policy concerns and requires careful re-evaluation of the rules that govern access to paper court records to ensure public trust and confidence in the judiciary is maintained. Electronic records are qualitatively different from paper-based records, and the implications of digital technology are seismic, both positive and negative. *See generally Report of the Maine Judicial Branch Task Force on Transparency and Privacy in Court Records* (2017)*, available at* http://lldc.mainelegislature.org/Open/Rpts/kf8733_j23_2017.pdf.

In *Brown*, after examining the four principal categories of abstention, the Seventh Circuit found that the *Younger* abstention doctrine, as extended in *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Rizzo v. Goode*, 423 U.S. 362 (1976), "is most closely applicable" to lawsuits over access to newly filed complaints. 908 F.3d at 1071. As the Seventh Circuit noted, *Younger* requires federal courts to refrain from exercising jurisdiction over constitutional claims that would interfere with ongoing state operations. *Id.* In *O'Shea*, the Supreme Court applied *Younger* principles to conclude that comity and federalism preclude granting federal relief governing future state criminal trials that would entail "an ongoing federal audit" of state courts. *Id.* at 1072 (citing *O'Shea*, 414 U.S. at 500). Then, in *Rizzo*, the Supreme Court further extended *Younger* to limit federal court review of a local executive department's oversight of its internal affairs. *Id.* at 1073 (citing *Rizzo*, 423 U.S. at 379). While recognizing that *Younger* and its progeny were "not a perfect fit," *id.* at 1071, the Seventh Circuit concluded that the principles in these cases counseled for abstention because the First Amendment right of access claim would involve continuing oversight of state courts, *id.* at 1074, and "impose a significant limit on the state courts . . . in managing the state courts' own affairs" through rules and procedures, *id.* at 1073.

Although it considered the *Younger* abstention doctrine, the Seventh Circuit "ultimately base[d its] decision on the more general principles of federalism that

13

underlie all of the abstention doctrines." *Id.* at 1071.[15] The court noted that "it is important for federal courts to have 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Id.* at 1073 (quoting *SKS & Assocs.*, 619 F.3d at 676). It found this "principle of comity," namely, "the assumption that state courts are co-equal to the federal courts and are fully capable of respecting and protecting . . . First Amendment rights," to be determinative. *Id.* at 1074. The Seventh Circuit therefore held that "[i]nitial adjudication of this dispute in the federal court would run contrary to . . . considerations of equity, comity and federalism." *Id.* at 1075.[16]

As the Seventh Circuit concluded in *Brown*, abstention is appropriate in the present case. Injunctive relief in this case would necessarily involve federal oversight of Maine courts – particularly given CNS's "as applied" challenge to court-established procedural rules. As the rollout of RECS is implemented in the other 95% of Maine

---

[15] It is therefore clear that the Seventh Circuit's holding did not depend upon *Rizzo* and *O'Shea*, but instead general principles of comity. CNS's argument that *Brown* is infirm because it extended *Younger* beyond the strictures described in *Sprint Communications*, Aplt. Br. at 23 n.9, misses the mark. First Circuit law is consistent with the Seventh Circuit's reliance on general principles of comity. *See Cruz*, 204 F.3d at 23.

[16] The U.S. District Court for the Eastern District of Missouri has adopted the Seventh Circuit's reasoning. *Gilmer*, 2021 WL 2438914, at *8-9. The court concluded that abstention was appropriate because it did "not wish to dictate to, oversee, or otherwise insert itself into the operations and administration of its co-equal Missouri state courts" by adjudicating claims regarding access to complaints. *Id.* at *9.

14

courts (many of them with far fewer resources than the pilot courts)[17] or whenever one of over 250 court clerks applies the RECS, CNS could enlist the federal courts again to make sure that those clerks adhere to standards for access established by federal court orders. Such continuing oversight raises substantial comity concerns. *See Brown*, 908 F.3d at 1074-75. Moreover, the foundational principles of comity suggest that federal courts should not "dictat[e] in the first instance how state court clerks manage their filing procedures and the timing of press access." *Id.* at 1075.[18]

### 3. Other courts considering abstention in court record access cases have failed to consider the countervailing systemic interests and have addressed distinguishable facts.

The Seventh Circuit is not the only appellate court to have considered this issue; two other courts of appeals have addressed abstention in cases involving challenges to policies requiring court staff to review newly filed civil complaints prior to allowing public access. *See Courthouse News Serv. v. Schaefer*, 2 F.4th 318 (4th Cir. 2021); *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*").[19] In both cases, the courts

---

[17] Maine has 45 trial courts, one appellate court, and a single statewide Business and Consumer ("BCD") court. The e-filing pilot project at issue is limited to Penobscot County Superior Court, Bangor District Court, and the BCD. *See Maine Caseload Statistics,* cited *infra* note 28*; see also Maine Judicial Branch 2020 Annual Report*, available at https://www.courts.maine.gov/about/reports/ar2020.pdf; R.A. 166-67 ¶ 6.

[18] *See also Bronx Defs. v. Off. of Ct. Admin.*, 475 F. Supp. 3d 278, 289 (S.D.N.Y. 2020) (abstaining from challenge to internal procedures of state courts relating to in-person appearances and citing *Disability Rights N.Y. v. New York*, 916 F.3d 129, 134–37 (2d Cir. 2019)); *Kaufman v. Kaye*, 466 F.3d 83, 86-88 (2d Cir. 2006) (abstaining from request to require state courts to establish a new system for assigning appeals).

[19] Other appellate courts are likely to weigh in soon, given the pending appeals and other cases identified in note 11, *supra*, all of which involve similar issues.

found abstention not warranted, reasoning that the requested relief imposed "bright-line" rules and "simple measures" that would not lead to continuous oversight of state courts by federal courts. *See Planet I*, 750 F.3d at 791; *Schaefer*, 2 F.4th at 324. The Fourth and Ninth Circuits in those cases improperly downplayed the significance of federal court interference in state court operations, underestimated the complexity of setting policy for and managing state courts, and failed to recognize the potential for ongoing federal court supervision of state courts.[20] Moreover, both cases are distinguishable because they involved challenges to local clerk or administrator policies, not a rule promulgated by the highest state court in the exercise of its inherent power to oversee the state judicial system. *See Schaefer*, 2 F.4th at 322; *Planet I*, 750 F.3d at 781. *Brown* presents this Court with the most analogous facts and most persuasive abstention analysis. *See Gilmer*, 2021 WL 2438914, at *5-9 (analyzing *Brown* and *Planet I*, and adopting *Brown*'s reasoning).

---

[20] The Ninth Circuit's more-than-a-decade odyssey managing ongoing litigation in the *Planet* case aptly illustrates intrusion may be enduring. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 587-89 (9th Cir. 2020) ("*Planet III*") (summarizing procedural developments in judicial saga); *see also Courthouse News Serv. v. Planet*, No. CV-11-8083-DMG (FFMx), 2021 WL 1605218 (C.D. Cal. Jan. 26, 2021), *judgment entered*, No. CV-11-8083-DMG (FFMx), 2021 WL 1605216 (C.D. Cal. Jan. 26, 2021).

16

**C.    The principle of comity has special force in this case, where the federal court has been asked to replace the court rules established by the Maine SJC through a comprehensive rule making process with rules created through federal court litigation.**

The tenets of sound judicial administration, appropriate federal-state relations, and state court independence strongly counsel for the exercise of judicial restraint.  As noted in *Brown,* "[i]t is particularly appropriate for the federal courts to step back in the first instance as the state courts continue to transition to electronic filing and, like many courts across the country, are working through the associated implementation challenges and resource limitations."  908 F.3d at 1074.  This is true for Maine's efforts.

The SJC's transition from paper to electronic records is a major, complex undertaking requiring careful consideration of myriad, interwoven policy issues.[21]  The SJC took into consideration numerous issues in issuing RECS, including Maine-specific litigants' needs, caseloads, court resources, funding, government relations, and other practical issues involved in running the Maine state court system.[22]

---

[21]  In her 2019 annual State of the Judiciary Address, Chief Justice Leigh I. Saufley described the e-filing/digital case management system initiative as "one of the most complex projects [she has] ever been involved with in government."  House Journal and Legislative Record H-172 (129th Legis. 2019), available at http://lldc.mainelegislature.org/Open/LegRec/129/House/LegRec_2019-02-26_HD_pH0165-0178.pdf.

[22]  The traditional level of access to court records prior to e-filing also was a consideration.  Historically, the state courts *endeavored* to provide access to paper court records pursuant to a timetable, but due to the nature of paper processing, chronic understaffing, and changing work priorities, the SJC has never prescribed a firm deadline for production.  *See* Public Information and Confidentiality, Me. Admin. Order JB-05-20 (as amended by A. 4-21) (effective Apr. 22, 2021), III.A.1 & Historical Derivation, available at https://www.courts.maine.gov/adminorders/jb-05-20.pdf; *see*

17

To prepare for the transition to electronic court filing, the SJC applied many internal and external resources to the issues for more than fifteen years. It undertook its own research; convened two major stakeholder groups;[23] hosted two public comment periods in 2017; held a public hearing in 2018; solicited additional public comments in January, March, and May 2019; established, in 2021, a RECS working group to review and propose revisions to the rules; and continues to meet with stakeholders and solicit feedback from users during the e-filing pilot.[24] The stakeholder groups explored policy issues relating to public access to court records and made recommendations to the SJC "for the promulgation of rules, orders, statutes, or policies that will have the effect of allowing the broadest of public access to court records that can be achieved while balancing the competing goals of public safety, personal privacy, and the integrity of the court system."[25]

---

*also* State of Maine Judicial Branch, *Record Search Request Instructions and Information* (rev. Oct. 2015)*, available at* https://www.courts.maine.gov/forms/pdf/misc/request-records-search.pdf (*e.g.,* requests for 1 to 5 records should be processed within 5 working days).

[23] The records created and legislative facts compiled by the stakeholder groups, as well as the comments submitted by the public, are public records and voluminous. The Task Force Reports can be found online. *Task Force on Electronic Court Record Access Final Report to the Justices of the Maine Supreme Judicial Court* (Sept. 26, 2005), available at https://lldc.mainelegislature.org/Open/Rpts/kf8733_m34_2005.pdf; and *Report of the Maine Judicial Branch Task Force on Transparency and Privacy in Court Records, supra* note 14. Public comments and submissions are on file with the Executive Clerk of the SJC.

[24] *See* R.A. 166-67 ¶ 6; State of Maine Judicial Branch, *Maine Rules of Electronic Courts Systems (RECS) Working Group* (Nov. 22, 2021), https://www.courts.maine.gov/about/committees/me-recs-comm.html.

[25] *Report of the Maine Judicial Branch Task Force on Transparency and Privacy in Court Records, supra* note 14.

18

It was in this context that the SJC promulgated RECS in the exercise of its
regulatory function after weighing important state interests.[26]  The transition to
electronic records also raised unique state policy issues, about which the federal court's
experience with the Public Access to Court Electronic Records system ("PACER")
offers little guidance, since PACER is different from Maine's new electronic system,
and, more importantly, federal and state courts are different.[27]  Federal and state court
case types, case volumes, and resource availability are not comparable.  Maine state
courts receive more than one hundred thousand new cases and traffic infractions each
year.[28]  Thousands of those cases, including those involving divorce, parental rights,
parentage, juveniles, and sexual abuse, require the collection of sensitive personal

---

[26] Given the issuance of RECS by the SJC in the exercise of its oversight authority,
abstention is consistent with precedent concluding that absolute (legislative) immunity
applies where the highest court of a state exercises its direct constitutional authority to
promulgate rules governing state court practices.  *See Gallas v. Supreme Court of
Pennsylvania*, 211 F.3d 760, 773-77 (3d Cir. 2000); *see also Supreme Court of Virginia v.
Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980); *In re Justices of Supreme Court of
Puerto Rico,* 695 F.2d at 23.

[27] Notably, this Court's ECF Filing procedures require clerk's office review of briefs
before they are accepted for filing and do *not* prescribe a firm timetable for providing
public access.  First Circuit L.R. 25.  In addition, the Supreme Court's rules provide:
"Filings that initiate a new case at the Supreme Court will be posted on the Court's
website only after the Clerk's Office has received and reviewed the paper version of the
filing, determined that it should be accepted for filing, and assigned a case number."
*Guidelines for the Submission of Documents to the Supreme Court's Electronic Filing System* 4
(effective Nov. 13, 2017), available at https://www.supremecourt.gov/filingandrules/
ElectronicFilingGuidelines.pdf.

[28] *Compare* State of Maine Judicial Branch, *Maine Caseload Statistics*, available at
https://www.courts.maine.gov/about/stats/statewide.pdf, *with* U.S. District Courts,
*Statistical Tables for the Federal Judiciary*, available at https://www.uscourts.gov/
statistics/table/c/statistical-tables-federal-judiciary/2021/06/30.

19

information.[29]  In addition to processing a greater volume of cases affecting private matters, the state courts service unrepresented litigants at rates far above those in the federal courts.[30]

A federal judge considering invalidating a SJC court rule would be in the untenable position of making state policy.  Even when issuing clear "bright-line" findings or prescribing "simple measures," the judge would be substituting his or her judgment for that of the SJC, without the experience of reconciling the interconnected policy issues involved in running the Maine state court system.  Furthermore, weighing underdeveloped, uninformed, or self-serving litigant proposals would be a misallocation of scarce federal court resources, especially when such evaluations require a detailed knowledge of state court operations and extensive evidentiary hearings.

More troublesome, however, is the fact that such an approach empowers adverse parties and federal courts to impose operational and budgetary mandates upon the state courts without the benefit of understanding the unique circumstances of the specific court system or addressing "the myriad questions regarding the treatment of digital records." *Conservatorship of Emma,* 2017 ME 1, ¶ 10, 153 A.3d 102.  This problem is

---

[29] State of Maine Judicial Branch, *Maine Caseload Statistics*, cited *supra* note 28.

[30] "[I]n the 1970s approximately 10 percent of litigants in family law cases proceeded without counsel, today between 75 and 90 percent of these litigants are unrepresented. The same general trend applies across other types of civil cases in both urban and rural settings, and (unsurprisingly) disproportionately impacts low-income litigants who cannot afford to hire an attorney."  Andrew C. Budzinski, *Reforming Service of Process: An Access-to-Justice Framework*, 90 U. Colo. L. Rev. 167, 180–81 (2019) (footnotes omitted).

illustrated in the discussion of one such "simple measure" in this case. As it has done in other cases, CNS proposed that Maine courts grant priority access to "credentialed press."[31] In response, long-serving SCA Glessner stated that the limited-to-certain-members-of-the-media solution would cost "tens to hundreds of thousands" of dollars. R.A. 168-169 ¶ 16. A CNS editor countered, pointing to the experience of *other* state court systems, and relying upon his own reading of the Judicial Branch's contracts with the same vendor used by *other* courts to reach the conclusion that costs to Maine's judiciary would not be significant. *See* R.A. 212-15 ¶¶ 16-25, 349-50 ¶¶ 5-6.

This colloquy is missing the type of multi-variable analysis and background that such a decision requires, and generates more questions than answers. For example: How will the Maine Judicial Branch secure *any* additional legislatively authorized funding for an already expensive multimillion dollar project?[32] How does priority media access enhance the public's trust in the court system or promote impartiality, when only some members of the media would have early access, while the public and other

---

[31] *See also* R.A. 16 ¶¶ 32-33 (CNS "has requested, but has not been granted, access to a press review queue in Maine.")); *Gilmer*, 2021 WL 2438914, at *4 n.4 (discussing request to secure advanced-priority access for the credentialed press).

[32] Costs and resource allocations are relevant and appropriate considerations in deciding how and where to provide access. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989) (government has no obligation to fund the exercise of Fourteenth Amendment rights); *see also Barber v. Conradi*, 51 F. Supp. 2d 1257, 1267–68 (N.D. Ala. 1999) (limiting plaintiff's access to court documents to two hours per week "is not substantially broader than necessary to advance a legitimate governmental interest in the efficient administration of the clerk's office").

putative defendants must wait?[33] What court priorities would have to be delayed or replaced by this initiative?[34] Specifically, would implementing the queue delay the replacement of the courts' antiquated COBOL-based case management system in some judicial regions or statewide?

Given its constitutional and statutory obligations, and knowledge of state court operations, the SJC is in the best position to consider CNS's constitutional claim in its appropriate context, to exercise its legislative function to ensure orderly processing of cases, and to exercise its judicial power to administer the Maine judicial system. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 433 (1982) (abstention appropriate in part because challenged state procedures for discipline of attorneys are "judicial in nature"); *Juidice v. Vail,* 430 U.S. 327, 335 (1977) (abstention appropriate because challenged state contempt procedures are process "through which [the state] vindicates the regular operation of its judicial system").

## CONCLUSION

Abstention is appropriate and necessary in this case. As the Supreme Court underscored in *Younger*, the Constitution established

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and

---

[33] "The First Amendment generally grants the press no right to information . . . superior to that of the general public." *Nixon,* 435 U.S. at 609.

[34] "The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press." *Planet III,* 947 F.3d at 596.

22

federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

401 U.S. at 44. While the media seeks to establish a new right of access to civil complaints under the First Amendment, the federal courts are facing a wave of state court record access litigation. Such challenges to state judiciaries' efforts to establish e-filing rules that maintain the integrity of the case management process underlying an efficient and impartial system of civil dispute resolution must be resolved in the first instance in the state courts, in conformity with the principles of equity, comity and federalism. Accordingly, for the reasons stated above, CCJ respectfully urges the Court to dismiss Appellants' claims on the alternative ground of abstention.

Dated: February 4, 2022

/s/ Joshua D. Dunlap
Peter J. Guffin, Bar No. 1201696
Joshua D. Dunlap, Bar No. 1146098
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100
*Attorneys for Amicus Curiae Conference of Chief Justices*

Laura M. O'Hanlon, Bar No. 1051213
c/o Peter J. Guffin
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-318-5748
*Special Counsel for Amicus Curiae Conference of Chief Justices*

# CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as it contains 6,448 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Garamond size 14 font.

Dated: February 4, 2022

/s/ Joshua D. Dunlap
Joshua D. Dunlap, Bar No. 1146098
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100

24

## CERTIFICATE OF SERVICE

I certify that the within brief has been electronically filed with the Clerk of the Court on February 4, 2022. All attorneys listed below are ECF filers and will receive service by electronic means pursuant to Rule 4 of this Court's Rules Governing Electronic Filing:

Jason David Anton
Thomas A. Knowlton
Bernard J. Kubetz
Rachel Matteo-Boehm
Roger Myers
Sigmund D. Schutz
Jonathan Simms Piper
Jeffrey J. Pyle
Christopher T. Uphouse

Dated: February 4, 2022

/s/ Joshua D. Dunlap
Joshua D. Dunlap, Bar No. 1146098
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100

25

Keely E. Duke
ISB #6044; ked@dukevett.com
Anne E. Henderson
ISB#10412; aeh@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Sara Omundson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>                      Plaintiff<br><br>vs.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>                      Defendants. | CASE NO. 1:21-CV-00305-REP<br><br>**NOTICE OF ERRATA RE: MATERIALS SUBMITTED IN SUPPORT OF DEFENDANT SARA OMUNDSON'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT 20]** |

Defendant Sara Omundson, by and through the undersigned counsel of record, hereby files this Notice of Errata to correct an omission from the materials submitted in support of Ms. Omundson's Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 20). The Declaration of Marissa Garza, Director of Court Services of Kootenai County, was inadvertently omitted from the materials submitted in support of Ms.

**NOTICE OF ERRATA RE: MATERIALS SUBMITTED IN SUPPORT OF DEFENDANT SARA OMUNDSON'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT 20] - 1**

Omundson's response in opposition to Courthouse News Service's Motion for Preliminary Injunction. (Dkt. 14). Ms. Omundson's Affidavit references the testimony and information contained in the Declaration of Marissa Garza (Omundson Aff., Dkt. 20-17 at 8, ⁋ 15). To ensure a complete record on the motion, Ms. Omundson submits this Notice of Errata and the Declaration of Marissa Garza, and respectfully requests it be considered along with the responsive materials filed at Docket 20.

DATED this 13th day of January, 2022.

DUKE EVETT, PLLC

By /s/Keely E. Duke
Keely E. Duke – Of the Firm
Anne E. Henderson – Of the Firm
*Attorneys for Sara Omundson*

**NOTICE OF ERRATA RE: MATERIALS SUBMITTED IN SUPPORT OF DEFENDANT SARA OMUNDSON'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT 20] - 2**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the 13th day of January, 2022, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| Debora Kristensen Grasham | dkk@givenspursley.com |
| Katherine A. Keating | katherin.keating@bclplaw |
| Jonathan G. Fetterly | jon.fetterly@bclplaw.com |

/s/Keely E. Duke _____
Keely E. Duke

**NOTICE OF ERRATA RE: MATERIALS SUBMITTED IN SUPPORT OF DEFENDANT SARA OMUNDSON'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT 20] - 3**

Keely E. Duke
ISB #6044; ked@dukeevett.com
Anne E. Henderson
ISB#10412; aeh@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Sara Omundson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | CASE NO. 1:21-CV-00305-DCN |
| Plaintiff | **DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendants. | |

1.      I, Marissa Garza, make this Declaration pursuant to Idaho Code § 9-1406 and I

declare under penalty of perjury pursuant to the law of the state of Idaho that the following is true

and correct.

2.      I am employed by the Kootenai County District Court (the "Court") as the Director

of Court Services of Kootenai County. I have been employed in my current role since November

1, 2018. Prior to serving as Director of Court Services, I worked for the Court as the Court Services

Manager, which is a role that shares many of the responsibilities and duties of Director of Court

Services as it is the direct reporting position to the Director of Court Services. Prior to my position

**DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 1**

as Court Services Manager, I held other roles with the Court. I have been employed continuously with the Court for more than eight (8) years, since July 1, 2013.

3.      In 2018, I completed a fellowship training with the National Center for State Courts in Judicial Administration, which is an Institute of Court Management certification program for court managers. I obtained my ICM Fellows Program Diploma and obtained the designation of Fellow of the Institute for Court Management. I also completed college coursework at Humboldt State University in Arcata, California.

4.      As Director of Court Services, I oversee and manage multiple departments of deputy clerks. For example, we have deputy clerks that are dedicated to records management, criminal matter intake, hearing setting, civil case management, and criminal compliance. The Court currently has seventy-three (73) full time deputy clerk positions and two (2) part time positions.

5.      I understand that the present lawsuit involves the timing of press and public access to non-confidential civil complaints which are filed electronically by users of the Odyssey File & Serve software platform ("File & Serve").

6.      The Court's civil department deputy clerks are responsible for the receipt and filing of civil complaints, both through File & Serve and over the physical intake counter at the Clerk's Office. There are currently ten (10) deputy clerks assigned and trained to work in the civil department of the Court. One of those deputy clerks is expressly dedicated to processing and filing documents electronically submitted through File & Serve, including new civil complaints.

7.      The COVID-19 pandemic has greatly impacted the Court since March 2020. In the first year of the pandemic, March 2020 thorough approximately March 2021, the Court struggled with maintaining necessary levels of staffing for all available positions. The reasons for this were

**DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 2**

numerous and included, but were not limited to: labor shortages caused by the pandemic; state and federal standards regarding periods of quarantine for exposed or COVID-positive staff members, which ranged from ten (10) to fourteen (14) days; and lack of tools, mainly computers that would have enabled more Court staff to complete job duties remotely (from home).

8.      COVID-19 staffing impacts particularly effected the civil department deputy clerks. At several points during the first full year of the COVID-19 Pandemic, the usual department of eight (8) clerks was working at half capacity, with just four (4) deputy clerks trying to perform work ordinary done by eight (8). It was difficult to fill vacant positions during the COVID-19 Pandemic. Even when filled, it takes anywhere from six (6) to twelve (12) months to get a newly hired deputy clerk up to speed and fully proficient in performing the job duties.

9.      Expansive population growth in Kootenai County has also had a direct impact on the efficiency of the Kootenai County Court and Kootenai County Clerk's Office.

10.     During the same timeframe the Court was experiencing staffing impacts from the COVD-19 Pandemic, it was also experiencing staffing impacts from the integration of two new Kootenai County judicial positions. Two new magistrate judge positions for Kootenai County were approved by the Idaho Legislature and Governor, with funding provided for an October 1, 2020 start date. The approval for the positions came due to increased judicial workloads in Kootenai County as a result of the significant increases in county population. The introduction of the new positions required a redistribution of existing staff to provide chambers support to the new judges.

11.     One impact of these factors was a backlog in the processing of civil case documents submitted to the Clerk's Office for processing and filing. As soon as I learned of the backlog, I began to search for solutions through the resources of Kootenai County, the First Judicial District, and the state Administrative Office of the Courts.

DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 3

12.     I contacted all of the following to alert them of the backlog and to seek information and help in fashioning a solution: The Trial Court Administrator; the Administrative District Judge; the Administrative Director of Courts; the Courts Operations Manager; and the Kootenai County Board of Commissioners.

13.     The Administrative Director of Courts, Sara Omundson, was immediately responsive and sent two individuals to Kootenai County to assist in an audit of the situation to determine what was responsible for the backlog. The result of that inquiry was that the civil department simply needed more staffing to handle the influx in case filings caused by increased population, as well as additional staffing hours to work through the backlog caused by the confluence of Pandemic-related worker shortages and the increased caseloads.

14.     The Administrative District Judge and the Administrative Director each supported me in submitting an emergency funding request to the Kootenai County Board of Commissioners for the addition of two (2) permanent full time deputy clerk positions and one (1) temporary full time deputy clerk position for the Court's civil department. The Board of Commissioners approved the requests. One of the permanent full time positions was added and filled in August 2021. The second position, which was approved to be hired in October 2021, has yet to be filled. It has been difficult to attract competent candidates, who are able to pass a background check, who are willing to work for the wage the position offers in the COVID-19 era.

15.     After filling the additional deputy clerk position, and by reallocating other staff to assist, during August 2021 and October 2021, the Clerk's Office was able to quickly work through the backlog of submitted documents and to again timely process and file all newly submitted civil case documents.

16.     However, in or around October 2021, the Court was required to switch to a new

**DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 4**

case management software environment. The switch was required by the software company, Tyler Technologies, Inc., that provides the File & Serve software that the Kootenai County Clerk's Office uses to process newly submitted civil case documents. There were so many issues with the functionality of the new software environment, that our office was permitted to return to the use of the previous software until many of the major issues were ironed out. As of November 2021, the Court again was transition to use the new software environment for File & Serve. Although most of the issues have been resolved, the switch produced additional delays in processing newly submitted civil case documents because of the need to familiarize and train staff in its use.

17. I declare under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

DATED this 13th day of January, 2022.

/s/Marissa Garza_____
Marissa Garza

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2022, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| Debora Kristensen Grasham | dkk@givenspursley.com |
| Katherine A. Keating | katherin.keating@bclplaw |
| Jonathan G. Fetterly | jon.fetterly@bclplaw.com |

/s/Keely E. Duke_____
Keely E. Duke

**DECLARATION OF MARISSA GARZA IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 5**

Debora Kristensen Grasham (ISB # 5337)
dkk@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>       Plaintiff,<br><br>    v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>       Defendant. | Case No: 1:21-cv-00305-DCN<br><br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [Dkt. 7]** |

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, hereby submits this Notice of Supplemental Authority in Opposition of Defendant's Motion to Dismiss [Dkt. 7] to bring to the Court's attention new authority relevant to the motion.

The new authority prompting this Notice is a recent decision in *Courthouse News Service v. Price*, Case No. 1:20-cv-1260-LY (W.D. Tex.) ("*Price*"). Like this case, the *Price* case involves delays in access to new electronically-filed civil complaints and a claim based on the defendant's violation of Courthouse News' First Amendment right of access to those complaints. Also like this case, the defendant in *Price* filed a motion to dismiss Courthouse News' complaint on abstention grounds.

On November 29, 2021, United States Magistrate Judge Susan Hightower issued a Report and Recommendation of the United States Magistrate Judge ("Report") recommending that the District Court deny defendant's motion to dismiss. A true and correct copy of the Report is attached as **Exhibit 1**. In the Report, Magistrate Judge Hightower concludes:

> [T]he undersigned concludes that abstention would be improper because 'it is not appropriate to refer a litigant in a § 1983 civil rights suit to a State form forum for adjudication of his Federal rights except in the most extraordinary circumstances.' *Jennings v. Patterson*, 460 F.2d 1021, 1022 (5th Cir. 1972). This case does not present the extraordinary circumstances necessary for the Court to exercise its discretion to decline to exercise jurisdiction over this case. *Quackenbush*, 517 U.S. at 726. Therefore, the Magistrate Court recommends that the [defendant's] Motion to Dismiss should be denied.

On December 15, 2021, United States District Judge Lee Yeakel issued an Order on Report and Recommendation of the United States Magistrate Judge ("Order") in which he accepted and adopted the Report, and ordered that defendant's motion to dismiss is denied. A true and correct copy of the Order is attached as **Exhibit 2**.

Courthouse News will be prepared to further address the *Price* case at any hearing the Court may hold on Defendant's motion to dismiss [Dkt. 7], or in any supplemental briefing this Court may request.

Dated: December 29, 2021

BRYAN CAVE LEIGHTON PAISNER LLP

   */s/ Jonathan G. Fetterly*
Jonathan G. Fetterly
*Attorneys for Courthouse News Service*

NOTICE OF SUPPLEMENTAL AUTHORITY - 3

Keely E. Duke
ISB #6044; ked@dukevett.com
Anne E. Henderson
ISB#10412; aeh@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Sara Omundson*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | CASE NO. 1:21-CV-00305-REP |
| Plaintiff | **REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) [DKT. 7]** |
| vs. | |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendants. | |

## I.    INTRODUCTION

The First Amendment does not require Idaho's state judicial system "to set aside [its] judicial operational needs to satisfy the immediate demands of the press." *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 586 (9th Cir. 2020) (*Planet III*). Courthouse News Service (CNS) asks this Court to fashion relief by reading an expansion into the qualified right of access set forth by the Ninth Circuit Court of Appeals in the

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 1**

precedential case, *Planet III*, and in so doing, to interrupt the delicate balance between state and federal comity by issuing declaratory and injunctive relief that would apply broadly across Idaho's state judicial system. For the reasons outlined herein, the Court should either dismiss this action based on CNS's failure to state a cognizable claim under the current law, or decline to exercise jurisdiction over the case.

In *Planet III*, the Ninth Circuit found and held that: 1) the press has a right of timely access to newly filed, nonconfidential civil complaints; 2) that the right is qualified; and 3) that the right attaches when the complaint is filed. *Planet III* at 585. The right of timely access is qualified by the court's interest in the fair and orderly administration of justice. Incidental delays in access are constitutionally permissible when content-neutral and narrowly tailored to preserve the court's interest. *Id*.

In its opposition to Director Omundson's Motion to Dismiss, CNS argues Director Omundson mischaracterized the Ninth Circuit's holding when she argued the qualified First Amendment right of access to nonconfidential civil complaints "that attaches when the complaint is filed" "does not entitle the press to immediate access to those complaints." Mot. to Dismiss, Dkt. 7 at 4.  CNS asserts that the Ninth Circuit found the right to access attaches "upon receipt." Opposition to Mot. to Dismiss, Dkt. 11 at 6. Contrary to CNS's argument, Director Omundson does not mischaracterize precedent or seek to sidestep the two-step constitutional test set forth in *Planet III*. Director Omundson asks, instead, that the Court look to the express requests and allegations in CNS's complaint and find that CNS requests relief that is not supported by the Ninth Circuit's holding in *Planet III*.

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 2**

CNS also asserts that Director Omundson asks the Court to decline to exercise jurisdiction over this case "despite the Ninth Circuit's rejection of abstention *with respect to the same claim*." Dkt. 11 at 6 (emphasis added). What Director Omundson requests, however, is more distinct. Acknowledging precedent, Director Omundson asks that the Court exercise its discretion and consider the precedent "in light of the facts presented" here. Dkt. 7 at 5 (citing *Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001)). There are material factual differences between the scope of relief requested in this case and the scope of relief in the *Planet* case.[1] There, the court's order applied to a single county clerk. Here, CNS asks the Court to issue declaratory and injunctive relief that would apply to all clerks' offices in the state of Idaho. Director Omundson argues that, in light of this material difference, the Court should consider whether the exercise of federal jurisdiction disregards the comity between the state of Idaho and the federal government. Director Omundson asks the Court to distinguish precedent on a principled basis.

## II.    ARGUMENT

### A.    There is no First Amendment right to the immediate access to newly received civil complaints that CNS demands in its Complaint.

CNS argues the Motion to Dismiss contains a misread of the controlling authority. Dkt. 11 at 11. That is not correct and, rather, Director Omundson's Motion requests a close-read of controlling authority and asks this Court to recognize a distinction between what

---

[1]      Director Omundson refers to the three stages of the *Planet* litigation collectively herein as "*Planet*" when referencing the case's general facts, and otherwise refers specifically to *Planet I*, *Planet II*, and *Planet III* when discussing the discrete arguments and opinions issued in those stages of the *Planet* litigation.

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 3**

CNS seeks and the contours of the qualified right to timely access to newly filed nonconfidential civil complaints recognized and defined by the Ninth Circuit.

The distinction between the rule announced in *Planet III* and the relief requested in this case is subtle, but meaningful, considered in context of the important balancing of the public's interest in contemporaneous news about filings in the courts versus the state's administrative interests in the fair and orderly processing of such filings. The public shares an interest in the orderly administration of justice—which is the interest court administrators uphold when receiving, reviewing, and filing civil complaints.

The Ninth Circuit's January 17, 2020 opinion, "*Planet III*," was issued after the parties to that case filed cross-appeals from the district court's decision on cross-motions for summary judgment, from which an injunction also issued. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020). The Ninth Circuit reviewed the district court's grant of summary judgment and found "that the qualified right of access to nonconfidential civil complaints arises when they are *filed* with the court." *Id*. at 594 (emphasis added). Importantly, though, the Court clarified that it does "not view that conclusion as demanding immediate, pre-processing access to newly filed complaints." *Id*.

In this case, CNS argues in opposition to the pending motion that the final judgment in *Planet III*, which was issued by the district court, declared that the "qualified right of timely access attaches when new complaints *are received by a court*, rather than after they are 'processed,' and that Planet's policy requiring that newly filed complaints and their associated exhibits be 'processed' prior to providing the press and public with access to

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 4**

those complaints violates CNS's qualified First Amendment right of timely access to *newly filed* complaints." Dkt. 11 at 5 (emphasis added) (internal citations omitted).

The discrepancy between the Ninth Circuit's opinion, which defined the "qualified right of timely access to *newly filed* civil nonconfidential complaints that attaches when the complaint *is filed*" and the language of the final judgment from the district court was noted by the Ninth Circuit in its review of a proposed amended judgment submitted by the Ventura County clerk. In its review, the Ninth Circuit acknowledged that, "*Planet III* did not address the distinction between 'filed' and 'received' because [the clerk] did not raise the issue, and so [the clerk] abandoned any objection." *Courthouse News Serv. v. Planet*, No. CV118083DMGFFMX, 2021 WL 1605218, at *5 (C.D. Cal. Jan. 26, 2021), *judgment entered*, No. CV118083DMGFFMX, 2021 WL 1605216 (C.D. Cal. Jan. 26, 2021).

For purposes of the judgment, the Ninth Circuit adopted CNS's proposed language on the right of access attaching when complaints are "received by a court" and remanded for the district court to enter the judgment. *Id*. Notably, the Ninth Circuit did so, while also acknowledging within its order on the judgment that "this Court's final judgment should still reflect the full extent of the Ninth Circuit's ruling, including those aspects that limit CNS's relief." *Id*. at *4.

In this case, CNS asserts it is constitutionally entitled to access to non-confidential civil complaints upon receipt. Dkt. 1 ¶ 33. This is akin to arguing that the press – or the public – is entitled to access to paper filings just as they cross a clerk's counter but before they are even assigned a case number. Again, the Ninth Circuit held the qualified First Amendment right to access to nonconfidential civil complaints attaches when they are

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 5**

filed; not first processed. The court carved out the qualification expressly — the First Amendment does not demand "immediate, pre-processing access to newly filed complaints." *Planet III* at 594. As such, CNS's demand for access prior to filing, upon receipt, is not supported by the clear language of the Ninth Circuit's holding in *Planet III*.

As CNS set forth in its opposition to the pending motion, the legal framework for analyzing CNS's right to access claim is established: "First the court asks whether there is a First Amendment right to the documents at issue and relatedly, at what point in time the right attaches. The Ninth Circuit has provided the definitive answer to this first question: Applying [*Press-Enterprise II*], we conclude that the press as a qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed." Dkt. 11 at 11 (internal citations omitted). The distinction in language between "filed" and "received" should not be brushed aside. It is a distinction of note in the balancing framework derived from *Press Enterprise II*. As the Ninth Circuit explained, "… instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged." *Planet III* at 596.

CNS bootstraps language from the judgment of the district court to the opinion of the Ninth Circuit to assert that the right to timely access attaches when the complaint is received. *See* Dkt. 11 at 11, n. 3. As reiterated above, that is not what the Ninth Circuit said or held. By asserting such a standard and demanding relief under that non-existent standard, CNS fails to state a claim based on a cognizable legal theory.

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 6**

**B.      The Court should abstain in this case because CNS's requested relief would excessively intrude on sensitive state functions.**

CNS asserts this claim is "virtually identical [to a] claim CNS filed in California" and as such, this Court must reject Director Omundson's request to abstain. Dkt. 11 at 14. CNS's assertion passes over significant and material distinctions in the scope of relief it requested in the California case and the scope of relief it requests here in Idaho.

In its complaint, CNS asserts Director Omundson has the power to unilaterally effectuate the relief requested. Dkt. 1, ¶¶ 8, 12. However, CNS also acknowledges in its response to the present motion, that, if it has not named the proper parties to effectuate the relief sought, they may be joined pursuant to the Federal Rules of Civil Procedure. Dkt. 11 at 16, n. 7. As a basic premise, that is true; however, the possible necessity of joinder hits the nail on the head because the relief CNS seeks would unjustifiably necessitate a declaratory and injunctive order that would apply across the state of Idaho to each clerk's office. *See* Dkt. 1 at 15.

Accepting CNS's present allegations as true, it asks the Court to issue declaratory and injunctive relief that would apply to Director Omundson, her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control *in Idaho's state judicial system. Id*. This request is materially different from that in *Planet*, where CNS asked the court for relief against one single county clerk ("Michael D. PLANET, in his official capacity as Court Executive Officer/Clerk of the Ventura County Superior Court, Defendant"). *See e.g. Planet I*, 750 F.3d 776; *Planet III*, 947 F.3d 581.

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 7**

As CNS recognizes in its opposition, there are several federal abstention doctrines. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12, 107 S.Ct. 1519, 1527, 95 L. Ed. 2d 1 (1987); *see e.g. Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L. Ed. 2d 674 (1974); and *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 607–08, 46 L. Ed. 2d 561 (1976).

For instance, the *O'Shea* doctrine is viewed by the Ninth Circuit as standing for the "general proposition" that federal courts "should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system." *Planet I*, 750 F.3d 776, 789–90 (9th Cir. 2014) (citing *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir.1992). *O'Shea* "compels abstention" where a plaintiff seeks an "ongoing federal audit" of the state judiciary. *O'Shea* abstention is intimately tied to the relief sought. *Id.* (citing *E.T. v. Cantil–Sakauye*, 682 F.3d 1121, 1124 (9th Cir.2011) (per curiam), *cert. denied*, 133 S.Ct. 476, 184 L.Ed.2d 297 (2012); *see also Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir.2006) ("holding that abstention was required where the relief sought would be overly intrusive in the administration of the New York court system") (internal citations omitted)).

In *Planet I*, as to *O'Shea* abstention, the Ninth Circuit found that the case presented an important First Amendment question involving the right of access to public records and proceedings that should be decided by the federal courts *and that plaintiff's requested relief*

*would not excessively intrude on sensitive state functions. See Planet I*, 750 F.3d 776. The *Planet* case concerned oversight of operations at Ventura County Superior Court. A single court in California. A single clerk. That is not the case here.

As detailed above, in this case, CNS asks the Court to issue declaratory and injunctive relief that would apply to Director Omundson, her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control in Idaho's state judicial system.[2]

Moreover, if the requested relief were granted, there is the possibility of continuing need for federal oversight of Idaho's entire state judicial system. Thus, CNS's request in this case asks a federal district court to exceed the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Rizzo v. Goode*, 423 U.S. 362, 378-79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

As stated in Director Omundson's Motion to Dismiss, if the Court grants the relief requested, it would be imposing a significant and meaningful limit on Idaho's state courts, including the independent duties conferred on the state clerks to manage state responsibilities and affairs, which are conferred by the Idaho State Constitution, state statutes, and Idaho Supreme Court rules. As such, the Court should find that CNS's request for the overexpansive federal adjudication of the issue in this lawsuit, which implicates the administration of the entire state judiciary in Idaho's state courts, calls for its abstention.

---

[2]    Again, Director Omundson does not have the authority or control alleged by CNS in its Complaint. Idaho's county clerks are elected officials, who have independent duties and rights conferred by the Constitution of the State of Idaho, state statutes, and Idaho Supreme Court rules.  These issues aside, assuming only for purposes of this Motion that Ms. Omundson has the control and authority alleged by CNS – which she does not – the Court should decline to exercise its jurisdiction.

**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 9**

## III.    CONCLUSION

For the foregoing reasons, Defendant Sara Omundson respectfully requests that

the Court grant her Motion to Dismiss.

DATED this 22nd day of October, 2021.

DUKE EVETT, PLLC


By /s/Keely E. Duke_ __ _____
   Keely E. Duke – Of the Firm
   Anne E. Henderson – Of the Firm
   *Attorneys for Sara Omundson*


## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of October, 2021, I served a copy of the
foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic
Filing as follows:

| | |
|---|---|
| Debora Kristensen Grasham | dkk@givenspursley.com |
| Katherine A. Keating | katherin.keating@bclplaw |
| Jonathan G. Fetterly | jon.fetterly@bclplaw.com |


/s/Keely E. Duke _____
Keely E. Duke


**REPLY IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO
FRCP 12(B)(6) - 10**

Debora Kristensen Grasham (ISB # 5337)
dkk@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (admitted *pro hac vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (admitted *pro hac vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>            Plaintiff,<br><br>      v.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>            Defendant. | Case No: 1:21-CV-00305-REP<br><br><br>**OPPOSITION OF PLAINTIFF COURTHOUSE NEWS SERVICE TO DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   Courthouse News Has Stated a First Amendment Claim Based on the Delays Caused by Defendant's Policy of Withholding Access Until Complaints Have Been Administratively Processed ................................................................................. 3

     A.   Courthouse News' Claim Here Mirrors the Successful Claims Brought in Numerous Other Cases ........................................................................... 4

     B.   Defendant's Assertion that Courthouse News Has Failed to State a Claim Is Based on a Fundamental Mischaracterization of *Planet III* ............................................... 6

II.  The Ninth Circuit Has Rejected Defendant's Argument on Abstention Grounds.............. 9

     A.   *Planet I* Reversed the Application of Abstention Against the Very Claim Courthouse News Brings in this Case, and *Planet III* Later Rejected the Very Case on Which Defendant Relies ........................................................................... 9

     B.   Defendant's Authority Has Also Been Rejected Because It Does Not Comply with the Supreme Court's Mandatory Directives Limiting When Abstention May Apply.................................................................................................. 12

CONCLUSION............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ................................................................4

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ........................................................................14

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) ........................................................16

*Courthouse News Serv. v. Brown*,
2018 WL 318485, at *1 (N.D. Ill. Jan. 8, 2018) .............................5

*Courthouse News Serv. v. Gilmer*,
2021 WL 2438914 (E.D. Mo. June 15, 2021) ................................13

*Courthouse News Serv. v. Jackson*,
2009 WL 2163609 (S.D. Tex. July 20, 2009) ..................................5

*Courthouse News Serv. v. Planet* ("*Planet I*"),
750 F.3d 776 (9th Cir. 2014) ................................................ *passim*

*Courthouse News Serv. v. Planet* ("*Planet II*"),
614 Fed. Appx. 912 (9th Cir. 2015) .................................................8

*Courthouse News Serv. v. Planet* ("*Planet III*"),
947 F.3d 581 (9th Cir. 2020) ................................................ *passim*

*Courthouse News Serv. v. Planet*,
2021 WL 1605216 (C.D. Cal. Jan. 26, 2021) ...............................5, 6

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ..........................................................13, 15

*Courthouse News Serv. v. Schaefer*,
429 F. Supp. 3d 196 (E.D. Va. 2019) ..........................................12, 16

*Courthouse News Serv. v. Schaefer*,
440 F.Supp.3d 532 (E.D. Va. 2020), aff'd, 2 F.4th 318 (4th Cir. 2021) ...................5

*Courthouse News Serv. v. Tingling*,
2016 WL 8505086 (S.D.N.Y. Dec. 16, 2016) .............................5, 12

*Courthouse News Service v. Brown*,
908 F.3d 1063 (7th Cir. 2018) ............................................................ *passim*

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
925 F.3d 1041 (9th Cir. 2019) ................................................... 13, 14

*Disability Rts. Montana, Inc. v. Batista*,
930 F.3d 1090 (9th Cir. 2019) ............................................................ 4

*Great Lakes Dredge & Dock Co.* v. *Huffman*,
319 U.S. 293 (1943) ................................................................... 14

*Huffman v. Pursue*,
420 U.S. 592 (1975) ................................................................... 14

*L.A. Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992) ....................................................... 16

*Louisiana Power & Light Co. v. City of Thibodaux*,
360 U.S. 25 (1959) ................................................................... 14

*Martin v. Stewart*,
499 F.3d 360 (4th Cir. 2007) ....................................................... 13

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
491 U.S. 350 (1989) ............................................................ 13, 15

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..................................................................... 9

*Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"),
478 U.S. 1 (1986) .......................................................... 4, 6, 7, 8

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ............................................................ 13, 14

*Railroad Comm'n of Texas v. Pullman Co.*,
312 U.S. 496 (1941) ..................................................................... 9

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
754 F.3d 754 (9th Cir. 2014) ....................................................... 15

*Rizzo v. Goode*,
423 U.S. 362 (1976) ................................................................ 9, 16

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ................................................................... 15

OPPOSITION TO MOTION TO DISMISS - iii

*Younger v. Harris*,
  401 U.S. 37 (1971)...............................................................................................9

**Statutes**

42 U.S.C. § 1983 .................................................................................................11

## INTRODUCTION

Defendant's motion asks the Court to dismiss the lawsuit of Courthouse News Service ("Courthouse News") on two grounds, each of which is precluded by controlling Ninth Circuit authority. **First**, based on a fundamental mischaracterization of the Ninth Circuit's holding in *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*"), she contends that Courthouse News' claim "is not supported by a cognizable legal theory" because "there is no First Amendment right to … immediate access   to newly filed civil complaints."  Memorandum in Support of Motion to Dismiss (ECF 7-1) ("Mem.") at 1-2, 4.  Under *Planet III*, the question is not whether the First Amendment confers a right of "immediate access."  Rather, because the right of access attaches on receipt, and because access is delayed by Defendant's policy of withholding access to new civil complaints until after clerical processing, the question is whether Defendant can show her policy withstands the "rigorous" scrutiny required by the First Amendment.  947 F.3d at 594-96.  Defendant's motion ignores this question, which is central to the holding of *Planet III*, thereby sidestepping the constitutional test under which her policy must be scrutinized.  **Second**, she asks the Court to decline to exercise jurisdiction over Courthouse News' claim, despite the Ninth Circuit's explicit rejection of abstention with respect to the same claim in both *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*") and *Planet III*, 947 F.3d at 591 n.4.  Defendant has offered no viable basis for dismissal, and her motion should be denied.

## FACTUAL BACKGROUND

***Making Complaints Available.***  Historically, reporters covering courts could review and report on new civil complaints on the day of filing by looking at them at the courthouse on the day they were filed.  Complaint (ECF 1) ("Compl."), ¶¶ 1, 37.  As was the case in Ada County,

**OPPOSITION TO MOTION TO DISMISS - 1**

new complaints were typically placed in a press-review box or cart, regardless of whether they had been docketed (or "processed" – the term now often used by courts). *Id.*, ¶ 37. This enabled the press to report on the contents of complaints on the day they were filed, "when they are fresh, which is when they are news." *Id.*, Exh. 1 at 19.[1]

E-filing makes it even easier for courts to provide timely access to new complaints. Instead of basic intake work being done by clerks at an intake counter, that work is now done by e-filing software, which filers use to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court. *Id.*, ¶ 38. Based on information supplied by the filer, the e-filing software can automatically filter out confidential case types and make electronic copies of new, nonconfidential complaints available to interested readers, just as courts traditionally did with paper complaints. *Id.* Thus, unless an e-filing court chooses to withhold them for clerical processing, new e-filed complaints are available to the press and public promptly after the court receives them. Nearly all federal district courts and many state courts configure their e-filing systems to automatically allow access to non-confidential civil complaints upon their receipt by the court. *Id.*

Some courts develop their own homegrown e-filing systems. Others license e-filing software developed by third-party vendors. Both homegrown and vendor-provided e-filing systems can be configured to avoid delaying access to new complaints. *Id.*, ¶ 39. Idaho's district courts use e-filing software from a third-party vendor – a company called Tyler Technologies. *Id.*, ¶¶ 3, 40-41. One of the ways courts that use Tyler's software can avoid access delays is by simply directing Tyler to configure the software so that new, nonconfidential civil complaints are available promptly, without waiting for court staff to complete clerical processing. *Id.*, ¶¶ 3, 40.

---

[1] Page references in record citations refer to pagination in a document's ECF header.

OPPOSITION TO MOTION TO DISMISS - 2

*Access Delays in Idaho's District Courts*.  Defendant is the Administrative Director of Idaho Courts and, in her official capacity, is responsible for the administration of the statewide e-filing and public access systems used by the courts.  *Id*., ¶ 12.  Before the implementation of e-filing in Idaho trial courts, Courthouse News was able to access civil complaints on the day they were filed.  *Id*., ¶ 23.  Since the adoption of mandatory e-filing in Idaho courts, however, Defendant's policy is to withhold new complaints from the public until court staff have completed clerical "processing."  *Id*., ¶¶ 4-5, 35.  As a result, delays in accessing new civil complaints have been commonplace and continuous.  *Id*., ¶ 35.

Out of nearly 1,000 new civil complaints e-filed with the Idaho Courts in May and June 2021, Courthouse News was able to access only about 46% on the day they were filed.  Access to approximately 39% was delayed by one court day, and access to approximately 14% was delayed by two court days or longer.  *Id*., ¶¶ 5, 26.  Delayed complaints include those of particularly strong public interest.  For example, a complaint against Kootenai County, alleging legal deficiencies in the enactment of a new law affecting the entire Spokane River was withheld from the press and public for days before it was finally processed and made available to the press and public.  *Id*., ¶ 27.

Courthouse News brought this action to remedy these delays.

## ARGUMENT

**I.      Courthouse News Has Stated a First Amendment Claim Based on the Delays Caused by Defendant's Policy of Withholding Access Until Complaints Have Been <u>Administratively Processed</u>**

Based on a mischaracterization of both Courthouse News' allegations and controlling Ninth Circuit authority, Defendant asserts that the complaint fails to state a claim for which relief can be granted.  Defendant is mistaken, as reflected in not only other decisions construing the same claim Courthouse News brings here but also in the express language of *Planet III*.

OPPOSITION TO MOTION TO DISMISS - 3

A. **Courthouse News' Claim Here Mirrors the Successful Claims Brought in
    <u>Numerous Other Cases</u>**

Defendant's motion to dismiss cannot be granted as long as Courthouse News' complaint

"contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face.'" *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 698 (9th Cir. 2021). The Court must "take

all allegations of material fact as true and construe them in the light most favorable to"

Courthouse News." *Disability Rts. Montana, Inc. v. Batista*, 930 F.3d 1090, 1096–97 (9th Cir.

2019).

In its complaint, Courthouse News alleges that Defendant maintains a policy of

withholding new e-filed nonconfidential civil complaints from the press and public until after

court staff have completed clerical processing of the complaints. Compl., ¶¶ 4, 35, 48. It further

alleges that this policy results in pervasive delays to new nonconfidential civil complaints e-filed

in Idaho's district courts. *Id.*, ¶¶ 5, 24, 26-27, 35, 48. Finally, Courthouse News alleges facts

showing that Defendant cannot meet her burden of demonstrating that her policy satisfies

constitutional scrutiny under *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986)

("*Press-Enterprise II*") and *Planet III*. Compl., ¶¶ 3-4, 33-34, 36, 38-40, 46, 49.

Courthouse News seeks a declaration that "Defendant's policies and practices that

knowingly affect delays in access to newly filed civil unlimited complaints, including, *inter alia*,

her policy and practice of denying access to complaints until after administrative processing, are

unconstitutional under the First and Fourteenth Amendments" and an injunction "prohibiting her

from continuing her policies and practice that deny Courthouse News timely access to new non-

confidential civil complaints, including, *inter alia*, her policy and practice of denying access to

complaints until after administrative processing." *Id.* at 15 (prayer for relief).

**OPPOSITION TO MOTION TO DISMISS - 4**

This is the same claim brought – and the same relief sought – by Courthouse News in numerous cases that resulted in favorable decisions, including *Courthouse News Serv. v. Jackson*, 2009 WL 2163609 (S.D. Tex. July 20, 2009) (ordering clerk to make petitions available on the day of filing), *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016) (enjoining defendant "from denying access to newly filed civil complaints until after clerical processing and [requiring] Defendant to provide Plaintiff access to those documents in a timely manner upon receipt"), and *Courthouse News Serv. v. Schaefer*, 440 F.Supp.3d 532, 562 (E.D. Va. 2020), aff'd, 2 F.4th 318 (4th Cir. 2021) (clerks' policies violated Courthouse News' "qualified right of access to newly-filed civil complaints contemporaneous with the filing of the complaint").[2]

And, most relevant of all, the final result in the *Planet* litigation was a judgment declaring that the "qualified right of timely access attaches when new complaints are received by a court, rather than after they are 'processed,'" and that Planet's policy "requiring that newly filed complaints and their associated exhibits be 'processed' prior to providing the press and public with access to those complaints violates CNS's qualified First Amendment right of timely access to newly filed complaints." *Courthouse News Serv. v. Planet*, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021). The judgment also permanently enjoined Planet "from refusing … to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed …." *Id*.

---

[2] The district court in *Courthouse News Serv. v. Brown* also deemed Courthouse News' claim meritorious, enjoining the defendant "from enforcing her policy of withholding e-filed complaints until administrative processing is complete and requiring her to provide timely, contemporaneous access to the complaints upon filing," 2018 WL 318485, at *1 (N.D. Ill. Jan. 8, 2018), before reversal on abstention grounds, 908 F.3d 1063 (7th Cir. 2018).

OPPOSITION TO MOTION TO DISMISS - 5

It cannot be that Courthouse News' claim was meritorious in each of these cases but that Courthouse News somehow failed to state a claim in this one. As explained below, Defendant reaches a contrary conclusion only by mis-reading the controlling authority.

**B.     Defendant's Assertion that Courthouse News Has Failed to State a Claim Is Based on a Fundamental Mischaracterization of *Planet III***

Courthouse News has alleged that it was able to access only about 46% of new civil complaints e-filed with the Idaho Courts in May and June 2021 on the day they were filed, with access to approximately 39% delayed by one court day, and access to approximately 14% delayed by two court days or longer. Compl., ¶¶ 5, 26. These delays are the result of Defendant's policy of withholding new complaints until court staff have completed administrative processing. *Id.*, ¶¶ 4-5, 35. Based on these delays, Courthouse News brought this action challenging Defendant's policy. *Id.* at 15 (prayer for relief).

The legal framework for evaluating Courthouse News' claim is clearly established through *Press-Enterprise II*, 478 U.S. at 13–14, and *Planet III*. **First**, the court asks whether there is a First Amendment right to the documents at issue "and, relatedly, at what point in time that right attaches." *Planet III*, 947 F.3d at 590. The Ninth Circuit has provided the definitive answer to this first question: "Applying [*Press-Enterprise II*], we conclude that the press has a qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed." *Id.* at 585.[3]

***Second***, the court engages in a fact-specific inquiry, examining the delays and the interests offered to justify them. *Id.* at 594-95 ("Once we have determined that a qualified First

---

[3] Defendant's motion uses the term "filing" to refer to an action the court takes following its clerical review of a new complaint. Mem. at 3. In *Planet III*, the term "filing" refers to the filer's submission of a new complaint. 947 F.3d at 588, 594 (agreeing with the district court that "the right to timely access attaches at the moment of filing, i.e., when the complaint is received by the court").

Amendment right of access to newly filed nonconfidential civil complaints exists, a presumption of access arises under *Press-Enterprise II* that may be restricted only if 'closure is essential to preserve higher values and is narrowly tailored to serve those interests.'").[4]

In the context of this second-stage inquiry, the Ninth Circuit explained that restrictions on access can sometimes be constitutionally permitted, ***provided they satisfy the scrutiny required by Press-Enterprise II***. *Id*. at 585. Because the qualified nature of the First Amendment right of access entitles a defendant to try to establish that its delay-causing practices and policies satisfy this "rigorous scrutiny," *id*. at 596, the access right does not automatically or invariably "entitle the press to immediate access to … complaints." *Id*. at 585.

The mistake underpinning Defendant's failure-to-state-a-claim argument is encapsulated in the following statement: "CNS alleges that it has a First Amendment right of access to civil complaints that attaches upon [an] Idaho court's receipt of a complaint and, ***as such***, Idaho's process of performing a ministerial review of the complaints before filing them violates ***that right to immediate access*.**" Mem. at 3.

Defendant is right about the first part. *Planet III* conclusively established that a First Amendment right of access attaches when the court receives a complaint. 947 F.3d at 585, 588, 594. But the rest of the sentence, beginning with "as such," mischaracterizes both the applicable law and Courthouse News' claim. Defendant's policy of withholding complaints for clerical processing violates Courthouse News' First Amendment right of access ***not*** because there is a "right to immediate access," but because the policy results in access delays and Defendant cannot meet her burden of justifying those delays. *Planet III*, 947 F.3d at 594-596; *accord Press-Enterprise II*, 478 U.S. at 13-14; *see also* Compl., ¶¶ 31, 34-36, 46, 49.

---

[4] Unless otherwise noted, all emphases are added, and all internal and parallel citations omitted.

Seizing on the statement in *Planet III* that the Ninth Circuit does not view the right of access as "demanding immediate, pre-processing access," *id*. at 594, Defendant omits the critical holding that follows:

> To survive *Press-Enterprise II*'s two-prong balancing test, Ventura County must demonstrate first that there is a "substantial probability" that its interest in the fair and orderly administration of justice would be ***impaired by immediate access***, and second, that no reasonable alternatives exist to 'adequately protect that government interest.

*Planet III*, 947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

Nor does Defendant mention that *Planet III* ***affirmed*** the district court's grant of summary judgment enjoining Ventura's "no-access-before-process policy," 947 F.3d at 600, something it could not have done if a claim challenging the withholding of access for clerical processing were not supported by a cognizable legal theory. Courthouse News seeks the same relief here. *See*, *e.g.*, Compl. at 15 (prayer for relief).

Indeed, Defendant's motion is reminiscent of the one Planet brought, resulting in a short-lived dismissal that improperly "narrowed the legal question to same-day access as an abstract notion and held, as a matter of law, that the First Amendment right of access does not mandate same-day access to civil complaints." *Courthouse News Serv. v. Planet*, 614 Fed. Appx. 912, 914 (9th Cir. 2015) ("*Planet II*") (reversing 12(b)(6) dismissal that "evaluat[ed] the question of same-day access as a purely legal question divorced from the [proper] legal framework …, and from the allegations in CNS's complaint"). Just as Planet did, Defendant attempts to narrow the legal question to "immediate access" as an abstract notion divorced from the proper legal framework and the allegations of Courthouse News' complaint. Defendant's motion must fail, just as Planet's did.

## II.     The Ninth Circuit Has Rejected Defendant's Argument on Abstention Grounds

Defendant's motion also asks this Court to ignore controlling Ninth Circuit authority rejecting and reversing the use of abstention against a virtually identical claim CNS filed in California.  Manifestly, the Court cannot do as Defendant asks and must reject her request.

### A.     *Planet I* Reversed the Application of Abstention Against the Very Claim Courthouse News Brings in this Case, and *Planet III* Later Rejected the Very Case on Which Defendant Relies

Defendant begrudgingly concedes the Ninth Circuit reversed a district court's grant of a motion to dismiss on abstention grounds in *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 20140) ("*Planet I*").  But she argues abstention there was asserted under "the *Pullman* and *O'Shea* doctrines," Mem. at 5,[5] and suggests this Court can still abstain pursuant to the subsequent Seventh Circuit decision in *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), which abstained under "general principles of federalism" derived from *Younger v. Harris*, 401 U.S. 37 (1971), particularly "its extensions in *O'Shea* and *Rizzo*."  *Id.* at 1071; *see* Mem. at 5-6.[6]

What Defendant does not tell the Court, however, is the Ninth Circuit has also expressly rejected the Seventh Circuit's theory of abstention in *Brown*:

> We **disagree** … **with the Seventh Circuit's decision to abstain** from resolving the dispute about when the right attaches and when delays are so long as to be tantamount to a denial of the right.  *See Brown*, 908 F. 3d at 1070-75; *see also Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976); *O'Shea*, 414 U.S. 488.

*Planet III*, 947 F.3d at 591 n.4.

---

[5] Referring to abstention doctrines announced in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) and *O'Shea v. Littleton*, 414 U.S. 488 (1974).

[6] Referring to abstention doctrines announced in *Younger v. Harris*, 401 U.S. 37 (1971), and its offshoots in *O'Shea* and *Rizzo v. Goode*, 423 U.S. 362 (1976).

OPPOSITION TO MOTION TO DISMISS - 9

Accordingly, Defendant's contention that there are "material differences between this case and *Planet*" that "require" this Court to refuse to follow the Ninth Circuit and instead "require … abstention" under *Brown*, Mem. 6, fails under the plain terms of *Planet III*.  As the Ninth Circuit noted, the material point is not whether the claim is against a county or a state, or the ways in which Defendant could comply with an order granting CNS the declaratory and/or injunctive relief it seeks.  Rather, the pertinent point is that CNS asserts that the right of access attaches upon receipt of a complaint for filing, Compl., ¶¶ 28-32, and that the "delays" in access from that point, resulting from Defendant's policy and practice of requiring pre-access processing of complaints, "are so long as to be tantamount to a denial of the right" of timely access under the First Amendment.  *Planet III*, 947 F.3d at 591 n.4; Compl., ¶¶ 26-27, 33-40.  As to this very First Amendment claim, then, the Ninth Circuit made clear that abstaining under *Brown* pursuant to the extension of *Younger* in *O'Shea* and *Rizzo* would be reversible error.

*Brown* itself acknowledged this when it conceded that *Planet* is "a case nearly identical to this one" but "disagree[d] with our colleagues in the Ninth Circuit."  908 F.3d at 1074.  This Court thus has no discretion to follow the Seventh Circuit's decision in *Brown* applying reasoning and a result that it admits cannot be squared with the Ninth on virtually identical facts.  Moreover, as *Brown* shows, neither the facts nor the relief sought are "materially different" from *Planet*, or other CNS cases where courts refused to abstain, often rejecting *Brown* in the process.

Like CNS' complaint in *Planet*, CNS' complaint in this case alleges that, historically, reporters were able to access new complaints on the day they were filed.  Compl., ¶¶ 1 & 23; *Planet I*, 750 F.3d at 781 (reciting allegations in CNS' complaint).  Like CNS' complaint in *Planet*, CNS' complaint in this case alleges that timely access to new complaints promptly after

filing ended when Defendant instituted a new policy and practice of denying access to new

complaints "until they have been processed."  Compl., ¶ 24; *Planet I*, 750 F.3d at 781-82.

The only factual difference Defendant asserts is CNS sued the Executive Officer/Clerk of

Ventura County Superior Court in *Planet*, while here CNS sued the Administrative Director of

the Idaho Courts.  But that is truly a distinction without a difference; the key point is that the

Executive Officer/Clerk in *Planet* and the Defendant Administrative Director here were both

alleged to be responsible for the new policy of withholding access to complaints until after they

are fully processed.  *See* Compl., ¶¶ 12-13, 42; *Planet I*, 750 F.3d at 781-82.  To be effective,

then, any declaratory and/or injunctive relief must be directed to them.[7]

As in *Planet*, granting that relief "would not 'risk an ongoing federal audit,'" Mem. 6

(quoting *Planet I*, 750 F.3d at 792), because in both cases the relief sought simply requires the

Defendant to stop denying access until after processing.  *See* Compl. at 15 (prayer for relief);

*Planet III*, 951 F.3d at 591 n.4.  Contrary to Defendant's misreading of it, CNS' complaint does

not ask this Court to order Defendant to obtain additional software from a third-party vendor.

Mem. 6.  Rather, the complaint identifies the Tyler Press Review Queue as one example of how

---

[7] Defendant's suggestion that she does not have authority to change the policy at issue in this case, Mem. 6, is not supported by the allegations of the complaint, the underlying record, or the rules and statutes Defendant cites.  The allegations of the complaint – which must be accepted as true – establish Defendant, in her official capacity, is responsible for the administration of the statewide e-filing and case management systems used by the Idaho Courts and public access to records through those systems.  Compl., ¶¶ 12-14, 45, 48.  Further, the Ada County Clerk previously identified Defendant's predecessor as the appropriate party to address the policy underlying Courthouse News' claim.  *Id.*, ¶¶ 41-42, Ex. 4.  Courthouse News' 42 U.S.C. § 1983 claim is the proper vehicle for enforcing its constitutional rights against Defendant's policy resulting in delayed access to new civil complaints.  *See Planet I*, 750 F.3d at 792 (rejecting abstention argument because federal courts have a "virtually unflagging obligation" to exercise jurisdiction in civil rights actions under § 1983).  If Defendant believes Idaho's county clerks are necessary to effect the equitable relief sought by Courthouse News, the Federal Rules of Civil Procedure provide for the joinder of such parties; dismissal on abstention grounds is not the answer.

OPPOSITION TO MOTION TO DISMISS - 11

Defendant could easily and cheaply comply with an order to stop denying access until after processing because the Idaho courts already use Tyler as their e-filing vendor. Compl., ¶¶ 3-4, 24, 36-40, 46 (Defendant's "office already possesses or has access to ***one of many*** readily available alternatives … capable of meeting courts' needs while at the same time providing timely access to new e-filed complaints").

That is no different than the examples the Ninth Circuit gave in *Planet I* of the sort of "simples measures" available to a court "to comply with an injunction granting CNS all or part of the relief requested." 750 F.3d at 791. All CNS has requested is a declaration that denying access until after processing violates the First Amendment, and an injunction against doing so. Compl. at 15 (prayer for relief). "It is therefore within the district court's sound discretion to fashion relief that would protect First Amendment rights but would not require an 'ongoing federal audit'" of the state court. *Planet I*, 750 F.3d at 791. This Court can simply grant the relief requested and leave it to Defendant to decide how best to comply, which is what the courts did in *Planet* and *Courthouse News Service v. Tingling*, 2016 WL 8505086 (S.D.N.Y. Dec. 16, 2016). As another district court held in refusing to follow *Brown* and rejecting abstention in another decision involving CNS that was affirmed on appeal, either way Defendant "still can operate [her] offices, [she] would just have to release filings faster." *Courthouse News Serv. v. Schaefer*, 429 F. Supp. 3d 196, 206 n.5 (E.D. Va. 2019), aff'd, 2 F.4th 318 (4th Cir. 2021).

**B. Defendant's Authority Has Also Been Rejected Because It Does Not Comply with the Supreme Court's Mandatory Directives Limiting When Abstention May Apply**

Even if the Ninth Circuit in *Planet III* had not expressly rejected *Brown* – the case on which Defendant relies to assert that this Court should abstain notwithstanding the Ninth Circuit's reversal of abstention against CNS in *Planet I* – the Fourth Circuit's decision earlier this year also rejecting *Brown* makes clear that *Brown* does not comport with recent Supreme

OPPOSITION TO MOTION TO DISMISS - 12

Court directives restricting abstention (in ways the Ninth Circuit has held to be mandatory).

In *Brown*, the Seventh Circuit "recognized that none of the 'principal categories of abstention' constituted 'a perfect fit,'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (quoting *Brown*, 908 F.3d at 1071), including "*Younger*, with its extensions in *O'Shea* and *Rizzo*," which *Brown* thought "most closely applicable." 908 F.3d at 1071. Even though the doctrines did "not fit," *id.* at 1072, *Brown* "based its 'decision on the more general principles of federalism'" underlying them. *Schaefer*, 2 F.4th at 325 (quoting *Brown*, 908 F.3d at 1071).

But abstention is not like horseshoes and hand-grenades: close does not count. The Seventh Circuit's "approach is inconsistent with … Supreme Court guidance." *Schaefer*, 2 F.4th at 325. Like *Brown* and the only case to follow it,[8] Defendant relies on a passage taken out of context to imply a court may abstain whenever it determines a state's "'important countervailing interests,'" on balance, warrant "'denying a federal forum.'" Mem. 5 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). That is not true. "'The Supreme Court has **never** allowed abstention to be a license for freeform ad hoc judicial balancing of the totality of state and federal interests in a case.'" *Schaefer*, 2 F.4th at 325 (quoting *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (emphasis in original) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*") ("We have carefully defined … the areas in which such 'abstention' is permissible, and it remains '"the exception, not the rule."'")).

As the Ninth Circuit explained, the case quoted by *Brown* and Defendant "reiterated that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 925 F.3d 1041, 1051 (9th Cir. 2019) (quoting *Quackenbush*, 517 U.S. at 716). And in the very passage quoted by *Brown* and

---

[8] *Courthouse News Serv. v. Gilmer*, 2021 WL 2438914, *5 (E.D. Mo. June 15, 2021).

OPPOSITION TO MOTION TO DISMISS - 13

Defendant, "*Quackenbush* outlined specific 'exceptional circumstances' in which 'denying a federal forum would clearly serve an important countervailing interest.'" *Id.* (quoting same).

In other words, it is **only** in the following "'exceptional circumstances'" in which the Supreme Court has **already conducted the balance** and determined that "'[f]ederal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, or with certain types of state civil proceedings; cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law; cases raising issues "intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law); cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes; and cases which are duplicative of a pending state proceeding.'" *Id.* (quoting *Quackenbush*, 517 U.S. at 716-17). Defendant "does not suggest that this case falls into any of these categories, in which the Supreme Court has recognized that 'abstention is warranted,'" and thus "the district court could not properly have exercised discretion to decline jurisdiction over the case." *Id.* (quoting *Quackenbush*, 517 U.S. at 716).

*Quackenbush* set out the "exceptional circumstances'" that may justify declining to exercise federal jurisdiction under a variety of abstention doctrines.[9] In *NOPSI*, the Supreme Court identified the three "exceptional circumstances" that authorize abstention under *Younger* and its progeny: (1) a case seeking federal intrusion into ongoing state criminal prosecutions, (2) a case seeking federal intrusion into certain "civil enforcement proceedings," and (3) a case

---

[9] In the order in which they appear in the quotation above: *Younger*; its extension to civil cases in *Huffman v. Pursue*, 420 U.S. 592 (1975); *Pullman*; *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959); *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U.S. 293 (1943); and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976).

OPPOSITION TO MOTION TO DISMISS - 14

seeking federal intrusion into pending "civil proceedings involving certain orders … uniquely in furtherance of the state court's ability to perform their judicial functions."  491 U.S. at 368.

*Brown* did not address *NOPSI* except as it was cited in another decision, which made it appear that, even though it reversed abstention, *NOPSI* did not stand for the proposition that "a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."  *Id*. Moreover, *Brown* (and thus Defendant) completely ignored the Supreme Court's application of that very proposition to reverse abstention, and further limit its reach, in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold, in accord with *NOPSI,* that they define *Younger*'s scope.").

After *Sprint*, the Ninth Circuit has expressly held that abstention under *Younger* and its progeny "is appropriate ***only*** when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. If these 'threshold elements' are met, we then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies. ***Each element must be satisfied*.**"  *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

Defendant has not cited or attempted to meet this test because she cannot even satisfy its threshold requirement.  "'*Younger* and its progeny limit injunctive relief that would interrupt 'an ongoing state judicial proceeding,'" but Defendant has "not pointed to any ongoing state proceeding with which this case would interfere and we know of none."  *Schaefer*, 2 F.4th at 324.  As the Ninth Circuit recognized in *Planet I* and *III*, and Defendant tacitly admits, Mem. at

**OPPOSITION TO MOTION TO DISMISS - 15**

7, press access to complaints when filed does not interfere with, let alone interrupt, any judicial proceedings that may occur in the underlying cases started by the filing of those complaints. [10]

Nonetheless, Defendant says this Court should follow *Brown,* which, to protect the state's "interest in running [its] own clerk's offices," 908 F.3d at 1071, applied the policies underlying *Younger* and its progeny to abstain so state court administrators can decide how to comply with the First Amendment right of access to electronic filings, Mem. 8, and state courts can decide if their administrators' policies meet federal constitutional standards. *Brown*, 908 F.3d at 1071.

Even aside from *Planet I* and *III*, the Ninth Circuit has foreclosed this approach. "We emphasize that federal courts cannot ignore *Sprint*'s strict limitations on *Younger* abstention simply because states have an undeniable interest" at stake. *Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018). "'[W]e have not the right to decline to exercise … jurisdiction simply because the rights asserted may be adjudicated in some other forum,'" and "'must enforce the mandated constraints on abstention so that such constitutional rights may be vindicated.'" *Id.*[11]

---

[10] As the Ninth Circuit recognized in *Planet I* and *III*, *O'Shea* does not change this analysis. *O'Shea* extended *Younger* from current to certain future proceedings, but only "where the relief sought would require the federal court to monitor the **substance of the individual cases** on an ongoing basis to administer its judgment," *Planet I*, 750 F.3d at 790, which is not true of CNS' claim seeking a "bright-line finding" that Defendant's current access delays are unconstitutional. *Id.* at 790-91 (citing and following *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992), which reversed the district court's dismissal and rejected *O'Shea* abstention where claim challenged constitutionality of "average court delays" caused by funding too few judges).

[11] As the Ninth Circuit recognized in *Planet I* and *III*, *Rizzo* cannot change this result. *Rizzo* extended "the principles" of *Younger* and *O'Shea* from the judicial to the executive branch, but was **not** an abstention case; rather, *Rizzo* applied those principles "to hold that an injunction requiring the Philadelphia police department to draft comprehensive internal procedures to address civilian complaints was **beyond the "'scope of federal equity power**.'" *Planet I*, 750 F.3d at 789 (quoting *Rizzo*, 423 U.S. at 378-80). The Ninth Circuit made clear the limited injunctive relief CNS seeks – an order to stop denying access to complaints until after processing – does not come close to the sort of "significant[] revising [of] internal procedures" to structurally change the operation of a department held to exceed the scope of federal equity power in *Rizzo*, 423 U.S. at 379; *Planet I*, 750 F.3d at 978-92 & n.8; *Planet III*, 947 F.3d at 591 n.4; *see Schaefer*, 429 F. Supp. 3d at 207 (refusing to abstain under *Brown*, *O'Shea* and *Rizzo*

OPPOSITION TO MOTION TO DISMISS - 16

## CONCLUSION

Neither Defendant's fundamentally flawed assertion that Courthouse News' complaint fails to state a cognizable legal theory nor its invocation of an inapplicable – and already rejected – abstention doctrine provides a basis for dismissal.  This case should proceed to the merits so that Defendant's policy can be tested under the required *Press-Enterprise II* scrutiny.

DATED this 8th day of October, 2021.

BRYAN CAVE LEIGHTON PAISNER LLP

__ */s/ Jonathan Fetterly*_____
Jonathan G. Fetterly
*Attorneys for Courthouse News Service*

---

because "*Brown* was decided on principles of equity, comity, and federalism" – and, "to the extent that *Rizzo* can be read as an abstention case, it is one which depends heavily on such principles" – but "Federalism does not require federal courts to yield matters of constitutional concern when a federal order would not excessively entangle a federal court in the states' own internal affairs"), *aff'd*, 2 F.4th 318 (4th Cir. 2021).

OPPOSITION TO MOTION TO DISMISS - 17

Keely E. Duke
ISB #6044; ked@dukeevett.com
Anne E. Henderson
ISB#10412; aeh@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Sara Omundson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | CASE NO. 1:21-CV-00305-REP |
| Plaintiff | **DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** |
| vs. | |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendants. | |

Defendant Sara Omundson, by and through the undersigned counsel of record, Duke Evett, PLLC, pursuant to Federal Rule of Civil Procedure 12(b)(6) moves this Court to dismiss the Complaint filed by Plaintiff.

DATED this 10th day of September, 2021.

DUKE EVETT, PLLC

By /s/Keely E. Duke_ __
Keely E. Duke – Of the Firm
Anne E. Henderson – Of the Firm
*Attorneys for Sara Omundson*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 10th day of September, 2021, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| Debora Kristensen Grasham | dkk@givenspursley.com |
| Katherine A. Keating | katherin.keating@bclplaw |
| Jonathan G. Fetterly | jon.fetterly@bclplaw.com |

/s/Keely E. Duke
Keely E. Duke

Keely E. Duke
ISB #6044; ked@dukevett.com
Anne E. Henderson
ISB#10412; aeh@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Sara Omundson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>    Plaintiff<br><br>vs.<br><br>SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts,<br><br>    Defendants. | CASE NO. 1:21-CV-00305-REP<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** |

Defendant Sara Omundson, by and through the undersigned counsel of record, Duke Evett, PLLC, submits this memorandum in support of her Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant Sara Omundson respectfully requests that the Motion be granted.

## I.     INTRODUCTION

The Court should grant Director Omundson's motion to dismiss because CNS has failed to state a claim for which relief can be granted. As the United States Court of Appeals for the Ninth Circuit has found, there is no First Amendment right to the immediate access to newly filed civil

complaints that CNS demands in its Complaint. CNS specifically seeks immediate, pre-processing access to newly filed civil complaints. CNS has no legal basis for its requested relief.

In addition, CNS asks the Court to issue declaratory and injunctive relief not only as to Director Omundson, but as to her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control in Idaho's state judicial system. This request asks a federal district court to exceed the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."[1] If the Court grants the relief requested, it would be imposing a significant and meaningful limit on Idaho's state courts, including the independent duties conferred on the state clerks to manage state responsibilities and affairs, which are conferred by the Idaho State Constitution, state statutes, and Idaho Supreme Court rules. As such, the Court should also find that CNS's request for federal adjudication calls for abstention.

## II.    FACTUAL BACKGROUND

Court House News Service ("CNS") is a member of the press. (Compl. ¶ 11.) It has sued Sara Omundson, in her official capacity as Administrative Director of the Idaho Courts. (Compl. ¶ 12.) CNS seeks relief against Director Omundson and her agents, assistants, successors, employees, and all people acting in cooperation with her or at her direction or control. (Compl. ¶ 15.) In the Complaint, CNS asks the Court to find certain policies and processes of the Idaho state courts unconstitutional under the First and Fourteenth Amendments to the United States Constitution. (*See* Compl. ¶¶ 9; 12-13.)

CNS asks the court to issue declaratory relief finding Director Omundson's "policy and practice of denying access to complaints until after administrative processing are

---

[1]      *Rizzo v. Goode*, 423 U.S. 362, 378-79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 2**

unconstitutional[.]" (Compl. at 15.) CNS also asks the Court to issue a preliminary and permanent injunction against Director Omundson "and her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control, prohibiting her from continuing her policies and practices that deny Courthouse News timely access to new non-confidential civil complaints, including, inter alia, her policy and practice of denying access to complaints until after administrative processing." *Id*.

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017).

### IV.    ARGUMENT

**A.    CNS has failed to state a claim for which relief can be granted because, as the United States Court of Appeals for the Ninth Circuit has found, there is no First Amendment right to the immediate access to newly filed civil complaints that CNS demands in its Complaint.**

CNS alleges that it has a First Amendment right of access to civil complaints that attaches upon Idaho court's receipt of a complaint and as such, Idaho's process of performing a ministerial review of the complaints before filing them violates that right to immediate access. These

allegations fail to state a claim for relief which can be granted because Idaho's "no access before process rule" as described by CNS, is not prohibited by the First Amendment, or the pertaining rule of law set forth by the Ninth Circuit. *See Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*") and *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*") (together "*Planet*").

Although the press and the public have a "qualified" First Amendment right of access to nonconfidential civil complaints that attaches when the complaint is filed, the "right does not entitle the press to immediate access to those complaints." *Planet III* at 585.  The Ninth Circuit explained that "a necessary corollary of the right to access is a right to timely access," and also that the right does not entitle the press to "immediate, pre-processing access to newly filed complaints." *Id.*

As the Ninth Circuit observed:

Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press.

*Id.* at 596.

Provided the contours of the First Amendment, and the precedent set by the Ninth Circuit, CNS requests relief that is not supported by a cognizable legal theory and has thus failed to state a claim for which relief can be granted.

**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 4**

**B.**     **The Court should decline to exercise jurisdiction in this case due to the important interests of comity and federalism raised by the nature of CNS's claim and the scope of the relief requested.**

"Federal courts have a strict, but not absolute duty to exercise the jurisdiction that is conferred upon them by Congress." *Courthouse News Serv. v. Gilmer*, No. 4:21CV286 HEA, 2021 WL 2438914, at *5 (E.D. Mo. June 15, 2021) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). "[F]ederal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial administration.'" 517 U.S. at 716 (internal quotations and citations omitted).

There is a split in the circuits on the issue of abstention raised by similar claims to those raised in this matter. The Ninth Circuit reversed a California district court's decision to abstain under the *Pullman* and *O'Shea* doctrines. *Planet I*, 750 F.3d 776; *Planet III*, 947 F.3d 581. In the present case, the requests for relief, underpinned by the alleged facts, are sufficiently distinctive from those in *Planet* to warrant this Court's independent consideration of whether abstention is appropriate. As the Ninth Circuit has instructed:

> Using the techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced. Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

*Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001).

In *Planet*, CNS sued the state court clerk of Ventura County, California, for denying pre-processing access to newly filed civil complaints. The district court granted Ventura County's motion to dismiss on abstention grounds, finding abstention appropriate under the *Pullman* and

*O'Shea* doctrines. The Ninth Circuit reversed, holding that because CNS was asserting its First Amendment right of timely access to public documents, *Pullman* abstention was inappropriate. The Ninth Circuit also found, that in remedying Ventura County's denial of the First Amendment right to timely access to newly filed complaints, it would not risk "an ongoing federal audit" of state judicial affairs.

There are material differences between the case before this Court and *Planet* that require the Court's abstention from adjudication of this dispute. Here, CNS has not narrowed its allegations to one Idaho county as it did in *Planet*. Instead, CNS asks the federal district court to issue declaratory and injunctive relief to apply across all of Idaho's state judicial districts, and to each and every alleged agent, assistant, and employee of Director Omundson. The requested relief would also apply in the future to Director Omundson's successors, and to all people acting in concert or cooperation with her, or at her direction or under her control—which could include contractors and other third parties. Notably, Director Omundson does not have the authority or control alleged by CNS in its Complaint. Idaho's county clerks are elected officials, who have independent duties and rights conferred by the Constitution of the State of Idaho, state statutes, and Idaho Supreme Court rules.[2] These issues aside, assuming only for purposes of this Motion that Ms. Omundson has the control and authority alleged by CNS –which she does not– the Court should decline to exercise its jurisdiction.

CNS has also suggested Idaho should obtain additional software with third-party vendor, Tyler Technologies, Inc., to enable CNS immediate pre-processing access to newly filed civil

---

[2] According to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record while keeping this motion within the boundaries of a motion to dismiss.

*See e.g.* Constitution of the State of Idaho, Article 5, Section 16; Idaho Code §§ 1-1001; 31-2001; Idaho Court Administrative Rule 31; Idaho Rules for Electronic Filing and Service.

MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 6

complaints. (*See* Compl. ¶¶ 3-4.) This request is materially different from the scenario in *Planet*, where the solution to the alleged delay in access was arrived at by Ventura County itself and was available to the County without additional staffing or third-party contracting expenses. *See Planet III* at 587. Here, CNS seemingly asks the Court to direct Idaho to make a contracting decision with a for profit business entity for CNS's benefit. This suggestion, if adopted, would plainly disregard the comity between the states and the federal government.

Considering the scope and nature of the relief CNS requests, the Court should decline to exercise jurisdiction based on the principles of federalism most specifically expressed in the *Younger* doctrine, as extended by *O'Shea* and *Rizzo*. *See e.g. Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); and *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 607–08, 46 L. Ed. 2d 561 (1976).

In general, "Younger abstention ordinarily requires federal courts to refrain from exercising jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *Courthouse News Service v. Brown*, 908 F.3d 1063 at 1071 (7th Cir. 2018) (internal citations omitted). Though formed in the criminal context, the Supreme Court extended the *Younger* doctrine to civil proceedings. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–04, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). While only directly applicable in the presence of ongoing state court or administrative proceedings, *Younger's* principle that federal courts should not exercise jurisdiction when that exercise would disregard the comity between the states and the federal government has been extended through *Rizzo*.

In *Rizzo*, the Supreme Court extended *Younger's* principles to limit federal court review of city officials' executive actions. 423 U.S. at 366, 96 S.Ct. 598. "When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, [its] case must

**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 7**

contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378–79, 96 S. Ct. 598, 607–08, 46 L. Ed. 2d 561 (1976) (internal citations omitted).

In the face of well-established principles of equity, comity, and federalism, it is not appropriate for the federal court to fashion the broad-scoped relief CNS requests here. As the Seventh Circuit noted in *Brown*, abstention is "particularly appropriate" as courts "continue to transition to electronic filing and, like many courts across the country, are working through the associated implementation challenges and resource limitations." 908 F.3d at 1074. Necessarily implicated in CNS's factual allegations in the Complaint is the time period of alleged delays in access, May and June of 2021, a time when Idaho's courts were grappling with the administrative, staffing, and practical every day impacts of a world-wide pandemic. Provided the this, the Court should exercise its discretion and abstain from adjudicating this matter.

## V.  CONCLUSION

For the foregoing reasons, Defendant Sara Omundson respectfully requests that the Court grant her Motion to Dismiss.

DATED this 10th day of September, 2021.

DUKE EVETT, PLLC


By _/s/Keely E. Duke_____
    Keely E. Duke – Of the Firm
    Anne E. Henderson – Of the Firm
    *Attorneys for Sara Omundson*

**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 8**

## CERTIFICATE OF SERVICE

I hereby certify that on __day of September, 2021, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

Debora Kristensen Grasham        dkk@givenspursley.com
Katherine A. Keating            katherin.keating@bclplaw
Jonathan G. Fetterly            jon.fetterly@bclplaw.com


/s/Keely E. Duke
Keely E. Duke

**MEMORANDUM IN SUPPORT OF DEFENDANT SARA OMUNDSON'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) - 9**

Debora Kristensen Grasham (ISB # 5337)
dkk@givenspursley.com
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300

Katherine A. Keating (*Pro Hac Vice pending*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (*Pro Hac Vice pending*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

*Attorneys for Courthouse News Service*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, | |
| Defendant. | |

Plaintiff, Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against Defendant Sara Omundson, in her official capacity as Administrative Director of Idaho Courts ("Defendant"):

**COMPLAINT - 1**

## INTRODUCTION & BACKGROUND

1.     Since time beyond memory, the press has reviewed new civil complaints when they crossed the intake counter in American courts. During the transition from paper to electronic court records, federal courts and many state courts kept that tradition in place. But a group of state court clerks and administrators abandoned it. They withheld new electronically filed ("e-filed") complaints until entry into the docket, delaying access and damaging the news. That group includes the Administrative Office of Idaho Courts, which oversees and maintains the statewide e-filing and case management systems.

2.     The District Courts for the State of Idaho ("Idaho Courts") moved from paper to electronic filing in 2016, and since that time, Courthouse News has been asking Idaho state court officials to restore traditional access to new civil complaints, *i.e.*, access upon receipt and without the delays caused by administrative processing. Courthouse News recently renewed this request, and Defendant denied it.

3.     The means for providing traditional, on-receipt access in an electronic environment exists in the form of a "Press Review Queue" provided by the vendor from whom the Idaho Courts license their e-filing software, Tyler Technologies, Inc. ("Tyler"). Tyler has installed Press Review Queues for other court clients who use the same Tyler "File & Serve" software used by the Idaho Courts. The Press Review Queue provides news reporters with traditional access to new e-filed complaints when they are received by the court, while they sit in an electronic queue waiting for manual docket entry and processing by court staff. It works very much like the box or cart at the clerk's intake counter that historically held new paper-filed complaints. The Press Review Queue software is readily available to any court clerk or administrator who requests it from Tyler.

**COMPLAINT - 2**

4.      Defendant could use the Press Review Queue as a means of providing access to new nonconfidential civil complaints e-filed with Idaho Courts, but Defendant instead enforces a no-access-before-processing policy, which keeps the existence of new lawsuits secret until Idaho Courts choose to disclose them.

5.      As a result of this policy, new e-filed civil complaints are regularly withheld from the press and public until after they have been processed by court staff, resulting in delayed access. Courthouse News tracked approximately 960 new civil complaints e-filed with the Idaho Courts in May and June 2021. Courthouse News was only able to access approximately *46%* of the new e-filed complaints on the day they were filed, with access to approximately *39%* of the complaints delayed by one court day, and access to approximately *14%* of them delayed by two court days or longer.

6.      On June 14, 2021, Courthouse News sent a letter to Defendant requesting that she stop withholding access to new civil complains until after processing and that the Idaho Courts provide access to new e-filed complaints though a Press Review Queue. A copy of this letter is attached as **Exhibit 1**.

7.      On July 6, 2021, Defendant sent a letter to Courthouse News in which she stated she had reviewed the courts' records and "did not find a statewide or Ada County delay that was currently ongoing and persistent." Defendant concluded by stating: "At this time, I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing by the court clerks' offices." A copy of this letter is attached as **Exhibit 2**.

8.      Courthouse News brings this action under the First Amendment of the United States Constitution to challenge Defendant's policy and practice of withholding public and press

**COMPLAINT - 3**

access to new civil complaints e-filed with Idaho Courts, which operate under the supervision
and control of the office of the Administrative Director of Idaho Courts.

### JURISDICTION AND VENUE

9. Courthouse News' claims arise under the First and Fourteenth Amendments to the
U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.* This Court has subject
matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201
(declaratory relief). Defendant is subject to personal jurisdiction in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) and in this Division,
because a substantial part of the events or omissions giving rise to Courthouse News' claims
occurred in this District and in this Division. The First Amendment violations giving rise to this
action took place throughout the state of Idaho at each of the Idaho Courts.

### PARTIES

11. Courthouse News is a nationwide news service founded almost 30 years ago out
of a belief that a great deal of news about civil litigation went unreported by traditional news
media, a trend that has only increased in the last decade. Courthouse News now employs
approximately 240 people, most of them editors and reporters, covering state and federal trial
and appellate courts in all 50 states in the United States.

12. Defendant is the Administrative Director of Idaho Courts and is named as a
defendant herein in that official capacity. Defendant, in her official capacity, is responsible for,
among other things, the administration of the statewide e-filing and case management systems
used by the Idaho Courts and public access to court records through those systems, including
through any systems licensed from or otherwise provided by third parties, such as Tyler.

13. Acting in her official capacity, Defendant and those acting under her direction and
supervision are directly involved with and/or responsible for the delays in access to new

COMPLAINT - 4

complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of Defendant's office.

14.     Defendant's actions, as alleged in this Complaint, are under the color of Idaho law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

15.     Defendant is sued in her official capacity only. Courthouse News seeks relief against Defendant as well as her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

## FACTS

### Courthouse News' News Reporting Activities

16.     Courthouse News offers its readers a variety of publications. Courthouse News publishes a free website, www.courthousenews.com, featuring news reports and commentary read by roughly 30,000 people every weekday. The website functions like a daily newspaper, featuring staff-written articles from across the nation, posted throughout each day and rotated off the page on a 24-hour news cycle. On a subscription basis, Courthouse News publishes the *Daily Brief* covering opinions from all state and federal courts as well as significant rulings from federal district courts.  Also on a subscription basis, Courthouse News publishes *New Litigation Reports* containing original, staff-written summaries of significant new civil complaints, sent to subscribers via e-mail each evening.

17.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, such as: *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The*

COMPLAINT - 5

*Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report,* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

      18.    Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *Austin American-Statesman*, *The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review Journal, Los Angeles Business Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune*, *The San Jose Mercury News, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company, and Warner Bros.

      19.    The *New Litigation Report* published by Courthouse News that covers the Idaho courts is titled *The Big Sky Report,* reporting on courts in Montana, Wyoming, and Idaho. This publication covers civil complaints, focusing on actions brought against business institutions and public entities. Courthouse News' reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the

individual is well-known or otherwise notable. The *Big Sky Report* covers all district courts in Idaho every court day, and it is emailed to subscribers every evening.

20.     Courthouse News does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential.

21.     The *Big Sky Report* covers civil actions filed in United States District Court for the District of Idaho and in all state district courts in Idaho. It has 51 subscribing institutions that include most of the state's major law firms.

22.     To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News' reporters review all the complaints filed with their assigned court to determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up the reporting on factual and legal controversies for subscribers and readers.

23.     Courthouse News has reported on new civil complaints filed in Idaho since at least 2003, when it began covering the United States District Court for the District of Idaho. Courthouse News started covering the Idaho Courts in 2008, when it began covering the Ada County District Court. Until 2016, Courthouse News' reporters were able to review new civil complaints filed in Ada County District Court on the day they crossed the intake counter.

24.     When Idaho Courts moved from paper to electronic filing in 2016, under the supervision and control of the office of the Administrative Director of Idaho Courts, Courthouse News requested a Press Review Queue (referred to as an "electronic in-box" at that time) similar to those operating in Nevada and Georgia, employing the same Tyler e-filing software that is

COMPLAINT - 7

employed by the Idaho Courts. Those requests never bore fruit, and Idaho Courts continue to withhold new e-filings past the point of filing until they have been processed, resulting in substantial and ongoing delays in access.

25.     Courthouse News currently covers all of the Idaho Courts. In order to view and report on new complaints e-filed at Idaho Courts, a Courthouse News' reporter visits a local courthouse on a daily basis and uses a public access terminal through which new complaints are made available to the press and public for viewing by the Idaho Courts once they are processed. The access terminals are available to the press and public only during courthouse business hours, which means access to new civil complaints cuts off each day at 5:00 p.m. when the court closes.

26.     As noted above, prior to commencing this action, Courthouse News tracked and compiled access data for approximately 960 new civil complaints e-filed with the Idaho Courts during the months of May and June 2021, noting delays between when new complaints were received by the Court for filing and when a Courthouse News' reporter was able to see them. Courthouse News was able to access only approximately *46%* of the new e-filed complaints on the day they were filed, with access to approximately *39%* of the complaints delayed by one court day, and access to approximately *14%* of them delayed by two court days or longer.

27.     Examples of more extreme delays were also common during this period. For instance, on June 8, 2021, a group of individual plaintiffs e-filed a new complaint for declaratory and injunctive relief against Kootenai County and the Kootenai County Board of Commissioners, in their official capacities. The plaintiffs asserted claims for violations of due process under both the U.S. Constitution and Idaho law, alleging the defendants enacted an unprecedented new law that made a no-wake zone for the entirety of the Spokane River, Fernan Lake, and Lower Twin Lake without providing sufficient public notice, and contrary to

**COMPLAINT - 8**

recommendations from other government bodies. This newsworthy complaint, which was e-filed in the District Court for the First Judicial District for the County of Kootenai and assigned Case Number CV28-21-4053, was withheld from the press and public for **_at least 12 court days_** before it was processed and made available to the press and public.

### A First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them

28.    A right of access grounded in the First Amendment applies to non-confidential civil complaints.

29.    The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy constitutional scrutiny. *See, e.g., Courthouse News Service v. Planet,* 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

30.    In *Planet III*, the Ninth Circuit applied this two-step process to a California Superior Court clerk's policy and practice of withholding access to new civil complaints until after administrative processing. Applying the "experience" and "logic" test of *Press-Enterprise II*, the Ninth Circuit addressed and conclusively resolved the first step by holding that the press has a qualified right of timely access to newly-filed civil complaints that attaches when the complaint is filed, *i.e.*, when the complaint is received by the court. *Id.* at 585, 588, 591.

31.    Turning to the second step, *Planet III* determined that the clerk had failed to "demonstrate … that there is a 'substantial probability' that its [asserted] interest[s]" to support

**COMPLAINT - 9**

withholding access to new civil complaints until after administrative processing "would be impaired by immediate access, and … that no reasonable alternatives exist to 'adequately protect' that government interest." *Id*. at 596 (citing and quoting *Press-Enterprise II*, 478 U.S. at 14). The clerk's policy of withholding access to new civil complaints until after administrative processing thus failed both prongs of the *Press-Enterprise II* test and violated Courthouse News' First Amendment right of timely access to new civil complaints. *See id*. at 596-600.

32.     On remand following *Planet III*, the District Court in the *Planet* case entered an Amended Judgment for Declaratory and Injunctive Relief reflecting the holding from *Planet III* that a qualified First Amendment right of timely access attaches "when new complaints are received by a court, rather than after they are 'processed.'" *Courthouse News Service v. Planet*, 2021 WL 1605216, *1 (C.D. Cal. 2021) ("*Planet* Amended Judgment").

### Defendant Cannot Justify Her Practice of Withholding Access to New Civil Complaints Until After Administrative Processing

33.     Where, as here, the First Amendment right of access applies, it attaches upon receipt, and any delays in access must be justified under constitutional scrutiny.

34.     Turning back to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular process or document, access may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Here, Defendant's policies do not preserve higher values and, even if they do, they are not narrowly tailored.

35.     Since Defendant's adoption of mandatory e-filing, access delays in Idaho Courts have been commonplace and continuous. Unlike most federal district courts and many state

COMPLAINT - 10

courts, the Idaho Courts do not make newly-filed complaints available upon receipt by the court. Instead, they withhold the complaints until after court staff have processed them. As a direct result, there are delays between the e-filing of a new complaint and when it is made available to the press and the public.

36.     These delays are unnecessary and easily avoidable, as demonstrated by the timely access provided by federal and state courts across the country using alternatives that are readily available to Defendant and the Idaho Courts.

37.     Historically, before e-filing, reporters covering the courts could review and report on newly-filed, paper civil complaints on the day of filing by looking at them at the courthouse, typically at the end of each court day. As was the case at the Ada County District Court, this access generally occurred via a media box, bucket, or cart available to the press regardless of whether the complaints had been docketed (or "processed" – the term now often used by courts).

38.     E-filing makes it even easier for courts to provide timely access to new complaints. Instead of basic intake work being done by clerks at an intake counter, that work is now done by e-filing software, which filers use to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can sort new, non-confidential complaints and automatically make them available to the press and public contemporaneously upon their receipt by the court.

39.     The vast majority of federal courts and many state courts configure their e-filing and case management systems to automatically allow access to non-confidential civil complaints upon their receipt by the court. State courts that provide on-receipt access include courts in Hawaii, California, Washington, Utah, Alabama, Georgia, Connecticut, New York, and soon in

Arizona. Those e-filing systems vary between public and private ownership of the software and between those that automatically enter new complaints into the docket and those that require manual "processing" into the docket but allow press access to the processing queue. The e-filing systems that provide this access have been developed by ten different private and public software creators. They share one critical attribute: they all provide access on receipt.

40.     Within that group of e-filing systems, one has been developed and licensed by Texas-based Tyler. Tyler has developed and installed a Press Review Queue program in three states: California, Nevada, and Georgia. The Press Review Queue allows reporters to review the new public complaints as they flow into the clerk's processing queue. The first Press Review Queue of which Courthouse News is aware was put in place in or about 2010 in Nevada (Clark County Superior Court in Las Vegas) by a software company called Wiznet that was soon after acquired by Tyler, which in a sense inherited the program. Tyler then touted the Press Review Queue in its early literature and installed it upon clerk request by courts in Georgia and California, including superior courts in the California counties of Fresno, Kern, Santa Clara, Monterey, and Santa Barbara. Clark County Superior Court in Las Vegas – still relying on Tyler – now automatically sends its new complaints into the public docket upon receipt.

41.     In 2016, when the Idaho Courts moved to e-filing through software licensed from Tyler, Courthouse News asked then Ada County District Clerk, Christopher Rich, for a Press Review Queue. A copy of this letter is attached as **Exhibit 3**.

42.     In response, Mr. Rich wrote to Interim Administrative Director of Idaho Courts, Justice Linda Copple Trout, explaining that the Ada County court provided Courthouse News with "same day access to the paper record," and that Courthouse News "is [now] seeking same day access to the digital records […] via a public terminal that would have access to a queue

specifically designed for this purpose." Mr. Rich concluded his letter by referring Courthouse News' request to the office of the Administrative Director of Courts, stating: "As Clerk, I am not in a position to assist [Courthouse News]. Hence this introduction to the parties that can resolve the matter." A copy of this letter is attached as **Exhibit 4**.

43.     Through a series of communications that stretched into 2017, Courthouse News discussed its request with legal counsel for the Idaho Supreme Court. These communications did not result in a clear "yes" or "no" to Courthouse News' request for pre-processing access to new e-filed civil complaints through a Press Review Queue.

44.     As noted above, Courthouse News renewed its request for pre-processing access to new e-filed civil complaints through a Press Review Queue in June 2021. Defendant denied that request. *See* Exhibits 1 and 2.

45.     Defendant's office has not provided access to a Press Review Queue despite Courthouse News' requests. Meanwhile, as noted above, Courthouse News continues to experience delays in access to new e-filed civil complaints as a result of Defendant's policy and practice of withholding access to them until after processing.

46.     Defendant cannot satisfy her burden of justifying the delays in access to new e-filed complaints under constitutional scrutiny. Defendant cannot identify a compelling governmental interest justifying her policy and practice of withholding access to non-confidential civil complaints until after processing. Defendant also cannot establish that her policy and practice is narrowly tailored because her office already possesses or has access to one of many readily-available alternatives that is capable of meeting courts' needs while at the same time providing timely access to new e-filed complaints, *e.g.*, the Press Review Queue.

COMPLAINT - 13

## COUNT ONE
### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

47. Courthouse News incorporates the allegations of Paragraphs 1-46 herein.

48. Defendant's actions under color of state law, including, without limitation, her policy and practice of withholding newly filed civil complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil complaints upon receipt for filing, deprives Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

49. The presumption of access to new civil complaints, which arises when those complaints are filed at Idaho Courts, may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests. *Planet III*, 947 F.3d at 594-95 (citing *Press-Enterprise II*). For Defendant's no-access-before-processing policy to "survive *Press-Enterprise II*'s two-prong balancing test" (*i.e.*, "rigorous" scrutiny), Defendant "must demonstrate that there is a 'substantial probability' that its [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet III*, 947 F.3d at 596. Defendant cannot satisfy this test.

50. Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions and will suffer irreparable harm as a result of Defendant's violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a preliminary and permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

(107 of 167), Page 107 of 167
Case: 24-6697, 03/06/2025, DktEntry: 10.13, Page 107 of 167
Case 1:21-cv-00305-REP Document 1 Filed 07/23/21 Page 15 of 60

## **PRAYER FOR RELIEF**

WHEREFORE, Courthouse News prays for judgment against Defendant as follows:

1.  A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints, including, *inter alia*, her policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

2.  A preliminary and permanent injunction against Defendant, including her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control, prohibiting her from continuing her policies and practices that deny Courthouse News timely access to new non-confidential civil complaints, including, *inter alia*, her policy and practice of denying access to complaints until after administrative processing;

3.  An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.  All other relief the Court deems just and proper.

DATED this 23rd day of July, 2021.

GIVENS PURSLEY LLP

   */s/ Debora K. Grasham*
Debora Kristensen Grasham
*Attorneys for Courthouse News Service*

COMPLAINT - 15

**EXHIBIT 1**

# EXHIBIT 1

# GIVENS PURSLEY LLP
## Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora Kristensen Grasham
208 388 1287
dkk@givenspursley.com

| | | |
|---|---|---|
| Gary G. Allen | Kersti H. Kennedy | Samuel F. Parry |
| Charlie S. Baser | Neal A. Koskella | Randall A. Peterman |
| Christopher J. Beeson | Michael P. Lawrence | Blake W. Ringer |
| Jason J. Blakley | Franklin G. Lee | Michael O. Roe |
| Clint R. Bolinder | David R. Lombardi | Cameron D. Warr |
| Jeff W. Bower | Lars E. Lundberg | Robert B. White |
| Preston N. Carter | Kimberly D. Maloney | Michael V. Woodhouse |
| Jeremy C. Chou | Kenneth R. McClure | |
| Michael C. Creamer | Kelly Greene McConnell | |
| Amber N. Dina | Alex P. McLaughlin | William C. Cole (Of Counsel) |
| Bradley J. Dixon | Melodie A. McQuade | |
| Thomas E. Dvorak | Christopher H. Meyer | |
| Debora Kristensen Grasham | L. Edward Miller | Kenneth L. Pursley (1940-2015) |
| Donald Z. Gray | Judson B. Montgomery | James A. McClure (1924-2011) |
| Alex J. Gross | Deborah E. Nelson | Raymond D. Givens (1917-2008) |
| Brian J. Holleran | W. Hugh O'Riordan, LL.M. | |

June 14, 2021

**VIA EMAIL:** sthomas@idcourts.net

Sara Thomas
Administrative Director of the Courts
Idaho Administrative Office of the Courts
451 West State Street
P.O. Box 83720
Boise, ID 83720-0101

Re:    *Access to Newly Filed Civil Complaints in Idaho State Courts*

Dear Ms. Thomas:

I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. I am writing on behalf of CNS to express its continuing concerns with delays in access to newly filed civil complaints and to respectfully request that Idaho's state courts employ an electronic media inbox in order to provide CNS (and the public) with timely access to new civil complaints.

As you may recall, I made a similar request on behalf of CNS in 2016, when the Idaho state courts' adoption of mandatory e-filing resulted in delayed access to new civil complaints in the Fourth Judicial District Court in and for Ada County ("Ada County"). Prior to the adoption of e-filing, Ada County provided CNS with same day access to new paper-filed civil complaints. This changed, however, with the move to e-filing. New e-filed civil complaints have been, and continue to be, withheld from the press and public until after they are processed by court staff, resulting in delayed access. Enclosed is my correspondence with Ada County Court Clerk Christopher Rich from 2016, which provides additional background.

Sara Thomas
June 14, 2021
Page 2

This exchange of letters in 2016 led to constructive conversations with the Administrator's Office concerning CNS's request for an electronic media inbox. Unfortunately, these conversations stalled in early 2017. Among other reasons, we understand the Administrator's Office was monitoring the *CNS v. Planet* case – an action filed in federal court by CNS against a California state court clerk based on First Amendment violations resulting from the clerk's policy and practice of withholding access to new civil complaints until after they were processed. That case is now resolved.

In January 2020, the Ninth Circuit affirmed summary judgment for CNS in the *Planet* case, holding that a First Amendment right of action attaches to new complaints when they are filed, and that the clerk's policy and practice of withholding new complaints until after administrative processing violated CNS's First Amendment right of access. *CNS v. Planet*, 947 F.3d 581, 596-98 (9th Cir. 2020).

In January 2021, the district court in the *Planet* case entered an amended judgment for declaratory relief and permanent injunction, declaring that the First Amendment right of access attaches on receipt regardless of whether courts use paper filing or e-filing systems and permanently enjoining the clerk from refusing to make newly filed complaints available until after they are processed. *CNS v. Planet*, 2021 WL 1605216 (C.D. Cal. 2021).

With the law in this Circuit settled, we renew CNS's request for a media inbox to provide timely access to new civil complaints throughout Idaho without the delays associated with administrative processing.

A media inbox is a virtual "bin" where all new civil public court records are available for review by the press when they are received by the court, before internal/administrative processing. State courts provide such access through a variety of e-filing systems. Relevant to Idaho, Tyler Technologies provides a media inbox (referred to as a press review queue) to numerous state courts through its Odyssey e-filing system.

For reference, Tyler has installed media inboxes in numerous courts throughout California (e.g., Fresno, Kern, Monterey, Santa Barbara and Santa Clara Counties), as well as the Las Vegas court system and six state courts in the Atlanta metro area. The service requests used by courts to request a media inbox from Tyler simply require the clerk to fill out a form identifying the public case designations that will be available in the inbox. Tyler can put the queue in place within a month, according to Tyler representatives.[1]

---

[1] Other state courts across the nation similarly provide pre-processing access to new e-filed complaints through their e-filing systems, including through their own versions of media inboxes and through systems providing on-receipt public access similar to the access provided by federal courts through the PACER system. While there are variations in how state courts go about providing pre-processing access to new complaints, the timing of it does not vary – it is on receipt, when the new filings are fresh and newsworthy.

Sara Thomas
June 14, 2021
Page 3

Installation of a media inbox in Idaho would remedy the problem of delayed access to new complaints resulting from the Idaho courts' current policy of withholding access to those complaints until they are processed. It would also allow the press to report on new civil filings when they are fresh, which is when they are news. CNS is asking for access only to those civil filings that are in public case designations. It is not asking to see confidential or sealed cases, and it does not see those non-public cases in other courts that provide access to new complaints through media inboxes provided by Tyler.

Delays in access to new civil complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and persistent. The Administrator's Office can remedy this problem by making a simple request to Tyler that it implement a media inbox ("press review queue"). Accordingly, we respectfully ask that the Administrator's Office instruct Tyler to provide a media inbox in Idaho.

Given the ease with which the delays in access in Idaho can be resolved coupled with CNS's multi-year experience in dealing with such delays, CNS respectfully requests that the Administrator's Office let us know by **July 1, 2021**, whether it will agree to provide this instruction to Tyler and agree to provide pre-processing access to new e-filed civil complaints in all of Idaho's state courts.

We appreciate your timely attention to this matter.  Please feel free to contact me if you have any questions.

Sincerely,

Debora K. Grasham

DKG/SW
Enclosure
cc:    Jason Spillman, Legal Counsel, Idaho Supreme Court (*via email:* jspillman@idcourts.net)
15708437 [10429.2]

# GIVENS PURSLEY LLP
Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
208-388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Don E. Knickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller
Patrick J. Miller

Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Randall A. Peterman
Michael O. Roe
Jamie Caplan Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

December 28, 2016

Michael Henderson
Legal Counsel, Idaho Supreme Court
P.O. Box 83720
Boise, ID 83720-0101

Re:     Media Access To E-Filed Civil Complaints

Dear Michael:

On behalf of Courthouse News Service ("CNS"), I write to follow up on CNS's concerns about delays in access to newly e-filed civil complaints in the e-filing environment. Although we have communicated several times about this issue since I brought it to your attention in May 2016, the solution CNS has suggested for resolving this anticipated problem – *i.e.,* the adoption of an electronic in-box, through which the media can see new e-filed complaints even if clerks have not yet completed their administrative tasks associated with a complaint's intake – has not been adopted. Meanwhile, the delays in access to e-filed complaints that CNS anticipated are in fact occurring in Ada County, where e-filing is now mandatory and the majority of new civil complaints cannot be seen for at least one court day, and often longer, while they are being administratively processed.

As a reminder, CNS is a nationwide news service that focuses on civil litigation in state and federal courts, from the filing of a new civil action on through to appellate arguments and rulings. CNS offers a variety of publications, including but not limited to its original, staff-written new litigation reports for subscribers. CNS also publishes a freely available website, www.courthousenews.com, which features staff-written articles and reaches roughly one million readers per month. CNS's subscribers include most of the nation's major law firms. Other media organizations also subscribe, from the *Los Angeles Times* in the West to *The Wall Street Journal* in the East, putting CNS in the position of a nationwide pool reporter.

On April 28, 2016, I wrote to Ada County Clerk Chris Rich to share with him CNS's concerns about the delays in access to newly filed civil complaints that tend to accompany the

Michael Henderson
December 28, 2016
Page 2

transition to e-filing unless steps are taken to ensure the press can see the day's complaints irrespective of whether administrative processing has been completed. Mr. Rich responded by letter dated May 6, referring my request to the Administrative Director of Courts and the Idaho Supreme Court's Chief Information Officer, indicating: "[t]he ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court." Copies of both letters are enclosed for your reference. Following an initial discussion with you in mid-May and several follow up emails, I provided you with a memorandum that gave further detail on the electronic in-box solution currently in use at other courts, including state courts that use Tyler's Odyssey case management and e-filing systems. A copy of that memorandum is also enclosed.

To date, we have not been advised as to whether the solution we have proposed to ensure the press has timely access to civil complaints in the e-filing environment is being considered. Meanwhile, the delays in access to e-filed complaints that CNS anticipated are in fact occurring in Ada County, where e-filing is now mandatory and the majority of new civil complaints cannot be seen for at least one court day, and often longer, while they are being administratively processed.[1]

These delays are not surprising. As we indicated in the enclosed memorandum, any number of factors, such as staff illnesses or vacations, holidays, or even something as simple as a staff birthday celebration may prevent clerks from completing the administrative tasks associated with the intake of a new complaint on the day those complaints are filed for one or more court days, resulting in delays in access. But as several courts have found, there is a First Amendment right of press and public access to complaints that is not contingent on those complaints having first been administratively processed, and even short delays in access to court records are effectively denials of access that implicate the constitutional right of access.

Courts have expressly ruled that the First Amendment provides a presumptive right of access to complaints, which "arises when a complaint is received by a court, rather than after it is 'processed.'" *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *13 (C.D. Cal. May 26, 2016) (order on cross-motions for summary judgment); *Courthouse News Serv. v. Planet*, 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016) (permanently enjoining California court clerk "from refusing to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed."); *accord Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *2-4, 11 (S.D. Tex. July 20, 2009) ("*Jackson*") (entering preliminary injunction where Houston court clerk's practice of delaying access to new civil petitions until after the completion of clerical duties "is effectively an access denial and is, therefore, unconstitutional" because "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.") (quoting *Grove Fresh Distribs., Inc. v.*

---

[1] Under § (e)1.A. of the Idaho Supreme Court's rule on electronic filing and service, a complaint is deemed "filed" when it is submitted electronically to the court and the electronic filing system receives the document.

Michael Henderson
December 28, 2016
Page 3

*Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *see also Courthouse News Serv. v. Tingling*, U.S. Dist. Court Case No. 16-cv-08742 (ER) (S.D.N.Y. Dec. 16, 2016) (granting CNS's motion to preliminarily enjoin New York Supreme clerk "from denying access to newly filed civil complaints until after clerical processing" and to require the clerk to provide access to new complaints "in a timely manner upon receipt").

    The principle that administrative processing is not a precondition to access applies equally in the paper and e-filing environment. In *Jackson*, the Houston clerk had adopted permissive e-filing and the court's ruling applied to both paper and e-filed complaints. *Jackson*, 2009 WL 2163609, at *2, 5. In *Planet*, the clerk's office had not yet moved to e-filing but had plans to do so, and as such the California federal district court that issued an injunction prohibiting the clerk from conditioning access on processing made clear that access upon receipt arises "regardless of whether such complaints are filed in paper form or e-filed." *Courthouse News Serv. v. Planet*, 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016) (permanently enjoining California court clerk "from refusing to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed"). And the *Tingling* action was prompted by delays in access to new complaints that had not been a problem in the paper-filing environment but rather arose after a switch to e-filing and a practice by the clerk of not permitting access to e-filed complaints until after administrative processing.

    These cases are consistent with decisions by many other courts finding that delays in access to court documents, even short ones, are effectively access denials that implicate the First Amendment. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (delaying access to court filing, even for "as little as a day," "delays access to news, and delay burdens the First Amendment"); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (district court judge's withholding court records from public access for the first 48 hours after submission to determine if sealing was appropriate was "a total restraint on the public's first amendment right of access even though the restraint is limited in time" and was … "unconstitutional unless the strict test for denying access has been satisfied."); *accord, e.g., Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents, we … emphasize that the public and press generally have a contemporaneous right of access to court documents … when the right applies"); *Grove Fresh*, 24 F.3d at 897 ("[i]n light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous").

    As CNS has previously noted, it is relatively simple and very feasible for court clerks to provide timely access to newly e-filed civil complaints on receipt and prior to processing, as is currently being done by individual courts in Nevada, Georgia, Utah and Connecticut, statewide in Alabama, and in the vast majority of federal district courts. The ease with which this electronic in-box can be established is illustrated by the fact that Tyler, the e-filing vendor for the

Michael Henderson
December 28, 2016
Page 4

Georgia courts that adopted the electronic in-box, did not charge the courts any additional fees in order to set up electronic in-boxes that allow journalists to review new complaints on receipt for filing and before administrative processing.

In light of the foregoing, CNS respectfully requests that the Idaho courts adopt the electronic in-box solution previously suggested, starting with Ada County as a pilot county, thereby ensuring the press can review newly e-filed complaints in a timely manner irrespective of whether those complaints have been administratively processed. As I indicated previously, CNS has personnel available to assist the Court in implementing such a system and would be happy to arrange a meeting and/or call with the Court's personnel to begin this process.

Please let me know how you would like to proceed.

Sincerely,

Debora K. Kristensen

cc:    Chief Justice Roger Burdick, Idaho Supreme Court
       Sara Thomas, Administrative Director of Courts
       Kevin Iwersen, Chief Information Officer, Idaho Supreme Court
       Chris Rich, Clerk, Ada County

# GIVENS PURSLEY LLP

Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
(208) 388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Dan E. Knickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller

Patrick J. Miller
Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Michael O. Roe
Jamie C. Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

April 28, 2016

**VIA ELECTRONIC MAIL**
Christopher Rich
Clerk, Ada County
200 W. Front Street
Boise, ID 83702-7300

      Re:    *Access to Newly Filed Complaints Under Odyssey Case Management System*

Dear Chris:

      I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. As you may recall, back in 2013 we met to discuss concerns about delays that CNS was experiencing in accessing new civil complaints at the Ada County Courthouse. You and your staff were very helpful in addressing those concerns and instituting procedures that helped ensure timely access to most new civil actions. Same day access to new complaints is essential to CNS's ability to inform its subscribers – and, through its web site, the general public – of newsworthy new lawsuits while they are most newsworthy. Conversely, delays of even one day mean news reporting about new actions is likely to be less accurate, subject to manipulation by plaintiffs who leak complaints to favored parties, and less likely to capture the attention of the public. Ada County has largely achieved the goal of same day access to new civil case filings, although there continue to be exceptions to this rule.[1]

      Given CNS's nationwide reach, it has worked with numerous other jurisdictions as they have transitioned to electronic filing ("e-filing"), and has found that absent steps to prevent it, e-filing can bring about delays in accessing new civil filings even where none existed before. Conversely, e-filing also presents courts with an opportunity to eliminate any delays that previously existed by adopting an electronic in-box, as explained more fully below. Given the fast-approaching conversion to the Odyssey Case Management system and e-filing, CNS has

---

[1] *See* attached Ada County District Court Media Access Log.

Chris Rich, Clerk
Ada County
April 28, 2016
Page 2

some relevant insights and suggestions on how Ada County might work to ensure same day
access under this new system.

*New Rules for Accessing Electronically Filed Records*

On January 7, 2016, the Idaho Supreme Court entered an order to effectuate the state's
upgrade and change to e-filing in its district courts. This order, entitled "In re: Order Amending
Rule on Electronic Filing and Service" ("Order"), specifically defines "electronic filing" and the
procedures to be followed by litigants and court personnel. Section (e)(3) of the Order
acknowledges the anticipated delay between "filing" and "accepting" an electronic document by
addressing potential issues of documents being placed in an "error queue," weekend filings and
statute of limitations problems. From the various training sessions that I have attended recently,
I am told that litigants who file incorrectly will be given up to three (3) days to correct the
problem and still be able to retain their original (earlier) filing date. As such, it is foreseeable
that new civil case filings could be unavailable to the public for many days while they sit in an
error queue awaiting further action by the clerk and/or litigant. Obviously, this would represent
a significant degradation in timely public access to new civil case filings.

*Lessons Learned from Other Jurisdictions*

Thankfully, Idaho is not the first jurisdiction to transition to e-filing using Tyler
Technology's Odyssey software. The most common and cost-efficient solution for providing
access under the Odyssey system – and under other e-filing systems as well – has been to
provide the public with access to a computer terminal at the clerk's office from which the media
and any interested member of the public can view the electronic queue that new civil complaints
flow into as soon as they are received by the clerk's office, even if they have not yet been
officially "accepted." This allows the public to see what has been filed with the court without
delay, providing near 100% same day access, and does not impede the clerk's ability to review
and correct the filing if necessary.

The most recent example of a state court's implementation of the "electronic in-box"
solution can be found at the Superior Court of DeKalb County in Decatur, Georgia, which offers
permissive e-filing using Tyler Technology's Odyssey software. Prior to February of 2016,
CNS's reporter had access to paper-filed complaints prior to those complaints being filed and
scanned, with the media having access to the clerk's intake box. E-filed complaints were made
available on public computer terminals in the clerk's office, but not before they had been fully
processed, as evidenced by their date stamps and permanent case numbers, the result of which
was that access to most e-filed complaints was delayed by a day or more. In February 2016,
however, the clerk's office adopted an electronic in-box, through which complaints can be
viewed on a computer terminal as soon as they cross the electronic version of the intake counter
at the clerk's office, even if they have not yet been processed or assigned a case number.
Through this system members of the public are now able to see virtually all new electronically

Chris Rich, Clerk
Ada County
April 28, 2016
Page 3

filed complaints the same day they are received by the court. A similar system is used in other state courts in Georgia (the Fulton County State Court in Atlanta) and in Las Vegas, Nevada, both of which also use Odyssey software. For a tutorial on how these courts manage their electronic in-box access, *see* attached **Exhibit 1**.

The electronic in-box solution has also worked well outside of the Odyssey system, including in state courts in Alabama, Connecticut and Utah, as well as in numerous federal courts. For example, complaints filed in most federal district courts automatically receive a permanent case number and flow automatically online for remote viewing over PACER. In other federal district courts CNS, sees new complaints with either an individual temporary number or a common shell number immediately on receipt by the court, before any processing by court clerks and before receipt of a permanent case number.

*Proposal – Request to Meet*

Michael Mehall from the Idaho Supreme Court recently informed me that Ada County's "go-live" date of June 2016 to transition to the Odyssey software has recently been pushed back (again), although he was unsure of the new "go-live" date. While the transition date is fast-approaching, CNS believes that there is still time for your office to put in place the necessary measures to ensure that the public continues to receive same-day access to new case filings. To that end, CNS proposes that your office adopt the same procedures used by numerous other courts to ensure timely public access to such filings through the use of an electronic in-box (as described above).

As previously mentioned, CNS has experience in dealing with these issues around the country. Accordingly, we would like to meet with you and/or your staff to discuss how best to ensure that Ada County's transition to e-filing does not result in a significant decline in timely access to new case filings. Please let me know when you are available for such a meeting.

Thank you for your continued cooperation in this matter.

Sincerely,

Debora K. Kristensen

cc:     Clients
8823966_1 [10429.2]

Case 1:21-cv-00305-REP   Document 1   Filed 07/23/21   Page 27 of 60

**Ada County District Court Media Access Log**
**4/4/2016 - 4/22/2016**

Cutoff
5:00 PM

|  | # of Cases | Percent of Total |
|---|---|---|
| Green = same day access | 44 | 74.6% same day |
| Yellow = 1 day delay | 11 | 18.6% next day |
| Red = 2 or more days delay | 4 | 6.8% two days or more |
| Total Cases | 59 | |

| Date Filed | Case Number | Time Stamp | Nature of Case | Date Available | Mail/Shelf | Clerk |
|---|---|---|---|---|---|---|
| 4/4/2016 | CV-OC-2016-06637 | 3:00 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06639 | 3:01 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06640 | 3:31 p.m. | Contract | 4/4/2016 | Shelf | Stephanie Vidak |
| 4/4/2016 | CV-OC-2016-06646 | 3:56 p.m. | Foreclosure | 4/4/2016 | Shelf | Austin Lowe |
| 4/4/2016 | CV-OC-2016-06526 | n/a | Contract | 4/5/2016 | Shelf | n/a |
| 4/5/2016 | CV-OC-2016-06687 | 11:36 a.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/5/2016 | CV-SC-2016-06698 | 1:40 p.m. | Fraud | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-OC-2016-06700 | 2:22 p.m. | Contract | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-SC-2016-06668 | 10:20 a.m. | Construction defects | 4/5/2016 | Shelf | Santiago Barrios |
| 4/5/2016 | CV-OC-2016-06708 | 3:16 p.m. | Contract | 4/5/2016 | Shelf | Austin Lowe |
| 4/5/2016 | CV-OC-2016-06710 | 3:25 p.m. | Contract | 4/5/2016 | Shelf | Stephanie Vidak |
| 4/5/2016 | CV-OC-2016-06715 | 4:07 p.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/6/2016 | CV-SC-2016-06734 | 11:25 a.m. | Negligence | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06768 | n/a | Contract | 4/6/2016 | Shelf | Santiago Barrios |
| 4/6/2016 | CV-OC-2016-06770 | 4:29 p.m. | Quiet title | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06767 | 3:54 p.m. | Contract | 4/6/2016 | Shelf | Alesia Butts |
| 4/7/2016 | OC-SC-2016-06821 | n/a | Contract | 4/7/2016 | Shelf | n/a |
| 4/7/2016 | OC-OC-2016-06836 | 4:23 p.m. | Eviction | 4/7/2016 | Shelf | Stacey Lafferty |
| 4/7/2016 | CV-OC-2016-06841 | 4:57 p.m. | Mechanics lien | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06852 | n/a | Contract | 4/8/2016 | shelf | n/a |

| Date | Case Number | Time | Case Type | Date | Shelf | Name |
|---|---|---|---|---|---|---|
| 4/8/2016 | CV-OC-2016-06884 | 3:00 p.m. | Negligence | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06885 | 2:37 p.m. | Contract | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-PI-2016-06896 | 4:28 p.m. | Slip and fall | 4/11/2016 | Shelf | Stephanie Vidak |
| 4/8/2016 | CV-OC-2016-06880 | 2:25 p.m. | Foreclosure | 4/11/2016 | Shelf | Santiago Barrios |
| 4/11/2016 | CV-SC-2016-06918 | 11 a.m. | Contract | 4/11/2016 | Shelf | Alesia Butts |
| 4/11/2016 | CV-OC-2016-06951 | 2:53 p.m. | Contract | 4/11/2016 | Shelf | Stacey Lafferty |
| 4/11/2016 | CV-OC-2016-06969 | 4:00 p.m. | Employment | 4/11/2016 | Shelf | Santiago Burrios |
| 4/11/2016 | CV-OC-2016-06975 | 5:00 p.m. | Fraud | 4/12/2016 | Shelf | Austin Lowe |
| 4/11/2016 | CV-SC-2016-06973 | 5:00 p.m. | Contract | 4/12/2016 | Shelf | Alesia Butts |
| 4/12/2016 | CV-OC-2016-07031 | 3:37 p.m. | Foreign judgment | 4/12/2016 | Shelf | Austin Lowe |
| 4/12/2016 | CV-PI-2016-07046 | 4:28 p.m. | Slip and fall | 4/12/2016 | Shelf | Stephanie Vidak |
| 4/12/2016 | CV-PI-2016-07050 | 4:40 p.m. | Negligence | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/13/2016 | CV-SC-2016-07063 | 9:57 a.m. | Contract | 4/13/2016 | Shelf | Austin Lowe |
| 4/13/2016 | CV-SC-2016-07134 | 4:15 p.m. | Contract and Fraud | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07150 | 9:53 a.m. | Contract | 4/14/2016 | Shelf | Alesia Butts |
| 4/14/2016 | CV-SC-2016-07160 | 10:56 a.m. | Contract | 4/14/2016 | Shelf | Austin Lowe |
| 4/14/2016 | CV-OC-2016-07189 | n/a | Contract | 4/14/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07196 | 4 p.m. | Car collision | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/14/2016 | CV-OC-2016-07186 | 3:26 p.m. | Lien foreclosure | 4/15/2016 | Shelf | Austin Lowe |
| 4/15/2016 | CV-SC-2016-07209 | 10 a.m. | Contract | 4/15/2016 | Shelf | Tyler Atkinson |
| 4/15/2016 | CV-SC-2016-07257 | 4:33 p.m. | Contract | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/18/2016 | CV-OC-2016-07396 | n/a | Fraud | 4/18/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07387 | 1:59 p.m. | Petition | 4/18/2016 | Shelf | Austin Lowe |
| 4/18/2016 | CV-OC-2016-07407 | 4:16 p.m. | Foreclosure | 4/18/2016 | Shelf | Tyler Atkinson |
| 4/18/2016 | CV-OC-2016-07418 | 4:41 p.m. | Contract | 4/19/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07359 | 8:53 a.m. | Contract | 4/19/2016 | Shelf | Austin Lowe |
| 4/19/2016 | CV-OC-2016-07452 | 1:20 p.m. | Negligence | 4/19/2016 | Shelf | Alesia Butts |

| 4/19/2016 | CV-OC-2016-07471 | 4:01 p.m. | Foreclosure | 4/19/2016 | Mail | Tyler Atkinson |
| 4/19/2016 | CV-OC-2016-07423 | 9:26 a.m. | Foreclosure | 4/19/2016 | Shelf | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07505 | 12:55 p.m. | Foreclosure | 4/20/2016 | Mail | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07564 | 4:17 p.m. | Contract | 4/20/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07653 | 2:03 p.m. | Petition | 4/21/2016 | Shelf | Austin Lowe |
| 4/21/2016 | CV-SC-2016-07654 | 2:15 p.m. | Contract | 4/21/2016 | Shelf | Santiago Barrios |
| 4/21/2016 | CV-PI-2016-07634 | 12:23 p.m. | Negligence | 4/22/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07707 | 4:50 p.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-OC-2016-07804 | n/a | Contract | 4/22/2016 | Shelf | Tyler Atkinson |
| 4/22/2016 | CV-OC-2016-07727 | 11 a.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-PI-2016-07820 | 4:44 p.m. | Negligence | 4/25/2016 | Shelf | Austin Lowe |
| 4/22/2016 | CV-OC-2016-07818 | 4:30 p.m. | Petition | 4/25/2016 | Shelf | Alesia Butts |

# EXHIBIT 1

**State of Georgia Civil E-filing**
**Electronic Inbox Requirement**

**State Court of Fulton County Implementation**

Georgia courts and their electronic filing service providers are required "to ensure[] that electronic documents are publicly accessible upon filing for viewing at no charge on a public access terminal available at the courthouse during regular business hours." Judicial Council of Georgia, Statewide Minimum Standards for E-Filing at ¶¶ 3(d), 4(c), available at http://www.georgiacourts.org/sites/default/files/Statewide%2520Minimum%2520Standards%2520for%2520E-filing%25209.25.2014.pdf.[1]

This so-called electronic inbox requirement was implemented in November 2015 by the State Court of Fulton County and its electronic filing service provider, Tyler.

Users of the State Court of Fulton County electronic inbox must acknowledge by signature the following notice:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING**: Electronic inbox access to electronic documents is being provided pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum Standards for Electronic Filing promulgated by the Judicial Council of Georgia effective September 25, 2014. Pursuant to Uniform Rule 36.16(D), complaints and other documents accessible through this electronic inbox are presumed filed upon their receipt by the Court's electronic filing service provider. However, the documents have not yet been processed and accepted by the Clerk of Court and, prior to processing, there is no guarantee that the documents will be accepted, assigned a case number, or placed on the docket with the Court.

What follows is a brief tour of the State Court of Fulton County's electronic inbox, as documented November 18, 2015.

---

[1] Court rules approved by the Georgia Supreme Court define "upon filing" for these purposes as "upon ... receipt by the electronic filing service provider." Uniform Superior Court Rule 36.16 (D), (G), available at http://www.gasupreme.us/wp-content/uploads/2015/06/ORDER_MAY2015_FINAL.pdf.

1

1) There are seven public computer terminals in the Fulton County State Court self-help center. The screen shot below shows the desktop of one of those computers, and the icon near the center of the screen reads "InBox Press Review."



2) Double clicking on the desktop icon brings users to the log-in screen below. Log-in credentials are obtained by requesting them at the front desk of the self-help center. When requesting these credentials, users are asked to put their name on a sign-in sheet and to sign the disclaimer reproduced above.





3

ER-2804

3) This is what the default screen looks like upon login.  Filed documents are available going back for a period of 8 days.  To the extent documents are already associated with a filed case, a case number appears in the case number column.





4

4) Documents in the inbox can be searched using the search bar in the upper right hand corner of the inbox.  As shown below, documents not yet processed and associated with a filed case are designated by the language "new case" and an ID number in place of a case number.  Documents can also be searched by date of filing or document type and sorted such that the most recently filed documents appear first.



5) To open a document, users simply click on the document title, which opens a PDF. The image below is of a "New Case" complaint that has not yet been processed.



ER-2807

*Ada County*
**CLERK**
OF THE DISTRICT COURT

Christopher D. Rich
Clerk of the District Court

Phil McGrane
Chief Deputy

200 W Front Street, Boise, Idaho 83702      Phone (208) 287 6879      Fax (208) 287 6909

May 6, 2016

RECEIVED
MAY 10 2016
Givens Pursley, LLP

Justice Linda Copple Trout
Interim Administrative Director of Courts
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Kevin Iwersen
Chief Information Officer
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Debora K. Kristensen
Partner
Givens Pursley
PO Box 2720
Boise, ID 83701

Greetings All:

Recently I was contacted by Ms. Kristensen regarding her client Courthouse News Service's ("CSN") ability to access new civil complaints after the Odyssey go-live.

Currently, the Ada County Clerk's office operates in a paper environment. Years ago, CSN requested to view new civil actions the same day they are filed. We adjusted our manual practices to provide CSN same day access to the paper record.

As I understand Ms. Kristensen's request; CSN is seeking same day access to the digital record even if it has not yet been officially "accepted". This would be accomplished via a public terminal that would have access to a queue specifically designed for this purpose.

The ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court. As Clerk, I am not in a position to assist CSN. Hence this introduction to the parties that can resolve the matter.

If I can be of assistance, please do not hesitate to contact me, and good luck.

Sincerely,

Christopher D. Rich

| Court | Auditor | Recorder | Elections | Indigent Services |
|-------|---------|----------|-----------|-------------------|
| Ph (208) 287-6900 | Ph (208) 287-6879 | Ph (208) 287-6840 | Ph (208) 287-6860 | Ph (208) 287-7960 |
| Fax (208) 287-6919 | Fax (208) 287-6909 | Fax (208) 287-6849 | Fax (208) 287-6939 | Fax (208) 287-7969 |

## Media Access to New Civil Complaints in the E-Filing Environment
### Prepared by Courthouse News Service - August 2016

The transition to e-filing presents the Idaho courts with the opportunity to ensure consistent timely press access to new civil complaints on a statewide basis comparable to that traditionally available in the paper filing environment.

Courthouse News Service ("CNS") respectfully proposes that access to new civil e-filed complaints filed in Idaho courts take place at the point of receipt, prior to clerk processing, a set of administrative tasks that in the e-filing environment often includes but is not limited to official "acceptance" of the complaint by a court clerk. Press access at the point of receipt – ideally at the Electronic Filing Manager ("EFM") level – mirrors traditional press access to paper filings, which traditionally occurs at the time of or soon after new complaints cross the file desk, on the day of receipt, irrespective of whether the complaints have been processed. By contrast, placing press access after clerk processing delays press coverage, resulting in the press and, by extension, the public receiving less timely and thus less newsworthy information about the courts. Access at the statewide EFM level (or alternatively, individual court clerk review queue stage) is sought for all members of the news media, not just CNS.

## Media Access in an E-Filing Environment

At the Ada County Courthouse and other major state and federal courts across the nation, news reporters traditionally had access to new paper civil complaints as soon as they crossed the counter or shortly thereafter on the same day as filing. This access is consistent with the First Amendment right of timely access, a right that a California federal district court recently found "arises when a complaint is received by a court, rather than after it is 'processed.'" *Courthouse News Service v. Planet*, 2016 WL 4157210, *13 (C.D. Cal. May 26, 2016) (Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment).

At the United States District Court for the District of Idaho, when a new civil complaint is filed, a case number is automatically assigned and the complaint flows automatically onto PACER for viewing online for a fee or at the clerk's office free of charge. Other federal district courts throughout the nation provide public access immediately upon receipt of an e-filing, before processing by clerks. Such access is now the norm in federal courts around the nation.

Many state courts that mandate e-filing provide similar same-day access on receipt. At the Clark County trial court in Las Vegas, and at the trial courts in Fulton and DeKalb Counties in Georgia – all of which, like Idaho, use a Tyler e-filing system – journalists have access to an electronic queue where new complaints can be seen immediately on receipt, even if they have not yet been processed by court clerks, and before assignment of case numbers.

285459.1

The screenshots above are from the Fulton County State Court in Atlanta. The **left screenshot** displays the default screen once logged into the system. The documents can be searched and sorted by type of document or date of filing. Documents not yet processed are designated by the language "New Case" and an ID number (because a case number has not yet been assigned) are shown in the **right screenshot** above.

Alternatively, in Alabama, which operates on an OLIS e-filing platform, complaints appear to be auto-accepted and assigned a permanent case number upon receipt. They are made immediately available for electronic viewing at the courthouses and online. Cases filed on evenings and weekends can be viewed online with a permanent case number, much the same as federal courts when no clerks are working. Individual state courts in Connecticut and Utah also provide similar electronic access immediately on receipt, before processing.

The electronic in box is the functional equivalent of the physical "media box" which was, prior to e-filing, a mainstay of many intake counters at state and federal court clerks' offices across the country. It is also consistent with Central District of California's recent ruling in *Courthouse News Service v. Planet*, in which the court made clear that the First Amendment right of timely access that attaches on receipt by a court applies "regardless of whether such courts use paper or e-filing systems." 2016 WL 4157210, at *12; *see also id.* at *21.[1] By contrast, withholding access until after processing commonly results in delays of 1-2 days due to clerk's office staffing shortages, vacations, illness, and other number of other very legitimate staffing issues that result in delays in processing, and is contrary to the recent ruling in the *Planet* case.

If the state courts of Idaho were to provide access on receipt through an electronic in box at the EFM level, prior to processing, press access to e-filed complaints throughout Idaho would be consistently excellent and on par with the excellent level of access traditionally provided for paper-filed cases and now provided by the federal courts, as well as individual state courts that similarly provide access to e-filed complaints on receipt irrespective of whether the complaint has been processed.

Alternatively, electronic in box access could be provided at the individual court level, although a statewide solution would be optimal.

The diagram shown on the following page illustrates how this timely access on receipt can be provided in an e-filing environment and in a manner that does not make access contingent on a complaint having first been processed.

---

[1] The Central District of California's 2016 decision was preceded by two Ninth Circuit decisions in the same case, which are also instructive: *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), and *Courthouse News Service v. Planet*, 614 Fed. App'x. 912 (9th Cir. 2015). Copies of all three of these rulings are attached for further reference.

## Access to the Electronic In-box



The **green** box illustrates the electronic inbox—at either the statewide EFM level or individual court level—that CNS is respectfully proposing. The **yellow box** illustrates the delayed access that typically occurs when press access is pushed from the intake level, as is traditional in the paper-filing environment, until after clerks have processed and/or "accepted" the electronic filing.

**Further notes about this method of access:**

**Rejected e-filings:** If courts wish, they can use a disclaimer to let the press and public know that the records they are viewing may ultimately not be accepted for filing, or are not "official" court records. For example, in Atlanta, users must acknowledge by signature this disclaimer:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING:**
> Electronic in box access to electronic documents is being provided pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum Standards for Electronic Filing promulgated by the Judicial Council of Georgia effective September 25, 2014. Pursuant to Uniform Rule 36.16(D), complaints and other documents accessible through this electronic in box are presumed filed upon their receipt by the Court's electronic filing service provider. However, the documents have not yet been processed and accepted by the Clerk of Court and, prior to processing, there is no guarantee that the documents will be accepted, assigned a case number, or placed on the docket with the Court.

Alternatively, such a notice could be shown on a computer screen prior to accessing the electronic inbox.

**Electronic in box can be provided locally or remotely:** Access to the electronic in box can either be provided remotely over the internet or locally through computer terminals in a pressroom,

285459.1

3

the clerk's office or in some other public place in the courthouse. Either or both local and remote access can be used to provide press access upon receipt of new civil complaints.

**Electronic in box can be provided to the press alone or also the public:** Unlike news reporters, members of the public tend to be interested in individual cases and do not normally have a daily need to review new complaints. However, access to the electronic in box need not be limited to the press.

**Electronic in box ensures consistency:** Budget constraints often mean clerks' offices are understaffed, while illnesses, vacations and other scheduling issues may prevent clerks from processing new complaints the same day they are received. Once set up, the electronic in box provides consistent, timely access that is not dependent on work schedules or hours; clerks do not feel as though they need to "speed up" or "work harder" to provide timely access.

## Conclusion

CNS greatly appreciates the interest of the Idaho courts in maintaining timely access as it fully transitions to e-filing. We hope the information here is helpful and we remain available to collaborate on resolving questions or concerns. As noted, this proposal is made with the intent of ensuring continued timely access not just to CNS but to the press corps as a whole. If we can provide further information, or be of further assistance, please let us know.

285459.1

4

**ER-2812**

EXHIBIT 2

# EXHIBIT 2



State of
IDAHO
JUDICIAL BRANCH

July 6, 2021

Debora K. Grasham
601 W. Bannock St
Boise, ID 83701

Via email: dkk@givenspursley.com

Dear Ms. Grasham:

I am in receipt of your letter dated June 14, 2021, in which you requested, on behalf of
Courthouse News Service, the installation of an additional component to the courts electronic
system.  Your request was based upon the assertion that "Delays in access to new civil
complaints in Ada County – and throughout Idaho – have been, and currently are, ongoing and
persistent."

As you may be aware, Idaho's efiling rule provides that documents submitted to Tyler's File and
Serve system are reviewed and either accepted for filing or rejected for filing by the clerk's
office after submission. If accepted for filing, any public document is immediately available for
review at the public kiosks in the courthouse. I assume that the delay concerns you express are
related to the time period between the time a document is submitted to Tyler's File and Serve
system and is accepted by the clerk's office for filing. If I have assumed incorrectly, please let
me know.

In light of the concern you raised, I did review our records for the time period of May 18th
through June 14th, essentially the month immediately prior to your letter and the most recent data
we had at that time. As you may be aware, our goal is to keep the average time from submission
to acceptance to no more than 24 hours. For ease, I reviewed the time from submission to
acceptance for filing in actual hours, not business hours, such that the hours included times
documents are submitted after business hours and cannot be processed until the court is again
open. For all court documents, the average statewide time from submission to acceptance for
filing was 14 hours. The average time in Ada county was 9 hours, with 70% of the documents
accepted on the same day they were submitted.  For civil cases, Ada county accepts documents
for filing on average just under 8 hours after submission. Given these average time frames, I did
not find a statewide or Ada county delay that was currently ongoing and persistent.

I do appreciate the need to provide public access to documents in a timely fashion while still
ensuring the fair and orderly administration of justice. In light of your allegation of persistent
delays throughout the state, I have requested that my team work with Tyler to gather ongoing
information which will allow me and other court staff to more actively monitor the relevant
timeframe and identify and respond to any systemic issues that may arise.

ER-2814



At this time, I do not intend to request the addition of a public access system for documents that have been submitted to Tyler's File and Serve system, but have not yet been accepted for filing by the court clerks' offices. Should you identify additional information indicating an ongoing and persistent issues in the future, please do let me know.


 Sincerely,

*Sara Omundson*

Sara Omundson,
Administrative Director of Courts

EXHIBIT 3

# EXHIBIT 3

# GIVENS PURSLEY LLP

Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Debora K. Kristensen
(208) 388-1287
dkk@givenspursley.com

Gary G. Allen
Peter G. Barton
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Erik J. Bolinder
Jeff W. Bower
Preston N. Carter
Jeremy C. Chou
William C. Cole
Michael C. Creamer
Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Jeffrey C. Fereday
Martin C. Hendrickson

Brian J. Holleran
Kersti H. Kennedy
Don E. Knickrehm
Neal A. Koskella
Debora K. Kristensen
Michael P. Lawrence
Franklin G. Lee
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Kelly Greene McConnell
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller

Patrick J. Miller
Judson B. Montgomery
Deborah E. Nelson
W. Hugh O'Riordan, LL.M.
Michael O. Roe
Jamie C. Smith
P. Mark Thompson
Jeffrey A. Warr
Robert B. White

Angela M. Reed, of counsel

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

April 28, 2016

*VIA ELECTRONIC MAIL*
Christopher Rich
Clerk, Ada County
200 W. Front Street
Boise, ID 83702-7300

      Re:    *Access to Newly Filed Complaints Under Odyssey Case Management System*

Dear Chris:

      I represent Courthouse News Service ("CNS"), a nationwide news organization that reports on new civil litigation filings. As you may recall, back in 2013 we met to discuss concerns about delays that CNS was experiencing in accessing new civil complaints at the Ada County Courthouse. You and your staff were very helpful in addressing those concerns and instituting procedures that helped ensure timely access to most new civil actions. Same day access to new complaints is essential to CNS's ability to inform its subscribers – and, through its web site, the general public – of newsworthy new lawsuits while they are most newsworthy. Conversely, delays of even one day mean news reporting about new actions is likely to be less accurate, subject to manipulation by plaintiffs who leak complaints to favored parties, and less likely to capture the attention of the public. Ada County has largely achieved the goal of same day access to new civil case filings, although there continue to be exceptions to this rule.[1]

      Given CNS's nationwide reach, it has worked with numerous other jurisdictions as they have transitioned to electronic filing ("e-filing"), and has found that absent steps to prevent it, e-filing can bring about delays in accessing new civil filings even where none existed before. Conversely, e-filing also presents courts with an opportunity to eliminate any delays that previously existed by adopting an electronic in-box, as explained more fully below. Given the fast-approaching conversion to the Odyssey Case Management system and e-filing, CNS has

---

[1] *See* attached Ada County District Court Media Access Log.

Chris Rich, Clerk
Ada County
April 28, 2016
Page 2

some relevant insights and suggestions on how Ada County might work to ensure same day
access under this new system.

### *New Rules for Accessing Electronically Filed Records*

On January 7, 2016, the Idaho Supreme Court entered an order to effectuate the state's
upgrade and change to e-filing in its district courts. This order, entitled "In re: Order Amending
Rule on Electronic Filing and Service" ("Order"), specifically defines "electronic filing" and the
procedures to be followed by litigants and court personnel. Section (e)(3) of the Order
acknowledges the anticipated delay between "filing" and "accepting" an electronic document by
addressing potential issues of documents being placed in an "error queue," weekend filings and
statute of limitations problems. From the various training sessions that I have attended recently,
I am told that litigants who file incorrectly will be given up to three (3) days to correct the
problem and still be able to retain their original (earlier) filing date. As such, it is foreseeable
that new civil case filings could be unavailable to the public for many days while they sit in an
error queue awaiting further action by the clerk and/or litigant. Obviously, this would represent
a significant degradation in timely public access to new civil case filings.

### *Lessons Learned from Other Jurisdictions*

Thankfully, Idaho is not the first jurisdiction to transition to e-filing using Tyler
Technology's Odyssey software. The most common and cost-efficient solution for providing
access under the Odyssey system – and under other e-filing systems as well – has been to
provide the public with access to a computer terminal at the clerk's office from which the media
and any interested member of the public can view the electronic queue that new civil complaints
flow into as soon as they are received by the clerk's office, even if they have not yet been
officially "accepted." This allows the public to see what has been filed with the court without
delay, providing near 100% same day access, and does not impede the clerk's ability to review
and correct the filing if necessary.

The most recent example of a state court's implementation of the "electronic in-box"
solution can be found at the Superior Court of DeKalb County in Decatur, Georgia, which offers
permissive e-filing using Tyler Technology's Odyssey software. Prior to February of 2016,
CNS's reporter had access to paper-filed complaints prior to those complaints being filed and
scanned, with the media having access to the clerk's intake box. E-filed complaints were made
available on public computer terminals in the clerk's office, but not before they had been fully
processed, as evidenced by their date stamps and permanent case numbers, the result of which
was that access to most e-filed complaints was delayed by a day or more. In February 2016,
however, the clerk's office adopted an electronic in-box, through which complaints can be
viewed on a computer terminal as soon as they cross the electronic version of the intake counter
at the clerk's office, even if they have not yet been processed or assigned a case number.
Through this system members of the public are now able to see virtually all new electronically

Chris Rich, Clerk
Ada County
April 28, 2016
Page 3

filed complaints the same day they are received by the court. A similar system is used in other state courts in Georgia (the Fulton County State Court in Atlanta) and in Las Vegas, Nevada, both of which also use Odyssey software. For a tutorial on how these courts manage their electronic in-box access, *see* attached **Exhibit 1**.

The electronic in-box solution has also worked well outside of the Odyssey system, including in state courts in Alabama, Connecticut and Utah, as well as in numerous federal courts. For example, complaints filed in most federal district courts automatically receive a permanent case number and flow automatically online for remote viewing over PACER. In other federal district courts CNS, sees new complaints with either an individual temporary number or a common shell number immediately on receipt by the court, before any processing by court clerks and before receipt of a permanent case number.

*Proposal – Request to Meet*

Michael Mehall from the Idaho Supreme Court recently informed me that Ada County's "go-live" date of June 2016 to transition to the Odyssey software has recently been pushed back (again), although he was unsure of the new "go-live" date. While the transition date is fast-approaching, CNS believes that there is still time for your office to put in place the necessary measures to ensure that the public continues to receive same-day access to new case filings. To that end, CNS proposes that your office adopt the same procedures used by numerous other courts to ensure timely public access to such filings through the use of an electronic in-box (as described above).

As previously mentioned, CNS has experience in dealing with these issues around the country. Accordingly, we would like to meet with you and/or your staff to discuss how best to ensure that Ada County's transition to e-filing does not result in a significant decline in timely access to new case filings. Please let me know when you are available for such a meeting.

Thank you for your continued cooperation in this matter.

Sincerely,

Debora K. Kristensen

cc:   Clients
8823966_1 [10429-2]

# Ada County District Court Media Access Log
## 4/4/2016 - 4/22/2016

**Cutoff**
5:00 PM

|  | # of Cases | | Percent of Total |
|---|---|---|---|
| Green = same day access | 44 | | 74.6% same day |
| Yellow = 1 day delay | 11 | | 18.6% next day |
| Red = 2 or more days delay | 4 | | 6.8% two days or more |
| Total Cases | 59 | | |

| Date Filed | Case Number | Time Stamp | Nature of Case | Date Available | Mail/Shelf | Clerk |
|---|---|---|---|---|---|---|
| 4/4/2016 | CV-OC-2016-06637 | 3:00 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06639 | 3:01 p.m. | Contract | 4/4/2016 | Shelf | Stacey Lafferty |
| 4/4/2016 | CV-OC-2016-06640 | 3:31 p.m. | Contract | 4/4/2016 | Shelf | Stephanie Vidak |
| 4/4/2016 | CV-OC-2016-06646 | 3:56 p.m. | Foreclosure | 4/4/2016 | Shelf | Austin Lowe |
| 4/4/2016 | CV-OC-2016-06526 | n/a | Contract | 4/5/2016 | Shelf | n/a |
| 4/5/2016 | CV-OC-2016-06687 | 11:36 a.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/5/2016 | CV-SC-2016-06698 | 1:40 p.m. | Fraud | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-OC-2016-06700 | 2:22 p.m. | Contract | 4/5/2016 | Shelf | Tyler Atkinson |
| 4/5/2016 | CV-SC-2016-06668 | 10:20 a.m. | Construction defects | 4/5/2016 | Shelf | Santiago Barrios |
| 4/5/2016 | CV-OC-2016-06708 | 3:16 p.m. | Contract | 4/5/2016 | Shelf | Austin Lowe |
| 4/5/2016 | CV-OC-2016-06710 | 3:25 p.m. | Contract | 4/5/2016 | Shelf | Stephanie Vidak |
| 4/5/2016 | CV-OC-2016-06715 | 4:07 p.m. | Petition | 4/5/2016 | Shelf | Alesia Butts |
| 4/6/2016 | CV-SC-2016-06734 | 11:25 a.m. | Negligence | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06768 | n/a | Contract | 4/6/2016 | Shelf | Santiago Barrios |
| 4/6/2016 | CV-OC-2016-06770 | 4:29 p.m. | Quiet title | 4/6/2016 | Shelf | Stephanie Vidak |
| 4/6/2016 | CV-OC-2016-06767 | 3:54 p.m. | Contract | 4/6/2016 | Shelf | Alesia Butts |
| 4/7/2016 | OC-SC-2016-06821 | n/a | Contract | 4/7/2016 | Shelf | n/a |
| 4/7/2016 | OC-OC-2016-06836 | 4:23 p.m. | Eviction | 4/7/2016 | Shelf | Stacey Lafferty |
| 4/7/2016 | CV-OC-2016-06841 | 4:57 p.m. | Mechanics lien | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06852 | n/a | Contract | 4/8/2016 | shelf | n/a |

| Date | Case Number | Time | Type | Date | Status | Name |
|---|---|---|---|---|---|---|
| 4/8/2016 | CV-OC-2016-06884 | 3:00 p.m. | Negligence | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-OC-2016-06885 | 2:37 p.m. | Contract | 4/8/2016 | Shelf | Santiago Burrios |
| 4/8/2016 | CV-PI-2016-06896 | 4:28 p.m. | Slip and fall | 4/11/2016 | Shelf | Stephanie Vidak |
| 4/8/2016 | CV-OC-2016-06880 | 2:25 p.m. | Foreclosure | 4/11/2016 | Shelf | Santiago Barrios |
| 4/11/2016 | CV-SC-2016-06918 | 11 a.m. | Contract | 4/11/2016 | Shelf | Alesia Butts |
| 4/11/2016 | CV-OC-2016-06951 | 2:53 p.m. | Contract | 4/11/2016 | Shelf | Stacey Lafferty |
| 4/11/2016 | CV-OC-2016-06969 | 4:00 p.m. | Employment | 4/11/2016 | Shelf | Santiago Burrios |
| 4/11/2016 | CV-OC-2016-06975 | 5:00 p.m. | Fraud | 4/12/2016 | Shelf | Austin Lowe |
| 4/11/2016 | CV-SC-2016-06973 | 5:00 p.m. | Contract | 4/12/2016 | Shelf | Alesia Butts |
| 4/12/2016 | CV-OC-2016-07031 | 3:37 p.m. | Foreign judgment | 4/12/2016 | Shelf | Austin Lowe |
| 4/12/2016 | CV-PI-2016-07046 | 4:28 p.m. | Slip and fall | 4/12/2016 | Shelf | Stephanie Vidak |
| 4/12/2016 | CV-PI-2016-07050 | 4:40 p.m. | Negligence | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/13/2016 | CV-SC-2016-07063 | 9:57 a.m. | Contract | 4/13/2016 | Shelf | Austin Lowe |
| 4/13/2016 | CV-SC-2016-07134 | 4:15 p.m. | Contract and Fraud | 4/13/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07150 | 9:53 a.m. | Contract | 4/14/2016 | Shelf | Alesia Butts |
| 4/14/2016 | CV-SC-2016-07160 | 10:56 a.m. | Contract | 4/14/2016 | Shelf | Austin Lowe |
| 4/14/2016 | CV-OC-2016-07189 | n/a | Contract | 4/14/2016 | Shelf | Tyler Atkinson |
| 4/14/2016 | CV-PI-2016-07196 | 4 p.m. | Car collision | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/14/2016 | CV-OC-2016-07186 | 3:26 p.m. | Lien foreclosure | 4/15/2016 | Shelf | Austin Lowe |
| 4/15/2016 | CV-SC-2016-07209 | 10 a.m. | Contract | 4/15/2016 | Shelf | Tyler Atkinson |
| 4/15/2016 | CV-SC-2016-07257 | 4:33 p.m. | Contract | 4/15/2016 | Shelf | Stacey Lafferty |
| 4/18/2016 | CV-OC-2016-07396 | n/a | Fraud | 4/18/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07387 | 1:59 p.m. | Petition | 4/18/2016 | Shelf | Austin Lowe |
| 4/18/2016 | CV-OC-2016-07407 | 4:16 p.m. | Foreclosure | 4/18/2016 | Shelf | Tyler Atkinson |
| 4/18/2016 | CV-OC-2016-07418 | 4:41 p.m. | Contract | 4/19/2016 | Shelf | Alesia Butts |
| 4/18/2016 | CV-OC-2016-07359 | 8:53 a.m. | Contract | 4/19/2016 | Shelf | Austin Lowe |
| 4/19/2016 | CV-OC-2016-07452 | 1:20 p.m. | Negligence | 4/19/2016 | Shelf | Alesia Butts |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/19/2016 | CV-OC-2016-07471 | 4:01 p.m. | Foreclosure | 4/19/2016 | Mail | Tyler Atkinson |
| 4/19/2016 | CV-OC-2016-07423 | 9:26 a.m. | Foreclosure | 4/19/2016 | Shelf | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07505 | 12:55 p.m. | Foreclosure | 4/20/2016 | Mail | Stacey Lafferty |
| 4/20/2016 | CV-OC-2016-07564 | 4:17 p.m. | Contract | 4/20/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07653 | 2:03 p.m. | Petition | 4/21/2016 | Shelf | Austin Lowe |
| 4/21/2016 | CV-SC-2016-07654 | 2:15 p.m. | Contract | 4/21/2016 | Shelf | Santiago Barrios |
| 4/21/2016 | CV-PI-2016-07634 | 12:23 p.m. | Negligence | 4/22/2016 | Shelf | Alesia Butts |
| 4/21/2016 | CV-OC-2016-07707 | 4:50 p.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-OC-2016-07804 | n/a | Contract | 4/22/2016 | Shelf | Tyler Atkinson |
| 4/22/2016 | CV-OC-2016-07727 | 11 a.m. | Contract | 4/22/2016 | Shelf | Alesia Butts |
| 4/22/2016 | CV-PI-2016-07820 | 4:44 p.m. | Negligence | 4/25/2016 | Shelf | Austin Lowe |
| 4/22/2016 | CV-OC-2016-07818 | 4:30 p.m. | Petition | 4/25/2016 | Shelf | Alesia Butts |

# EXHIBIT 1

## State of Georgia Civil E-filing
## Electronic Inbox Requirement

### State Court of Fulton County Implementation

Georgia courts and their electronic filing service providers are required "to ensure[] that electronic documents are publicly accessible upon filing for viewing at no charge on a public access terminal available at the courthouse during regular business hours." Judicial Council of Georgia, Statewide Minimum Standards for E-Filing at ¶¶ 3(d), 4(c), available at http://www.georgiacourts.org/sites/default/files/Statewide%2520Minimum%2520Standards%2520for%2 520E-filing%25209.25.2014.pdf.[1]

This so-called electronic inbox requirement was implemented in November 2015 by the State Court of Fulton County and its electronic filing service provider, Tyler.

Users of the State Court of Fulton County electronic inbox must acknowledge by signature the following notice:

> **IMPORTANT NOTICE REGARDING CLERK PROCESSING**:  Electronic inbox access to electronic documents is being provided pursuant to paragraphs 3(d) and 4(c) of the Statewide Minimum Standards for Electronic Filing promulgated by the Judicial Council of Georgia effective September 25, 2014.  Pursuant to Uniform Rule 36.16(D), complaints and other documents accessible through this electronic inbox are presumed filed upon their receipt by the Court's electronic filing service provider.  However, the documents have not yet been processed and accepted by the Clerk of Court and, prior to processing, there is no guarantee that the documents will be accepted, assigned a case number, or placed on the docket with the Court.

What follows is a brief tour of the State Court of Fulton County's electronic inbox, as documented November 18, 2015.

---

[1] Court rules approved by the Georgia Supreme Court define "upon filing" for these purposes as "upon ... receipt by the electronic filing service provider."  Uniform Superior Court Rule 36.16 (D), (G), available at http://www.gasupreme.us/wp-content/uploads/2015/06/ORDER_MAY2015_FINAL.pdf.

1

1) There are seven public computer terminals in the Fulton County State Court self-help center. The screen shot below shows the desktop of one of those computers, and the icon near the center of the screen reads "InBox Press Review."



2

**ER-2825**

2) Double clicking on the desktop icon brings users to the log-in screen below. Log-in credentials are obtained by requesting them at the front desk of the self-help center. When requesting these credentials, users are asked to put their name on a sign-in sheet and to sign the disclaimer reproduced above.



ER-2826

3) This is what the default screen looks like upon login. Filed documents are available going back for a period of 8 days. To the extent documents are already associated with a filed case, a case number appears in the case number column.



| SubmitDate | CaseNumber | File |
|---|---|---|
| 2015/11/11 | 14EV001733 | Response to GMC Blue Inc. Supplemental MSJ.pdf |
| 2015/11/11 | 14EV001733 | Response to GMC Blue Inc. Supplemental SOMF.pdf |
| 2015/11/11 | 14EV001733 | Response to PSS Investment and Un Park MSJ.pdf |
| 2015/11/11 | 15EV001846 | Monrico 11-11-15 aff svc corp sec.pdf |
| 2015/11/11 | 14EV001733 | Response to GMC Blue Service Inc. SOMF.pdf |
| 2015/11/11 | 13EV018459 | 2015-11-11 NTC LOA Dalton v. Yielding (e).pdf |
| 2015/11/11 | 11VS187541 | Gayle Mitchell - Rule 5.2 COS.pdf |
| 2015/11/11 | 13VS199218 | Plaintiff's Motion to Transfer Case.pdf |
| 2015/11/11 | 15EV002558 | Plaintiff's Response to Def's Motion to Transfer Forum Non Conveniens.pdf |
| 2015/11/11 | 14EV001733 | Response to PSS SOMF.pdf |



ER-2827

4) Documents in the inbox can be searched using the search bar in the upper right hand corner of the inbox. As shown below, documents not yet processed and associated with a filed case are designated by the language "new case" and an ID number in place of a case number. Documents can also be searched by date of filing or document type and sorted such that the most recently filed documents appear first.



ER-2828

5) To open a document, users simply click on the document title, which opens a PDF. The image below is of a "New Case" complaint that has not yet been processed.



ER-2829

EXHIBIT 4

# EXHIBIT 4

Christopher D. Rich
Clerk of the District Court

Phil McGrane
Chief Deputy

200 W Front Street, Boise, Idaho 83702     Phone (208) 287-6879     Fax (208) 287-6909

May 6, 2016

RECEIVED

MAY 1 0 2016

Givens Pursley, LLP

Justice Linda Copple Trout
Interim Administrative Director of Courts
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Kevin Iwersen
Chief Information Officer
Idaho Supreme Court
PO Box 83720
Boise, ID 83720-0101

Debora K. Kristensen
Partner
Givens Pursley
PO Box 2720
Boise, ID 83701

Greetings All:

Recently I was contacted by Ms. Kristensen regarding her client Courthouse News Service's ("CSN") ability to access new civil complaints after the Odyssey go-live.

Currently, the Ada County Clerk's office operates in a paper environment. Years ago, CSN requested to view new civil actions the same day they are filed. We adjusted our manual practices to provide CSN same day access to the paper record.

As I understand Ms. Kristensen's request; CSN is seeking same day access to the digital record even if it has not yet been officially "accepted". This would be accomplished via a public terminal that would have access to a queue specifically designed for this purpose.

The ability to create a queue within Odyssey, and to allow access to the queue, fall under the guidelines and authorities established by the Idaho Supreme Court. As Clerk, I am not in a position to assist CSN. Hence this introduction to the parties that can resolve the matter.

If I can be of assistance, please do not hesitate to contact me, and good luck.

Sincerely,

Christopher D. Rich

Doc No. 9198568

| Court | Auditor | Recorder | Elections | Indigent Services |
|---|---|---|---|---|
| Ph (208) 287-6900 | Ph (208) 287-6879 | Ph (208) 287-6840 | Ph (208) 287-6860 | Ph (208) 287-7960 |
| Fax (208) 287-6919 | Fax (208) 287-6909 | Fax (208) 287-6849 | Fax (208) 287-6939 | Fax (208) 287-7969 |

# UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** Idaho

### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

U.S. District Court case number: 1:21-CV-00305-DCN

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 07/23/2021

Date of judgment or order you are appealing: 09/30/2024

Docket entry number of judgment or order you are appealing: 87

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes   ○ No   ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Sara Omundson in her official capacity as Administrative Director of Idaho Courts

Is this a cross-appeal?   ○ Yes   ◉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?   ○ Yes   ◉ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City:              State:              Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** /s/Keely E. Duke          **Date** Oct 29, 2024

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

Form 1                                                     *Rev. 06/09/2022*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Sara Omundson, in her official capacity as Administrative Director of Idaho Courts

Name(s) of counsel (if any):

Keely E. Duke
Molly E. Mitchell
DUKE EVETT, PLLC

Address: 1087 West River Street, Suite 300, Boise, ID 83702

Telephone number(s): 208-342-3310

Email(s): ked@dukeevett.com; mem@dukeevett.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ⦿ Yes   ◯ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Courthouse News Service

Name(s) of counsel (if any):

Katherine A. Keating
Jonathan G. Fetterly
BRYAN CAVE LEIGHTON PAISNER

Address: 3 Embarcadero Center, 7th Floor

Telephone number(s): 415-675-3400

Email(s): katherine.keating@bclplaw.com; jon.fetterly@bclplaw.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

| Form 6 | *1* | *New 12/01/2018* |
|---|---|---|

**ER-2833**

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?　　○ Yes　　○ No

## **Appellees**

Name(s) of party/parties:

Courthouse News Service

Name(s) of counsel (if any):

Amber N. Dina
GIVENS PURSLEY LLP

Address: 601 West Bannock Street

Telephone number(s): 208-388-1200

Email(s): amberdina@givenspursley.com

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**　　　　　　　　*2*　　　　　　　　*New 12/01/2018*

**ER-2834**

APPEAL,LC19,MEDIATION,PROTO,TERMED

**U.S. District Court**
**District of Idaho (LIVE) NextGen 1.8 (Boise - Southern)**
**CIVIL DOCKET FOR CASE #: 1:21-cv-00305-DCN**

Courthouse News Service v. Omundson
Assigned to: Judge David C. Nye
Demand: $0
Case in other court: 24-06697, USCA
Cause: 42:1983 Civil Rights Act

Date Filed: 07/23/2021
Date Terminated: 09/30/2024
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Courthouse News Service**                    represented by   **Amber N. Dina**
Givens Pursley LLP
601 W. Bannock Street
Boise, ID 83702
208-388-1200
Email: amberdina@givenspursley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Debora Kristensen Grasham**
GIVENS PURSLEY
PO Box 2720
Boise, ID 83701-2720
(208) 388-1200
Fax: 1-208-388-1300
Email: dkk@givenspursley.com
*TERMINATED: 03/28/2022*
*LEAD ATTORNEY*

**Jonathan G. Fetterly**
Bryan Cave Leighton Paisner LLP
3 Embarcadero Center, 7th Floor
San Francisco
San Francisco, CA 94111
415-268-1996
Email: Jon.Fetterly@bclplaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine A. Keating**
Bryan Cave Leighton Paisner LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
415-675-3400
Fax: 415-675-3434
Email: Katherine.Keating@bclplaw.com
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sara Omundson**                          represented by **Anne Henderson Haws**
*in her official capacity as Administratvie*                 Holland & Hart LLP
*Director of Idaho Courts*                                   800 W. Main Street
                                                            Ste. 1750
                                                            Boise, ID 83702
                                                            208-383-3937
                                                            Email: aehenderson@hollandhart.com
                                                            *TERMINATED: 10/03/2022*
                                                            *LEAD ATTORNEY*

                                                            **Keely E. Duke**
                                                            Duke Evett, PLLC
                                                            P.O. Box 7387
                                                            1087 West River Street, Suite 300
                                                            Boise, ID 83707
                                                            (208) 342-3310
                                                            Fax: (208) 342-3299
                                                            Email: ked@dukeevett.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Molly Mitchell**
                                                            Duke Evett, PLLC
                                                            1087 W. River Street
                                                            Suite 300
                                                            83702, Suite 500
                                                            Boise, ID 83702
                                                            208-342-3310
                                                            Email: mem@dukeevett.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/23/2021 | 1 | COMPLAINT against Sara Omundson ( Filing fee $ 402 receipt number AIDDC-2248678.), filed by Courthouse News Service. (Attachments: # 1 Cover Sheet, # 2 Summons)(Grasham, Debora) |
| 07/23/2021 | 2 | MOTION FOR PRO HAC VICE APPEARANCE by Katherine A. Keating. ( Filing fee $ 250 receipt number AIDDC-2248682.)Debora Kristensen Grasham appearing for Plaintiff Courthouse News Service. Responses due by 8/13/2021 (Grasham, Debora) |
| 07/23/2021 | 3 | MOTION FOR PRO HAC VICE APPEARANCE by Jonathan G. Fetterly. ( Filing fee $ 250 receipt number AIDDC-2248684.)Debora Kristensen Grasham appearing for Plaintiff Courthouse News Service. Responses due by 8/13/2021 (Grasham, Debora) |
| 07/26/2021 | 4 | DOCKET ENTRY ORDER approving 3 and 2 Motion for Pro Hac Vice Appearance of attorney Katherine A. Keating and Jonathan G. Fetterly for Courthouse News Service Per |

| | | |
|---|---|---|
| | | Local Rule 83.4(e), out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk). Signed by US Magistrate Judge Raymond Edward Patricco, Jr. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 07/26/2021 | 5 | Summons Issued as to Sara Omundson. (Print attached Summons for service.) (jd) |
| 08/16/2021 | 6 | SUMMONS Returned Executed by Courthouse News Service. Sara Omundson served on 7/30/2021, answer due 8/20/2021. (Grasham, Debora) |
| 09/10/2021 | 7 | Motion to Dismiss for Failure to State a Claim Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 10/1/2021 (Attachments: # 1 Memorandum in Support)(Duke, Keely) |
| 09/10/2021 | 8 | NOTICE of Assignment to Magistrate Judge and Requirement for Consent sent to counsel for Courthouse News Service, Sara Omundson re 7 Motion to Dismiss for Failure to State a Claim , 1 Complaint Consent/Objection to Magistrate due by 11/9/2021. (alw) |
| 09/23/2021 | 9 | STIPULATION re 7 Motion to Dismiss for Failure to State a Claim *Stipulation to Amend Deadline to Respond to Motion to Dismiss* by Courthouse News Service. (Grasham, Debora) |
| 09/24/2021 | 10 | DOCKET ENTRY ORDER ADOPTING 9 Stipulation filed by Plaintiff. Plaintiff's response to the Motion to Dismiss is due on or before October 8, 2021. Signed by US Magistrate Judge Raymond E. Patricco, Jr. (dg) |
| 09/27/2021 | | Set/Reset Deadlines as to 7 Motion to Dismiss for Failure to State a Claim . Responses due by 10/8/2021. (jd) |
| 10/08/2021 | 11 | MEMORANDUM in Opposition re 7 Motion to Dismiss for Failure to State a Claim filed by Courthouse News Service. Replies due by 10/22/2021.(Fetterly, Jonathan) |
| 10/22/2021 | 12 | REPLY to Response to Motion re 7 Motion to Dismiss for Failure to State a Claim filed by Sara Omundson.Motion Ripe Deadline set for 10/25/2021.(Duke, Keely) |
| 10/25/2021 | | NOTICE: Pursuant to FRCP 7.1 you are required to file a Corporate Disclosure Statement with the Clerk's Office. You can do this by choosing the category Other Documents, then select Corporate Disclosure Statement. (kt) |
| 10/26/2021 | 13 | Corporate Disclosure Statement by Courthouse News Service. (Grasham, Debora) |
| 11/12/2021 | | The 60 day deadline has expired. Case has been reassigned to a District Judge. No more notices of availability or assignment will be sent out. Consent deadline(s) termed. (kt) |
| 11/12/2021 | | DOCKET ENTRY NOTICE of Case Number Change, Case reassigned to Judge David C. Nye for all further proceedings. US Magistrate Judge Raymond Edward Patricco, Jr no longer assigned to case. Please use this case number on all future pleadings, 1:21-cv-00305-DCN. (kt) |
| 11/15/2021 | 14 | MOTION for Preliminary Injunction Jonathan G. Fetterly appearing for Plaintiff Courthouse News Service. Responses due by 12/6/2021 (Attachments: # 1 Memorandum in Support of Motion for Preliminary Injunction, # 2 Declaration of William Girdner in support thereof, # 3 Declaration of Catherine Valenti in support thereof)(Fetterly, Jonathan) |
| 11/30/2021 | 15 | NOTICE by Courthouse News Service re 7 Motion to Dismiss for Failure to State a Claim , 14 MOTION for Preliminary Injunction *re SUPPLEMENTAL AUTHORITY* (Fetterly, Jonathan) |

| 12/06/2021 | 16 | MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction , 15 Notice (Other) Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 12/27/2021 (Duke, Keely) |
| 12/06/2021 | 17 | ORDER GRANTING JOINT MOTION FOR EXTENSION OF TIME RE: MOTION FOR PRELIMINARY INJUNCTION - IT IS HEREBY ORDERED that Defendant Sara Omundsons deadline to file a response to Plaintiff Courthouse News Services Motion for Preliminary Injunction (Dkt. 14 ) is December 21, 2021. IT IS FURTHER ORDERED that Plaintiffs deadline to file a reply is January 18, 2022. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 12/21/2021 | 18 | MOTION for Extension of Time to File Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 1/11/2022 (Duke, Keely) |
| 12/21/2021 | 19 | DOCKET ENTRY ORDER. Pursuant to the parties' stipulation, it is hereby ordered that the joint Motion to Extend Deadlines (Dkt. 18 ) is GRANTED. Defendants' response to the Preliminary Injunction is due on or before December 22, 2021, and Plaintiff's reply is due on or before January 19, 2022. For the parties benefit, the Court notes that it is tentatively planning to hold a hearing on the Motion to Dismiss and Motion for Preliminary Injunction sometime the week of February 14, 2022. Once the Court solidifies its criminal calendar, it will send a notice of hearing. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |
| 12/22/2021 | 20 | RESPONSE to Motion re 16 MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction , 15 Notice (Other) , 18 MOTION for Extension of Time to File , 14 MOTION for Preliminary Injunction filed by Sara Omundson. Replies due by 1/5/2022. (Attachments: # 1 Affidavit Renae Bieri, # 2 Exhibit a, # 3 Exhibit b, # 4 Exhibit c, # 5 Exhibit d, # 6 Exhibit e, # 7 Exhibit f, # 8 Exhibit g, # 9 Exhibit h, # 10 Exhibit i, # 11 Exhibit j, # 12 Exhibit k, # 13 Exhibit l, # 14 Affidavit Margaret Molchan, # 15 Exhibit a, # 16 Affidavit Judge Hippler, # 17 Affidavit Sara Omundson, # 18 Exhibit A, # 19 Exhibit B, # 20 Affidavit Carley Nelson, # 21 Affidavit Jason Spillman, # 22 Exhibit A, # 23 Exhibit B)(Duke, Keely) |
| 12/29/2021 | 21 | NOTICE by Courthouse News Service re 7 Motion to Dismiss for Failure to State a Claim *of Supplemental Authority in Opposition to Defendant's Motion to Dismiss* (Attachments: # 1 Exhibit 1- Report and Recommendation, # 2 Exhibit 2- Order on Report)(Fetterly, Jonathan) |
| 01/04/2022 | 22 | DOCKET ENTRY NOTICE of Hearing on Motion 14 MOTION for Preliminary Injunction , 7 Motion to Dismiss for Failure to State a Claim : Motion Hearing set for 2/18/2022 at 10:00 AM in Boise - Courtroom 2 before Judge David C. Nye. (pr) |
| 01/13/2022 | 23 | ERRATA by Defendant Sara Omundson re 20 Response to Motion,,, . (Attachments: # 1 Declaration of Marissa Garza)(Duke, Keely) |
| 01/14/2022 | 24 | Joint MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction Jonathan G. Fetterly appearing for Plaintiff Courthouse News Service. Responses due by 2/4/2022 (Fetterly, Jonathan) |
| 01/14/2022 | 25 | DOCKET ENTRY ORDER. Pursuant to the parties' stipulation, it is hereby ordered that the joint Motion to Extend Deadlines (Dkt. 24 ) is GRANTED. Plaintiff's reply is due on or before January 24, 2022. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |

| | | |
|---|---|---|
| 01/24/2022 | 26 | REPLY to Response to Motion re 14 MOTION for Preliminary Injunction *In Support of* filed by Courthouse News Service.Motion Ripe Deadline set for 1/25/2022. (Attachments: # 1 Supplement Declaration of C. Valenti, # 2 Supplement Declaration of William Girdner)(Fetterly, Jonathan) |
| 02/08/2022 | 27 | DOCKET ENTRY NOTICE ADDING ZOOM LANGUAGE for Courthouse News v Omundson: Motion hearing scheduled for 2/18/2022 at 10:00 AM will be held via zoom. Members of the public may use the following to attend via Audio ONLY: 1-669-254-5252, Meeting ID:161 487 8585, Meeting Password: 276109. Persons granted remote access to proceedings are reminded of the general prohibition under federal law and Local Rule 83.1 against Photographing, recording, and rebroadcasting of court proceedings. (pr) (pr) |
| 02/10/2022 | 28 | NOTICE by Sara Omundson re 7 Motion to Dismiss for Failure to State a Claim *Notice of Supplemental Authority* (Attachments: # 1 Exhibit A)(Duke, Keely) |
| 02/10/2022 | 29 | REPLY re 14 MOTION for Preliminary Injunction filed by Sara Omundson *Surreply Filed in Opposition*. (Attachments: # 1 Declaration of Renea Bieri, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Declaration of Keely Duke, # 6 Exhibit A)(Duke, Keely) |
| 02/11/2022 | 30 | RESPONSE re 7 Motion to Dismiss for Failure to State a Claim , 28 Notice (Other) filed by Courthouse News Service . (Fetterly, Jonathan) |
| 02/14/2022 | 31 | RESPONSE re 14 MOTION for Preliminary Injunction filed by Courthouse News Service *to Defendant Sara Omundson's Surreply in Opposition to Motion for Preliminary Injunction*. (Fetterly, Jonathan) |
| 02/15/2022 | 32 | NOTICE by Courthouse News Service re 7 Motion to Dismiss for Failure to State a Claim , 14 MOTION for Preliminary Injunction *of Supplemental Authority in Opposition to Defendant's Motion to Dismiss and in Support of CNS' Motion for Preliminary Injunction* (Attachments: # 1 Exhibit 1- Report and Recommendation)(Fetterly, Jonathan) |
| 02/18/2022 | 33 | NOTICE by Courthouse News Service re 14 MOTION for Preliminary Injunction *of Clarification Following Hearing* (Fetterly, Jonathan) |
| 02/18/2022 | 34 | Minute Entry for proceedings held before Judge David C. Nye: Motion Hearing held on 2/18/2022 re 7 Motion to Dismiss for Failure to State a Claim filed by Sara Omundson, 14 MOTION for Preliminary Injunction filed by Courthouse News Service. Court heard oral arguments, matter taken under advisement with a written decision to be forthcoming. (Court Reporter/ESR Anne Bowline.) (pr) (Entered: 02/23/2022) |
| 02/24/2022 | 35 | SUPPLEMENT by Defendant Sara Omundson re 7 Motion to Dismiss for Failure to State a Claim *Notice of Supplementation Following Hearing on Motion to Dismiss*. (Duke, Keely) |
| 03/01/2022 | 36 | Notice of Filing of Official Transcript of Motions Hearing Proceedings held on 2/18/2022 before Judge David C. Nye. Court Reporter/Transcriber Anne Bowline, Email anne_bowline@id.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. This transcript is not available to the general public and as such is sealed until release of transcript restriction. Redaction Request due 3/22/2022. Redacted Transcript Deadline set for 4/1/2022. Release of Transcript Restriction set for 5/31/2022. (amb) |
| 03/28/2022 | 37 | NOTICE of Substitution - Attorney Amber N. Dina for Courthouse News Service added. Attorney Debora Kristensen Grasham terminated. Request to Turn Electronic Noticing OFF (no longer receive NEFs in this case only) by Attorney (Grasham, Debora) |

| 04/04/2022 | 38 | NOTICE by Courthouse News Service re 7 Motion to Dismiss for Failure to State a Claim , 14 MOTION for Preliminary Injunction *of Supplemental Authority* (Attachments: # 1 Exhibit 1 - Copy of Judge Simon's Order)(Fetterly, Jonathan) |
| 04/05/2022 | 39 | NOTICE by Sara Omundson re 38 Notice (Other), (Duke, Keely) |
| 04/14/2022 | 40 | MEMORANDUM DECISION AND ORDER - Omundsons Motion to Dismiss (Dkt. 17 ) is DENIED. CNSs Motion for Preliminary Injunction (Dkt. 14 ) is DENIED. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 05/06/2022 | 41 | LITIGATION ORDER AND NOTICE OF TELEPHONIC SCHEDULING CONFERENCE - On or before June 6, 2022, the parties must file with the Court the joint Litigation Plan and Discovery Plan. Telephonic Scheduling Conference June 13, 2022 at 9:00 a.m. mountain time - Boise Chambers before Judge David C. Nye. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 06/06/2022 | 42 | DISCOVERY PLAN by Sara Omundson . (Duke, Keely) |
| 06/06/2022 | 43 | SCHEDULING CONFERENCE FORM - LITIGATION PLAN by Sara Omundson. (Duke, Keely) |
| 06/07/2022 | 44 | SCHEDULING ORDER (EXPEDITED TRACK) - The telephonic scheduling conference June 13, 2022 is VACATED. All dispositive motions shall be filed by October 20,2022. All motions to amend pleadings and join parties, except for allegations of punitive damages, shall be filed on or before July 8, 2022. ADR must be held by September 14, 2022. All factual discovery will be completed by October 6,2022. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 06/07/2022 | 45 | ANSWER to 1 Complaint by Sara Omundson.(Duke, Keely) |
| 09/14/2022 | 46 | STIPULATION re 44 Order,,, Set Deadlines/Hearings,, *TO MODIFY SCHEDULING ORDER* by Courthouse News Service. (Attachments: # 1 Supplement Proposed Order) (Fetterly, Jonathan) |
| 09/16/2022 | 47 | ORDER MODIFYING SCHEDULING ORDER - The ADR completion date is continued from September 14, 2022, to October 21, 2022; The fact discovery completion date is continued from October 6, 2022, to November 11, 2022; and The dispositive motion cut-off date is continued from October 20, 2022, to November 18, 2022. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 10/03/2022 | 48 | NOTICE by Sara Omundson *Notice of Removal of Attorney* (Duke, Keely) |
| 10/03/2022 | | NOTICE TO COURT that counsel Anne E. Henderson wishes to no longer be noticed electronically on this case as of the date of this notice. (Duke, Keely) |
| 11/07/2022 | 49 | STIPULATION re 44 Order,,, Set Deadlines/Hearings,, 47 Order,, Set Deadlines/Hearings, by Courthouse News Service. (Attachments: # 1 Supplement Proposed Order)(Fetterly, Jonathan) |
| 11/09/2022 | 50 | ORDER FURTHER MODIFYING SCHEDULING ORDER - The dispositive motion cut-off date is continued from November 18, 2022, to December 2, 2022; Response briefs will be due on December 22, 2022; and Reply briefs will be due on January 13, 2023. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |

| | | |
|---|---|---|
| 11/09/2022 | 51 | STIPULATION *FOR PROTECTIVE ORDER* by Courthouse News Service. (Fetterly, Jonathan) |
| 11/10/2022 | 52 | DOCKET ENTRY ORDER. The Parties have filed a Stipulation for Protective Order. Dkt. 51 . The Court has reviewed the proposed order and APPROVES the same. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |
| 11/30/2022 | 53 | STIPULATION re 50 Order,, Set Deadlines/Hearings, 44 Order,,, Set Deadlines/Hearings,, 47 Order,, Set Deadlines/Hearings, by Sara Omundson. (Duke, Keely) |
| 12/01/2022 | 55 | ORDER FURTHER MODIFYING SCHEDULING ORDER - The dispositive motion cut-off date is continued from October 20, 2022, to December 15, 2022. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) (Entered: 12/02/2022) |
| 12/02/2022 | 54 | DOCKET ENTRY ORDER. Pending before the Court is the parties' stipulation to amend scheduling order. Dkt. 53 . Good cause appearing, the same is APPROVED. The deadlines outlined therein shall govern moving forward. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the Notice of Electronic Filing (NEF) by (bb) |
| 12/14/2022 | 56 | MOTION for Leave to File Excess Pages Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 1/4/2023 (Duke, Keely) |
| 12/15/2022 | 57 | ORDER GRANTING MOTION FILE OVERLENGTH BRIEF (Dkt. 56 ) - The parties may file an overlength memorandum in support of their motion for summary judgment and statement of undisputed facts, which will not exceed thirty (30) pages in length each, the parties may file opposition briefs not to exceed thirty (30) pages in length, and the parties may file reply briefs not to exceed twenty (20) pages in length. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (lm) |
| 12/15/2022 | 58 | MOTION to Seal Document Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 1/5/2023 (Duke, Keely) |
| 12/15/2022 | 59 | Sealed Document. (Attachments: # 1 Exhibit A, # 2 Declaration of TerryDerrick, # 3 Errata 1, # 4 Exhibit E, # 5 Exhibit F to Declaration of Keely Duke, # 6 Exhibit G to Declaration of Keely Duke, # 7 Declaration of Sara Omundson)(Duke, Keely) |
| 12/15/2022 | 60 | MOTION for Summary Judgment Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 1/5/2023 (Attachments: # 1 Statement of Undisputed Facts, # 2 Memorandum in Support, # 3 Declaration of Keely E. Duke, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Declaration of Emily Carroll, # 19 Exhibit A, # 20 Exhibit B, # 21 Exhibit C, # 22 Exhibit D, # 23 Exhibit E, # 24 Exhibit F, # 25 Exhibit G, # 26 Declaration of Judge Mitchell Brown, # 27 Declaration of Judge Eric Wildman, # 28 Declaration of Judge Cynthia Meyer, # 29 Declaration of Judge Davis VanderVelde, # 30 Declaration of Judge Dane Watkins, # 31 Declaration of Judge Rick Carnaroli, # 32 Declaration of Judge Gaskill, # 33 Declaration of Sharee Sprague, # 34 Declaration of Roland Gammill, # 35 Declaration of Sandra Barros, # 36 Declaration of Karlene Behringer, # 37 Declaration of Kerry Hong, # 38 Declaration of Jamie Robb, # 39 Declaration of Shelli Tubbs, # 40 Declaration of Tammie Whyte, # 41 Declaration of Angie Wood)(Duke, Keely) |

| | | |
|---|---|---|
| 12/15/2022 | 61 | MOTION for Summary Judgment Jonathan G. Fetterly appearing for Plaintiff Courthouse News Service. Responses due by 1/5/2023 (Attachments: # 1 Memorandum in Support, # 2 Supplement Separate Statement of Undisputed Facts, # 3 Supplement Declaration of Jimmy Shimabukuro, # 4 Supplement Declaration of Adam Angione)(Fetterly, Jonathan) |
| 12/15/2022 | 62 | DECLARATION of Catherine Valenti re 61 MOTION for Summary Judgment filed by Courthouse News Service . (Fetterly, Jonathan) |
| 12/15/2022 | 63 | DECLARATION of Amber Dina re 61 MOTION for Summary Judgment filed by Courthouse News Service . (Fetterly, Jonathan) |
| 12/15/2022 | 64 | DECLARATION of William Girdner re 61 MOTION for Summary Judgment filed by Courthouse News Service . (Fetterly, Jonathan) |
| 12/15/2022 | 65 | DECLARATION of William Girdner (Exhibits 16 - 30) re 61 MOTION for Summary Judgment , 64 Declaration filed by Courthouse News Service . (Fetterly, Jonathan) |
| 12/15/2022 | 66 | DECLARATION of Jonathan Fetterly re 61 MOTION for Summary Judgment filed by Courthouse News Service . (Attachments: # 1 Exhibit 12, # 2 Exhibit 13 - 20)(Fetterly, Jonathan) |
| 12/19/2022 | 67 | ERRATA by Plaintiff Courthouse News Service re 66 Declaration *of Jonathan G. Fetterly*. (Attachments: # 1 Supplement Declaration of Jonathan G. Fetterly in Support) (Keating, Katherine) |
| 01/05/2023 | 68 | RESPONSE to Motion re 58 MOTION to Seal Document filed by Courthouse News Service. Replies due by 1/19/2023.(Keating, Katherine) |
| 01/11/2023 | 69 | STIPULATION re 50 Order,, Set Deadlines/Hearings, 55 Order,, Set Deadlines/Hearings, 44 Order,,, Set Deadlines/Hearings,, 47 Order,, Set Deadlines/Hearings, *Stipulation to Further Modify Scheduling Order* by Sara Omundson. (Duke, Keely) |
| 01/11/2023 | 70 | ORDER FURTHER MODIFYING SCHEDULING ORDER - Summary judgment response briefs will be due on January 19, 2023; and Summary judgment reply briefs will be due on February 9, 2023. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) (Entered: 01/12/2023) |
| 01/11/2023 | | Set/Reset Deadlines as to 60 MOTION for Summary Judgment , 61 MOTION for Summary Judgment . Responses due by 1/19/2023. Replies due by 2/9/2023. (jd) (Entered: 01/12/2023) |
| 01/18/2023 | 71 | STIPULATION *to Further Modify Scheduling Order* by Courthouse News Service. (Keating, Katherine) |
| 01/19/2023 | 72 | DOCKET ENTRY ORDER. In accordance with the Parties' stipulation (Dkt. 71 ) it is hereby ordered: Response briefs to the respective Motions for Summary Judgment will be due on or before January 25, 2023. Reply briefs will be due on or before February 15, 2023. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |
| 01/19/2023 | 73 | REPLY to Response to Motion re 58 MOTION to Seal Document filed by Sara Omundson.Motion Ripe Deadline set for 1/20/2023.(Duke, Keely) |
| 01/20/2023 | | Set/Reset Deadlines as to 60 MOTION for Summary Judgment , 61 MOTION for Summary Judgment . Responses due by 1/25/2023. Replies due by 2/15/2023. (jd) |
| 01/25/2023 | 74 | RESPONSE to Motion re 60 MOTION for Summary Judgment filed by Courthouse News Service. Replies due by 2/8/2023. (Attachments: # 1 Supplement DECLARATION |

| | | |
|---|---|---|
| | | OF KATHERINE KEATING, # 2 Supplement DECLARATION OF ADAM ANGIONE, # 3 Appendix)(Keating, Katherine) |
| 01/25/2023 | 75 | RESPONSE to Motion re 61 MOTION for Summary Judgment filed by Sara Omundson. Replies due by 2/8/2023. (Attachments: # 1 Declaration of Lindsey Bratcher, # 2 Declaration of Emily Carroll, # 3 Declaration of Angie Cooke, # 4 Declaration of Michelle Crist-Aguiar, # 5 Declaration of Roland Gammill, # 6 Declaration of Kerry Hong, # 7 Declaration of Charlene Krames, # 8 Declaration of Mary Prisco, # 9 Declaration of Shelly Tilton, # 10 Declaration of Keely E. Duke, # 11 Exhibit A- Wyden Letter, # 12 Exhibit B-CNS Reports, # 13 Exhibit C-Produced in Native Format)(Duke, Keely) |
| 01/25/2023 | 76 | RESPONSE to Motion re 60 MOTION for Summary Judgment *TO STATEMENT OF UNDISPUTED FACTS IS SUPPORT* filed by Courthouse News Service. Replies due by 2/8/2023.(Keating, Katherine) |
| 02/02/2023 | 77 | MOTION for Leave to File *Sur-Reply in Opposition to Defendant's Motion to Seal* Katherine A. Keating appearing for Plaintiff Courthouse News Service. Responses due by 2/23/2023 (Attachments: # 1 Exhibit 1 - Proposed Surreply, # 2 Exhibit 2 - Declaration of Katherine Keating)(Keating, Katherine) |
| 02/10/2023 | 78 | DECLARATION filed by Sara Omundson *Supplemental Declaration in Support of Motion for Summary Judgment*. (Attachments: # 1 Exhibit A-Redacted Version of Sara Omundson Dec, # 2 Exhibit B-Redacted Version of Jennifer Dvorak)(Duke, Keely) |
| 02/15/2023 | 79 | REPLY to Response to Motion re 60 MOTION for Summary Judgment filed by Sara Omundson.Motion Ripe Deadline set for 2/16/2023. (Attachments: # 1 Appendix Response to Evidentiary Objections)(Duke, Keely) |
| 02/15/2023 | 80 | RESPONSE to Motion re 61 MOTION for Summary Judgment filed by Courthouse News Service. Replies due by 3/1/2023. (Attachments: # 1 Supplement DECLARATION OF KATHERINE KEATING)(Keating, Katherine) |
| 02/23/2023 | 81 | RESPONSE to Motion re 77 MOTION for Leave to File *Sur-Reply in Opposition to Defendant's Motion to Seal* filed by Sara Omundson. Replies due by 3/9/2023.(Duke, Keely) |
| 03/06/2023 | 82 | DOCKET ENTRY NOTICE of Hearing: A hearing on Defendant's 60 MOTION for Summary Judgment; Plaintiff's 77 MOTION for Leave to File *Sur-Reply in Opposition to Defendant's Motion to Seal*; Plaintiff's 61 MOTION for Summary Judgment; and Defendant's 58 MOTION to Seal Document is set for 7/10/2023 at 02:00 PM in Boise - Courtroom 2 before Judge David C. Nye. (ab) |
| 07/06/2023 | 83 | AMENDED NOTICE of Hearing on Motion 60 MOTION for Summary Judgment , 77 MOTION for Leave to File *Sur-Reply in Opposition to Defendant's Motion to Seal*, 61 MOTION for Summary Judgment , 58 MOTION to Seal Document : At the request of counsel, the Motion Hearing set for 7/10/2023 at 2:00 pm is VACATED and RESCHEDULED for 7/10/2023 at 03:00 PM in Boise - Courtroom 1 before Judge David C. Nye. **Time change only**(pr) |
| 07/10/2023 | 84 | Minute Entry for proceedings held before Judge David C. Nye: Motion Hearing held on 7/10/2023 re 61 MOTION for Summary Judgment filed by Courthouse News Service, 60 MOTION for Summary Judgment filed by Sara Omundson, 77 MOTION for Leave to File *Sur-Reply in Opposition to Defendant's Motion to Seal* filed by Courthouse News Service, 58 MOTION to Seal Document filed by Sara Omundson. Matter taken under advisement with a written decision to be forthcoming. (Court Reporter/ESR Anne Bowline.) (pr) (Entered: 07/12/2023) |

| 07/18/2023 | 85 | Notice of Filing of Official Transcript of Motion Hearing Proceedings held on 7/10/2023 before Judge David C. Nye. Court Reporter Anne Bowline, Email Anne_Bowline@id.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. This transcript is not available to the general public and as such is sealed until release of transcript restriction. Redaction Request due 8/8/2023. Redacted Transcript Deadline set for 8/18/2023. Release of Transcript Restriction set for 10/16/2023. (amb) |
|---|---|---|
| 09/30/2024 | 86 | MEMORANDUM DECISION AND ORDER - Omundson's Motion to Seal (Dkt. 58 ) is GRANTED in PART and DENIED in PART as outlined above. The documents already under seal shall remain as such except the Docketing Clerk is directed to unseal Dkts. 59-2, 59-5, and 59-6. Redacted versions already filed shall remain on file.CNS's Motion for Leave to File Sur-Reply (Dkt. 77 ) is GRANTED. Omundson's Motion for Summary Judgment (Dkt. 60 ) is DENIED. CNS's Motion for Summary Judgment (Dkt. 61 ) is GRANTED. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ac) |
| 09/30/2024 | 87 | JUDGMENT - IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Plaintiff, Courthouse News Service, and this case CLOSED. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ac) |
| 10/11/2024 | 88 | STIPULATION *to Extend Deadlines for Filing Motion for Attorneys' Fees and Costs Bill* by Courthouse News Service. (Fetterly, Jonathan) |
| 10/11/2024 | 89 | ORDER EXTENDING DEADLINES FOR FILING MOTION FOR ATTORNEYS' FEES AND COSTS BILL-The deadlines for filing Plaintiff Courthouse News Service's motion for attorney's fees and related nontaxable expenses, and its costs bill, are hereby extended to and including November 14, 2024. IT IS SO ORDERED. Signed by Judge David C. Nye. ( Case Management deadline set for 11/14/2024.)(caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ac) |
| 10/29/2024 | 90 | NOTICE OF APPEAL as to 87 Judgment, by Sara Omundson. Filing Fee Due. $ 605, receipt number AIDDC-2833832. (Notice sent to Court Reporter & 9th Cir) (Duke, Keely) |
| 11/04/2024 | 91 | USCA Case Number ( 24-6697) USCA for dkt. 90 Notice of Appeal filed by Sara Omundson. (ac) (Entered: 11/05/2024) |
| 11/04/2024 | 92 | USCA Scheduling Order ( USCA No. 24-6697) as to 90 Notice of Appeal filed by Sara Omundson. (Notice sent to Court Reporter) (ac) (Entered: 11/05/2024) |
| 11/07/2024 | 93 | STIPULATION re 89 Order,,, Set Deadlines/Hearings,, *to Further Extend Deadlines for Filing Motion for Attorneys' Fees and Costs Bill* by Courthouse News Service. (Fetterly, Jonathan) |
| 11/08/2024 | 94 | ORDER FURTHER EXTENDING DEADLINES FOR FILING MOTION FOR ATTORNEYS' FEES AND COSTS BILL - The deadlines for filing Plaintiff Courthouse News Services motion for attorneys fees and related nontaxable expenses, and its costs bill, are hereby extended to and including December 3, 2024. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 11/12/2024 | 95 | TRANSCRIPT REQUEST by Sara Omundson for proceedings held on 02/18/2022 and 07/10/2023 before Judge Judge Nye, re 90 Notice of Appeal (Notice sent by e-mail to |

| | | Court Reporter) Transcript due by 12/12/2024. (Duke, Keely) |
|---|---|---|
| 11/18/2024 | 96 | MOTION to Stay *Injunction Pending Appeal* Keely E. Duke appearing for Defendant Sara Omundson. Responses due by 12/9/2024 (Attachments: # 1 Memorandum in Support)(Duke, Keely) |
| 11/19/2024 | 97 | DOCKET ENTRY ORDER. Before the Court is Omundson's Motion to Stay Injunction Pending Appeal. Dkt. 96 . CNS's response to the Motion is due on or before November 26, 2024, and is limited to 15 pages. Once the Court has reviewed CNS's submission, it will determine whether a reply brief is necessary. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |
| 11/19/2024 | | Set/Reset Deadlines as to dkt. 96 MOTION to Stay. Responses due by 11/26/2024 (ac) (Entered: 11/20/2024) |
| 11/26/2024 | 98 | MEMORANDUM in Opposition re 96 MOTION to Stay *Injunction Pending Appeal -- Plaintiff Courthouse News Service's Opposition to Motion to Stay Injunction Pending Appeal* filed by Courthouse News Service. Replies due by 12/10/2024.(Fetterly, Jonathan) |
| 11/27/2024 | 99 | DOCKET ENTRY ORDER. Should Omundson desire to file a reply brief in support of her Motion to Stay, she may do so on or before December 3, 2024. Any reply brief is limited to 6 pages. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (bb) |
| 12/03/2024 | 100 | REPLY to Response to Motion re 96 MOTION to Stay *Injunction Pending Appeal* filed by Sara Omundson.Motion Ripe Deadline set for 12/4/2024.(Duke, Keely) |
| 12/03/2024 | 101 | BILL OF COSTS by Courthouse News Service. Taxation of Costs due by 12/17/2024 (Attachments: # 1 Supplement Declaration of Jonathan G. Fetterly in Support of Bill of Costs, # 2 Exhibit Tri-County Invoice, # 3 Exhibit Anne Bowline Invoice, # 4 Exhibit Anne Bowline Invoice 2, # 5 Exhibit Buell Invoice, # 6 Exhibit Veritext Invoice, # 7 Exhibit Veritext Invoice 2, # 8 Exhibit Buell Invoice 2, # 9 Exhibit Buell Invoice 3, # 10 Exhibit Buell Invoice 4, # 11 Exhibit Buell Invoice 5)(Fetterly, Jonathan) |
| 12/03/2024 | 102 | MOTION for Attorney Fees *by* Jonathan G. Fetterly appearing for Plaintiff Courthouse News Service. Responses due by 12/24/2024 (Attachments: # 1 Memorandum in Support of Motion for Attorneys' Fees)(Fetterly, Jonathan) |
| 12/03/2024 | 103 | DECLARATION of Jonathan G. Fetterly re 102 MOTION for Attorney Fees *by* filed by Courthouse News Service *in Support*. (Attachments: # 1 Exhibit Exh. 1 BCLP Invoices, # 2 Exhibit Exh. 2 BCLP Billed Fees, # 3 Exhibit Exh. 3 BCLP Timekeeper Summary, # 4 Exhibit Exh. 4 Settlement Email, # 5 Exhibit Exh. 5 Screenshot, # 6 Exhibit Exh. 6 Screenshot, # 7 Exhibit Exh. 7 BCLP October 2024 Invoice, # 8 Exhibit Exh. 8 BCLP November 2024 WIP)(Fetterly, Jonathan) |
| 12/03/2024 | 104 | DECLARATION of Amber N. Dina re 102 MOTION for Attorney Fees *by* filed by Courthouse News Service *in Support*. (Attachments: # 1 Exhibit 1., # 2 Exhibit 2., # 3 Exhibit 3. Grasham Bio)(Fetterly, Jonathan) |
| 12/03/2024 | 105 | DECLARATION of William Girdner re 102 MOTION for Attorney Fees *by* filed by Courthouse News Service *in Support*. (Fetterly, Jonathan) |
| 12/03/2024 | 106 | DECLARATION of Richard M. Pearl re 102 MOTION for Attorney Fees *by* filed by Courthouse News Service *in Support*. (Attachments: # 1 Exhibit A. September 2024 Resume, # 2 Exhibit B. Bay Area Awards, # 3 Exhibit C. Rates Charged by Bay Area Firms, # 4 Exhibit D. PGE Application, # 5 Exhibit E. 2023 RRR SF Revised, # 6 Exhibit F. 2023 RRR)(Fetterly, Jonathan) |

| 12/10/2024 | 107 | STIPULATION re 102 MOTION for Attorney Fees *by*, 101 Bill of Costs,, by Sara Omundson. (Duke, Keely) |
| 12/10/2024 | 108 | ORDER EXTENDING DEADLINES FOR FILING OBJECTIONS TO CNS' MOTION FOR ATTORNEYS' FEES AND COSTS BILL - The deadlines for filing Objections to Plaintiff Courthouse News Service's motion for attorneys' fees and related nontaxable expenses, and its costs bill, are hereby extended to and including January 14, 2025.IT IS SO ORDERED. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ac) |
| 12/17/2024 | 109 | MEMORANDUM DECISION AND ORDER - The Court will GRANT the Motion and stay implementation of its injunction pending resolution of Omundson's appeal.Omundson's Motion to Stay Injunction Pending Appeal (Dkt. 96 ) is GRANTED. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ac) |
| 01/14/2025 | 110 | OBJECTION TO BILL OF COSTS by Sara Omundson re 101 Bill of Costs,, filed by Courthouse News Service. (Duke, Keely) |
| 01/14/2025 | 111 | RESPONSE to Motion re 102 MOTION for Attorney Fees *by* filed by Sara Omundson. Replies due by 1/28/2025. (Attachments: # 1 Declaration of Keely Duke in Support, # 2 Exhibit A-GP Media Law, # 3 Exhibit B-Civil Case Report, # 4 Exhibit C-Excel Produced in Native Format, # 5 Exhibit D-Complaint Gilmer, # 6 Exhibit E-Complaint New Mexico, # 7 Exhibit F-Prelim Memo New Mexico, # 8 Exhibit G-Prelim Memo Gilmer, # 9 Exhibit H-Dismiss Opp Memo Gilmer, # 10 Exhibit I-MSJ Memo Cozine, # 11 Exhibit J-Complaint Taniguchi, # 12 Exhibit K-Sub to Carley Nelson)(Duke, Keely) |
| 01/17/2025 | 112 | STIPULATION *to Extend Deadlines for Filing Replies in Support of Motion for Attorneys' Fees and Costs Bill* by Courthouse News Service. (Fetterly, Jonathan) |
| 01/21/2025 | 113 | ORDER EXTENDING DEADLINES FOR FILING REPLIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS BILL - The deadlines for filing Plaintiff Court house News Services reply brief in support of its motion for attorneys fees, and its reply brief/response to Defendants objections to the costs bill, are extended to and including to February 11, 2025. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/04/2025 14:30:30 | | |
| **PACER Login:** | ███████ | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00305-DCN |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |