**No. 24-6697**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee,*

v.

SARA OMUNDSON,

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Idaho
No. 1:21-CV-00305-DCN
Hon. David C. Nye Presiding

---

## APPELLANT'S OPENING BRIEF

---

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com;
mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

JURISDICTIONAL STATEMENT.....................................................................3

ISSUES PRESENTED ..........................................................................................4

ADDENDUM .........................................................................................................4

STATEMENT OF THE CASE.............................................................................4

SUMMARY OF THE ARGUMENT .................................................................10

STANDARD OF REVIEW ................................................................................14

ARGUMENT .......................................................................................................15

I.    The District Court erred by not abstaining. ..............................................15

II.   The District Court erred in holding that the right of timely access attaches upon submission of the complaint into e-File & Serve and before it is reviewed and then accepted by the clerk for filing in Case Manager.......21

   A.  Complaints that have not gone through pre-acceptance review by the clerk are not judicial documents as a matter of law, and therefore no right of timely access attaches.............................................................................21

   B.  Complaints awaiting clerk review and acceptance in eFile & Serve are not judicial documents based on the *Press-Enterprise II* test. .......................28

      1. Access to newly filed civil complaints under Idaho's e-filing system is consistent with the access that was historically provided with paper filing.......................................................................................................28

      2. Providing the press and public with access to complaints that have not yet been accepted for filing does not play a significant positive role in the functioning of the court system. .....................................................30

i

III. **The District Court erred in holding that the delay between submission of the complaint and review and acceptance by the clerk gives rise to a violation of the qualified right of timely access. ...........................32**

   A.  The "rigorous scrutiny" standard applied by the District Court is akin to strict scrutiny, which is not the appropriate standard for content-neutral time, place, and manner restrictions. ........................................................33

   B.  There is a substantial probability that Idaho Courts' interest in the fair and orderly administration of justice would be impaired by immediate, pre-acceptance access. ...................................................................................38

      1.  The requirement for clerk review and acceptance for filing prior to public access is narrowly tailored to serve Idaho Courts' interests. ...38

      2.  The length of time between when a document is submitted to eFile & Serve and clerk review for acceptance into Case Manager does not give rise to a constitutional violation when weighed against the reasons for requiring clerk review...................................................42

   C.  The delays between submission to eFile & Serve and clerk review are minimal, and there are no reasonable alternatives that would provide CNS with more immediate access. ...................................................................46

      1.  Either Press Review Queue option impairs the Idaho Courts' interests........................................................................................47

        a.  Costs ........................................................................................47

        b.  Security concerns ..................................................................48

        c.  Erosion of public confidence in the courts and potential for abuse ......................................................................................50

        d.  Building a Press Review Queue using Tyler's API is not a reasonable alternative……………………………………………51

2.  Auto Accept impairs the Idaho Courts' interests ..........................52

a.  Costs ...................................................................52

b.  Security concerns ....................................................54

c.  Prejudice to litigants................................................54

**CONCLUSION**...............................................................**55**

# TABLE OF AUTHORITIES

**Cases**

*Almodovar v. Rainer*, 832 F.2d 1138 (9th Cir. 1987)................................14

*Borough of Stroudsbourg*, 23 F.3d 772 (3d Cir. 1994) ................................... 25, 26

*Citizens Against Linscott/Interstate Asphalt Plant v.*
    *Bonner Cnty. Bd. of Commissioners*, 168 Idaho 705,
    P.3d 515, 524 (2021)........................................................ 11, 18, 24, 27

*Comcast of Sacramento I, LLC v. Sacramento Metro.*
    *Cable TV Comm'n*, 923 F.3d 1163 (9th Cir. 2019) ...........................................14

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)........................................19

*Courthouse News Serv. v. Planet*, No. CV1108083SJOFFMX,
    2016 WL 4157210, at *4 (C.D. Cal. May 26, 2016) .......................................23

*Courthouse News Service v. Brown*, 140 S. Ct. 384 (2019) ............................. 17, 21

*Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018)............... 16, 17

*Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014)................ passim

*Courthouse News Service v. Quinlan*, 32 F4th 15 (1st Cir. 2022) .........................21

*Courthouse News Service v. Schaefer,* 2 F.4th 318 (4th Cir. 2021) .......................19

*Courthouse News Service v. Smith*, 126 F.4th 899 (4th Cir. 2025)........................36

*Ctr. for Bio-Ethical Reform, Inc. v.*
    *Los Angeles County Sheriff Dep't*, 533 F.3d 780 (9th Cir. 2008)......................14

*F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404 1st Cir. 1987......26

*Globe Newspaper Co. v. Superior Court of Norfolk County*,
    457 U.S. 596 (1982)..................................................................... 34, 35

*Granholm v. Heald*, 544 U.S. 460 S. Ct. 1885 (2005)...........................................34

*Heald v. Engler*, 342 F.3d 517 (6th Cir. 2003) .....................................................34

*Long Beach Area Peace Network. v.*
    *City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009) ...........................................33

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) .. 25, 26, 27, 44

*Nat'l Ass'n for Advancement of Colored People v.*
    *City of Philadelphia,* 834 F.3d 435 (3d Cir. 2016)...........................................34

*News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020).................................... passim

*Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) .................................................34

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)....................... passim

*Quakenbush, v. Allstate Ins. Co.*, 517 U.S. 706,
    116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ...........................................................15

*SKS & Assocs. v. Dart*, 619 F.3d 674 (7th Cir. 2010) ...........................................16

*Soc'y of Journalists & Authors, Inc. v. Bonta,*
    *15 F.4th 954 (9th Cir. 2021), cert. denied,* 142 S. Ct. 2870 (2022)...................34

*United States v. Amodeo*, 44 F.3d 141 (2d. Cir. 1995) ............................... 25, 26, 27

iv

*Ward v. Rock Against Racism,* 491 U.S. 781 S. Ct. 2746 (1989) ............................ 36

**Statutes**
28 U.S.C. § 1291 ............................................................................ 3
28 U.S.C. § 1331 ............................................................................ 3
Idaho Code § 1-212 ........................................................................ 5
Idaho Code § 1-214 ........................................................................ 5
Idaho Code § 1-612 ........................................................................ 4

**Other Authorities**
Addendum at Civil Filing Fees Schedule ............................................. 45

**Rules**
ICAR 32(b)(4)(A) ................................................................... 6, 22, 27
IRCP 12(b)(3) ........................................................................ 39, 55
IRCP 3(b) ...................................................................................... 6
IRCP 3(c) .................................................................................... 26
IRCP 84(n) ................................................................................... 18
IREFS 11 ..................................................................................... 30
IREFS 11(a) ....................................................................... 6, 7, 27
IREFS 13 ......................................................................... 7, 18, 27, 39
IREFS 13(a) ................................................................................. 7
IREFS 13(c) ......................................................................... 7, 41, 54
IREFS 3 ........................................................................................ 6
IREFS 3(a) .......................................................................... 25, 30
IREFS 5 ...................................................................................... 38

**Constitutional Provisions**
Idaho Const. Art. V, § 2 .................................................................. 18

## INTRODUCTION

The United States Supreme Court has recognized that "[e]very court has supervisory power over its *own* records and files[,]" and therefore decisions relating to access to judicial records are "best left to the sound discretion of the trial court[.]" *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978) (emphasis added). The Idaho Supreme Court, having administrative and supervisory authority over all of Idaho state courts, has thoughtfully balanced many benefits, risks, and resources to develop court rules to govern the state's electronic court records filing system. As a result, the Idaho Supreme Court enacted court rules which allow documents to be submitted to an e-filing queue managed by Tyler Technologies (called eFile & Serve). The eFile & Serve system is essentially the "countertop" where the intended filer is electronically "handing" the document to the clerk to either be accepted for filing or rejected due to ministerial errors that need to be corrected before the clerk accepts the document into the Court's case management system (called Case Manager). Clerk review typically occurs within five business hours.  When the clerk accepts the filing after review, it is then instantaneously file-stamped and transmitted over the virtual "countertop" to Case Manager, at which time it is also immediately available to the public, press, judges, and judicial staff. If the filing is rejected, the clerk advises the intended filer as to what needs to be corrected for the document to be accepted into Case Manager.

1

Courthouse News Service ("CNS") has sued Sara Omundson (Omundson"), the Administrative Director of Courts in Idaho, seeking essentially immediate access to documents that have been submitted to Tyler Technologies' eFile & Serve for clerk review, but that have not yet been accepted by the clerk for filing in the Court's Case Manager. CNS asserts that *any* delay in their access to complaints, regardless of whether they are accepted for filing, is a violation of the First Amendment, even if the alleged delay merely results from the document being submitted by the filer to eFile & Serve after business hours or on weekends or holidays.

The District Court found that the First Amendment is violated by not providing CNS with immediate, pre-acceptance access to complaints awaiting clerk review in eFile & Serve, even though such complaints are not yet filed with the Court under the Idaho Supreme Court's rules and have not yet initiated judicial proceedings under Idaho law. In reaching such decision, the District Court reasoned that the federal court's online filing system automatically accepts and publishes submissions, and therefore Idaho courts could do the same (notwithstanding the fact that federal courts use a totally different e-filing system). This appeal presents the question of whether the Idaho Supreme Court is allowed to adopt a different balance of interests than the federal court system based on the State's own interest in determining how to handle electronic filings.

Based on principles of abstention, federal courts should abstain from

2

overriding decisions made by a State's supreme court regarding this balance of interests. The District Court failed to abstain based on a flawed interpretation of *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) (*Planet III*), and has ordered that Idaho revamp its efiling process and system. The complaints at issue here are not analogous to those in *Planet III* because they have not been "filed with the court," *id.* at 594, and thus have not invoked the court's jurisdiction, and will never do so unless and until they are resubmitted, reviewed by the clerk, and accepted for filing into Case Manager. The District Court also erred by granting CNS "immediate, pre-processing access" to civil complaints, despite binding precedent holding that the qualified right of timely access does not require such access. *Id.* This Court is asked to reverse the District Court's grant of summary judgment in favor of CNS and remand with instructions to enter judgment in favor of Omundson.

## JURISDICTIONAL STATEMENT

The District Court had subject matter over this case pursuant to 28 U.S.C. § 1331 because CNS alleged a violation of its rights under the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is from a final Judgment that disposes of all the parties' claims. Final Judgment was entered on September 30, 2024, and Omundson timely filed her Notice of Appeal on October 29, 2024.

**ISSUES PRESENTED**

1. Did the District Court err in holding that it should exercise jurisdiction over this case despite principles of abstention?

2. Did the District Court err in holding that the First Amendment right to timely access attaches when a party electronically submits a document for review by the local court clerk rather than when it is accepted for filing and instantaneously transmitted into the Court's official record (Case Manager)?

3. Even if the right of timely access attaches upon electronic submission for review by the court clerk, did the District Court err in holding that the delays stemming from the clerk's review process violate CNS's constitutional rights?

**ADDENDUM**

Pursuant to Local Rule 28-2.7, an addendum listing pertinent rules has been submitted separately.

**STATEMENT OF THE CASE**

As the Administrative Director of Courts, Omundson is responsible for implementing policies set by the Idaho Supreme Court and acts under the supervision and direction of the Idaho Supreme Court. ER 189-190, *see also* Idaho Code § 1-612. The Idaho Supreme Court is responsible for making rules governing procedure in Idaho state courts and is authorized to appoint committees to assist in

4

formulating such rules. Idaho Code §§ 1-212 through 1-214. The Idaho Supreme Court must balance numerous factors in developing these rules, including budgetary concerns and the impact the rules have on litigants, clerks, judges, court staff, and the public in general. *See e.g. ER 189-199*.

When Idaho courts made the transition to e-filing, the Idaho Supreme Court established a Technology Committee that considered whether a Press Review Queue (a software program that provides the press and public with access to documents *before* they have been reviewed by a clerk and accepted for filing) or Auto Accept  (a function that causes documents to be automatically accepted without clerk review) were viable options for Idaho's efiling system. The Technology Committee ultimately recommended that Idaho courts maintain their process of requiring clerk review and acceptance for filing before documents become publicly available. ER 2433-2436. The Idaho Supreme Court accepted that recommendation.

In October 2015, the Idaho Supreme Court began the transition to mandatory e-filing for attorneys by contracting with Tyler Technologies to license it software system known as "eFile & Serve," with Tyler Technologies managing the system. ER 191. When a complaint is submitted to eFile & Serve, it automatically joins a queue for clerk review, which can only be accessed by the clerk and not the press, public, or even judges and their staff. ER 1632 at 44:1-7.

5

The clerk then performs a ministerial review of the complaint to see if it should be accepted or rejected for filing. *Id.* at 44:8-16. A complaint may be rejected for reasons such as an insufficient filing fee, insufficient funds to cover the filing fee, being illegible or unreadable, the case already exists, the complaint was filed in the wrong jurisdiction, or it needs to be filed under seal. ER 2076.

If the clerk accepts the complaint for filing, the clerk hits a button that immediately transfers the complaint to the Idaho Supreme Court's separate software system known as Case Manager (i.e. the "official court record" per Idaho Rule for Electronic Filing and Service ("IREFS") 3)[1] and the following events occur *simultaneously and immediately*:

 a. The complaint is considered a filed document under IREFS 11(a) and is now part of the "official court record" under Idaho Court Administrative Rule ("ICAR") 32(b)(4)(A) and IREFS 3;

 b. A civil action has been "commenced" under Idaho Rule of Civil Procedure ("I.R.C.P.") 3(b). The clerk inputs certain information in Case Manager to open the new civil case. ER 2068.

 c. The filer's payment is captured by Tyler Technologies and transferred from Tyler Technologies to the Idaho Supreme Court. ER 2538 at 136:25-137:13.

 d. The complaint is file-stamped. ER 2541 at 146:1-15.

 e. A case number and judge are assigned. ER 2068 at ¶ 5.

 f. Judges and their chambers' staff gain access to the complaint (they do not have access when the complaint is in eFile & Serve).

---

[1] The Idaho court rules referenced herein are set forth in the Addendum.

ER 1634-1635 at 51:16-52:13; 54:5-56:3.

g.    ***The complaint is immediately available to the press and public.***
ER 1632 at 43:9-24.

If the clerk rejects the complaint, it is ***not*** transferred into Case Manager and "will be deemed to have not been filed." IREFS 13(a). The clerk sends the complaint back to the filer through eFile & Serve with a note as to the corrections required for the complaint to be accepted into the Court's Case Manager. IREFS 11(a), IREFS 13, ER 2076. The Idaho Supreme Court also enacted a three-day grace period that allows the filer to correct the error and resubmit, in which case the filing date will relate back to the original filing attempt date. IREFS 13(c).

This lawsuit is about complaints that have been submitted to eFile & Serve for clerk review, but that have not yet been reviewed by a clerk and either accepted or rejected for filing in Case Manager. ER 2774-2775.

CNS is a nationwide news service that authors daily litigation reports for its subscribers, which include a short, staff written summary of new civil complaints filed in a particular geographic area. ER 2776-78. CNS claims that anything less than immediate or near immediate access to submitted, but not yet filed, complaints is a violation of the First Amendment right of timely access to newly filed complaints. ER 1713 at 129:6-14 (CNS's president testified that access "a few minutes" after receipt gives rise to an unconstitutional delay); ER 1805 at 24:6-10 (CNS's Idaho reporter testified that her supervisor told her this lawsuit

7

was "looking for immediate access to complaints").

On July 23, 2021, CNS filed a complaint in the District Court alleging that Idaho's policy of making complaints publicly available only after review and acceptance for filing violated its First Amendment rights. ER 2772-2786. On September 10, 2021, Omundson filed a Motion to Dismiss arguing that (1) CNS failed to state a claim because, under *Planet III*, there is no First Amendment right to immediate, pre-clerk review and acceptance access to civil complaints and (2) the case calls for abstention given that the relief requested by CNS would involve a federal court dictating how the Idaho judiciary operates its e-filing system. ER 2761-2771. CNS filed a Motion for Preliminary Injunction, and the District Court denied both motions. ER 38-66. In denying preliminary injunctive relief, the District Court reasoned that the case was a close call on the merits and that both the irreparable harm and public interest factors weighed against a preliminary injunction because (1) "*in any scenario* [proposed by CNS], the State could be incurring cost and time that is ultimately unnecessary" and (2) "it is not equitable at this stage to force Idaho to overhaul its entire legal filing system." ER 62-64 (emphasis in original). Despite this acknowledgment that CNS's requested relief boiled down to a federal court forcing a state court to "overhaul its entire legal filing system[,]" the District Court found that it should not abstain from exercising jurisdiction. ER 56.

8

On December 15, 2022, CNS and Omundson filed cross Motions for Summary Judgment. ER 1332-1333, 1501-1504. On September 30, 2024, the District Court issued its Memorandum Decision and Order granting CNS's Motion for Summary Judgment and denying Omundson's Motion. ER 3-37. The District Court found that a complaint is "filed" the moment it is "sent or uploaded to the Court's system" (referring to eFile & Serve, which is hosted by Tyler Technologies, not "the Court"), and that "CNS has had that type of historical access sufficient to meet the first prong of the *Press-Enterprise II* test." ER 25. The District Court then wrongly applied "rigorous scrutiny" to analyze whether the policy to deny public access prior to clerk review and acceptance passed constitutional scrutiny. ER 26-27. Applying such "rigorous scrutiny," it ultimately determined that—although Omundson's concerns were "important concerns" and not at all "imagined or irrelevant"—she had not shown a "substantial probability that her interest in the fair and orderly administration of justice would be impaired by ***immediate*** access." ER 33 (internal quotes, brackets and ellipses omitted and emphasis added).

The District Court further found that "reasonable alternatives" existed, reasoning that federal courts (which do ***not*** use Tyler Technologies e-File & Serve software) "do not have the same review process as Idaho state court, and they use

those with success as well."[2] ER 34. The District Court ordered that Omundson (so the State of Idaho) "change her system," but did not specify which option she must choose. ER 35-36. In doing so, the District Court acknowledged it effectively awarded CNS immediate, pre-acceptance access (which in the paper filing world, equates to the document sitting on the clerk's "countertop"). ER 35.

This appeal followed.

## SUMMARY OF THE ARGUMENT

First, this is a case that the federal judiciary should abstain from deciding based on principles of comity and federalism given the nature of the documents CNS is demanding access to and the breadth of the relief sought by CNS. The *Planet* cases relied on by CNS and the District Court are distinguishable because they involved access to complaints that ***had already been reviewed by the court clerk and accepted*** in the Court's file, thus qualifying them as judicial documents (meaning they invoked the court's jurisdiction). That is ***not*** the situation in this case because here

---

[2] The District Court did not address United States Senator Ron Wyden's letter to Chief Justice Roberts expressing his "concern that federal courts are failing in their legal obligations to protect Americans' private information, putting Americans at needless risk of identify theft, stalking and other harms[,]" and detailing numerous studies that support this concern. ER 327-328. Even though federal court rules require filers to not include personal information in publicly available documents, that does not always happen, *id.*, which is one of the many reasons why Idaho opted for clerk review and acceptance before making complaints publicly available. ER 195-196.

CNS is seeking access to submitted complaints that ***have not yet*** been reviewed by the clerk and then accepted into the official court record (Case Manager). Thus, the at-issue complaints are not "judicial documents" as they have not invoked the court's jurisdiction and may never do so if they are rejected after clerk review and not successfully resubmitted and accepted.

As such, the factual underpinnings of the abstention analysis in *Planet* (namely that complaints accepted by the clerk for filing had initiated judicial proceedings) are inapplicable since the submitted complaints in the instant case have not, ***and may never***, initiate judicial proceedings. Further, by finding that complaints that have not yet been reviewed by the clerk and accepted into Case Manager are nevertheless "judicial documents" to which a right of timely access attaches, the federal judiciary has overruled the Idaho Supreme Court on Idaho substantive law. That is because the Idaho Supreme Court has concluded that a document that has not been accepted into Case Manager is not "filed," and therefore a case has not been initiated unless and until it is resubmitted and accepted for filing. *Citizens Against Linscott/Interstate Asphalt Plant v. Bonner Cnty. Bd. of Commissioners,* 168 Idaho 705, 714, 486 P.3d 515, 524 (2021). In addition, the *Planet* cases involved a federal court weighing in on the practices of a single county clerk's office that had already done an initial review and acceptance of a complaint, whereas here the District Court awarded relief that requires Idaho to overhaul its statewide e-filing system. *Planet*

11

*III*, 947 F.3d at 586. Federal courts should abstain from such a heavy intrusion on a statewide court system.

Second, the First Amendment right of timely access does not attach to complaints that have been submitted for clerk review but not yet reviewed and accepted for filing (and therefore have not yet initiated a lawsuit), and thus there is no constitutional violation. Unlike the documents at issue in *Planet III,* the complaints CNS seeks immediate access to are not yet judicial documents because they have not gone through clerk review and therefore have not yet been accepted for filing. It is not until the complaints are reviewed in eFile & Serve by the clerk, accepted, and transferred to the Court's Case Manager that such documents become part of the official court record.

The holding from *Planet III* should not be expanded to encompass a right of timely access to not-yet-reviewed-and-accepted-complaints based on the test outlined in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II"*), and applied in *Planet III*. In Idaho, it is undisputed that historically there has been no right of access to complaints that have not yet been reviewed by a clerk and accepted for filing. In addition, public access to pre-acceptance complaints (which may never initiate a lawsuit), does not play a significant positive role in the functioning of the judicial system. On the contrary, pre-acceptance access poses serious threats to the functioning of Idaho's judicial system, which is one of the

12

reasons why the Idaho Supreme Court decided not to grant the press and public such access. ER 195-196, 2433-2434. Therefore, there is no right of timely access to complaints prior to clerk review and acceptance into the official court record under the *Press-Enterprise II* test.

Alternatively, if this Court determines there is a First Amendment right of access to complaints that have not yet been reviewed by the court clerk and accepted for filing into the official court record, the limited content-neutral time, place, and manner restrictions currently in place survive constitutional scrutiny. The requirement for clerk review in e-File & Serve and acceptance into the official court record (Case Manager) prior to making complaints available to the public is narrowly tailored to serve the Idaho Supreme Court's interests in promoting access to the courts, protecting document security and privacy interests, ensuring public confidence in the judicial system, and managing judicial resources. In addition, the average time between submission and clerk review is less than 5 business hours statewide, and in Ada County is just over 2.5 business hours. This is a far cry from the days and even weeks-long delays at issue in *Planet III*, which were delays only associated with already clerk-reviewed and accepted complaints. The time between uploading the document to eFile & Serve and clerk review to accept or reject it is insignificant, and is wholly justified when weighed against the reasons for requiring clerk review of documents that will be accepted into the official court record. Thus,

CNS cannot establish a constitutional violation.

For these reasons, this Court should decline to override the Idaho Supreme Court's decision to require that a document be reviewed by a clerk in e-File & Serve and then accepted into the Court's official record before it becomes publicly available, and should therefore reverse the District Court's grant of summary judgment in favor of CNS and remand for entry of Judgment in Omundson's favor.

## STANDARD OF REVIEW

A district court's decision on cross-motions for summary judgment is reviewed de novo. *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable TV Comm'n*, 923 F.3d 1163, 1168 (9th Cir. 2019). "When presented with cross-motions for summary judgment, [this Court] review[s] each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).

A district court's decision to invoke *Pullman* abstention is reviewed "under a modified abuse of discretion standard." *Courthouse News Service v. Planet*, 750 F.3d 776, 782 (9th Cir. 2014) ("*Planet I*"). First, this Court reviews "*de novo* whether the requirements for *Pullman* abstention are satisfied." *Id.* "If they are not, the district court has 'little or no discretion' to abstain; if they are, we review the decision to abstain for an abuse of discretion." *Id.* (quoting *Almodovar v. Rainer*,

14

832 F.2d 1138, 1140 (9th Cir. 1987)). The standard of review applicable to a district court's abstention decision under *O'Shea* is "unsettled," but in *Planet I* this Court applied the first step in the modified abuse of discretion analysis and reviewed *de novo* whether the requirements for *O'Shea* abstention were satisfied. *Id.* at 782-83.

**ARGUMENT**

### I.     The District Court erred by not abstaining.

"[F]ederal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quakenbush, v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotations and citations omitted). Abstention is warranted in this case because federal courts should not override precedent from a State's Supreme Court deciding questions about that State's substantive law, nor should they second guess difficult questions about the allocation of state resources or interfere with state courts' independent management of their judicial processes and judicial records.

Although this Court reversed the District Court's decision to abstain under *Pullman* and *O'Shea* in *Planet I*, the decision was predicated on "the public's right of access to judicial proceedings." *Planet I*, 750 F.3d at 789, 792-93. That rationale

15

does not apply in this case because the complaints CNS is demanding immediate access to here have not yet been reviewed by the local court clerk and accepted and transferred from eFile & Serve into the official court record (Case Manager). Therefore, such complaints have not yet initiated "judicial proceedings" that give rise to a right of access. Section II.A, *infra*. Further, the *Planet* case involved federal oversight of policy preferences of *one* clerk's office in *one* county, whereas this case involves ongoing federal interference with Idaho's entire state judicial system regarding processes thoughtfully adopted by the Idaho Supreme Court as provided in the Idaho Constitution.

This case is notably more similar to *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), a case where the Seventh Circuit abstained from exercising jurisdiction over CNS's challenge to Cook County's e-filing practice that provided public access to complaints only ***after*** they had been reviewed by a clerk and accepted for filing (just like Idaho). *Id.* at 1066, 1075. The Seventh Circuit noted that the vast majority of cases involving First Amendment access to court records arose "from litigation before the courts whose records are at issue[,]" whereas CNS was "seeking to have one court tell another court that its level of access is not good enough." *Brown*, 908 F.3d at 1070.

The relief CNS was seeking in *Brown* (and is seeking in this lawsuit) "run[s] contrary to the basic principles of equity, comity, and federalism." *Id.* (internal

quotes omitted). And although abstention is the exception rather than the rule, it should apply if the requested relief "would intrude upon the independence of the state courts." *Brown*, 908 F.3d at 1071. "State courts have a significant interest in running their own clerks' offices and setting their own filing procedures," and should therefore "be given the first opportunity to determine precisely what level of press access is required, appropriate, and feasible in a state court." *Id.* The Seventh Circuit held that federal courts should not exercise jurisdiction over CNS's request for pre-processing access to electronically submitted complaints because the request "conflicts with the general principles of federalism, comity, and equity that underlie abstention." *Id.* Although the case did not "fit neatly into the *Younger* doctrine," it fit within the "Supreme Court's extension of the *Younger* principles in *O'Shea* and *Rizzo*" and would "impose a significant limit on the state courts and their clerk in managing the state courts' own affairs. *Id.* at 1072-73.

The Seventh Circuit considered this Court's ruling in *Planet I*, and "respectfully disagree[d]" with the holding because the relief CNS was seeking in *Brown* (and is seeking in this case) would require continued oversight by the federal court if the clerk did not comply or only partially complied with the district court's injunction. *Id.* at 1074. CNS petitioned for a writ of certiorari, which was denied by the United States Supreme Court. *Courthouse News Service v. Brown*, 140 S. Ct. 384 (2019).

17

Like in *Brown*, the relief requested by CNS and awarded by the District Court is counter to principles of comity and federalism; a federal court has required Idaho to change its statewide electronic filing system. And, while not dictating how Idaho must do so, there are essentially two options for Idaho to achieve this. Both options provide immediate access to complaints before a clerk has reviewed them and accepted them into Case Manager (and, therefore, before they even initiate a lawsuit) and impose significant burdens on Idaho's judiciary, as discussed in detail in Sections III.B and C, *infra*. This is an "ongoing intrusion into the state's administration of justice," *Planet I*, 750 F.3d at 789, and warrants abstention.

In addition, failing to abstain leads to federal courts interfering with Idaho *substantive* law. Pursuant to the Idaho Constitution, the people of Idaho have made the Idaho Supreme Court accountable for the supervision and administration of all of Idaho's courts. Idaho Const. Art. V, § 2. In interpreting the plain language of IREFS 13 (a rule that the Idaho Supreme Court enacted), the Idaho Supreme Court found that a rejected petition is "deemed to have not been filed" if rejected and not resubmitted within three days. *Citizens Against Linscott/Interstate Asphalt Plant,* 168 Idaho 714. Failure to timely resubmit a complaint for filing within the statute of limitations results in a jurisdictional bar that requires dismissal of the complaint. *Id.* (citing I.R.C.P. 84(n), which provides that "failure to physically file a petition for judicial review . . . within the time limits prescribed by statute and these rules is

18

jurisdictional and will cause automatic dismissal of the petition"). Thus, under Idaho law, a complaint is not "physically filed" until it has been reviewed and accepted for filing by a clerk; mere transmission of the document to eFile & Serve for clerk review is not enough. By finding that a complaint awaiting clerk review in eFile & Serve is a judicial document, the District Court improperly weighed in on and contradicted Idaho substantive law.

Further, the District Court incorrectly determined that "many courts" have found that complaints "instantaneously invoke" a court's jurisdiction, and erroneously premised its decision that there is a right to pre-clerk review and pre-clerk acceptance access on this specific finding. ER 24 (citing *Courthouse News Service v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021)). The *Schaefer* court based its finding about when jurisdiction is invoked on *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). That case had nothing to do with when a complaint is deemed "filed," and instead involved a question of whether the district court retained jurisdiction to impose Rule 11 sanctions after a complaint had been voluntarily dismissed under Rule 41. *Cooter*, 496 U.S. at 395. In finding that the district court had such jurisdiction, the United States Supreme Court reasoned that "[t]he district court's jurisdiction, invoked by the filing of the underlying complaint, supports consideration of both the merits of the action and the motion for Rule 11 sanctions arising from that filing." *Id.* The decision does not say anything about when a

19

complaint is deemed to be filed, and thus does not support the District Court's application of *Schaefer* to support its finding that "many courts" have found that mere *submission* of a complaint "instantaneously invokes" the court's jurisdiction.

In addition, regardless of whether other courts have purportedly determined when jurisdiction is invoked, the Idaho Supreme Court has the right to determine Idaho's substantive law. This includes determining when an Idaho court's jurisdiction is invoked, which impacts substantive legal rights. By holding that a pre-acceptance complaint (which may or may not be rejected for filing) is a judicial document, the District Court overrode Idaho rules and precedent because—to make this holding—it had to find that not yet reviewed and accepted complaints invoke the Idaho Court's jurisdiction. They do not unless and until they are reviewed by the clerk and accepted for filing. Finding otherwise wrongly overrides substantive Idaho law about the effect of failing to timely *file* (not just submit) a complaint. The District Court should have abstained from weighing in on matters that impact substantive rights of litigants in Idaho state courts, and its failure to do so stripped the Idaho Supreme Court of its sovereignty to define Idaho's substantive law. Both proper federal-state relations and a sense of comity dictate that the federal courts not usurp that responsibility.

Idaho is by no means unique in its concerns about federal oversight of its judiciary. The Conference of Chief Justices ("CCJ") filed an amicus brief in another

20

lawsuit brought by CNS in the United States District Court for the District of Maine, which raised many of these same compelling reasons why federal courts should abstain from hearing these lawsuits. ER 2681-2717. Although the First Circuit reversed the district court's dismissal of the claims under 12(b)(6), the First Circuit noted that although the defendants did not raise abstention at the 12(b)(6) stage, "one of our sister circuits found abstention to be appropriate at a later stage in parallel litigation" and failure to raise abstention at the 12(b)(6) stage "does not prevent them from raising abstention concerns later in these proceedings." *Courthouse News Service v. Quinlan*, 32 F4th 15, 22 (1st Cir. 2022) (citing *Brown*, 908 F.3d at 1070-75).

In summary, the District Court erred in not abstaining from exercising jurisdiction over this case, and its decision regarding abstention should be reversed and this action should be dismissed with prejudice.

**II.    The District Court erred in holding that the right of timely access attaches upon submission of the complaint into e-File & Serve and before it is reviewed and then accepted by the clerk for filing in Case Manager.**

**A.    Complaints that have not gone through pre-acceptance review by the clerk are not judicial documents as a matter of law, and therefore no right of timely access attaches.**

Idaho's e-filing system does not violate the First Amendment. Under Idaho's current e-filing system, when the clerk has completed her/his ministerial review of the complaint and accepted it, the complaint is *simultaneously* file-stamped, a case

21

number assigned, a judge is assigned, a file is opened, and the complaint is transferred into Case Manager. At that point, it is also immediately available for review by the press, public, and the court staff, which is above and beyond what is required under *Planet III*. ICAR 32(b)(4)(A), ER 2541 at 146:1-15, ER 2068, ER 1634-1635 at 51:16-52:13, 54:5-56:3, ER 1632 at 43:9-24, *see also Planet III*, 947 F.3d at 585 (qualified right to timely access "does not entitle the press to immediate access" to filed complaints). Based on this Court's holding that the First Amendment only requires *timely* access to *filed* complaints, there is no basis for finding that the First Amendment is violated by not providing any access, let alone *immediate* access, to complaints that await clerk review in eFile & Serve and thus have not yet been accepted into the Court's Case Manager. Yet this is precisely what CNS wanted and the District Court ordered. ER 33 ("Omundson has not shown granting CNS *immediate* access [to complaints awaiting clerk review] would impair the administration of justice[.]" (emphasis added)).

CNS's demand and the District Court's order for such relief are not supported by *Planet III*. In *Planet III,* the at-issue complaints were paper, not electronic, documents that had **already been reviewed and accepted by the clerk into the court's file**. 947 F.3d at 586. Second, unlike the complaints at-issue in this case, the *Planet* complaints were then subjected to six **additional** steps relating to opening a physical case file, followed by an "additional layer of quality control review"

22

performed by supervisors, all of which took several days to complete. *Id.* Unlike the instant case where once the complaint is accepted it is instantaneously assigned a judge, case number, and the file opened in Case Manager, the Ventura County's Court Case Management System ("CCMS") required clerks to enter "considerably more information" and required "a fair amount of time" to process newly filed complaints before a file number would even be generated. *Courthouse News Serv. v. Planet*, No. CV1108083SJOFFMX, 2016 WL 4157210, at \*4 (C.D. Cal. May 26, 2016). Such information was not entered into the CCMS until *after* the clerk had reviewed and accepted the complaint. *Planet III*, 947 F.3d at 585.

The process in Idaho is strikingly different than the process at issue in *Planet III*. Under Idaho's e-filing system, complaints are submitted through Tyler Technologies' eFile & Serve database for clerk review and acceptance (so e-File & Serve is effectively the clerk's "countertop"). ER 2535 at 124:3-7. Once submitted to eFile & Serve, the complaint is in a queue until a local clerk signs into the Tyler Technologies system, performs a limited review of the submission (e.g. checking if the filing fee has been paid, filed in the correct jurisdiction, etc.), and either (1) accepts the complaint, which then instantaneously moves it out of the Tyler Technologies system and into the Idaho Supreme Court's Case Manager (i.e. the

official court record)[3] or (2) rejects the submission, which leaves the document in the Tyler Technologies database, and sends it back to the intended filer with a note on what needs to be done to correct the submission for filing. ER 1632 at 44:1-16, 2076, 2068.

Alternatively, if the complaint meets the filing requirements and is therefore accepted by the local clerk, it is then accepted for filing. At that point, it is then immediately transferred to Case Manager and the following occurs instantaneously: the filing fee payment is captured (ER 2538 at 136:25-137:21); the complaint is transferred from Tyler Technologies' eFile & Serve into the Court's Case Manager (ER 191 at ¶ 9); the complaint is file-stamped (ER 2541 at 146:1-15); the complaint is now available to the press and public (ER 1632 at 43:9-24, 44:10-16); the complaint is now available to judges and court staff (they have *no* access to documents in eFile & Serve) (ER 1634-1635 at 51:16-52:13, 54:5-56:3); and a judge is assigned (ER 2068). The complaint is also now a "judicial document" because it has been filed with the court and is now "relevant to the judicial function and useful in the judicial process." *Planet III*, 947 F.3d at 592, *see also* IREFS 3(a), *Citizens Against Linscott/Interstate Asphalt Plant,* 168 Idaho 714 (rejected document is not

---

[3] The "official court record" is defined as "the electronic case file maintained by the court, as well as any paper filings and other conventional filings maintained by the court in accordance with these rules." IREFS 3(a). The press and public have access to the official court record. ER 1634 at 50:24-51:15.

filed with the Court). If rejected, the communication related to a rejected filing occurs directly in the e-File & Serve system between the local clerk and the intended filer, just like the local clerk would directly communicate with a filer submitting a paper complaint at the courthouse. ER 191-192 at ¶ 9, 2427 at ¶ 7, 2481-2483. Thus, a submitted complaint awaiting review in the e-filing system is the equivalent of a paper complaint in the hands of an intended filer standing at the clerk's countertop. It has not yet been accepted, and thus does not meet the "judicial document" standard.

Under the fact scenario in *Planet III* (a lengthy process involving additional clerk action after acceptance long after the filer left the courthouse *and* an additional layer of quality control review by a supervisor after that (947 F.3d at 586)), the Ninth Circuit reasoned that a complaint the clerk *had accepted* is a "judicial document" and is relevant to evaluating the performance of the court system. 947 F.3d at 592 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)).  The definition of "judicial document" in *Planet III* ultimately comes from *United States v. Amodeo*, 44 F.3d 141 (2d. Cir. 1995) vis-à-vis the citation to *Lugosch.* Although there is no uniform definition of "judicial document" amongst the circuits, there is no definition that supports a finding that a submitted but not yet reviewed and

accepted complaint is a judicial document.[4]

The *Planet III* court also found that filing a complaint is synonymous with invoking the court's jurisdiction. *Planet III*, 947 F.3d at 593 ("When a complaint is filed, and the authority of the people of the United States is thereby invoked[.]" (internal quotes omitted)). Idaho courts do not have jurisdiction until the complaint is reviewed and accepted by the clerk in e-File & Serve and then instantaneously transmitted to Case Manager. Indeed, the judges do ***not*** have access to submitted complaints (those in eFile & Serve) prior to acceptance into Case Manager. ER 1634-1635 at 51:16-52:13; 54:5-56:3. In addition, a civil action is only commenced – and therefore the court's jurisdiction invoked – "by filing a complaint, petition, or application with the court." I.R.C.P. 3(c), *see also Amodeo*, 44 F.3d at 145

---

[4] The *Amodeo* case discusses how other federal circuits have determined what may be classified as a "judicial document," and therefore accessible to the public. *Id.* at 145. The Third Circuit focuses "on the technical question of whether a document is physically on file with the court." *Id.* (quoting *Pansy v. Borough of Stroudsbourg*, 23 F.3d 772, 782 (3d Cir. 1994)). "According to the Third Circuit, if a document is not filed, it is not a judicial record." *Id.* (quotes and brackets omitted). The First Circuit has "determined that documents must have a role in the adjudication process in order to be accessible and that documents that have no such role, such as those used in discovery, cannot be reached." *Id.* (citing *F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404 1st Cir. 1987)). The Second Circuit ultimately determined "that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id.* Instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.*

(document must be filed and "relevant to the judicial function" to be a judicial document), *Lugosch*, 435 F.3d at 119 (same). Under Idaho's e-filing rules, a document is considered filed when (1) it has been submitted to the court's electronic filing system [eFile & Serve hosted by Tyler] **and** (2) "the submission has been acknowledged and the document accepted for filing." IREFS 11(a). Indeed, consistent with *Planet I*, *Lugosch*, and *Amodeo* a "court record" under the Idaho Rules is "[a]ny document, information or other thing that is filed, docketed, or lodged *by a court or clerk of court* in connection with a judicial proceeding." ICAR 32(b)(4)(A) (emphasis added). As such, if the complaint is rejected for any number of reasons and the intended filer does not resubmit it, the court will never have jurisdiction over that complaint. IREFS 13 (a rejected document "will be deemed to have not been filed"), *Citizens Against Linscott/Interstate Asphalt Plant,* 168 Idaho 714 (same). Thus, submitted but not yet accepted complaints are not judicial documents because they are the electronic equivalent of a paper complaint sitting on the clerk's countertop before the clerk has taken for review.  As such, unlike the process in *Planet III*, the complaint has not crossed the clerk's "counter" until the clerk accepts it, at which time it is ***immediately*** available to the press and public.

In summary, unlike the *Planet III* complaints, submitted complaints in Idaho (those in eFile & Serve ready for clerk review) are not yet judicial documents and are not subject to the court's jurisdiction. In addition, once they do cross the clerk's

27

"counter," they are instantly transferred to Case Manager and become a judicial document that is immediately available to the press, public, judges, and their staff. This Court should not expand its holding from *Planet III* to encompass complaints that have only been submitted but not yet reviewed by the clerk and accepted for filing because they are not judicial documents under Idaho law.

### B.    Complaints awaiting clerk review and acceptance in eFile & Serve are not judicial documents based on the *Press-Enterprise II* test.

The *Planet III* court provided the following framework to evaluate whether "the qualified First Amendment right of access" existed as to the judicial records in question, which depended on (1) whether that proceeding or record "ha[s] historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular [governmental] process in question." 947 F.3d at 590 (quoting *Press-Enterprise II*, 478 U.S. at 8).

### 1.    Access to newly filed civil complaints under Idaho's e-filing system is consistent with the access that was historically provided with paper filing.

There is no dispute that in Idaho the press and public did ***not*** historically have access to complaints that had not yet been accepted for filing. ER 2426 at ¶ 4, ER 2472 at ¶ 13, ER 2450 at ¶ 5, ER 1688 at 26:12-27:24. Despite claiming in its Complaint that CNS historically had access to pre-acceptance complaints, ER 2782 at ¶ 37, CNS's Idaho reporter, Catherine Valenti, admitted in her deposition that in

Idaho's largest county, Ada County, she would review a docket report, which <u>only included file-stamped, clerk accepted complaints</u>, and then request copies of any complaints she wanted to see.[5] ER 1811 at 47:5-48:11, 49:15-24. In terms of Idaho's other 43 counties, Ms. Valenti testified that CNS sent a reporter to Canyon and Kootenai counties *on a weekly basis*, and to Owyhee, Elmore, Gem, Washington, and Payette counties *on a monthly basis*, at which time the reporter would review the docket report, select certain complaints from the report, and review those already clerk accepted, file-stamped complaints. ER 1815 at 62:7-64:17.[6] CNS did not send reporters to Idaho's other 36 counties to review complaints; reporters would only review docket reports (which only showed complaints that had been clerk accepted, file-stamped, and docketed) available on the Idaho repository. ER 1815 at 64:18-25, ER 1816 at 67:21-69:3, ER 1817 at 70:1-9. In addition, Ms. Valenti candidly admitted that — both with paper filing and e-filing — she was only

---

[5] Although CNS based its allegations about historical access on testimony from Mr. Girdner, his purported knowledge of historical access is inadmissible hearsay because it does not come from firsthand experience in Idaho courts; it allegedly comes from conversations with CNS's Idaho reporters. ER 1686 at 20:10-21:13.

[6] In the neighboring state of Montana, CNS reporters still visit courthouses on a bi-weekly or monthly rotation, similar to the process in Idaho in the days of paper filing. ER 1807-1808 at 33:19-35:6. Despite CNS's claims that news becomes "stale" if not reported within a matter of hours, it nevertheless reports on Montana complaints weeks after they are filed. *Id.* And despite CNS's claims that delays should be measured on a 24/7 cycle rather than business hours, it does not require its own employees to report on complaints filed after normal business hours. *Id.* at 36:19-38:15, ER 1818 at 76:21-77:24.

interested in reviewing complaints that the clerk had accepted for filing because she would not report on something that "hadn't been filed yet in the legal system." ER 1814 at 58:20-59:3.

As such, based on the undisputed evidence, the press and public historically did not have pre-acceptance access to complaints in Idaho like CNS seeks in this case. Therefore, no First Amendment right of access attaches to these documents under the first *Press-Enterprise II* factor. The District Court's decision should be reversed and remanded so that judgment can be entered in Omundson's favor.

> **2.**  **Providing the press and public with access to complaints that have not yet been accepted for filing does not play a significant positive role in the functioning of the court system.**

In considering the second *Press-Enterprise II* factor, a submitted complaint in eFile & Serve that has not yet been accepted by the clerk and made part of the official court record provides no insight into how the judicial system is functioning. *See Planet III*, 947 F.3d at 592 (access to filed complaints is provided so the public can "evaluate and participate in robust public discussions about the performance of their court systems"). In Idaho, prior to acceptance by the clerk, judicial proceedings have not been initiated and there is not yet an official court record. *Planet III*, 947 F.3d at 593 (cases cited by defendant were inapplicable because they "address[ed] documents that are not in fact part of the record of judicial proceedings"), *see also* IREFS 3(a), IREFS 11. Indeed, submission of a complaint to initiate a legal action

does not automatically result in the initiation of such action; it is only once that complaint has been accepted by the clerk, and thereby immediately transferred from Tyler's eFile & Serve to the Court's Case Manager, that a legal action begins. IREFS 3(a), IREFS 13.

On the other hand, providing access before acceptance of a complaint by the clerk could erode public confidence in the court system because a not-yet reviewed and accepted complaint has not yet initiated a judicial action. ER 209-211, ER 2440-2441 at ¶¶ 11-12, ER 2429 at ¶¶ 12-13. For example, because a complaint that is rejected and never resubmitted will never create a legal action, under the District Court's ruling, the press and public would have access to a complaint that was never filed, thereby causing unnecessary suspicion as to why. ER 210 at ¶ 19. This could be wrongly attributed to an oversight or error by the judiciary, as opposed to filer error. Thus, providing the press and public with access to documents outside of the official court record does not provide any insight as to how the courts are functioning, and instead creates unnecessary and unjustifiable risks.

Submitted complaints that have not yet been reviewed and accepted by the clerk have not initiated judicial proceedings and are therefore not judicial documents under *Press-Enterprise II* because historically they have not been available to the press and public in Idaho and they are not relevant to evaluating the performance of the court system. Only clerk reviewed and accepted complaints are relevant to the

performance of the court system and the public and press have immediate access to such complaints. As such, the District Court's decision should be reversed and remanded so judgment may be entered in Omundson's favor.

### III. The District Court erred in holding that the delay between submission of the complaint and review and acceptance by the clerk gives rise to a violation of the qualified right of timely access.

Even if this Court determines that a qualified right of timely access attaches to complaints that have not yet been reviewed and accepted by the clerk for filing under the *Press-Enterprise II* factors, the limited restrictions imposed by the Idaho Supreme Court survive constitutional scrutiny. The District Court erred by holding otherwise, and this decision should be reversed and remanded so judgment may be entered in Omundson's favor.

Idaho courts are not required "to set aside their judicial operational needs to satisfy the immediate demands of the press." *Planet III*, 947 F.3d at 596. Yet that is precisely what CNS demanded and what the District Court ultimately awarded. ER 1713 at 129:6-14 (access "a few minutes" after receipt is delayed); ER 1805 at 24:6-10 (this lawsuit is seeking "immediate access to complaints."); ER 35. The requirement for clerk review and acceptance prior to making complaints publicly available easily survives constitutional scrutiny under the standard applicable to content-neutral time, place, and manner restrictions. And even if the Court applies the more exacting standard applied by the majority in *Planet III*, the requirement

still survives constitutional scrutiny because (1) there is a substantial probability that Idaho Courts' interest in the fair and orderly administration of justice would be impaired by immediate, pre-acceptance access and (2) no reasonable alternatives exist to adequately protect this interest.

### A. The "rigorous scrutiny" standard applied by the District Court is akin to strict scrutiny, which is not the appropriate standard for content-neutral time, place, and manner restrictions.

The District Court should have applied the standard applicable to time, place, and manner restrictions, which only requires that the policy be "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." *Long Beach Area Peace Network. v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009). The District Court erred by applying "rigorous scrutiny" to a content-neutral time, place, and manner restriction. The requirement for clerk review of complaints and acceptance of them into the official court record before making them publicly available easily survives constitutional scrutiny under the proper standard.

In *Planet III*, this Court determined that the policies at issue resembled "time, place, and manner restrictions" because they were "content-neutral and affect only the timing of access to the newly filed complaints." 947 F.3d at 595. As such, the *Planet III* court concluded they should not be subject to strict scrutiny, but instead a "more relaxed scrutiny" because any incidental delay in access does not pose any

33

inherent dangers to free expression that would justify applying strict scrutiny. *Id.* The *Planet III* court also explained that "[s]ome reasonable restrictions resembling time, place, and manner regulations that result in incidental delays in access are constitutionally permitted where they are content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.* at 585.

Although the *Planet III* majority claimed this standard was a "more relaxed" standard derived from *Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596 (1982), *see Planet III*, 947 F.3d at 596, n. 9, the standard applied by the *Planet III* majority closely resembled "strict scrutiny" as it has been articulated in other cases. *See e.g., Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 960 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 2870 (2022) (content based restrictions must be "narrowly tailored to serve compelling state interests"); *Pierce v. Jacobsen*, 44 F.4th 853, 862 (9th Cir. 2022) ("To survive strict scrutiny, the residency requirement 'must be narrowly tailored and advance a compelling state interest.'"); *Heald v. Engler*, 342 F.3d 517, 524 (6th Cir. 2003), *aff'd sub nom. Granholm v. Heald*, 544 U.S. 460, 125 S. Ct. 1885 (2005) (strict scrutiny requires showing that no reasonable alternatives exist to advance "legitimate goals"); *Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia,* 834 F.3d 435, 441 (3d Cir. 2016) (strict scrutiny requires "narrow tailoring or the absence of less

restrictive alternatives" and the government interest has to be "compelling," not just valid). As such, despite purporting not to apply strict scrutiny, the majority in *Planet III* did precisely that based on a flawed reading of *Globe Newspaper*.

*Globe Newspaper* involved a question regarding the right of public access to criminal trials when a minor victim was testifying about a sex offense. 457 U.S. at 598. The Supreme Court stated: "Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606-07. That sentence was immediately followed by this footnote: "Of course, limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech, see *h*, would not be subjected to such strict scrutiny. *Id.* at 607 n. 17. Thus, *Globe Newspaper* did not involve content-neutral a time, place, and manner restriction; it involved a restriction subject to strict scrutiny. As such, where the *Planet III* court intended to apply a "non-strict scrutiny" standard to the case, it cited a strict scrutiny standard by referring to *Globe Newspaper*. *Planet III*, 947 F.3d at 596, n. 9.

Judge N.R. Smith noted in his concurrence that the majority in *Planet III* was effectively applying strict scrutiny to a time, place, and manner restriction, even though strict scrutiny undisputedly does not apply to such restrictions. *Id.* at 601-604 (J. N.R. Smith, concurring). Judge Smith determined the "time, place, and

35

manner standard permits government regulation 'provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Id.* at 601 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746 (1989)). As Judge Smith correctly observed, narrow tailoring does not require the "least restrictive or least intrusive means"; the regulation only needs to promote "a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 601-02. "Access policies that merely delay (rather than outright deny) access to nonconfidential civil complaints will generally satisfy this requirement." *Id.* at 602.

The District Court erroneously applied the *Planet III* majority's flawed "rigorous scrutiny" standard in this case. ER 26-27. This was an error because requiring clerk review and acceptance before providing access to civil complaints is content-neutral and only affects the timing of access to civil complaints. As such, the standard the District Court should have applied is the time, place, and manner test articulated above in *Ward* and cited in Judge Smith's concurrence. Denying access to complaints prior to acceptance into the Court's Case Manager easily satisfies this standard because it merely delays, rather than denies, access to civil complaints. *See e.g. Courthouse News Service v. Smith*, 126 F.4th 899 (4th Cir.

36

2025) (CNS's challenge to state court policy of providing attorneys with online access to civil filings, whereas members of the press and public could only access civil filings through public terminals at courthouses, was subject to "relaxed scrutiny" applicable to time, place, and manner restrictions, and survived constitutional scrutiny).

*Even if* the Court applies the "rigorous scrutiny" framework applied by the majority in *Planet III* to this content-neutral time, place, and manner restriction, the policy requiring clerk review and acceptance prior to transferring a document into Case Manager (at which point it is immediately available to the press and public) still survives constitutional scrutiny, as discussed in the following sections. Indeed, under either standard, immediate access is not required:

> Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press.

*Planet III*, 947 F.3d at 596. Relatedly, "[t]he First Amendment does not require [federal courts] to second guess the careful deliberations the state court undertook in deciding how to manage scarce resources." *Id.* at 600. This is precisely what CNS asked the District Court to do, and what the District Court ultimately did. The

District Court erred in applying a "rigorous scrutiny" standard to a content-neutral time, place, and manner restriction, and in doing so has allowed impermissible federal interference in the administration of Idaho's court system.

**B.      There is a substantial probability that Idaho Courts' interest in the fair and orderly administration of justice would be impaired by immediate, pre- acceptance access.**

**1.      The requirement for clerk review and acceptance for filing prior to public access is narrowly tailored to serve Idaho Courts' interests.**

Both before and after the transition to e-filing, Idaho clerks have served as gatekeepers for improperly submitted documents. ER 2438-2439 at ¶ 3-4, ER 2440 at ¶¶ 8, 9; ER 2434-2435 at ¶ 9. If a document does not meet the requirements for filing into Case Manager (the court's official record), clerks will notify the filer of the error with the submission and provide an explanation of the correction that needs to be made for the document to be accepted upon resubmission. ER 2427 at ¶ 7, *see also* ER 2076. Reasons for a clerk rejecting a document include the following:

- Wrong jurisdiction

- Insufficient fees or insufficient funds in account for credit card

- Submission is illegible or unreadable

- Submission is incomplete or missing a signature block

- Document that must be filed in paper format per IREFS 5, such as Motion to Seal Documents and In Camera Filings

- Any other filing error with explanation

ER 2076.

Clerk review in Idaho ensures access to justice for litigants and their counsel because filing errors can be addressed on the front end so the filer has an opportunity to correct errors before the document is accepted and filed into the Court's Case Manager. IREFS 13 allows a litigant three days to correct a defect with a complaint if it is rejected by the clerk so that the date of the original submission will still appear as the file-stamped date. Without clerk review, filing errors could go unnoticed for an indefinite period of time, which could have serious adverse consequences for litigants. For example, if a complaint intended to be filed in Ada County was mistakenly filed in Adams County (an easy mistake to make when checking boxes from a dropdown menu), the claim may be barred if the complaint was filed close to the statute of limitation and dismissed for improper venue after the statute of limitation ran. *See* I.R.C.P. 12(b)(3). This concern for litigants and their counsel was not addressed by the District Court in its decision requiring pre-acceptance access.

The District Court also dismissed Omundson's concerns that if documents are auto-accepted into the Court's Case Manager (like federal court filings), judicial action would be required to address filing errors because clerks do not have legal authority in the Idaho courts to take action in the official court record. *See* ER 30. The District Court ruled that Idaho should "simply change the rule" such that

39

clerks—rather than judges—can take action in the official court record to address filing errors that could have been caught before the document was accepted for filing if there was clerk review prior to access.[7] ER 30. In other words, the District Court found that Idaho should allow clerks—not judges—to take action that would affect litigants' substantive legal rights. For example, if a complaint was inadvertently submitted in Adams County instead of Ada County, according to the District Court, Idaho should "simply change the rule" and grant clerks legal authority to dismiss the action outright. *Id.*

The District Court's minimizing of its suggested rule change as simple is a gross understatement, and directly supports that the District Court should have abstained. *See, e.g.* Section I *supra.* Rather, what the District Court is directing the Idaho Supreme Court to do is to change substantive law regarding a clerk's authority to perform the judicial function of closing a case *after* it is initiated without any judicial guidance or order. Requiring Idaho to vest its clerks with powers that would affect the substantive legal rights of litigants with no judicial oversight is not a reasonable alternative to the Idaho Supreme Court's requirement for clerk review of a complaint prior to it becoming part of the court's official record.

---

[7] Omundson does not approve or adopt the court rules relevant to the e-filing system; that is up to the Idaho Supreme Court and Omundson then acts as the Court directs. ER 189-190 at ¶ 4.

Rather than vest the clerks with such powers, the Idaho Supreme Court's current e-filing rules which the District Court wrongly ordered must be abandoned, where during the review process the clerks are authorized to instruct intended filers to make certain ministerial corrections to their intended filing and then resubmit the corrected document for review and acceptance into the Court record.  *See* Section II.A, *supra*.  With the three-day grace period provided for in IREFS 13(c) (so that the filing relates back to the original attempted filing date), there is no substantive legal right impacted by the clerk because the document is not an official court record until it is accepted and then instantaneously transmitted to the Court's Case Manager.  *See* Section II.A, *supra*. Vesting clerks with powers that would affect the substantive legal rights of litigants with no judicial oversight is not a reasonable alternative to requiring clerk review of a complaint prior to it becoming part of the court's official record, at which point the press and public have immediate access.

In addition, clerk review makes the most effective use of clerks and court staff and avoids unduly burdening the ongoing business of the judiciary. If filing errors are not addressed on the front end by a clerk (i.e. in eFile & Serve), they have to be addressed on the back end by the judge and her or his court staff in Case Manager because the document becomes an official court record upon acceptance for filing. *See e.g.* ER 2434. Judicial action would be required to address an improperly filed document once it is in Case Manager (again, clerks should not be taking actions that

41

affect the substantive rights of litigants), which would include things like preparing orders and conducting hearings to strike improperly filed documents, redacting filings wrongly in Case Manager, or entering a notice of dismissal if certain actions are not taken to correct the filing error. ER 2434 at ¶ 8; ER 2427-2428 at ¶ 8. This is inefficient and would dramatically increase the workload of judges and their court staff since they would be tasked with ministerial functions that could otherwise be handled by the clerk. *Id.*

> **2. The length of time between when a document is submitted to eFile & Serve and clerk review for acceptance into Case Manager does not give rise to a constitutional violation when weighed against the reasons for requiring clerk review.**

The District Court erred by calculating the time between submission and clerk review based on 24/7/365 access—as opposed to when courts are actually open—which is inconsistent with historical access and also paints a misleading picture about the purported delays. ER 28. By the District Court's logic, access to a complaint submitted to eFile & Serve at 4:59 p.m. on Friday and accepted for filing at 8:01 a.m. on Monday would be delayed by 63 hours and 2 minutes. This is also inconsistent with how delays were calculated in *Planet III*. 947 F.3d at 587, 597 (with the no-access-before-process policy "over half of the filed complaints took two or more **court days** to become publicly available" and "it took two or more **court days** for CNS to access one-fifth to two-thirds of newly filed complaints" (emphasis added)), *see also id.* at 599 (scanning policy that provided access to new civil

complaints at public computer terminals that could only be accessed when the courthouse was open survived constitutional scrutiny and "overnight delay in access to complaints filed during the last ninety minutes of the court's public hours was no greater than essential to manage necessary court operations under the circumstances existing at the time.").

When time to review is calculated based on "court hours," the time between submission and clerk review in Idaho is insignificant and easily justified by the interests clerk review serves. Between January 4, 2021, and November 18, 2022, it took an average of 4.82 business hours statewide between submission of an initial civil filing and clerk review. ER 2125 at ¶ 9, ER 2415-2416. In total, 403,246 initial civil filings were submitted during this timeframe and 11% of these submissions were rejected (i.e. 44,357 rejections). *Id.* In Ada County, the only county CNS visited on a daily basis prior to the transition to e-filing, complaints were reviewed within 2.56 business hours of submission on average. ER 2125 at ¶ 10, ER 2417-2418. In total, 107,616 initial filings were submitted in Ada County during this timeframe and 9% of these submissions were rejected for filing (i.e. 9,685 rejections). *Id.* Thus, absent clerk review on the front end, court action would have been required to address over 44,000 improperly submitted complaints statewide (with close to 10,000 of those submitted in Ada County) in a less than a two-year time span.

43

For complaints filed in the A.A. Category[8]—the only category of complaints CNS is seeking pre-clerk review and acceptance access upon submission for—8,645 civil complaints were submitted from January 1, 2021 through July 31, 2022. ER 2123 ¶ 6, *see also* ER 2129-2411 (spreadsheet containing data summarized in paragraph 6 of Carroll Declaration). Over half of these complaints were reviewed within two business hours of submission, nearly two-thirds (65%) were reviewed within three business hours, and about 85% were reviewed within one business day (i.e. eight business hours). ER 2123-2124 ¶ 6.

The District Court again dismissed Omundson's concerns, reasoning that CNS has "narrowed its challenge to the A.A. category of cases," and thus the District Court was "not so sure" if Omundson would be required to change "the *whole* system as opposed to just the A.A. cases." ER 30-31 (emphasis in original). Although CNS has limited its request to complaints in this category, a judicial document is not whatever CNS deems important; a judicial document is "an item filed with a court that is 'relevant to the judicial function and useful in the judicial process.'" *Planet III*, 947 F.3d at 592 (citing *Lugosch*, 435 F.3d at 119)); *see also* Section II.A, *supra*. Thus, if denying access to documents in eFile & Serve that have not yet been

---

[8] This designation comes from the Idaho Supreme Court's Civil Case Filing Fee Schedule, which is included in the Addendum. This category is essentially civil complaints that allege damages of $10,000 or more, which is the jurisdictional minimum for district courts in Idaho.

reviewed and accepted into Case Manager is deemed unconstitutional (as the District Court so held), Idaho Courts will have to eliminate this practice with respect to *all* submissions that would qualify as judicial documents (e.g. motions, supporting memoranda and declarations, proposed orders and judgments, etc). Otherwise, Idaho's courts will be subject to First Amendment lawsuits in all other types of cases, including criminal proceedings, cases filed in the magistrate court, small claims cases, etc., because the District Court found the current e-filing process unconstitutional. *See* Addendum at Civil Filing Fees Schedule (showing all categories of civil cases).

Eliminating clerk review for essentially all submissions would place an extraordinary and wholly unjustifiable burden on Idaho Courts. From January 4, 2021 through November 18, 2022, there were 2,961,279 filings in Idaho Courts (both civil and criminal) with a 6% rejection rate, meaning 177,677 filings would have required court action to correct if clerk review before transmittal to the official court record (Case Manager) had not been in place. ER 2125 at ¶ 8, ER 2413-2414.  Idaho Courts should not have to incur significant expense and take on unnecessary security risks just so CNS has access to documents that are not yet part of the judicial record (and which may never initiate a lawsuit or be part of an official court record, as discussed in Section II.A, *supra*) a few hours sooner than it would have access to complaints reviewed by local clerks and accepted into the Court's Case Manager.

When weighed against the significant government interests that are furthered by clerk review prior to acceptance into the official court record, the de minimis length of time between submission and clerk review does not give rise to a constitutional violation and does not provide a basis for granting CNS's legally unfounded request for immediate, pre-acceptance access to civil complaints. *Planet III*, 947 F.3d at 594 (qualified right of access does not demand "immediate, pre-processing access to newly filed complaints").

### C. The delays between submission to eFile & Serve and clerk review are minimal, and there are no reasonable alternatives that would provide CNS with more immediate access.

Although the District Court did not specify what exactly Omundson must do to provide access to civil complaints prior to clerk review, the options are undisputedly limited based on the e-filing software used by Idaho Courts. ER 195. Throughout this lawsuit and in discovery—which included a 30(b)(6) deposition of Tyler Technologies—CNS identified two options for providing the pre-acceptance access: (1) Auto Accept and (2) a Press Review Queue.[9] ER 1583-1586. Both Press Review Queue options and Auto Accept provide CNS with the immediate, pre-

---

[9] There are two options for implementing a Press Review Queue. The first option involves paying Tyler Technologies an annual subscription fee to use Tyler's Press Review Queue software, which would require an amendment to the Idaho Supreme Court's contract. ER 210 at ¶ 19. The second option would involve the Idaho Supreme Court developing its own software to interface with Tyler's Press Review Queue API (application program interface). ER 213 at ¶ 23.

46

acceptance access the Ninth Circuit specifically found CNS is not entitled to. Other than these options that provide immediate access upon submission by the intended filer to eFile & Serve—none of which are reasonable—there are no other options with Tyler Technologies' software that would provide CNS with quicker access to complaints than it already has, ER 1584, and historically had, as addressed in Section II.B.1, *supra*.

### 1.  Either Press Review Queue option impairs the Idaho Courts' interests.

#### a.  Costs

"The First Amendment does not require [federal courts] to second guess the careful deliberations the state court undertook in deciding how to manage scarce resources." *Planet III*, 947 F.3d at 600. Tyler's Press Review Queue comes with an annual subscription fee of at least $108,000. ER 2547 at 171:15-172:22. Implementing the Press Review Queue would also require an amendment to the contract between Tyler Technologies and the Idaho Supreme Court, and would further require a security review to ensure the Press Review Tool complies with the Idaho Supreme Court's terms and conditions for cloud-based providers. *Id.* at 171:6-14, ER 210-213, ER 1898 at 37:11-39:12.  The undisputed record establishes that the $108,000 annual fee would be "significantly higher" if Tyler Technologies were to comply with the Idaho Supreme Court's security requirements relating to cloud-based services (which Tyler Technologies currently has not agreed to accept). ER

47

2550 at 182:18-183:4. This option is not feasible with the Idaho Supreme Court's current budget, and an appropriation from the Idaho legislature would be required to implement and maintain the Press Review Queue. ER 211-213 at ¶¶ 20-22.

The Idaho Supreme Court has an important interest in managing the state's judicial resources, and should not be required to incur substantial expense to satisfy CNS's demand for immediate, pre-acceptance access.

### b.     Security concerns

The Idaho Supreme Court also has an important interest in protecting litigant and third-party information and ensuring its systems are adequately secured. The Press Review Queue is a public-facing queue that allows members of the public to review a submission prior to review and acceptance by the clerk. The proposed Press Review Queue would exist in eFile & Serve, which means it would be hosted by Tyler Technologies and Tyler Technologies would be responsible for document security, backups, authentication, etc.[10] Tyler Technologies has not provided all information requested by the Idaho Supreme Court relating to security of the Press Review Queue, and some of the answers Tyler Technologies provided raise serious concerns. ER 210-211 at ¶ 19; ER 1917 at 114:11-115:11; ER 1924 at 144:2-21. The Press Review Queue does not have any security settings that would prevent against

_____

[10] The review queue accessed by clerks is also hosted by Tyler Technologies, but only clerks have access to this queue; the public does not. ER 2546 at 169:14-20.

inadvertent or malicious disclosure of confidential information; it depends entirely on the submitter checking the right boxes so any confidential complaint is diverted from the Press Review Queue. ER 1909-1910 at 83:1-85:14. Tyler Technologies also does not indemnify its customers if documents containing sensitive and confidential information are wrongly placed into the Press Review Queue. ER 2547 at 172:23-173:4.

The Press Review Queue is also not protected against web scraping software and "there's an implied assumption that they – the bots would have access to the environment through the user credentials." ER 2548 at 176:13-17. CNS uses a bot to perform sweeps of new civil cases on public court sites.[11] ER 1707-1708 at 105:1-107:3; ER 1708 at 108:4-109:10 (referring to the automated program as a "spider," "bot," and "crawler" and analogizing it to GoogleBot), ER 1954-1955 (CNS's Daily Reports Style Manual instructs reporters not to report on tax cases with the notation that "Though your spider might return them, the entries should be deleted from your report before publishing.").[12] Similar "sweeping" activities resulted in a massive

---

[11] Notably, CNS's pre-suit demands were solely focused on implementation of a Press Review Queue; there was no mention of Auto Accept as a viable option. ER 2790, 2794, 2797.

[12] CNS currently may have to pay a county copy service fee for a complaint if it wants to include a complaint filed in Idaho state court as a CNS Plus Downloads. ER 1823 at 94:25-96:1. CNS charges a fee for the CNS Plus Downloads. ER 1822 at 93:10- 21; ER 1823 at 95:21-96:1.

49

data breach in another public-facing Tyler Technologies product, the Odyssey Portal, which resulted in the inadvertent publication of over 300,000 confidential attorney discipline records in California. ER 1878-1886. This concern also ties back to the costs listed above; the costs associated with a security breach can be extremely high.

### c.     Erosion of public confidence in the courts and potential for abuse

The Press Review Queue creates potential for confusion surrounding judicial documents. Documents in the Press Review Queue have not been file-stamped and are not part of the official court record. Members of the press or public may not understand that what they are viewing is not an official court document, particularly since Tyler Technologies cannot enable documents in the Press Review Queue to be watermarked as "under review" or "not filed." ER 2547 at 171:3-5. This potential for confusion would be compounded if the press reports on a submitted complaint that gets rejected for filing as if it were an official court record, which is especially concerning because CNS **does not issue a correction** if its daily report erroneously references a complaint that was submitted but later rejected. ER 1718-1719 at 149:24-151:21. The public may not understand why complaints that were purportedly filed did not create a court case and will be left to speculate about the reasons for this, one of which could be a wrong assumption that this was due to judicial error, oversight, or malfeasance. This has the unnecessary potential of

50

undermining public confidence in the court system.

### d. Building a Press Review Queue using Tyler's API is not a reasonable alternative

Tyler Technologies has developed an application (referred to as API) that essentially allows customers to build their own version of a press review tool. ER 2552 at 191:17-192:14. Although Tyler Technologies users are not charged for the API itself, customers must build their own computer application to interface with the API. *Id.* at 192:15-193:4. Costs associated with the API include the costs of developing the application, personnel costs, and data hosting costs. ER 2552-2553 at 193:2-195:2. The API option is also cost prohibitive based on the Idaho Supreme Court's current budget, and an appropriation from the Idaho legislature would be required to develop and maintain the software. ER 198-199.

Tyler Technologies has not provided the Idaho Supreme Court with information it has requested regarding the security, functionality, and costs of the API. ER 1894 at 21:21-22:8. In addition to these costs and security concerns, the API presents similar concerns regarding erosion of confidence in the courts and the potential for abuse.

The Press Review Queue is not a reasonable alternative because of the substantial costs associated with either option, neither of which the Idaho Supreme Court can afford, as well as the security concerns and potential for erosion of public confidence in the judiciary that exist with either option.

51

### 2.     Auto Accept impairs the Idaho Courts' interests

#### a.     Costs

Auto Accept means that documents would not be subject to any clerk review and instead would be submitted to eFile & Serve and then automatically transferred into Case Manager.  Auto Accept would put a significant strain on Idaho Courts' judicial resources because filing errors typically addressed by court clerks will suddenly require court action to fix. ER 2427-2428 at ¶ 8. Although Tyler Technologies' promotional materials say Auto Accept reduces operational overhead, this does not take into consideration the impact on clerks, court staff, or judges once a document has been automatically transferred into Case Manager and requires court action to correct. ER 2542 at 150:16-151:7. Tyler Technologies admittedly has "no visibility into any expense that could be endured by the State or by the Courts" if they were to implement Auto Accept, and defers to Idaho state courts in determining what their internal costs would be as a result of using Auto Accept. ER 2534 at 120:18-121:10.

Auto Accept is not able to determine whether the correct filing fee was submitted with a complaint and reject the complaint if not.  ER 2537-2538  at 131:20-134:21. If a complaint was Auto Accepted even though the correct fee was not paid or there was another filing issue (e.g. filed in the wrong jurisdiction), the issue would have to be dealt with in Case Manager (i.e. once the improperly submitted complaint has been file-stamped and is in the official court record). ER

52

2481-2482 at ¶ 5. As discussed in Section III.B.1, *supra*, this would increase the workload of judges and court staff since they would have to spend time and resources addressing filing errors that would have otherwise been fielded by the clerk.

In addition, the courts are funded in part through filing fees, so it is imperative that filing fees are collected. ER 2484 at ¶ 7. Auto Accept would present issues with refunding filing fees if a complaint was filed in the wrong county. ER 2476-2477 at ¶ 10. The clerks would have to handle refunds, which takes time and resources. *Id.* With the current system, payment is not captured by Tyler Technologies unless and until a document is accepted, so no clerk resources are expended issuing refunds for improperly submitted documents. ER 2538 at 136:25-137:21.

Handling filing errors on the back end is particularly inefficient because there is no ability to interface directly with the filer once a submission has been accepted for filing. In eFile & Serve, the clerk can communicate with the submitter directly through the portal to notify them of any issues with the filing and the reasons for rejection, similar to the in-person interaction that would occur at the clerk's desk with paper filings. *See* Section III.B.1, *supra*. Once a document is transferred out of eFile & Serve and into Case Manager, there is no longer the ability to interface with the submitter through the portal. *Id.* This means that whoever is responsible for addressing the correction on the backend would need to track down the filer's contact information (if provided) to let them know there was an error with filing. *Id.* This is

53

a far less efficient process, especially in instances where accurate contact information is not provided (e.g. if the automatically accepted complaint was handwritten and illegible or contains a typo) or the pro se litigant is incarcerated.

### b.   Security concerns

Auto Accept is also unable to protect against malicious or inadvertent disclosure of confidential information; if a document meets the criteria for acceptance, it is automatically accepted regardless of the substance of the document. ER 2543 at 155:25–156:16. As discussed in Section III C.1.c *supra*, this undermines Idaho Courts' interests in protecting privacy interests and would erode public confidence in the judiciary if Idaho Courts were publishing confidential or sensitive information that should not be made available to the public.

### c.   Prejudice to litigants

As addressed earlier in Section III.B.1, Auto Accept would adversely affect litigants because filing errors would not be addressed on the front end and could therefore go unnoticed for an indefinite period of time. Auto Accept effectively eliminates the three-day grace period to correct filing errors under IREFS 13(c) since there is no clerk review. This negatively impacts the rights of litigants because, at best, time and resources will have to be spent responding to a filing issue on the back end (e.g. preparing a response to a notice of intent to dismiss if filing error is not corrected). At worst, an action could be barred entirely due to a filing error that was not caught on the front end (e.g. a complaint filed close to the statute of limitations

is dismissed for improper venue under I.R.C.P. 12(b)(3)). Litigants and attorneys should not have to face exposure to serious legal consequences simply because CNS wishes to review complaints before clerk review (documents that are not official court records and have not yet initiated a case) a few hours before the complaint is reviewed and accepted into Case Manager; at which time CNS has instant access to the filing.

For these reasons, the policy of not providing public access to electronically submitted civil complaints prior to clerk review and acceptance survives constitutional scrutiny because—even if they are considered judicial documents—the length of time between submission and clerk review is minimal, and is entirely justified when weighed against the reasons for requiring clerk review given that there are no reasonable alternatives for providing pre-acceptance access.

## CONCLUSION

Omundson respectfully requests that this Court reverse the District Court's ruling regarding abstention and dismiss this action with prejudice. Alternatively, Omundson respectfully requests that this Court reverse the District Court's summary judgment rulings that a right of timely access attaches to the complaints at issue and that the policy denying pre-acceptance access does not survive constitutional scrutiny, and remand so that judgment may be entered in Omundson's favor.

Date:  March 6, 2025

DUKE EVETT, PLLC


/s/ Keely E. Duke
Keely E. Duke
Molly E. Mitchell
*Attorneys for Appellant Sara Omundson*

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-6697 |

I am the attorney or self-represented party.

**This brief contains** | 13,762 | **words, including** | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated [          ].

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/Keely E. Duke | **Date** | 03/06/2025 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*