U.S. Court of Appeals Docket No. 24-6697

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

COURTHOUSE NEWS SERVICE,

*Plaintiff/Appellee*,

vs.

SARA OMUNDSON, in her official capacity as
Administrative Director of Idaho Courts,

*Defendant/Appellant.*

---

On Appeal from a Decision of the United States District Court
for the District of Idaho
Case No. 1:21-cv-00305-DCN
The Honorable David C. Nye

---

### APPELLEE COURTHOUSE NEWS SERVICE'S
### REQUEST FOR JUDICIAL NOTICE

---

Roger Myers
Rachel Matteo-Boehm
Jonathan Fetterly
Katherine Keating
**BRYAN CAVE LEIGHTON PAISNER LLP**
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
roger.myers@bclplaw.com; rachel.matteo-boehm@bclplaw.com;
jon.fetterly@bclplaw.com; katherine.keating@bclplaw.com

*Attorneys for Plaintiff-Appellee*
COURTHOUSE NEWS SERVICE

Plaintiff-Appellee Courthouse News Service ("CNS"), in support of its concurrently-filed Answering Brief, hereby requests the Court take judicial notice of the following facts and documents per Federal Rule of Evidence 201.

Pursuant to Local Rule 27-1, CNS' counsel conferred with Appellant's counsel on May 16 and 19, 2025, who said Appellant will likely oppose this motion, as described in the attached Declaration of Jonathan G. Fetterly.

## Requests for Judicial Notice

**Request Nos. 1-8: Records Filed with the Court**

(1) Consent Order entered in *Courthouse News Service v. O'Shaughnessy*, Case No. 2:22-cv-02471 (S.D. Ohio) on June 13, 2023. A true and correct copy of the Consent Order is attached as **Exhibit 1.**

(2) Consent Order entered in *Courthouse News Service v. New Mexico Administrative Office of the Courts*, Case No. CIV 21-0710 JB/LF (D.N.M.) on January 16, 2024. A true and correct copy of the Consent Order is attached as **Exhibit 2.**

(3) Joint Motion to Stay Proceedings in *Courthouse News Service v. Gilmer*, Case No. 21-cv-00286-HEA (E.D. Mo.) on February 8, 2024. A true and correct copy of the Joint Motion is attached as **Exhibit 3.**

(4) Notice of Dismissal Without Prejudice as to Defendant Anna Lorentzen (Nueces County District Clerk) entered in *Courthouse News Service v.*

1

*Gould*, Case No. 4:24-cv-00368 (E.D. Tex.) on October 23, 2024.  A true and correct copy of the Notice of Dismissal is attached as **Exhibit 4.**

(5)  Notice of Settlement and Joint Motion to Stay entered in *Courthouse News Service v. Sattizahn*, Case No. 4:24-cv-04051-LLP (D.S.D.) on November 15, 2024.  A true and correct copy of the Notice of Settlement and Joint Motion to Stay is attached as **Exhibit 5.**

(6)  Notice of Dismissal Without Prejudice as to Defendant Stephanie Menke (Potter County District Clerk) entered in *Courthouse News Service v. Gould*, Case No. 4:24-cv-00368 (E.D. Tex.) on December 2, 2024.  A true and correct copy of the Notice of Dismissal is attached as **Exhibit 6.**

(7)  Notice of Dismissal Without Prejudice as to Defendant Gloria A. Martinez (Bexar County District Clerk) entered in *Courthouse News Service v. Gould*, Case No. 4:24-cv-00368 (E.D. Tex.) on January 7, 2025.  A true and correct copy of the Notice of Dismissal is attached as **Exhibit 7.**

(8)  Joint Notice of Settlement and Motion to Vacate Scheduling Order Dates in *Courthouse News Service v. Shorba,* Case No. 23-cv-02198 (D. Minn.) on April 11, 2025.  A true and correct copy of the Joint Notice is attached as **Exhibit 8.**

**Request Nos. 9-16: Government Websites**

(9)  State of Idaho Judicial Branch "About Us: Court Technology," which can be

2

accessed at https://annualreport.isc.idaho.gov/court-technology/.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 9.**

(10) State of New Mexico e-file website, which can be accessed at https://newmexico.tylertech.cloud/ofsweb.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 10.**

(11)  State of Minnesota Tyler Technology e-file website, which can be accessed at https://minnesota.tylertech.cloud/ofsweb.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 11.**

(12)  State of South Dakota eFile website, which can be accessed at https://efilesd.tylertech.cloud/OfsEfsp/ui/landing.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 12.**

(13) State of Oregon eFile website, which can be accessed at https://oregon.tylertech.cloud/OfsWeb/Home.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 13.**

(14)  State of Kansas News Release "New webpage gives access to new civil case filings in district courts," which can be accessed at https://kscourts.gov/Newsroom/News-Releases/News/2025-News-Releases/April/New-webpage-gives-access-to-new-civil-case-filings.  A true and correct printout of this website, from May 20, 2025, is attached as **Exhibit 14.**

3

(15) State of Missouri Auto Create Case FAQs, which can be accessed at
https://www.courts.mo.gov/page.jsp?id=90277.  A true and correct printout
of this website, from May 20, 2025, is attached as **Exhibit 15.**

(16) State of Iowa "New Pre-Processed Petitions," which can be accessed at
https://www.iowacourts.state.ia.us/ESAWebApp/AlternateFiling.  A true and
correct printout of this website, from May 21, 2025, is attached as **Exhibit
16.**  This website can be accessed by first accessing the Iowa Courts Online
website at https://www.iowacourts.state.ia.us/ESAWebApp//SelectFrame,
and then entering the URL above in the same web browser (either in the
same tab or in a new tab).

**Request No. 17: Court Transcript**

(17) Transcript of proceedings held on Dec. 16, 2016, in *Courthouse News
Service v. Tingling*, Case No. 16-cv-8742 (S.D.N.Y), which can be accessed
at 2016 WL 8739010.  A true and correct copy of the reporter's transcript,
which is also downloadable from Westlaw, is attached as **Exhibit 17**.

<u>**Applicable Law**</u>

Federal Rule of Evidence 201(b) allows this Court to take judicial notice of
any fact "not subject to reasonable dispute because it" is either (1) "generally
known within the trial court's territorial jurisdiction" or (2) "can be accurately and

4

readily determined from sources whose accuracy cannot reasonably be questioned."

**Records Filed with the Court (Request Nos. 1-8, 17)**

Judicial notice may be taken of documents filed and orders or decisions entered in any federal or state court proceeding.  *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (court properly took judicial notice of declarations and attached exhibits filed in prior lawsuit); *Mullis v. United States Bank. Ct*., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987) (court may take judicial notice of pleadings, orders and other papers on file in district bankruptcy court action); *Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1330 (9th Cir. 1981) ("The authorities are clear that it is proper for the court to consider judicially noticeable records from prior lawsuits").[1]

Court transcripts are also appropriate for judicial notice.  *Selane Prods., Inc. v. Cont'l Cas. Co*., 706 F. Supp. 3d 997, 1002 (C.D. Cal. 2020) ("[A] court may take judicial notice of undisputed matters of public record…[t]he Court therefore considers the proffered…transcripts.") (cleaned up); *Herships v. Cantil-Sakauye*, 2017 WL 2311394, at *2 (N.D. Cal. May 26, 2017), *aff'd*, 710 F. App'x 331 (9th Cir. 2018) (granting judicial notice of "Ex. 1, Excerpt of Reporter's Transcript).

---

[1] *Ellingson* was superseded on other grounds (due to amendments to Rule 11) as stated in *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.3 (9th Cir. 2007).

Here, Requests for Judicial Notice 1-8 are all documents (consent orders, notices of settlement and/or requests for dismissal) filed and entered in prior access lawsuits filed by CNS that are offered to show the manner in which those lawsuits resolved, *i.e.*, with the defendants agreeing to cease their challenged restrictions on access by implementing an alternative practice that provides on-receipt access to new e-filed civil complaints or petitions.

Request for Judicial Notice 17 is a reporter's transcript from a prior CNS access lawsuit that is offered for the purpose of showing the district court's ruling from the bench on CNS' motion for preliminary injunction.  Although the transcript is available on Westlaw, the Westlaw citation does not contain pin cites.  CNS offers the original transcript, obtained from the district court docket on PACER, for ease of reference and citation.

### Government Websites (Request Nos. 9-16)

"Judicial notice may be taken of documents available on government websites." *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010), and the Court may thus take judicial notice of the websites identified above and depicted on Exhibits 9-16.  Judicial notice is appropriate because such documents, and the information contained therein, are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Marley v. JP Morgan Chase Bank*, 2013 WL 4536650,

at *2 (C.D. Cal. Aug. 27, 2013) (quoting Fed. R. Evid. 201(b)) (internal quotations omitted).

"Courts regularly take judicial notice of government agency websites and the information contained on them, treating official policies and records posted on the websites as public records." *Daghlian v. DeVry Univ., Inc*., 2007 WL 5625508, at *2, n.9 (C.D. Cal. Dec. 10, 2007); *see also Global Acquisitions Network v. Bank of Am. Corp.*, 2013 WL 604159, at *3 (C.D. Cal. Feb. 19, 2013) ("This information, from two different government websites, 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned' and therefore 'is not subject to reasonable dispute.'"); *Sturm v. Davlyn Investments, Inc.*, 2013 WL 8604662, at *1, n.5 (C.D. Cal. Sept. 30, 2013) (taking judicial notice of fact taken from public record on government website).

Here, the court websites and the information contained on those websites for which CNS requests judicial notice fall squarely within this rule. Each website is maintained by a state government body, and the information provided by the government entities on those websites is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and thus properly the subject of judicial notice.

Additionally, the websites constitute records of statements from state courts or offices in Idaho, New Mexico, Minnesota, South Dakota, Oregon, Kansas,

7

Missouri and Iowa that set forth the activities of those office, and are thus public records for the purpose of the hearsay exception set forth at Federal Rule of Evidence 803(8)(A)(1). As such, this Court may take judicial notice of the information and records on the web sites not only for their existence, but also for the fact that they do, in fact, reflect the activities of the courts to which they pertain.

For the foregoing reasons, CNS respectfully requests that the Court, in considering and ruling on the Appeal, take judicial notice of the items identified above as Request Nos. 1-17.

Dated: May 21, 2025                    BRYAN CAVE LEIGHTON PAISNER LLP

By: _/s/ Rachel Matteo-Boehm_
                    Rachel Matteo-Boehm

Attorneys for Plaintiff-Appellee
Courthouse News Service

## DECLARATION OF JONATHAN G. FETTERLY

I, Jonathan G. Fetterly, declare:

1. I am an attorney duly licensed to practice law in the State of California and in the Ninth Circuit Court of Appeals and am a partner with the law firm Bryan Cave Leighton Paisner LLP, attorneys for Appellee Courthouse News Service. I make this declaration of my own personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2. On May 16 and 19, 2025, I communicated via email with Keely Duke and Molly Mitchell, attorneys for Appellant Sara Omundson, and informed them that CNS intended to request judicial notice of the documents and information that are identified above and the subject to this request. Ms. Mitchell said that Appellant likely would oppose this motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California, on May 21, 2025.

*s/ Jonathan G. Fetterly*
Jonathan G. Fetterly

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-02471** |
| | : | |
| **v.** | : | **Judge Sarah D. Morrison** |
| | : | |
| **MARYELLEN O'SHAUGHNESSY,** | : | **Magistrate Judge Vascura** |
| **in her official capacity as Clerk of** | : | |
| **Franklin County Court of Common Pleas,** | : | |
| | : | |
| **Defendant.** | : | |

## CONSENT ORDER

In this matter, Plaintiff Courthouse News Services ("CNS" or "Plaintiff") has asserted that the practice of the Franklin County Court of Common Pleas Clerk of Court Maryellen O' Shaughnessy ("Clerk" or "Defendant") in delaying public access to newly e-filed, non-confidential, civil complaints until after they are reviewed and approved by the Clerk's office is a violation of its First Amendment right as a member of the press. Plaintiff filed this action seeking a permanent injunction. The Clerk has denied this contention and asserted that the review and approval process serves an important public function of maintaining the accuracy of information provided by the Clerk and of complying with local administrative rules regarding electronic filing.

Mediation was held in this matter on May 1, 2023. By agreement reached during the Mediation, the Parties hereby stipulate and agree that all matters currently in controversy between them, other than the issue of attorney's fees and costs that may be payable to the Plaintiff under 42 U.S. § 1988, have been settled, and that in furtherance thereof, this Consent Order should be entered as follows:

1.    The Court finds that it has jurisdiction over the parties and the subject matter of the suit, which was commenced by the filing of a Complaint on June 13, 2022; that all matters currently in controversy between the parties, other than issue of attorney's fees and costs under 42 U.S.C. § 1988, are hereby compromised and settled; and that a Consent Order should be entered as to the issues that have been resolved by the parties.

2.    On March 21, 2023, a preliminary injunction was issued by this Court in Plaintiff's favor against the Clerk, enjoining her from delaying access to newly e-filed, non-confidential civil complaints until after such complaints are processed, and directing the Clerk to make such complaints available upon receipt. (ECF 38, Opinion and Order, PageID 712).

3.    Following the issuance of the preliminary injunction and in response thereto, the Clerk modified her public webpage to permit online viewing by the public of newly e-filed, non-confidential, civil filings upon receipt. Unreviewed PDF versions of the new filings are accessible through a link on the webpage immediately upon their filing. Once a new filing is reviewed and accepted by the Clerk, it becomes available on the Clerk's regular, online case information system.

4.    Plaintiff agrees that the Clerk's modified procedure is sufficient to resolve the claims set forth in the Complaint. Thus, by agreement of the Parties, this Court hereby permanently enjoins the Clerk from delaying access to newly e-filed, non-confidential civil complaints until after such complaints are processed and directs the Clerk to continue to make such complaints available upon receipt on a permanent basis, or until such time that the Clerk implements a different process or system that provides equal or similar access to newly e-filed non-confidential civil complaints upon receipt.

5.     This Consent Order disposes of all claims by Plaintiffs, other than the issue of attorney's fees and costs under 42 U.S.C. § 1988 and is in all respects final.

6.     The Parties have indicated that they have not resolved the issue of attorney's fees and costs under 42 U.S.C. § 1988. Accordingly, the question of attorney's fees and costs shall be heard by this Court upon Motion by the Plaintiff.

**IT IS SO ORDERED.**

_____          6-13-23
**JUDGE MORRISON**                         **DATE**

3

# Exhibit 2

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 1 6 2024

MITCHELL R. ELFERS
CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

COURTHOUSE NEWS SERVICE,

　　　　　Plaintiff,

v.

　　　　　　　　　　　　　　　　　　　　　　　　No. CIV 21-0710 JB/LF

NEW MEXICO ADMINISTRATIVE
OFFICE OF THE COURTS;
ADMINISTRATIVE OFFICE DIRECTOR
ARTHUR W. PEPIN; NEW MEXICO FIRST
JUDICIAL DISTRICT COURT CLERK'S
OFFICE; and the FIRST JUDICIAL
DISTRICT COURT CLERK KATHLEEN
VIGIL,

　　　　　Defendants.

## CONSENT JUDGMENT

Plaintiff Courthouse News Service ("Courthouse News") has asserted that the practice of the New Mexico Administrative Office of the Courts ("AOC" or "Defendant") in restricting public access to newly e-filed, non-confidential civil complaints until after they are reviewed and accepted by New Mexico District Court clerks, and the resulting delays in access, constitutes a violation of Courthouse News' First Amendment right of access to those complaints.

Mediation was held in this matter on October 10, 2023, and settlement discussions continued thereafter. By agreement reached by the parties following mediation, the parties hereby stipulate and agree that all matters currently in controversy between them have been settled, and that in furtherance thereof, this Consent Judgment should be entered as follows:

　　　　1.　　The Court finds that it has jurisdiction over the parties and the subject matter of this action, which was commenced by Courthouse News' filing of a Complaint on July 30, 2021.

　　　　2.　　To facilitate the resolution of this matter, AOC has agreed to develop and

1

implement a system that, once implemented, will provide the press and public access to new non-confidential civil complaints as they are received by the New Mexico state district courts via New Mexico's statewide e-filing system, and before processing, review, or acceptance by district court clerks or staff.

3.      Specifically, AOC shall develop and implement an electronic queue ("Electronic In-Box") through which non-confidential civil complaints shall be accessible upon receipt by the New Mexico state district courts on a publicly-accessible website maintained by AOC.   The Electronic In-Box shall be implemented, and non-confidential civil complaints shall be accessible via the Electronic In-Box, pursuant to the following schedule:

      a.   Within three (3) months of December 18, 2023, AOC shall develop a technical implementation schedule.  AOC thereafter shall provide Courthouse News with two bimonthly reports confirming progress developing the Electronic In-Box in accordance with Defendant's technical implementation schedule.

      b.   Within nine (9) months of December 18, 2023, Defendant shall make the Electronic In-Box available remotely online to registered members of the press or public.  Defendant agrees to provide CNS written notice confirming the Electronic In-Box is operational pursuant to this subsection.

4.      Within ten (10) days after implementation of the Electronic In-Box pursuant to the deadline established by Section 3.b., above, Defendant shall pay to CNS the sum of Two Hundred Thousand Dollars ($200,000) in satisfaction of CNS's claim for attorneys' fees and costs pursuant to 48 U.S.C. Section 1988.

2

5.      This Consent Judgment disposes of all claims by Courthouse News, including Courthouse News' claim for declaratory and injunctive relief pursuant to 42 U.S.C. Section 1983, and Courthouse News' claim for attorneys' fees and costs pursuant to 42 U.S.C. Section 1988.

_____
UNITED STATES DISTRICT JUDGE

**SUBMITTED BY:**

PEIFER, HANSON, MULLINS & BAKER, P.A.

By: */s/ Gregory P. Williams*
        Gregory P. Williams
P.O. Box 25245
Albuquerque, NM 87125-5245
Tel: (505) 247-4800
Email: gwilliams@peiferlaw.com

- and –

JACKSON WALKER L.L.P.

By: */s/ John K. Edwards*
        John K. Edwards
Texas Bar No. 24002040
Email: jedwards@jw.com
Charles L. Babcock
Texas Bar No. 01479500
Email: cbabcock@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4200

- and –

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ Jonathan G. Fetterly
     Jonathan G. Fetterly
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4070
Tel: (415) 675-3451
Email: jon.fetterly@bclplaw.com

*Attorneys for Plaintiff Courthouse News Service*

**APPROVED BY:**

NEW MEXICO OFFICE OF THE ATTORNEY
GENERAL

By: Mark W. Allen
     Mark W. Allen
     Erica Schiff
     Jeffrey Herrera
     Assistant Attorneys General
Post Office Drawer 1508 (87504-1508)
408 Galisteo St.
Santa Fe, NM 87501
Tel.: (505) 490-4060
Fax: (505) 490-4881
nsydow@nmag.gov
mallen@nmag.gov
vamada@nmag.govjherrera@nmag.gov

*Attorneys for Defendants New Mexico
Administrative Office of the Courts, Director
Arthur W. Pepin, New Mexico First Judicial
District Court Clerk's Office, and the First
Judicial District Court Clerk Kathleen Vigil*

4

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| **COURTHOUSE NEWS SERVICE**,<br><br>                          Plaintiff,<br><br>       v.<br><br>**JOAN M. GILMER**, in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri; and **KATHY S. LLOYD**, in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator,<br><br>                     Defendants. | Case No: 21-cv-00286-HEA |

## JOINT MOTION TO STAY PROCEEDINGS

COME NOW Plaintiff Courthouse News Service ("Courthouse News") and Defendants Joan M. Gilmer, in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri, and Kathy S. Lloyd, in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator ("Defendants") (collectively, the "Parties") and move the Court for the entry of an Order staying the above-captioned proceedings and all current deadlines pending fulfillment of Defendants' obligations under the Parties' settlement agreement.  In support thereof, the Parties state as follows:

1.       In early 2023, Defendants informed Courthouse News of contemplated changes to the Missouri e-Filing System that, once fully implemented, should eliminate the restriction on access to new e-filed civil petitions and the resulting access delays alleged in Plaintiff's Complaint (Dkt. 1), by replacing the current manual clerk acceptance process with an automated process that will not require review and acceptance by local clerk staff of new e-filed civil petitions.  The automation of the clerk acceptance queue is referred to in this motion as "Automatic Case Creation."

2.      Following Defendants' disclosure of the plan to develop and implement Automatic Case Creation, the Parties agreed to suspend discovery pending completion of mediation.  The Parties commenced mediation with David Hamilton (JAMS) on August 28, 2023, and participated in additional mediation sessions in October, November, and December 2023.

3.      On December 27, 2023, the Parties reached an agreement in principle on terms intended to fully resolve the Parties' dispute.  The Parties worked diligently to draft and finalize a final written agreement based on the terms agreed upon in mediation and, on February 8, 2024, entered into the Settlement and Release Agreement attached hereto as **Exhibit A**.

4.      Under the agreement, the Missouri Office of State Courts Administrator ("OSCA") will complete a pilot program for Auto Case Creation by no later than June 30, 2025, to be followed by a recommended statewide implementation of Automatic Case Creation upon successful completion of the pilot program.  This schedule reflects the amount of time Defendants requested for developing, testing, and implementing Automatic Case Creation and accommodates Defendants' need to meet deadlines set by the Missouri Supreme Court with respect to unrelated technology initiatives.

5.      Should legislative or Supreme Court rule changes interfere with the development of and pilot program for Automatic Case Creation, the Parties' agreement would be abrogated and the litigation would resume.

6.      Upon (a) receipt of written confirmation that the pilot program is complete and Automatic Case Creation is operating as required by the agreement; and (b) Defendants' payment of the agreed attorney's fees, Courthouse News will file a dismissal with prejudice.

7.      On January 2, 2024, Mr. Hamilton filed an Alternative Dispute Resolution Compliance Report (Dkt. 83) ("ADR Compliance Report"), indicating that the parties achieved a settlement.

8.      On January 11, 2024, the Court issued an Order vacating the April 29, 2024 trial date, denying all pending motions, and directing the Parties to file a stipulation for dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgment.

9.      The Parties respectfully request that the Court stay this case pending completion of the Automatic Case Creation pilot program (which should be completed no later than June 30, 2025).

10.     It is within the discretionary authority of the Court to impose a stay of proceedings when warranted. *See, e.g.*, *Carlisle v. Emerson Elec. Co*, No. 4:20CV1023 HEA, 2021 WL 833993, at *1 (E.D. Mo. Mar. 4, 2021) (quoting *Landis v. North American Co*., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)) (finding the power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In considering whether to stay upcoming deadlines, "a court should consider both the interest of judicial economy and the potential prejudice or hardship to the parties." *Asarco LLC v. NL Indus., Inc.*, No. 4:11-CV-00864-JAR, 2013 WL 943614, at *3 (E.D. Mo. Mar. 11, 2013).

11.     Here, a stay will not prejudice any party and will streamline the disposition of this action and reduce the burden of litigation on the Parties and the Court.

12.     If this Court so requests, the Parties are willing to provide periodic status updates on the status of the process described above and the Parties' compliance with the settlement agreement. Otherwise, the Parties will comply with the provisions in the Settlement Agreement, including a dismissal of the Complaint once the Parties have complied with all terms in the Agreement. As noted above, the agreed upon completion of the pilot program is no later than June 30, 2025.

13.     In the alternative, if the Court is not inclined to grant this Joint Motion, the Parties respectfully request a status conference with the Court to discuss resolution of this case.

WHEREFORE, the Parties respectfully request that the Court enter an Order granting the Joint Motion to Stay Proceedings, and that the Court stay the proceedings pending successful completion of the Automatic Case Creation pilot program.

Date:   February 8, 2024                              Respectfully submitted,

                                                     BRYAN CAVE LEIGHTON PAISNER LLP

                                                     By:  /s/ *Jonathan G. Fetterly*

                                                     J. Bennett Clark (MO #30907)
                                                     211 N. Broadway, Suite 3600
                                                     St. Louis, Missouri 63102
                                                     Tel. (314) 259-2000 | Fax (314) 259-2020
                                                     ben.clark@bclplaw.com

                                                     *Admitted Pro Hac Vice*:
                                                     Katherine A. Keating (CA # 217908)
                                                     Jonathan G. Fetterly (CA #228612)
                                                     Three Embarcadero Center, 7th Floor
                                                     San Francisco, CA 94111
                                                     Tel. (415) 675-3400 | Fax (415) 675-3434
                                                     katherine.keating@bclplaw.com
                                                     jon.fetterly@bclplaw.com

                                                     *Attorneys for Plaintiff*
                                                     *Courthouse News Service*


Date:   February 8, 2024                              ANDREW BAILEY
                                                     Attorney General

                                                     By:  /s/ *Jason K. Lewis*
                                                     Jason Lewis (MO # 66725)
                                                     Assistant Attorney General
                                                     Missouri Attorney General's Office
                                                     Post Office Box 861
                                                     St. Louis, Missouri 63188
                                                     Tel. (314) 340-3420
                                                     Email : Jason.lewis@ago.mo.gov

                                                     *Attorneys for Defendants Joan M.  Gilmer and*
                                                     *Kathy S. Lloyd*

# EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement"), effective as of February 6, 2024 (the "Effective Date"), is entered into by and between Plaintiff Courthouse News Service ("CNS"), and Defendants Joan Gilmer, in her official capacity as Clerk of the Circuit Court of St. Louis County, and Kathy Lloyd, in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator ("Defendants").  CNS and Defendants are referred to herein collectively as the "Parties," and each of them as a "Party."

## RECITALS

1.      On March 5, 2021, CNS filed a lawsuit against Defendants entitled *Courthouse News Service v. Gilmer, et al..*, Case No. 4:21-cv-00286-HEA, United States District Court for the Eastern District of Missouri (the "Action").

2.      On September 21, 2022, the Eighth Circuit Court of Appeals issued its opinion in an interlocutory appeal in this Action. The Action was then remanded for further proceedings to the District Court.

3.      In July 2023, Defendants informed Plaintiff of contemplated changes to the Missouri e-Filing System that, once fully implemented, will likely result in the elimination of the restriction on access to new e-filed civil petitions and resulting access delays alleged in Plaintiff's Complaint. Dkt. 1.

4.      The Parties acknowledge and agree that under the current configuration of the Missouri e-Filing System, new e-filed civil petitions are not electronically available on Missouri Case.net to the press or public automatically upon their submission to the Missouri Circuit Courts until after manual review and acceptance by local clerk staff.  However, on or about May 5, 2023, the Missouri Court Automation Committee approved a Motion to Automate the Clerk Acceptance Queue, pursuant to which the clerk acceptance process for e-filing documents will be eliminated and replaced with an automated process that will not require review and acceptance by local clerk staff of new e-filed civil petitions, which will result in public access to new non-confidential e-filed civil petitions upon receipt.  A true and correct copy of the Motion to Automate the Clerk Acceptance Queue is attached as Exhibit 1. The automation of the clerk acceptance queue is referred to as "Automatic Case Creation" or "Auto-Create Case."

5.      On August 28, 2023, the Parties completed an initial mediation session with mediator David Hamilton of JAMS. The Parties thereafter continued their efforts to resolve the case, including additional mediation sessions and communications with Mr. Hamilton.

6.      On December 27, 2023, working through Mr. Hamilton, the Parties reached an agreement on the material terms of a settlement.  The terms are reflected in Settlement Term Sheet attached as Exhibit 2.

7.      The Parties agree that it is in their mutual best interests to fully and finally resolve all disputes between them, including but not limited to the disputes and claims for relief alleged in the Action, pursuant to the terms of the Settlement Term Sheet and this Agreement.

<div align="center">

**AGREEMENT**
</div>

**NOW, THEREFORE**, in consideration of the acts, promises, agreements, and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**A.      Incorporation of Recitals.**

All of the recitals listed above are incorporated as material terms of this Agreement.

**B.      Settlement Term Sheet and Payment**

1.      The Parties agree that the Settlement Term Sheet (Exhibit 2) contains the material terms of their settlement, which are hereby made part of this Agreement.  The Parties also agree that this Agreement further includes material terms of their settlement.

2.      The Parties agree that the monetary amount reflected at Section 1.a of the Settlement Term Sheet shall be payable as a structured settlement as follows:

a.      Payment 1: A first payment of $100,000 shall be delivered to CNS within the first six months of 2024, and in any event no later than June 30, 2024;

b.      Payment 2: A second payment of $100,000 shall be delivered to CNS shortly after the State of Missouri's new fiscal year begins on July 1, 2024, and in any event no later than September 1, 2024.

**C.      Notice of Settlement and Dismissal of Action**

1.      Upon execution of this Agreement, the Parties shall work together to develop a joint notice of settlement or motion for the purpose of notifying the Court of the settlement and requesting that the Court vacate all current case dates and deadlines, including but not limited to the current trial date and all related deadlines.  The joint

filing shall further inform the Court that the Parties agree the Action should remain open and pending until the St. Louis County Pilot Program is complete and Auto Create Case - Civil functionality is operating as contemplated and required by Settlement Term Sheet and this Agreement. CNS shall file the joint notice with the Court.

2. The Parties acknowledge and agree that dismissal of the Action is and shall be governed by Section 1.f.c of the Settlement Term Sheet, and that dismissal of the Action shall not be required unless or until the conditions of that Section are satisfied.

3. The Parties agree to cooperate in the preparation and filing of any documents the Court may request or require in connection with the Parties' request to vacate case deadlines and keep the case open pending satisfaction of the conditions set forth in Section 1.f.c. of the Settlement Term Sheet, including but not limited to the submission of any additional information or status reports.

D. **Changes or Improvements to Access Systems**

Defendants reserve the right to change, update, or improve the technologies, methods, and procedures for complying with its obligations under the Settlement Term Sheet or this Agreement, including but not limited to use of third-party vendors, so long as Defendants continue to provide contemporaneous access upon receipt to new non-confidential e-filed civil petitions as contemplated and intended by the Settlement Term Sheet and this Agreement, ("Improvements"). Nothing in the Settlement Term Sheet or this Agreement shall limit Defendants' right to determine in their discretion how best to make and implement any Improvements, so long as the Improvements continue to result in access upon receipt to new non-confidential e-filed civil petitions.

E. **Release Provisions.**

1. Except for the obligations undertaken and agreed to by Defendants in this Agreement, and effective upon the completion and satisfaction of the conditions set forth in Section 1.f.c of the Settlement Term Sheet, CNS, on its own behalf, fully and completely releases, covenants not to sue, and forever discharges Defendants, and each of their respective divisions, branches, executives, officers, judicial officers, attorneys, employees, representatives, agents, assigns, executors, administrators, predecessors, and successors, past and present (collectively with Defendants the "Releasees"), both individually and collectively, of and from any and all claims, rights, demands, liabilities, actions and causes of action, whether in law or in equity, suits, damages, punitive damages, penalties, losses, attorneys' fees, costs, debts, obligations, expenses, and compensation, of whatever nature (whether direct or indirect, derivative, or by way of indemnity, contribution, or subrogation, or of any other nature), known or unknown, fixed or contingent, suspected or unsuspected, asserted or unasserted (collectively, "Claims") that CNS now has against any of the Releasees that arise out of: (a) the allegations and Claims asserted in the Action; (b) any alleged failure to provide timely,

3

contemporaneous access to non-confidential e-filed civil petitions prior to the dates upon which Defendants give written confirmation that the Auto Create Case – Civil is operational, as provided in Settlement Term Sheet; and (c) any acts or omissions by any of the Releasees occurring prior to the Effective Date of this Agreement or prior to the effective date of this Section.

2.      The Parties understand and acknowledge that the facts and law upon which the foregoing releases are given may hereafter turn out to be other than or different from the facts and law now known or believed to be true, hereby accept and assume the risk of the facts and law turning out to be different, and agree that this Agreement shall be in all respects effective and not subject to termination or rescission by virtue of any such difference in fact or law.

**F.      Capacity of the Parties.**

The Parties individually represent and warrant that each has the power, capacity, and authority to enter into this Agreement, and that no Claim released by this Agreement has been or will be assigned to any third parties who are not signatories to this Agreement.

**G.      General Provisions.**

1.      The Parties represent that they have read this Agreement, and that they fully understand all of its terms.  The Parties have conferred with their attorneys or have knowingly and voluntarily chosen not to confer with their attorneys about this Agreement.  The Parties execute this Agreement without coercion or duress of any kind, fully understand any rights they have or may have, and sign this Agreement with full knowledge of any such rights.

2.      To the fullest extent permitted by law, this Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, without regard to its conflict of law principles or provisions.

3.      This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. PDF and facsimile signatures will have the same effect as original signatures.

4.      The headings contained in this Agreement are for the convenience of the Parties only and shall be given no substantive or interpretative effect whatsoever.

5.      As it relates to the effectuation of this Agreement, each Party shall cooperate in good faith to deliver such further information or documents the Court may request or require in order to effectuate the Parties' intent, including but not limited to

the Parties' intended dismissal of the Action pursuant to the schedule set forth above.

6. Nothing in this Agreement shall be construed as an admission of wrongdoing on the part of Defendants and the Releasees, or an acknowledgement of liability for any of the claims in the Action. The Agreement reflects the compromise of the disputed claims between the Parties.

7. The Parties agree that if any Party desires any modification to the terms of this Agreement or Term Sheet, that the Parties will engage in good faith to discuss any such modification. The Parties agree that no Party is bound to agree to any such modification following a good faith discussion and deliberation over any suggested modification.

8. If any Party has concerns or questions about its or any Party's obligations or compliance with this Agreement or the Term Sheet, all Parties agree to engage in good faith conversations to resolve any such questions or concerns without necessitating Court involvement.

*(Signature block begins on next page)*

**THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND. CNS FURTHER ACKNOWLEDGES AND UNDERSTANDS THAT THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS ACCRUING AS OF THE EFFECTIVE DATE.**

Dated: February 6 , 2024

By: _____
William Girdner
*Publisher, Courthouse News Service*

Dated: February 7, 2024

By: _____
Joan Gilmer
*in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri*

Dated: February 7, 2024

By: _____
Kathy Lloyd
*in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator*

*Approved as to form:*

Dated: February 6 , 2024

BRYAN CAVE LEIGHTON PAISNER LLP

By: _____
Jonathan G. Fetterly
*Attorneys for Courthouse News Service*

Dated: February 8 , 2024

MISSOURI OFFICE OF THE ATTORNEY GENERAL

By: _____
Jason Lewis
Assistant Attorney General
*Attorneys for Defendants*

6

# EXHIBIT 1

Settlement and Release Agreement

Case: 4:21-cv-00286-HEA   Doc. #: 85-1   Filed: 02/08/24   Page: 9 of 16 PageID #: 533

### Motion to Automate the Clerk Acceptance Queue

The clerk acceptance process (i.e., SMC Case Import) for eFiling documents will be eliminated and replaced with an automated process. The system will be programmed and configured to automatically file in Show-Me Courts all submissions upon receipt. Elimination of the clerk acceptance process will also eliminate the following functionality in the eFiling system or in Show-Me Courts:

- The eFiling system will not have the capability to recall filings
- Court staff will not be able to return a filing to the filer
- Court staff will not be able to place a filing on hold

Prior to the eFiling submission being filed in Show-Me Courts, the eFiling system (which includes automated interfaces) will validate all required data elements needed to process the filing. In the event required information is not included, the system will advise the filer to provide the required information for the submission to be filed into Show-Me Courts. At a minimum, the automated process will perform the following as appropriate:

- Create a case as filed and establish the case security as defined by State Judicial Records Committee and be assigned a case number
- Subsequent filings will be filed on the case according to the case selected and document type chosen by the filer. The associated document(s) will be assigned the document security level as defined by the State Judicial Records Committee
- The system will log all automated processing to be viewable by court staff and will allow additional court processing

The Case Management Oversight Team (CMOT) shall prioritize this development effort into their schedule as a high priority, beginning with civil case initiation. All other filing types can be scheduled for development and prioritized as CMOT determines appropriate.

This functionality shall be utilized by all court locations and will be deployed statewide as determined by the Implementation Planning Task Team (IPTT).

The Supreme Court and MCA shall be kept advised as progress on this effort is made.

# EXHIBIT 2

Settlement and Release Agreement

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

COURTHOUSE NEWS SERVICE, )
)
      Plaintiff, )
)    Case No. 4:21-CV-00286-HEA
v. )
)
JOAN M. GILMER, et al. )
)
      Defendant. )

## SETTLEMENT TERM SHEET

1.    The terms and conditions, which are not subject to further negotiation, to be included in a document setting forth all settlement terms, are as follows:

    a.  The parties agree that Defendants, without admitting liability or conceding that Plaintiff Courthouse News Service ("CNS") is the prevailing party, will pay CNS $200,000 in satisfaction of CNS's claim for attorneys' fees.

    b.  The Office of State Courts Administrator (OSCA) will proceed with development of automatic case create functionality in the Missouri Court Automation System to eliminate the clerk acceptance process for new electronically filed circuit civil petitions ("Auto Create Case - Civil"), as set forth in the attached Exhibit 1. The system will be programmed and configured to automatically file new cases upon receipt. The automated process will create a case as filed and establish the case security as defined by State Judicial Records Committee and be assigned a case number. New non-confidential civil petitions filed with the circuit courts and automatically accepted through Auto Create Case - Civil shall be made available to the press and public through Missouri Case.net upon receipt by the system, including remotely through the Remote Access to Public Documents project.

        a.  Upon the completion of the Remote Access to Public Documents project and recent changes to Missouri Supreme Court Operating Rule 4.07 and 1.11, OSCA shall prioritize its development effort for Auto Create Case - Civil into its schedule as a high priority, beginning with civil case initiation for the following case types:

            i.  CA CC Breach of Contract
          ii.  CB CC Promissory Note
        iii.  CC CC Specific Performance
        iv.  CD CC Suit on Account
         v.  CE CC Contract-Other

      vi.  EA CC Declaratory Judgment
     vii.  EB CC Habeas Corpus
    viii.  EC CC Injunction
     ix.  ED CC Other Extraordinary Remedy
      x.  EG CC Temporary Restraining Order
     xi.  IA CC Chpter 536 State Agcy Rvw
     xii.  IF CC Other Administrative Review
    xiii.  TC CC Pers Injury-Malpractice
    xiv.  TE CC Pers Injury-Vehicular
     xv.  TF CC Pers Injury-Other
    xvi.  TG CC Property Damage
   xvii.  TH CC Wrongful Death
  xviii.  TI CC Other Tort
    xix.  TJ CC Employmnt Discrmntn 213.111
     xx.  X1 CC Other Miscellaneous Actions

c.  All other filing types can be scheduled for development and prioritized as the Missouri Case Management Oversight Team (CMOT) determines appropriate.

d.  Following the development of Auto Create Case - Civil, OSCA will pilot the system changes in the 21st Judicial Circuit (St. Louis County) commencing with the case types identified above. Other judicial circuits may also be included in the pilot program ("PP").

e.  OSCA will begin this development process in January 2024 and complete it by the end of Quarter 1, 2025. The pilot program in the 21st Judicial Circuit (St. Louis County) will take up to three months following its commencement.

f.  OSCA is committing to and CNS is agreeing to accept:

    a.  The PP in St. Louis County to commence no later than the end of Q1 2025 and once the PP commences it is to be complete no later than end of Q2 2025. No later than the completion of the PP, OSCA agrees to recommend to the Implementation Planning Task Team (IPTT) that statewide implementation of Auto Create Case - Civil be commenced upon successful completion of the PP and that statewide implementation be complete no later than 15 months after commencement.

    b.  In the event that the development and pilot-program schedules are required to be changed due to legislative or Supreme Court Rule changes, the parties agree this agreement is abrogated and the parties will proceed with the litigation. The parties may, but are not required, to meet and confer on resolution of the scheduling issue.

    c.  Plaintiff will file a Dismissal with Prejudice upon (1) execution of a definitive settlement agreement, (2) Defendants' payment of the agreed attorney's fees,

with each party to pay their own costs and mediation fees; and (3) Plaintiff's receipt of written confirmation that the PP is complete and Auto Create Case - Civil functionality is operating as contemplated and required by this Agreement.

2.      Upon the filing of the Dismissal with Prejudice contemplated by Section 1.f.c., above, the parties agree to release, discharge, and forever hold the other harmless from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date. The parties agree that the specific language of the release and settlement agreement incorporate any settlement terms will be drafted by counsel for the parties and submitted to the mediator for review to confirm conformance with this Settlement Term Sheet.

        This mutual release will run to the benefit of all attorneys, agents, employees, officers, directors, shareholder, subsidiaries and partners of the parties. "Party" as used in this release includes all named parties to this case.

4.      Each signatory hereto warrants and represents:

        (a)     he or she has authority to bind the parties for whom that signatory acts.
        (b)     the claims, suits, rights and/or interests which are the subject matter hereto are owned by the party asserting same and have not been assigned, transferred, or sold and are free of encumbrance.

5.      The parties agree to cooperate with each other in the drafting and execution of such additional documents as are reasonably requested or required to implement the terms and spirit of this agreement.

6.      **This agreement is made and performable in St. Louis County, Missouri, and shall be construed in accordance with the laws of the State of Missouri.**

7.      Each signatory to this settlement has entered into same freely and without duress after having consulted with professionals of his or her choice. Each party hereto has been advised by the mediator that the mediator is not the attorney for any party and that each party should have this agreement reviewed by that party's attorney prior to executing same.

                                        *(Signature block begins on next page)*

# EXHIBIT 1
# TO SETTLEMENT TERM SHEET

## Motion to Automate the Clerk Acceptance Queue

The clerk acceptance process (i.e., SMC Case Import) for eFiling documents will be eliminated and replaced with an automated process. The system will be programmed and configured to automatically file in Show-Me Courts all submissions upon receipt. Elimination of the clerk acceptance process will also eliminate the following functionality in the eFiling system or in Show-Me Courts:

- The eFiling system will not have the capability to recall filings
- Court staff will not be able to return a filing to the filer
- Court staff will not be able to place a filing on hold

Prior to the eFiling submission being filed in Show-Me Courts, the eFiling system (which includes automated interfaces) will validate all required data elements needed to process the filing. In the event required information is not included, the system will advise the filer to provide the required information for the submission to be filed into Show-Me Courts. At a minimum, the automated process will perform the following as appropriate:

- Create a case as filed and establish the case security as defined by State Judicial Records Committee and be assigned a case number
- Subsequent filings will be filed on the case according to the case selected and document type chosen by the filer. The associated document(s) will be assigned the document security level as defined by the State Judicial Records Committee
- The system will log all automated processing to be viewable by court staff and will allow additional court processing

The Case Management Oversight Team (CMOT) shall prioritize this development effort into their schedule as a high priority, beginning with civil case initiation. All other filing types can be scheduled for development and prioritized as CMOT determines appropriate.

This functionality shall be utilized by all court locations and will be deployed statewide as determined by the Implementation Planning Task Team (IPTT).

The Supreme Court and MCA shall be kept advised as progress on this effort is made.

DATED: February 6, 2024

Plaintiff

William Girdner
*Publisher, Courthouse News Service*

Defendants

Joan Gilmer
*in her official capacity as Clerk of the*
*Circuit Court of St. Louis County, Missouri*

Kathy Lloyd
*in her official capacity as State Courts*
*Administrator for the Missouri Office of*
*State Courts Administrator*

Approved:  Attorney for Plaintiff

Jonathan G. Fetterly
Bryan Cave Leighton Paisner LLP

Approved:  Attorney for Defendants

Jason Lewis
Missouri Office of the Attorney General

# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 4:24-cv-00368 |
| v. | § | |
| | § | |
| | § | |
| ANNE LORENTZEN, in her Official | § | |
| Capacity as Nueces County District Clerk, | § | |
| et. al. | § | |
| *Defendants* | § | |

## NOTICE OF DISMISSAL WITHOUT PREJUDICE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff Courthouse News Service (hereinafter "Plaintiff") in the above-numbered and styled cause, filing this *Notice of Dismissal* of suit against Defendant Anne Lorentzen, in her official capacity as Nueces County District Clerk (hereinafter "Defendant Lorentzen"), and in support thereof, respectfully shows:

1.  Plaintiff by counsel, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, give notice that the above action against Defendant Lorentzen be and is voluntarily dismissed, with prejudice.

2.  All matters in controversy herein between Plaintiff and Defendant Lorentzen have been resolved, as Defendant Lorentzen has implemented the Press Review Tool to Plaintiff's satisfaction.

3.  This case is not governed by any federal statute that requires a court order for dismissal of the case.

4.  Each party shall be responsible for its own costs and attorneys' fees associated with this matter.

Date: October 23, 2024                    Respectfully submitted,

                                          **JACKSON WALKER L.L.P.**


                        By:    */s/ Matt Dow*_____
                               Matt Dow
                               Attorney-In-Charge
                               Texas Bar No. 06066500
                               mdow@jw.com
                               100 Congress Avenue, Suite 1100
                               Austin, Texas 78701
                               Telephone:  (512) 236-2000
                               Facsimile:  (512) 236-2002

                               John K. Edwards
                               Texas Bar No. 24002040
                               jedwards@jw.com
                               1401 McKinney, Suite 1900
                               Houston, Texas 77010
                               Telephone:  (713) 752-4200
                               Facsimile:  (713) 752-4221


                               ATTORNEYS FOR PLAINTIFF
                               COURTHOUSE NEWS SERVICE




                        **CERTIFICATE OF SERVICE**

        I hereby certify that service of the foregoing document will be accomplished through the

notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 23rd

day of October, 2024.


                               */s/ Matt Dow*_____
                               Matt Dow

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant Lorentzen via email regarding this Notice. On October 23, 2024 counsel for Plaintiff confirmed that Plaintiff does not oppose the relief requested herein.

*/s/ Matt Dow*
Matt Dow

42372131v.1

# Exhibit 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

COURTHOUSE NEWS SERVICE,

      Plaintiff,

v.

GREG SATTIZAHN, *in his official capacity as South Dakota State Court Administrator*; KARL THOENNES, *in his official capacity as the Circuit Court Administrator for Lincoln and Minnehaha Counties*; LIZ HASSETT, *in her official capacity as the Circuit Court Administrator for Pennington County,*

      Defendants.

Case No: 4:24-cv-04051-LLP

---

## NOTICE OF SETTLEMENT AND JOINT MOTION TO STAY

    Plaintiff, Courthouse News Services ("Courthouse News") and Defendants Greg Sattizahn, in his official capacity as South Dakota State Court Administrator, Karl Thoennes, in his official capacity as the Circuit Court Administrator for Minnehaha and Lincoln County Circuit Courts, and Liz Hassett, in her official capacity as the Circuit Court Administrator for Pennington County Circuit Court (collectively "Defendants"), by and through their counsel, hereby notify the Court that the Parties have reached a settlement in the above-titled matter.

    As set forth in further detail in the Parties' written agreement, and without admitting liability for any claims asserted in the Complaint, Defendants, through the South Dakota State Court Administrator's Office, have agreed to implement an online portal to provide registered users with on-receipt access to new non-confidential civil complaints filed with all South Dakota

1

circuit courts in all counties upon the complaints' receipt by the South Dakota courts via the statewide e-filing system. Defendants expect to implement this portal before July 2025. Once the portal is operational, Defendants will provide written notice to Plaintiff confirming the same. Within ten (10) days of receipt of Defendants' written notice as outlined in the Parties' agreement, Plaintiff will file a joint motion or stipulation for dismissal with prejudice.

The Parties hereby request that the Court stay this matter until July 1, 2025, to allow Defendants time to fully perform their duties as required under the Parties' written settlement agreement. If the Parties have not sought dismissal on or before July 1, 2025, the Parties will file a joint status report explaining why the matter has not been dismissed.

Dated: November 15, 2024.

Respectfully submitted,

By: /s/ *Brendan V. Johnson*
Brendan V. Johnson [S.D. bar number 3263]
ROBINS KAPLAN LLP
150 E 4th Place, Suite 704
Sioux Falls, SD 57104
Tel. (605) 335-1300
Fax (605) 740-7199
BJohnson@RobinsKaplan.com

By: _____
James E. Moore
WOODS, FULLER, SHULTZ & SMITH P.C.
P.O. Box 5027
300 South Phillips Avenue, Suite 300
Sioux Falls, SD 57117-5027
Phone (605) 336-3890
Fax (605) 339-3357
Email: James.Moore@woodsfuller.com

Herbert R. Giorgio, Jr. (MO #58524)*
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Tel. (314) 259-2000
Fax (314) 259-2020
herb.giorgio@bclplaw.com
*admission pro hac vice pending

*Attorneys for Defendants*

*Attorneys for Plaintiff*

2

4882-2344-7034, v. 1

# Exhibit 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 4:24-cv-00368 |
| v. | § | |
| | § | |
| | § | |
| JOANNA STATON, in her Official | § | |
| Capacity as Bell County District Clerk, | § | |
| et. al. | § | |
| *Defendants* | § | |

## <u>NOTICE OF DISMISSAL WITHOUT PREJUDICE</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff Courthouse News Service (hereinafter "Plaintiff") in the above-numbered and styled cause, filing this *Notice of Dismissal* of suit against Defendant Stephnie Menke, in her official capacity as Potter County District Clerk (hereinafter "Defendant Menke"), and in support thereof, respectfully shows:

1. Plaintiff by counsel, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, give notice that the above action against Defendant Menke be and is voluntarily dismissed, without prejudice.

2. All matters in controversy herein between Plaintiff and Defendant Menke have been resolved, as Defendant Menke has implemented the Press Review Tool.

3. This case is not governed by any federal statute that requires a court order for dismissal of the case.

4. Each party shall be responsible for its own costs and attorneys' fees associated with this matter.

Date: December 2, 2024                    Respectfully submitted,

                                          **JACKSON WALKER L.L.P.**

                          By:    */s/ Matt Dow*_____
                                 Matt Dow
                                 Attorney-In-Charge
                                 Texas Bar No. 06066500
                                 mdow@jw.com
                                 100 Congress Avenue, Suite 1100
                                 Austin, Texas 78701
                                 Telephone:  (512) 236-2000
                                 Facsimile:  (512) 236-2002

                                 John K. Edwards
                                 Texas Bar No. 24002040
                                 jedwards@jw.com
                                 1401 McKinney, Suite 1900
                                 Houston, Texas 77010
                                 Telephone:  (713) 752-4200
                                 Facsimile:  (713) 752-4221

                                 ATTORNEYS FOR PLAINTIFF
                                 COURTHOUSE NEWS SERVICE


                          **<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that service of the foregoing document will be accomplished through the

notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 2nd

day of December, 2024.


                                 */s/ Matt Dow*_____
                                 Matt Dow

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant Menke via email regarding this Notice. On December 2, 2024 counsel for Plaintiff confirmed that Plaintiff does not oppose the relief requested herein.

/s/ Matt Dow
Matt Dow

# Exhibit 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 4:24-cv-00368 |
| v. | § | |
| | § | |
| | § | |
| JOANNA STATON, in her Official | § | |
| Capacity as Bell County District Clerk, | § | |
| et. al. | § | |
| *Defendants* | § | |

## NOTICE OF DISMISSAL WITHOUT PREJUDICE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff Courthouse News Service (hereinafter "Plaintiff") in the above-numbered and styled cause, filing this *Notice of Dismissal* of suit against Defendant Gloria A. Martinez, in her official capacity as Bexar County District Clerk (hereinafter "Defendant Martinez"), and in support thereof, respectfully shows:

1. Plaintiff by counsel, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, give notice that the above action against Defendant Martinez be and is voluntarily dismissed, without prejudice.

2. All matters in controversy herein between Plaintiff and Defendant Martinez have been resolved, as Defendant Martinez has implemented the Press Review Tool.

3. This case is not governed by any federal statute that requires a court order for dismissal of the case.

4. Each party shall be responsible for its own costs and attorneys' fees associated with this matter.

43185267v.1

Date: January 7, 2025                    Respectfully submitted,

                                          **JACKSON WALKER L.L.P.**


                          By:    */s/ Matt Dow* _____
                                 Matt Dow
                                 Attorney-In-Charge
                                 Texas Bar No. 06066500
                                 mdow@jw.com
                                 100 Congress Avenue, Suite 1100
                                 Austin, Texas 78701
                                 Telephone:  (512) 236-2000
                                 Facsimile:  (512) 236-2002

                                 John K. Edwards
                                 Texas Bar No. 24002040
                                 jedwards@jw.com
                                 1401 McKinney, Suite 1900
                                 Houston, Texas 77010
                                 Telephone:  (713) 752-4200
                                 Facsimile:  (713) 752-4221


                                 ATTORNEYS FOR PLAINTIFF
                                 COURTHOUSE NEWS SERVICE




                        **CERTIFICATE OF SERVICE**

     I hereby certify that service of the foregoing document will be accomplished through the

notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 7th

day of January, 2025.


                                 */s/ Matt Dow* _____
                                 Matt Dow

43185267v.1

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant Martinez via email regarding this Notice. On January 7, 2025 counsel for Plaintiff confirmed that Plaintiff does not oppose the relief requested herein.

/s/ Matt Dow
Matt Dow

43185267v.1

# Exhibit 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Courthouse News Service,                    Court File No. 23-cv-02198 (DWF-DJF)

          Plaintiff,

    v.                                          **JOINT NOTICE OF SETTLEMENT
                                                     AND MOTION TO VACATE**
Jeff Shorba, et al.,                                 **SCHEDULING ORDER DATES**

          Defendants.

## NOTICE OF SETTLEMENT

Plaintiff Courthouse News Service ("Courthouse News") and Defendants Jeff Shorba, in his official capacity as Minnesota State Court Administrator, Sara Gonsalves, in her official capacity as the District Administrator for the Fourth Judicial District, and Heather Kendall, in her official capacity as District Administrator for the Second Judicial District ("Defendants") (collectively, the "Parties"), hereby notify the Court that the Parties have reached a settlement under which dismissal of this case is conditioned upon Defendants' development and implementation of an online solution ("Solution") that will provide registered users with on-receipt access to newly submitted non-confidential civil complaints filed with all Minnesota district courts upon their receipt by the Minnesota courts e-filing system.

Pursuant to the terms of the Parties' agreement, the Solution shall be implemented by December 31, 2025. Further, Courthouse News will file a joint motion for dismissal with prejudice of this action in its entirety within 10 days of receiving notice from

1

Defendants that the Solution is operational. Accordingly, the Parties anticipate filing the joint motion for dismissal no later than January 10, 2026.

To allow for completion of the settlement terms, the Parties respectfully request that the Court vacate all case deadlines, including the dates for discovery cut-off, dispositive motion filing cut-off, and trial. The Parties further request that the Court issue an order requiring the Parties to file either a joint motion for dismissal by January 10, 2026, or alternatively, if the action cannot be dismissed at that time, a status report advising the Court as to the status of the settlement and dismissal.

Dated: March 28, 2025                    Respectfully submitted,


BRYAN CAVE LEIGHTON PAISNER LLP              KEITH ELLISON
                                             Attorney General
*/s/ Jonathan G. Fetterly*                   State of Minnesota
Herbert R. Giorgio, Jr. (MO #58524)*
Jonathan G. Fetterly (CA #228612)*           */s/ Joseph Weiner*
Katherine Keating (CA #217908)*              JOSEPH WEINER
211 N. Broadway, Suite 3600                  Assistant Attorney General
St. Louis, MO  63102                         Atty. Reg. No. 0389181
Tel. (314) 259-2000
Fax (314) 259-2020                           445 Minnesota Street, Suite 1400
herb.giorgio@bclplaw.com                     St. Paul, Minnesota 55101-2131
jon.fetterly@bclplaw.com                     (651) 757-1463 (Voice)
katherine.keating@bclplaw.com                (651) 297-1235 (Fax)
*admitted pro hac vice*                      joseph.weiner@ag.state.mn.us

ATTORNEYS FOR PLAINTIFF                       ATTORNEYS FOR DEFENDANTS

2

# Exhibit 9



## ABOUT US
# Court Technology

### Status of the Fund

The Idaho Supreme Court's technology system is primarily supported through the Court Technology Fund (Fund), a dedicated fund established by Idaho Code 1-1623 with 93% of its revenue provided through legislatively established fees imposed in both criminal and civil court cases.

Over the last decade, the Fund's revenue has significantly decreased due to a general decline in court filings and related fees. To address funding concerns and stabilize the Fund, the Legislature approved $8.4 million in ongoing funding for FY 2025. This included the transfer of 52.75 FTPs into the state general fund and $1.98 million for software licensing fees.

This support has been essential in stabilizing the Fund and replenishing cash reserves needed for future years. In FY 2025, the Fund's expenditures are budgeted at $6.0 million, a decrease of 31% from prior year actuals. Fund revenue is projected to be $9.1 million, realizing a net cash balance of $3.1 million which will ensure continuity of statewide court technology over the next several years. This is important as the American Relief Plan Act (ARPA) funding expires and certain expenditures are absorbed in the Fund.

### Benefits of Court Technology

Programs and projects through the Court Technology Fund aid with court management, secure and efficient handling of court information, and access to court records.

This funding supports everyday operations at local courts by providing statewide case management systems, digital recordings for official court proceedings, videoconferencing systems, computer equipment, network infrastructure, credit card processing for court fine and fee payments, and information security systems. The Fund supports network connectivity for essential court functions and pays for the computers, printers and other devices used by court staff across the state. The Fund supports the work of hundreds of judges, court clerks, county attorneys, and thousands of users of the online court records system — all constantly working to fulfill the constitutional promises of the third branch of government.

Cybersecurity is of increasing importance to a modern court system. For the first nine months of 2024, software and monitoring services that are supported through the Fund blocked over 584,000 email phishing attempts, 689,000 attempts to breach computers networks, and 4.87 million attempts to breach websites managed by Idaho's Judicial Branch.

## Enhancements

To support cybersecurity, stabilize infrastructure, and to support the Idaho Supreme Court's constitutional obligation to manage court records, the Judicial Branch is in the midst of transitioning court software and services to one cohesive, cloud-based system statewide. Previous allocations of ARPA funds have helped make possible a project scope that could not have been done through the Court Technology Fund alone.

The Judicial Branch has made good progress on its commitments in this project. In May 2024, court staff migrated Idaho's electronic case management system from a local data center to a cloud-based solution. This involved successfully transferring data for 13.2 million court, supervisory and attorney cases; 44.5 million documents; 7.3 million hearings; 191.0 million docket entries; and software and profiles for 2,138 users of the system.

Judges, court clerks and other court personnel have begun moving to one consistent Microsoft 365 service for courts across the state. As of November 2024, 66% of court personnel had moved to the new service. At that time, 52% of local courthouses had internet connections installed to enable a statewide computer network for conducting court business. These totals were expected to rise further by January 2025.

ARPA funds earlier allowed the Judicial Branch to hire IT field service technicians in each of Idaho's seven judicial districts, supporting local county courts in addressing technology issues. The technician program completed its second year in October 2024 and has received strong positive feedback from county clerks, judges and court staff. The feedback supports making the technicians a permanent fixture in local support plans for court services after the ARPA funds end.

Access to court records and court information is improving with the launch of a new iCourt Portal. This is a multi-year, ongoing project. The first stage – to be released in early 2025 – focuses on access for attorneys to records and information in their own cases. Subsequent stages will address access to information for the public and for agencies connected to the justice system.



**Disclaimer**

The information provided on this website is information only and is not legal advice. Even if you follow all instructions you are not guaranteed a favorable result. Please consult with a lawyer for legal advice or the court assistance office for help accessing the courts. On this site we include links to other websites for informational purposes only. We do not endorse and are not responsible for the content on external sites.

Accessibility    Privacy & Security    Cybersecurity    iCourt Portal: Search Your Records    Idaho Guide & File

© 2020 Idaho Supreme Court. All Rights Reserved.

# Exhibit 10



Odyssey File & Serve
newmexico.tylertech.cloud/ofsweb
Error
viDesktop - Projects
All Bookmarks
STATE OF NEW MEXICO
Court Information
Starting October 14, 2024, attorneys must electronically submit subsequent filings in criminal cases in all magistrate courts statewide and the Bernalillo County Metropolitan Court. This is in accordance with Supreme Court Order No. S-1-AO-2024-00023.
In order to keep all File & Serve accounts current, your account will be disabled if you have not logged into File & Serve in the past ninety days. If you need access to an inactive account please contact Tyler Technologies at 1-800-297-5377 or email Efiling.Support@Tylertech.com
Effective April 7, 2023: all File & Serve users with Secured Odyssey Public Access (SOPA) accounts now have access to re:SearchNM with
Actions
Sign In
Register
Self Help
Need Help?
Web Training Sessions
Training Videos
User Guides
Free Process Waiver Account Guide
Share your screen with GoToAssist
© 2025 Tyler Technologies
Version: 2022.1.8.10545
EMPOWERED BY TYLER TECHNOLOGIES

# Exhibit 11



Odyssey File & Serve
minnesota.tylertech.cloud/ofsweb
Error
viDesktop - Projects
All Bookmarks
MINNESOTA JUDICIAL BRANCH
Court Information
Welcome to Minnesota HTML 5 eFiling Site
Notice: Pursuant to Minn. Gen. R. Prac. 14.03(g), all users need to follow the Minnesota Registered User Electronic Filing Guide.
Restricted identifiers must be redacted from eFiled documents, including financial source documents. Use Forms 11.1 and 11.2 to file documents with restricted identifiers.
Actions
Sign In
Register
Self Help
Need Help?
Web Training Sessions
Training Videos
User Guides
© 2025 Tyler Technologies
Version: 2022.0.6.10027
EMPOWERED BY TYLER TECHNOLOGIES

# Exhibit 12



eFile SD - Landing Page

efilesd.tylertech.cloud/OfsEfsp/ui/landing

viDesktop - Projects

All Bookmarks

eFileSD

Welcome to eFileSD

Sign into your account →

Changes Document from HTML5 to EFSP

Click HERE for the latest updates

Attend a Training Webinar (1hr) register here

UJS Firm/Filer Instructions

Frequently Asked Questions

For assistance, email UJSeSupport@ujs.state.sd.us 7:30 am to 5:00 PM

Clerk's Office Phone Numbers and County Codes

Email or Firm Change? Click here for instructions

Tyler's Firm Admin Guide

Tyler's Filer User Guide

Case Filing Statement - Latest Version

## Register for a Firm Account

Register for a Firm Account

Examples:
- All legal professionals including:
  * Solo Practitioners
  * Attorneys, paralegals, and staff at firms with multiple filers
- Note: Attorneys may be required to enter an attorney number. If you do not have an attorney number from this state, register as an individual.

Register →

© 2025 Tyler Technologies, Inc. | All Rights Reserved | Version: 2024.8.1.6

EMPOWERED BY TYLER TECHNOLOGIES

# Exhibit 13



Odyssey File & Serve

oregon.tylertech.cloud/OfsWeb/Home

viDesktop - Projects

All Bookmarks

Error

# Oregon Judicial Department File & Serve

## Court Information

### Welcome to the OJD Circuit Court and Tax Court eFile Site

Attention all filers: eFiling Technical Support will be changing hours of operation from 5am-7pm PDT to 5am-5pm PDT beginning 3/26/2020

**IMPORTANT REMINDER: The electronic filing system DOES NOT automatically serve opposing parties when you eFile a document with the court. You must take specific steps to ensure you are properly serving opposing parties. For details on how this works, consult the eService Quick Reference Guide and UTCR Chapter 21.100. The UTCR can be accessed here:**

## Actions

Sign In

Register

## Self Help

Need Help?
Web Training Sessions
Training Videos
User Guides
File and Serve Usage Agreement
List of Case Categories, Case Types and Case Subtypes

© 2025 Tyler Technologies
Version: 2022.1.8.10545

EMPOWERED BY TYLER TECHNOLOGIES

# Exhibit 14



News Releases - KS Courts

kscourts.gov/Newsroom/News-Releases/News/2025-News-Releases/Ap...

viDesktop - Projects

All Bookmarks

Find today's releases at new Decisions Search

Kansas Judicial Branch

Public Attorneys Judges

About the Courts Cases & Decisions Rules & Orders eCourt Newsroom

Home > Newsroom > 2025 News Releases > April

# New webpage gives access to new civil case filings in district courts

Published
**04/10/2025**

TOPEKA—The Kansas court system has launched a new webpage that gives visitors access to new civil case filings before they are reviewed and accepted by the district court clerk, eliminating the wait time for attorneys, the public, and media who track new civil cases.

"Court modernization is a continuous process to improve how Kansas courts serve the people of Kansas, and the civil filing webpage is a great example," said Chief Justice Marla Luckert. "People who watch for new civil cases can use it to track when cases are filed, even while the filings are waiting to be processed by the court clerk."

Attorneys have been required to electronically file court documents since 2018. All electronically filed documents enter a queue to be processed by the court clerk, including documents creating new civil cases.

"If a new civil case is efiled Friday afternoon, the court clerk may not process it until Monday morning," Luckert said. "The new civil filing webpage makes that information available sooner to people who track new civil cases, with the understanding that a case is not created until the filings are accepted by the clerk."

**Kansas Civil Filings webpage**

The **Kansas Civil Filings webpage** hosts documents after they are submitted, unless they are designated sealed. To designate a case or document as sealed, a filer must submit a motion to seal at the same time they submit the document to meet requirements in Supreme Court Rule 23.

**Filings are not court records until accepted by clerk**

Documents on the Kansas Civil Filings webpage are not court records until they are reviewed and accepted by the court clerk.

After the court clerk confirms a filing follows applicable rules, it is accepted and becomes a court record. Public court records are on the **Kansas District Court Public Access Portal.**

**Documents available for three days**

Documents remain on the Kansas Civil Filings webpage for three days, unless they are rejected by the court clerk under provisions in **Supreme Court Rule 23(c)**.



## Find a District Court

Search by county or district

**Links**

Careers

Forms

Contact Us

COVID-19 Response

**Policies**

ADA Compliance

Terms & Conditions

Privacy

Non-Discrimination

Language Access Plan

**Judicial Center Hours & Holidays**

Monday–Friday
8 a.m. to 5 p.m.

Memorial Day—
Monday, May 26, 2025

All Holidays

**Kansas Judicial Branch**

301 SW 10th Avenue
Topeka Kansas 66612-1507

**Staff Login**

Copyright © 2025 Kansas Judicial Branch. All Rights Reserved.

# Exhibit 15





Auto Create Case

courts.mo.gov/page.jsp?id=90277

MISSOURI COURTS
Judicial Branch of Government

Search

About the Courts · Court Forms · Jurors · News & Media · Pending Cases & Decisions · Rules & Resources

# Auto Create Case

Since October 2024, the Missouri judiciary has been rolling out a new feature designed to give attorneys and the public faster access to new civil cases. Called "Auto Create Case," the new feature was in planning and development for more than a year before its launch.

## How does Auto Create Case work?

This new feature automates the process of electronically accepting new petitions filed in certain civil case types, eliminating both the clerk queue and the wait. It also makes new cases available automatically to continue filing documents or beginning other time-sensitive work. It also makes the new case available automatically for the public to view.

Nothing new is required of attorneys. Just go through the process to initiate a new civil case as you always have done. Once you click the "submit" button, the system automatically creates a new case, accepts your petition and gives you a case number.

***Caution: Please do not "submit" without being sure you are filing what you want – and in the correct division.*** Because this new feature eliminates the queue, you no longer will be able to recall a document, either from the system itself or by calling and asking for help from the local circuit clerk staff. Once you submit the new filing, it will be accepted as filed. If you make a mistake, you will need to take appropriate corrective actions, including dismissing or amending the case.

## Where can I learn more?

Use the map and case type tools below to learn more about when you should expect to start using the new Auto Create Case feature.

Jump to Case Types Being Implemented

**County and Circuit Court Map**

**Auto Create Case Schedule**

**Implemented**
- Auto Create Case implemented for certain case types in this region

**Friday, October 18**
- St. Louis County

**Friday, November 22**
- Boone County
- Chariton County
- Greene County
- Phelps County
- Pike County
- St. Charles County
- St. Clair County
- St. Francois County

**Friday, April 18**
- Remainder of circuits 1 through 10

**Friday, May 16**
- Remainder of circuits 12 through 20

**Wednesday, June 18**
- Remainder of circuits 22 through 29

**Friday, July 18**
- Remainder of circuits 30 through 46

(Map last updated 9 April 2025 to reflect the statewide implementation schedule.)

## Case Types Being Implemented

(all are for new cases in circuit division, unless otherwise noted)

| Category | Case Type |
|---|---|
| **Administrative Review** | |
| | • Chapter 536 State Agency Review (IA - CC)<br>• Other Administrative Review (IF - CC) |
| **Contracts** | |
| | • Breach of Contract (CA - CC)<br>• Promissory Note (CB - CC)<br>• Specific Performance (CC - CC)<br>• Suit on Account (CD - CC)<br>• Contract – Other (CE - CC) |
| **Extraordinary Remedy** | |
| | • Declaratory Judgment (EA - CC)<br>• Habeas Corpus (EB - CC)<br>• Injunction (EC - CC)<br>• Temporary Restraining Order (EG - CC)<br>• Other Extraordinary Remedy (ED - CC) |
| **Miscellaneous Civil** | |
| | • Contempt (XD - CC)<br>• Other Miscellaneous Actions (X1 - CC) |
| **Torts** | |
| | • Asbestos (TA - CC)<br>• Employment Discrimination (TJ - CC)<br>• Personal Injury – Federal Employee Liability Act (TB - CC)<br>• Personal Injury – Malpractice (TC - CC)<br>• Personal Injury – Product Liability (TD - CC)<br>• Personal Injury – Vehicular (TE - CC)<br>• Personal Injury • Other (TF - CC)<br>• Property Damage (TG - CC)<br>• Public Accommodation (TK - CC)<br>• Wrongful Death (TH - CC)<br>• Other Tort (TI - CC) |



| Associate Division, Contracts | |
| --- | --- |
| | • Contract/Account – Bulk (CR - AC) |
| Associate Division, Real Estate | |
| | • Landlord Actions – Bulk (R4 - AC) |
| Associate Division, Torts | |
| | • Tort Damages – Bulk (TZ - AC) |

## Find a Court/Person

### Search a Location

| City | Zip | Find |

or

| County/Court | Find |

### Find Judicial Personnel

| First | Last | Find |

or

| ❶ | Position | Find |

| Case.net | Newsroom |
| --- | --- |
| eFiling | Missouri Statutes |
| Make a Payment | Representing Yourself |

# Exhibit 16



Iowa Courts Online Search - Se ×   Alternate Filings ×

iowacourts.state.ia.us/ESAWebApp/AlternateFiling

viDesktop - Projects   All Bookmarks

Iowa Courts Online
Electronic Docket Record Search

Trial Court

Help
Home
New Search

# New Pre-Processed Civil Petitions

This site provides public access to certain electronically filed civil petitions and attachments that initiate a case. The site includes only certain case types. It also does not include documents that the filer designates as confidential.

Please note that these filings have not yet been processed by the clerk's office, and may later be returned to the filer for various reasons. Judicial Branch Information Technology is not able to control how filers submit their documents. Filers are responsible for complying with applicable rules, including Chapter 16, the Iowa Rules of Electronic Procedure, and its rules on personal privacy protection.

Check Iowa Courts Online Search for information on processed case documents.

County: ADAIR

List Filings

CN=John Q Public,O=JUDICIAL

Logon   Register

For exclusive use by the Iowa Courts
© State of Iowa, All Rights Reserved

# Exhibit 17

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

2

------------------------------x

3

COURTHOUSE NEWS SERVICE,

4

                Plaintiff,

5

        v.                            16 Civ. 8742 (ER)

6

MILTON TINGLING,

                                      Argument

7

            Defendant.
------------------------------x

8

                                      New York, N.Y.

9

                                      December 16, 2016
                                      3:00 p.m.

10

Before:

11

        HON. EDGARDO RAMOS

12

                                      District Judge

13

14

15

        APPEARANCES

16

17

BRYAN CAVE LLP

18

        Attorneys for Plaintiff
BY:  WILLIAM J. HIBSHER

19

        JACQUELYN N. SCHELL
        DANIEL H. LEWKOWICZ

20

21

LEE A. ADLERSTEIN
        Attorney for Defendant

22

23

24

25

1          (Case called)

2          THE COURT:  Good afternoon.  Everyone can be seated.

3          This matter is on for a show cause hearing for

4     preliminary injunction brought by Courthouse News Service

5     seeking to enjoin the clerk of the court of the New York State

6     Supreme Court, New York County, from essentially withholding

7     newly filed complaints while certain administrative tasks are

8     conducted.

9          We will begin with you, Mr. Hibsher.  You can remain

10     seated if you wish.  If you have a microphone, speak directly

11     into the microphone.  Or you can stand, as you wish.

12          MR. HIBSHER:  Thank you, your Honor.  Your Honor,

13     Courthouse News Service reports on civil cases filed in federal

14     and state courts throughout the country.  With the Court's

15     permission, I would like to reserve some rebuttal time for

16     after my adversary speaks.

17          THE COURT:  Sure.

18          MR. HIBSHER:  Thank you.

19          Until the advent of electronic filing in the New York

20     State courts, CNS had access to nearly all civil complaints by

21     the end of each day on which they were filed.  But with

22     e-filing, perhaps counterintuitively, there are now substantial

23     delays in access to newly filed cases in New York supreme.  New

24     York supreme is one of the country's most prolific and most

25     important courts.  On average, CNS sees less than two-thirds of

1    the cases filed.  One out of three cases filed each day are

2    withheld from CNS and from the public.  Often the delay is

3    greater than one day.

4              THE COURT:  Is it ever greater than one day if it's a

5    regular workday, not a weekend or a holiday?

6              MR. HIBSHER:  Yes, your Honor.  The sampling that we

7    provided in both the complaint and in the Angione affidavits

8    lists the numbers of complaints that are produced on the same

9    day.  Then there is a second column in paragraph 24 of the

10   Angione affidavit which says one-day delay, and then a third

11   column which says third-day delay.

12             For example, on January 12th, 2016, which was a

13   Tuesday, 58 percent of the cases were made available to the

14   public and the press on the same day but 42 percent of those

15   Tuesday cases were not.  The sampling that we provided shows a

16   number of instances in which weekday filings were not made

17   available on the same day.

18             THE COURT:  I asked whether it took more than a day.

19   Using that example that you just provided, were there any cases

20   that were withheld until the Thursday, say?

21             MR. HIBSHER:  I think the several-day delays occurred

22   on weekends and/or holidays joined by weekends.  Usually, it's

23   a next-day filing.  As you know, this is a sampling.  We did

24   not go through every single filing comprehensively.  Here we

25   are on January 22nd.  69 cases were filed.  That must have been

(84 of 134), Page 84 of 134 Case: 24-669, 05/21/2025, DktEntry: 30.1, Page 84 of 134
Case 1:16-cv-08742-ER   Document 24   Filed 12/30/16   Page 4 of 55

4

1    a Friday, your Honor.

2         I can go through the data and supplement my remarks

3    with a response to that question, but as I stand here, I don't

4    know for sure whether the delays in filings on nonweekend and

5    holiday days were greater than one day.

6         THE COURT:  That is my understanding.  If that is the

7    case, you're getting every complaint within 24 hours, say?

8         MR. HIBSHER:  Cases are filed in the morning.  I think

9    it would be better to say that we are getting cases filed on

10   non-Friday weekdays that do not precede a holiday by the end of

11   business the next day.  It may not be 24 hours.  It may be 30

12   hours or more.  I'm splitting hairs, but I want to be clear

13   about what the delay is.

14        The delay is important.  It may not seem like a major

15   delay, but access to judicial documents is essential to public

16   understanding the court process.  This is a concept that has

17   been developed by a number of cases, beginning in 1980 with the

18   Supreme Court's Richmond News and culminating with the

19   Bernstein decision in the Second Circuit this year, which made

20   clear that complaints are entitled to constitutional access

21   under the First Amendment.

22        Despite the nature of the delay, it is well known that

23   news quickly goes stale.  It is the function of the press to

24   report on news promptly largely because the news worthiness of

25   a story is often fleeting.  The loss of a First Amendment right

1    of access to court documents, which we think Bernstein clearly

2    establishes here, even for minimal periods, constitutes

3    irreparable injury under the First Amendment.

4           Those lines are not just my words.  Those lines are

5    taken from the Supreme Court and the Second Circuit cases,

6    which we cited in our brief.

7           THE COURT:  Is there authority within the Second

8    Circuit that defines how quickly access has to be provided?

9           MR. HIBSHER:  Lugosch in the Second Circuit referred

10   to immediate access.  Bernstein quotes Lugosch and says once a

11   First Amendment right of access attaches, the access must be

12   immediate.  The Supreme Court uses the word "immediate."  Fresh

13   Grove in the Seventh Circuit, one of the leading cases in this

14   area, uses the words "immediate" and "contemporaneous."

15          There are no cases in the Second Circuit which parse

16   this particular factual issue, but Bernstein makes clear that a

17   complaint is entitled to First Amendment protection.  All of

18   the cases dealing with First Amendment access, whether they

19   arise in connection with sealing or with limited access to

20   certain kinds of judicial proceedings, all talk about the First

21   Amendment right of access being one that is immediate.

22          When we are talking about the media and the fleeting

23   nature of the news, and particularly when we are in a setting

24   like New York City, which is the media capital, and a court

25   like the supreme court in New York County, where so many of the

1    cases are of incredible importance, a delay of one day is

2    really a news cycle.

3         We put into our moving papers three newsworthy

4    examples of cases which were filed on one day.  Trump v.

5    Univision was one.  The filing attorney received a received

6    stamp from the system that receives electronically filed

7    documents, and within an hour or two a page 6 online New York

8    Post had a story of Trump suing Univision for its cancellation

9    of the of the Miss Universe pageant.  The Courthouse News

10   Service and the public did not see that case for 22 hours.

11        THE COURT:  You just said the New York Post ran the

12   story.

13        MR. HIBSHER:  It did.

14        THE COURT:  So the public therefore had access to the

15   story.

16        MR. HIBSHER:  The public that reads New York Post had

17   it.  But the single media outlet was fed that unprocessed and

18   unofficial copy of the complaint.  We have copies of it in our

19   reply declarations which show the copy that the lawyer who

20   filed it received on the day it was filed as well as the

21   official copy 22 hours later the next day.

22        The lawyer who filed that complaint undoubtedly fed

23   that complaint to the media outlet of his or her choice.  Did

24   it become public after the lawyer did that?  Perhaps.  But

25   Courthouse News Service, which has hundreds of subscribers,

1    many of which are media outlets, did not have that case

2    available and was questioned by many of its subscribers as to

3    why it did not.

4         THE COURT:  Why is that of First Amendment

5    significance?  I understand that if the complaint had not been

6    made available at all.  But the fact that a newspaper had it

7    and made it available immediately, doesn't that assuage the

8    concern that the public not have access to it?

9         MR. HIBSHER:  On the contrary.  The fact that a

10   litigant or a lawyer can feed a filed complaint, which is a

11   judicial document and to which he has received a received

12   stamped from the court, can feed that document to a media

13   outlet of choice is a kind of unevenhandedness that I believe

14   the First Amendment seeks to eliminate.

15        THE COURT:  Do you think that the First Amendment

16   seeks to create a level playing field for newspapers, radio

17   stations, news outlets, etc.?

18        MR. HIBSHER:  I think the law considers the press to

19   be a surrogate for the public.  It doesn't discriminate.  It

20   considers the press in general to be a surrogate for the

21   public, and I think there is an assumption that the press will

22   be treated evenhandedly.  I have not seen a case which parses

23   this particular issue out.

24        THE COURT:  I asked the series of questions because

25   you appear to base your argument at least in part on the fact

1    that Courthouse News Service is being harmed.  But it will

2    always be the case that a litigant will or may favor one media

3    outlet or another.  There is certainly nothing that courts can

4    do about that, whether you are getting immediate access or not.

5    For example, a litigant can give a draft of a complaint that is

6    going to be filed to a favored reporter.

7             MR. HIBSHER:  This is true.  The difference, however,

8    is this when a litigant gives a draft of a complaint, whether

9    it is to encourage settlement or for any other reason, that

10   litigant is giving an unofficial copy of the complaint.  The

11   litigant does not have the protection of the privilege that one

12   gets when one has filed information in a publicly filed

13   complaint.  The recipient has no certainty that the complaint

14   will ever be filed.  And that is a process that we have seen

15   since litigation began.  Drafts of complaints are exchanged for

16   all sorts of reasons.

17            When it is an official court document -- Bernstein

18   makes this very clear -- a First Amendment right attaches at

19   the moment that it becomes an official court document.  Cases

20   that we cite in our brief are really eloquent in talking about

21   the press's role in informing the public and particularly

22   informing the public on the institution of the judiciary.

23            The news cycle is fleeting.  When there is a delay of

24   one day or when a litigant is allowed to provide a copy of an

25   official court document that he has received a stamp on but the

1    public has not yet seen to a particular news outlet, we believe

2    that creates a First Amendment violation.

3         THE COURT:  Why are you here alone?  Why is CNS here

4    alone?

5         MR. HIBSHER:  Your Honor, we have litigated this issue

6    in several federal courts around the country.  We talked in our

7    papers about the Central District of California case called

8    Planet, a Southern District of Texas case as well.  In some of

9    those cases amici have come in that have been representatives

10   of the press.  The Planet case went to the Ninth Circuit two

11   times.  And there were numerous representatives of news

12   organizations that joined those cases.

13        At this stage, particularly in the preliminary stage,

14   we did not reach out to news organizations to try to solicit

15   that interest.  We were hopeful that the issues that we

16   articulate in this case would be resolved amicably.  We talk

17   about our efforts to do that in our papers, and we continue to

18   be hopeful that that is a possibility.

19        THE COURT:  You say preliminary.  Certainly it is

20   preliminary at least at the stage of this litigation.  But the

21   papers that you submitted indicate that you have been trying to

22   get the clerk to provide you with this access going back to at

23   least I think it was July of last year.

24        MR. HIBSHER:  Correct.

25        THE COURT:  Were any efforts made to bring in fellow

1   newspaper --

2          MR. HIBSHER:  No, your Honor, we have not made an

3   effort in this jurisdiction toward that end.  It is possible,

4   if this case continues, that this will be an issue that we will

5   certainly make other media aware of.  That may follow.  But we

6   have not made that effort, we have not been turned down.  That

7   is the status on that one.

8          THE COURT:  You provide in your papers comparisons of

9   what other courts do, including this court and other states

10  around the country.  Can you give me a rundown, one or two, of

11  what the other New York City counties do.

12         MR. HIBSHER:  All the counties in New York City follow

13  the processing rules that are followed here.  By "here" I mean

14  New York supreme.  This is a statewide issue.  The numerosity

15  of filings and the importance of filings in New York County far

16  outweigh any of the other counties in New York State.

17         THE COURT:  If I issue the injunction that you

18  request, who will it affect?  What courts will it affect?

19         MR. HIBSHER:  It will affect New York supreme court,

20  your Honor, and it will affect the clerk of New York County.

21         THE COURT:  All right.

22         MR. HIBSHER:  Your Honor, the defendant in their

23  responding papers does not deny that his administrative

24  processing causes delays, nor does he take issue with the

25  sampling data that we included in our moving papers, though he

1    characterizes it as misleading.

2              THE COURT:  And exaggerated.

3              MR. HIBSHER:  And exaggerated.  He talks about the

4    numbers of weekend filings that are included in our sampling.

5    We believe that once the court allows electronic filings after

6    hours and on weekends and once the filings that occur during

7    those times become official court records, as they do

8    instantaneously when they receive a received stamp and the

9    statute of limitations is tolled under the law, that we have a

10   right to see those documents.  In the end, relatively few cases

11   are filed on the weekend.  I think weekends and holidays only

12   constitute about 3 percent of all of the cases filed.

13             THE COURT:  If I read the papers correctly, the New

14   York supreme court closes at 5:00.

15             MR. HIBSHER:  Correct.

16             THE COURT:  But you may still file complaints

17   electronically after 5 o'clock.

18             MR. HIBSHER:  24-7, your Honor.

19             THE COURT:  Including weekends?

20             MR. HIBSHER:  Including weekends and holidays.

21             THE COURT:  As I understand it, if you file

22   electronically after 5:00 p.m. on a particular day, the

23   complaint is deemed filed as of the following business day.  Am

24   I correct about that?

25             MR. HIBSHER:  No, your Honor.  It is deemed filed as

1   of the moment that you electronically file it.

2           THE COURT:  What access do you want?  If something is

3   filed at 8 o'clock in the evening or on a Sunday morning, what

4   are you looking for with respect to those filings?

5           MR. HIBSHER:  We would like to see those complaints as

6   we do in this courthouse and in the vast majority of federal

7   courts where the complaints go on to PACER for the entire world

8   to see.

9           The defendant is concerned about revealing complaints

10  that may not have been processed because some of those

11  complaints may have incorrect venues or they may be matrimonial

12  actions that are filed in New York supreme improperly.  Our

13  response to that is that there are safeguards in place when you

14  file electronically that alert the filer and there are laws in

15  place that place the burden on the filer to redact personal

16  information and to make certain that a matrimonial action is

17  not filed.

18          What we are asking for here is not Internet

19  instantaneous access.  What we are asking for is timely access

20  upon filing.  Traditionally, the press room at New York supreme

21  stays open long after the courthouse closes.  There is a

22  terminal in that press room.  It is the very same terminal onto

23  which cases, after they are processed, flow.

24          What we are asking the defendant to do is to make

25  cases that are filed with the Court and are official court

1    documents available to the press and public upon receipt in a

2    timely way.  That is the injunction that the district court in

3    Planet in the Central District of California issued.

4         In the Jackson case in the Southern District of Texas

5    the court issued an injunction requiring the clerk to provide

6    same-day access.  In Planet the judge issued an injunction that

7    required the court to provide timely access but precluded

8    administrative processing before access and effectively

9    provided same-day access.  That is what we are seeking here.

10        THE COURT:  I'm just trying to see what an injunction

11   would look like.  If something is filed on a Sunday morning --

12   I know this building is open 24-7.

13        MR. HIBSHER:  The press room in this building is open

14   24-7.

15        THE COURT:  What is the story across the street?  Does

16   the building shut down?

17        MR. HIBSHER:  The building shuts down at 5:30, when

18   the last security guard leaves.  But people are allowed to

19   remain in the supreme court building, and there is an exit

20   which people who stay late use, including members of the press

21   who are in the building before the closes and who stay late.

22        THE COURT:  For a Sunday morning filing, Sunday

23   morning electronic filing, are you requesting that the building

24   be open for the press or remain open for the press?

25        MR. HIBSHER:  Not necessarily.  That filing can be

 1  made available electronically, and it could be made available

 2  just to credentialed reporters.

 3          THE COURT:  Off-site, remotely?

 4          MR. HIBSHER:  Off-site.  It could be done on-site.

 5  But we are not asking the court to open its doors at 8 o'clock

 6  on Sunday.

 7          THE COURT:  Do you have that access now, remote

 8  access?

 9          MR. HIBSHER:  We have remote access to the official

10  filings now on the New York State website where cases flow, and

11  we have access in the press room to cases that are processed.

12  What we would ask for is either on-site or remote access.  It

13  doesn't have to be made available to the public until the clerk

14  of the court has an opportunity to do whatever processing it

15  deems necessary, and those cases which have been filed with the

16  court and are judicial documents would be made available to the

17  press in that manner.

18          It is not exactly what you have in the Southern

19  District, where cases flow immediately onto PACER for the world

20  to see 24-7.  We would be very content with something sub-

21  stantially less than that.  Our issue here is not that we put

22  these cases on the Internet for the world to see.

23          The kinds of data that the clerk says in his papers he

24  is concerned about catching, like improper venue cases stamped

25  Kings County supreme and somehow the lawyer files it in New

 1    York supreme, we would get to see that under the injunction

 2    that I propose, and the clerk of the court would have an

 3    opportunity after it goes public to do whatever the clerk of

 4    the court needs to do to claw that back or to inform the filer

 5    that it was a Kings County document improperly filed.

 6           THE COURT:  I take it, and I think you made a

 7    reference to it in your papers, that New York State laws, court

 8    rules, applicable regulations put the onus on the litigants to

 9    make sure that that type of information -- Social Security

10    numbers, identities of minor sexual abuse victims, for

11    example -- that type of information is not put in filings or,

12    if it is, it is put in some redacted fashion, correct?

13           MR. HIBSHER:  Correct.  The same sort of rules exist

14    in the federal system, which put the burden on the filer to

15    redact privacy information.  When one files in the state

16    system, in New York supreme, one is repeatedly reminded about

17    the redaction rules.  One has to check a box saying that I have

18    read the redaction rules and I have complied with those rules.

19           THE COURT:  If you want to file electronically a

20    matrimonial matter, could you?

21           MR. HIBSHER:  We appended to the reply affidavit

22    screenshots of what the filer sees.  The categories do not

23    include matrimonial.  I asked my colleagues, who do this all

24    the time, that very question: could you file a matrimonial

25    action if you really wanted to?  The answer is perhaps.  You

1  might check off tort and file a matrimonial action as a tort.

2  Under the proposal that I am asking your Honor to order, that

3  is a matrimonial action that would then be made available to

4  the press.

5        However, this is a First Amendment case.  There is a

6  First Amendment right of access that has attached.  The law is

7  very clear that once that occurs, the burden shifts to the

8  defendant to show that he has an overriding interest, that that

9  interest is essential to preserve higher values, and that is

10  narrowly tailored to preserve that interest.

11        The defendant has to come forward with facts to

12  illustrate the harm that he has hypothesized in his papers.  He

13  is the filer.  Presumably he has the data on the errant filings

14  that he describes in his complaint.  He has the numbers on the

15  matrimonial actions that have erroneously been filed, e-filed,

16  in state supreme court and would, had the clerks of his

17  department not caught them, have been made public in violation

18  of the law.

19        THE COURT:  How many are there, do you know?  Do you

20  have a sense of how many actions are picked up by this review

21  process that the clerk goes through?

22        MR. HIBSHER:  I do not have a sense because the

23  defendant's papers are completely silent on any data at all.

24  The cases which we cite make very clear that the harm that they

25  allege in support of a process that prevents access under the

1   First Amendment has to be provided, has to be illustrated with

2   empirical evidence.  There is no data whatsoever in their

3   papers.  They have not met a key element of their burden to

4   show what this harm is.

5           THE COURT:  Even assuming for the sake of argument

6   that filing something improvidently because of venue would

7   equal the value of allowing the press prompt access, assuming

8   those two values -- poor venue, First Amendment access -- are

9   essentially equal, for the sake of argument we don't have a

10  sense as to whether or not people are filing in the wrong venue

11  so often that it begins to trump the First Amendment right?

12          MR. HIBSHER:  I do not have any sense of numerosity.

13  Having gone through the filing instructions several times now,

14  I would be very surprised if very many matrimonial actions are

15  filed as tort actions or real estate actions or any other

16  actions in New York supreme.

17          THE COURT:  What about the situation where the

18  administrative review picks up a Social Security number, say?

19          MR. HIBSHER:  Good example.  There is a specific law

20  in New York that puts the burden on the filer to redact that

21  information, which we cite in on you papers.  The e-filing

22  prompts make very clear that Social Security numbers and other

23  private information has to be redacted and reminds the filer --

24  who is typically an attorney who has an account with the court

25  system; when he presses that submit button, he has to have an

1     account -- reminds the attorney that he has to comply with

2     those redaction rules.

3          As I read the defendant's declaration in this case, I

4     must say I do not see a declarative statement that the

5     defendant's office reviews the pages of a complaint to find out

6     if they contain Social Security numbers or other private

7     information.  They certainly suggest that they review papers

8     for venue and for attorney's signature and for proper captions

9     so the captions don't say "et al."

10          Attorney's signatures are taken care of in the

11     e-filing system because when you press submit, you are effect-

12     ively signing the document.  In the old days the cashier

13     collected your fee for the index number.  The electronic system

14     is accomplishing that task as well.

15          The kind of thing that the statute which he cites

16     might require him to review, something like improper venue, is

17     the sort of thing that we believe could not possibly override

18     the First Amendment entitlement that we have.

19          THE COURT:  I think they either said this or suggested

20     this in this their papers, and I will ask them the same thing.

21     Part of your argument is that before e-filing, CNS and other

22     news organizations had same-day access to all of the complaints

23     that were filed on a particular day prior to the type of

24     processing they are doing now and not letting you see until

25     they process?

1          MR. HIBSHER:  Let me clarify.  The defendant took

2    issue with a certain part of that contention in our moving

3    papers.  What we are saying is that prior to e-filing we saw

4    virtually 100 percent of all the filings on the same day.  The

5    system was that if you were a lawyer, if you were a clerk at a

6    law firm, you went up to the cashier's office, you paid your

7    money, you handed that cashier your papers.

8          The cashier might have done a quick, cursory review,

9    might have looked at venue, for example, and said, counselor,

10   this says Kings County, go across the river, collected your

11   money.  They might have looked for an attorney's signature.

12   But that was it.

13         We are not suggesting that there was absolutely zero

14   quick processing that occurred in the pre-electronic filing

15   era.  What we are saying is we had 100 percent access during

16   that time.  When e-filing came into being, the commission,

17   which really studied the process, made very clear that the kind

18   of access that existed prior to e-filing, access to court

19   documents -- they were very specific before the Bernstein

20   decision on complaints -- needed to continue unimpaired and

21   uninterrupted.  That is not what has happened here.

22         The rules which they cite, even if they are abiding by

23   those rules, are rules that cannot under the law, to use your

24   Honor's word, trump the First Amendment.  The Second Circuit

25   says, "Obviously, a statute cannot override constitutional

1   right."  The constitutional right here is absolutely crisp.

2           THE COURT:  In other words, those rules say that the

3   clerks have to take certain steps; it does not say that it

4   cannot provide access to the press until those steps are taken?

5           MR. HIBSHER:  Exactly.  None of those rules say that

6   the clerk has to do anything prior to releasing documents to

7   the press or the public.  The rules that require the clerk to

8   do anything, if they do, and I think there is a bit of an

9   argument there, are very limited to things like venue,

10  signature of attorney.  The Social Security number piece is

11  something that I have looked at very closely, and I did not

12  find it in the current rules as an obligation placed on the

13  clerk's office to actually do.

14          Our position is that when we have a clear

15  constitutional right and when there is a conceded delay, a

16  conceded withholding of complaints, on many days -- though it

17  is only weekend days and holidays where the delay goes on for

18  several days -- on many days we see access that goes below the

19  66 percent average and by a good deal.

20          In his affidavit the clerk of the court very candidly

21  says there are emergencies.  There is one person or two people

22  who do this, they get sick.

23          We think the First Amendment requires a much higher

24  standard.  The weekend filings, our papers describe some of the

25  cases that we didn't see for three and four days.  They didn't

 1    rise to the notoriety of Trump v. Univision, but they were very

 2    important cases that our subscribers would be very interested

 3    in knowing about in our daily litigation reports.

 4            I don't know if your Honor wants me to address their

 5    abstention argument.

 6            THE COURT:  Briefly, if you will.

 7            MR. HIBSHER:  The abstention argument, relying on the

 8    Younger-O'Shea doctrine, we think is inapplicable here.  That

 9    doctrine really contemplates a federal court action that will

10    interfere with ongoing state court adjudications.  That is not

11    what this case is about.  What we are looking for is a simple

12    order directing the clerk to provide timely access.  It is the

13    very order that was issued in the Jackson case and in the

14    Planet case.

15            In the Planet case the district actually granted an

16    abstention motion, and the circuit court reversed.  In

17    reversing the abstention order, the Ninth Circuit relied on the

18    Second Circuit in Hartford Courant.  Neither of those cases

19    was, by the way, discussed by the defendant in their papers.

20            This is not the kind of situation that Younger-O'Shea

21    contemplates where the court is going to involve itself in

22    conflicted workings of the state judiciary.  All of the cases,

23    and I will be brief and won't go into them, all of the cases

24    they cited were dramatically different from the kind of

25    injunction that we are requesting your Honor to issue.

```
 1            I believe that the kind of injunction that we are

 2     asking for is what was issued in the Planet case and the

 3     injunction in Jackson, which are the only two cases dealing

 4     with delays brought on by clerks processing complaints after

 5     they were filed.  The kind of injunctions issued in those cases

 6     are exactly the kind of injunction that we want here.  It

 7     doesn't constitute an inappropriate interference with the

 8     workings of the state judiciary.

 9            THE COURT:  Talk about that.  What type of burden, if

10     any, would it impose on the clerk of the court, or cost?

11            MR. HIBSHER:  Our papers say that in the course of one

12     of the meetings that we had with the defendant, the defendant

13     stated that providing the kind of access we are seeking would

14     require some tweaking of the software system.  Our client has

15     been involved in transitioning from paper filing to e-filing in

16     many courthouses around the country and has assisted in that

17     process, and has reported that software providers are typically

18     able to provide the kind of press-only access to new filings

19     with relatively little expenditure, if any, and relatively

20     little expense.

21            It does not require that they keep the courthouse

22     open.  If they want to limit access to credentialed press, that

23     is something that is very easy to accomplish.

24            THE COURT:  Let me ask you very quickly about that.

25     Hasn't the concept of credentialed press expanded tremendously
```

1   in recent years?  Can't I start a blog now and declare myself

2   to be press?

3           MR. HIBSHER:  I'm not certain about that, your Honor.

4   Both this courthouse and the Supreme Court New York County have

5   certain requirements before an individual member of the press

6   will be issued a press pass: not required to leave their

7   telephones at the desk downstairs, admitted to the courthouse

8   much more easily than other members of the public.

9           I have to assume that with the application to achieve

10  that end, there needs to be some written support from a bona

11  fide media outlet.  Might it be a blog?  Perhaps.  That is the

12  sort of detail that I feel very confident the clerk of New York

13  County will be able to address appropriately and will be able

14  to protect the kinds of concerns that they may have about

15  complaints which contain errant information being made

16  available immediately to the general public.

17          THE COURT:  Thank you.

18          MR. HIBSHER:  Thank you, your Honor.

19          THE COURT:  Mr. Adlerstein, how are you?

20          MR. ADLERSTEIN:  Well, thank you, your Honor.

21          I can start by advising your Honor where New York

22  State is in terms of its policies and practices in this area

23  and where County Clerk Tingling is.  The last thing that New

24  York State, through its announced policies, has embodied in its

25  court rules and the last thing that Judge Tingling really wants

1    to do is to have significant delays in documents that are

2    accepted by the court for filing disseminated to the press and

3    public.  I think that all of us in this courtroom are cognizant

4    of the First Amendment requirements and are sensitive to them

5    and want to operate within the bounds that they provide.

6            However, New York State has very sensible policies

7    that are embodied in its court rules and its statutes.  Two of

8    the court rules were cited in our papers.  One is the one that

9    says that in accordance with the C.P.L.R. provision -- and I'm

10   quoting from New York court rule 202.5(d)(1) -- the court

11   clerk, the county clerk, as appropriate, shall refuse to accept

12   certain kinds of papers for filing.  The provision goes on to

13   enunciate what the various aspects are that the county clerk

14   ought to be looking for.

15           Mr. Hibsher in his papers and oral presentation

16   focuses about change or some kind of major change that

17   supposedly took place when e-filing went into existence.  The

18   court rules are promulgated by the administrative board of the

19   court, which is made up of the chief judge of the state, the

20   chief administrative judge, and all of the presiding justices

21   of the four Appellate Divisions.

22           It promulgated those rules for e-filing that have a

23   provision that says no later than the close of business on the

24   business day following the electronic filing of a document

25   there should be notification that goes out with regard to that

1    particular document.

2              THE COURT:  What does that mean?

3              MR. ADLERSTEIN:  We have discussed with county clerk

4    Tingling this aspect very carefully.  What it means is that

5    when a party, whether it be during the business day or whether

6    it be in the evening or whether it be on the weekend, submits a

7    pleading to the court for filing, what occurs is that there is

8    a review that takes place by a person.

9              It's not done electronically.  The review process is

10   not done electronically.  It is done by a person who zeros in

11   on the provisions in the administrative regulation that I

12   quoted earlier telling the court clerk that the court clerk has

13   an obligation to review pleadings for certain possible defects.

14             At that point when the county clerk is to review that

15   document and no later than the business day following that

16   presentation of the document by the intended filer, the county

17   clerk should do those processes and make a determination of

18   whether or not an index number can be issued for that pleading.

19   It is the issuance of the index number that the county clerk

20   does, after a person has eyeballed the pleading, that then puts

21   it into the system for general dissemination.

22             THE COURT:  That's a policy that, and I want to be

23   careful how I say this, has no particular legal import,

24   correct?

25             MR. ADLERSTEIN:  It has a very critical administrative

1    impact.

2            THE COURT:  I understand that.  But the types of

3    examples that are discussed in the papers and the types of

4    things that the clerks appear to be reviewing for seem to me to

5    be somewhat ministerial.  Right?

6            MR. ADLERSTEIN:  They are largely ministerial.  If

7    someone were to catch a pleading that was filed that is really

8    a matrimonial action and it is couched in the pleadings as

9    something else, that might be able to be rejected and then

10   straightened out.  There could be some unusual situations.

11           However, there is this directive that the county clerk

12   is supposed to look for things that the court system regards to

13   be important before the issuance of an index number.

14           THE COURT:  Like some typo in the caption?

15           MR. ADLERSTEIN:  Not a typo in the caption, your

16   Honor.  One of the provisions talks about the absence of a full

17   recitation of the parties who are in the caption.  For

18   instance, if somebody sues ten people and puts John Doe, et

19   al., the clerk rejects it because the court doesn't know who

20   the other parties are.

21           THE COURT:  Is a complaint a judicial document?

22           MR. ADLERSTEIN:  Usually, I would say yes.  However,

23   it's not accepted for filing until somebody actually reviews it

24   and it's given an index number.  Whether it's a judicial

25   document before that happens, I think that's not the word of

1   art that's used in the regulations.

2        THE COURT:  In the New York State regulations?

3        MR. ADLERSTEIN:  The regulations are set up so that it

4   is presented by the intended filer, there is an opportunity for

5   a person to review the document, and at that time, if the

6   document is deemed to be free of the defects, it goes in.

7        The answer would have to be I think on balance it is

8   not a judicial document until the court system says it is by

9   issuing an index number.

10        THE COURT:  Is the filing of the document an event of

11   legal significance at all in your mind?

12        MR. ADLERSTEIN:  It would be for statute of

13   limitations purposes.  Here is how it operates.  If the

14   document is deemed to be acceptable so that it gets an index

15   number, then it is deemed to have been filed for statute of

16   limitations purposes when it was first presented.  However, if

17   it is rejected, the document is rejected, it is not deemed to

18   be presented for statute of limitations purposes until it is

19   accepted as having been valid at the time it was presented.

20   That's how that mechanism operates.

21        THE COURT:  In New York State if you file a complaint

22   on the last day of the statute and it has an et al. but

23   otherwise is a valid complaint, the next day the clerk can

24   decline to accept that document, and that litigant is out of

25   luck on the statute?

1          MR. ADLERSTEIN:  The litigant may be, your Honor.  I

2     know that there exists equitable tolling provisions that people

3     can go into court and request to have documents deemed to be

4     filed and that becomes a judicial determination, not something

5     that the clerk does.

6          THE COURT:  What about this afternoon?  What if there

7     is a Christmas party going on across the street at the clerk's

8     office at 60 Centre and they are not able to get to the

9     complaints that came in, say, by noon?  That person can be out

10    of the box because there wasn't a person at the clerk's office

11    to review the complaint in the afternoon?

12          MR. ADLERSTEIN:  I think there are people in the

13    clerk's office in the afternoon, your Honor, for paper

14    documents that are submitted.  But electronically it's deemed

15    to have been received at the time it is electronically

16    presented, and then it is checked out by a person when the

17    court opens on the next business day or the same business day,

18    and at that time there is an index number that is given.

19          The important principle is that it has been the

20    practice uniformly that a person eyeballs the document before

21    the index number is issued, and it is done because of the kind

22    of provision that I mentioned earlier.  It operated that way,

23    your Honor, during the time it was exclusively paper.  I think

24    County Clerk Tingling clarified in his affidavit in response to

25    counsel's papers that it was never a laying in front of the

1    press or public pleadings before they were reviewed and then

2    were given an index number.

3          THE COURT:  Do you have a sense as the clerk's office

4    does this review, of the hundreds of complaints that are filed,

5    how many times they have to kick complaints back because of

6    some venue issue or because of some et al. issue or some lack

7    of signature issue?

8          MR. ADLERSTEIN:  Yes.  The assessment that I have

9    heard, your Honor, is that it is a very modest proportion, a

10   very modest percentage.  I haven't been given an actual

11   percentage.  What we are talking about is the clerk's office

12   wanting to be careful, when it takes in a case and assigns it

13   an index number, to know that it really belongs to the court

14   and that there is at least some essential structure.  And this

15   is not just made up by County Clerk Tingling.  This is in

16   accordance with the regulation that the administrative board of

17   the courts has promulgated.

18         THE COURT:  I understand that.  Let me ask you this.

19   Obviously, there is a concern on the part of the clerks that

20   documents be properly formatted and contain whatever essential

21   elements are required by the regulations.  But you say it's a

22   modest number that are rejected on that basis.  Talk about the

23   First Amendment and how -- and it clearly affects the First

24   Amendment -- how you can justify that process in the face of

25   the fact that what you are doing is essentially a ministerial

1    review and, second, that the risk that is involved seems to me

2    to be so relatively miniscule: a complaint gets through and

3    they've got the wrong venue.

4          MR. ADLERSTEIN:  Your Honor, I think this gets to the

5    question that your Honor asked of counsel why aren't more

6    people here.  I think County Clerk Tingling's papers exemplify

7    the fact that counsel has really exaggerated the problem.  You

8    do not see people complaining out there that they are not

9    getting access to New York State court pleadings either

10   uniformly or with a degree of promptness which is acceptable.

11   That's not the intention with respect to the way that it is

12   administered certainly.  And the numbers that were contained in

13   the affidavit that was submitted by plaintiff here we showed

14   were exaggerated because they included weekends.

15         THE COURT:  They took out the weekend and holiday

16   papers.

17         MR. ADLERSTEIN:  They did.  But there is something

18   very interesting about the numbers.  They created a new chart.

19   They had an initial chart which had on it one column which was

20   one-day, and then the second one was two-day plus.  When we

21   called them on the fact that they were including weekends and

22   holidays, they took out the two-day plus column, and instead

23   having a one-day column, they created a new column called

24   one-day plus.

25              If you take a look at the numbers that they

```
 1    accumulated, they come up with a figure of overall statistics

 2    of 2 or more days' delay, and it is pretty much the same number

 3    of matters which were filed on Fridays.  I think Mr. Hibsher

 4    mentioned when your Honor gave an example that it was a Friday

 5    that they were talking about with respect to the one-day plus

 6    column --

 7             THE COURT:  Generally, and you folks will correct me

 8    if I'm wrong, if you look just at Monday through Thursday,

 9    there was still a significant percentage of complaints that

10    they were not seeing because of this administrative review

11    process, correct?

12             MR. ADLERSTEIN:  There would be cases that would be

13    filed at the end of the day.  Mr. Hibsher is not asking, I

14    don't believe, for personnel to be assigned to work in the

15    courthouse past 5 o'clock.  He has advised your Honor that the

16    plaintiff is not looking to keep the courthouse open past 5

17    o'clock.  We put in our papers that there is a lot of budgetary

18    considerations that apply there.

19             THE COURT:  Tell me about those.  It sounds as if all

20    that is really required is maybe an additional terminal and

21    some software that would allow them -- I don't even know if it

22    is additional software, because apparently they have remote

23    access now -- allow them to remote access at an earlier period

24    of time.

25             MR. ADLERSTEIN:  That creates some difficulties about
```

 1    how you set that up, about who is going to come in to get that

 2    access and trying to make distinctions between how people are

 3    going to get credentialed, whether or not favoring the

 4    credentialed press over the public in terms of the access that

 5    the public would have to documents.  You would have to have all

 6    of those determinations resolved.

 7            Basically, what you are talking about is departing

 8    from the very important operating principle that New York State

 9    courts have had going forward and that is called for under the

10    regulations, which is that when a document is submitted for

11    filing and to commence a litigation -- and it would need to be

12    during normal business hours because the court is not going to

13    easily hire people to work overtime and so on in order do

14    this -- it would need to be reviewed by a person before it is

15    accepted for filing and then disseminated.  That's what the

16    regulations say.

17            THE COURT:  You can still do that, right, without

18    preventing the press from having access?  You can do all that

19    and I'm sure you will do all that.

20            MR. ADLERSTEIN:  You can have people working 24 hours

21    a day, I suppose.

22            THE COURT:  Unless I'm completely misreading both sets

23    of papers, that's not what they are asking for and that is not

24    what would be required.  Essentially what would be required is

25    before your staff gets through something that is e-filed, it

1    gets made available to the press, at least to the press.

2              MR. ADLERSTEIN:  Your Honor, if I may add one thing?

3              THE COURT:  Sure.

4              MR. ADLERSTEIN:  We have direct filing by pro ses.

5    They can apply to be able to e-file and then they can e-file.

6    You have the difficulty that would pertain that you don't know

7    what a pro se complaint is going to look like when it comes in.

8              I'm not sure how the federal courts handle the pro se

9    registration process and what the pro se clerk does with pro se

10   complaints and whether they are made immediately available by

11   the federal court as soon as they hit the computer or whether a

12   pro se can just go ahead and file from the outside and register

13   without any kind of supervision so that those complaints are

14   eyeballed by a person before they are distributed to the

15   general public, but I suspect they might not be.

16             THE COURT:  I think you are probably right.  I think

17   it also depends on whether they are in forma pauperis or not.

18             MR. ADLERSTEIN:  Yes.  You have those kinds of

19   situations where they are pro se complaints as well.

20             THE COURT:  That is also an easy software fix, isn't

21   it?

22             MR. ADLERSTEIN:  I don't know.  I don't know what kind

23   of programming you would need to do in order to put in a

24   registration of all attorneys and have software be able to

25   recognize who is filing.  Think there are some difficulties

 1   there of a practical nature that are not necessarily so easy in

 2   terms of setting it up.

 3       THE COURT:  Mr. Adlerstein, the case law that has been

 4   presented here is fairly unanimous against the position that

 5   you are taking.  How do you want me to analyze the cases that

 6   they have cited from California and Texas?  How do you suggest

 7   that I analyze the state courts' procedures in light of Second

 8   Circuit authority about a complaint and the Second Circuit said

 9   yes, the filing of a complaint -- first of all, a complaint is

10   very easily determined to be a judicial document; it was an

11   easy determination by the Second Circuit.  You seem to have a

12   little trouble with it.

13       MR. ADLERSTEIN:  I think, your Honor, the Second

14   Circuit cases have not dealt with this kind of a situation

15   where you are talking about this kind of very quick processing.

16   You are talking about principles relating to what kinds of

17   documents would be deemed to be a judicial document so that

18   they would need to be available to the public.  The court

19   enunciated the word "immediate" without putting a definition on

20   it.  We submit to the Court that the New York State courts have

21   already a policy which is consistent with the First Amendment

22   in terms of the next business day.

23       THE COURT:  The next business day is immediate?

24       MR. ADLERSTEIN:  I think it is immediate enough under

25   the First Amendment.  Secondly, if you take a look at the cases

```
 1    in California, the district court in California, which had the
 2    most recent opinion on the case on remand from the Ninth
 3    Circuit, said it need not be the same day.  They are not going
 4    to declare that there is a constitutional requirement that it
 5    has to be on the same day.  The Ninth Circuit, when it
 6    remanded, expressed some skepticism about how immediate it was
 7    going to have to be, whether it would have to be on the same
 8    day.  So it is not resolved there.  I'm told that the
 9    litigation is actually still going on in California.
10            Secondly, the clerk in California was absolutely
11    intransigent.  Take a look at the district court opinion.  The
12    first page talks about the fact that he withheld documents from
13    the press for weeks and that there was something going on there
14    relating to him and the way that he was handling things to
15    deliberately obstruct the press.
16            Here we have nothing of the kind.  We have a New York
17    State court system which is operating pursuant to regulations.
18    The last thing that County Clerk Tingling wants to do is to
19    hold up these documents.  What we are talking about is the very
20    principle of able to have a person during business hours review
21    the document before it is assigned the index number and
22    distributed to the press or public.  And I'm told that once it
23    is available, it is available to the entire public.
24            THE COURT:  I understand that.  That's precisely what
25    we are talking about.
```

1           MR. ADLERSTEIN:  You are inquiring about the case law

2    being possibly against our position.  I submit to the Court

3    that it doesn't come anywhere close to our situation, to a

4    state entity which is handling itself as responsibly as New

5    York State does.

6           THE COURT:  As I understand at least one of the cases,

7    it is a state court where the court presented what he or she

8    believed to be a very reasonable position: that once complaints

9    are received, they need to be reviewed, and only when that

10   administrative review takes place will they be made available

11   not only to the press but to everyone else.  That is precisely

12   what we are talking about here, isn't it?

13          MR. ADLERSTEIN:  Not really.  We put in our brief that

14   what the clerk was going through there were many more steps,

15   things like putting labels on files, getting paper files set up

16   before documents would be made available to the press.

17          THE COURT:  What is the danger here, Mr. Adlerstein?

18   What is the danger of providing immediate access to filings?

19   What would be the damage to the general public, the people of

20   New York County?

21          MR. ADLERSTEIN:  Your Honor, there has been a

22   determination that's been made by the administrative board that

23   the administrative board wants the county clerks to look at

24   some things before filings are completed.  There has been a

25   determination by the administrative board that the public

1    dissemination should be done by the next business day.

2         It is clear that many, many are provided the same day,

3    and even within a very, very short period of time, just a few

4    minutes.  When you have the clerk there and they are working on

5    these things, there is no holdup.  It's provided.  Counsel may

6    have shown a couple of instances where there was an issue, but

7    this really isn't the pattern.  It is not what the City of New

8    York is all about.  It's not what the county clerk is all

9    about.

10        THE COURT:  I understand that they don't mean to hold

11   up anything in an improper way.  Still, the percentage that are

12   not provided, even when you discount holidays even when you

13   discount weekends, the percentage that are not provided on the

14   same day is substantial.  By "substantial" I mean more than 25,

15   30 percent.  Correct?

16        MR. ADLERSTEIN:  It depends on how you measure same

17   day.  If something comes in at 3:00 or 4:00 in the afternoon

18   and the county clerk doesn't have personnel on hand to be able

19   to process those until the next business day, it will get done

20   at 9:30 or 10:00.

21        THE COURT:  Just so we are clear: something comes in

22   at 3:30 in the afternoon on Monday, same day is Monday.

23        MR. ADLERSTEIN:  I understand.  What I'm saying is

24   yes, there will be instances where something will come in in

25   the later part of the afternoon and it won't be looked at until

1    the following business day, as New York State regulations

2    permit under their prescription, and it will be done.  I think

3    the objective of the county clerk is not to sit on those types

4    of instruments until the very end of the next business day.

5              THE COURT:  I wasn't making any suggestion that it is.

6              MR. ADLERSTEIN:  It gets done very early in the

7    morning, when there are people there to do it.

8              It is pointed out to me, your Honor, that if that is

9    going to be the definition, we are not sure that the numbers

10   that have been put out there by the plaintiff, you are talking

11   about something that arrives at 3:30 in the afternoon and then

12   gets done by 10:00 in the morning, is really part of the

13   numbers that they are throwing out there.

14             THE COURT:  I don't intend to draw any bright-line

15   definition.  Thank you.

16             MR. ADLERSTEIN:  You're very welcome.

17             THE COURT:  Mr. Hibsher.

18             MR. HIBSHER:  Thank you, your Honor.  I think I heard

19   for the first time what the alleged harm would be if the policy

20   of reviewing before access is provided to the press and public

21   is granted, and it has been characterized as modest.  We don't

22   have numbers.  We pointed out in our papers and I said before

23   that the cases make very clear that empirical data needs to be

24   presented to illustrate the kind of harm that the defendant

25   alleges in order to meet its burden under the shifting in this

1    kind of First Amendment entitlement case.

2          I also would like to say that the rule that Mr. Adler-

3    stein points to which provides for notification by the end of

4    the next business day is inadequate under the First Amendment.

5    When you asked me about delays before, I was looking for a

6    particular quote that I wanted to mention.  It comes from the

7    Globe Newspaper case.  That case said that delaying access for

8    as little as a day delays access to news, and that delay

9    burdens the First Amendment.  So the next business day is not

10   acceptable.  That is an issue which this case presents for your

11   Honor to decide.

12         The particular regulation that Mr. Adlerstein points

13   you to, however, says that the filer will be electronically

14   notified by the end of business the next day.  That is too

15   late.  If it's a complaint, the filer is the plaintiff and the

16   plaintiff will be notified the next business day.  We do not

17   think that that rule, even if they were adhering to it all the

18   time, really meets the First Amendment obligations that they

19   have here.

20         You asked Mr. Adlerstein about when a document

21   becomes, I believe your words were, an official court document.

22   He conceded that when a document is filed, it tolls the statute

23   of limitations.  But he provided a hypothetical in which the

24   clerk might review the document and reject it and then arguably

25   the filer would not have the benefit of the statute of

 1    limitation.

 2          They did not cite any cases in their brief to that

 3    end, nor did they comment on the Appellate Division, Third

 4    Department case that we cited in footnote 6 of our moving brief

 5    on page 15, which presents this very question: whether a

 6    petition was filed for statute of limitations purposes upon

 7    arrival at the clerk's office or upon an assignment of an index

 8    number.

 9          That is the Johnson case, which concluded that on

10    arrival at the check's office is when the filer benefits from

11    the tolling of the statute of limitations.  It's not exactly

12    what we are talking about, but it's pretty close in New York

13    law.  I did not see anything in their papers that explicated

14    the argument that Mr. Adlerstein makes today with any kind of

15    legal citations.

16          You also asked about pro se filings in the federal

17    court.  My understanding is that that is done by paper, that

18    pro ses do not electronically file.  There is a paper desk, and

19    the press has access to pro se filings as soon as they are

20    done.  If your Honor wishes, I can get you a supplemental

21    declaration on that point.

22          Mr. Adlerstein talked about the Planet case in the

23    Central District of California.  He described the clerk there

24    as being intransigent.  I think that is probably a fair

25    characterization at the beginning of the case.  The case went

1    on for years.  It went up to the Ninth Circuit two times.

2           But when Judge Otero, from the Central District of

3    California, issued the injunction that he did last May, I

4    believe.  At that time the clerk was contending that they were

5    providing same day access in 97 percent of the filings.  The

6    system had completely changed from the days of intransigence.

7    They were photocopying cases as soon as they came in.  They

8    were scanning them, and they were providing much improved

9    access.

10          Yet Judge Otero said that the access they were

11   providing was not adequate.  He directed them to provide timely

12   access upon receipt -- this is the language of the order -- and

13   precluded the clerk from doing any administrative process

14   before providing access.  I think the reason was that he was

15   not persuaded that the kinds of things they were looking for

16   really rose to the kind of potential harm that would overcome

17   the First Amendment right of access, and the kinds of things

18   that the New York County Clerk is looking for similarly do not

19   do that.

20          You asked me earlier where are all the members of the

21   press.  CNS has 27 hundred subscribers.  Many press outlets are

22   our clients.  They look to us to provide reports on civil

23   litigation.  Some of these litigations are not the most

24   newsworthy cases.  You don't see many reporters in the press

25   room either in New York supreme or even in the Southern

1    District.  In a certain sense not only is CNS as a media outlet

2    a surrogate for the public, it is also a surrogate for the

3    press.  It is like the AP wire service.

4         So, the significance to CNS of the kinds of delays

5    that we are seeing, the 30 percent delays to next-day cases

6    being provided after the news cycle has really come to an end

7    is really enormous.

8         Implicit in one of the questions was a question about

9    CNS's motivation in seeking this First Amendment right.  What

10   Lugosch in the Second Circuit said of this question is that

11   consideration of the newspaper's ultimate interest in the case

12   should not affect the weight of the presumption, the First

13   Amendment presumption.  Those interested in monitoring the

14   courts may well learn of and use the information, whatever the

15   motive of the reporting journalist.

16        No one is impugning the motive of CNS here.  But the

17   fact is that motive is not the issue at all.  There is a First

18   Amendment right to a filed judicial document, which admittedly

19   tolls the statute of limitations.  The delay of a substantial

20   number for one day and of those filed in the evening and on

21   weekends for several days is not acceptable under the First

22   Amendment, and respectfully I do not believe that the defendant

23   has met its burden.

24        THE COURT:  Thank you.

25        MR. ADLERSTEIN:  Your Honor, may I?

```
 1              THE COURT:  Absolutely.

 2              MR. ADLERSTEIN:  I wanted to comment on just one or

 3    two points very briefly.  In terms of this constitutionality

 4    argument relating to the regulations that I had cited, in

 5    plaintiff's opening papers there was no recognition provided

 6    for the regulations.  There was no request that anything be

 7    struck down for constitutionality purposes.

 8              One of the reasons that we mentioned to the Court the

 9    principles of abstention and comity was just this very thing.

10    We ask the Court take into consideration the important

11    constitutional value that lies with regard to a federal court

12    providing for measures which are going to change operations in

13    a state court and that a federal court would be careful about

14    those things and measure constitutional principles on that

15    plane.

16              I think if we are talking about the Court potentially

17    making a ruling that the regulation that was enunciated by the

18    administrative board may not pass constitutional muster, we

19    ought to see it in that light.  We think it does.

20              THE COURT:  First of all, I don't think that

21    plaintiffs are asking me to declare the regulations

22    unconstitutional.  The regulations, constitutional or not, they

23    are not asking me to touch.  The only things that they are

24    asking is, sure, go through your process, but you've got to

25    allow access at an earlier point in time.
```

1      MR. ADLERSTEIN:  When we brought up in regulations,

2   they suggested in their papers that the Court could well

3   declare the regulations to be improper for constitutional

4   purposes.  That was an argument that was presented in their

5   papers, and they cited case law to that effect.

6      THE COURT:  Okay.

7      MR. ADLERSTEIN:  Also, the very fact about will this

8   be limited to New York County, obviously, something that will

9   happen in one county could well affect what happens in all.

10  The consequences in terms of court operations in the New York

11  State courts in the broad sense could be much broader than Mr.

12  Hibsher would suggest.  I request that in weighing these

13  various values that have been presented here, your Honor take

14  that into consideration.

15      Lastly, with regard to the Fourth Department case that

16  was cited, I had explained that the statute of limitations

17  seemed to be tolled when it was presented.  However, it's not

18  considered to be valid until it is assigned an index number, so

19  it reverts to the date of presentation for statute of

20  limitations purposes, which is not inconsistent with what

21  counsel has argued.

22      THE COURT:  I'm sorry.  I lost you on that last point.

23      MR. ADLERSTEIN:  In other words, the principle about

24  statute of limitations is when the document is presented to the

25  court by the filer, if the courts deem the document to be

1    acceptable and it gets an index number on a later date, it's

2    deemed to be filed on the date that it was first presented.  It

3    is dependent on it being found to have been valid when

4    presented by the fact that that document gets an index number.

5    That principle I think is consistent with the case law that Mr.

6    Hibsher has presented.

7          MR. HIBSHER:  Your Honor, C.P.L.R. 304(c) says that a

8    document tolls the statute of limitations upon filing.  There

9    is no language in that provision that says upon filing and

10   after review by the clerk's office and the affixing of an index

11   number, and there is nothing in the defendant's answering

12   papers that says anything along these lines that certainly

13   provides any authority for that conclusion.  That may be their

14   argument, but there is nothing in the law that says that.

15         If I'm a plaintiff who files a case that gets kicked

16   back because I only had the first name or I had five names and

17   then said et al., and they reject it the next day, which is

18   beyond the statute of limitations, you can be certain that I'm

19   going to litigate that issue and create some law on this point,

20   which I do not believe exists.  We have looked at it.  The only

21   case that came close was the Third Department case that we

22   cited in our brief and that I mentioned before.

23         We are not seeking a declaration that rule 202.5(b)(d)

24   is unconstitutional.  That rule does not require the clerk to

25   withhold publication of a filed court complaint to the press.

```
 1   That rule merely requires the clerk to do some processing by

 2   the next business day and to notify the filing party.

 3          You didn't see a request for a declaration of

 4   unconstitutionality as to that rule in our papers because we

 5   don't believe that that is necessary.  We believe that we are

 6   entitled to access upon filing without review, and that may

 7   translate into access on the same day that a case is filed.

 8          MR. ADLERSTEIN:  Your Honor, for C.P.L.R. purposes, if

 9   I may, the date of filing is considered to be the date the

10   index number is issued.  The regulation says the clerk shall

11   refuse to accept for filing documents that are defective in the

12   ways that are outlined by that regulation.  I ask the Court to

13   take that into consideration when dealing with this particular

14   point.

15          THE COURT:  Give me five, ten minutes.  I'll be out

16   with a decision.  Please don't go far.

17          (Recess)

18          THE COURT:  It is the Court's conclusion that

19   plaintiff's motion for preliminary injunction will be granted.

20   I find that the clerk may not prevent the press from accessing

21   newly filed documents because of its review and logging

22   procedures.

23          However, the Court will look to the party in the first

24   instance to devise a procedure whereby the press will have

25   timely access to those documents, whether that means constant
```

1    feed or feed during business hours only or remote feed or

2    otherwise.  Again, I will leave it up to the parties in the

3    first instance, as there has been no particular method that's

4    been presented to the Court.

5         Let me first talk about abstention.  I did consider

6    this issue very seriously, and I find that abstention not

7    required.  The defendant in its papers argued that the Court

8    should abstain because it would require the type of federal

9    court oversight forbidden under the principle of comity

10   articulated in O'Shea v. Littleton and Younger v. Harris.

11        The Ninth Circuit has explained that O'Shea abstention

12   is inappropriate where the requested relief may be achieved

13   without an ongoing intrusion into the state's administration of

14   justice but is appropriate where the relief sought would

15   require the federal court to monitor the substance of

16   individual cases on an ongoing basis to administer its

17   judgment.  Moreover, that some additional litigation may later

18   arise to enforce an injunction does not itself justify

19   abstaining from deciding a constitutional claim.  That was in

20   the Planet case, reported at 750 F.3d 776, 790-92.

21        As in Planet, this Court finds that the remedy sought

22   by CNS poses little risk of an ongoing federal audit or a major

23   continuing intrusion of the equitable power of the federal

24   courts into the daily conduct of state proceedings.  Again,

25   citing to O'Shea, which is reported at 414 U.S. 488.  This does

1   not present the level of intrusive relief sought in cases cited

2   by the clerk.

3         Compare Hartford Courant v. Pellegrino, reported at

4   380 F.3d 83, which declined to abstain in case seeking access

5   to docket sheets in Connecticut state court, with Kaufman v.

6   Kaye, reported at 466 F.3d 83, which abstained from

7   entertaining a request that state establish a new system for

8   assigning appeals to justices in the Second Department; and

9   Wallace v. Kern, reported at 481 F.2d 621, reversing a district

10  court's order directing that the clerk place all pro se motions

11  on the court's calendar.

12        With respect to the preliminary injunction, to obtain

13  a preliminary injunction the moving party must demonstrate (1)

14  that it is likely to succeed on the merits, (2) that it is

15  likely to suffer irreparable harm in the absence of preliminary

16  relief, (3) the balance of equities tips in its favor, and (4)

17  an injunction is in the public interest.  Citing Winter v.

18  Natural Resources Defense Council, reported at 555 U.S. 7.

19        Even if the moving party can only demonstrate serious

20  questions going to the merits rather than a likelihood of

21  success, the preliminary injunction may nonetheless issue if

22  the costs outweigh the benefits of not granting the injunction.

23  Citing Citigroup Global Markets, Inc. v. VCG Specialty

24  Opportunities Master Fund Limited, reported at 598 F.3d 30.

25  CNS has demonstrated a likelihood of success on the merits.

1           The Second Circuit has held that complaints are

2     judicial records that are subject to a presumption of public

3     access under the First Amendment.  Citing Bernstein v.

4     Bernstein Litowitz Berger & Grossmann LLP, reported at 814 F.3d

5     132.  In that case the Second Circuit stated that public access

6     to complaints allows the public to understand the activity of

7     the courts, enhances the court system's accountability and

8     legitimacy, and informs the public of matters of public

9     concern.

10          In light of the values which the presumption of access

11    endeavors to promote, a necessary corollary to the presumption

12    is that once found to be appropriate, access should be

13    immediate and contemporaneous.  The newsworthiness of a

14    particular story is often fleeting.  To delay or postpone

15    disclosure undermines the benefit of public scrutiny and may

16    have the same result as complete suppression.  Each passing day

17    may constitute a separate and cognizable infringement of the

18    First Amendment.

19          Citing Grove Fresh Distributors, Inc. v. Everfresh

20    Juice Company, reported at 24 F.3d 893.  See also Lugosch v.

21    Pyramid Company of Onondaga, reported at 435 F.3d 110,

22    collecting cases, including Grove Fresh, and noting that our

23    public access cases and those in other circuits emphasize the

24    importance of immediate access where a right of access is

25    found.

1          To overcome the First Amendment right of access, the

2     proponent of sealing must demonstrate that closure is essential

3     to preserve higher values and is narrowly tailored to serve

4     that interest.  Broad and general findings and conclusory

5     assertions are insufficient to justify deprivation of public

6     access to the record.  Specific on-the-record findings are

7     required.  Again citing Bernstein v. Bernstein.

8          State law and court rule provide that paper filings

9     are deemed filed for purposes of the statute of limitations

10    upon their acceptance by the clerk's office or when filed by

11    electronic means at the time of the electronic receipt within

12    the New York State ECF.

13         Upon receipt, the clerk's office reviews the proposed

14    filing for complains with venue, caption, case type, as well as

15    the attorney's signature certification required by court rule.

16    In addition, the clerk's office reviews the papers to ascertain

17    whether they contain materials that, by operation of law, may

18    not be made available to the general public.

19         After this review process is completed, new civil

20    matters are logged with a case or docket number and sent to the

21    clerk's filing room for storage.  New case filings are not made

22    available for viewing by the public until this review and

23    log-in process is complete.

24         According to the clerk, the review process is critical

25    to (1) establish a compliance of the filing that the require-

1   ments proposed by state law and court rules, (2) assure

2   attorney compliance with certain of their ethical obligations

3   in commencing legal actions in state courts, and (3) avoid

4   mistakes in filing venue or case type, which can have serious

5   consequences to the statutory protections to the

6   confidentiality of parties in certain proceedings.

7          With respect to this, citing to the Tingling

8   declaration at paragraph 10.

9          The clerk argues that the review process procedures

10  are prescribed to prevent a narrow category of errant pleadings

11  at the outset in order to prevent confusion and waste.  In

12  Courthouse News Service v. Planet, the Central District of

13  California considered a similar review policy allegedly

14  designed to protect the confidentiality of those filing

15  complains and third parties, to ensure information is

16  accurately input, to ensure that proper accounting procedures

17  are followed, and to maintain the integrity of the case file.

18         The court concluded that the clerk failed to meet its

19  burden of demonstrating that its policy of refusing to provide

20  public and press access to newly filed complaints until they

21  are processed is either essential to preserve higher values or

22  is narrowly tailored to serve a substantial government

23  interest.  Accordingly, the court entered an order prohibiting

24  the clerk from refusing to make complaints available until

25  after they were processed and directing the clerk to make such

1    complaints accessible to the public and the press in a timely

2    manner from the moment they are received by the Court.

3          Similarly, in Courthouse News Service v. Jackson, the

4    Southern District of Texas considered whether 24- to 72-hour

5    delays in access were constitutional where the delays resulted

6    from the clerk verifying filings for correct case number,

7    proper court, accurate title of document, and proper category

8    before they are made available to the public.

9          The court found that the delay in access to newly

10   filed petitions in this case is not a reasonable limitation on

11   access.  Even if it were, the court found that the clerk failed

12   to demonstrate that the 24- to 72-hour delay in access is

13   narrowly tailored to serve such an interest and that no less

14   restrictive means of achieving that interest exists.

15   Accordingly, the court granted CNS's motion for a preliminary

16   injunction and ordered the clerk to give CNS access on the same

17   day petitions are filed.

18         As in Planet and Jackson, this Court finds that the

19   clerk has failed to meet its burden of demonstrating that its

20   policy of refusing to provide the public and press access to

21   newly filed complaints until after they are reviewed and logged

22   is either essential to preserve higher values or is narrowly

23   tailored to serve that interest.

24         In addition, the Court finds that CNS would be

25   irreparably harmed without the injunctive relief.  As the court

1   noted in Lugosch and as I indicated earlier, the loss of First

2   Amendment freedoms even for minimal periods of time

3   unquestionably constitute irreparable jury.  That is Lugosch at

4   435 F.3d at 127.

5         I further find that the balance of hardships tips in

6   CNS's favor.  CNS will be denied its First Amendment right of

7   access to new case-initiating documents unless the Court issues

8   this preliminary injunction while the clerk has alternative

9   constitutional ways to address its administrative concerns.

10        I note in this regard that this injunction in no way

11  restricts or comments on the regulations that are in place for

12  the clerk of the court to review and accept for filing or

13  accept for an index number the complaints when they are filed.

14        Finally, I find that injunctive relief would serve the

15  public interest.  There is, of course, an important First

16  Amendment interest in providing timely access to new case-

17  initiating documents.

18        With respect to the bond, I order the plaintiff to

19  post a bond in the amount of $5,000 by no later than Tuesday of

20  next week.  What date is next Tuesday, Ms. Rivera?

21        MR. ADLERSTEIN:  The 20th, your Honor.

22        THE COURT:  By Tuesday, December 20th, 5:00 p.m.

23        That constitutes the decision of the Court.

24        Mr. Hibsher, anything further?

25        MR. HIBSHER:  No, your Honor.  Thank you.

```
1              THE COURT:  Mr. Adlerstein?

2              MR. ADLERSTEIN:  Your Honor, the one thing I wonder

3    about your Honor's ruling is how immediate it is.  The county

4    clerk is going to need to come up with a plan in combination

5    with the court system in order to implement what your Honor has

6    ordered.  I would suggest that a time period be prescribed.

7              THE COURT:  I'm happy to do that.  Mr. Hibsher?

8              MR. HIBSHER:  Your Honor, I don't have a position on

9    that.  I think if your Honor ordered that this preliminary

10   injunction would take effect in 20 days, that would be

11   adequate.  I don't know what the plan is that Mr. Adlerstein is

12   referring to.

13             But I can say, your Honor, that after the preliminary

14   injunction was issued in the Jackson case, the parties met and

15   conferred and they came to an agreed-upon permanent injunction.

16   As you know from our papers, I'm delighted to sit down with Mr.

17   Adlerstein to achieve that end if at all possible.

18             MR. ADLERSTEIN:  Your Honor, we have the holidays

19   coming up.  If we are talking about some kind of a

20   technological solution here, which is one of the possibilities

21   I think that was thrown out, that takes a little bit of time to

22   set up.  I would request that we have until the beginning of

23   February to confer and come up with a plan.

24             THE COURT:  Mr. Hibsher?

25             MR. HIBSHER:  If Mr. Adlerstein is making a
```