No. 24-6697

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee*, v.

SARA OMUNDSON,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Idaho
No. 1:21-CV-00305-DCN
Hon. David C. Nye Presiding

**APPELLANT SARA OMUNDSON'S
OPPOSITION TO APPELLEE
COURTHOUSE NEWS SERVICE'S
REQUEST FOR JUDICIAL NOTICE**

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300,
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com;
mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

## INTRODUCTION

Appellee Courthouse News Service ("CNS") asks this Court to take judicial notice of unspecified facts in seventeen different documents that span over one hundred pages. The documents include consent decrees and dismissal documents in non-Idaho cases CNS has pursued (some of which were against individual county clerk's offices rather than statewide court systems), other state court judicial websites, and a transcript from an oral argument in a non-Idaho case. CNS's Request for Judicial Notice should be denied for at least three reasons.

First, the record on appeal may be supplemented through judicial notice only if the documents have a direct relation to the matters at issue, which is not the case here. This case is about Idaho's electronic filing system and the rules the Idaho Supreme Court has implemented with respect to filings within that system. What filing systems other state courts use, what state specific rules address those filing systems, and how those states have responded to litigation pursued by CNS have no direct relation to the matters at issue in this appeal.

Second, CNS failed to specify which facts it is asking the Court to take judicial notice of, nor has it established that such facts are judicially noticeable for their truth. Judicial notice involves a two-step analysis that requires the moving party to establish (1) that the accuracy of the source cannot be reasonably questioned and (2) that specific facts within the source are appropriate for judicial notice. CNS has only

performed the first step of the analysis, and the Court is not required to parse through CNS's briefing to try to figure out which facts in the seventeen documents at issue are appropriate, if any, for judicial notice.

Third, even if the Court were to engage in this exercise, the Request for Judicial Notice should be denied because (1) some of the documents do not support the statements CNS makes in its briefing and (2) the purported "facts" CNS attempts to derive from these sources are not relevant to any of the issues on appeal.

For these reasons, Appellant Sara Omundson ("Omundson") respectfully requests that the Court deny CNS's Request for Judicial Notice.

## ARGUMENT

A.  **CNS's Request for Judicial Notice should be denied because it improperly attempts to introduce matters outside the trial court record that have no direct relation to this appeal.**

This Court generally "will not consider facts outside the record developed before the district court." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992). Although the record on appeal may be supplemented through "notice of proceedings in other courts, both within and without the federal judicial system," judicial notice is only appropriate "if those proceedings have ***a direct relation to matters at issue***." *Id.* (emphasis added). In *Borneo, Inc.*, this Court took judicial notice of a final judgment from proceedings before the California Superior Court because it was "directly related to this appeal

and may in fact be dispositive." *Id.* (internal quotes omitted), *see also Sarkisyants v. State Farm Mut. Auto. Ins. Co.,* 256 F. App'x 52, 53 (9th Cir. 2007) (declining to take judicial notice of a state bar disciplinary letter because "[g]enerally we will not take notice of facts outside the district court record.").

The records at issue have no direct relation to this appeal, as discussed in detail below, and are by no means dispositive to this appeal. This case is about Idaho Courts' e-filing system and the rules the Idaho Supreme Court has implemented relative to this system. What other state courts and county clerk's offices have done in response to litigation—based on factors specific to each jurisdiction such as the efiling system they use and their budget—has no bearing on the constitutionality of the Idaho Supreme Court's decision to require clerk review and acceptance of civil complaints prior to public access. This decision was based on jurisdiction-specific factors, and what other jurisdictions facing different circumstances have done in response to lawsuits brought by CNS is irrelevant. The Request for Judicial Notice should be denied.

**B.     CNS's Request for Judicial Notice is improper because it does not identify which facts CNS seeks to be judicially noticed.**

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) (citing Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* Although matters of public record may be subject to judicial notice, "a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

Judicial notice under Rule 201(b) involves a two-step analysis. The first step requires the court to consider whether the accuracy of the source "cannot be reasonably questioned." *Id.* "But accuracy is only part of the inquiry under Rule 201(b)." *Id.* The second step requires the court to "consider—and identify—which fact or facts it is noticing from such a transcript." *Id.* "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* (district court abused its discretion to the extent it judicially noticed an investor call transcript, whose accuracy could not reasonably be questioned, to determine whether investors had knowledge of a disputed fact).

"The party requesting judicial notice bears the burden of showing the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned." *Holley v. Tripp*, No. 2:24-CV-00071-AKB, 2024 WL 3966444, at *2 (D. Idaho Aug. 27, 2024) (internal quotes omitted). In *Holley*, the defendants asked the district court to take judicial notice of fourteen state court filings without identifying which facts should be judicially noticed. *Id.* Citing *Khoja*, the district

court reasoned that while it could take judicial notice of the fact that state court proceedings occurred and documents were filed, the documents themselves contained numerous facts that "do not appear to be appropriate for judicial notice because they are either reasonably disputed or come from questionable sources[,]" and also because some appeared to be irrelevant. *Id.*

A request for judicial notice that fails to identify the specific facts to be noticed, "greatly frustrates the Court's ability to conduct the analysis required under Rule 201," particularly when the request includes numerous documents or a voluminous number of pages. *Grossman v. Sin*, No. 2:23-CV-09501-MRA-MAA, 2025 WL 1330087, at *12 (C.D. Cal. Mar. 31, 2025). Including "purportedly noticeable facts in their briefing does not clarify this inquiry[,]" and courts do not need to parse through briefing to identify such facts if the proponent does not "clearly specify what fact or facts they request to be judicially noticed." *Id.*

CNS's Request for Judicial Notice should be denied because it only conducts the first step of the analysis under Rule 201(b); it discusses the purported accuracy of the sources at issue, but fails to identify the ***specific facts*** within each source and establish why each fact is appropriate for judicial notice. CNS is improperly asking the Court to judicially notice seventeen separate sources spanning over one hundred pages, yet fails to identify specific facts therein should be judicially noticed and why.

The Request for Judicial Notice should be denied based on CNS's failure to

meet its burden under Rule 201(b).

### C. A review of CNS's Answering Brief shows that judicial notice is inappropriate.

Even if the Court were to parse through CNS's briefing in an effort to ascertain the facts CNS seeks to be judicially noticed—which it is not required to do—this exercise further confirms that CNS's Request for Judicial Notice should be denied for several reasons.

First, the factual assertions in CNS's briefing derived from the documents at issue are not relevant to the issues on appeal. *See e.g. Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 n. 13 (9th Cir. 1998) (denying request for judicial notice because the documents at issue "do not tell us if any of the winning candidates were Hispanic-preferred, the relevant issue in this appeal); *Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.,* 631 F. Supp. 3d 950, 962 (W.D. Wash. 2022) ("Judicial notice is inappropriate where the facts to be noticed are irrelevant and not needed to resolve the motions before the Court."), *see also Bryan v. City of Carlsbad,* 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018) ("But the Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice.").

Second, some of the documents do not support the statements CNS makes in its Answering Brief. CNS cites an abundance of court filings and state judicial websites to show that other courts—the vast majority of which apparently do not use

the Tyler Technologies system used by Idaho Courts—have implemented either a press review queue or auto accept in response to litigation from CNS. This appeal requires the Court to decide (1) when the right of timely access attaches to electronically submitted complaints (which the Idaho Supreme Court rules state are not yet filed with the court) and (2) whether the time between submission of the complaint and acceptance by the clerk gives rise to a violation of this right. If the Court reaches the second question, it will need to determine whether there is a substantial probability that Idaho Courts' interest in the fair and orderly administration of justice would be impaired by immediate, pre-acceptance access and whether reasonable alternatives exist. Decisions made in response to litigation by other state and county courts—particularly those that do not even use the same e-filing software—are irrelevant to these issues.

With respect to the disparities between assertions CNS cites the documents for and what they actually say, CNS cites to a joint motion to stay and a state judicial website (Exhibits 3 and 15 to the RJN) to support its claim that state courts have implemented auto accept systems, including Missouri "through homegrown systems developed in-house." Dkt. 28.1 at 16. First, the cited documents say nothing about this system being developed "in-house."[1] Second, the cited documents are irrelevant;

---

[1] CNS also cites these two documents to claim that there are no "ongoing federal audit[s]" of state proceedings, but these documents do not substantiate this allegation either. Dkt. 28.1 at 33.

decisions made by Missouri state courts—which apparently do not use the Tyler Technologies software used by Idaho courts—are irrelevant to the issues on appeal.

CNS also cites seven different documents, including consent decrees, notices of dismissal, and state judicial websites, to support their claim that "many courts . . . condition 'acceptance' of a complaint on action by a human clerk but don't withhold access prior to acceptance." Dkt. 28.1 at 16-17. Again, some of the cited documents do not even support this statement, and none of them specify whether the state courts at issue use Tyler Technologies' software. *See e.g.* Dkt. 30.1, Ex. 4 (notice of dismissal with no specifics about the clerk review process other than "Defendant Lorentzen has implemented the Press Review Tool to Plaintiff's satisfaction"); Exs. 6 and 7 (no specifics about clerk review process other than defendant "has implemented the Press Review Tool"). Nor do any of these documents address budgetary issues present in this case; Tyler Technologies' Press Review Tool comes with an annual subscription fee of *at least* $108,000. ER 2547 at 171:15-172:22, ER 2550 at 182:18-183:4.

Finally, CNS cites a transcript from an oral argument in another case to support its claim that "[t]he delays in this case are comparable to pre-lawsuit delays" in other cases brought by CNS. Dkt. 28.1 at 37-38. Arguments made by counsel during a hearing are not appropriate for judicial notice. Although a hearing transcript may be judicially noticed for the purpose of establishing the *existence* of the

transcript, it cannot be judicially noticed "for the truth of the facts asserted in the [transcript]." *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012), *see also Derosa v. ViacomCBS Inc.,* No. 220CV02965MCSGJSX, 2021 WL 1235039, at *2 (C.D. Cal. Mar. 3, 2021) ("The Court takes judicial notice of the hearing transcript, but not reasonably disputed facts derived from it."). CNS is citing the hearing transcript to support factual allegations, which is not an appropriate use of judicial notice.

Thus, CNS's request for judicial notice should be denied because the records at issue—and the allegations CNS attempts to derive from them in its Answering Brief—are not relevant to the issues on appeal. Decisions other state courts have made in response to litigation are irrelevant to the Idaho Courts' decision to require clerk review and acceptance prior to access, which is based on state-specific considerations such as budgetary constraints, the particular e-filing system Idaho Courts have implemented, and the substantive legal decisions the Idaho Supreme Court has incorporated into its efiling rules. Moreover, the only "fact" these documents establish is that certain state courts eventually acceded to CNS's demands after litigation was filed, presumably to avoid potential exposure to CNS's exorbitant attorney fee requests; they do not provide any insight on how the changes have impacted these state and county courts (e.g. what the costs have been, whether the change has increased the workloads of clerks and judges, whether litigants have

been negatively impacted when filing errors are not caught on the front end because they are automatically accepted, etc.). CNS's Request for Judicial Notice should therefore be denied.

## CONCLUSION

For the reasons set forth above, Omundson respectfully requests that the Court deny CNS's Request for Judicial Notice.

Date: May 30, 2025

DUKE EVETT, PLLC

/s/ Keely E. Duke
Keely E. Duke
Molly E. Mitchell
*Attorneys for Appellant Sara Omundson*