**No. 24-6697**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

COURTHOUSE NEWS SERVICE,

*Plaintiff-Appellee*,
v.
SARA OMUNDSON,

*Defendant-Appellant*.

On Appeal from the United States District Court for the District of Idaho
No. 1:21-CV-00305-DCN
Hon. David C. Nye Presiding

# APPELLANT'S REPLY BRIEF

Keely E. Duke
Molly E. Mitchell
Duke Evett, PLLC
1087 West River Street, Suite 300
Boise, ID 83702
Telephone (208) 342-3310
Email: ked@dukeevett.com;
mem@dukeevett.com

*Attorneys for Appellant Sara Omundson*

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **4**

**I. Unlike the complaints in *Planet III*, the complaints in this case have not and may never initiate judicial proceedings, and therefore the District Court erred in holding that the qualified right of timely access attaches once the complaint is submitted for clerk review.** .......... **4**

A. The delays in the *Planet* trilogy occurred after the complaint had been accepted for filing, meaning judicial proceedings were initiated. .......... 5

B. The alleged delays in this case occur before the complaint is accepted for filing, meaning judicial proceedings have not been initiated. .......... 7

**II. The District Court erred by not abstaining.** .......... **8**

A. The abstention analysis in *Planet I* was based on the public's right of access to judicial proceedings, which is not implicated in this case because the complaints have not initiated judicial proceedings. .......... 8

B. The District Court erred by not abstaining because the relief requested by CNS excessively intrudes on sensitive state functions. .......... 10

**III. Even if the qualified right of timely access attaches at the time the complaint is submitted—and before it is reviewed by the clerk and either accepted or rejected for filing—the District Court still erred by holding that the time between submission and clerk review gives rise to a violation of this right.** .......... **16**

A. Complaints that have not been accepted for filing are not judicial documents. .......... 16

1. Historically, complaints were not available before the clerk accepted them for filing. .......... 17

2. Public access does not play a significant positive role in the functioning of the judicial system. .......... 19

B. Even if the qualified right of timely access attaches to pre-acceptance

complaints, the length of time between submission and clerk review does not give rise to a constitutional violation when weighed against the reasons for requiring clerk review. ....................................................................21

1. Requiring clerk review and acceptance for filing is narrowly tailored to serve Idaho Courts' interests. .......................................21

2. The delays between submission and clerk review are minimal, and there are no reasonable alternatives that would provide CNS with more immediate access to pre-acceptance complaints...................23

a. Neither Press Review Queue option is a reasonable ...........26

b. Auto Accept is not a reasonable alternative ........................27

**CONCLUSION.........................................................................................28**

# TABLE OF AUTHORITIES

**Cases**

*Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018)................ 11, 12

*Courthouse News Service v. Planet*, 750 F.3d 776, (9th Cir. 2014)................ passim

*Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020)................. passim

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986)....................... 17, 19, 21

**Rules**

ICAR 32(a)(4) ....................................................................................................4

IRCP 4(b) ..........................................................................................................9

IREFS 11(a) .......................................................................................................4

IREFS 13(a) .......................................................................................................9

IREFS 3 .............................................................................................................5

## INTRODUCTION

The First Amendment's qualified right of timely access does not attach to the complaints at issue because they have not yet been reviewed by a clerk, who either approves them for filing or rejects them with noted corrections needed to be accepted for filing. As such, until these complaints are accepted, they have not initiated judicial proceedings (and may never do so if rejected by the clerk and not successfully resubmitted by the filer), are not available to judges and their court staff, and are not part of the court's record. Not recognizing these legally significant differences, the District Court erred when it expanded Ninth Circuit precedent to require that Idaho Courts rework their electronic filing system to provide the public (and therefore the press) with pre-clerk review access to submitted but not yet accepted complaints **that have not initiated judicial proceedings**.

In an effort to convince this Court to affirm the District Court's wrongful expansion of public access to non-filed complaints, CNS ignores three critical and legally significant differences between this appeal and *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*"), which held that a qualified right of timely access attaches "when the complaint is ***filed***." *Id.* at 585 (emphasis added).

**First**, *Planet III* involved access to complaints that had actually initiated judicial proceedings. This case does not. In *Planet III*, the complaints had **already**

**been accepted** by the clerk—thus initiating a legal proceeding—but had not yet been processed, which often took days and sometimes even weeks to complete. On the other hand, this appeal involves access to complaints that **have not yet been accepted** by the clerk and therefore have not initiated judicial proceedings (and may never do so if they are rejected and not successfully resubmitted). Depending on the outcome of the clerk's review, the complaint either initiates a lawsuit and is immediately available to the public, or it is rejected, in which case a lawsuit has not been filed. The public's qualified right to observe judicial proceedings is the cornerstone of this Court's holding in *Planet III*. Because the complaints at issue here have not—and may never—initiate judicial proceedings, the District Court erred in finding that the qualified right of timely access attaches to these documents.

**Second**, unlike the complaints in *Planet III* that went through days-to- weeks long processing to open the case file, when Idaho clerks accept a complaint for filing, the case creation process (such as opening the file, assigning a case number, and assigning a judge) **occurs automatically and instantaneously**. At that point, the complaint is then **immediately available to the public**.

**Third**, the *Planet* trilogy involved delays that could be cured by simple, no-cost measures, such as allowing reporters to go behind the clerk's counter. This Court expressly cautioned against federal courts overriding a state court's decisions regarding management of its judicial resources, and found that state courts are not

required to expend such resources to provide CNS with "immediate, pre-processing access to newly filed civil complaints." *Planet III*, 947 F.3d at 594. CNS undisputedly has access to complaints the moment they are accepted, with "processing" occurring automatically and instantaneously upon acceptance. The options for providing CNS with immediate, ***pre-acceptance*** access to complaints that have not yet been filed are far from simple, and either option—Press Review Queue or Auto Accept—places a significant strain on Idaho Courts' scarce judicial resources. Neither option is the simple, low- or no-cost solution CNS represents it to be. Instead, both options amount to federal courts heavily interfering with Idaho Courts' judicial procedures and allocation of judicial resources, which is precisely what the *Planet* trilogy cautioned against.

The District Court therefore erred by not abstaining from exercising jurisdiction over this case. The District Court further erred by finding that Idaho Courts' interests in managing judicial resources, protecting document security and privacy interests, ensuring public confidence in the judicial system, and promoting access to the courts were outweighed by CNS's desire for immediate, pre-acceptance access to complaints that have not and may never initiate judicial proceedings.

The District Court's grant of summary judgment in favor of CNS should be reversed, and the case remanded for entry of judgment in favor of Omundson.

## ARGUMENT

**I. Unlike the complaints in *Planet III*, the complaints in this case have not and may never initiate judicial proceedings, and therefore the District Court erred in holding that the qualified right of timely access attaches once the complaint is submitted for clerk review.**

In an effort to argue the *Planet* trilogy is dispositive of its claims, CNS wrongly characterizes this case as merely seeking timely access to already filed complaints. Dkt. 28.1 at 1. That is simply not true with respect to the at-issue complaints. For *Planet III* to be dispositive, this Court must expand its holdings to apply to the types of complaints at-issue here; complaints that are in a queue awaiting clerk review that have not been seen by the clerk and either accepted or rejected for filing (i.e. documents that have not yet initiated judicial proceedings).

This Court's decision in *Planet III* is predicated on the right of access "to judicial proceedings[,]" 947 F.3d at 589. Significantly, the complaints CNS seeks access to have not initiated judicial proceedings and may never do so if they are rejected for filing. A document is filed—and therefore part of the official court record—only after the clerk reviews the document and accepts it for filing. *See* IREFS 11(a) (electronically filed document "will be considered filed when: (1) the document has been electronically submitted to the court's electronic filing system; ***and (2) the submission has been acknowledged and the document accepted for filing***." (emphasis added)); ICAR 32(a)(4) ("court record" is any document "filed, docketed, or lodged ***by a court or clerk of court*** in connection with a judicial

proceeding" (emphasis added)); IREFS 3 ("official court record" is "the electronic case file maintained by the court"). Thus, a complaint that has been submitted but not yet reviewed and accepted by the clerk: (1) has not been filed; (2) is not a court record; and (3) has not initiated a judicial proceeding. *See* Section I.B, *infra* (explaining that case is opened only after clerk acceptance of the complaint).

Therefore, the District Court erred by finding that the qualified right of timely access attaches to these documents.

### A. The delays in the *Planet* trilogy occurred after the complaint had been accepted for filing, meaning judicial proceedings were initiated.

The *Planet* trilogy involved access to complaints that were physically submitted by the filer at the clerk's counter. *Planet III*, 947 F.3d at 586. This involved the clerk reviewing the complaint to determine whether it was "being filed in the correct court and the documents necessary to initiate the case [were] presented with the correct filing fee or fee waiver."[1] *Id.* After the complaint was accepted, the

[1] Although *Planet III* described this as the first step of "processing" and did not specify at which point the filer left the clerk's counter, the processing took days and sometimes even weeks. *Id.* Regardless of whether clerk review and acceptance was lumped into the description of "processing" in *Planet III*, the key facts relevant to this appeal are that: (1) CNS did not have access to the paper complaints prior to the interaction between the clerk and the filer (irrespective of whether this is characterized as clerk review and acceptance or the first step of processing) and (2) the delays arose ***after*** the interaction between the clerk and filer but ***before*** steps were taken to open the case file.

clerk then entered the required information to create a new case in the court's case management system, entered accompanying instruments (e.g. checks) and generated a receipt, issued summonses, stamped the documents as "filed," generated the labels for the physical case file, and put the documents in the physical case file. *Id.* In addition, "supervisors performed an additional layer of quality control review," which could take several days to complete. *Id.* The complaints were made available to public only after "*both* processes were completed." *Id.* (emphasis in original).

There is nothing in any of the *Planet* cases suggesting that clerks had the authority to reject a complaint after the filer left the clerk's counter. Rather, the first step of "processing" involved checking that the filing requirements had been met, and the remaining tasks were incidental to opening the case file. Thus, the complaints at issue in *Planet* had been accepted for filing. There was no possibility of the complaint being rejected—and thus a lawsuit not being filed—after the interaction between the clerk and filer. The "no-access-before-process" policy that did not survive constitutional scrutiny involved delays in access between the time the complaint had been accepted by the clerk and the time processing was completed, at which point the complaint was transferred to the media bin. *Planet III*, 947 F.3d at 586-87. The "scanning policy" that made complaints available on public computer terminals in the courthouse after acceptance but prior to processing survived constitutional scrutiny. *Id.* at 598-99.

Thus, under *Planet III*, the public has a right of timely access to complaints that have been *accepted for filing*, and processing policies that cause significant and unjustifiable delays in access to these complaints may not survive constitutional scrutiny. *Id.* at 585 ("[T]he press has a qualified right of timely access to newly filed civil nonconfidential complaints *that attaches when the complaint is filed*." (emphasis added)). The case at bar is not within the purview of *Planet III* because the alleged delays in access occur *before* the complaint is accepted for filing.

**B. The alleged delays in this case occur before the complaint is accepted for filing, meaning judicial proceedings have not been initiated.**

CNS is seeking access to complaints that have been submitted to Tyler Technologies' eFile & Serve, but that have not yet been reviewed by a clerk and either accepted for filing or rejected. *See e.g.* 12-ER-2774-2775 at ¶¶ 3-5.

When a complaint is submitted to eFile & Serve, it automatically joins a queue that can only be accessed by clerks; not even judges or their court staff have access. 7-ER-1632 at 44:1-7, 7-ER-634 at 51:16-52:21. The clerk accesses the complaint from this queue and—much like the process for reviewing paper filed complaints in *Planet III*—performs a ministerial review to determine whether it should be accepted for filing or rejected (e.g. due to an insufficient filing fee or being filed in the wrong jurisdiction). *Compare e.g.* 7-ER-1632 at 44:8-16, 7-ER-1646 at 98:14-101:25, 7-ER-1449-1450, 1463, 1476, *with* 947 F.3d at 586. If the complaint is rejected,

judicial proceedings are not initiated unless and until the filer successfully resubmits the complaint for filing. IREFS 13(a) ("document will be deemed to have not been filed" if rejected for filing and not resubmitted within three business days).

This case is significantly distinguishable from *Planet III* with respect to the processing that follows acceptance. As discussed above, the processing in *Planet III*—which consisted of tasks required to open the case—resulted in delays between the time complaints were accepted for filing and when they became publicly available. Here, it is undisputed that upon acceptance for filing, "processing"—meaning the tasks required to open the case—occurs ***automatically and instantaneously*** upon the transfer from eFile & Serve to Idaho's case management system; payment is captured, the complaint is file-stamped, a case number and judge are assigned, and the judges, their court staff, and the public have access to the complaint. 11-ER-2538 at 136:25-137:13; 11-ER-2541 at 146:1-15; 9-ER-2068 at ¶ 5; 7-ER-1634-1635 at 51:16-52:13; 54:5-56:3. Thus, unlike *Planet*, ***civil complaints are immediately available to the public once accepted for filing***. 7-ER-1632 at 43:9-24, 2-ER-192 at ¶ 2.

## II. The District Court erred by not abstaining.

### A. The abstention analysis in *Planet I* was based on the public's right of access to judicial proceedings, which is not implicated in this case because the complaints have not initiated judicial proceedings.

The abstention analysis in *Planet I* was predicated on the press and public's

"right of access to judicial proceedings." *Courthouse News Service v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) ("*Planet I*"). For example, the Court framed the expressive activity at issue as "informed public discussion of ongoing judicial proceedings[,]" and relied on a Second Circuit case finding that a qualified right of access attaches to docket sheets (documents that are only created if judicial proceedings have been initiated) to support its conclusion that *Pullman* abstention did not apply. *Id.* at 787-88. The complaints in *Planet I* are referred to as "newly filed" complaints throughout the opinion, which explains that the delays in access occurred *after* clerk acceptance for filing and "before full processing was complete." *Id.* at 781.

As discussed above, the at-issue complaints *have not* initiated judicial proceedings, and may never initiate judicial proceedings if rejected for filing and not successfully resubmitted. *See* Section I.B, *supra*. In Idaho, judicial proceedings are initiated once the complaint is accepted for filing. *See* I.R.C.P. 4(b) (civil action "must be commenced by filing a complaint, petition or application with the court"); IREFS 13(a) (document is considered filed only once "[electronic] submission has been acknowledged and the document accepted for filing"). As such, there are no judicial proceedings connected to the complaints at issue. Judges and court staff do not even have access to these complaints. 7-ER-1632 at 44:1-7. And CNS undisputedly has immediate access to civil complaints the moment they initiate

judicial proceedings (i.e. upon acceptance for filing). 7-ER-1632 at 43:9-24, 7-ER-1634 at 51:16-52:13.

Thus, the factual underpinnings of the abstention analysis in *Planet I* do not exist in this case and the at-issue complaints do not implicate the First Amendment's qualified right of timely access. Abstention is therefore appropriate because CNS is asking a federal court to: (1) override Idaho substantive law regarding when a complaint is filed;[2] (2) dictate how Idaho Courts structure their efiling system; and (3) oversee allocation of Idaho's judicial resources, all so that CNS can access documents that have not initiated judicial proceedings. For these reasons, the District Court should have abstained.

**B. The District Court erred by not abstaining because the relief requested by CNS excessively intrudes on sensitive state functions.**

In *Planet I*, abstention was analyzed at the 12(b)(6) stage, and the defendant did not submit any evidence regarding the difficulties of providing same-day access to newly filed civil complaints. *Id.* at 781. Thus, the factual allegations in CNS's complaint were treated as true for purposes of deciding the abstention issue. *Id.* In

---

[2] The Idaho Supreme Court has promulgated rules related to when a document is considered "filed" so as to invoke the jurisdiction of the Idaho Courts and has interpreted the effect these rules have on the substantive rights of litigants. *See* Dkt 11 at 18-20. The District Court improperly rewrote Idaho substantive law by determining that a complaint is deemed filed upon submission to the efiling system, *see* 1-ER-61-62, which is counter to the rules and precedent from the Idaho Supreme Court.

holding that the district court should not have abstained, this Court determined—based on the unrefuted allegations in CNS's complaint—that Ventura County had "available a variety of simple measures" that it could take to provide timely access to newly filed complaints, such as giving reporters a key to a room where complaints are placed prior to processing, "place paper versions of new complaints in a secure area behind the counter where reporters are free to review them on the day of filing[,]" or it could "permit reporters to view the cover page of all newly filed complaints each afternoon and request the full text of any that seem newsworthy." *Id.* at 791. In *Planet III*, this Court reiterated the simplicity of these alternative measures in distinguishing the case from *Courthouse News Service v. Brown*, a case far more factually analogous to this appeal,[3] where the Seventh Circuit held that federal courts should abstain from exercising jurisdiction over cases demanding immediate access to electronically submitted complaints that have not been accepted for filing. *Planet III*, 947 F.3d at 591, n. 4, *see also Brown*, 908 F.3d 1063, 1066 (7th Cir. 2018).

In contrast, this appeal does not involve "simple measures" and the Court is not obligated to accept at face value CNS's representations about the purported ease

---

[3] Like Idaho Courts, the Illinois Supreme Court mandated electronic filing and clerks reviewed complaints and either accepted or rejected them for filing before they were made publicly available. *Brown*, 908 F.3d at 1066-67.

of implementing Auto Accept or a Press Review Queue. As discussed in detail in Omundson's opening brief, the Press Review Queue comes with an annual subscription fee of $108,000 (which would require an amendment to the Idaho Supreme Court's contract with Tyler Technologies, and the cost would be significantly higher if Tyler agreed to comply with the Idaho Supreme Court's security requirements for cloud-based services). Dkt. 11 at 47. The Press Review Queue also does not protect against the "sweeping" activities CNS engages in, which have resulted in a massive data breach in another public-facing Tyler Technologies product. *Id.* at 48-50.

Auto Accept similarly puts a strain on Idaho's judicial resources because it eliminates the clerk's ability to address filing errors prior to acceptance (which can easily be handled pre-acceptance through a portal that allows the clerk to interface directly with the filer). *Id.* at 51. This means that filing errors (such as the complaint being filed in the wrong county) must be addressed once judicial proceedings have been initiated, therefore requiring court action. *Id.* Tyler Technologies has "no visibility into any expense that could be endured by the State or by the Courts" that implement Auto Accept, and defers to Idaho state courts in determining what their internal costs would be. 11-ER-2534 at 120:18-121:10. Auto Accept not only burdens Idaho Courts, it prejudices litigants as well. Dkt. 11 at 54-55. For example, if a complaint is filed close to the statute of limitations and a filing error is not

addressed on the front end by the clerk, the litigant's claims would be barred if the action was subsequently dismissed due to improper venue. *Id.* at 41-42, 54-55.

CNS has not provided any evidence to refute these facts, and instead merely relies on the conclusory statement that other courts—in response to litigation brought by CNS—have implemented a Press Review Queue or Auto Accept, and therefore these must be viable, problem-free solutions to providing CNS with immediate, pre-acceptance access. Dkt. 28.1 at 6-9. CNS also provides the conclusory assertion that the federal courts' system automatically accepts filings, and therefore this must be a viable solution for Idaho Courts as well. *Id.* at 8. However, CNS provides *no evidence* into the costs these other courts have incurred to implement either option or how it is affecting judges, court staff, clerks, and litigants in that particular jurisdiction, nor does CNS address the significant differences between federal and state courts.

The federal courts use a different efiling system, and CNS has provided no evidence as to how the functionality of this system compares to eFile & Serve. For example, there is no evidence as to whether the federal courts' system can reject complaints that do not include the proper filing fee (which eFile & Serve cannot do). *See e.g.* 11-ER-2544 at 158:18-159:9, 11-ER-2458 at ¶ 8. In addition, filing in federal court does not present the same potential for filing in the wrong county and facing dismissal for improper venue; there is only one federal district court in Idaho.

*See* 11-ER-2458 at ¶ 9. And given that federal courts are courts of limited jurisdiction, far more complaints are filed in Idaho state court than in the United States District Court for the District of Idaho. Although CNS has limited its request to documents in the "A.A." category, the right of timely access is not limited to whatever documents CNS deems relevant.[4] *See Planet III*, 947 F.3d at 586, n. 1. ("[O]ur decision here concerns only publicly available civil complaints, i.e., those deemed non-confidential by state law or judicial determination, or those that were not otherwise properly filed under seal.").

CNS's conjecture that things must be going smoothly in jurisdictions that have implemented one of these options in response to litigation is devoid of factual support, and it was not Omundson's burden to present evidence of how Auto Accept

[4] Over 403,000 cases were filed in Idaho Courts between January 1, 2021 and November 18, 2022 (about 8,000 of which were in the A.A. category). 11-ER-2416; 10-ER-2129-2411. Fewer than 500 cases were filed in the United States District Court for the District of Idaho during a similar time period. 9-ER-1978-2050. Thus, to the extent federal clerks or judges must address filing issues on the backend, the burden is far less given the comparatively fewer complaints filed in this jurisdiction. In addition, a judicial document is "an item filed with a court that is 'relevant to the judicial function and useful to the judicial process.'" *Planet III*, 947 F.3d at 592. If Idaho Courts had to allow pre-acceptance access to all non-confidential documents filed in a civil case, the burden of correcting filing errors on the backend would be extraordinary. From January 4, 2021 through November 18, 2022, there were 2,961,279 filings in Idaho Courts (both civil and criminal) with a 6% rejection rate, meaning 177,677 filings would have required court action to correct if clerk review had not been in place. 11-ER-2414.

or the Press Review Queue is impacting other jurisdictions in order to refute CNS's conjecture. Counter to CNS's claims that there is a simple, viable, cost-free solution available to Idaho Courts, Tyler Technologies' corporate representative declined to provide an opinion on whether implementing Auto Accept was a practical approach for Idaho Courts. 11-ER-2537 at 130:15-131:17 ("I don't have intimate knowledge to suggest that that would be a definitive positive change. I think my statements were really around the availability of those options."). Only a small fraction of courts that use eFile & Serve software have implemented Auto Accept, and Tyler Technologies does not encourage or recommend that its customers implement Auto Accept for all filings. 11-ER-2539 at 138:12-139:19 (approximately 1,500 courts use eFile & Serve and only about 25 of these courts use Auto Accept). Tyler Technologies merely provides courts with information about its system and helps them configure based on their needs, but it is ultimately up to the courts to determine whether Auto Accept would be appropriate and practical for that jurisdiction. *Id.*

Thus, the abstention analysis in this case varies greatly from *Planet I* because this case does not involve "simple measures" that would provide CNS with quicker access to the complaints at issue, such as simply allowing reporters to go into a room or behind the clerk's counter to review paper-filed complaints. *Planet I*, 750 F.3d at 791. To the contrary, this case presents the type of controversy this Court has previously determined federal courts should not weigh in on: "The First Amendment

does not require us to second guess the careful deliberations the state court undertook in deciding how to manage scarce resources." *Planet III*, 947 F.3d at 600. Nor does the First Amendment "require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press." *Id.* at 596.

CNS is asking this Court to second guess the careful deliberations of the Idaho Supreme Court in determining that clerk review prior to acceptance is necessary to further the interests of the Idaho Courts and override the Idaho Supreme Court's decisions regarding resource management and judicial operational needs. This is the type of scenario that requires abstention under "[*Pullman and O'Shea*], which permit the federal courts to decline to decide matters over which they have jurisdiction but which implicate sensitive state interests." *Planet I*, 750 F.3d at 779. Requiring Idaho Courts to implement either a Press Review Queue or Auto Accept would "excessively intrude on sensitive state functions[,]" *id.*, and therefore the District Court erred by not abstaining.

## III. Even if the qualified right of timely access attaches at the time the complaint is submitted—and before it is reviewed by the clerk and either accepted or rejected for filing—the District Court still erred by holding that the time between submission and clerk review gives rise to a violation of this right.

### A. Complaints that have not been accepted for filing are not judicial documents.

The qualified right of timely access does not attach to the complaints at issue in this

appeal because they are not "judicial documents" under the test applied in *Planet III*, which looks at (1) whether the record "ha[s] historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular [governmental] process in question." 947 F.3d at 590 (quoting, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*")). Complaints that have been submitted to an electronic filing system but that have not been reviewed by a clerk and either accepted or rejected for filing—and therefore may or may not initiate judicial proceedings—do not satisfy either prong of *Press-Enterprise II.*

**1. Historically, complaints were not available before the clerk accepted them for filing.**

CNS claims that, historically, paper-filed complaints were made available to reporters after they were accepted by the clerk for filing, even if docketing or other clerical tasks had not yet been completed. Dkt. 28.1 at 6; 5-ER-995-997; 6-ER-1131-1135. The interaction between the clerk and the filer had already occurred, the complaint had been accepted for filing, and reporters could then review the accepted complaints as they were awaiting processing. *Planet I*, 750 F.3d at 791 (discussing methods for providing reporters with access to complaints awaiting processing). But testimony about historical access to complaints that have been accepted by the clerk does not establish that the press and public historically had access to complaints ***before any interaction between the clerk and filer occurred***. For example, if a *pro*

*se* litigant went to the clerk's counter to file a complaint but did not have a credit card or check, the clerk would advise them of the filing fee and the complaint would not be accepted unless and until they returned with a payment method. *See e.g.* 2-ER-193, ¶ 2. There is nothing in the record that suggests the public would have had access to the complaint between the time the clerk rejected it and when the filer returns with a payment method. There is simply no evidence in the record establishing that the public historically had access to complaints prior to the interaction between the clerk and filer, which is the type of access CNS is seeking in this case.

CNS glosses over this critical distinction by trying to characterize Idaho Courts' efiling process as a "No-Access-Before-Processing" policy, but that is misleading. Idaho Courts' policy is more accurately characterized as "No-Access-Before-**Acceptance**" which is vastly different. With eFile & Serve, complaints are processed automatically upon acceptance for filing by the clerk and are then immediately available to the public.7-ER-1632 at 43:9-24, 2-ER-192 at ¶ 2. Thus, unlike the *Planet* trilogy, "processing" through eFile & Serve does not result in any delays between acceptance by the clerk and public access to the complaint; the tasks required to open the case file occur automatically and instantaneously upon acceptance. There is simply no evidence before the Court or any findings from the *Planet* trilogy that supports CNS's position that the public historically had access to

complaints before they were accepted for filing and before any interaction occurred between the clerk and filer.

For these reasons, the first *Press-Enterprise II* factor weighs against finding that the complaints at issue qualify as judicial documents.

**2. Public access does not play a significant positive role in the functioning of the judicial system.**

Providing the public with access to complaints that have not—and may never—initiate judicial proceedings does not play a positive role in the functioning of the judicial system. CNS's Idaho reporter testified that she would not report on something that "hadn't been filed yet in the legal system." 8-ER-1814 at 58:20-59:3. Although CNS accuses Omundson of "misrepresenting" this testimony, a review of Ms. Valenti's deposition transcript shows that is simply not the case. Dkt. 28.1 at 33. CNS claims that when read in context, Ms. Valenti was using the term "filed" to refer to "complaints handed to the clerk." *Id.* (citing 8-ER-1814 at 58:11-59:3). However, the cited testimony does not support CNS's self-serving interpretation of its reporter's testimony; there was a lengthy line of questioning as to what exactly Ms. Valenti meant by "filed," and she repeatedly explained she was only interested in "filed cases" that were "already in the legal system" and only reviewed complaints that had been accepted by the clerk and had a file stamp. 8-ER-1813-1814 at 56:17-61:18. The complaints awaiting clerk review in the eFile & Serve portal have not been accepted by the clerk, do not have a file stamp, do not have a case number, are

not available to judges or their court staff, and have not initiated judicial proceedings. *See* 7-ER-1632 at 43:9-44:7; 2-ER-193 ¶13.

There is simply no reason for the public to have access to complaints before they have been accepted for filing. The complaints at issue may never initiate judicial proceedings if they are rejected for filing and not successfully resubmitted, and thus granting pre-acceptance access only creates the potential for confusion and misinformation. This is especially concerning given that CNS **does not issue a correction** if its daily litigation report erroneously reports on a complaint that was submitted but later rejected. 8-ER-1718-1719 at 149:24-151:21. Attorneys rely on CNS's daily litigation reports to see if any of their clients have been sued. *See* 6-ER-1128-1129 ¶ 8. If CNS reports on a complaint that never actually initiates a lawsuit, an attorney could erroneously report to their client that a complaint has been filed, and then time and money is being wasted in response to a non-existent lawsuit. This does not play a significant positive role in the functioning of the judicial system.

CNS claims that pre-acceptance complaints are relevant to assessing whether a complaint was filed for purposes of inducing settlement, but this argument overlooks the practicalities of Idaho's efiling system. *See* Dkt. 28.1 at 46 ("Appellant's own evidence establishes that a plaintiff might file a complaint solely to pressure a settlement, with the intention of withdrawing it once the defendant has either capitulated or called plaintiff's bluff."). The complaints at issue ***have not been***

***filed*** and bear no indicia of a filed complaint (such as a case number and a file stamp). 2-ER-191-193 ¶¶ 10-13. Thus, providing an opposing party with a copy of a complaint—as it exists in the clerk's review queue—would be tantamount to sending a draft complaint; neither complaint has initiated judicial proceedings. Relatedly, CNS's argument explicitly pertains to ***filed*** complaints and dismissal of the complaint ***after*** judicial proceedings have been initiated. Thus, there is a disconnect between the scenario contemplated by CNS and the complaints at issue, which have not yet initiated a lawsuit.

For these reasons, the second *Press-Enterprise II* factor weighs against finding that pre-acceptance complaints qualify as judicial documents.

### B. Even if the qualified right of timely access attaches to pre-acceptance complaints, the length of time between submission and clerk review does not give rise to a constitutional violation when weighed against the reasons for requiring clerk review.

#### 1. Requiring clerk review and acceptance for filing is narrowly tailored to serve Idaho Courts' interests.

Idaho clerks serve an important gatekeeping function, which ensures that filing errors (such as a complaint being submitted for filing in the incorrect county or not including the required filing fee) are caught on the front end (i.e. before the document is accepted for filing into Case Manager, the official court record) when the clerk can still communicate directly with the filer through the eFile & Serve

portal and help them correct the error.[5] 2-ER-205-206 ¶ 9. If the document is rejected due to a filing error, IREFS 13 gives the litigant three days to correct the error and resubmit the document so that the original submission date will still appear as the file-stamped date.

Clerk review benefits litigants because filing errors are flagged shortly after submission and before a lawsuit has been initiated. Without clerk review, the best-case scenario for a litigant who files a complaint in the wrong county (which is an easy mistake to make when selecting from a dropdown menu that lists counties such as Ada, Adams, Bonner, and Bonneville) is that they catch this error before the statute of limitations expires but have nevertheless wasted several hundred dollars on a filing fee and have to spend time (and/or incur attorney's fees) to prepare dismissal paperwork. Their worst-case scenario is that this error goes unnoticed until after the statute of limitations expires and the action is dismissed based on improper venue. Thus, clerk review serves an important function of protecting the substantive rights of litigants.

Clerk review also benefits judges and court staff and efficiently manages

[5] This functionality is lost once the document is accepted into Case Manager; the clerk can no longer use the portal to communicate with the filer and would instead have to communicate with the filer using whatever contact information (if any) is listed on the complaint. 11-ER-2483, ¶ 5(c).

Idaho's judicial resources. Because errors are addressed by the clerk *before* the complaint is filed, judges and their court staff do not have to spend time and resources addressing these errors once the complaint has become an official court record and has actually initiated a lawsuit. Clerks do not have legal authority to unilaterally take action in the official court record, *see* 7-ER-1644 at 91:3-25, and for good reason; a clerk should not be permitted to take actions that would affect the substantive rights of litigants (such as dismissing a complaint that was inadvertently submitted in Bonner County instead of Bonneville) absent an order or directive from the judge presiding over the case. As discussed above, Idaho Courts are courts of general jurisdiction, and therefore a significant number of complaints are filed throughout the state on a daily basis. Section II.B, *supra*. It would place an enormous burden on Idaho's judges and court staff to effectively require them to subsume the clerk's duties with respect to addressing filing errors.

For these reasons, the Idaho Supreme Court has compelling reasons for requiring clerks to review complaints before either rejecting or accepting them for filing, with the latter resulting in the complaint initiating judicial proceedings and becoming available to the public immediately.

**2. The delays between submission and clerk review are minimal, and there are no reasonable alternatives that would provide CNS with more immediate access to pre-acceptance complaints.**

Both CNS and the District Court hyperbolized the alleged delays between

submission and clerk review by calculating time on a 24/7/365 basis, as opposed to when courts are actually open, which is inconsistent with how delays were calculated in *Planet III*. 1-ER-28; *Planet III*, 947 F.3d at 587, 597 (refencing "court days" in discussing delays between acceptance for filing and processing). Idaho clerks should not be penalized for delays that occur when the courthouse is not even open, and it is unreasonable to expect Idaho Courts to staff the clerk's office on a 24/7/365 basis just so CNS can have quicker access to complaints that have not and may never result in a lawsuit. This demand is especially unreasonable considering that CNS's own reporters are not reporting on a 24/7/365 basis; their working hours generally align with normal court hours. 8-ER-1808-09 at 37:13-38:13. It is hypocritical of CNS to bemoan the "staleness" of news that is purportedly created by a lack of immediate, 24/7/365 access to pre-acceptance complaints when its own reporters do not report with anywhere close to this level of promptness.[6]

When the time between submission and review is evaluated based on when

---

[6] Despite arguing that news about complaints becomes "stale" if not reported on immediately, CNS routinely includes complaints in its daily litigation reports that were filed weeks before the report was published. 8-ER-1807-08 at 33:19-35:6, 7-ER-1566-1572. Thus, by all appearances CNS's demands are rooted in *ease* of access rather than *timing* of access. 8-ER-1822-1823 at 93:10-96:1 (explaining CNS charges its customers if they want to download a copy of the complaint and CNS has to pay the clerk for copies of these complaints), *see also* Section III.B.2.a, *infra* (CNS uses web scraping software to access complaints, which Press Review Queue is not secured against).

the clerk's office is open—which coincides with when CNS's reporter is working—the delays are minimal. For complaints in the A.A. category, 8,645 were submitted between January 1, 2021 and July 31, 2022, with over half of the complaints reviewed within two business hours of submission, almost two-thirds were reviewed within three business hours, and about 85% were reviewed within one business day (i.e. eight business hours). 9-ER-2123-24, ¶ 6, *see also* 10-ER-2129-2411 (spreadsheet containing data summarized in declaration). Complaints are oftentimes submitted near or after the close of business, and therefore clerk review will frequently occur on the next business day. This does not give rise to an impermissible or unreasonable delay, and again Idaho Courts should not have to expend significant time and resources staffing the clerk's office after normal business hours all so that CNS can have "same day" access to complaints submitted after its own reporter has clocked out for the day.

Regardless of whether the delays between submission and clerk review are calculated based on business hours or on a 24/7/365 basis, the Idaho Supreme Court's policy of requiring clerk review prior to acceptance (at which point they are immediately available to the public) survives constitutional scrutiny because there are no reasonable alternatives that would provide more immediate access to pre-acceptance complaints.

**a. Neither Press Review Queue option is a reasonable alternative.**

Tyler Technologies' Press Review Queue has an annual subscription fee of $108,000, which would be "significantly higher" if Tyler Technologies were to comply with the Idaho Supreme Court's security requirements relating to cloud based services (which Tyler Technologies currently has not agreed to accept). 11-ER-2547 at 171:6-22, 2-ER-210-13, 8-ER-1898 at 37:11-39:12, 11-ER-2550 at 182:18-183:4. Tyler Technologies has not provided all information requested by the Idaho Supreme Court relating to security of the Press Review Queue, and some of the answers Tyler Technologies provided raise serious concerns, including that is not protected against web scraping software. 2-ER-210-11 at ¶19, 8-ER-1917 at 114:11-115:11, 8-ER-1924 at 144:2-21, 11-ER-2548 at 176:13-17. CNS uses such software to perform sweeps of new civil cases on public court sites, 8-ER-1707-08 at 105:1-107:3, 8-ER-1708 at 108:4-109:10, 8-ER-1954-55, and similar sweeping activities resulted in a massive data breach in another public-facing Tyler Technologies product. 8-ER-1878-86.

Tyler Technologies has developed an application (referred to as an API) that allows customers to build their own press review tool, but this requires the customer to incur the cost of developing the application, personnel costs, and data hosting costs. 11-ER-2552 at 191:17-192:14, 11-ER-2552-53 at 193:2-195:2. As with the

Press Review Queue software, Tyler Technologies has not provided the Idaho Supreme Court with information it has requested regarding the security, functionality, and costs of the API. 8-ER-1894 at 21:21-22:8.

The costs and security risks that come with the Press Review Queue far outweigh the benefit of CNS having access to pre-acceptance access to complaints a few hours before they are reviewed by a clerk and either rejected or accepted for filing.

**b. Auto Accept is not a reasonable alternative**

Auto Accept is not a reasonable alternative because it eliminates the clerk's ability to review complaints for filing errors prior to acceptance. Instead, complaints and other documents are automatically accepted into Case Manager—the official court record—without any review by the clerk. The Auto Accept function does not have any ability to review for the types of issues the clerk checks, such as making sure the county on the caption of the complaint is the same as the county where the complaint has been submitted and that the correct filing fee has been paid. 7-ER-1524 ¶ 58; 2-ER-195-196 ¶ 18; 7-ER-1523 ¶55; 11-ER-2497; 4-ER-697 at 82:2-13.

As discussed in Section II.B, *supra*, having the clerks perform their ministerial review post-acceptance is inefficient and needlessly increases the workloads of judges and court staff. Once the complaint is accepted, whether automatically or by a clerk, a lawsuit is initiated and the complaint is an official court record. Clerks

cannot take actions that affect the substantive rights of litigants, and thus judicial action is required to address these errors. This not only strains judicial resources, it also can have serious, adverse consequences on litigants.

Auto Accept fundamentally alters Idaho's efiling process at the detriment of judges, court staff, clerks, and litigants, and is therefore not a reasonable alternative to providing CNS with immediate pre-acceptance to complaints.

Thus, even if pre-acceptance complaints are considered judicial documents to which the qualified right of timely access attaches, the minimal delay between submission and clerk review does not give rise to a violation of this right when weighed against the Idaho Supreme Court's compelling reasons for requiring clerk review prior to acceptance and the lack of reasonable alternatives. The District Court therefore erred by granting summary judgment in favor of CNS.

## CONCLUSION

Omundson respectfully requests that this Court reverse the District Court's ruling regarding abstention and dismiss this action with prejudice. Alternatively, Omundson respectfully requests that this Court reverse the District Court's summary judgment rulings that a right of timely access attaches to the complaints at issue and that the policy denying pre-acceptance access does not survive constitutional scrutiny, and remand so that judgment may be entered in Omundson's favor.

Date: July 9th, 2025

DUKE EVETT, PLLC

/s/ Keely E. Duke
Keely E. Duke
Molly E. Mitchell
*Attorneys for Appellant Sara Omundson*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6697

I am the attorney or self-represented party.

**This brief contains** 6,986 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Keely E. Duke **Date** 07/09/2025
*(use "s/[typed name]" to sign electronically-filed documents)*